Tod F. Schleier, SBN 004612
SCHLEIER LAW OFFICES, P.C.
3101 North Central Avenue, Suite 1090
Phoenix, AZ 85012
(602) 277-0157
(602) 230-9250 Fax
tod@schleierlaw.com

Kevin Koelbel, SBN 016599
LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ  85226
(480) 705-7550
(480) 705-7503 Fax
kevin@koelbellaw.com

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Cleopatria Martinez,<br><br>                                    Plaintiff,<br><br>v.<br><br>Maricopa County Community College District, a political subdivision of the state, and Rufus Glasper and Debra Glasper, husband and wife,<br><br>                                    Defendants. | **Case No.**<br><br>**VERIFIED COMPLAINT**<br><br>(Jury trial requested) |

For her Complaint, Cleopatria Martinez alleges:

**Parties**

1.      Cleopatria Martinez ("Dr. Martinez") is a United States citizen of Mexican national origin and at all relevant times a resident of Maricopa County, Arizona.

2.      Maricopa County Community College District (the "District") is a political subdivision of the state of Arizona, a body politic, and at all relevant times acted under color of state law.

3.      Rufus Glasper ("Chancellor Glasper") was at all relevant times the Chancellor of the Maricopa County Community College District and acting in that role, under color of state law, and for the benefit of his marital community.

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ  85226
(480) 705-7550

**Jurisdiction and Venue**

4.      This case arises under 42 U.S.C. § 1983 *et seq.*

5.      This court has federal question jurisdiction under 28 U.S.C. § 1331 and 1343(a).

6.      This court is the proper venue under 28 U.S.C. § 1391(b).

**General Allegations**

7.      Maricopa County Community College District employed Dr. Martinez since January 1, 1985 as a professor of mathematics.  Exhibit A, ¶1.

8.      Dr. Martinez is a tenured professor at Maricopa County Community College District.

9.      On August 9, 2013, Chancellor Glasper served a "Statement of Charges" on Dr. Martinez alleging that she violated the District's "cash handling" rules and violated United States copyright laws.  Exhibit B.

10.      Chancellor Glasper recommended that Dr. Martinez be dismissed from employment at the District based upon the misconduct alleged in the Statement of Charges, although Dr. Martinez has been employed by the District for almost thirty years and has no record of previous discipline.  *Id.*

11.      Dr. Martinez exercised her right to appeal from Chancellor Glasper's recommended dismissal pursuant to Residential Faculty Policy ("RFP") 3.15.3.  *See* Exhibit C.

12.      On November 18, 2013, a Hearing Committee conducted an evidentiary hearing and considered both testimonial and documentary evidence regarding the District's Statement of Charges against Dr. Martinez.

13.      The Hearing Committee made the following Findings of Fact, which are listed in Exhibit A in the correspondingly numbered paragraphs:

1.      After having taught mathematics full-time for ten years at Denver Community College, Dr. Cleopatria Martinez moved to Arizona and started teaching mathematics full-time at Scottsdale Community College on January 1, 1985.

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ 85226
(480) 705-7550

2.      Dr. Martinez voluntarily transferred to Phoenix College ("PC") in 1995 and has been teaching mathematics there full-time ever since.

3.      Dr. Martinez elected to voluntarily transfer to PC because there were very few minority students attending Scottsdale Community College, and she wanted to use her bilingual education skills in the mathematics classroom to better educate the large number of minority students attending PC.

4.      Dr. Martinez was elected by her colleagues to serve as the Chairperson of the Mathematics Department of PC from 2002 to 2005.

5.      In early 2010, PC discovered that Dr. Martinez may have exposed MCCCD to potential liability for copyright infringement.

6.      Dr. Martinez testified that, during her twenty-eight years of teaching mathematics in the MCCCD system, she and her colleagues in the Mathematics Departments of both Scottsdale Community College and PC routinely borrowed mathematics problems from other mathematicians to use in their student handouts for educational purposes on a not for profit basis.

7.      Dr. Martinez testified without rebuttal, that this borrowing of mathematics problems is a longstanding, widespread custom throughout the District and academia at large.

8.      Instead of requiring her mathematics students to purchase textbooks, Dr. Martinez prepared her own course materials which she called her "Lecture Notes" and distributed them to her students.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 77:17-78:15, 106:16-108:16, 121:25-140:13,132:16-137:25).

9.      Dr. Martinez read the Copyright Act of 1976 and believed that it authorized her to use small portions of other scholars' work under the "Fair Use" doctrine because she was using it only for classroom teaching purposes on a not for profit basis and her use of the material did not undermine the potential market for the other scholar's work.

10.     Per the "Fair Use" doctrine of the Copyright Act, the "use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.'' 17 U.S.C. § 107.

11.     Dr. Martinez copied problems from copyright protected textbooks and inserted them into her course materials.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 106:16-l08:16).

12.     Dr. Martinez, in her Basic Arithmetic (MAT082) course, copied problems directly from a copyrighted textbook entitled "Basic Mathematics" and inserted them into her "MAT082 Basic Arithmetic Spring 2010" course materials which she distributed to students.  MCCCD Exhibit List # 20 (Full-Sized Excerpted Comparison).  She did not seek or obtain permission from the copyright holder.

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ  85226
(480) 705-7550

13.    Dr. Martinez also copied problems directly from the Sullivan & Sullivan "Precalculus" textbook and inserted them into her ''MAT182 Trigonometry Spring 2010'' course materials.  MCCCD Exhibit List # 22 (Full-Sized Excerpted Comparison).  She did not seek or obtain permission from the copyright holder.

14.    Dr. Martinez did not require her students to purchase textbooks in her Spring MAT082 Course.  MCCCD Exhibit List # 18 (email from Dr. Martinez stating, "I indicated in my syllabus that, instead of a published textbook, I was using lecture notes in my MAT082 class.").

15.    Dr. Martinez did not require her students to purchase textbooks in her Spring MAT182 Course.  *See* Dr. Martinez's hearing testimony (conceding that students were not required to purchase a textbook in her Spring 2010 MAT182 course).

16.    On or around January 12, 2010, MCCCD's Vice President of Academic Services, Ronnie Elliot, sent Dr. Martinez an email notifying her that there were alleged copyright related problems with the materials she had printed for the Fall 2009 and Spring 2010 semesters.  MCCCD Exhibit List # 23 (January 12, 2010 email).  The materials in question were packets of course materials for Dr. Martinez's MAT182 and MAT187 courses and contained mathematics problems and graphs that were taken from copyrighted textbooks.  MCCCD Exhibit List # 1.1 (Ronnie Elliot Declaration, ¶¶8-9); MCCCD Exhibit List # 16 (MAT182 course packet); MCCCD Exhibit List # 7 (Sean Garrison October 28, 2010 Memorandum).

17.    Dr. Martinez used three of the four packets of lecture notes in the Spring of 2010 in two pre-calculus classes.  *See* District Exhibit 6, parts 1-3.

18.    The MCCCD administration, following Vice President Elliot's email, repeatedly explained its copyright concerns to Dr. Martinez and asked Dr. Martinez to remove any copyright protected mathematics problems from her materials.  *See* Kakar Hearing Testimony.

19.    On January 26, 2010, Vice President Elliot sent Dr. Martinez an email outlining MCCCD's concerns regarding Dr. Martinez's potential copyright infringement.  MCCCD Exhibit List # 24 (January 26, 2010 email).

20. On January 28, 2010, MCCCD in-house counsel Margaret McConnell discussed copyright compliance with Dr. Martinez telephonically. MCCCD Exhibit List # 25 (January 28, 2010 email).

21.    Dr. Martinez did not benefit from the multiple MCCCD copyright information sessions noted above.

22.    PC's own expert witness, Sean Garrison, testified that under the "Fair Use" doctrine, someone could lawfully copy from a copyrighted textbook without either using or purchasing the textbook.

23.    On. February 5, 2010, Vice President of Academic Affairs Casandra Kakar, Interim Vice President of Administrative Services Paul DeRose, and Dr. Martinez met to discuss Dr. Martinez's alleged misuse of copyrighted

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ 85226
(480) 705-7550

materials.  MCCCD Exhibit List # 26 (February 12, 2010 email).

24     Dr. Martinez has not used any of the four sets of "lecture notes" since the Spring of 2010 when PC first raised its concerns regarding the notes.

25.     On April 15, 2010, PC librarian Ann Roselle conducted a personalized one-on-one copyright training session with Dr. Martinez. MCCCD Exhibit List # 28 (Copyright PowerPoint Presentation).  *See also*, Kakar Hearing Testimony.

26.     When Dr. Martinez met with the librarian, the librarian told Dr. Martinez that Dr. Martinez knew as much about copyright law as she did. *See* Martinez Hearing Testimony.

27.     Following the revocation of Dr. Martinez's copying privileges, Dr. Martinez was required to submit her copy requests to Mathematics Department Chairperson Mr. Sueyoshi so that Mr. Sueyoshi could review her materials for possible copyright violations prior to copying and distribution to students.  MCCCD Exhibit List # 8 (April 2, 2010 Directive).

28.     Dr. Martinez sought and obtained a form of written permission from the publisher of the textbook, Sullivan & Sullivan's "Precalculus," to copy materials from their book after PC accused her of violating copyright law.

29.     On or around April 19, 2010, Dr. Martinez attempted to bypass the copying restrictions by having an adjunct mathematics Professor, Johnny Santellan, make 24 sets of copies of her "Lecture Notes" for distribution to her mathematics students without obtaining prior approval from the Mathematics Department Chairperson.  MCCCD Exhibit List # 12 (Sueyoshi Declaration); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 223:11-224:21).

30.     Because Dr. Martinez did not feel she was able to obtain reliable guidance regarding copyright compliance from the District, she sought advice from a private intellectual property attorney regarding the issue, Mr. Frederic Bellamy.

31.     Mr. Bellamy reviewed the first two sets of Dr. Martinez's "lecture notes" and concluded that they did not violate copyright law because they fell under the "Fair Use" doctrine.

32.     Mr. Bellamy based his conclusion that Dr. Martinez did not violate copyright law on the opinion that the portion of material that Dr. Martinez copied from the Sullivan & Sullivan Precalculus textbook was very small, that she used the copied materials exclusively for educational purposes without any profit motive, that the content of the copied material consisted of mathematics problems that are arguably not subject to copyright in the first place, and that the small portion of the textbook that Dr. Martinez copied did not adversely impact the potential market for the textbook.

33.     At the hearing, another lawyer practicing in the area of intellectual property law, Sean Garrison, testified on behalf of PC.  In contrast to Mr. Bellamy, Mr. Garrison testified at the hearing that the first three sets of Dr.

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ 85226
(480) 705-7550

Martinez's lecture notes violated copyright law.

34.     In contrast to his testimony at the hearing of November 18, 2013, in his written report Mr. Garrison concluded only that the first three sets of Dr. Martinez's lecture notes subjected the District ''to a serious risk of a copyright infringement claim." *See* District Exhibit 6, p.0002.

35.     MCCCD invited Dr. Martinez to a copyright workshop that was held on March 1, 2010 at PC.  Dr. Martinez chose not to attend the workshop. MCCCD Exhibit List # 10 (Solley Decl., ¶11).

36.     PC President Anna Solley, on December 9, 2010, concluded that Dr. Martinez's alleged misconduct posed an unacceptable legal risk of a copyright infringement claim and imposed restrictions on Dr. Martinez's photocopying privileges.  MCCCD Exhibit List # 10, (Solley Decl., ¶12).

37.     MCCCD sought a legal opinion from an outside copyright expert, attorney Sean Garrison.  MCCCD Exhibit List # 10 (Solley Decl., ¶14); MCCCD Exhibit List # 7 (Sean Garrison October 28, 2010 Memo).

38.     According to Mr. Garrison, the third set of "lecture notes" appeared to have 13 mathematics problems copied from two other mathematics textbooks.

39.     Mr. Garrison testified that he was certain that Dr. Martinez has committed copyright infringement.  *See* Garrison Hearing Testimony.  In reaching this conclusion, Mr. Garrison reviewed thousands of pages of materials including nearly 300 pages of Dr. Martinez's lecture notes and three separate copyrighted mathematics textbooks.  MCCCD Exhibit List # 6 (Sean Garrison Aprill9, 2013 Report); *see also* Garrison Hearing Testimony.

40.     In reliance upon Mr. Garrison's recommendations, PC President Anna Solley issued a December 9, 2010 directive that imposed further restrictions on Dr. Martinez's copying privileges.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 10 (Solley Decl., ¶15).

41.     The December 9, 2010 Directive prohibited Dr; Martinez from utilizing any course materials of her own creation.  MCCCD Exhibit List # 9 (December 9, 2010 Directive).  Instead Dr. Martinez was required to only use course materials that are "approved by the mathematics department" or that are "available" in the bookstore for sale to students and that are authored by persons other than [Dr. Martinez]."  MCCCD Exhibit List # 9 (December 9, 2010 Directive).

42.     The December 9, 2010 Directive further required Dr. Martinez to submit her photocopy requests to the Mathematics Department Chair for his approval.  MCCCD Exhibit List # 9 (December 9, 2010 Directive).

43.     Despite MCCCD's frequent discussions with Dr. Martinez regarding the importance of complying with copyright laws and the December 9, 2010 Directive, Dr. Martinez continued to attempt to ignore the directive. *See* Kakar Hearing Testimony.

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ  85226
(480) 705-7550

44.    At the beginning of the Fall 2012 semester (on or about August 21-23, 2012), Dr. Martinez informed her students that they were not required to purchase a course textbook and that she would provide them with her own course materials in lieu of a textbook.  MCCCD Exhibit List # 4 5 (Martinez Depo., pp. 232:19-233:21).

45.    In the fall of 2012, Dr. Martinez sought to have her lecture notes photocopied off campus at a nearby Staples store.  This practice is inconsistent with the December 9, 2010 Directive.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

46.    Dr. Martinez did not submit her Fall 2012 materials to Mathematics Department Chairperson Mr. Sueyoshi for approval.  MCCCD Exhibit List # 4-5 (Martinez Depo pp: 232:19-233:21).

47.    Dr. Martinez made copies of her course materials at an off campus Staples store and distributed them to students for $11 per copy.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

48.    The $11 course material fee was paid directly to Dr. Martinez by students.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

49.    PC accused Dr. Martinez of violating the District's "cash handling" rules by distributing these course materials to her students if the students reimbursed her for her out-of-pocket copying costs.

50.    PC subsequently claimed that Dr. Martinez violated the District's "cash handling" policies by seeking reimbursement for the copies.

5l.    MCCCD's policies prohibit instructors from having "any financial interest in or receiv[ing] compensation from the sale of any unpublished instructional materials required or suggested for a class that the instructor teaches."  MCCCD Exhibit List # 41 (Residential Faculty Policies, 3.2.4).

52.    Dr. Martinez failed to follow the protocol set forth in the December 9, 2010 Directive in copying her Fall 2012 course materials.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232;19-233:21).

53.    Dr. Martinez distributed course materials directly to students in her Fall 2012 MAT151) class.  MCCCD Exhibit List # 4-5 (Martinez Depo. pp. 232:19-233:21).

54.    The MCCCD Administration learned of Dr. Martinez's unauthorized distribution of course materials to students after one of Dr. Martinez's MAT15l students complained to Mathematics Department Chairperson Mr. Sueyoshi.  The student complained that Dr. Martinez refused to provide her with a receipt for the purchased course materials.  *See* Kakar Hearing Testimony.

55.    Upon learning that Dr. Martinez had distributed course materials to students allegedly in violation of MCCCD's cash handling policy, President Solley instructed Martinez to immediately issue refunds to her students via personal check.  MCCCD Exhibit List # I (October 18, 2012 Counseling

Notice); *see also* Kakar Hearing Testimony.

56. On or around October 18, 2012, President Solley; and Dr. Kakar met with Dr. Martinez to explain the seriousness of Dr. Martinez's alleged cash handling violation. MCCCD Exhibit List # 3 (October 18. 2012, Counseling Notice); *see also* Kakar Hearing Testimony. In addition, President Solley and Dr. Kakar prepared a written counseling memo dated October 18, 2010 for Dr. Martinez regarding her alleged violation of cash handling rules. Dr. Martinez was provided with a copy of the October 18, 2010 counseling notice and President Solley proceeded to explain to Dr. Martinez the seriousness of the alleged cash handling violations and the requirement that Dr. Martinez issue reimbursements to her students. MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); *see also* Kakar Hearing Testimony.

57. Several months later, on or around January 9, 2013, Dr. Kakar learned that most (if not all) students had not yet received refunds from Dr. Martinez. MCCCD Exhibit List # 39 (various emails regarding student refunds). As a result, Dr. Kakar instructed Dr. Martinez to provide copies of refund checks by January 18, 2013. MCCCD Exhibit List # 39 (various emails regarding student refunds).

58. Dr. Martinez failed to produce a single refund check by the January 18, 2013 deadline. MCCCD Exhibit List # 39 (various emails regarding student refunds).

59. Dr. Martinez did not think that she had violated any District rule in reference to the copies. Therefore, she declined to follow the December 9, 2010 order because she believed she was not required to do so under any District rule.

60. At the November 18, 2013 hearing, Dr. Martinez did not provide any explanation for her refusal to comply with the October 18, 2012 and January 9, 2013 directives to issue refunds to her students. *See* Martinez Hearing Testimony.

61. At the hearing Dr. Martinez testified that she had made a "mistake" and, in retrospect, should have complied with President Solley's instructions. *See* Martinez Hearing Testimony.

62. On or around August 9, 2013, MCCCD Chancellor Glasper sent Dr. Martinez a letter informing her that MCCCD was proceeding with termination proceedings. Included with this letter was a statement of charges that summarized the particular violations Dr. Martinez had been charged with (hereinafter referred to as "Statement of Charges.") MCCCD Exhibit List # 1 (Statement of Charges).

14. The Hearing Committee unanimously rendered the following conclusions, which are in Exhibit A in the correspondingly numbered paragraphs:

63. PC failed to carry its burden of proof relating to violation of MCCCD's cash handling rules found in MCCCD Administrative Regulations 1.17, violation of Residential Policy Manual 3.2.4 (relating to financial interests in unpublished materials), violation of U.S. Copyright

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ 85226
(480) 705-7550

-8-

Law and fair use guidelines, and violation of MCCCD Administrative Regulations 3.2.4 and 3.2.5 related to copyright regulations.

64.    Notwithstanding their education, their experience, and their good faith, Mr. Bellamy and Mr. Garrison disagreed as to whether or not Dr. Martinez violated copyright law.  Therefore, it is inconclusive whether Dr. Martinez intentionally and/or inadvertently violated federal copyright law.

65.    It is inconclusive as to whether or not Dr. Martinez violated the "cash handling" policies of MCCCD.

66.    Dr. Martinez willfully and intentionally failed to follow instructions that were communicated to her when she failed to issue refunds to students as directed by President Solley.

67.    Dr, Martinez conceded that she never complied with President Solley's clear directive to issue refunds to her students.  Although Dr. Martinez now regrets her decision not to comply with President So11ey's directive, she has never claimed that she did not understand the instructions or that the instructions were beyond the scope of management's authority. Viewed in light of these facts, Martinez's claim that she "made a mistake" is an admission of willful insubordination.

68.    By failing to comply with President Solley's directive to issue refunds to her students, Dr. Martinez violated MCCCD Administrative Regulations 6.7.1, which prohibits the "[w]illful and intentional violation of any . . . MCCCD administrative regulation that affects the employee's ability to perform his or her job."

69.    By failing to comply with President Solley's directive to issue refunds to students, Dr. Martinez violated MCCCD Administrative Regulation 6.7.3 which prohibits the "[w]illful and intentional failure to perform job duties that have first been communicated to an employee and are within the employee's scope of employment."

15.    The Hearing Committee made the following recommendations, which are in Exhibit A in the correspondingly numbered paragraphs:

70.    We hereby recommend that the Governing Board deny President Solley's termination request and allow Dr. Martinez to continue her MCCCD employment.

71.    Per MCCCD Administrative Regulation 6.7 indicating that violation of any Employment Standards "constitutes grounds for disciplinary action *up to* [emphasis added] and including termination," we hereby recommend that the Governing Board retain Dr. Martinez.

16.    Notwithstanding the Hearing Committee's unanimous conclusion that the District had failed to satisfy its burden of proof and that Dr. Martinez should be allowed to continue her employment, Chancellor Glasper unilaterally discontinued her employment

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ  85226
(480) 705-7550

-9-

by suspending Dr. Martinez's employment on March 7, 2014 without pay for fourteen and a half months – from March 1, 2014 to May 15, 2015.

17.     The suspension was based upon a new Statement of Charges backdated to February 10, 2014 that contains facts specifically rejected by the Hearing Committee. Exhibit D.

18.     The Notice of Suspension states:

> Based upon the written statement of charges, I have decided to suspend your employment under my sole authority as Chancellor pursuant to section 3.11 of the Residential Faculty Policies.  The purpose of this letter [is] to notify you that your suspension from your position as Mathematics faculty at Phoenix College will begin on March 1, 2014 and end on May 15, 2015.  Your teaching responsibilities and pay will resume Fall semester, 2015 unless you choose to retire.

Exhibit D.

19.     Although the Hearing Committee found the District had not proved Dr. Martinez violated copyright law or the District's money handling policy, Chancellor Glasper's Statement of Charges, which claims it was expressly based on the Hearing Committee's findings, reiterates those same unproven allegations.  Exhibit D ("Based upon the findings of the hearing committee which are attached to this statement . . .").

20.     Chancellor Glasper justified the suspension citing Residential Faculty Policy 3.11.

21.     Residential Faculty Policy 3.11 states:

**3.11 Suspension of a Faculty Member**

**3.11.1**

Upon written statement of charges formulated by the Chancellor, charging a faculty member of the MCCCD, the Chancellor, or his/her designee, may immediately suspend the Faculty member and give notice of suspension. At the option of the Faculty member, the MCCCD Faculty Association President will be notified of this action.

**3.11.2**

The notice of suspension shall be in writing and be served upon the Faculty member, personally or by U.S. (registered or certified) mail, addressed to the Faculty member at his/her place of residence in the MCCCD records.

**3.11.2**

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ  85226
(480) 705-7550

Any Faculty member who has been suspended pursuant to this Section will normally be paid his/her salary during the period of suspension. A suspension without pay will occur only upon advice of General Counsel. If payment is to be withheld, the Vice Chancellor of Human Resources will first consult with and advise the member, and at the option of the Faculty member, the Faculty Association President regarding the rationale for that action.

22.     The Acting/Interim Vice Chancellor of Human Resourced did not consult with Dr. Martinez until a week after Chancellor Glasper suspended her pay.

23.     Residential Faculty Policy 3.11 is distinct from Residential Faculty Policy 3.13, Faculty Member Dismissal – Probationary and Appointive. *See infra.*

24.     Chancellor Glasper conflated RFP 3.11 and 3.13.

25.     RFP 3.13 does not give Chancellor Glasper the right to suspend a Faculty member without pay based upon a statement of charges seeking dismissal.

26.     Under RFP 3.13.8, Chancellor Glasper must forward his recommendation if different than the Hearing Committee's recommendation, "along with the summary of the evidence, a copy of the findings of fact, conclusions of law, and final recommendations of the Hearing Committee to the Governing Board." *See infra.*

27.     Under RFP 3.13.10, "[t]he Governing Board . . . shall render a final decision for retention or dismissal." *See infra.*

28.     Chancellor Glasper short circuited the hearing procedures and usurped the Board's prerogative by failing to follow RFP 3.13.10 and unilaterally imposing an unpaid suspension.

29.     A suspension without pay for fourteen and a half months deprived Dr. Martinez of the benefits of her contract for part of the 2013/2014 school year and her entire contract for the 2014/2015 school year.

30.     Chancellor Glasper's rejection of the Hearing Committee's factual findings and unilateral imposition of a fourteen-month, unpaid suspension on Dr. Martinez violates the District's Residential Faculty Policies and flatly usurps the Board's ultimate authority to discipline its employees.

31.     Specifically, RFP 3.13 provides:

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ 85226
(480) 705-7550

### 3.13. Faculty Member Dismissal – Probationary and Appointive

A Faculty member who is recommended, by the College President, through the Chancellor, to the Governing Board, for dismissal shall have access to the following due process procedures.

### 3.13.1.

A written statement of charges, formulated by the College President, shall be forwarded to the Vice Chancellor of Human Resources. After review of the charges, the Vice Chancellor, in consultation with the MCCCD Legal Office, may recommend, to the Chancellor, that there exists prima facie cause for the dismissal of a Faculty member. The Chancellor shall inform the Governing Board in writing, with a copy of the recommendation being sent (U.S. certified or registered mail) to the Faculty member at his/her place of residence as recorded in the MCCCD records. The Vice Chancellor's recommendation will give notice to the Chancellor, Governing Board, and the Faculty member of the intention to formally recommend dismissal, which shall not be sooner than thirty (30) days from the date of the letter, nor later than the end of the current academic year.

### 3.13.2.

A written statement of charges shall be provided to the Chancellor, Governing Board, and the Faculty member as an attachment to the notification outlined in the preceding paragraph. The statement of charges shall state, if applicable, the statutes, policies, rules, or written objectives of the College that the Faculty member is alleged to have violated. The statement of charges shall be of such specificity that the Faculty member will be able to prepare a defense based on the statement.

### 3.13.3.

The Faculty member shall have the right to a hearing by filing a written request with the Vice-Chancellor within five (5) business days after being served with a notice of intent to dismiss. The filing of a timely request shall suspend the dismissal procedure, pending the completion of the hearing.

### 3.13.4.

Upon request, a Hearing Committee shall be constituted within five (5) business days and shall be composed of three (3) Faculty members: one (1) appointed by the Chancellor, one (1) selected by the President of the Faculty Association, and one (1) selected by the member. All three (3) shall be Appointive Faculty. The committee member selected by the Chancellor and the President of the Faculty Association will be from colleges other than the college where the Faculty member recommended for dismissal is assigned. The committee shall be considered constituted when the hearing committee and the Faculty member have been informed by the Faculty Association President of the committee's formation.

### 3.13.5.

The Hearing Committee shall select a Chair. Unless the parties stipulate to

extend the time beyond that which is set forth below, the Chair shall conduct a meeting with the attorney representing the MCCCD and the Faculty member and/or his/her attorney/representative not later than twenty (20) business days after the formation of the committee for the purpose of exchanging exhibits, witness lists, and summaries of witness testimony deny admission of an exhibit(s) or witness testimony for failure to comply with this Section.

**3.13.6**

Unless the parties otherwise agree, the Hearing Committee shall conduct the hearing no later than ten (10) business days after the exchange of information detailed in Section 3.13.5.  Prior to the hearing, the Faculty member must declare, in writing, whether he/she wishes the hearing to be public or in executive session.  The member may attend the hearing; present any testimony, evidence, or statements, oral or written, in his/her behalf; and be represented by legal counsel or other representative.  It is expressly understood the act of testifying will not be subject to reprisal by the MCCCD.

**3.13.7.**

Within five (5) business days after completion of the hearing, the Hearing Committee shall provide the Chancellor, and the Faculty member with a summary of the evidence that was presented during the hearing.  In addition, **the Hearing Committee shall render binding written findings of fact and conclusions of law** and forward these along with its recommendation regarding dismissal to the Chancellor.  The above deadline may be extended up to fifteen (15) business days after completion of the hearing, if the Hearing Committee requests briefs and/or recommended findings of fact and conclusions of law from the parties. (emphasis added).

**3.13.8.**

After receiving the Hearing Committee's summary of evidence, findings of fact, conclusions of law, and final recommendation in regard to dismissal, the Chancellor, may meet with the Hearing Committee to clarify any questions he/she may have.  The Chancellor shall have ten (10) business days in which to review the recommendation regarding dismissal.  The Chancellor may adopt the Hearing Committee's recommendation regarding dismissal or make his/her own recommendation and forward the recommendation along with the summary of the evidence, a copy of the findings of fact, conclusions of law, and final recommendations of the Hearing Committee to the Governing Board.

**3.13.9.**

The Governing Board will meet with the Faculty member and/or his/her representative and a representative of the administration to hear arguments regarding the Chancellor's and the Hearing Committee's recommendation regarding dismissal. This meeting will be an executive session unless the Faculty member chooses to have this meeting in public. The parties shall have no less than one-half hour to present their respective cases.  The

-13-

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ 85226
(480) 705-7550

length of the meeting shall not exceed one (1) hour.

**3.13.10.**

The Governing Board, at a public meeting, shall render a final decision for retention or dismissal of the Faculty member. A copy of the final decision shall be sent (U.S. certified or registered mail) to the Faculty member at his/her place of residence as recorded in MCCCD records. It is expressly understood that the Governing Board decision does not diminish the Faculty member's right to seek other legal remedies under local, state and federal law.

32.     The Chancellor did not forward the Hearing Committee's recommendation to the Board for its final determination on whether to retain or dismiss Dr. Martinez.

33.     Chancellor Glasper imposed the suspension in reliance on the advice of counsel. Exhibit D.

34.     Chancellor Glasper's unilateral suspension of Dr. Martinez violated her rights under the RFP and her right to due process under Arizona and federal law.

35.     Chancellor Glasper's new Statement of Charges of February 10, 2014 contains allegations regarding Dr. Martinez's alleged violation of federal copyright law that were expressly considered and rejected by the Hearing Committee.

36.     The Hearing Committee specifically concluded that the District failed to meet its burden of proof regarding its allegation that Dr. Martinez violated federal copyright laws or the District's cash handling policy.

37.     These findings are binding on the District under RFP 3.13.7, but Chancellor Glasper's Statement of Charges specifically faults Dr. Martinez for violating federal copyright laws and the cash handling policy. *See* Exhibit D, p.2.

38.     Chancellor Glasper's new Statement of Charges also contains violations that were not set forth in the original Statement of Charges of August 9, 2013 and that were never even considered by the Hearing Committee.

39.     For example, Chancellor Glasper's new Statement of Charges of February 10, 2014 claims for the first time that Dr. Martinez violated MCCCD Administrative Regulations 1.12.2 and 1.12.3. *See* Exhibit D, p.3.

40.     Neither of these regulations was even mentioned in the original Statement of Charges.

41.     In addition to violating the RFP, Chancellor Glasper's new Statement of Charges violates Dr. Martinez's due process rights under state and federal law.

42.     Specifically, although Dr. Martinez's suspension was predicated upon a new Statement of Charges, she was never even given the opportunity to respond to the Statement of Charges in writing before she was suspended.

43.     Moreover, Chancellor Glasper also failed to allow Dr. Martinez any opportunity to present evidence refuting the new Statement of Charges before a neutral finder-of-fact.

44.     Accordingly, Chancellor Glasper's suspension failed to provide Dr. Martinez with any due process at all, although it has severely damaged her reputation and deprived her of over a year's salary.

45.     Furthermore, although under the RFP, the Chancellor's Recommendation regarding the Hearing Committee's Findings and Conclusions are subject to the Board's ultimate review and approval, under RFP 3.13.8-3.13.10, Chancellor Glasper did not submit the Committee's findings or his Notice of Suspension for the Board's consideration or approval.

46.     Chancellor Glasper attempted to justify his unilateral, fourteen-month, unpaid suspension of Dr. Martinez by claiming that he is not required to submit "suspensions" to Board for approval.  However, because the original Statement of Charges against Dr. Martinez clearly involved "dismissal," not "suspension" both the Hearing Committee's recommendation and Chancellor Glasper's Recommendation are expressly subject to ultimate Board approval under RFP 3.13:8-3.13.10.

47.     A chancellor cannot suspend a faculty member for fourteen and a half months without pay without the ultimate approval of the Board.

48.     A suspension without pay for fourteen and a half months amounts to a property deprivation sufficient to implicate procedural due process protections.

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ 85226
(480) 705-7550

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ  85226
(480) 705-7550

49.     Dr. Martinez was not provided a pre-suspension hearing.

50.     Dr. Martinez was not provided a post-suspension hearing.

51.     Dr. Martinez filed a grievance regarding the suspension.  Exhibits E-H.

52.     The District told Dr. Martinez she could not grieve the suspension while she was on suspension and had to wait until she returned to work after the suspension. Exhibit E.

53.     Although the Notice of Suspension stated Dr. Martinez would resume her teaching responsibilities in the Fall of 2015, the District interfered with her ability to do so.

54.     When the District published the Fall 2015 class schedule, Dr. Martinez was not included in it.

55.     Dr. Martinez did not appear in the Fall class schedule until July 2015.

56.     The normal procedure is to ask tenured professors, based on seniority, what classes they want to teach in advance of publication, but the District did not ask Dr. Martinez despite her being a senior faculty member.

57.     Dr. Martinez began inquiring about her class schedule in March 2015.

58.     She requested classes that had not been assigned to any instructor or that had been assigned to adjuncts.

59.     The normal procedure is for tenured professors to be able to "bump" adjuncts.

60.     The District did not assign classes to Dr. Martinez until July 2015, but denied her access to her office or a computer, parking, and did not issue her faculty identification.

61.     The District informed Dr. Martinez that she would not be an employee again until the first day of accountability, *i.e.,* one week before classes began) and would not issue her an identification badge or give her access to a computer or her office until that day.

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ 85226
(480) 705-7550

62.     Normally, a tenured professor would have access to her office and computer all summer to prepare for fall classes.

63.     After Dr. Martinez complained numerous times, the District agreed to give her access to her office and computer, but only ten days before classes started, despite Dr. Martinez having informed the District that she would be out of town at that time and needed access sooner to properly prepare for class and assume her teaching responsibilities.

64.     The District's refusal to allow Dr. Martinez to assume her teaching responsibilities in a timely fashion is an additional measure of punishment and not countenanced by the RFP or even the Chancellor's Notice of Suspension.

65.     Dr. Martinez had to fight the District just to be able to order textbooks for her fall classes before classes commenced.

66.     The District communicated Chancellor Glasper's decision to suspend Dr. Martinez to the Presidents of the Faculty Senate and advised them not to communicate with Dr. Martinez, which impeded her ability to continue in her profession.

67.     The suspension prevented Dr. Martinez from finding other meaningful employment because she remained a tenured professor with the District.

68.     Dr. Martinez's interest in the continuation of her employment and pay is significant.

69.     The Defendants have no interest that justified suspending Dr. Martinez without pay without due process.

70.     Dr. Martinez had a property interest in her job and her tenure. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985).

71.     Dr. Martinez was entitled to either a pre-suspension or post-suspension hearing. *See Association for Los Angeles Deputy Sheriffs v. Count of Los Angeles,* 648 F.3d 986, 991 (9th Cir. 2011) ("Temporary suspensions, like terminations, are deprivations of employment that can implicate the protections of due process of law"), *id.* at 992 (citing *Gilbert v. Homar,* 520 U.S. 924, 930 (1997)); *id.* at 933 ("Summary

suspensions with minimal or no pre-suspension due process are constitutional only if followed by adequate post-suspension procedures.").

72.     Chancellor Glasper's decision to suspend Dr. Martinez without pay for fourteen and a half months violated Dr. Martinez's constitutional due process rights.

73.     The applicable constitutional standards were clearly established at the time of the District's and Chancellor's actions.

74.     The pertinent constitutional standards are long-standing, were clearly established at the time of the suspension, and include:

A property right in employment. *See Slochower v. Board of Higher Education of City of New York*, 350 U.S. 551 (1956); *Perry v. Sindermann*, 408 U.S. 593 (1972);

A property right in her tenure. *See Board of Regents v. Roth,* 408 U.S. 564, 576-77 (1982);

A right to adequate notice and an opportunity to be heard before a job can be taken away. *See Roth*, 408 U.S. at 573 & n. 12; *see also Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542-45 (1985).

A right to due process free of bias. *See e.g. Palko v. Connecticut*, 302 U.S. 319, 327 (1937); *Fay v. New York*, 332 U.S. 261, 288 (1947); *Kwock Jan Fat v. White*, 253 U.S. 454, 457 (1920); *Ciechon v. City of Chicago*, 686 F.2d 511, 517 (7th Cir.1982).

75.     The suspension of fourteen and a half months combined with the actions of Chancellor Glasper and the District affected Dr. Martinez's liberty interest. *See Finkelstein v. Berguna,* 924 F.2d 1449, 1452 (1991) ("The procedural protections of due process apply if the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connections with termination of employment *or the alteration of some right or status recognized by state law.*") (emphasis in original) (citing *Vanelli v. Reynolds Sch. Dist. No. 7,* 667 F.2d 773, 777-78 (9th Cir. 1982)).

76.     Chancellor Glasper justified the suspension based on the charges underlying the November 18, 2013 hearing and the new charges he raised in his Notice of Suspension.

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ  85226
(480) 705-7550

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ 85226
(480) 705-7550

77.     But on December 9, 2013, counsel for the Hearing Committee informed Chancellor Glasper it "determined that Phoenix College did not carry its burden of proof relating to the issues of copyright violation and the cash handling policy violations." Exhibit I.  And, "the District's failure to carry its burden of proving the alleged copyright policy and alleged cash handling policy violations overshadowed the findings of insubordination.  Therefore, the Committee deemed that the punishment of termination was disproportionate to Dr. Martinez's misconduct." *Id.*

78.     Despite the Hearing Committee's findings and recommendation and that Dr. Martinez has already served a fourteen and a half month suspension without pay, the District continues to punish Dr. Martinez for the unproven allegations.

79.     On August 24, 2015, despite the District having failed to prove Dr. Martinez violated any copyright laws, representatives of the District met with Dr. Martinez with the intent of having her sign an Agreement prepared by Phoenix College President Anne Solley back in September 2011, which was based on a November 17, 2010 allegation that Dr. Martinez violated copyright laws.  Exhibit J.

80.     The Agreement would impose significant restrictions on Dr. Martinez including requiring her to make copies for course work at her own expense, prohibiting use of District copying equipment, waive her right to have the District indemnify her, waive her right to grieve the District's discipline, waive all claims she has against the District.  *Id.*

81.     On August 25, 2015, the Interim President, Chris Haines, informed Dr. Martinez by letter that the restrictions placed on Dr. Martinez on December 9, 2010, which were based on the unproven allegation underlying the August 23, 2013 Statement of Charges, would remain in place.  Exhibit J.

82.     Ignoring that Dr. Martinez had been cleared of the allegations of copyright violation and cash handling violation and had served a fourteen and a half month unpaid suspension, Interim President Haines informed Dr. Martinez:

On December 9, 2010, after receiving the recommendation of the

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ  85226
(480) 705-7550

Administrative Review team, the College president issued a memorandum directing you to use only course materials approved by the department, that are available in the bookstore for sale to students and that are authored by persons other than yourself.  A copy of the memorandum is attached, and its terms are incorporated in this memorandum.  The attached directive has never been cancelled by a Phoenix College president, and it remains in force and effect until cancelled in writing.  This memo is intended to prevent any misunderstanding on your part that I intend to enforce this directive.

Also, I am informed that a corrective action was issued to you, for selling copies of materials to your students in violation of the MCCCD cash handling rules, and that you remain in violation of a related directive to reimburse the students the money you collected.  I will be working with the appropriate officials to address that concern.  You may avoid disciplinary action by immediately reimbursing the students directly, or by authorizing the district to do so by deducting money from your paycheck and transferring the amounts due to the students.  In the event reimbursement is not completed (or authorization in not forthcoming) immediately, I will take such action as necessary.

Exhibit K.

83.     Dr. Martinez's constitutional rights were violated based on the District's policy or custom.

84.     The District's policies or customs caused a violation of Dr. Martinez's constitutional rights.

85.     The District continues to violate Dr. Martinez's constitutional rights by imposing restrictions and threatening termination of her employment based on allegations, which the District was unable to prove or for which she has already served a fourteen and a half month suspension.

86.     The restrictions the District is imposing on Dr. Martinez interferes with her rights in her own copyrighted work and her First Amendment right to academic freedom.

**Jury Demand**

87.     Dr. Martinez demands a trial by jury on all triable issues

**COUNT I**
(Chancellor Glasper – 42 U.S.C. § 1983 – Liberty interest)

88.     All previous paragraphs are incorporated by reference.

89.   Chancellor Glasper acting under color of state law suspended Dr. Martinez for fourteen and a half months without pay.

90.   The fact of the suspension interfered with Dr. Martinez's ability to perform in her profession and damaged her reputation in her professional community.

91.   Chancellor Glasper's actions damaged Dr. Martinez's liberty interests.

**COUNT II**
(Chancellor Glasper – 42 U.S.C. § 1983 – Property interest)

92.   All previous paragraphs are incorporated by reference.

93.   Dr. Martinez had property interests in her contracts and as a tenured professor which are protected under the due process clauses of the United States Constitution.

94.   Acting under color of state law Chancellor Glasper deprived Dr. Martinez of property interests in her employment without due process of law.

95.   Chancellor Glasper's actions damaged Dr. Martinez.

**COUNT III**
(District – 42 U.S.C. § 1983 – Liberty Interest)

96.   All previous paragraphs are incorporated by reference.

97.   The District acting under color of state law suspended Dr. Martinez for fourteen and a half months without pay.

98.   The District interfered with Dr. Martinez's ability to perform in her profession and damaged her reputation in her professional community.

99.   The fact of the suspension interfered with Dr. Martinez's ability to perform in her profession and damaged her reputation in her professional community.

100.   The District's actions damaged Dr. Martinez's liberty interests.

**COUNT IV**
(District – 42 U.S.C. § 1983 – Property Interest)

101.   All previous paragraphs are incorporated by reference.

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ  85226
(480) 705-7550

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ 85226
(480) 705-7550

102.    Dr. Martinez had property interests in her contracts and as a tenured professor which are protected under the due process clauses of the United States Constitution.

103.    Acting under color of state law the District deprived Dr. Martinez of property interests in her employment without due process of law.

104.    The District's actions damaged Dr. Martinez.

WHEREFORE, Plaintiffs seek relief as follows:

A.    contractual damages in an amount to be proven at trial;

B.    consequential and incidental damages in an amount to be proven at trial;

C.    damages for pain, suffering, humiliation, embarrassment, mental anguish, anxiety, and emotional distress in an amount to be proven at trial;

D.    an award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

E.    an award of costs, and

F.    such other and further relief that the Court deems proper.

Dated this 2nd day of September 2015,

LAW OFFICES OF KEVIN KOELBEL, P.C.

By: s/Kevin Koelbel

Kevin Koelbel

Attorneys for Plaintiff