Edmundo P. Robaina (No. 018125)
Thomas T. Griffin (No. 022475)
Ashley A. Marton (No. 029442)
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
epr@robainalaw.com
ttg@robainalaw.com
aam@robainalaw.com

Attorneys for Plaintiff Cleopatria Martinez

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Cleopatria Martinez,<br><br>                Plaintiff,<br>vs.<br><br>Maricopa County Community College District, *et al.*,<br><br>                Defendants. | No. CV 15-01759 NVW<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

Pursuant to Fed.R.Civ.P. 56, Plaintiff Cleopatria Martinez ("Martinez") hereby files her motion for summary judgment against Defendants Maricopa County Community College District ("MCCCD") and Rufus Glasper ("Glasper"). Martinez respectfully requests that the Court find as a matter of law that Defendants violated Martinez's Fourteenth Amendment due process rights and are liable to Martinez pursuant to 42 U.S.C. § 1983 for compensatory damages.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

In August of 2013, Glasper, who was MCCCD's Chancellor, sent Martinez, a mathematics professor, a notice of intent to dismiss her from her employment pursuant to MCCCD policies regarding dismissal of faculty. Martinez, who, pursuant to MCCCD policies, could not be disciplined without just cause, requested a hearing on the matter.

After an evidentiary hearing, the Hearing Committee, whose findings of fact and conclusions of law were binding on the parties, recommended to the final decisionmaker, MCCCD's Governing Board, that Martinez be retained. Under MCCCD's policies, Glasper had the option of accepting the Hearing Committee's recommendation or making his own recommendation to the Governing Board, which could have been a recommendation for a lesser discipline.

Glasper accepted the Board's recommendation not to dismiss Martinez, and did not recommend a lesser discipline to the Governing Board. Instead, relying on a distinct section of the Residential Faculty Policies regarding suspensions, and also relying, in part, on a new allegation, he unilaterally suspended Martinez without pay or benefits for what amounted to sixteen months. In doing so, Glasper violated Martinez's due process rights. As a result, Martinez is entitled to compensatory damages.

## II. FACTUAL BACKGROUND

### A. Martinez's Employment with MCCCD, and the Notice of Intent to Dismiss

Martinez began her employment as a full-time mathematics professor with MCCCD[1] in 1985, and has taught at MCCCD's Phoenix College campus since 1995. [Plaintiff's Statement of Facts ("PSOF") ¶ 1]. On August 9, 2013, Glasper, who, at relevant times, was MCCCD's Chancellor,[2] issued Martinez a notice of intent to dismiss Martinez from her employment. [PSOF ¶ 3]. In the notice, Glasper wrote that Interim Vice Chancellor for Human Resources James Bowers had reviewed the alleged charges against Martinez, in consultation with the MCCCD Legal Office, and recommended to Glasper that there existed *prima facie* cause for Martinez's dismissal. [PSOF ¶ 5]. Glasper further wrote that he concurred with the Bower's recommendation. [PSOF ¶ 6].

Included with the notice was a "Statement of Charges," in which it was alleged

---

[1] MCCCD is a political subdivision of the state of Arizona. [PSOF ¶ 2].
[2] Glasper was MCCCD's chancellor from 2003 until the end of February 2016. [PSOF ¶ 4].

2

that Martinez had engaged in the following: [3]

- Violation of Administrative Regulation 6.7.1 – 'Willful and Intentional violation of any state or federal law, applicable ordinance, MCCCD Governing Board policy, or MCCCD administrative regulation that affects the employee's ability to perform his or her job,' specifically:

    o Violation of MCCCD's cash handling rules as covered by MCCCD Administrative Regulations 1.17.

- Violation of Residential Faculty Policy Manual 3.2.4 – 'A Faculty member shall not have any financial interest in or receive compensation from the sale of any unpublished instructional materials required or suggested for a class that the Faculty member teaches.'

- Violation of U.S. Copyright Law and fair use guidelines, and MCCCD Administrative Regulations 3.2.4 and 3.2.5 regarding copyright regulations:

    3.2.4 Employees are prohibited from copying materials not specifically allowed by the (1) copyright Law, (2) fair use guidelines, (3) Licenses or contractual agreements, or (4) other permission.

    3.2.5 The Governing Board disapproves of unauthorized duplication in any form. Employees who willfully disregard this Board policy and/or the aforementioned copyright guidelines do so at their own risk and assume all liability for their actions.

- Violation of Administrative Regulation 6.7.3 – 'Willful and intentional failure to perform job duties that have first been communicated to an employee and are within the employee's scope of employment,' specifically, repeated failure to follow instructions regarding printing/copying of unauthorized materials, failure to use only approved course materials, unauthorized copying and sale of course materials, failure to reimburse students for the materials your wrongfully charged them for, and failure to

---

[3] The allegations in the August 9, 2013 Statement of Charges are taken verbatim from a March 20, 2013 Notice of Pre-Disciplinary Conference, which includes copies of the specific policies Martinez is alleged to have violated. [PSOF ¶ 8].

meet the deadline to provide copies of any reimbursement checks to students.

Brief Timeline:

- January 2010 – College Vice Presidents Ronnie Elliott, Paul DeRose and Cassandra Kakar; along with Maggie McConnell; Assistant General Counsel, reviewed the requirements of AR 3.2 with you at length.

- April 2, 2010 – Anna Solley, Phoenix College President, notified you that your copying privileges at the Phoenix College IKON Copy Center were suspended.

- Spring 2010 – An Administrative Evaluation was initiated based on Mr. Joe Sueyoshi's complaint. By agreement, the Evaluation Team did not undertake its task until the fall semester. The findings and recommendations were submitted to Dr. Solley on November 17, 2010. The overall findings included:

    o   Copyright and plagiarism: Dr. Martinez was notified in writing and in meetings of MCCCD's and Phoenix College's concerns regarding her course materials violating copyright, fair use, and plagiarism laws.

    o   Insubordination: Dr. Martinez failed to follow Dr. Solley's and MCCCD's Legal Counsel's directives - specifically, she repeatedly requested copies, copied and printed unauthorized materials.

- December 9, 2010 – Dr. Solley administered an Initial Corrective Action to you for insubordination and failure to follow instructions regarding printing or copying of unauthorized materials.

- August 21-23, 2012 – You told your MAT 091 and MAT 151 students not to buy the approved text that you listed on the syllabus. Instead, you made copies of a colleague's materials and sold them to your students for $11 each.

- October 18, 2012 – A Second Corrective Action for insubordination and unauthorized copying and sale of course materials was administered to you by Dr. Solley. Included in the corrective action was the following directive: 'Because you imposed charges on your students without authority to do so, you have the responsibility to reimburse the students from your own

4

> funds. You are hereby directed to do so by personal check, beginning immediately and continuing until all students who paid you are reimbursed.'

- January 11, 2013 – Upon discovering that the students who bought your unauthorized course materials had yet to be reimbursed, Casandra Kakar directed you, via email, to provide her by January 18, 2013, with front and back copies of all cashed personal reimbursement checks to your students.

- January 18, 2013 – You failed to provide Dr. Kakar with copies of any reimbursement checks and neglected to contact her regarding the money you still owe the students.

- February 21, 2013 – A student turned in the MAT091 materials which you left in room B210. Timothy Bryan, Mathematics Faculty, has previously told you that you do not have permission to use his materials again.

[PSOF ¶ 7].

### B. Pertinent Residential Faculty Policies Indicate Martinez's Property Interest in Her Employment and the Procedures for Suspension and Dismissal

At the time Glasper sent Martinez the notice of intent to dismiss, Martinez's employment relationship with MCCCD was governed by the 2012-2013 Residential Faculty Policies (the "RFP"), which indicate the rights of faculty members with respect to various employment matters. [PSOF ¶ 9]. The RFP was "ratified" by, among others, Glasper and the MCCCD Governing Board.[4] [PSOF ¶ 10].

Pursuant to RFP §§ 1.2. and 3.18.3.4., "Appointive" status refers to the employment status of a faculty member attained at the beginning of his/her sixth consecutive year. [PSOF ¶ 13]. Appointive faculty members have continuous rights to employment.[5] [PSOF ¶ 14].

---

[4] Both the 2012-2013 RFP and the 2013-2014 Residential Faculty Policies (the "2013-2014 RFP") are relevant in this case. [PSOF ¶ 11]. The 2013-2014 RFP was approved by the Governing Board on September 24, 2013. [PSOF ¶ 12].

[5] At the time she received the notice of intent to dismiss, and at the time of her suspension, Martinez had appointive statues. [PSOF ¶ 15].

5

Pursuant to RFP § 3.11.2: "No faculty member shall be disciplined, reprimanded, suspended, or reduced in assignment or compensation without just cause."[6] [PSOF ¶ 16]. The term "disciplined" in this context includes terminations and suspensions. [PSOF ¶ 18].

Regarding the *suspension* of a faculty member, RFP §3.13.1. states, in pertinent part: "Upon a written statement of charges formulated by the Chancellor, charging a Faculty member of the MCCCD, the Chancellor, or his/her designee, may immediately suspend the Faculty member and give notice of the suspension…" [PSOF ¶ 19]. Pursuant to RFP § 3.13.3.:

> Any Faculty member who has been suspended pursuant to this Section will normally be paid his/her regular salary during the period of suspension. A suspension without pay will occur only upon the advice of General Counsel. If payment is to be withheld, the Vice Chancellor of Human Resources will first consult and advise the member...

[PSOF ¶ 20].

Regarding faculty member *dismissal*, RFP § 3.15. provides a detailed procedure that includes, in pertinent part, the right of a faculty member to receive a "written statement of charges" which sets forth "the statutes, policies, rules, or written objectives of the College that the Faculty member is alleged to have violated" with "such specificity that the Faculty member will be able to prepare a defense based on the statement" (RFP §§ 3.15.1. and 3.15.2.); the right to request a hearing "which shall suspend the dismissal procedure, pending the completion of the hearing." (RFP § 3.15.3); the right to have a Hearing Committee constituted to conduct a hearing regarding the allegations against the faculty member (RFP § 3.15.4); and the right to attend the hearing, present testimony, evidence, or statements, oral or written, in his/her behalf, and be represented by legal counsel or other representative (RFP § 3.15.6). [PSOF ¶ 23].

After completion of the hearing, the Hearing Committee must provide the

---

[6] This section was renumbered in the 2013-2014 RFP as § 6.3.2. [PSOF ¶ 17].

Chancellor and the faculty member with a summary of the evidence that was presented during the hearing, render "binding written findings of fact and conclusions of law" and forward them along with its recommendation regarding dismissal to the Chancellor. (RFP § 3.15.7). [PSOF ¶ 24]. (Emphasis added.) The Chancellor may meet with the Hearing Committee to clarify any questions he/she may have; and may then adopt the Hearing Committee's recommendation regarding dismissal or make his/her own recommendation and forward the recommendation along with the summary of the evidence, a copy of the findings of fact, conclusions of law, and final recommendation of the Hearing Committee to the Governing Board. (RFP § 3.15.8.). [PSOF ¶ 25].

The Governing Board will meet with the Faculty member and/or his/her representative and a representative of the administration to hear arguments regarding the Chancellor's and the Hearing Committee's recommendation regarding dismissal. [PSOF ¶ 26]. The parties are to have no less than one-half hour to present their respective cases (RFP § 3.15.9.). [PSOF ¶ 27]. The Governing Board, at a public meeting, shall render a final decision for the retention or dismissal of the Faculty member (RFP § 3.15.10.). [PSOF ¶ 28].

### C. The Hearing Committee Rendered Its Findings of Fact and Conclusions of Law and Recommended to the Governing Board that Martinez's Employment Not Be Dismissed

Martinez exercised her right to an evidentiary hearing regarding the allegations in the August 9, 2013 Statement of Charges, which was held on November 18, 2013. [PSOF ¶ 29]. On December 9, 2013, after considering the pleadings and evidence presented at the hearing, including expert testimony, the Hearing Committee issued its written Findings of Fact, Conclusions of Law, and Recommendation, in which it made the following binding findings:

> [Phoenix College] failed to carry its burden of proof relating to violation of MCCCD's cash handling rules found in MCCCD Administrative Regulations 1.17, violation of Residential Policy Manual 3.2.4 (relating to financial interests in unpublished materials), violation of U.S. Copyright

7

Law and fair use guidelines, and violation of MCCCD Administrative Regulations 3.2.4 and 3.2.5 related to copyright regulations.

[PSOF ¶ 30].

The Committee further found, however, that Martinez "willfully and intentionally failed to follow instructions that were communicated to her when she failed to issue refunds to students as directed by President Solley in violation of MCCCD Administrative Regulations 6.7.1. and 6.7.3. [PSOF ¶ 31].

Based on its findings, the Committee recommended that the Governing Board deny the termination request and allow Martinez to continue her MCCCD employment. [PSOF ¶ 32]. The Hearing Committee then delivered to Glasper its summary of evidence, findings of fact, conclusions of law, and final recommendation. [PSOF ¶ 33].

**D.  Glasper Unilaterally Suspended Martinez for What Amounted to Sixteen Months Without Pay or Benefits**

On February 10, 2014, pursuant RFP § 3.15.8., Glasper sent a letter to the President of the Governing Board indicating that he had accepted the Hearing Committee's recommendation that Martinez not be dismissed. [PSOF ¶ 34]. Glasper could have recommended that the Governing Board suspend Martinez. [PSOF ¶ 35]. However, he did not do so. [PSOF ¶ 36].

Instead, the same day, Glasper sent Martinez a letter stating that:

> Based upon the [attached] written statement of charges, <u>I have decided to suspend your employment under my sole authority as Chancellor pursuant to section 3.11 of the Residential Faculty Policies.</u>[7] The purpose of this letter [is] to notify you that your suspension from your position as Mathematics faculty at Phoenix College will begin on March 1, 2014[8] and end on May 15, 2015. Your teaching responsibilities and pay will resume Fall semester, 2015 unless you choose to retire (see below).

---

[7] This section was renumbered under the 2013-2014 RFP. Under the previous RFP, for 2012-2013, it was numbered as § 3.13. [PSOF ¶ 38].

[8] The suspension was later pushed back to April 14, 2014 due to scheduling conflicts for a meeting between Glasper, the Vice-chancellor of HR and Martinez. [PSOF ¶ 39].

8

> Having sought the advice of the General Counsel as required by Section 3.11.3 of the RFP, I am satisfied that your procedural rights concerning the grounds for suspension have been met. The basis for this action is the unanimous finding of an independent hearing committee that you willfully violated the district policies set forth in the statement of charges and that I have the authority to suspend your employment without pay.
>
> Also under the terms of subsection 3.11.3, the interim Vice Chancellor for Human Resources will offer to consult with you…concerning the rationale for this decision. If you accept his invitation, he will deliver this notice and attachment after the meeting. If you decline your opportunity to consult with him, he will have the decision delivered to you in accordance with the policy.
>
> You may voluntarily retire from your position in lieu of this suspension without pay….[9]

[PSOF ¶ 37]. (Emphasis Added.)

Along with the Notice of Suspension without Pay, Glasper provided Martinez with a new Statement of Charges, also signed by Glasper, in which the allegations in the August 9, 2013 Statement of Charges are essentially repeated, but in which it is also written, in pertinent part, as follows:

> Based upon the findings of the hearing committee which are attached to this statement, and the record of their proceeding, <u>I have determined as follows</u>:
>
> ******
>
> An additional concern arose after a student brought the copying to PC's attention, complaining you did not provide receipts for the material charges. MCCCD Administrative Regulation 1.12 states as follows:
>
> > '1.12.2 Authorization
> >
> > Prior to participating in the sale of products or services, Revenue

---

[9] This was the first time in his nearly thirteen years as Chancellor that Glasper suspended a faculty member under 2013-2014 RFP § 3.11 or an equivalent section from previous RFPs. [PSOF ¶ 40]. The only other *unpaid* suspension Glasper issued under this policy, pursuant to with faculty members are "normally paid", occurred in February, 2016, the last month of Glasper's employment with MCCCD, and after this lawsuit was filed. [PSOF ¶ 41]. It was a three-day suspension that involved no loss of benefits. [PSOF ¶ 42].

>and Expenditure categories must be included in a program's budget, and approved by the Governing Board during the annual budget adoption process, or as legally changed the first year
>
>1.12.6. Fees
>
>Fees exchanged for products or services produced through an educational, training or service activity shall be pre-approved by the Governing Board.'
>
>Phoenix College determined that your course materials charge was not included in the adopted budget or pre-approved by the Governing Board.

[PSOF ¶ 43]. (Emphasis added.)

Neither this allegation nor the cited regulations were mentioned in the original Statement of Charges dated August 9, 2013. [PSOF ¶ 44]. Instead, they appeared for the first time in the February 10, 2014 Statement of Charges. [PSOF ¶ 45].

### E. Martinez Suffered Damages as a Result of the Suspension

As a result of her suspension, Martinez did not receive any salary or benefits from April 15, 2014 to the beginning of the Fall semester in August of 2015. [PSOF ¶ 46]. The benefits lost to Martinez during that period included, among other things, medical insurance, dental insurance, paid sick leave, personal leave, basic life insurance, accidental death & personal loss insurance, mid-term disability insurance and access to the employee assistance program. [PSOF ¶ 47]. Martinez also suffered emotional distress related to the lack of due process and her long-term suspension. [PSOF ¶ 48].

## III. LAW AND ARGUMENT

### A. Martinez Has a Property Interest in Her Employment Which Defendants Could Not Impair Without Due Process

The Fourteenth Amendment's Due Process Clause provides that no State "shall deprive any person of life, liberty or property, without due process of law". U.S. Const. amend. XIV. § 1. "Property" is a broad concept that relates to the whole domain of social and economic fact. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982); *Board of Regents v. Roth,* 408 U.S. 564, 570 (1972). Property interests may take many

forms well beyond ownership of real estate, chattels or money. *Roth*, 455 at 571-72 and 576.  As often as not, property interests are intangible. *Logan,* 455 U.S. at 430.

Property interests are not created by the Constitution. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538 (1985). They "are created and their dimensions are defined" by laws, rules or understandings derived from independent sources such as state law that support claims of entitlement. *Id; Roth,* 408 U.S. at 577.

A public employee has a constitutionally protected "property" interest in continued employment when the employee has a legitimate claim of entitlement to the job. *Id.*  Thus, a public college professor whose office is held under tenure provisions or a contract has an interest in continued employment of which she cannot be deprived except "for cause," and which is safeguarded by due process. *Roth.* 455 at 576-577; *Logan*, 455 U.S. at 430; and *Walker v. Berkeley*, 951 F.2d 182, 183 (9th Cir. 1991); *See also Peterson v. Minidoka Cty. Sch. Dist. No. 331*, 118 F.3d 1351, 1359 (9th Cir. 1997) (finding school policy created a property interest).  Moreover, "[t]emporary suspensions, like terminations, are deprivations of employment that can implicate the protections of due process." *Associations for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011); *Finkelstein v. Bergna*, 924 F.2d 1449, 1451 (9th Cir. 1991).

In this case, as noted in Section 2.B., above, Martinez is an appointive faculty member pursuant to RFP §§ 1.2. and 3.18.3.4., and as such has continuous rights to employment.  In addition, pursuant to RFP § 3.11.2., MCCCD may not suspend Martinez without just cause.  Thus, Martinez has a property interest in her employment which MCCCD cannot impair without due process.

### B. Defendants Were Required to Provide Martinez Due Process in Connection with Her Suspension

Once it is determined that a property interest exists and due process therefore applies, the question remains what process is due. *Federal Deposit Ins. Corp v. Mallen*, 486 U.S. 230, 240 (1988); *Loudermill,* 470 U.S. at 541.  Unlike some legal rules, due

11

process is not a technical conception with a fixed content unrelated to time, place and circumstances. *Matthews v. Eldridge*, 424 U.S. 319, 334 (1975).  However, the right to procedural due process is "absolute" and the law recognizes the importance to organized society that those rights be "scrupulously observed." *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *Clements v. Airport Auth.*, 69 F.3d 321, 333 (9th Cir. 1995).  Moreover, minimum procedural requirements are a matter of federal law and may not be diminished by the fact that a public employer may have specified its own procedures that it deems adequate for determining the preconditions to adverse official action. *Loudermill*, 470 U.S. at 540-41; *Logan*, 455 U.S. at 432.[10]

### 1. Due Process Requires an Impartial Decisionmaker with Respect to Discipline

Whether at the predisciplinary or postdisciplinary stage, due process requires "at minimum" a hearing before an impartial tribunal. *Clements*, 69 F.3d at 333 (citing *Ward v. Village of Monroeville*, 409 U.S. 57 (1972)). The impartial tribunal requirement has

---

[10] Before being deprived of a property interest, a tenured public employment is entitled to notice of the charges against her, an explanation of the employer's evidence, and an opportunity to respond. *Loudermill,* 470 U.S. at 546; *Matthews v. Harney County, Oregon, School District No. 4*, 819 F.2d 889, 892 (9th Cir. 1987).  This predisciplinary stage is designed to be "an initial check against mistaken decisions," *Loudermill*, 470 U.S. at 545, as opposed to an adjudication of the matter, *See Clements*, 69 F.3d at 333 n. 15. Therefore, predisciplinary hearings are typically informal in nature. *Sadid v. Vailas*, 936 F.Supp.2d 1207, 1229 (D. Idaho 2013); and the decisionmaker at the predisciplinary stage need not be impartial. *Walker,* 951 F.2d at 184.
However, the usual non-adjudicatory nature of predisciplinary hearings is expressly conditioned on the employee's ability to receive full due process rights at a post disciplinary hearing. *Loudermill*, 470 U.S. at 545 and 547, n. 12 (the existence of adequate post-disciplinary procedures is relevant to the necessary scope of pre-disciplinary procedures); *Walker*, 951 F.2d at 184 (a predisciplinary hearing need not be a full adversarial hearing, and the failure to provide an impartial decisionmaker at the predisciplinary stage does not create liability, so long as the employee is provided a full hearing and an impartial decisionmaker at the post-disciplinary hearing.). Thus, where a meaningful review before an impartial decisionmaker is not afforded at the post disciplinary stage, the burden is on the government to conduct the predisciplinary hearing in a manner that affords the employee all the process she is due. *Sadid*, 936 F.Supp.2d at 1229.

been "jealously guarded," and has been applied to a variety of settings, including administrative adjudications, in order to protect "the powerful and independent constitutional interest in a fair adjudicative procedure." *Marshall v. Jericho, Inc.*, 448 U.S. 238, 242-243 (1980); *Clements,* 69 F.3d at 333; and *Walker,* 951 F.2d at 184 (failure to provide impartial decisionmaker at the post-termination hearing constitutes constitutional error).

A situation in which an official occupies two practically and seriously inconsistent positions, one partisan and the other judicial, necessarily involves a lack of due process. *Ward*, 409 U.S. at 57 (reversing a defendant's conviction on two traffic offenses because he was denied a trial in an impartial tribunal when he was tried before the mayor who was also responsible for village finances and the village budget was substantially funded through fines obtained through the mayor's court); *Walker*, 951 F.2d at 184 (fatal defect in allowing the same person to serve both as decisionmaker and as advocate for the party that benefitted from the decision) (and citing *Schweiker v. McClure*, 456 U.S. 188, 190-91, 197 n.11 (1982) (finding no due process violation where Medicare permitted insurance carrier employees to serve as hearing examiners, but noting with approval that under the Secretary's rules, "'*the individual selected to act in the capacity of [hearing officer] must not have been involved in any way with the determination in question* and neither have advised nor given consultation on any request for payment which is the basis for the hearing.'")) (Emphasis added.). *See also American General Ins. Co. v. Federal Trade Com.*, 589 F.2d 462, 463-465 (9th Cir. 1979) (holding Federal Trade Commission's order was invalid because a member of the Commission had previously participated in the case as counsel; and discussing the principle and "venerable tradition in Anglo-American legal history" that a party should not be the judge in his own case).[11]

---

[11] Notably, any bias in an administrative process cannot be constitutionally redeemed by review of an unbiased tribunal. *Clements*, 69 F.3d at 333 (citing *Ward,* 409 U.S. at 57). An employee with due process rights is entitled to a neutral and detached decisionmaker in the first instance. *Id.* ("Ward holds that subsequent state court

In this case, with respect to the notice of intent to *dismiss*, MCCCD provided Martinez adequate due process. After Glasper made the recommendation of dismissal, Martinez exercised her right to a full adversarial hearing. MCCCD then held the hearing before the Hearing Committee, a neutral and detached decisionmaker, which made binding findings of fact and conclusions of law; and allowed for the Governing Board, at the time a neutral and detached decisionmaker, to decide whether to dismiss or retain Martinez if Glasper did not concur with the Hearing Committee's recommendation.

The same cannot be said for Glasper's *suspension* of Martinez. By the time Glasper made the unprecedented decision, pursuant to 2013-2014 RFP §3.11., to suspend Martinez for what amounted to sixteen months,[12] rather than to recommend a discipline other than termination to the Governing Board, as he could have, he had, as previously noted, already recommended Martinez's dismissal to the Governing Board. Moreover, his dismissal recommendation had been followed by a vigorous prosecution of the case against Martinez before the Hearing Committee by MCCCD employees and counsel who fought to support Glasper's dismissal recommendation. [PSOF ¶ 49]. Glasper's role as the decisiomaker with respect to Martinez's suspension was therefore inconsistent with his previous role as a partisan in the dismissal case against her, and violated Martinez's due process right to an impartial decisionmaker regarding any discipline.

---

procedures, even if they include *de novo* review, cannot "cure" bias in the initial adjudication. We think this principal applies …whether a petitioner ultimately regains or loses his job.").

[12] According to Glasper, there is no limit to the amount of time he could have suspended Martinez under 2013-2014 RFP § 3.11. with no hearing whatsoever. [PSOF ¶ 40]. And indeed, § 3.11. has no provision for a hearing before an impartial tribunal. This reading of § 3.11, however, would violate Martinez's due process rights both on its face, because Martinez has a property interest in her employment of which she cannot be deprived without due process, and in this case, because it would render Martinez's dismissal due process rights meaningless. *See Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner'" (citation omitted)).

### 2. Defendants' Failure to Give Martinez an Opportunity to Respond to New Allegations in the February 10, 2014 Statement of Charges Also Violated Martinez's Due Process Rights

Martinez also has a valid due process claim because, as noted in Section II.D., above, Defendants suspended her based in part, upon the allegation, made for the first time in the February 10, 2014 Statement of Charges, that her "course materials charge was not included in the adopted budget or preapproved by the Governing Board", allegedly in violation of MCCCD Administrative Regulations 1.12.2 and 1.12.6. Martinez never received an opportunity to challenge this allegation before a neutral factfinder/decisionmaker. Thus, suspending her in relation to this allegation was, in and of itself, a violation of her absolute right to procedural due process.

### C. Defendants are Subject to Liability Pursuant to 42 U.S.C. § 1983

42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory…subjects, or causes to be subjected, any citizen of the United States….to the deprivation of any rights…secured by the Constitution and laws, shall be liable to the party injured in an action at law….

42 U.S.C. § 1983. A person deprives another of a constitutional right, within the meaning of § 1983, "if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark Cnty. Sch. Bd., of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007). The elements of a § 1983 claim are (1) the action occurred "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or federal statutory right. *Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### 1. Martinez has a valid Claim against MCCCD Because She Was Suspended Pursuant to an Official Policy of MCCCD

A "person" subject to liability can be a local governing body. *See Waggy v. Spokane Cnty., Wash.*, 594 F.3d 707, 713 (9th Cir. 2010). Under *Monell v. Dep't of*

15

*Soc. Servs.*, 436 U.S. 658, 694 (1978), local government entities are subject to damages under 42 U.S.C. § 1983 when the plaintiff was injured pursuant to an expressly adopted official policy. *Ellins v. City of Sierra Madres*, 710 F.3d 1049, 1066 (9th Cir. 2013). A policy or custom can be found where an "official with final policy making authority…delegated that authority to… a subordinate." *Cuyugan v. Pima County Community College Dist.*, CV-15-00260-TUC-RCC (D. Ariz. March 2, 2017) (copy attached hereto) (*citing Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)). A plaintiff seeking to establish municipal liability must demonstrate that the government policy was the "moving force" behind the constitutional violation he suffered. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013).

In this case, Glasper acted under "color of state law" in suspending Martinez. Pursuant to A.R.S. § 15-1444 A.6, MCCCD's Governing Board may employ professors, lecturers and other employees it deems necessary. Under A.R.S. § 15-1444 A.8, the Governing Board may also remove any employee. Pursuant to A.R.S. § 15-1444 B.4, the Governing Board "may adopt such policies as are deemed necessary..." Moreover, as noted in Section II.B, above, the Governing Board approved the 2013-2014 RFP as the policy governing the terms and conditions of MCCCD's residential faculty employment on September 24, 2013. In February of 2014, Glasper took action to suspend Martinez pursuant to 2013-2014 RFP § 3.11., ostensibly under his delegated "sole authority". Glasper's action, taken pursuant to MCCCD policy and thus under color of state law, was the moving force in the illegal deprivation of Martinez' property interest in continued employment.

### 2.     **Glasper Is Liable in his Personal Capacity**

It is well settled that a "person" subject to liability can be an individual sued in an individual capacity (*see Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (*en banc*). In order to be individually liable under § 1983, an individual must personally participate in an alleged rights deprivation. *Avalos v. Baca*, 596, F.3d 583, 587 (9th Cir. 2010). For the reasons noted in Section C.2., above, Glasper is personally liable in this

matter.

### D. Martinez is Entitled to Compensatory Damages

A plaintiff deprived of a property interest without due process can recover compensatory damages if the deprivation is determined to be unjustified. *Knudson v. Ellensburg*, 832 F.2d 1142, (9th Cir. 1987) (citing *Carey v. Piphus*, 435 U.S. at 266-67). Compensable damages include recovery of the value of the plaintiff's property interest and emotional distress. *Id.* In this case, as noted in Section II.E. above, Martinez suffered a substantial loss of salary and benefits, as well as emotional distress, as a result of Defendants' constitutional violations, for which she is entitled to compensatory damages.

A plaintiff who prevails on a due process claim is also entitled to the process that was due. *Brady v. Gebbie*, 859 F.2d 1543, 1551 (1988). However, such a remedy would not be appropriate in this case if it involved the Governing Board, because it now has a pecuniary interest in the outcome of any decision it would make regarding Martinez's case. As a result, its participation would now deprive Martinez of due process. *See Ward, supra.*

### IV. CONCLUSION

For the reasons set forth above, Plaintiff Cleopatria Martinez respectfully requests that the Court grant Martinez's Motion for Summary Judgment against Defendants Maricopa County Community College District and Rufus Glasper.

**RESPECTFULLY SUBMITTED** this 3rd day of March, 2017.

ROBAINA & KRESIN PLLC

By /s/ Edmundo P. Robaina
Edmundo P. Robaina
Thomas T. Griffin
Ashley A. Marton

Attorneys for Plaintiff Cleopatria Martinez

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of March, 2017, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

Pavneet Singh Uppal
Shayna H. Balch
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
puppal@laborlawyers.com
sbalch@laborlawyers.com

Attorneys for Defendants

By     /s/ Gaynell Carpenter