Edmundo P. Robaina (No. 018125)
Thomas T. Griffin (No. 022475)
Ashley A. Marton (No. 029442)
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
epr@robainalaw.com
ttg@robainalaw.com
aam@robainalaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Cleopatria Martinez,<br><br>              Plaintiff,<br><br>vs.<br><br>Maricopa County Community College District, a political subdivision of the State, and Rufus Glasper and Debra Glasper, husband and wife,<br><br>              Defendants. | No. CV 15-01759 NVW<br><br>**STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Cleopatria Martinez ("Martinez") submits the following Statement of Material Facts in support of her Motion for Summary Judgment.

**STATEMENT OF MATERIAL FACTS**

1. Martinez began her employment as a full-time mathematics professor with MCCCD in 1985, and has taught at MCCCD's Phoenix College campus since 1995. [Deposition of Dr. Cleopatria Martinez on August 16, 2016 ("Martinez Depo. Vol. I") at 17:19-19:13, attached hereto as Exhibit 1].

2. MCCCD is a political subdivision of the State of Arizona. [Plaintiff's Verified Amended Complaint, ¶2; Defendants' Answer to Plaintiff's Verified Amended Complaint at ¶2].

3. On August 9, 2013, Glasper, who, at relevant times, was MCCCD's Chancellor, issued Martinez a notice, copied to MCCCD's Governing Board, of MCCCD's intent to dismiss Martinez from her employment. [Deposition of Dr. Rufus Glasper ("Glasper Depo.") at 6:21-7:5, 10:10-11:9 and Glasper Depo. Exhibit 3 (August 9, 2013 Notice of Dismissal and Statement of Charges) at page 1 of 4, attached hereto as Exhibit 2].

4. Glasper was MCCCD's Chancellor from 2003 until the end of February 2016. [Glasper Depo. at 6:21-7:5, 65:11-24, attached hereto as Exhibit 2].

5. In the notice, Glasper wrote that Interim Vice Chancellor of Human Resources James Bower had reviewed the charges against Martinez, in consultation with the MCCCD Legal Office, and recommended to Glasper that there existed *prima facie* cause for Martinez's dismissal. [Glasper Depo. at 10:10-11:9 and Glasper Depo. Exhibit 3 (August 9, 2013 Notice of Dismissal and Statement of Charges) at page 1 of 4, attached hereto as Exhibit 2].

6. Glasper further wrote that he concurred with Bower's recommendation. [*Id.*].

7. Included with the notice, was a "Statement of Charges," in which it was alleged that Martinez had engaged in the following:

- Violation of Administrative Regulation 6.7.1 – 'Willful and Intentional violation of any state or federal law, applicable ordinance, MCCCD Governing Board policy, or MCCCD administrative regulation that affects the employee's ability to perform his or her job,' specifically:

    o Violation of MCCCD's cash handling rules as covered by MCCCD Administrative Regulations 1.17.

- Violation of Residential Faculty Policy Manual 3.2.4 – 'A Faculty member shall not have any financial interest in or receive compensation from the sale of any unpublished instructional materials required or suggested for a class that the Faculty member teaches.'

2

- Violation of U.S. Copyright Law and fair use guidelines, and MCCCD Administrative Regulations 3.2.4 and 3.2.5 regarding copyright regulations:

  o 3.2.4 Employees are prohibited from copying materials not specifically allowed by the (1) copyright Law, (2) fair use guidelines, (3) Licenses or contractual agreements, or (4) other permission.

  o 3.2.5 The Governing Board disapproves of unauthorized duplication in any form. Employees who willfully disregard this Board policy and/or the aforementioned copyright guidelines do so at their own risk and assume all liability for their actions.

- Violation of Administrative Regulation 6.7.3 – 'Willful and intentional failure to perform job duties that have first been communicated to an employee and are within the employee's scope of employment,' specifically, repeated failure to follow instructions regarding printing/copying of unauthorized materials, failure to use only approved course materials, unauthorized copying and sale of course materials, failure to reimburse students for the materials your wrongfully charged them for, and failure to meet the deadline to provide copies of any reimbursement checks to students.

Brief Timeline:

- January 2010 – College Vice Presidents Ronnie Elliott, Paul DeRose and Cassandra Kakar; along with Maggie McConnell; Assistant General Counsel, reviewed the requirements of AR 3.2 with you at length.

- April 2, 2010 – Anna Solley, Phoenix College President, notified you that your copying privileges at the Phoenix College IKON Copy Center were suspended.

- Spring 2010 – An Administrative Evaluation was initiated based on Mr. Joe Sueyoshi's complaint. By agreement, the Evaluation Team did not undertake its task until the fall semester. The findings and recommendations were submitted to Dr. Solley on November 17, 2010. The overall findings included:

3

- ○ Copyright and plagiarism: Dr. Martinez was notified in writing and in meetings of MCCCD's and Phoenix College's concerns regarding her course materials violating copyright, fair use, and plagiarism laws.

- ○ Insubordination: Dr. Martinez failed to follow Dr. Solley's and MCCCD's Legal Counsel's directives - specifically, she repeatedly requested copies, copied and printed unauthorized materials.

- December 9, 2010 – Dr. Solley administered an Initial Corrective Action to you for insubordination and failure to follow instructions regarding printing or copying of unauthorized materials.

- August 21-23, 2012 – You told your MAT 091 and MAT 151 students not to buy the approved text that you listed on the syllabus. Instead, you made copies of a colleague's materials and sold them to your students for $11 each.

- October 18, 2012 – A Second Corrective Action for insubordination and unauthorized copying and sale of course materials was administered to you by Dr. Solley. Included in the corrective action was the following directive: "Because you imposed charges on your students without authority to do so, you have the responsibility to reimburse the students from your own funds. You are hereby directed to do so by personal check, beginning immediately and continuing until all students who paid you are reimbursed."

- January 11, 2013 – Upon discovering that the students who bought your unauthorized course materials had yet to be reimbursed, Casandra Kakar directed you, via email, to provide her by January 18, 2013, with front and back copies of all cashed personal reimbursement checks to your students.

- January 18, 2013 – You failed to provide Dr. Kakar with copies of any reimbursement checks and neglected to contact her regarding the money you still owe the students.

- February 21, 2013 – A student turned in the MAT091 materials which you left in room B210. Timothy Bryan, Mathematics Faculty, has previously told you that you do not have permission to use his materials again.

[*Id*.].

8. The allegations in the August 9, 2013 Statement of Charges are taken verbatim from a March 20, 2013 Pre-Disciplinary Conference, which included copies of the specific policies Martinez is alleged to have violated. [Martinez Depo. Vol. I at 47:2-17, Martinez Depo. Vol. I Exhibit 4 (March 20, 2013 Notice of Pre-Disciplinary Conference with attachments) at MCCCD/Martinez02114- MCCCD/ Martinez 02120, and a more legible copy of the March 20, 2013 Notice of Pre-Disciplinary Conference with attachments, is attached hereto as Exhibit 1].

9. At the time Glasper sent Martinez the notice of intent to dismiss, Martinez's employment relationship with MCCCD was governed by the 2012-2013 Residential Faculty Policies (the "RFP"), which indicates the rights of faculty members with respect to various employment matters. [Glasper Depo. at 7:18-8:15, 13:15-14:3, Glasper Depo. Errata Sheet at 14:3 and Glasper Depo. Exhibit 1 (2012-2013 RFP) attached hereto as Exhibit 2; Deposition of Judy Castellanos ("Castellanos Depo.") at 14:8-11, attached hereto as Exhibit 3].

10. The RFP was "ratified" by, among others, Glasper and the MCCCD Governing Board. [Glasper Depo. at 7:18-8:11 and Glasper Depo. Exhibit 1 (2012-2013 RFP) at -52-, attached hereto as Exhibit 2].

11. Both the 2012-2013 RFP and the 2013-2014 Residential Faculty Policies (the "2013-2014 RFP") are relevant in this case. [Glasper Depo. 13:24-14:3, Glasper Depo. Errata Sheet at 14:3, attached hereto as Exhibit 2].

12. The 2013-2014 Residential Faculty Policies (the "2013-2014 RFP") were approved by the Governing Board on September 24, 2013. [Glasper Depo. at 9:9-10:7 and Glasper Depo. Exhibit 2 (2013-2014 RFP) at MCCCD/Martinez00252, MCCCD/ Martinez00310 and MCCCD/Martinez00339, attached hereto as Exhibit 2].

13. Pursuant to RFP §§ 1.2. and 3.18.3.4., "Appointive" status refers to the employment status of a faculty member attained at the beginning of his/her sixth consecutive year. [Glasper Depo. at 7:20-8:2, 16:4-7 and Glasper Depo. Exhibit 1 (2012-2013 RFP) at -4- and -26-, attached hereto as Exhibit 2].

5

14. Appointive faculty members have continuous rights to employment. [Glasper Depo. at 16:11-15, attached hereto as Exhibit 2].

15. At the time she received the notice of intent to dismiss, and at the time of her suspension, Martinez had appointive status. [Glasper Depo. at 51:6-12, attached hereto as Exhibit 2].

16. Pursuant to RFP § 3.11.2.: "No faculty member shall be disciplined, reprimanded, suspended, or reduced in assignment or compensation without just cause." [Glasper Depo. at 7:18-8:15, 17:21-18:1, 21:18-21 and Glasper Depo. Exhibit 1 (2012-2013 RFP) at -19-, attached hereto as Exhibit 2].

17. RFP § 3.11.2. was renumbered in 2013-2014 RFP as §6.3.2. [Glasper Depo. at 9:7-14, 43:10-18 and Glasper Depo. Exhibit 2 (2013-2014 RFP) at MCCCD/Martinez00304, attached hereto as Exhibit 2].

18. The term "disciplined" in this context includes terminations and suspensions. [Glasper Depo. at 17:21-18:8, attached hereto as Exhibit 2].

19. Regarding *suspensions* of faculty members, RFP § 3.13.1. states, in pertinent part: "Upon a written statement of charges formulated by the Chancellor, charging a Faculty member of the MCCCD, the Chancellor, or his/her designee, may immediately suspend the Faculty member and give notice of the suspension…" [Glasper Depo. at 7:18-8:15 and Glasper Depo. Exhibit 1 (2012-2013 RFP) at -20-, attached hereto as Exhibit 2].

20. Pursuant to RFP §3.13.3.:

> Any Faculty member who has been suspended pursuant to this Section will normally be paid his/her regular salary during the period of suspension. A suspension without pay will occur only upon the advice of General Counsel. If payment is to be withheld, the Vice Chancellor of Human Resources will first consult and advise the member…

[Glasper Depo. at 7:18-8:15 and Glasper Depo. Exhibit 1 (2012-2013 RFP) at -20- thru -21-, attached hereto as Exhibit 2].

21. Section 3.13. was renumbered in the 2013-2014 RFP as §3.11. [Glasper

6

Depo. at 7:18-8:15, 9:9-14, 24:8-10, Glasper Depo. Exhibit 1 (2012-2013 RFP) at -20- thru -21- and Glasper Depo. Exhibit 2 (2013-2014 RFP) at MCCCD/Martinez00273, attached hereto as Exhibit 2].

22. Notably, this section does not allow the Vice-Chancellor of Human Resources to overturn the Chancellor's decision, and a suspended employee has no right to have the suspension reviewed by the Governing Board. [Glasper Depo. at 23:23-24:7, 26:2-27:1, 66:11-14, attached hereto as Exhibit 2; Castellanos Depo. at 27:3-16, 31:9-32:5, attached hereto as Exhibit 3].

23. Regarding faculty member *dismissal*, RFP § 3.15. provides a detailed procedure that includes, in pertinent part, the right of a faculty member to receive a "written statement of charges" which sets forth "the statutes, policies, rules, or written objectives of the College that the Faculty member is alleged to have violated" with "such specificity that the Faculty member will be able to prepare a defense based on the statement" (RFP §§ 3.15.1. and 3.15.2.); the right to request a hearing "which shall suspend the dismissal procedure, pending the completion of the hearing." (RFP § 3.15.3.); the right to have a Hearing Committee constituted to conduct a hearing regarding the allegations against the faculty member (RFP § 3.15.4.); and the right to attend the hearing, present testimony, evidence or statements, oral or written, in his/her behalf, and be represented by legal counsel or other representative (RFP § 3.15.6.). [Glasper Depo. at 7:18-8:2 and Glasper Depo. Exhibit 1 (2012-2013 RFP) at -21- thru -23-, attached hereto as Exhibit 2; Castellanos Depo. at 17:11-18:22, attached hereto as Exhibit 3].

24. After completion of the hearing, the Hearing Committee provides the Chancellor and the faculty member with a summary of the evidence that was presented during the hearing, renders "<u>binding written findings of fact and conclusions of law</u>" and forwards them along with its recommendation regarding dismissal to the Chancellor. (RFP § 3.15.7.). [Glasper Depo. at 7:18-8:2, 28:6-12, 29:7-11, Glasper Depo. Exhibit 1 at -21- thru -23-, attached hereto as Exhibit 2; Castellanos Depo. at

17:11-18:22, 22:8-18, attached hereto as Exhibit 3].

25. The Chancellor may meet with the Hearing Committee to clarify any questions he/she may have; and may then adopt the Hearing Committee's recommendation regarding dismissal or make his/her own recommendation and forward the recommendation along with the summary of the evidence, a copy of the findings of fact, conclusions of law, and final recommendation of the Hearing Committee to the Governing Board. [Glasper Depo. at 7:18-8:2, 33:18-34:9 and Glasper Depo. Exhibit 1 (2012-2013 RFP) at -21- thru -23-, attached hereto as Exhibit 2; Castellanos Depo. at 17:11-18:22, attached hereto as Exhibit 3].

26. The Governing Board will meet with the Faculty member and/or his/her representative and a representative of the administration to hear arguments regarding the Chancellor's and the Hearing Committee's recommendation regarding dismissal. [Glasper Depo. at 7:18-8:2, 33:18-34:9 and Glasper Depo. Exhibit 1 (2012-2013 RFP) at -21- thru -23-, attached hereto as Exhibit 2; Castellanos Depo. at 17:11-18:22, attached hereto as Exhibit 3].

27. The parties are to have no less than one-half hour to present their respective cases. (RFP § 3.15.9.). [Glasper Depo. at 7:18-8:2 and Glasper Depo. Exhibit 1 (2012-2013 RFP) at -23-, attached hereto as Exhibit 2].

28. The Governing Board, at a public meeting, shall render a final decision for the retention or dismissal of the Faculty member. [Glasper Depo. at 7:18-8:2 and Glasper Depo. Exhibit 1 (2012-2013 RFP) at -23-, attached hereto as Exhibit 2; Castellanos Depo. at 17:11-18:22, attached hereto as Exhibit 3].

29. Martinez exercised her right to an evidentiary hearing regarding the allegations in the August 9, 2013 Statement of Charges, which was held on November 18, 2013. [Glasper Depo. at 27:1-7, 33:18-34:9, attached hereto as Exhibit 2; Martinez Depo. Vol. I at 53:4-16, attached hereto as Exhibit 1].

30. On December 9, 2013, after considering the pleadings and evidence presented at the hearing, including expert testimony, the Hearing Committee issued its

written Findings of Fact, Conclusions of Law, and Recommendation, in which it made the following binding findings:

> [Phoenix College] failed to carry its burden of proof relating to violation of MCCCD's cash handling rules found in MCCCD Administrative Regulations 1.17, violation of Residential Policy Manual 3.2.4 (relating to financial interests in unpublished materials), violation of U.S. Copyright Law and fair use guidelines, and violation of MCCCD Administrative Regulations 3.2.4 and 3.2.5 related to copyright regulations.

[Glasper Depo. at 35:11-24 and Glasper Depo. Exhibit 5 (Hearing Committee Findings of Fact, Conclusions of Law, and Recommendation) at -7-, attached hereto as Exhibit 2; A more legible copy of the Hearing Committee Findings of Fact, Conclusions of Law, and Recommendation is also at Bates Numbers MCCCD/Martinez03845-03852, attached hereto as Exhibit 4].

31. The Committee further found, however, that Martinez "willfully and intentionally failed to follow instructions that were communicated to her when she failed to issue refunds to students as directed by President Solley in violation of MCCCD Administrative Regulations 6.7.1. and 6.7.3. [*Id.*].

32. The Committee further recommended that the Governing Board deny the termination request and allow Martinez to continue her MCCCD employment [Glasper Depo. at 35:11-24 and Glasper Depo. Exhibit 5 (Hearing Committee Findings of Fact, Conclusions of Law, and Recommendation) at -8-, attached hereto as Exhibit 2; A more legible copy of the Hearing Committee Findings of Fact, Conclusions of Law, and Recommendation is also at Bates Numbers MCCCD/Martinez03845-03852, attached hereto as Exhibit 4].

33. The Hearing Committee then delivered to Glasper, its summary of evidence, findings of fact, conclusions of law, and final recommendation. [Glasper Depo. at 34:23-35:10 and Glasper Depo. Exhibit 4 (December 9, 2013 Letter from Hearing Committee Counsel to Glasper), attached hereto as Exhibit 2].

34. On February 10, 2014, pursuant RFP § 3.15.8., Glasper sent a letter to the

President of the Governing Board indicating that he had accepted the recommendation of the Hearing Committee that Martinez not be dismissed. [Glasper Depo. at 35:25-36:14, 37:23-38:12 and Glasper Depo. Exhibit 6 (February 10, 2014 Letter from Glasper to Governing Board with attachments) at 1-2, attached hereto as Exhibit 2].

35. Glasper could have recommended to the Governing Board that they give Martinez some discipline less than a termination, such as a suspension. [Glasper Depo. at 34:4-9, attached hereto as Exhibit 2].

36. Dr. Glasper did not do so. [Glasper Depo. at 37:23-38:2, attached hereto as Exhibit 2].

37. Instead, the same day, Glasper sent a letter to Martinez stating that:

> Based upon the [attached] written statement of charges, <u>I have decided to suspend your employment under my sole authority as Chancellor pursuant to section 3.11 of the Residential Faculty Policies.</u> The purpose of this letter [is] to notify you that your suspension from your position as Mathematics faculty at Phoenix College will begin on March 1, 2014 and end on May 15, 2015. Your teaching responsibilities and pay will resume Fall semester, 2015 unless you choose to retire (see below).
>
> Having sought the advice of the General Counsel as required by Section 3.11.3 of the RFP, <u>I am satisfied that your procedural rights concerning the grounds for suspension have been met.</u> The basis for this action is the unanimous finding of an independent hearing committee that you willfully violated the district policies set forth in the statement of charges and that I have the authority to suspend your employment without pay.
>
> Also under the terms of subsection 3.11.3, the interim Vice Chancellor for Human Resources will offer to consult with you…concerning the rationale for this decision. If you accept his invitation, he will deliver this notice and attachment after the meeting. If you decline your opportunity to consult with him, he will have the decision delivered to you in accordance with the policy.
>
> You may voluntarily retire from your position in lieu of this suspension without pay….

[Glasper Depo. at 35:25-36:14, 38:3-12 and Glasper Depo. Exhibit 6 (February 10, 2014 Letter from Glasper to Governing Board with attachments) at page 3, attached hereto as

10

Exhibit 2; Castellanos Depo. at 26:12-24 and Castellanos Depo. Exhibit 6 (February 10, 2014 Notice of Suspension without Pay and Statement of Charges) at page 1 of 11, attached hereto as Exhibit 3].

38. RFP § 3.11. was renumbered under the 2013-2014 RFP. Under the previous RFP, for 2012-2013, it was numbered as § 3.13. [Glasper Depo. at 36:16-37:1, attached hereto as Exhibit 2].

39. The suspension was later pushed back to April 14, 2014 due to scheduling conflicts for a meeting between Glasper, the Vice-chancellor of HR and Martinez. [Deposition of Dr. Cleopatria Martinez on October 11, 2016 ("Martinez Depo. Vol. II") at 287:11-288:14, attached hereto as Exhibit 5].

40. This was the first time in Glasper's nearly thirteen years as Chancellor that Glasper suspended a faculty member under 2013-2014 RFP § 3.11. or an equivalent section from previous RFPs. [Glasper Depo. at 43:19-21, Glasper Depo. Errata Sheet at 43:21, attached hereto as Exhibit 2].

41. The only other *unpaid* suspension Glasper issued under this policy, pursuant to with faculty members are "normally paid", occurred in February, 2016, the last month of Glasper's employment with MCCCD, and after this lawsuit was filed. [Glasper Depo. at 43:19-21, Glasper Depo. Errata Sheet at 43:21; Castellanos Depo. at 63:3-14 and Castellanos Depo. Exhibit 12 (Personnel Action Request) at page 1-2, attached hereto as Exhibit 3].

42. It was a three-day suspension that involved no loss of benefits. [*Id*.].

43. Along with the Notice of Suspension without Pay, Glasper provided Martinez with a Statement of Charges, also signed by Glasper, in which the allegations in the August 9, 2013 Statement of Charges are essentially repeated, but in which it is also written, in pertinent part, as follows:

> Based upon the findings of the hearing committee which are attached to this statement, and the record of their proceeding, I have determined as follows:

11

******

> An additional concern arose after a student brought the copying to PC's attention, complaining you did not provide receipts for the material charges. MCCCD Administrative Regulation 1.12 states as follows:
>
>> '1.12.2 Authorization
>>
>> Prior to participating in the sale of products or services, Revenue and Expenditure categories must be included in a program's budget, and approved by the Governing Board during the annual budget adoption process, or as legally changed the first year
>>
>> 1.12.3. Fees
>>
>> Fees exchanged for products or services produced through an educational, training or service activity shall be pre-approved by the Governing Board.'
>
> Phoenix College determined that your course materials charge was not included in the adopted budget or pre-approved by the Governing Board.

[Glasper Depo. at 35:25-38:12 and Glasper Depo. Exhibit 6 (February 10, 2014 Letter from Glasper to Governing Board with attachments) at pages 4-5, attached hereto as Exhibit 2; Castellanos Depo. at 26:12-24 and Castellanos Depo. Exhibit 6 (February 10, 2014 Notice of Suspension without Pay and Statement of Charges) at Page 2-3 of 11, attached hereto as Exhibit 3].

44. Neither this allegation nor the cited regulations were mentioned in the original Statement of Charges dated August 9, 2013. [Glasper Depo. at 10:10-11:9, 35:25-38:12, 47:23-48:23, Glasper's Errata Sheet at 43:21, and *Compare* Glasper Depo. Exhibit 3 (August 9, 2013 Notice of Dismissal and Statement of Charges) with Glasper Depo. Exhibit 6 (February 10, 2014 Letter from Glasper to Governing Board with attachments) at page 4-5, attached hereto as Exhibit 2; Castellanos Depo. at 41:7-10 attached hereto as Exhibit 3].

45. Instead, they appeared for the first time in the February 10, 2014 Statement of Charges. [Plaintiff's Verified Amended Complaint, ¶39; Defendants'

Answer to Plaintiff's Verified Amended Complaint at ¶39].

46. As a result of her suspension, Martinez did not receive any salary or benefits for sixteen months from April 15, 2014, to the beginning of the Fall semester in August 2015. [Martinez Depo. Vol. II at 289:16-290:4, attached hereto as Exhibit 5].

47. The benefits lost to Martinez during that period included, among other things, medical insurance, dental insurance, paid sick leave, personal leave, basic life insurance, accidental death & personal loss insurance, mid-term disability insurance and access to the employee assistance program. [Martinez Depo. Vol. II at 289:16-290:4, attached hereto as Exhibit 5].

48. She also suffered emotional distress related to the lack of due process and long-term suspension. [Martinez Depo. Vol. II at 164:8-19, attached hereto as Exhibit 5].

49. Glasper's dismissal recommendation had been followed by a vigorous prosecution of the case Martinez before the Hearing Committee by MCCCD employees and counsel who fought to support Glasper's dismissal recommendation. [November 18, 2013 Hearing Transcript at 12:3-25:9, 158:5-163:15, attached hereto as Exhibit 6].

Dated this 3rd day of March 2017.

ROBAINA & KRESIN PLLC

By /s/ Edmundo P. Robaina
　　Edmundo P. Robaina
　　Thomas T. Griffin
　　Ashley A. Marton

　　Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of March 2017, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

Pavneet Singh Uppal
Shayna H. Balch
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 805
Phoenix, Arizona 85012-2425

Attorney for Defendants

By  /s/ Gaynell Carpenter