**EXHIBIT 1**

**TO**

**PLAINTIFF'S STATEMENT OF FACTS**

**IN SUPPORT OF**

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# In The Matter Of:

*Martinez  vs.*
*Maricopa County Community College District*

---

*Cleopatria Martinez, Ph.D., Vol. I - videotaped*
*August 16, 2016*

---

*Glennie Reporting Services, LLC*
*7330 North 16th Street, Suite A100*
*Phoenix, Arizona  85020*
*602.266.6535 Office     877.266.6535 Toll Free*
*www.glennie-reporting.com   office@glennie-reporting.com*



Original File 081616CM.txt
**Min-U-Script®**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Cleopatria Martinez, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CV 15-01759-PHX-NVW |
| | ) | |
| Maricopa County Community | ) | |
| College District; et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

VIDEOTAPED DEPOSITION OF

CLEOPATRIA MARTINEZ, Ph.D.

VOLUME I (Pages 1 through 158)

Phoenix, Arizona
August 16, 2016
10:07 a.m.

Glennie Reporting Services, LLC
7330 North 16th Street
Suite A100
Phoenix, Arizona  85020-5275

602.266.6535
www.glennie-reporting.com

Prepared by:
Janet Hauck, RPR
Arizona CR No. 50522

2

# I N D E X

Witness                                              Page

CLEOPATRIA MARTINEZ, Ph.D.

     Examination by Ms. Balch:                    5


## INDEX TO EXHIBITS

Description                                           Page

Exhibit 1        Residential Faculty Policies
                 MartinezDST003735-826

Exhibit 2        Verified Amended Complaint            21

Exhibit 3        Notice
                 MCCCD/Martinez02248-251

Exhibit 4        Notice of Pre-Disciplinary            47
                 Conference, with attachments
                 MCCCD/Martinez02114-120

Exhibit 5        Preliminary Scheduling Order          54

Exhibit 6        Cleopatria Martinez's Position        55
                 Statement

Exhibit 7        Cleopatria Martinez's Supplemental    56
                 Position Statement

Exhibit 8        Cleopatria Martinez's Citation of     57
                 Supplemental Authority

Exhibit 9        Letter to Members of the Governing    83
                 Board, 3/12/14

Exhibit 10       Governing Board Meeting - 03/25/14    87

Exhibit 11       Governing Board Minutes - 03/25/14    91

Exhibit 12       Governing Board Meeting - 05/27/14    96

Exhibit 13       Governing Board Meeting - 10/28/14   102

Exhibit 14       Governing Board Minutes - 10/28/14   104

3

VIDEOTAPED DEPOSITION OF

CLEOPATRIA MARTINEZ, Ph.D., VOLUME I, was taken on

August 16, 2016, commencing at 10:07 a.m., at FISHER &

PHILLIPS LLP, 201 East Washington, Suite 1450, Phoenix,

Arizona, before JANET HAUCK, RPR, a Certified Reporter,

Certificate No. 50522, for the State of Arizona.


APPEARANCES:

For Plaintiff:

        ROBAINA & KRESIN, PLLC
        Ashley A. Marton, Esq.
        5343 North 16th Street, Suite 200
        Phoenix, Arizona  85016

For Defendants:

        FISHER & PHILLIPS LLP
        Shayna H. Balch, Esq.
        201 East Washington, Suite 1450
        Phoenix, Arizona  85004-2330

Also present:

        Holly Rye, Certified Legal Video Specialist

1  institution?

2      A.    Master's and a Ph.D.

3      Q.    In what?

4      A.    The Master's in Education and Ph.D. in bilingual

5  education and mathematics.

6      Q.    So you received a -- from the University of

7  Colorado-Boulder you received a Master's degree in

8  education --

9      A.    Yes.

10              MS. MARTON:  Objection; asked and answered.

11              You can answer.

12      Q.    BY MS. BALCH:  -- and a Ph.D. in bilingual

13  education and mathematics; is that correct?

14      A.    Yes.

15      Q.    Are there any other colleges or institutions

16  that you have -- or educational institutions that you have

17  attended?

18      A.    No.

19      Q.    I want to walk through some of your employment

20  history with the District.  When did you start working for

21  the District?

22      A.    1985.

23      Q.    Where did you work at the District?

24      A.    Scottsdale Community College.

25      Q.    And when did you work at Scottsdale Community

18

1    College?   Please give me a date range.

2        A.    1985, 1990, something.

3        Q.    And what was your position at Scottsdale

4    Community College during that time frame?

5        A.    Professor of mathematics.

6        Q.    And this is probably going to happen throughout

7    the day.   I'm guilty of it myself, but please make sure

8    that you wait for me to finish my question before you

9    answer so we don't talk over each other.

10              So following your position of professor of

11   mathematics at Scottsdale Community College from 1985 to

12   1990, where did you work next within the District?

13       A.    Phoenix College.

14              I have a question.

15              MS. MARTON:   Is it a question for me or is it

16   a question about the procedure?

17              THE WITNESS:   About what you just asked.   You

18   asked when I taught at Scottsdale?

19       Q.    BY MS. BALCH:   Yes.

20       A.    I taught until somewhere in the '90s, not '90.

21       Q.    Thank you for that clarification.

22              Following your employment at Scottsdale

23   Community College from approximately 1985 to sometime in

24   the 1990s, you worked at Phoenix College; is that correct?

25       A.    Ask that again.

**Cleopatria Martinez, Ph.D., Vol. I - videotaped - 08/16/2016**

19

1    Q.    My understanding of your testimony is that you

2   worked at Scottsdale Community College as a professor of

3   mathematics from approximately 1985 into the 1990s; is that

4   correct?

5        A.    Yes.

6        Q.    Where did you work following your position with

7   Scottsdale Community College?

8        A.    Phoenix College.

9        Q.    And what was your position at Phoenix College?

10       A.    Professor of mathematics.

11       Q.    And what date range did you work at Phoenix

12   College as a professor of mathematics?

13       A.    When I left Scottsdale to the present.

14       Q.    And I see that you're taking notes here today.

15   What are those notes?

16            MS. MARTON:  Just note my objection.

17            You can answer.

18            THE WITNESS:  What I've been asked, some of

19   the things I've been asked.

20            MS. BALCH:  Mark this as Exhibit 1.

21            (Exhibit 1 was marked.)

22       Q.    BY MS. BALCH:  Dr. Martinez, you've been handed

23   what's been marked as Exhibit 1 to your deposition.  It's

24   titled Residential Faculty Policies 2013 to 2014.  Do you

25   recognize this document?

1    A.    Yes.

2                   MS. BALCH:   This is marked as Exhibit 4 --

3    Exhibit 4 to the deposition.

4                   (Exhibit 4 was marked.)

5    Q.    BY MS. BALCH:   This is titled Notice of

6    Pre-Disciplinary Conference.   It is dated March 20th, 2013.

7    Do you see it at the top of the page?

8    A.    Yes.

9    Q.    And this is a notice to you that the District

10   was considering disciplinary action against you based on

11   the bulleted alleged violations at the bottom of this page

12   and continuing on to the next page; is that correct?

13   A.    Yes.

14   Q.    And as of the date of this March 20th, 2013

15   disciplinary notice you had not issued refunds to students,

16   had you?

17   A.    Correct.

18   Q.    On this Notice of Pre-Disciplinary Conference

19   the third paragraph of this reads, "The purpose of this

20   conference is to ensure that the decision to be made

21   concerning the complaints against you as described in

22   detail below is based upon complete and accurate

23   information, to inform you of the charges against you and

24   the evidence in support of those charges, and to provide

25   you with an opportunity to respond."   Do you see that?

1    hearing.  And if you want to just turn to the next page

2    you'll see a document that should refresh your memory.

3        A.   Yes.

4        Q.   So the next page here is -- the date on it is

5    August 16th, 2013, and this is a letter from Stephen

6    Montoya to James Bowers, who is the interim vice chancellor

7    for human resources at MCCCD.  At the top of the page it

8    says document 14-3.  And this is your attorney's request,

9    acting on your behalf, for a hearing, correct?

10       A.   Yes.

11       Q.   And the district granted your request for a

12   hearing, correct?

13       A.   Yes.

14       Q.   And a hearing was, in fact, held on

15   November 18th, 2013, correct?

16       A.   Yes.

17       Q.   And the hearing was conducted before a

18   three-member panel, correct?

19       A.   Yes.

20       Q.   And the panel was comprised of District faculty

21   who are your peers, correct?

22       A.   Yes.

23       Q.   And, in fact, you selected one of those Hearing

24   Committee panel members, correct?

25       A.   Yes.



**MARICOPA
COMMUNITY
COLLEGES®**

### Notice of Pre-Disciplinary Conference

To:       Cleopatria Martinez
From:     Casandra Kakar
Subject:  Notice of Pre-Disciplinary Conference
Date:     March 20, 2013

This is to notify you that a Pre-Disciplinary Conference has been scheduled for 3:30 p.m. on Wednesday, April 3, 2013 in Room 237 in the District Office located at 2411 W. 14th Street, Tempe, AZ 85281.

Dr. Anna Solley, President of Phoenix College, and Casandra Kakar, VP Academic Affairs, will be the Hearing Officers conducting this conference. Judy Castellanos and Sheri Klein from the District Office HR Solutions Center will also be present.

The purpose of this conference is to ensure that the decision to be made concerning the complaints against you as described in detail below is based on complete and accurate information, to inform you of the charges against you and the evidence in support of those charges, and provide you with an opportunity to respond.

You may have a fellow MCCCD employee as your representative at the conference. The representative shall be present only to observe and not to participate. Attorneys are not permitted to serve as a representative. During the conference the representative shall be permitted to observe and take notes, and be permitted a limited right to speak, to include repeating to me points you have already made, explaining to me the significance of points you have made, and occasionally conferring with you in a confidential manner. The representative has no right to bargain at the conference, no right to make your willingness to answer contingent on a guarantee of leniency, and no right to speak for you in response to questions.

**Alleged Violations:**

- Violation of Administrative Regulation 6.7.1 - "Willful and intentional violation of any state or federal law, applicable ordinance, MCCCD Governing Board policy, or MCCCD administrative regulation that affects the employee's ability to perform his or her job", specifically:

  o   Violation of MCCCD's cash handling rules as covered by MCCCD Administrative Regulations 1.17 (see attached)

- Violation of Residential Faculty Policy Manual 3.2.4 - "A Faculty member shall not have any financial interest in or receive compensation from the sale of any unpublished instructional materials required or suggested for a class that the Faculty member teaches."

- Violation of U.S. Copyright Law and fair use guidelines, and MCCCD Administrative Regulations 3.2.4 and 3.2.5 regarding copyright regulations:

  3.2.4  Employees are prohibited from copying materials not specifically allowed by the (1) copyright Law, (2) fair use guidelines, (3) Licenses or contractual agreements, or (4) other permission.

EXHIBIT NO. 7
Martinez
E. Miller

MCCCD
Exhibit No. 2
Date 11-18-13
Angela F. Miller, RPR, CCR 50127

3.2.5 The Governing Board disapproves of unauthorized duplication in any form. Employees who willfully disregard this Board policy and/or the aforementioned copyright guidelines do so at their own risk and assume all liability for their actions.

- Violation of Administrative Regulation 6.7.3 - "Willful and intentional failure to perform job duties that have first been communicated to an employee and are within the employee's scope of employment", specifically, repeated failure to follow instructions regarding printing/copying of unauthorized materials, failure to use only approved course materials, unauthorized copying and sale of course materials, failure to reimburse students for the materials you wrongfully charged them for, and failure to meet the deadline to provide copies of any reimbursement checks to students.

**Brief Timeline:**

- January 2010 - College Vice Presidents Ronnie Elliott, Paul DeRosa and Cassandra Kakar, along with Maggie McConnell, Assistant General Counsel, reviewed the requirements of AR 3.2 with you at length.
- April 2, 2010 – Anna Solley, Phoenix College President, notified you that your copying privileges at the Phoenix College IKON Copy Center were suspended.
- Spring 2010 – An Administrative Evaluation was initiated based on Mr. Joe Sueyoshi's complaint. By agreement, the Evaluation Team did not undertake its task until the fall semester. The findings and recommendations were submitted to Dr. Solley on November 17, 2010. The overall findings included:
  - o Copyright and plagiarism: Dr. Martinez was notified in writing and in meetings of MCCCD's and Phoenix College's concerns regarding her course materials violating copyright, fair use, and plagiarism laws.
  - o Insubordination: Dr. Martinez failed to follow Dr. Solley's and MCCCD's Legal Counsel's directives - specifically, she repeatedly requested copies, copied and printed unauthorized materials.
- December 9, 2010 – Dr. Solley administered an Initial Corrective Action to you for insubordination and failure to follow instructions regarding printing or copying of unauthorized materials.
- August 21-23, 2012 - You told your MAT 091 and MAT 151 students not to buy the approved text that you listed on the syllabus. Instead, you made copies of a colleague's materials and sold them to your students for $11 each.
- October 18, 2012 – A Second Corrective Action for insubordination and unauthorized copying and sale of course materials was administered to you by Dr. Solley. Included in the corrective action was the following directive: "Because you imposed charges on your students without authority to do so, you have the responsibility to reimburse the students from your own funds. You are hereby directed to do so by personal check, beginning immediately and continuing until all students who paid you are reimbursed."
- January 11, 2013 – Upon discovering that the students who bought your unauthorized course materials had yet to be reimbursed, Casandra Kakar directed you, via email, to provide her, by January 18, 2013, with front and back copies of all cashed personal reimbursement checks to your students.
- January 18, 2013 - You failed to provide Dr. Kakar with copies of any reimbursement checks and neglected to contact her regarding the money you still owe the students.
- February 21, 2013 – A student turned in the MAT091 materials which you left in room B210. Timothy Bryan, Mathematics Faculty, has previously told you that you do not have permission to use his materials again.

If proven, the allegations against you could result in disciplinary action including suspension or dismissal from employment.

At the conference, you may:

Exhibit No. _____
Date _____
Angela F. Miller, RPR, CCR 50127

MCCCD/Martinez02115

a.  Appear to present an oral or written statement in your defense; or
b.  Appear with a representative if desired, and present an oral or written statement in your defense; or
c.  Elect in advance in writing to waive the pre-disciplinary conference.

If you elect to attend the conference and present evidence, you must answer all questions truthfully.  If it is later proven that your answers were not truthful, such dishonesty may result in corrective action.  You may present any testimony, witnesses, or documents which explain whether or not the alleged misconduct occurred.  You shall provide a list of witnesses to me as far in advance as possible, but not later than one hour prior to the conference.  It is your responsibility to notify witnesses that their attendance is desired.

If you provide a response at the conference it will be reviewed and considered before a final decision on discipline is made.  If you do not attend the conference and have not discussed rescheduling, a decision will be made based on the information available.

I acknowledge receipt of this Notice of Pre-Disciplinary Conference.

Employee Signature: _____        Date: _____

MCCCD/Martinez02116

] home | about us | employees | search |



# Maricopa Governance

## Online Policy Manual

**6.7 Employment Standards**

The following constitutes grounds for disciplinary action, up to and including termination of any Maricopa County Community College District (MCCCD) employee as defined by the respective policy manuals:

1. Violation of MCCCD policies, procedures, regulations or applicable laws, or falsely claiming ignorance of such policy, or failure to report violations of the same of which they are aware.
2. Making a false statement of or relating to disclose a material fact in the course of seeking employment or re-assignment of position at MCCCD.
3. Violation of the terms and conditions of employment that have first been communicated to an employee and for which the employee has acknowledged understanding.
4. Willful and intentional commission of acts of fraud, theft, embezzlement, misappropriation, falsification of records or misuse of MCCCD funds, goods, property, services, technology or other resources.
5. Conviction of a felony or misdemeanor that adversely affects an employee's ability to perform job duties or has an adverse effect on MCCCD if employment is continued.
6. Fighting with a fellow employee, visitor, or student, except in self-defense. Committing acts of intimidation, harassment or violence, including (but not limited to) oral or written statements, gestures, or expressions that communicate a direct or indirect threat of physical harm.
7. Reporting to work under the influence of alcohol and/or illegal drugs or narcotics; the use, sale, dispensing, or possession of alcohol and/or illegal drugs or narcotics on MCCCD premises, while conducting MCCCD business, or at any time which would interfere with the effective conduct of the employee's work for the MCCCD. One use of illegal drugs; or testing positive for illegal drugs. The exception would include the consumption of alcohol at a reception or similar event at which the employee's presence is clearly within the scope of employment.
8. Possessing firearms or other weapons on MCCCD property, except as may be required by the job or as otherwise permitted by law.
9. Abandonment of one's position.
10. Intentional destruction or threat of destruction of MCCCD property, with malicious intent.
11. Performing acts or executing job responsibilities in a reckless manner that pose a threat to the physical safety of the employee or another person.
12. Failure by the College President, Vice Chancellor, Chancellor or other senior level administrators to notify appropriate law enforcement authorities of any potential theft of District funds or assets.

**Statement on Rehiring**

Employees (Board approved and otherwise) who are terminated or non-renewed due to a determination that the employee has violated Maricopa Employment Standards as set forth above, or who resign in lieu of such termination or non-renewal by agreement or otherwise, are not eligible for rehire within the Maricopa County Community College District. Employees will be afforded notice of such a determination and an opportunity to be heard pursuant to the applicable employee policy or administrative regulation.

The Vice Chancellor for Human Resources is responsible for reviewing documented violations of employment standards, establishing procedures for the review of recommended disciplinary action to be taken, and determining whether the recommended disciplinary action is consistent with the documented violations of the employment standards. The Vice Chancellor for Human Resources shall have final authority to recommend disciplinary action under this policy and shall document the rationale for all decisions. To the extent that the recommendation for disciplinary action by the Vice Chancellor for Human Resources differs from the recommendation of the employee's College President or Vice Chancellor or other Chancellor's Executive Council Member, the Chancellor shall be consulted and shall make the final recommendation on disciplinary action. The Vice Chancellor for Human Resources shall make recommendations that involve the Chancellor.

Quarterly, a summary report shall be submitted to the Governing Board on disciplinary actions taken pursuant to this policy.

AMENDED June 28, 2011, Motion No. 1838
AMENDED February 22, 2011, Motion No. 9781, 9782
ADOPTED February 27, 2007, Motion No. 9497

**Print Section** (Adobe Acrobat—Requires Adobe Acrobat Reader)

DPS Web issues?
Contact The Emerora or your College Help Desk



Questions or comments?
Contact Teresa Toney | Office of Public Stewardship | 2411 West 14th Street | Tempe, AZ 85281-6942 | 480.731.8880 | 480.731.8818 fax
A division of the Office of General Counsel | 2411 West 14th Street | Tempe, AZ 85281-6942 | 480.731.8877 | 480.731.8800 fax
Legal Services Disclaimer | MCCCD Disclaimer
© Maricopa County Community College District. All Rights Reserved.

~ Ten colleges specializing in university transfer, continuing education, career and job training programs ~
web disclaimer | contact us

MCCCD/Martinez02117

| home | about us | employees | search |



# Maricopa Governance

## Online Policy Manual

### 1.17 Cash Handling

**Scope of Coverage of this Regulation**

This regulation covers all Maricopa County Community College District (MCCCD) employees or offices (including, but not limited to: all employees – Board-approved or part-time, cashiers offices, performing arts centers, athletic facilities, program offices, etc.) that accept payment for any MCCCD services or donations (including, but not limited to: tuition, fees, dues, event tickets, etc.). Cash is defined as: coins, currency, checks, money orders, credit cards, electronic funds transfers, and all cash equivalents (including, but not limited to: tokens, gift cards, tuition waivers, parking tickets, stamps).

**General Standards**

1. To ensure strong internal controls over cash handling, to safeguard against loss and to meet our obligation to the community as stewards of public resources, the following elements of internal controls must be adhered to:
   - A. Proper segregation of duties (i.e., dual controls)
   - B. Specific safeguards for handling, transporting and storing cash
   - C. Specific safeguards for deposits
   - D. Independent reconciliation of deposit documents to receipts
   - E. Management oversight and review of cash handling processes and personnel
2. Each college and the District Office are required to establish written procedures for all locations that handle cash. Such procedures shall ensure compliance with all of the required internal control elements identified in 1. Such procedures shall address all control elements identified in 1 by collecting the space, physical configuration, staff and other particulars of each location.
3. The District's Business Services division will review such written procedures for potential areas of concern relating to the required internal control elements. Such concerns will be noted and communicated back to the applicable College/District Office for further action.
4. On or about January 1st of each year, each college and the District Office are to review the written procedures relating to cash handling. If significant changes are required, such changes are to be reviewed by the District's Business Services division as in C. above.
5. The District's Internal Audit and Management Advisory Services Department may test the written procedures for compliance in accordance with their established audit plan.
6. If inappropriate activity is suspected or determined (i.e., a pattern of cash shortages, forgery of alterations of checks, misappropriation of tuition waivers, loss or damage to securities, computer fraud, etc.), the college or District Office staff should immediately notify their appropriate Vice President or Vice Chancellor, who should then notify Risk Management and Internal Audit and Management Advisory Services of any real or potential losses. The notifications stated above are critical as MCCCD has a limited discovery period in which to report such activity to our insurance carrier.
7. If it is suspected that a theft has occurred, the appropriate law enforcement authorities must be notified.
8. Annually, each employee responsible for handling cash will be required to complete an acknowledgement that they have read and agree to abide by established procedures for proper handling of cash.
9. Annually, each Vice President or senior level administrator with supervisory or management responsibility for any and all areas that handle cash and the college President and Vice Chancellors with any and all responsibility for cash shall complete an acknowledgement that they will enforce the established procedures for the proper handling of cash.
10. The Vice Chancellor for Business Services shall develop, make available and has the authority to require training as may be appropriate for any and all persons handling cash or expending these individuals at the college, District Office or any district location.

TOP

ADOPTED by the Governing Board, February 27, 2007, Motion No. 9412

Print Section (Adobe Acrobat—Requires Adobe Acrobat Reader)

OPS Web Issues?
Contact Tina Emanus or your College Help Desk



Questions or comments?
Contact Teresa Toney | Office of Public Stewardship | 2411 West 14th Street | Tempe, AZ
85281-6942 | 480.731.8840 | 480.731.8919 fax
A division of the Office of General Counsel | 2411 West 14th Street | Tempe, AZ 85281-6942 |
480.731.8877 | 480.731.8890 fax
Legal Services Disclaimer | MCCCD Disclaimer
© Maricopa County Community College District, All Rights Reserved.

-- Ten colleges specializing in university transfer, continuing education, career and job training programs --
note disclaimer | contact us

MCCCD/Martinez02118

**3.2.2.**

Other provisions may be negotiated by the Faculty member and MCCCD and added to the contract. These may include the ability to edit and control the presentation of the work, the ability to change and update materials over time, the ability to create derivative or related works, and the sharing of costs and revenues associated with the commercialization of such work.

**3.2.3**

A Faculty member shall not, in connection with any class, suggest or require that a student purchase instructional materials which the Faculty member has produced, or from the purchase of which the Faculty member or the Faculty member's designee is entitled to royalty or similar consideration, unless the materials have been:

**3.2.3.1.**

produced by a "recognized, independent publisher," defined as a commercial entity in the business of publishing books, periodicals, and similar instructional materials, and which performs editorial, printing, distribution, marketing, and other functions typically associated with commercial publishing at the publisher's expense; and

**3.2.3.2.**

previously approved for students' purchase by the Vice President of Academic Affairs at the college where the Faculty member teaches the class.

**3.2.4.**

A Faculty member shall not have any financial interest in or receive compensation from the sale of any unpublished instructional materials required or suggested for a class that the Faculty member teaches.

## 3.3. Personal Rights

The Governing Board recognizes that the personal life of a Faculty member is not an appropriate concern of the MCCCD, provided it does not affect the Faculty member's effectiveness in fulfilling professional obligation(s).

## 3.4. Visitation of Faculty Members

Brief class visits by administrative and/or staff personnel may be conducted without notice to the Faculty member in situations that need immediate attention for the normal operation of the College, for example, the safety and welfare of the Faculty and/or students. These visits will not be used for the purpose of the Faculty member evaluation.

## 3.5. Faculty Evaluation Plan (FEP) for Instructional Improvement

Inasmuch as the Faculty is committed to quality teaching and instruction and is contracted to provide professional services to students, colleagues, and the MCCCD, the Faculty do hereby agree to adhere to, support, and implement the following self-evaluation policies and procedures.

**3.5.1.** The objectives of the evaluation program are as follows:

MCCCD/Martinez02119



# Maricopa Governance

## Online Policy Manual



### 3.2 Copyright Regulation

1. It is the intent of the Governing Board of the Maricopa County Community College District to adhere to the provisions of the U.S. Copyright Law (Title 17, United States Code Section 101 et seq.). Though there continues to be controversy regarding interpretation of the Copyright Law, this policy represents a sincere effort by the Board to operate legally within the District.

2. The Governing Board directs the Chancellor or his designee(s) to develop and distribute to employees guidelines that (1) clearly discourage violation of the Copyright Law and (2) inform employees of their rights and responsibilities under the Copyright Law.

3. Each college president or provost and the Chancellor shall name an individual(s) at each district location who will assume the responsibilities of distributing copyright guidelines, act as a resource person regarding copyright matter and provide training programs on current copyright laws.

4. [illegible]

5. The Governing Board directs the Chancellor to develop copyright guidelines that (1) clearly discourage violation of the Board copyright policy; the Administrative regulation as a part of their own rules and comments will satisfy for their adoption.

6. In order to assist employees and students in complying with the Copyright Law, appropriate notices shall be placed on or near all equipment capable of duplicating copyrighted materials.

**What Students Should Know About Copyright**

AMENDED through the Administrative Regulation approval process, August 13, 2002

ADOPTED into Governance, September 24, 1996
AMENDED Motion No. 8394
AMENDED Motion No. 8685
AMENDED Motion No. 8988

Founding Source:
Governing Board Minutes, December 12, 1989, Motion No. 7144

Print Section (Adobe Acrobat—Requires Adobe Acrobat Reader)

OPS Web Issues?
Contact Tina Emmons at your College Help Desk

Questions or comments?
Contact Tanae Toney | Office of Public Stewardship | 2411 West 14th Street | Tempe, AZ 85281-6942 | 480.731.8880 | 480.731.8818 fax
A division of the Office of General Counsel | 2411 West 14th Street | Tempe, AZ 85281-6942 |
480.731.8877 | 480.731.8859 fax
Legal Services Disclaimer | MCCCD Disclaimer
© Maricopa County Community College District. All Rights Reserved.

~ Ten colleges specializing in university transfer, continuing education, career and job training programs ~
note disclaimer | contact us



**MARICOPA COMMUNITY COLLEGES®**

## Notice of Pre-Disciplinary Conference

To:       Cleopatria Martinez
From:     Casandra Kakar
Subject:  Notice of Pre-Disciplinary Conference
Date:     March 20, 2013

---

This is to notify you that a Pre-Disciplinary Conference has been scheduled for 3:30 p.m. on Wednesday, April 3, 2013 in Room 237 in the District Office located at 2411 W. 14th Street, Tempe, AZ 85281.

Dr. Anna Solley, President of Phoenix College, and Casandra Kakar, VP Academic Affairs, will be the Hearing Officers conducting this conference. Judy Castellanos and Sheri Klein from the District Office HR Solutions Center will also be present.

The purpose of this conference is to ensure that the decision to be made concerning the complaints against you as described in detail below is based on complete and accurate information, to inform you of the charges against you and the evidence in support of those charges, and provide you with an opportunity to respond.

You may have a fellow MCCCD employee as your representative at the conference. The representative shall be present only to observe and not to participate. Attorneys are not permitted to serve as a representative. During the conference the representative shall be permitted to observe and take notes, and be permitted a limited right to speak, to include repeating to me points you have already made, explaining to me the significance of points you have made, and occasionally conferring with you in a confidential manner. The representative has no right to bargain at the conference, no right to make your willingness to answer contingent on a guarantee of leniency, and no right to speak for you in response to questions.

**Alleged Violations:**

- Violation of Administrative Regulation 6.7.1 - "Willful and intentional violation of any state or federal law, applicable ordinance, MCCCD Governing Board policy, or MCCCD administrative regulation that affects the employee's ability to perform his or her job", specifically:

    o Violation of MCCCD's cash handling rules as covered by MCCCD Administrative Regulations 1.17 (see attached)

- Violation of Residential Faculty Policy Manual 3.2.4 - "A Faculty member shall not have any financial interest in or receive compensation from the sale of any unpublished instructional materials required or suggested for a class that the Faculty member teaches."

- Violation of U.S. Copyright Law and fair use guidelines, and MCCCD Administrative Regulations 3.2.4 and 3.2.5 regarding copyright regulations:

    3.2.4 Employees are prohibited from copying materials not specifically allowed by the (1) copyright Law, (2) fair use guidelines, (3) Licenses or contractual agreements, or (4) other permission.

> 3.2.5 The Governing Board disapproves of unauthorized duplication in any form. Employees who willfully disregard this Board policy and/or the aforementioned copyright guidelines do so at their own risk and assume all liability for their actions.

- Violation of Administrative Regulation 6.7.3 - "Willful and intentional failure to perform job duties that have first been communicated to an employee and are within the employee's scope of employment", specifically, repeated failure to follow instructions regarding printing/copying of unauthorized materials, failure to use only approved course materials, unauthorized copying and sale of course materials, failure to reimburse students for the materials you wrongfully charged them for, and failure to meet the deadline to provide copies of any reimbursement checks to students.

Brief Timeline:

- January 2010 - College Vice Presidents Ronnie Elliott, Paul DeRose and Cassandra Kakar; along with Maggie McConnell; Assistant General Counsel, reviewed the requirements of AR 3.2 with you at length.
- April 2, 2010 –Anna Solley, Phoenix College President, notified you that your copying privileges at the Phoenix College IKON Copy Center were suspended.
- Spring 2010 – An Administrative Evaluation was initiated based on Mr. Joe Sueyoshi's complaint. By agreement, the Evaluation Team did not undertake its task until the fall semester. The findings and recommendations were submitted to Dr. Solley on November 17, 2010. The overall findings included:
  - ○ Copyright and plagiarism: Dr. Martinez was notified in writing and in meetings of MCCCD's and Phoenix College's concerns regarding her course materials violating copyright, fair use, and plagiarism laws.
  - ○ Insubordination: Dr. Martinez failed to follow Dr. Solley's and MCCCD's Legal Counsel's directives - specifically, she repeatedly requested copies, copied and printed unauthorized materials.
- December 9, 2010 – Dr. Solley administered an Initial Corrective Action to you for insubordination and failure to follow instructions regarding printing or copying of unauthorized materials.
- August 21-23, 2012 - You told your MAT 091 and MAT 151 students not to buy the approved text that you listed on the syllabus. Instead, you made copies of a colleague's materials and sold them to your students for $11 each.
- October 18, 2012 – A Second Corrective Action for insubordination and unauthorized copying and sale of course materials was administered to you by Dr. Solley. Included in the corrective action was the following directive: "Because you imposed charges on your students without authority to do so, you have the responsibility to reimburse the students from your own funds. You are hereby directed to do so by personal check, beginning immediately and continuing until all students who paid you are reimbursed."
- January 11, 2013 – Upon discovering that the students who bought your unauthorized course materials had yet to be reimbursed, Casandra Kakar directed you, via email, to provide her, by January 18, 2013, with front and back copies of all cashed personal reimbursement checks to your students.
- January 18, 2013 - You failed to provide Dr. Kakar with copies of any reimbursement checks and neglected to contact her regarding the money you still owe the students.
- February 21, 2013 – A student turned in the MAT091 materials which you left in room B210. Timothy Bryan, Mathematics Faculty, has previously told you that you do not have permission to use his materials again.

If proven, the allegations against you could result in disciplinary action including suspension or dismissal from employment.

At the conference, you may:

a.   Appear to present an oral or written statement in your defense; or
b.   Appear with a representative if desired, and present an oral or written statement in your defense; or
c.   Elect in advance in writing to waive the pre-disciplinary conference.

If you elect to attend the conference and present evidence, you must answer all questions truthfully.  If it is later proven that your answers were not truthful, such dishonesty may result in corrective action.  You may present any testimony, witnesses, or documents which explain whether or not the alleged misconduct occurred.  You shall provide a list of witnesses to me as far in advance as possible, but not later than one hour prior to the conference.  It is your responsibility to notify witnesses that their attendance is desired.

If you provide a response at the conference it will be reviewed and considered before a final decision on discipline is made.  If you do not attend the conference and have not discussed rescheduling, a decision will be made based on the information available.

I acknowledge receipt of this Notice of Pre-Disciplinary Conference.

Employee Signature: _____        Date: _____

| home | about us | employees | search |



Home
Online Policy Manual
Governance Resources
College Rules of Operation

**OTHER RESOURCES**
Office of Public Stewardship
Office of General Counsel
Governing Board

Select Language
Powered by
Google **Translate**

# Maricopa Governance

## Online Policy Manual

### 6.7 Employment Standards

The following constitutes grounds for disciplinary action, up to and including termination of any Maricopa County Community College District (MCCCD) employee as outlined by the respective policy manuals:

1. Willful and intentional violation of any state or federal law, applicable ordinance, MCCCD Governing Board policy, or MCCCD administrative regulation that affects the employee's ability to perform his or her job.
2. Making a false statement of or failing to disclose a material fact in the course of seeking employment or re-assignment of position at MCCCD.
3. Willful and intentional failure to perform job duties that have first been communicated to an employee and are within the employee's scope of employment.
4. Willful and intentional commitment of acts of fraud, theft, embezzlement, misappropriation, falsification of records or misuse of MCCCD funds, goods, property, services, technology or other resources.
5. Conviction of a felony or misdemeanor that adversely affects an employee's ability to perform job duties or has an adverse effect on MCCCD if employment is continued.
6. Fighting with a fellow employee, visitor, or student, except in self-defense. Committing acts of intimidation, harassment or violence, including (but not limited to) oral or written statements, gestures, or expressions that communicate a direct or indirect threat of physical harm.
7. Reporting to work under the influence of alcohol and/or illegal drugs or narcotics; the use, sale, dispensing, or possession of alcohol and/or illegal drugs or narcotics on MCCCD premises, while conducting MCCCD business, or at any time which would interfere with the effective conduct of the employee's work for the MCCCD; the use of illegal drugs; or testing positive for illegal drugs. The exception would include the consumption of alcohol at a reception or similar event at which the employee's presence is clearly within the scope of employment.
8. Possessing firearms or other weapons on MCCCD property, except as may be required by the job or as otherwise permitted by law.
9. Abandonment of one's position.
10. Intentional destruction or threat of destruction of MCCCD property, with malicious intent.
11. Performing acts or executing job responsibilities in a reckless manner that pose a threat to the physical safety of the employee or another person.
12. Failure by the College President, Vice Chancellor, Chancellor or other senior level administrators to notify appropriate law enforcement authorities of any potential theft of District funds or assets.

**Statement on Rehiring**

Employees (Board approved and otherwise) who are terminated or non renewed due to a determination that the employee has violated Maricopa Employment Standards as set forth above, or who resign in lieu of such termination or non renewal by agreement or otherwise, are not eligible for rehire within the Maricopa County Community College District. Employees will be afforded notice of such a determination and an opportunity to be heard pursuant to the applicable employee policy or administrative regulation.

The Vice Chancellor for Human Resources is responsible for reviewing documented violations of employment standards, establishing procedures for the review of recommended disciplinary action to be taken, and determining whether the recommended disciplinary action is consistent with the documented violations of the employment standards. The Vice Chancellor for Human Resources shall have final authority to recommend disciplinary action under this policy and shall document the rationale for all decisions. To the extent that the recommendation for disciplinary action by the Vice Chancellor for Human Resources differs from the recommendation of the employee's College President or Vice Chancellor or other Chancellor's Executive Council Member, the Chancellor shall be consulted and shall make the final recommendation on disciplinary action. The Vice Chancellor for Human Resources shall make recommendations that involve the Chancellor.

Quarterly, a summary report shall be submitted to the Governing Board on disciplinary actions taken pursuant to this policy.

AMENDED June 28, 2011, Motion No. 9836
AMENDED February 22, 2011, Motion No. 9781, 9782
ADOPTED February 27, 2007, Motion No. 9407

Print Section (Adobe Acrobat—Requires Adobe Acrobat Reader)

OPS Web Issues?
Contact Tina Emmons or your College Help Desk

Questions or comments?
Contact Teresa Toney | Office of Public Stewardship | 2411 West 14th Street | Tempe, AZ 85281-6942 | 480.731.8880 | 480.731.8819 fax
A division of the Office of General Counsel | 2411 West 14th Street | Tempe, AZ 85281-6942 | 480.731.8877 | 480.731.8880 fax
Legal Services Disclaimer | MCCCD Disclaimer
© Maricopa County Community College District. All Rights Reserved.



~ Ten colleges specializing in university transfer, continuing education, career and job training programs ~
note disclaimer | contact us

| home | about us | employees | search |



Home
Online Policy Manual
Governance Resources
College Rules of Operation

OTHER RESOURCES
Office of Public Stewardship
Office of General Counsel
Governing Board



Select Language
Powered by
Google Translate

# Maricopa Governance

## Online Policy Manual

### 1.17 Cash Handling

**Scope of Coverage of this Regulation**

This regulation covers all Maricopa County Community College District (MCCCD) employees or offices (including, but not limited to: all employees – Board-approved or part-time, cashiers offices, performing arts centers, athletic facilities, program offices, etc.) that accept payment for any MCCCD services or donations (including, but not limited to: tuition, fees, dues, event tickets, etc.). Cash is defined as coins, currency, checks, money orders, credit cards, electronic funds transfers, and all cash equivalents (including, but not limited to: tokens, gift cards, tuition waivers, parking tickets, stamps).

**General Standards**

1. To ensure strong internal controls over cash handling, to safeguard against loss and to meet our obligation to the community as stewards of public resources, the following elements of internal controls must be adhered to:
   A. Proper segregation of duties (i.e., dual controls)
   B. Specific safeguards for handling, transporting and storing cash
   C. Specific safeguards for deposits
   D. Independent reconciliation of deposit documents to receipts
   E. Management oversight and review of cash handling processes and personnel
2. Each college and the District Office are required to establish written procedures for all locations that handle cash. Such procedures shall ensure compliance with all of the required internal control elements identified in 1. Such procedures shall address all control elements identified in 1 by reflecting the space, physical configuration, staff and other particulars of each location.
3. The District's Business Services division will review such written procedures for potential areas of concern relating to the required internal control elements. Such concerns will be noted and communicated back to the applicable College/District Office for further action.
4. On or about January 1st of each year, each college and the District Office are to review the written procedures relating to cash handling. If significant changes are required, such changes are to be reviewed by the District's Business Services division as in C. above.
5. The District's Internal Audit and Management Advisory Services Department may test the written procedures for compliance in accordance with their established audit plan.
6. If inappropriate activity is suspected or determined (i.e., a pattern of cash shortages, forgery or alterations of checks, misapplication of tuition waivers, loss or damage to securities, computer fraud, etc.), the college or District Office staff should immediately notify their appropriate Vice President or Vice Chancellor, who should then notify Risk Management and Internal Audit and Management Advisory Services of any real or potential losses. The notifications stated above are critical as MCCCD has a limited discovery period in which to report such activity to our insurance carrier.
7. If it is suspected that a theft has occurred, the appropriate law enforcement authorities must be notified.
8. Annually, each employee responsible for handling cash will be required to complete an acknowledgement that they have read and agree to abide by established procedures for proper handling of cash.
9. Annually, each Vice President or senior level administrator with supervisory or management responsibility for any and all areas that handle cash and the college President and Vice Chancellors with any and all responsibility for cash shall complete an acknowledgement that they will enforce the established procedures for the proper handling of cash.
10. The Vice Chancellor for Business Services shall develop, make available and has the authority to require training as may be appropriate for any and all persons handling cash or supervising these individuals at the colleges, District Office or any district location.

TOP

**ADOPTED by the Governing Board, February 27, 2007, Motion No. 9412**

Print Section (Adobe Acrobat—Requires Adobe Acrobat Reader)

---

**OPS Web Issues?**
Contact Tina Emmons or your College Help Desk

**Questions or comments?**
Contact Teresa Toney | Office of Public Stewardship | 2411 West 14th Street | Tempe, AZ 85281-6942 | 480.731.8880 | 480.731.8819 fax
A division of the Office of General Counsel | 2411 West 14th Street | Tempe, AZ 85281-6942 | 480.731.8877 | 480.731.8890 fax
Legal Services Disclaimer | MCCCD Disclaimer
© Maricopa County Community College District. All Rights Reserved.

~ Ten colleges specializing in university transfer, continuing education, career and job training programs ~
note disclaimer | contact us

**3.2.2.**

Other provisions may be negotiated by the Faculty member and MCCCD and added to the contract.  These may include the ability to edit and control the presentation of the work, the ability to change and update materials over time, the ability to create derivative or related works, and the sharing of costs and revenues associated with the commercialization of such work.

**3.2.3**

A Faculty member shall not, in connection with any class, suggest or require that a student purchase instructional materials which the Faculty member has produced, or from the purchase of which the Faculty member or the Faculty member's designee is entitled to royalty or similar consideration, unless the materials have been:

**3.2.3.1.**

produced by a "recognized, independent publisher," defined as a commercial entity in the business of publishing books, periodicals, and similar instructional materials, and which performs editorial, printing, distribution, marketing, and other functions typically associated with commercial publishing at the publisher's expense; and

**3.2.3.2.**

previously approved for students' purchase by the Vice President of Academic Affairs at the college where the Faculty member teaches the class.

**3.2.4.**

A Faculty member shall not have any financial interest in or receive compensation from the sale of any unpublished instructional materials required or suggested for a class that the Faculty member teaches.

### 3.3. Personal Rights

The Governing Board recognizes that the personal life of a Faculty member is not an appropriate concern of the MCCCD, provided it does not affect the Faculty member's effectiveness in fulfilling professional obligation(s).

### 3.4. Visitation of Faculty Members

Brief class visits by administrative and/or staff personnel may be conducted without notice to the Faculty member in situations that need immediate attention for the normal operation of the College, for example, the safety and welfare of the Faculty and/or students.  These visits will not be used for the purpose of the Faculty member evaluation.

### 3.5. Faculty Evaluation Plan (FEP) for Instructional Improvement

Inasmuch as the Faculty is committed to quality teaching and instruction and is contracted to provide professional services to students, colleagues, and the MCCCD, the Faculty do hereby agree to adhere to, support, and implement the following self-evaluation policies and procedures.

**3.5.1.** The objectives of the evaluation program are as follows:

| home | about us | employees | search |



Home
Online Policy Manual
Governance Resources
College Rules of Operation

OTHER RESOURCES
Office of Public Stewardship
Office of General Counsel
Governing Board

Get Acrobat Reader

Select Language
Powered by
Google Translate

# Maricopa Governance

## Online Policy Manual

### 3.2 Copyright Regulation

1. It is the intent of the Governing Board of the Maricopa County Community College District to adhere to the provisions of the U.S. Copyright Law (Title 17, United States Code Section 101 *et seq.*). Though there continues to be controversy regarding interpretation of the Copyright Law, this policy represents a sincere effort by the Board to operate legally within the District.
2. The Governing Board directs the Chancellor or his designee(s) to develop and distribute to employees guidelines that (1) clearly discourage violation of the Copyright Law and (2) inform employees of their rights and responsibilities under the Copyright Law.
3. Each college president or provost and the Chancellor shall name an individual(s) at each district location who will assume the responsibilities of distributing copyright guidelines, act as a resource person regarding copyright matter and provide training programs on current copyright laws.
4. Employees are prohibited from copying materials not specifically allowed by the (1) copyright Law, (2) fair use guidelines, (3) Licenses or contractual agreements, or (4) other permission.
5. The Governing Board disapproves of unauthorized duplication in any form. Employees who willfully disregard this Board policy and/or the aforementioned copyright guidelines do so at their own risk and assume all liability for their actions.
6. In order to assist employees and students in complying with the Copyright Law, appropriate notices shall be placed on or near all equipment capable of duplicating copyrighted materials.

What Students Should Know About Copyright

AMENDED through the Administrative Regulation approval process, August 18, 2008

ADOPTED into Governance, September 24, 1996
AMENDED Motion No. 8894
AMENDED Motion No. 8895
AMENDED Motion No. 8896

Founding Source:
Governing Board Minutes, December 12, 1989, Motion No. 7144

Print Section (Adobe Acrobat—Requires Adobe Acrobat Reader)



OPS Web Issues?
Contact Tina Emmons or your College Help Desk

Questions or comments?
Contact Teresa Toney | Office of Public Stewardship | 2411 West 14th Street | Tempe, AZ 85281-6942 | 480.731.8880 | 480.731.8819 fax
A division of the Office of General Counsel | 2411 West 14th Street | Tempe, AZ 85281-6942 | 480.731.8877 | 480.731.8890 fax
Legal Services Disclaimer | MCCCD Disclaimer
© Maricopa County Community College District. All Rights Reserved.

MARICOPA COMMUNITY COLLEGES®

~ Ten colleges specializing in university transfer, continuing education, career and job training programs ~
note disclaimer | contact us