# EXHIBIT 4

# TO

# PLAINTIFF'S STATEMENT OF FACTS

# IN SUPPORT OF

# PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE GOVERNING BOARD OF THE
MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT

| | | |
|---|---|---|
| MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT, | ) ) ) | HEARING COMMITTEE |
| v. | ) ) ) | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION |
| DR. CLEOPATRIA MARTINEZ | ) | |

Pursuant to the October 16, 2013 Scheduling Order, having reviewed all of the parties' pleadings and exhibits and conducting a hearing on November 18, 2013, the Hearing Committee (by majority vote) hereby submits the following Findings of Fact, Conclusions of Law and Recommendation.

## FINDINGS OF FACT

1.  After having taught mathematics full-time for ten years at Denver Community College, Dr. Cleopatria Martinez moved to Arizona and started teaching mathematics full-time at Scottsdale Community College on January 1, 1985.

2.  Dr. Martinez voluntarily transferred to Phoenix College ("PC") in 1995 and has been teaching mathematics there full-time ever since.

3.  Dr. Martinez elected to voluntarily transfer to PC because there were very few minority students attending Scottsdale Community College, and she wanted to use her bilingual education skills in the mathematics classroom to better educate the large number of minority students attending PC.

4.  Dr. Martinez was elected by her colleagues to serve as the Chairperson of the Mathematics Department of PC from 2002 to 2005.

5.  In early 2010, PC discovered that Dr. Cleopatria Martinez may have exposed MCCCD to potential liability for copyright infringement.

6.  Dr. Martinez testified that, during her twenty-eight years of teaching mathematics in the MCCCD system, she and her colleagues in the Mathematics Departments of both Scottsdale Community College and PC routinely borrowed mathematics problems from other mathematicians to use in their student handouts for educational purposes on a not for profit basis.

7.  Dr. Martinez testified, without rebuttal, that this borrowing of mathematics problems is a longstanding, widespread custom throughout the District and academia at large.

8.  Instead of requiring her mathematics students to purchase textbooks, Dr. Martinez prepared her own course materials which she called her "Lecture Notes" and distributed them to

-1-

MCCCD/Martinez 03845

her students.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 77:17-78:15, 106:16-108:16, 121:25-140:13, 132:16-137:25).

9.     Dr. Martinez read the Copyright Act of 1976 and believed that it authorized her to use small portions of other scholars' work under the "Fair Use" doctrine because she was using it only for classroom teaching purposes on a not for profit basis and her use of the material did not undermine the potential market for the other scholar's work.

10.     Per the "Fair Use" doctrine of the Copyright Act, the "use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright."  17 U.S.C. § 107.

11.     Dr. Martinez copied problems from copyright protected textbooks and inserted them into her course materials.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 106:16-108:16).

12.     Dr. Martinez, in her Basic Arithmetic (MAT082) course, copied problems directly from a copyrighted textbook entitled "Basic Mathematics" and inserted them into her "MAT 082 Basic Arithmetic Spring 2010" course materials which she distributed to students.  MCCCD Exhibit List # 20 (Full-Sized Excerpted Comparison).  She did not seek or obtain permission from the copyright holder.

13.     Dr. Martinez also copied problems directly from the Sullivan & Sullivan "Precalculus" textbook and inserted them into her "MAT182 Trigonometry Spring 2010" course materials.  MCCCD Exhibit List # 22 (Full-Sized Excerpted Comparison).  She did not seek or obtain permission from the copyright holder.

14.     Dr. Martinez did not require her students to purchase textbooks in her Spring MAT082 Course.  MCCCD Exhibit List # 18 (email from Dr. Martinez stating "I indicated in my syllabus that, instead of a published textbook, I was using lecture notes in my MAT082 class.")

15.     Dr. Martinez did not require her students to purchase textbooks in her Spring MAT182 Course.  *See* Dr. Martinez's hearing testimony (conceding that students were not required to purchase a textbook in her Spring 2010 MAT182 course).

16.     On or around January 12, 2010, MCCCD's Vice President of Academic Services, Ronnie Elliot, sent Dr. Martinez an email notifying her that there were alleged copyright related problems with the materials she had printed for the Fall 2009 and Spring 2010 semesters.  MCCCD Exhibit List # 23 (January 12, 2010 email).  The materials in question were packets of course materials for Dr. Martinez's MAT182 and MAT187 courses and contained mathematics problems and graphs that were taken from copyrighted textbooks.  MCCCD Exhibit List # 11 (Ronnie Elliot Declaration, ¶¶8-9); MCCCD Exhibit List # 16 (MAT182 course packet); MCCCD Exhibit List # 7 (Sean Garrison October 28, 2010 Memorandum).

17.     Dr. Martinez used three of the four packets of "lecture notes" in the Spring of 2010 in two pre-calculus classes. See District Exhibit 6, parts 1-3.

MCCCD/Martinez 03846

18.     The MCCCD administration, following Vice President Elliot's email, repeatedly explained its copyright concerns to Dr. Martinez and asked Dr. Martinez to remove any copyright protected mathematics problems from her materials. See Kakar Hearing Testimony.

19.     On January 26, 2010, Vice President Elliot sent Dr. Martinez an email outlining MCCCD's concerns regarding Dr. Martinez's potential copyright infringement.   MCCCD Exhibit List # 24 (January 26, 2010 email).

20.     On January 28, 2010, MCCCD in-house-counsel Margaret McConnell discussed copyright compliance with Dr. Martinez telephonically. MCCCD Exhibit List # 25 (January 28, 2010 email).

21.     Dr. Martinez did not benefit from the multiple MCCCD copyright information sessions noted above.

22.     PC's own expert witness, Sean Garrison, testified that under the "Fair Use" doctrine, someone could lawfully copy from a copyrighted textbook without either using or purchasing the textbook.

23.     On February 5, 2010, Vice President of Academic Affairs Casandra Kakar, Interim Vice President of Administrative Services Paul DeRose, and Dr. Martinez met to discuss Dr. Martinez's alleged misuse of copyrighted materials. MCCCD Exhibit List # 26 (February 12, 2010 email).

24.     Dr. Martinez has not used any of the four sets of "lecture notes" since the Spring of 2010 when PC first raised its concerns regarding the notes.

25.     On April 15, 2010, PC Librarian Ann Roselle conducted a personalized one-on-one copyright training session with Dr. Martinez.   MCCCD Exhibit List # 28 (Copyright PowerPoint Presentation). *See also*, Kakar Hearing Testimony.

26.     When Dr. Martinez met with the librarian, the librarian told Dr. Martinez that Dr. Martinez knew as much about copyright law as she did. See Martinez Hearing Testimony.

27.     Following the revocation of Dr. Martinez's copying privileges, Dr. Martinez was required to submit her copy requests to Mathematics Department Chairperson Mr. Sueyoshi so that Mr. Sueyoshi could review her materials for possible copyright violations prior to copying and distribution to students. MCCCD Exhibit List # 8 (April 2, 2010 Directive).

28.     Dr. Martinez sought and obtained a form of written permission from the publisher of the textbook, Sullivan & Sullivan's "Precalculus," to copy materials from their book after PC accused her of violating copyright law.

29.     On or around April 19, 2010, Dr. Martinez attempted to bypass the copying restrictions by having an adjunct mathematics Professor, Johnny Santellan, make 24 sets of copies of her "Lecture Notes" for distribution to her mathematics students without obtaining prior approval from the Mathematics Department Chairperson.   MCCCD Exhibit List # 12 (Sueyoshi Decl., ¶9); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 223:11-224:21).

MCCCD/Martinez 03847

30.    Because Dr. Martinez did not feel she was able to obtain reliable guidance regarding copyright compliance from the District, she sought advice from a private intellectual property attorney regarding the issue, Mr. Frederic Bellamy.

31.    Mr. Bellamy reviewed the first two sets of Dr. Martinez's "lecture notes" and concluded that they did not violate copyright law because they fell under the "Fair Use" doctrine.

32.    Mr. Bellamy based his conclusion that Dr. Martinez did not violate copyright law on the opinion that the portion of material that Dr. Martinez copied from the Sullivan & Sullivan Precalculus textbook was very small, that she used the copied materials exclusively for educational purposes without any profit motive, that the content of the copied material consisted of mathematics problems that are arguably not subject to copyright in the first place, and that the small portion of the textbook that Dr. Martinez copied did not adversely impact the potential market for the textbook.

33.    At the hearing, another lawyer practicing in the area of intellectual property law, Sean Garrison, testified on behalf of PC. In contrast to Mr. Bellamy, Mr. Garrison testified at the hearing that the first three sets of Dr. Martinez's lecture notes violated copyright law.

34.    In contrast to his testimony at the hearing of November 18, 2013, in his written report Mr. Garrison concluded only that the first three sets of Dr. Martinez's lecture notes subjected the District "to a serious risk of a copyright infringement claim." See District Exhibit 6, p. 0002.

35.    MCCCD invited Dr. Martinez to a copyright workshop that was held on March 1, 2010 at PC. Dr. Martinez chose not to attend the workshop. MCCCD Exhibit List # 10 (Solley Decl., ¶11).

36.    PC President Anna Solley, on December 9, 2010, concluded that Dr. Martinez's alleged misconduct posed an unacceptable legal risk of a copyright infringement claim and imposed restrictions on Dr. Martinez's photocopying privileges. MCCCD Exhibit List # 10 (Solley Decl., ¶12).

37.    MCCCD sought a legal opinion from an outside copyright expert, attorney Sean Garrison. MCCCD Exhibit List # 10 (Solley Decl., ¶ 14); MCCCD Exhibit List # 7 (Sean Garrison October 28, 2010 Memo).

38.    According to Mr. Garrison, the third set of "lecture notes" appeared to have 13 mathematics problems copied from two other mathematics textbooks.

39.    Mr. Garrison testified that he was certain that Dr. Martinez has committed copyright infringement.  See Garrison Hearing Testimony.  In reaching this conclusion, Mr. Garrison reviewed thousands of pages of materials including nearly 300 pages of Dr. Martinez's lecture notes and three separate copyrighted mathematics textbooks. MCCCD Exhibit List # 6 (Sean Garrison April 19, 2013 Report); see also Garrison Hearing Testimony.

40.    In reliance upon Mr. Garrison's recommendations, PC President Anna Solley issued a December 9, 2010 directive that imposed further restrictions on Dr. Martinez's copying

MCCCD/Martinez 03848

privileges.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 10 (Solley Decl., ¶15).

41.    The December 9, 2010 Directive prohibited Dr. Martinez from utilizing any course materials of her own creation.  MCCCD Exhibit List # 9 (December 9, 2010 Directive). Instead, Dr. Martinez was required to only use course materials that are "approved by the mathematics department" or that are "available in the bookstore for sale to students and that are authored by persons other than [Dr. Martinez]."  MCCCD Exhibit List # 9 (December 9, 2010 Directive).

42.    The December 9, 2010 Directive further required Dr. Martinez to submit her photocopy requests to the Mathematics Department Chair for his approval.  MCCCD Exhibit List # 9 (December 9, 2010 Directive).

43.    Despite MCCCD's frequent discussions with Dr. Martinez regarding the importance of complying with copyright laws and the December 9, 2010 Directive, Dr. Martinez continued to attempt to ignore the directive.  See Kakar Hearing Testimony.

44.    At the beginning of the Fall 2012 semester (on or about August 21-23, 2012), Dr. Martinez informed her students that they were not required to purchase a course textbook and that she would provide them with her own course materials in lieu of a textbook.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21.

45.    In fall of 2012, Dr. Martinez sought to have her lecture notes photocopied off campus at a nearby Staples store.  This practice is inconsistent with the December 9, 2010 Directive.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

46.    Dr. Martinez did not submit her Fall 2012 materials to Mathematics Department Chairperson Mr. Sueyoshi for approval.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

47.    Dr. Martinez made copies of her course materials at an off-campus Staples store and distributed them to students for $11 per copy.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

48.    The $11 course material fee was paid directly to Dr. Martinez by students. MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

49.    PC accused Dr. Martinez of violating the District's "cash handling" rules by distributing these course materials to her students if the students reimbursed her for her out-of-pocket copying costs.

50.    PC subsequently claimed that Dr. Martinez violated the District's "cash handling" policies by seeking reimbursement for the copies.

51.    MCCCD's policies prohibit instructors from having "any financial interest in or receiv[ing] compensation from the sale of any unpublished instructional materials required or

MCCCD/Martinez 03849

suggested for a class that the instructor teaches." MCCCD Exhibit List # 41 (Residential Faculty Policies, 3.2.4).).

52.     Dr. Martinez failed to follow the protocol set forth in the December 9, 2010 Directive in copying her Fall 2012 course materials.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

53.     Dr. Martinez distributed course materials directly to students in her Fall 2012 MAT151 class. MCCCD Exhibit List # 4-5 (Martinez Depo. pp. 232:19-233:21).

54.     The MCCCD Administration learned of Dr. Martinez's unauthorized distribution of course materials to students after one of Dr. Martinez's MAT151 students complained to Mathematics Department Chairperson Mr. Sueyoshi. The student complained that Dr. Martinez refused to provide her with a receipt for the purchased course materials.  See Kakar Hearing Testimony.

55.     Upon learning that Dr. Martinez had distributed course materials to students allegedly in violation of MCCCD's cash handling policy, President Solley instructed Martinez to immediately issue refunds to her students via personal check.  MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.

56.     On or around October 18, 2012, President Solley and Dr. Kakar met with Dr. Martinez to explain the seriousness of Dr. Martinez's alleged cash handling violation. MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.  In addition, President Solley and Dr. Kakar prepared a written counseling memo dated October 18 2010 for Dr. Martinez regarding her alleged violation of cash handling rules.  Dr. Martinez was provided with a copy of the October 18, 2010 counseling notice and President Solley proceeded to explain to Dr. Martinez the seriousness of the alleged cash handling violations and the requirement that Dr. Martinez issue reimbursements to her students.  MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.

57.     Several months later, on or around January 9, 2013, Dr. Kakar learned that most (if not all) students had not yet received refunds from the Dr. Martinez.  MCCCD Exhibit List # 39 (various emails regarding student refunds).  As a result, Dr. Kakar instructed Dr. Martinez to provide copies of refund checks by January 18, 2013.  MCCCD Exhibit List # 39 (various emails regarding student refunds).

58.     Dr. Martinez failed to produce a single refund check by the January 18, 2013 deadline. MCCCD Exhibit List # 39 (various emails regarding student refunds).

59.     Dr. Martinez did not think that she had violated any District rule in reference to the copies.  Therefore, she declined to follow the December 9, 2010 order because she believed she was not required to do so under any District rule.

60.     At the November 18, 2013 hearing, Dr. Martinez did not provide any explanation for her refusal to comply with the October 18, 2012 and January 9, 2013 directives to issue refunds to her students.  See Martinez Hearing Testimony.

MCCCD/Martinez 03850

61.    At the hearing Dr. Martinez testified that she had made a "mistake" and, in retrospect, should have complied with President Solley's instructions.   See Martinez Hearing Testimony.

62.    On or around August 9, 2013, MCCCD Chancellor Rufus Glasper sent Dr. Martinez a letter informing her that MCCCD was proceeding with termination proceedings. Included with this letter was a statement of charges that summarized the particular violations Dr. Martinez had been charged with (hereinafter referred to as "Statement of Charges.") MCCCD Exhibit List # 1 (Statement of Charges).

## CONCLUSIONS

63.    PC failed to carry its burden of proof relating to violation of MCCCD's cash handling rules found in MCCCD Administrative Regulations 1.17, violation of Residential Policy Manual 3.2.4 (relating to financial interests in unpublished materials), violation of U.S. Copyright Law and fair use guidelines, and violation of MCCCD Administrative Regulations 3.2.4 and 3.2.5 related to copyright regulations.

64.    Notwithstanding their education, their experience, and their good faith, Mr. Bellamy and Mr. Garrison disagreed as to whether or not Dr. Martinez violated copyright law. Therefore, it is inconclusive as to whether Dr. Martinez intentionally and/or inadvertently violated federal copyright law.

65.    It is inconclusive as to whether or not Dr. Martinez violated the "cash handling" policies of MCCCD.

66.    Dr. Martinez willfully and intentionally failed to follow instructions that were communicated to her when she failed to issue refunds to students as directed by President Solley.

67.    Dr. Martinez conceded that she never complied with President Solley's clear directive to issue refunds to her students.  Although Dr. Martinez now regrets her decision not to comply with President Solley's directive, she has never claimed that she did not understand the instructions or that the instructions were beyond the scope of management's authority.  Viewed in light of these facts, Martinez's claim that she "made a mistake" is an admission of willful insubordination.

68.    By failing to comply with President Solley's directive to issue refunds to her students, Dr. Martinez violated MCCCD Administrative Regulation 6.7.1 which prohibits the "[w]illful and intentional violation of any...MCCCD administrative regulation that affects the employee's ability to perform his or her job."

69.    By failing to comply with President Solley's directive to issue refunds to students, Dr. Martinez violated MCCCD Administrative Regulation 6.7.3 which prohibits the "[w]illful and intentional failure to perform job duties that have first been communicated to an employee and are within the employee's scope of employment."

///

MCCCD/Martinez 03851

## RECOMMENDATION

70.    We hereby recommend that the Governing Board deny President Solley's termination request and allow Dr. Martinez to continue her MCCCD employment.

71.    Per MCCCD Administrative Regulation 6.7 indicating that violation of any Employment Standards "constitutes grounds for disciplinary action, *up to* [emphasis added] and including termination," we hereby recommend that the Governing Board retain Dr. Martinez.


It is ordered so, at Mesa, Arizona, this 9th day of December, 2013.

Dr. Keith Crudup
Chairperson
On Behalf of the Hearing Committee,
Dr. Nora Reyes and Dr. Carlos Caire

406681                         -8-

MCCCD/Martinez 03852