Pavneet Singh Uppal, SBN 016805
Shayna H. Balch, SBN 024852
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
Telephone: (602) 281-3400
Fax: (602) 281-3401
puppal@fisherphillips.com
sbalch@fisherphillips.com

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Cleopatria Martinez,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Maricopa County Community College District; et al.,<br><br>　　　　　Defendants. | No. CV 15-01759-PHX-NVW<br><br>**DEFENDANTS' SEPARATE STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Defendants Maricopa County Community College District, Rufus Glasper, Ph.D. and Debra Glasper, by and through their undersigned counsel, hereby submits their Separate Statement of Facts in Support of their Motion For Summary Judgment as follows:

**EVIDENCE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | | |
|---|---|---|
| **Exhibit 1:** | MCCCD Residential Faculty Policies (2012-2013) | Glasper Depo., Exh. 1 |
| **Exhibit 2:** | MCCCD Residential Faculty Policies (2013-2014) | MartinezDST003735-3826 |
| **Exhibit 3:** | Employee Profile, 1984 | MCCCCD/Martinez 00060 |
| **Exhibit 4:** | Employee Profile, 1995 | MCCCCD/Martinez 00026 |

FPDOCS 32679417.1

| Exhibit | Description | Source |
|---|---|---|
| Exhibit 5: | Declaration of Ronnie Elliot | MCCCD/Martinez 01242-1328 |
| Exhibit 6: | 2013 Martinez Depo. Transcript Excerpts | MCCCD/Martinez 01202-1240 |
| Exhibit 7: | Comparisons Between Lecture Notes and Textbooks | MCCCD/Martinez 01330-1334 |
| Exhibit 8: | Plaintiff's MAT 082 Lecture Notes Identified During 2013 Deposition | 12-CV-00702-DGC, Doc. 68, Exh. 11 |
| Exhibit 9: | Plaintiff's MAT 182 Fall 2009 Lecture Notes Identified During 2013 Deposition | 12-CV-00702-DGC, Doc. 68, Exh. 12 |
| Exhibit 10: | Plaintiff's MAT 182 Spring 2010 Lecture Notes Identified During 2013 Deposition | 12-CV-00702-DGC, Doc. 68, Exh. 13 |
| Exhibit 11: | Declaration of Joe Sueyoshi | MCCCD/Martinez 01399-1411 |
| Exhibit 12: | January 26, 2010 Email Between R. Elliot and C. Martinez | MCCCD/Martinez 01350-1351 |
| Exhibit 13: | January 28, 2010 Email Between M. McConnell and C. Martinez | MCCCD/Martinez 01353 |
| Exhibit 14: | February 12, 2010 Email Summarizing February 5, 2010 Meeting | MCCCD/Martinez 01355 |
| Exhibit 15: | Declaration of Anna Solley | MCCCD/Martinez 01357-1394 |
| Exhibit 16: | Copyright Training PowerPoint | MCCCD/Martinez 01413-1438 |
| Exhibit 17: | April 2, 2010 Directive | MCCCD/Martinez 01396-1397 |
| Exhibit 18: | Solley October 12, 2010 Letter to Plaintiff Summarizing Chronology of Events | 12-CV-00702-DGC, Doc. 68, Ex. 32 |
| Exhibit 19: | October 28, 2010 Garrison Memorandum | MCCCD/Martinez 01336-1343 |
| Exhibit 20: | December 9, 2010 Directive | MCCCD/Martinez 01440-1441 |
| Exhibit 21: | October 18, 2012 Notice | MCCCD/Martinez 01453-1456 |
| Exhibit 22: | Various Emails Regarding Student Refunds | MCCCD/Martinez 01473-1490 |
| Exhibit 23: | November 18, 2010 Hearing Transcript | MCCCD/Martinez 03451-3791 |
| Exhibit 24: | Hearing Committee Findings of Fact and Conclusions of Law | MCCCD/Martinez 03993-4000 |
| Exhibit 25: | 2016 Martinez Depo. Transcript Excerpts | N/A |
| Exhibit 26: | March 20, 2013 Notice of Pre-Disciplinary Conference | MCCCD/Martinez 01458-1464 |
| Exhibit 27: | August 9, 2013 Statement of Charges | Glasper Depo. Exh. 3 |

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

| | | |
|---|---|---|
| **Exhibit 28:** | Martinez August 16, 2013 Request for Hearing | MCCCD/Martinez 04005-4007 |
| **Exhibit 29:** | Hearing Committee Preliminary Scheduling Order | MCCCD/Martinez 01184-1185 |
| **Exhibit 30:** | Cleopatria Martinez's List of Witnesses and **Exhibit**s | MCCCD/Martinez 03008-3197 |
| **Exhibit 31:** | Cleopatria Martinez's Position Statement | MCCCD/Martinez 03198-3205 |
| **Exhibit 32:** | Cleopatria Martinez's Supplemental Position Statement | MCCCD/Martinez 03207-3265 |
| **Exhibit 33:** | Cleopatria Martinez's Citation of Supplemental Authority | MCCCD/Martinez 03417-3450 |
| **Exhibit 34:** | Cleopatria Martinez's Proposed Findings of Fact, Conclusions of Law, and Recommendations | MCCCD/Martinez 03827-3842 |
| **Exhibit 35:** | Declaration of Rufus Glasper | N/A |
| **Exhibit 36:** | February 10, 2014 Memorandum, Notice of Suspension without Pay, and Statement of Charges | Glasper Depo. Exh. 6 |
| **Exhibit 37:** | February 10, 2014 Email Chain Between L. Combs and S. Montoya | MCCCD/Martinez 01165-1167 |
| **Exhibit 38:** | February 24, 2014 Email Chain Between D. Newman and S. Montoya | MCCCD/Martinez 01168-1171 |
| **Exhibit 39:** | March 3, 2014 Email Chain Between D. Newman and P. Uppal | MCCCD/Martinez 01172-1180 |
| **Exhibit 40:** | April 14, 2014 Update to Notice of Suspension Without Pay | Glasper Depo. Exh. 7 |
| **Exhibit 41:** | March 12, 2014 Letter From Stephen Montoya to the Governing Board | Martinez Depo. Exh. 7 |
| **Exhibit 42:** | April 19, 2013 Sean D. Garrison Report (voluminous **Exhibit**s omitted) | GARRISON 00001-00022 |
| **Exhibit 43:** | February 21, 2015 Letter to Governing Board | Doc. 14, 14-5 |
| **Exhibit 44:** | March 25, 2014 Letter to Governing Board | Martinez Depo., Exh. 11 |
| **Exhibit 45:** | March 25, 2014 Governing Board Minutes | Martinez Depo., Exh. 11 |
| **Exhibit 46:** | March 25, 2014 Governing Board Transcript | MCCCD/Martinez 00730-00732 |
| **Exhibit 47:** | August 13, 2014 Letter to Governing Board | Doc. 14, 14-8 |
| **Exhibit 48:** | October 28, 2014 Letter to Governing Board | Doc. 14, 14-7 |
| **Exhibit 49:** | January 27, 2015 Letter to Governing Board | Doc. 14, 14-8 |
| **Exhibit 50:** | October 28, 2014 Governing Board Transcript | MCCCD/Martinez 01160-01164 |

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

3

FPDOCS 32679417.1

| | | |
|---|---|---|
| **Exhibit 51:** | October 28, 2014 Governing Board Minutes | Martinez Depo., Exh. 14 |
| **Exhibit 52:** | May 27, 2014 Governing Board Transcript | MCCCD/Martinez 00947-00949 |
| **Exhibit 53:** | August 25, 2015 Letter from Haines to Martinez | Doc. 14, 14-11 |
| **Exhibit 54:** | Plaintiff's Answers To Defendants' First Requests For Admission To Plaintiff | N/A |

## STATEMENT OF FACTS

### I. MCCCD's Residential Faculty Policies.

1. For the 2012-2013 school year, the Maricopa County Community College District ("MCCCD") 2012-2013 Residential Faculty Policies were in effect and applied to residential faculty. **Exhibit 1** (2012-2013 RFP Policy Manual). These policies have an effective date of September 1, 2013. **Exhibit 1** (2012-2013 RFP Policy Manual).

2. The 2012-2013 MCCCD RFP Manual has separate provisions relating to Suspension of a Faculty Member (RFP No. 3.13) and Faculty Member Dismissal – Probationary and Appointive (RFP No. 3.15). **Exhibit 1** (2012-2013 RFP Policy Manual, pp. 20-23).

3. For the 2013-2014 school year, the Maricopa County Community College District ("MCCCD") 2013-2014 Residential Faculty Policies were in effect and applied to residential faculty. **Exhibit 2** (2013-2014 RFP Policy Manual). These policies have an effective date of July 1, 2012. **Exhibit 1** (2012-2013 RFP Policy Manual).

4. The 2013-2014 MCCCD RFP Manual has separate provisions relating to Suspension of a Faculty Member (RFP No. 3.11) and Faculty Member Dismissal – Probationary and Appointive (RFP No. 3.13). **Exhibit 2** (2013-2014 RFP Policy Manual, pp. 20-23).

### II. Plaintiff Subjected MCCCD to an Unreasonable Risk of a Copyright Lawsuit and In Response, MCCCD Imposed the December 9, 2010 Directive.

5. Plaintiff began working for MCCCD as a math instructor at Scottsdale Community College in or around 1984. **Exhibit 3** (Employee Profile, 1984). In 1995, she transferred to Phoenix College and continued working as a math instructor. **Exhibit**

1  **4**, (Employee Profile, 1995).

2      6.    In early 2010, Phoenix College (one of ten community colleges within MCCCD) discovered that Plaintiff had exposed MCCCD to a substantial risk of liability for copyright infringement. **Exhibit 5** (Declaration of Ronnie Elliot, ¶¶ 8,9).

    7.    Instead of requiring her math students to purchase copyrighted textbooks, Plaintiff prepared her own course materials which she distributed to her students free of charge. **Exhibit 6** (2013 Martinez Depo. Transcript Excerpts, p. 77:17-78:15, 121:25-140:13, 132:16-137:25). Plaintiff called these course materials her "Lecture Notes." **Exhibit 6** (2013 Martinez Depo. Transcript Excerpts., p. 77:17-78:15, 121:25-140:13, 132:16-137:25); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 8).

    8.    In preparing her "Lecture Notes," Plaintiff *directly* copied math problems from copyright protected textbooks and inserted them into her course materials. **Exhibit 6** (2013 Martinez Depo. Transcript Excerpts, p. 106:16-108:16); **Exhibit 7** (Comparisons Between Lecture Notes and Textbooks). **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶¶ 11-13). Plaintiff did so without providing attribution to the textbook publishers and/or authors. **Exhibit 6** (2013 Martinez Depo. Transcript Excerpts, p. 134:20-25); **Exhibit 8** (Plaintiff's MAT 082 Lecture Notes Identified During Deposition); **Exhibit 9** (Plaintiff's MAT 182 Fall 2009 Lecture Notes Identified During Deposition); **Exhibit 10** (Plaintiff's MAT 182 Spring 2010 Lecture Notes Identified During Deposition); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶¶ 12-13).

    9.    The fact that Plaintiff copied math problems directly from copyright protected textbooks and inserted them into her course materials is not in dispute. Plaintiff testified under oath that problems from the copyright protected materials were inserted into her course materials. **Exhibit 6** (2013 Martinez Depo. Transcript Excerpts, p. 107:14-23). Plaintiff's sole excuse for engaging in this behavior is that she "didn't know" that her conduct violated federal copyright laws and/or that she didn't see

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

anything wrong with what she was doing. **Exhibit 11** (Sueyoshi Decl. ¶ 8).

10. Once MCCCD discovered Plaintiff's conduct, administration officials *repeatedly* explained their copyright concerns to Plaintiff. **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶¶ 16-20). On January 12, 2010, MCCCD Vice President of Academic Services Ronnie Elliot sent Plaintiff an email notifying her that there were copyright related problems with the materials she had printed for the Fall 2009 and Spring 2010 semesters. **Exhibit 55** (January 12, 2010 Email); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 16). On January 26, 2010, Vice President of Administrative Services Ronnie Elliot sent Plaintiff an email outlining MCCCD's concerns regarding Plaintiff's potential copyright infringement. **Exhibit 12** (January 26, 2010 Email); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 19). On January 28, 2010, MCCCD In-House-Counsel Maggie McConnell discussed copyright issues with Plaintiff telephonically. **Exhibit 13** (January 28, 2010 email); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 20). On February 5, 2010, Vice President of Academic Affairs Casandara Kakar, Interim Vice President of Administrative Services Paul DeRose, and Plaintiff met to discuss copyright concerns. **Exhibit 14** (February 12, 2010 email summarizing Feb. 5 meeting); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 23). Phoenix College Librarian Ann Roselle even conducted a personalized one-on-one copyright training session with Plaintiff on April 15, 2010. **Exhibit 15** (Solley Decl., ¶ 11); **Exhibit 16** (Copyright Training PowerPoint); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 25). Unfortunately, despite repeated counseling attempts by MCCCD administration, Plaintiff continued to ignore federal copyright laws. **Exhibit 15** (Solley Decl., ¶ 6-15).

11. As a result of Plaintiff's continuing misconduct and the unacceptable legal risk that her actions presented, MCCCD imposed restrictions on Plaintiff's photocopying privileges. **Exhibit 15** (Solley Decl., ¶ 12). Specifically on April 2, 2010, Dr. Solley issued a directive requiring Plaintiff to submit her copy requests to the Math Department

Chair so that he could review the materials for possible copyright violations prior to copying and distribution to students. **Exhibit 17** (April 2, 2010 Directive); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 27).

12. MCCCD was hopeful that the suspension of Plaintiff's copy privileges would serve to illustrate the seriousness of this matter to Plaintiff, but instead of complying with the newly imposed copy restrictions, Plaintiff continued to disregard copyright laws and actually circumvented the copy restrictions that were put in place. **Exhibit 15** (Solley Decl., ¶ 13). For example, on or around April 19, 2010, Plaintiff attempted to bypass the copy restrictions by having an adjunct math professor, Johnny Santellan, make 24 sets of copies of her "Lecture Notes" for distribution to her math students. **Exhibit 11** (Sueyoshi Decl., ¶ 9); **Exhibit 6** (Martinez Depo., p. 223:11-224:21); **Exhibit 18** (Solley October 12, 2010 Letter to Plaintiff Summarizing Chronology of Events); **Exhibit 15** (Solley Decl., ¶ 13). At deposition, Plaintiff openly admitted that she asked Santellan to make these copies without first obtaining approval from the Math Department Chair. **Exhibit 6** (2013 Martinez Depo. Transcript Excerpts, p. 223:11-224:21). There were also repeated instances where Plaintiff bypassed the approval process by printing multiple copies of her "Lecture Notes" directly to the math department laser printer. **Exhibit 11** (Sueyoshi Decl., ¶ 10); **Exhibit** 6 (2013 Martinez Depo. Transcript Excerpts, p. 247:2-248:7); **Exhibit 18** (Solley October 12, 2010 Letter to Plaintiff Summarizing Chronology of Events). **Exhibit 15** (Solley Decl., ¶ 13).

13. MCCCD then sought a legal opinion from an outside copyright expert, attorney Sean Garrison. **Exhibit 15** (Solley Decl., ¶ 14). Mr. Garrison, who specializes in copyright law, advised MCCCD that "significant portions of [Plaintiff's] Course Materials have been copied from other [copyrighted] sources." **Exhibit 19** (October 28, 2010 Garrison Memorandum). He further advised MCCCD to cease further distribution or use of Plaintiff's course materials because they presented a "significant risk of [copyright] infringement." **Exhibit 19** (October 28, 2010 Garrison Memorandum). Mr. Garrison estimated that MCCCD's potential exposure to damages for Plaintiff's

7

copyright infringement could be as high as $150,000 per violation. **Exhibit 42** (2013 Garrison Expert Report). Mr. Garrison further opined that because Plaintiff copied problems from at least three textbooks, MCCCD could face damages of $450,000 plus attorneys' fees and costs. **Exhibit 42** (2013 Garrison Expert Report).

14. In reliance upon Mr. Garrison's recommendations, Phoenix College President Anna Solley issued a directive on December 9, 2010 that imposed further restrictions on Plaintiff's copying privileges. **Exhibit 15** (Solley Decl., ¶ 15); **Exhibit 20** (December 9, 2010 Directive); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 40). Specifically, the December 9, 2010 Directive prohibited Plaintiff from utilizing any course materials of her own creation. **Exhibit 20** (December 9, 2010 Directive). Instead, Plaintiff was required to only use course materials that are "approved by the math department" or that are "available in the bookstore for sale to students and that are authored by persons other than [Plaintiff]." **Exhibit 20** (December 9, 2010 Directive); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 41). The Directive further required Plaintiff to submit her photocopy requests to the Math Department Chair for his approval. **Exhibit 20** (December 9, 2010 Directive); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 42).

15. Despite MCCCD's frequent discussions with Plaintiff regarding the importance of complying with copyright laws and the imposition of the December 9, 2010 Directive, Plaintiff continually and repeatedly ignored the Directive. **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 43). For example, in August of 2012, Plaintiff violated the December 9, 2010 Directive by having her materials photocopied off campus at a local Staples store. **Exhibit 6** (2013 Martinez Depo. Transcript Excerpts, pp. 232:19-233:21); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 47). Specifically, Plaintiff informed her students that they were not required to purchase a course textbook and that she would provide them with course materials in lieu of a textbook. **Exhibit 6** (2013 Martinez Depo. Transcript Excerpts, pp. 232:19-233:21). Plaintiff then made copies of her course

8

materials at an off-campus Staples store and required students to purchase them from her for $11. **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 47-48); **Exhibit 6** (2013 Martinez Depo. Transcript Excerpts, pp. 232:19-233:21). MCCCD administration concluded that Plaintiff's actions violated MCCCD's cash handling policies which prohibit unauthorized faculty members from receiving compensation from the sale of instructional materials. **Exhibit 21** (October 18, 2012 Notice); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶¶ 49-50).

16. Specifically, MCCCD's 2012-2013 policies prohibit instructors from having "any financial interest in or receiv[ing] compensation from the sale of any unpublished instructional materials required or suggested for a class that the instructor teaches." **Exhibit 1** (Residential Faculty Policies, 3.2.4); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 51). This prohibition makes perfect sense when one considers the position of authority that faculty members hold over their students. **Exhibit 23** (November 18, 2010 Hearing Transcript, pp. 138:17-140:7). Students may feel compelled to purchase materials which are required, recommended, or offered by their instructors. **Exhibit 23** (November 18, 2010 Hearing Transcript, pp. 138:17-140:7). Similarly, students may feel that their grades could be affected if they decline to purchase materials from a faculty member. **Exhibit 23** (November 18, 2010 Hearing Transcript, pp. 138:17-140:7).

17. On or around October 18, 2012, after it was established that Plaintiff had sold the materials directly to students, Plaintiff was instructed to immediately issue refunds to her students by personal check. **Exhibit 22** (various emails regarding student refunds). **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 56); **Exhibit 23** (November 18, 2010 Hearing Transcript, pp. 235:25-236:8). Several months later on or around January 9, 2013, MCCCD Vice President of Academic Affairs Cassandra Kakar learned that students had not yet received refunds from Plaintiff. **Exhibit 22** (various emails regarding student refunds). **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 57). As a result, Dr. Kakar instructed

Plaintiff to provide copies of the front and back of all cashed refund checks by January 18, 2013. **Exhibit 22** (various emails regarding student refunds). **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law ¶ 57). However, Plaintiff insubordinately failed to provide the requested canceled checks. **Exhibit 23** (November 18, 2013 Hearing Transcript, pp. 235:25-239:25); **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law, ¶¶58-61; 66-69). As of the November 18, 2013 evidentiary hearing, Plaintiff had not issued any refunds to her students. **Exhibit 23** (November 18, 2013 Hearing Transcript, pp. 232:6-25); **Exhibit 25** (Martinez Depo. Transcript, Vol. I, pp. 136:25-137:4).

### III. MCCCD's Notice to Plaintiff of the Charges Against Her and Plaintiff's Multiple Opportunities to Be Heard.

18. On March 20, 2013, Plaintiff was notified that a Pre-Disciplinary Conference had been scheduled regarding her conduct including her insubordination. **Exhibit 26** (March 20, 2013 Notice of Pre-Disciplinary Conference); **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 47:2-49:11). Plaintiff conceded at deposition that as of March 20, 2013 she was on notice of her alleged insubordination for willfully failing to follow a directive from the Phoenix College President in refusing to issue refunds. **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 47:2-49:11).

19. The Pre-Disciplinary Conference was later held between Plaintiff and President Solley and Vice President Kakar on or around April 3, 2013. **Exhibit 26** (March 20, 2013 Notice of Pre-Disciplinary Conference). Judy Castellanos and Sheri Klein from the MCCCD District Office HR Solutions Center were also present. **Exhibit 26** (March 20, 2013 Notice of Pre-Disciplinary Conference). During the meeting, Plaintiff was informed of the charges against her and given an opportunity to respond. **Exhibit 26** (March 20, 2013 Notice of Pre-Disciplinary Conference).

20. Following April 3, 2013 meeting, President Solley and Vice President Kakar sought to terminate Plaintiff's employment due to her unacceptable misconduct and Plaintiff was provided with an August 9, 2013 Statement of Charges regarding her

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

1  proposed dismissal.  **Exhibit 27** (August 9, 2013 Statement of Charges).  Plaintiff met with Vice Chancellor of Human Resources Jim Bowers and received a Statement of Charges regarding her proposed dismissal of employment (which included a charge of insubordination for failing to follow the December 9, 2010 Directive from President Anna Solley).  **Exhibit 25** (2016 Martinez Depo. Transcript)

21. Upon receipt of the Statement of Charges regarding her proposed dismissal, Plaintiff requested an evidentiary hearing, which MCCCD granted.  **Exhibit 28** (Martinez August 16, 2013 Request for Hearing); **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 52:19-53:16).

22. Plaintiff received her full day evidentiary hearing before a Hearing Committee comprised of her peers on November 18, 2013. **Exhibit 23** (November 18, 2013 Hearing Transcript); **Exhibit 25** (2016 Martinez Depo. Transcript, pp. 53:14-54:17).  The Hearing Committee issued a Preliminary Scheduling Order (**Exhibit 29**). The parties also submitted pre and post hearing briefing.  Specifically, Plaintiff submitted a List of Witnesses and Exhibits (**Exhibit 30**), Position Statement and Exhibits (**Exhibit 31**), Supplemental Position Statement and Exhibits (**Exhibit 32**), Citation of Supplemental Authority (**Exhibit 33**), and Proposed Findings of Fact and Conclusions of Law (**Exhibit 34**).

23. During the hearing Plaintiff was represented by experienced employment counsel, Stephen Montoya, and was able to call witnesses, cross examine MCCCD's witnesses, enter evidence, and offer expert testimony. **Exhibit 23** (November 18, 2013 Hearing Transcript); **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 54:8-57:25).

24. Following the hearing, the Hearing Committee issued binding Findings of Fact and Conclusions of Law.  **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law).  The Hearing Committee found that Plaintiff engaged in "willful insubordination" and that she "willfully and intentionally failed to follow instructions that were communicated to her when she failed to issue refunds to students as directed

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

FPDOCS 32679417.1

by President Solley." **Exhibit 24** (Hearing Committee Findings of Fact and Conclusions of Law).

25. Upon receipt of the Hearing Committee's findings, Chancellor Glasper met with the Hearing Committee to inquire about the basis of their conclusions. **Exhibit 35** (Glasper Decl. ¶ 7). The Hearing Committee members explained to Chancellor Glasper that because Plaintiff had been with the District for nearly 30 years, they were reluctant to recommend her permanent separation from employment, but believed a disciplinary action such as an unpaid suspension was appropriate. **Exhibit 35** (Glasper Decl. ¶ 7).

26. In light of the Hearing Committee's recommendations, Chancellor Glasper prepared a revised February 10, 2014 Statement of Charges proposing that Plaintiff be suspended from employment for 14 months. **Exhibit 36** (February 10, 2014 Statement of Charges). Chancellor Glasper notified Plaintiff, though her counsel, that he had decided to suspend Plaintiff. **Exhibit 37** (February 10, 2014 Email Chain between L. Combs and S. Montoya). Chancellor Glasper also offered Plaintiff the opportunity to schedule a meeting with the Vice Chancellor of Human Resources to discuss the rationale for the decision. **Exhibit 37** (February 10, 2014 Email Chain between L. Combs and S. Montoya). Plaintiff accepted the invitation and MCCCD scheduled a meeting between Plaintiff and the Vice Chancellor Bowers. **Exhibit 37** (February 10, 2014 Email Chain between L. Combs and S. Montoya).

27. The Statement of Charges was originally dated February 10, 2014, with an effective suspension date of March 1, 2014. **Exhibit 36** (February 10, 2014 Statement of Charges). MCCCD originally scheduled a meeting between Plaintiff and Vice Chancellor of Human Resources Bowers to discuss the Statement of Charges on February 25, 2014 – four days before the effective date of the suspension. **Exhibit 37** (February 10, 2014 Email Chain between L. Combs and S. Montoya). The day before the meeting was scheduled to take place, Plaintiff unilaterally canceled the meeting citing a "sudden medical issue." **Exhibit 38** (February 24, 2014 Email Chain between D.

Newman and S. Montoya). She informed MCCCD that the earliest she could meet consistent with her attorney's schedule was Friday, March 7, 2014. **Exhibit 38** (February 24, 2014 Email Chain between D. Newman and S. Montoya). MCCCD accommodated Plaintiff's request to move her meeting to March 7, 2014, and postponed Plaintiff's suspension by one month to ensure that she received a meeting with the Vice Chancellor prior to the suspension taking effect. **Exhibit 39** (March 3, 2014 Email Chain between D. Newman and P. Uppal). Plaintiff was issued a an Update to Notice of Suspension Without Pay dated April 14, 2014 which stated that her revised dates of suspension were April 15, 2014 through May 15, 2015. **Exhibit 40** (April 14, 2014 Update to Notice of Suspension without Pay).

28. Plaintiff met with Vice Chancellor Bowers on March 7, 2014 to discuss the Statement of Charges and her suspension. **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 77:3-79:25); **Exhibit 40** (April 14, 2014 Update to Notice of Suspension without Pay). During the meeting, Plaintiff was represented by experienced employment counsel, was provided with a copy of the Statement of Charges, and was afforded an opportunity to respond and voice her concerns. **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 77:33-79:25).

29. Just days after her meeting with Vice Chancellor Bowers, on March 12, 2014, Plaintiff submitted a nine page legal brief though her attorney which set forth her objections to the suspension and argued that "a fourteen-month suspension is the economic equivalent of a dismissal." **Exhibit 41** (March 12, 2014 Letter From Stephen Montoya to the Governing Board). **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 83:18-87:22). The legal brief contained more than 30 pages of Exhibits – including the Hearing Committee's Findings of Fact and Conclusions of Law - and was sent to MCCCD's Vice Chancellor of Human Resources, all members of the Governing Board, and MCCCD's in house counsel. **Exhibit 41** (March 12, 2014 Letter From Stephen Montoya to the Governing Board).

30. Shortly thereafter, and in anticipation of the Governing Board's March 25,

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

2014 regularly scheduled board meeting, Plaintiff submitted a one-and-one-half page letter to the Governing Board objecting to her suspension and asking "the board to intervene in [her] case to rescind the Chancellor's suspension." **Exhibit 44** (March 25, 2014 Letter to Governing Board). Plaintiff and her counsel each separately spoke before the Governing Board in open session. **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 87:24-96:7). **Exhibit 45** (March 25, 2014 Governing Board Minutes); **Exhibit 46** (March 25, 2014 Governing Board Transcript). While addressing the Governing Board, Plaintiff and her counsel each advanced the argument that her suspension was improper and that "the chancellor's fourteen month suspension of [Plaintiff] is the functional equivalent of termination from the district." **Exhibit 45** (March 25, 2014 Governing Board Minutes); **Exhibit 46** (March 25, 2014 Governing Board Transcript); **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 87:24-96:7).

31.   Following the March 25, 2014 Governing Board meeting, Plaintiff submitted at least four letters to the Governing Board outlining her objections to her suspension and her contention that a 14-month-suspension was tantamount to a termination of employment. **Exhibit 47** (August 13, 2014 Letter to Governing Board); **Exhibit 48** (October 28, 2014 Letter to Governing Board); **Exhibit 49** (January 27, 2015 Letter to Governing Board); **Exhibit 43** (February 21, 2015 Letter to Governing Board).

32.   On August 13, 2014, Plaintiff submitted a two page letter to the Governing Board. **Exhibit 47** (August 13, 2014 Letter to Governing Board). In the letter, Plaintiff argued that "When the Chancellor could not terminate me, he suspended me without pay for such a long time that it is tantamount to a termination." **Exhibit 47** (August 13, 2014 Letter to Governing Board); **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 99:10-105:10).

33.   On October 28, 2014, Plaintiff submitted a one and one half page letter to the MCCCD Governing Board again arguing that her suspension was improper and asking the Governing Board to reinstate her to her former position. **Exhibit 48** (October 28, 2014 letter to the Governing Board); **Exhibit 25** (2016 Martinez Depo. Transcript,

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

Vol. I, pp. 101:12-102:13).

34. On January 27, 2015, Plaintiff submitted a six page letter to the Governing Board and complained that her "suspension for 15 months without pay and benefits is tantamount to a discharge because of its unreasonable length and terms." **Exhibit 49** (January 27, 2015 letter to Governing Board; **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 106:21-109:15).

35. Plaintiff also appeared before the Governing Board a second time on October 28, 2014 and argued against her suspension. **Exhibit 50** (October 28, 2014 Governing Board Transcript); **Exhibit 51** (October 28, 2014 Governing Board Minutes). **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 102:14-105:10). But if that were not enough, Plaintiff also had two other individuals separately appear before the Governing Board on her behalf and object to her suspension. **Exhibit 50** (October 28, 2014 Governing Board Transcript); **Exhibit 51** (October 28, 2014 Governing Board Minutes). Mr. Townzel appeared at the May 27, 2014 and October 28, 2014 Governing Board Meetings to object to Plaintiff's suspension. **Exhibit 52** (May 27, 2014 Governing Board Transcript); **Exhibit 50** (October 28, 2014 Governing Board Transcript); **Exhibit 51** (October 28, 2014 Governing Board Minutes); **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 105:11-106:20). Santos Vega also appeared at the October 28, 2014 Governing Board Meeting to object to Plaintiff's suspension. **Exhibit 51** (October 28, 2014 Governing Board Minutes); **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 105:11-106:20).

36. In the fall of 2015, following the completion of her 14-month-suspension from MCCCD, Plaintiff returned to work as a math instructor at Phoenix College. **Exhibit 35** (Glasper Decl. ¶ 11).

37. On August 25, 2015, following Plaintiff's return to work, MCCCD again reminded Plaintiff of the requirement to issue refunds to students. **Exhibit 53** (August 25, 2015 Letter from Haines to Martinez). However, Plaintiff failed to do so. **Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 136:9-137:4, 146:2-149:17). To this day

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

15

has continued in her willful insubordination and has refused to issue refunds to students.

**Exhibit 25** (2016 Martinez Depo. Transcript, Vol. I, pp. 136:9-137:4, 146:2-149:17).

RESPECTFULLY SUBMITTED this 3rd day of March 2017.

FISHER & PHILLIPS LLP

By s/ Shayna H. Balch
Pavneet Singh Uppal
Shayna H. Balch
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
Attorneys for Defendant

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

FPDOCS 32679417.1

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of March 2017 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Edmundo P. Robaina
Thomas T. Griffin
Ashley A. Marton
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Attorneys for Plaintiff

 s/ Michelle Colwell

FPDOCS 32679417.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400