# EXHIBIT 34

1  Stephen Montoya (#011791)
   **Montoya, Jimenez & Pastor, P.A.**
2  3200 North Central Avenue, Suite 2550
   Phoenix, Arizona 85012
3  602-256-6718 (telephone)
   602-256-6667 (fax)
4  stephen@montoyalawgroup.com

5  Attorney for Cleopatria Martinez

6

7              **BEFORE THE GOVERNING BOARD OF THE**

8          **MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT**

9

10  Maricopa County Community College        **CLEOPATRIA MARTINEZ'S**
11  District,                                **PROPOSED FINDINGS OF FACT,**
                                             **CONCLUSIONS AND**
12  v.                                       **RECOMMENDATIONS**

13  Cleopatria Martinez.

14

15       Pursuant to the Hearing Committee's Order of November 18, 2013,

16  Professor Cleopatria Martinez submits the following Proposed Findings of Fact,

17  Conclusions and Recommendations:

18                          **FINDINGS OF FACT:**

19

20       **Factual Background**

21  1.   Cleopatria Martinez was born on April 21, 1948 in Las Vegas, New

22       Mexico and is sixty-five years-old.

23  2.   Professor Martinez moved to Denver, Colorado as a child and
24
         attended the Denver Public Schools.
25
26  3.   Upon graduating from high school in 1966, Professor Martinez
27
         attended the University of Denver on a scholarship.
28
    4.   Upon earning a baccalaureate degree in mathematics from the

MCCCD/Martinez 03827

University of Denver in 1971, Professor Martinez taught mathematics full-time in the Denver Public School system for approximately four years.

5.    Professor Martinez started teaching mathematics full-time at Denver Community College in 1974.

6.    While still teaching mathematics full-time for Denver Community College, Professor Martinez enrolled in graduate school at the University of Colorado at Boulder and was awarded a Masters of Arts in Education in 1976.

7.    While still teaching mathematics full-time for Denver Community College, Professor Martinez enrolled in a doctoral program at the University of Colorado at Boulder and was awarded a Ph.D in Bilingual Mathematics Education in 1985.

8.    After having taught mathematics full-time for ten years at Denver Community College, Professor Martinez moved to Arizona and started teaching mathematics full-time at Scottsdale Community College on January 1, 1985.

9.    Professor Martinez voluntarily transferred to Phoenix College in 1995 and has been teaching mathematics there full-time ever since.

10.   Professor Martinez elected to voluntarily transfer to Phoenix College because there were very few minority students attending Scottsdale Community College, and she wanted to use her bilingual education skills in the mathematics classroom to better educate the large

MCCCD/Martinez 03828

number of minority students attending Phoenix College.

11.   Professor Martinez was elected by her colleagues to serve as the Chairperson of the Mathematics Department of Phoenix College from 2002 to 2005.

12.   Professor Martinez has devoted her entire professional life to classroom teaching, and she continues to intensely love her profession after over forty-years in the classroom.

**Alleged Copyright Violations**

13.   During her twenty-eight years of teaching mathematics in the MCCCD system, Professor Martinez testified that she and her colleagues in the Mathematics Departments of both Scottsdale Community College and Phoenix College have routinely borrowed math problems from other mathematicians to use in their student handouts for educational purposes on a not for profit basis.

14.   Professor Martinez testified that this is a longstanding, widespread custom throughout the District and academia at large.

15.   No witness contradicted Professor Martinez's hearing testimony in this regard.

16.   Professor Martinez testified that she has read the Copyright Act of 1976 and believed that it authorized her to use small portions of other scholars' work under the "Fair Use" doctrine because she was using it only for classroom teaching purposes on a not for profit basis and her use of the material did not undermine the potential market for the

MCCCD/Martinez 03829

other scholar's work.

17.   Under the "Fair Use" doctrine of the Copyright Act, the "use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (<u>including</u> multiple copies for classroom use), scholarship, or research, is <u>not</u> an infringement of copyright."   17 U.S.C. § 107 (emphasis added).

18.   In January 2010, the Administration at Phoenix College contacted Professor Martinez with concerns that some of her classroom teaching materials might violate federal copyright laws.

19.   No one ever accused Professor Martinez of violating copyright law before January 2010, although she has been teaching since 1971.

20.   The Administration's concerns focused on four sets of Professor Martinez's lecture notes (<u>see</u> District Exhibit 6, parts 1-4) that Professor Martinez copied for her students to use during class so they could concentrate on her classroom instruction instead of concentrating on taking notes in class.

21.   Professor Martinez used three of the four packets of lecture notes in the Spring of 2010 in two pre-calculus classes.  <u>See</u> District Exhibit 6, parts 1-3.

22.   Two of the four packets of the lecture notes contained some mathematics problems that Professor Martinez copied from a mathematics textbook ("<u>Precalculus</u>" by Sullivan and Sullivan) that she had assigned to her students in the previous semester (Math

-4-

MCCCD/Martinez 03830

187, Fall 2009), but had <u>not</u> assigned to her students that particular semester (Math 182, Spring 2010).  <u>See</u> District Exhibit 6, parts 1-2.

23.  The percentage of the material in the first two handouts that Professor Martinez had copied from the Sullivan and Sullivan <u>Precalculus</u> textbook consisted of <u>less</u> than .5 percent of the textbook.

24.  Professor Martinez used the third set of lecture notes in another one of her mathematics classes ("Basic Arithmetic," Math 082) in the Spring Semester of 2010.  <u>See</u> District Exhibit 6, part 3.

25.  The third set of lecture notes consisted of materials primarily authored by Professor Martinez, with some of the math problems obtained from her colleagues in the Mathematics Department at Phoenix College.

26.  According to the Administration's expert witness, Sean Garrison, the third set of lecture notes appear to have 13 math problems copied from two other math textbooks.

27.  Professor Martinez did <u>not</u> copy any material for inclusion in the third set of lecture notes from a textbook, but (as noted above) obtained some of the math problems in the notes from a colleague in the Mathematics Department.

28.  Apparently 13 of the math problems out of approximately 1000 math problems (just over 1.0%) were copied from two math textbooks.

29.  The fourth set of lecture notes consisted exclusively of materials that

MCCCD/Martinez 03831

Professor Martinez had independently authored.  See District Exhibit 6, part 4.

30.  Professor Martinez had planned to use the fourth set of lecture notes in the Fall Semester of 2010 (Math 187), but did not do so in light of the Administration's concerns that the notes might contain copyrighted materials.

31.  The Administration's expert witness, Sean Garrison, did not conclude that the fourth set of Professor Martinez's lecture notes violate copyright law.  See District Exhibit 6, p. 0002.

32.  Professor Martinez has not used any of the four sets of lecture notes since the Spring of 2010 when the Administration first raised its concerns regarding the notes.

33.  In fact, as noted above, Professor Martinez never used the fourth set of lecture notes.

34.  In the Spring of 2010, Professor Martinez sought guidance regarding copyright requirements from her superiors at Phoenix College.

35.  Professor Martinez's superiors directed her to confer with the librarian of Phoenix College.

36.  When Professor Martinez met with the librarian, the librarian told Professor Martinez that Professor Martinez knew as much about copyright law as she did.

37.  Professor Martinez also sought guidance regarding copyright from Margaret McConnell, a lawyer employed by MCCCD who does not

MCCCD/Martinez 03832

practice in the area of copyright law.

38.   Ms. McConnell told Professor Martinez that she needed to use the textbook of whatever author she was copying materials from in order <u>not</u> to violate copyright law.

39.   However—in contrast to Ms. McConnell—the Administration's own expert witness, Sean Garrison, testified that under the "Fair Use" doctrine, someone could lawfully copy from a copyrighted textbook <u>without</u> either using <u>or</u> purchasing the textbook.

40.   Accordingly, the legal guidance that Margaret McConnell provided Professor Martinez was incorrect.

41.   Professor Martinez also sought guidance regarding copyright requirements from the District's General Legal Counsel, Lee Combs.

42.   However, Mr. Combs refused to speak with Professor Martinez, claiming that he represented the District, <u>not</u> Professor Martinez.

43.   Professor Martinez also sought and obtained the written permission of the publisher of the textbook, Sullivan & Sullivan's "<u>Precalculus</u>," to copy materials from their book <u>after</u> the Administration accused her of violating copyright law.

44.   Because Professor Martinez was <u>not</u> able to obtain reliable guidance regarding copyright compliance from the District, she sought advice from a private intellectual property attorney regarding the issue, Mr. Frederic Bellamy.

45.   Mr. Bellamy is a graduate of Harvard College and Harvard Law

MCCCD/Martinez 03833

School and has been practicing in the area of intellectual property law (including copyright) for over twenty-five years.

46.  Mr. Bellamy reviewed the first two sets of Professor Martinez's lecture notes and concluded that they did <u>not</u> violate copyright law because they fell under the "Fair Use" doctrine.

47.  Mr. Bellamy based his conclusion that Professor Martinez did <u>not</u> violate copyright law on the fact that the portion of material that Professor Martinez copied from the Sullivan & Sullivan <u>Precalculus</u> textbook was very small, that she used the copied materials exclusively for educational purposes without any profit motive, that the content of the copied material consisted of math problems that are largely <u>not</u> subject to copyright in the first place, and that the small portion of the textbook that Professor Martinez copied did <u>not</u> adversely impact the potential market for the textbook.

48.  Mr. Bellamy did <u>not</u> charge Professor Martinez a fee for his services because he thought the Administration's claim that Professor Martinez was violating the federal copyright laws was extremely unfair, in addition to being incorrect.

49.  Another lawyer practicing in the area of intellectual property law, Sean Garrison, testified on behalf of the Administration.  In contrast to Mr. Bellamy, Mr. Garrison testified at the hearing that the first three sets of Professor Martinez's lecture notes violated copyright law.

50.  Mr. Garrison did <u>not</u> testify that the fourth set of Professor Martinez's

MCCCD/Martinez 03834

lecture notes violated copyright law.

51. In contrast to his testimony at the hearing of November 18, 2013, in his written report of April 19, 2013, Mr. Garrison concluded only that the first three sets of Professor Martinez's lecture notes subjected the District "to a serious risk of a copyright infringement claim." See District Exhibit 6, p. 0002.

52. The Administration paid Mr. Garrison approximately $10,000.00 for his opinions.

53. As soon as the Administration told Professor Martinez to stop using the four sets of lecture notes in question, she complied with the order, and she has not copied from other scholars' publications since the Spring of 2010.

**Allegations of Improper Money Handling**

54. The Administration also accused Professor Martinez of violating the District's "cash handling" rules by agreeing to copy some course materials for her students if the students reimbursed her for her out-of-pocket copying costs.

55. Specifically, Professor Martinez decided to use one of her colleague's course materials for one of her classes and obtained the colleague's permission to do so.

56. The Mathematics Department of Phoenix College had already preapproved the use of these materials in lieu of a formal textbook.

57. The Chairperson of the Mathematics Department of Phoenix College

-9-

MCCCD/Martinez 03835

agreed to copy the materials individually for Professor Martinez, but not as a group.

58. The Administration does <u>not</u> claim that any of these materials violated the copyright laws.

59. Professor Martinez made a copy of the materials available for her students to copy at their own expense.

60. Professor Martinez also agreed to make copies of the materials for her students herself at a nearby "Staples" office supply store as a simple courtesy to her students if they reimbursed her for her out-of-pocket copying costs.

61. All of Professor Martinez's students elected to have Professor Martinez make the copies and reimburse her for them.

62. Professor Martinez did <u>not</u> make any money in reference to making the copies.

63. In fact, Professor Martinez actually lost about $25.00 in making the copies for her students.

64. The Administration subsequently claimed that Professor Martinez violated the District's "cash handling" policies by seeking reimbursement for the copies and ordered her to pay her students the amount they had previously reimbursed her.

65. Because Professor Martinez did <u>not</u> think that she had violated any District rule in reference to the copies, she declined to follow the order because she was <u>not</u> required to do so under any District rule.

MCCCD/Martinez 03836

66.  At the hearing, none of the Administration's witnesses was able to specify what District rule Professor Martinez had violated in reference to the copies.

## CONCLUSIONS AND RECOMMENDATIONS

67.  The federal copyright laws are complex and can be confusing to both lawyers and non-lawyers alike.

68.  This conclusion is underscored by the hearing testimony of the respective parties' expert witnesses, Sean Garrison and Frederic Bellamy.

69.  Mr. Garrison and Mr. Bellamy are both highly educated, highly experienced and highly credible intellectual property lawyers.

70.  Both Mr. Garrison and Mr. Bellamy testified at the hearing in good faith.

71.  Notwithstanding their education, their experience, and their good faith, Mr. Bellamy and Mr. Garrison disagreed as to whether or not Professor Martinez violated federal copyright law.

72.  The Committee also notes that the holders of the underlying copyrights did not make any claim of copyright violation against either the District or Professor Martinez.

73.  This Committee need not and does not conclude whether or not Professor Martinez violated federal copyright law.

74.  The Committee is not a court of law and cannot make conclusions regarding copyright law.

MCCCD/Martinez 03837

75. However, the Committee does conclude that Professor Martinez copied the materials in question in good faith and sincerely believed that she was <u>not</u> violating federal copyright law.

76. Professor Martinez's good faith belief that she was <u>not</u> violating copyright law is supported by the express language of the Copyright Act itself, which states that the "use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (<u>including</u> multiple copies for classroom use), scholarship, or research, is <u>not</u> an infringement of copyright." 17 U.S.C. § 107 (emphasis added).

77. Professor Martinez's good faith belief that she was <u>not</u> violating copyright law is also supported by the hearing testimony of Frederic Bellamy, who (as indicated above) credibly testified that Professor Martinez did <u>not</u> violate the copyright laws under the "Fair Use" doctrine.

78. Moreover, and in any event, Professor Martinez completely stopped using the materials in question in the Spring of 2010 soon after the Administration claimed that the materials violated federal copyright law.

79. There is <u>no</u> evidence that Professor Martinez used materials allegedly in violation of federal copyright law <u>after</u> the Spring of 2010.

80. The Administration also claims that Professor Martinez violated its cash handling rules by "selling" a package of course materials to her

MCCCD/Martinez 03838

students.

81.   The evidence shows that Professor Martinez did not "sell" any materials to her students.

82.   To the contrary, Professor Martinez made a set of the materials available to her students to copy at their own expense.

83.   As a courtesy to her students, Professor Martinez also offered to copy the materials at Staples if the students agreed to reimburse her for her out-of-pocket copying expenses.

84.   All of Professor Martinez's students elected to have Professor Martinez copy the materials and reimburse her for them.

85.   Professor Martinez did not make a profit in connection with copying the materials and in fact lost approximately $25.00 of her own money in reference to the copying.

86.   The District has not alleged or proven that any of the materials that Professor Martinez copied for her students at Staples violated the copyright laws.

87.   To the contrary, it was undisputed at the hearing that the materials in question had already been approved by the Mathematics Department of Phoenix College for classroom use in lieu of a textbook.

88.   It was also undisputed that the chairperson of the Mathematics Department at Phoenix College had agreed to copy the materials section by section for Professor Martinez's classroom use.

89.   It was also undisputed that the Administration had authorized

MCCCD/Martinez 03839

Professor Martinez to publish the materials on her website or at another location on the internet.

90. There is no District rule or regulation that prohibits a professor from copying materials for students and being reimbursed by the student for the copies.

91. It is undisputed that Professor Martinez only sought reimbursement for making copies for students on a single occasion in 2012.

92. Although Professor Martinez did not obey an order from the Administration to return the amount of money that she was reimbursed for the copies, no District rule required her to do so.

93. Professor Martinez testified at the hearing without contradiction that she would never engage in this behavior again.

94. Based upon the foregoing, the Committee concludes that Professor Martinez has not engaged in conduct that would justify her termination.

95. This conclusion is underscored by the fact that Professor Martinez has taught in the District for twenty-eight years without prior incident and the evidence was overwhelming that she has been a dedicated, excellent teacher during this entire time period.

96. Any alleged mistakes that Professor Martinez made in reference to the issue of either copyright or the District's cash handling rules were made in good faith and were isolated.

97. The Committee accordingly recommends that Professor Martinez not

MCCCD/Martinez 03840

be terminated and be returned to teaching in the classroom with all deliberate speed.

Respectfully submitted this 27th day of November 2013.

**MONTOYA, JIMENEZ & PASTOR, P.A.**

s/ Stephen Montoya
Stephen Montoya
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorney for Plaintiff

-15-

MCCCD/Martinez 03841

I hereby certify that on November 27, 2013, the foregoing document was sent via email to:

Ernest Calderon
Ridenour Hienton & Lewis, PLLC
201 North Central Avenue, Suite 3300
Phoenix, Arizona 85004
ecalderon@rhlfirm.com
Counsel to the Hearing Committee

Taylor Bell
Ridenour Hienton & Lewis, PLLC
201 North Central Avenue, Suite 3300
Phoenix, Arizona 85004
tbell@rhlfirm.com
Counsel to the Hearing Committee

Dr. Keith J. Crudup
Keidz02681@mesacc.edu
Committee Chair

Dr. Nora Amavisca Reyes
Nora.reyes@mesacc.edu
Hearing Committee

Dr. Carlos Caire
Carlos.caire@southmountaincc.edu
Hearing Committee

Pavneet Uppal
Fisher & Phillips, LLP
201 East Washington Street, Suite 1450
Phoenix, Arizona 85004
puppal@laborlawyers.com
Attorney for Maricopa County
Community College District


s/ Stephen Montoya

MCCCD/Martinez 03842

# EXHIBIT 35

## DECLARATION OF RUFUS GLASPER

Rufus Glasper, being first duly sworn upon his oath, deposes and says:

1.     I am over the age of eighteen and am competent to testify as to all the matters set forth herein and would so testify if called upon to do so.

2.     I have personal knowledge of the matters set forth herein.  My personal knowledge is based upon my observations and personal participation in the events described below.

3.     I am currently employed as the President and CEO of the League for Innovation in the Community College (the "League").  Prior to my employment with the League, I had worked for Maricopa County Community College District ("MCCCD") for approximately 30 years.  My most recent position with MCCCD was Chancellor, a position I had held for more than ten years.  In my role as Chancellor, I was the equivalent of the chief executive officer for MCCCD and oversaw its ten community colleges in the Phoenix metropolitan area, including Phoenix College.

4.     On August 9, 2013, I received a letter from MCCCD Interim Vice Chancellor for Human Resources James Bowers recommending the dismissal of Phoenix College faculty member Dr. Cleopatria Martinez.  A true and correct copy of the August 9, 2013 letter I received from Mr. Bowers is attached hereto as **Exhibit A**.  Included with Mr. Bowers' email was a detailed Statement of Charges outlining the grounds for Dr. Martinez's dismissal.

5.     After reviewing the August 9, 2013 Statement of Charges, I concurred with Mr. Bower's recommendation of dismissal.  Accordingly, and in compliance with MCCCD's Residential Faculty Policy Manual ("RFP Manual"), I prepared an August 9, 2013 letter to Dr. Martinez notifying her that Phoenix College President Dr. Anna Solley and Mr. Bowers had recommended her dismissal and that I agreed with their recommendation.  A true and correct copy of my August 9, 2013 letter to Dr. Martinez is

attached hereto as **Exhibit A**. My letter also informed Dr. Martinez that she had the right to request a dismissal hearing.

6.      Dr. Martinez did, in fact, request a dismissal hearing which was held on November 18, 2013. Following the hearing, the Hearing Committee issued Findings of Fact and Conclusions of Law. A true and correct copy of the Hearing Committee's Findings of Fact and Conclusions of Law are attached hereto as **Exhibit B**. In their conclusions, the Hearing Committee found that Plaintiff engaged in "willful insubordination" and that she "willfully and intentionally failed to follow instructions that were communicated to her when she failed to issue refunds to students as directed by President Solley." Despite Dr. Martinez's willful insubordination, the Hearing Committee recommended against permanent separation of employment.

7.      On or around January 23, 2014, I met with the Hearing Committee to inquire about the basis of its conclusions. The Hearing Committee members explained to me that because Plaintiff had been with the District for nearly 30 years, they were reluctant to recommend her permanent separation from employment, but believed a disciplinary action such as an unpaid suspension was appropriate.

8.      In light of the Hearing Committee's recommendations, I prepared a revised February 10, 2014 Statement of Charges suspending Dr. Martinez from employment for 14 months. A true and correct copy of my February 10, 2014 Statement of Charges and related correspondence is attached hereto as **Exhibit C**. The suspension was based on the Hearing Committee's finding that Dr. had engaged in admitted "willful insubordination" in "willfully and intentionally fail[ing] to follow instructions that were communicated to her when she failed to issue refunds to students as directed by President Solley." The anticipated effective date of the suspension was March 1, 2014 through May 15, 2015.

9.      To my knowledge, Dr. Martinez was notified of the suspension though her counsel, Stephen Montoya, and Dr. Martinez was offered an opportunity to meet with Mr. Bowers regarding her suspension. Although it was anticipated that Mr. Bowers would

2

meet with Dr. Martinez prior to March 1, 2014, Dr. Martinez asked that the meeting to be moved to March 7, 2014. MCCCD accommodated Dr. Martinez's request and the meeting between Dr. Martinez and Mr. Bowers took place on or around March 7, 2014.

10.     Following Mr. Bowers' meeting with Dr. Martinez, I issued a letter to Dr. Martinez notifying her that I had revised the dates of her suspension from March 1, 2014 through May 15, 2015 to a new suspension date of April 15, 2014 through May 15, 2015. A true and correct copy of my April 14, 2014 letter to Dr. Martinez is attached hereto as **Exhibit D.** In my letter I further advised Dr. Martinez that her teaching responsibilities and pay would resume for the fall semester of 2015.

11.     To my knowledge, Dr. Martinez returned to her Mathematics faculty position at Phoenix College in the fall of 2015.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct.

Executed this 3rd day of March, 2017 in Austin, Texas.

_____
RUFUS GLASPER

3

# Exhibit A

 **MARICOPA COMMUNITY COLLEGES®** | **Rufus Glasper** Chancellor

2411 W. 14th Street, Tempe, Arizona 85281-6942 • T 480.731.8100 • F 480.731.8120 • r.glasper@domail.maricopa.edu

August 9, 2013

Cleopatria Martinez
7030 N. 21st Street
Phoenix, AZ 85020

**Re:  Intent to dismiss you from your employment**

Dear Dr. Martinez:

Dr. Anna Solley, President of Phoenix College (PC) has forwarded a statement of charges to James Bowers, Interim Vice Chancellor for Human Resources. Mr. Bowers has reviewed the charges, in consultation with the MCCCD Legal Office, and recommended to me that there exists prima facie cause for your dismissal from your position as Mathematics Faculty at Phoenix College (see attached).  I concur with his recommendation.  The recommended effective date of your involuntary termination is September 24, 2013.

Maricopa County Community College District Administrative Regulation 6.7 states that violation of any of its Employment Standards "constitutes grounds for disciplinary action, up to and including termination of any Maricopa County Community College District (MCCCD) employee as outlined by the respective policy manuals".

Pursuant to Section 3.15.3 of the RFP Policy Manual, you may invoke your right to a hearing by filing a written request with Interim Vice Chancellor James Bowers within five (5) business days after being served with this notice of intent to dismiss you from your employment.

Sincerely,

Rufus Glasper, Ph.D., CPA
Chancellor

Cc:   MCCCD Governing Board
      Dr. Anna Solley
      Mr. Jim Bowers

EXHIBIT 3
WIT: R.Glasper
DATE: 11-22-16
Angela F. Miller, RPR, CR

*Ten colleges and two skill centers dedicated to student success.*

 **MARICOPA COMMUNITY COLLEGES®** | Vice Chancellor
Human Resources

2411 W. 14th Street, Tempe, Arizona 85281-6942 • T 480.731.8103 • F 480.731.8120 • www.maricopa.edu

August 9, 2013

Cleopatria Martinez
7030 N. 21st Street
Phoenix, AZ  85020

RE:  Employment Status

Dear Dr. Martinez:

You are being placed on paid administrative leave from August 12 through
September 24, 2013, pending the approval of your termination. During
administrative leave, you will remain an employee of Maricopa County
Community College District (MCCCD) and must continue to observe all policies
regarding employee conduct.

For the duration of paid administrative leave, you should not report to work nor
do you need to make contact with your supervisor. Upon approval of your
termination by the Maricopa County Community Colleges Governing Board, you
will be notified regarding the termination of your employment status with
MCCCD.

Sincerely,

James Bowers, J.D.
Interim Vice Chancellor for Human Resources

cc:   Dr. Anna Solley
      Employee Personnel File

Ten colleges and two skill centers dedicated to student success.

Chandler-Gilbert | Estrella Mountain | GateWay | Glendale | Mesa | Paradise Valley | Phoenix
Rio Salado | Scottsdale | South Mountain | Maricopa Skill Center | SouthWest Skill Center



MARICOPA
COMMUNITY
COLLEGES®  |  Vice Chancellor
Human Resources

2411 W. 14th Street, Tempe, Arizona 85281-6942 • T 480.731.8103 • F 480.731.8120 • www.maricopa.edu

August 9, 2013

Dear Dr. Glasper:

The following statement of charges against Dr. Cleopatria Martinez was forwarded to me by Dr. Anna Solley, President, Phoenix College. Pursuant to 3.15.1 of the Residential Faculty Policy (RFP), I have reviewed the charges, in consultation with the MCCCD Legal Office, and recommend to you that there exists prima facie cause for the dismissal of Dr. Cleopatria Martinez.

Sincerely,

James Bowers, J.D.
Interim Vice Chancellor for Human Resources

## Statement of Charges

- Violation of Administrative Regulation 6.7.1 – "Willful and intentional violation of any state or federal law, applicable ordinance, MCCCD Governing Board policy, or MCCCD administrative regulation that affects the employee's ability to perform his or her job", specifically:

    o Violation of MCCCD's cash handling rules as covered by MCCCD Administrative Regulations 1.17

- Violation of Residential Faculty Policy Manual 3.2.4 – "A Faculty member shall not have any financial interest in or receive compensation from the sale of any unpublished instructional materials required or suggested for a class that the Faculty member teaches."

- Violation of U.S. Copyright Law and fair use guidelines, and MCCCD Administrative Regulations 3.2.4 and 3.2.5 regarding copyright regulations:

    3.2.4 Employees are prohibited from copying materials not specifically allowed by the (1) copyright Law, (2) fair use guidelines, (3) Licenses or contractual agreements, or (4) other permission.

    3.2.6 The Governing Board disapproves of unauthorized duplication in any form. Employees who willfully disregard this Board policy and/or the aforementioned copyright guidelines do so at their own risk and assume all liability for their actions.

*Ten colleges and two skill centers dedicated to student success.*

Chandler-Gilbert | Estrella Mountain | GateWay | Glendale | Mesa | Paradise Valley | Phoenix
Rio Salado | Scottsdale | South Mountain | Maricopa Skill Center | SouthWest Skill Center

- Violation of Administrative Regulation 6.7.3 - "Willful and intentional failure to perform job duties that have first been communicated to an employee and are within the employee's scope of employment", specifically, repeated failure to follow instructions regarding printing/copying of unauthorized materials, failure to use only approved course materials, unauthorized copying and sale of course materials, failure to reimburse students for the materials you wrongfully charged them for, and failure to meet the deadline to provide copies of any reimbursement checks to students.

Brief Timeline:

- January 2010 - College Vice Presidents Ronnie Elliott, Paul DeRose and Cassandra Kakar, along with Maggie McConnell, Assistant General Counsel, reviewed the requirements of AR 3.2 with you at length.
- April 2, 2010 – Anna Solley, Phoenix College President, notified you that your copying privileges at the Phoenix College IKON Copy Center were suspended.
- Spring 2010 – An Administrative Evaluation was initiated based on Mr. Joe Sueyoshi's complaint. By agreement, the Evaluation Team did not undertake its task until the fall semester. The findings and recommendations were submitted to Dr. Solley on November 17, 2010. The overall findings included:
  - o Copyright and plagiarism: Dr. Martinez was notified in writing and in meetings of MCCCD's and Phoenix College's concerns regarding her course materials violating copyright, fair use, and plagiarism laws.
  - o Insubordination: Dr. Martinez failed to follow Dr. Solley's and MCCCD's Legal Counsel's directives - specifically, she repeatedly requested copies and printed unauthorized materials.
- December 9, 2010 – Dr. Solley administered an initial Corrective Action to you for insubordination and failure to follow instructions regarding printing or copying of unauthorized materials.
- August 21-23, 2012 - You told your MAT 091 and MAT 151 students not to buy the approved text that you listed on the syllabus. Instead, you made copies of a colleague's materials and sold them to your students for $11 each.
- October 18, 2012 - A Second Corrective Action for insubordination and unauthorized copying and sale of course materials was administered to you by Dr. Solley. Included in the corrective action was the following directive: "Because you imposed charges on your students without authority to do so, you have the responsibility to reimburse the students from your own funds. You are hereby directed to do so by personal check, beginning immediately and continuing until all students who paid you are reimbursed."
- January 11, 2013 – Upon discovering that the students who bought your unauthorized course materials had yet to be reimbursed, Cassandra Kakar directed you, via email, to provide her, by January 18, 2013, with front and back copies of all cashed personal reimbursement checks to your students.
- January 18, 2013 - You failed to provide Dr. Kakar with copies of any reimbursement checks and neglected to contact her regarding the money you still owe the students.
- February 21, 2013 – A student turned in the MAT091 materials which you left in room B210. Timothy Bryan, Mathematics Faculty, has previously told you that you do not have permission to use his materials again.

# Exhibit B

*12-9-2013*

BEFORE THE GOVERNING BOARD OF THE
MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT

| | |
|---|---|
| MARICOPA COUNTY COMMUNITY<br>COLLEGE DISTRICT, | )<br>)   HEARING COMMITTEE<br>) |
| v. | )   FINDINGS OF FACT, CONCLUSIONS<br>)   OF LAW, AND RECOMMENDATION |
| DR. CLEOPATRIA MARTINEZ | )<br>) |

     Pursuant to the October 16, 2013 Scheduling Order, having reviewed all of the parties' pleadings and exhibits and conducting a hearing on November 18, 2013, the Hearing Committee (by majority vote) hereby submits the following Findings of Fact, Conclusions of Law and Recommendation.

## FINDINGS OF FACT

    1.    After having taught mathematics full-time for ten years at Denver Community College, Dr. Cleopatria Martinez moved to Arizona and started teaching mathematics full-time at Scottsdale Community College on January 1, 1985.

    2.    Dr. Martinez voluntarily transferred to Phoenix College ("PC") in 1995 and has been teaching mathematics there full-time ever since.

    3.    Dr. Martinez elected to voluntarily transfer to PC because there were very few minority students attending Scottsdale Community College, and she wanted to use her bilingual education skills in the mathematics classroom to better educate the large number of minority students attending PC.

    4.    Dr. Martinez was elected by her colleagues to serve as the Chairperson of the Mathematics Department of PC from 2002 to 2005.

    5.    In early 2010, PC discovered that Dr. Cleopatria Martinez may have exposed MCCCD to potential liability for copyright infringement.

    6.    Dr. Martinez testified that, during her twenty-eight years of teaching mathematics in the MCCCD system, she and her colleagues in the Mathematics Departments of both Scottsdale Community College and PC routinely borrowed mathematics problems from other mathematicians to use in their student handouts for educational purposes on a not for profit basis.

    7.    Dr. Martinez testified, without rebuttal, that this borrowing of mathematics problems is a longstanding, widespread custom throughout the District and academia at large.

    8.    Instead of requiring her mathematics students to purchase textbooks, Dr. Martinez prepared her own course materials which she called her "Lecture Notes" and distributed them to

her students.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 77:17-78:15, 106:16-108:16, 121:25-140:13, 132:16-137:25).

9.      Dr. Martinez read the Copyright Act of 1976 and believed that it authorized her to use small portions of other scholars' work under the "Fair Use" doctrine because she was using it only for classroom teaching purposes on a not for profit basis and her use of the material did not undermine the potential market for the other scholar's work.

10.      Per the "Fair Use" doctrine of the Copyright Act, the "use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright."  17 U.S.C. § 107.

11.      Dr. Martinez copied problems from copyright protected textbooks and inserted them into her course materials.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 106:16-108:16).

12.      Dr. Martinez, in her Basic Arithmetic (MAT082) course, copied problems directly from a copyrighted textbook entitled "Basic Mathematics" and inserted them into her "MAT 082 Basic Arithmetic Spring 2010" course materials which she distributed to students.  MCCCD Exhibit List # 20 (Full-Sized Excerpted Comparison).  She did not seek or obtain permission from the copyright holder.

13.      Dr. Martinez also copied problems directly from the Sullivan & Sullivan "Precalculus" textbook and inserted them into her "MAT182 Trigonometry Spring 2010" course materials.  MCCCD Exhibit List # 22 (Full-Sized Excerpted Comparison).  She did not seek or obtain permission from the copyright holder.

14.      Dr. Martinez did not require her students to purchase textbooks in her Spring MAT082 Course.  MCCCD Exhibit List # 18 (email from Dr. Martinez stating "I indicated in my syllabus that, instead of a published textbook, I was using lecture notes in my MAT082 class.")

15.      Dr. Martinez did not require her students to purchase textbooks in her Spring MAT182 Course.  *See* Dr. Martinez's hearing testimony (conceding that students were not required to purchase a textbook in her Spring 2010 MAT182 course).

16.      On or around January 12, 2010, MCCCD's Vice President of Academic Services, Ronnie Elliot, sent Dr. Martinez an email notifying her that there were alleged copyright related problems with the materials she had printed for the Fall 2009 and Spring 2010 semesters.  MCCCD Exhibit List # 23 (January 12, 2010 email).  The materials in question were packets of course materials for Dr. Martinez's MAT182 and MAT187 courses and contained mathematics problems and graphs that were taken from copyrighted textbooks.  MCCCD Exhibit List # 11 (Ronnie Elliot Declaration, ¶¶8-9); MCCCD Exhibit List # 16 (MAT182 course packet); MCCCD Exhibit List # 7 (Sean Garrison October 28, 2010 Memorandum).

17.      Dr. Martinez used three of the four packets of "lecture notes" in the Spring of 2010 in two pre-calculus classes.  See District Exhibit 6, parts 1-3.

18. The MCCCD administration, following Vice President Elliot's email, repeatedly explained its copyright concerns to Dr. Martinez and asked Dr. Martinez to remove any copyright protected mathematics problems from her materials. See Kakar Hearing Testimony.

19. On January 26, 2010, Vice President Elliot sent Dr. Martinez an email outlining MCCCD's concerns regarding Dr. Martinez's potential copyright infringement. MCCCD Exhibit List # 24 (January 26, 2010 email).

20. On January 28, 2010, MCCCD in-house-counsel Margaret McConnell discussed copyright compliance with Dr. Martinez telephonically. MCCCD Exhibit List # 25 (January 28, 2010 email).

21. Dr. Martinez did not benefit from the multiple MCCCD copyright information sessions noted above.

22. PC's own expert witness, Sean Garrison, testified that under the "Fair Use" doctrine, someone could lawfully copy from a copyrighted textbook without either using or purchasing the textbook.

23. On February 5, 2010, Vice President of Academic Affairs Casandra Kakar, Interim Vice President of Administrative Services Paul DeRose, and Dr. Martinez met to discuss Dr. Martinez's alleged misuse of copyrighted materials. MCCCD Exhibit List # 26 (February 12, 2010 email).

24. Dr. Martinez has not used any of the four sets of "lecture notes" since the Spring of 2010 when PC first raised its concerns regarding the notes.

25. On April 15, 2010, PC Librarian Ann Roselle conducted a personalized one-on-one copyright training session with Dr. Martinez. MCCCD Exhibit List # 28 (Copyright PowerPoint Presentation). See also, Kakar Hearing Testimony.

26. When Dr. Martinez met with the librarian, the librarian told Dr. Martinez that Dr. Martinez knew as much about copyright law as she did. See Martinez Hearing Testimony.

27. Following the revocation of Dr. Martinez's copying privileges, Dr. Martinez was required to submit her copy requests to Mathematics Department Chairperson Mr. Sueyoshi so that Mr. Sueyoshi could review her materials for possible copyright violations prior to copying and distribution to students. MCCCD Exhibit List # 8 (April 2, 2010 Directive).

28. Dr. Martinez sought and obtained a form of written permission from the publisher of the textbook, Sullivan & Sullivan's "Precalculus," to copy materials from their book after PC accused her of violating copyright law.

29. On or around April 19, 2010, Dr. Martinez attempted to bypass the copying restrictions by having an adjunct mathematics Professor, Johnny Santellan, make 24 sets of copies of her "Lecture Notes" for distribution to her mathematics students without obtaining prior approval from the Mathematics Department Chairperson. MCCCD Exhibit List # 12 (Sueyoshi Decl., ¶9); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 223:11-224:21).

30.   Because Dr. Martinez did not feel she was able to obtain reliable guidance regarding copyright compliance from the District, she sought advice from a private intellectual property attorney regarding the issue, Mr. Frederic Bellamy.

31.   Mr. Bellamy reviewed the first two sets of Dr. Martinez's "lecture notes" and concluded that they did not violate copyright law because they fell under the "Fair Use" doctrine.

32.   Mr. Bellamy based his conclusion that Dr. Martinez did not violate copyright law on the opinion that the portion of material that Dr. Martinez copied from the Sullivan & Sullivan Precalculus textbook was very small, that she used the copied materials exclusively for educational purposes without any profit motive, that the content of the copied material consisted of mathematics problems that are arguably not subject to copyright in the first place, and that the small portion of the textbook that Dr. Martinez copied did not adversely impact the potential market for the textbook.

33.   At the hearing, another lawyer practicing in the area of intellectual property law, Sean Garrison, testified on behalf of PC. In contrast to Mr. Bellamy, Mr. Garrison testified at the hearing that the first three sets of Dr. Martinez's lecture notes violated copyright law.

34.   In contrast to his testimony at the hearing of November 18, 2013, in his written report Mr. Garrison concluded only that the first three sets of Dr. Martinez's lecture notes subjected the District "to a serious risk of a copyright infringement claim." See District Exhibit 6, p. 0002.

35.   MCCCD invited Dr. Martinez to a copyright workshop that was held on March 1, 2010 at PC. Dr. Martinez chose not to attend the workshop. MCCCD Exhibit List # 10 (Solley Decl., ¶11).

36.   PC President Anna Solley, on December 9, 2010, concluded that Dr. Martinez's alleged misconduct posed an unacceptable legal risk of a copyright infringement claim and imposed restrictions on Dr. Martinez's photocopying privileges. MCCCD Exhibit List # 10 (Solley Decl., ¶12).

37.   MCCCD sought a legal opinion from an outside copyright expert, attorney Sean Garrison. MCCCD Exhibit List # 10 (Solley Decl., ¶ 14); MCCCD Exhibit List # 7 (Sean Garrison October 28, 2010 Memo).

38.   According to Mr. Garrison, the third set of "lecture notes" appeared to have 13 mathematics problems copied from two other mathematics textbooks.

39.   Mr. Garrison testified that he was certain that Dr. Martinez has committed copyright infringement. See Garrison Hearing Testimony. In reaching this conclusion, Mr. Garrison reviewed thousands of pages of materials including nearly 300 pages of Dr. Martinez's lecture notes and three separate copyrighted mathematics textbooks. MCCCD Exhibit List # 6 (Sean Garrison April 19, 2013 Report); see also Garrison Hearing Testimony.

40.   In reliance upon Mr. Garrison's recommendations, PC President Anna Solley issued a December 9, 2010 directive that imposed further restrictions on Dr. Martinez's copying

privileges.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 10 (Solley Decl., ¶15).

41.     The December 9, 2010 Directive prohibited Dr. Martinez from utilizing any course materials of her own creation.  MCCCD Exhibit List # 9 (December 9, 2010 Directive). Instead, Dr. Martinez was required to only use course materials that are "approved by the mathematics department" or that are "available in the bookstore for sale to students and that are authored by persons other than [Dr. Martinez]."  MCCCD Exhibit List # 9 (December 9, 2010 Directive).

42.     The December 9, 2010 Directive further required Dr. Martinez to submit her photocopy requests to the Mathematics Department Chair for his approval.  MCCCD Exhibit List # 9 (December 9, 2010 Directive).

43.     Despite MCCCD's frequent discussions with Dr. Martinez regarding the importance of complying with copyright laws and the December 9, 2010 Directive, Dr. Martinez continued to attempt to ignore the directive.  See Kakar Hearing Testimony.

44.     At the beginning of the Fall 2012 semester (on or about August 21-23, 2012), Dr. Martinez informed her students that they were not required to purchase a course textbook and that she would provide them with her own course materials in lieu of a textbook.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

45.     In fall of 2012, Dr. Martinez sought to have her lecture notes photocopied off campus at a nearby Staples store.  This practice is inconsistent with the December 9, 2010 Directive.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

46.     Dr. Martinez did not submit her Fall 2012 materials to Mathematics Department Chairperson Mr. Sueyoshi for approval.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

47.     Dr. Martinez made copies of her course materials at an off-campus Staples store and distributed them to students for $11 per copy.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

48.     The $11 course material fee was paid directly to Dr. Martinez by students.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

49.     PC accused Dr. Martinez of violating the District's "cash handling" rules by distributing these course materials to her students if the students reimbursed her for her out-of-pocket copying costs.

50.     PC subsequently claimed that Dr. Martinez violated the District's "cash handling" policies by seeking reimbursement for the copies.

51.     MCCCD's policies prohibit instructors from having "any financial interest in or receiv[ing] compensation from the sale of any unpublished instructional materials required or

suggested for a class that the instructor teaches." MCCCD Exhibit List # 41 (Residential Faculty Policies, 3.2.4).).

52.     Dr. Martinez failed to follow the protocol set forth in the December 9, 2010 Directive in copying her Fall 2012 course materials.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

53.     Dr. Martinez distributed course materials directly to students in her Fall 2012 MAT151 class.  MCCCD Exhibit List # 4-5 (Martinez Depo. pp. 232:19-233:21).

54.     The MCCCD Administration learned of Dr. Martinez's unauthorized distribution of course materials to students after one of Dr. Martinez's MAT151 students complained to Mathematics Department Chairperson Mr. Sueyoshi.  The student complained that Dr. Martinez refused to provide her with a receipt for the purchased course materials.  See Kakar Hearing Testimony.

55.     Upon learning that Dr. Martinez had distributed course materials to students allegedly in violation of MCCCD's cash handling policy, President Solley instructed Martinez to immediately issue refunds to her students via personal check.  MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.

56.     On or around October 18, 2012, President Solley and Dr. Kakar met with Dr. Martinez to explain the seriousness of Dr. Martinez's alleged cash handling violation. MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.  In addition, President Solley and Dr. Kakar prepared a written counseling memo dated October 18 2010 for Dr. Martinez regarding her alleged violation of cash handling rules.  Dr. Martinez was provided with a copy of the October 18, 2010 counseling notice and President Solley proceeded to explain to Dr. Martinez the seriousness of the alleged cash handling violations and the requirement that Dr. Martinez issue reimbursements to her students.  MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.

57.     Several months later, on or around January 9, 2013, Dr. Kakar learned that most (if not all) students had not yet received refunds from the Dr. Martinez.  MCCCD Exhibit List # 39 (various emails regarding student refunds).  As a result, Dr. Kakar instructed Dr. Martinez to provide copies of refund checks by January 18, 2013.  MCCCD Exhibit List # 39 (various emails regarding student refunds).

58.     Dr. Martinez failed to produce a single refund check by the January 18, 2013 deadline. MCCCD Exhibit List # 39 (various emails regarding student refunds).

59.     Dr. Martinez did not think that she had violated any District rule in reference to the copies.  Therefore, she declined to follow the December 9, 2010 order because she believed she was not required to do so under any District rule.

60.     At the November 18, 2013 hearing, Dr. Martinez did not provide any explanation for her refusal to comply with the October 18, 2012 and January 9, 2013 directives to issue refunds to her students.  See Martinez Hearing Testimony.

61.     At the hearing Dr. Martinez testified that she had made a "mistake" and, in retrospect, should have complied with President Solley's instructions.   See Martinez Hearing Testimony.

62.     On or around August 9, 2013, MCCCD Chancellor Rufus Glasper sent Dr. Martinez a letter informing her that MCCCD was proceeding with termination proceedings. Included with this letter was a statement of charges that summarized the particular violations Dr. Martinez had been charged with (hereinafter referred to as "Statement of Charges.") MCCCD Exhibit List # 1 (Statement of Charges).

## CONCLUSIONS

63.     PC failed to carry its burden of proof relating to violation of MCCCD's cash handling rules found in MCCCD Administrative Regulations 1.17, violation of Residential Policy Manual 3.2.4 (relating to financial interests in unpublished materials), violation of U.S. Copyright Law and fair use guidelines, and violation of MCCCD Administrative Regulations 3.2.4 and 3.2.5 related to copyright regulations.

64.     Notwithstanding their education, their experience, and their good faith, Mr. Bellamy and Mr. Garrison disagreed as to whether or not Dr. Martinez violated copyright law. Therefore, it is inconclusive as to whether Dr. Martinez intentionally and/or inadvertently violated federal copyright law.

65.     It is inconclusive as to whether or not Dr. Martinez violated the "cash handling" policies of MCCCD.

66.     Dr. Martinez willfully and intentionally failed to follow instructions that were communicated to her when she failed to issue refunds to students as directed by President Solley.

67.     Dr. Martinez conceded that she never complied with President Solley's clear directive to issue refunds to her students. Although Dr. Martinez now regrets her decision not to comply with President Solley's directive, she has never claimed that she did not understand the instructions or that the instructions were beyond the scope of management's authority. Viewed in light of these facts, Martinez's claim that she "made a mistake" is an admission of willful insubordination.

68.     By failing to comply with President Solley's directive to issue refunds to her students, Dr. Martinez violated MCCCD Administrative Regulation 6.7.1 which prohibits the "[w]illful and intentional violation of any...MCCCD administrative regulation that affects the employee's ability to perform his or her job."

69.     By failing to comply with President Solley's directive to issue refunds to students, Dr. Martinez violated MCCCD Administrative Regulation 6.7.3 which prohibits the "[w]illful and intentional failure to perform job duties that have first been communicated to an employee and are within the employee's scope of employment."

///

## RECOMMENDATION

70.     We hereby recommend that the Governing Board deny President Solley's termination request and allow Dr. Martinez to continue her MCCCD employment.

71.     Per MCCCD Administrative Regulation 6.7 indicating that violation of any Employment Standards "constitutes grounds for disciplinary action, *up to* [emphasis added] and including termination," we hereby recommend that the Governing Board retain Dr. Martinez.

It is ordered so, at Mesa, Arizona, this 9th day of December, 2013.

Dr. Keith Crudup
Chairperson
On Behalf of the Hearing Committee,
Dr. Nora Reyes and Dr. Carlos Caire

409881                              -8-

# Exhibit C



**MARICOPA COMMUNITY COLLEGES**
**OFFICE OF THE CHANCELLOR**

# M E M O R A N D U M

**DATE:**       February 10, 2014

**TO:**         Dana Saar, President
              MCCCD Governing Board

**FROM:**       Rufus Glasper

**SUBJECT:**    Recommendation to adopt hearing committee's recommendation
              regarding dismissal, Dr. Cleopatria Martinez

On August 9, 2013, I notified Dr. Cleopatria Martinez, in writing that I intended to recommend to the MCCCD Governing Board that she be dismissed from her position as Mathematics Faculty at Phoenix College (copy attached). This recommendation was based on a statement of charges against Dr. Martinez prepared by Dr. Anna Solley, President of Phoenix College, and reviewed and forwarded to me by James N. Bowers, Interim Vice Chancellor for Human Resources (copy attached).

Pursuant to Section 3.15.3 of the RFP Policy Manual, Dr. Martinez invoked her right to a hearing on her dismissal. This hearing was held on November 18, 2013 pursuant to section 3.15.2 – 3.15.7 of the RFP Policy Manual.

I received the Hearing Committee's Summary of Evidence, Findings of Fact, Conclusions of Law and Recommendation on December 9, 2013. I was unable to schedule a meeting with the hearing committee because of the winter break, and the parties graciously extended the time for my decision to permit me this opportunity. On January 23, 2014, pursuant to section 3.15.8 of the RFP Policy Manual, I met with the Hearing Committee to clarify questions I had concerning their recommendations.

Now, as required by section 3.15.8 of the RFP Policy Manual, I am providing the Governing Board with my recommendation regarding dismissal along with the Summary of the Evidence and a copy of the Findings of Fact, Conclusions of Law and final recommendations of the Hearing Committee.

EXHIBIT 6
WIT: R. Glasper
DATE: 11-22-16
Angela F. Miller, RPR, CR

Page 2

Based on all of the information referred to above and attached hereto, I accept the written recommendation of the committee that Dr. Martinez NOT be dismissed. After consulting with the committee I have determined that a lesser sanction authorized by the RFP and within my sole discretion as Chancellor is appropriate and warranted.

Attachments

cc:   MCCCD Governing Board Members
      Mr. Jim Bowers
      Dr. Anna Solley
      Mr. Pavneet Uppal
      Mr. Steve Montoya

 **Rufus Glasper**
Chancellor

2411 W. 14th Street, Tempe, Arizona 85281-6942 • T 480.731.8100 • F 480.731.8120 • r.glasper@domail.maricopa.edu

February 10, 2014

Dr. Cleopatria Martinez
7030 N. 21st Street
Phoenix, AZ 85020

Re: Notice of Suspension without Pay

Dear Dr. Martinez:

Based upon the attached written statement of charges, I have decided to suspend your employment under my sole authority as Chancellor pursuant to section 3.11 of the Residential Faculty Policies. The purpose of this letter is to notify you that your suspension from your position as Mathematics faculty at Phoenix College will begin on March 1, 2014 and end on May 15, 2015. Your teaching responsibilities and pay will resume Fall semester, 2015 unless you choose to retire (see below).

Having sought the advice of the General Counsel as required by section 3.11.3 of the RFP, I am satisfied that your procedural rights concerning the grounds for suspension have been met. The basis for this action is the unanimous finding of an independent hearing committee that you willfully violated the district policies set forth in the statement of charges and that I have the authority to suspend your employment without pay.

Also under the terms of subsection 3.11.3, the interim Vice Chancellor for Human Resources will offer to consult with you (and the Faculty Association President, if you choose) concerning the rationale for this decision. If you accept his invitation, he will deliver this notice and attachment after the meeting. If you decline your opportunity to consult with him, he will have the decision delivered to you in accordance with the policy.

You may voluntarily retire from your position in lieu of this suspension without pay. If you elect to do so, you will remain on paid administrative leave and be paid through May 9, 2014.

Sincerely,

Rufus Glasper, Ph.D., CPA
Chancellor

Lee Combs
General Legal Counsel

cc: Dr. Anna Solley
    Mr. Jim Bowers

*Ten colleges and two skill centers dedicated to student success.*

Chandler-Gilbert I Estrella Mountain I GateWay I Glendale I Mesa I Paradise Valley I Phoenix
Rio Salado I Scottsdale I South Mountain I Maricopa Skill Center I SouthWest Skill Center



MARICOPA
COMMUNITY
COLLEGES®   |   Rufus Glasper
Chancellor

2411 W. 14th Street, Tempe, Arizona 85281-6942 • T 480.731.8100 • F 480.731.8120 • r.glasper@domail.maricopa.edu

February 10, 2014

Dr. Cleopatria Martinez
7030 N. 21st Street
Phoenix, AZ 85020

Re: Statement of Charges

Based upon the findings of the hearing committee which are attached to this statement, and the record of their proceedings, I have determined as follows:

In teaching your Phoenix College mathematics students, you did not use a textbook. Instead, you prepared your own course materials you called your "lecture notes," copied them on Phoenix College equipment and at College expense, and distributed them to your students without charge. In preparing your notes, you copied problems from copyright protected textbooks and inserted them into your lecture notes without attribution to, or permission of, the copyright holders.

In early 2010, Phoenix College discovered that you may have exposed MCCCD to liability for copyright infringement, notified you of the concerns, and provided training and legal counsel. To protect the College from the risk of liability, in April 2010 President Solley restricted your copying privileges, allowing only those copy projects approved by your department chair. You attempted to bypass these restrictions. The chair filed a complaint that was referred to an administrative evaluation team for investigation. The team, including your own appointee, unanimously concluded that your lecture notes violated copyright and that you had failed to follow President Solley's direction.

President Solley considered this history, and on December 10, 2010 imposed a stricter restriction in accordance with the RFP. She directed you to use only course materials approved by the department, that were available in the bookstore for sale to the students, and that were authored by persons other than yourself. She also required that you provide proper attribution of authorship of the materials by others and show evidence that you had purchased the materials or otherwise received permission to use them from the author. She restricted your authority to copy to materials approved by your department chair after two days' notice and written proof that you had permission of the author to copy the materials.

In concluding her directive, Dr. Solley stated, "This direction is intended to communicate job duties to you within the meaning of Governing Board employment standard A4.3. In accordance with that section of the All Employment Policy Manual, willful and intentional violation of these instructions will be considered grounds for disciplinary action, up to and including dismissal."

Despite MCCCD's frequent discussions with you regarding the importance of complying with copyright laws and the December 9, 2010 directive, you continued to attempt to ignore the directive. At the beginning of the Fall 2012 Semester, you informed your students that they were not required to purchase a course textbook and that you would provide them with your own course materials in lieu of a textbook. In violation of President Solley's December, 2010 directive, you made copies at a local Staples store of course materials that had not been approved by your department chair, and distributed them to your students for $11 per copy, payable directly to you. This distribution violated Dr. Solley's directive.

*Ten colleges and two skill centers dedicated to student success.*

Chandler-Gilbert I Estrella Mountain I GateWay I Glendale I Mesa I Paradise Valley I Phoenix
Rio Salado I Scottsdale I South Mountain I Maricopa Skill Center I SouthWest Skill Center

Page 2

You decided unilaterally that no district policy required you to comply with the job duties communicated to you in writing by Dr. Solley, so you violated them. However, her directive was issued under section 3.7.4 of the RFP. This section authorizes a president to take "any appropriate action" after receiving the results of the administrative review. In considering the appropriate action, Dr. Solley relied on the advice of expert counsel to assess the risk of liability represented by your behavior, on your documented history of evasion of her prior efforts to protect MCCCD, and the unanimous report of the administrative evaluation team. You did not file a timely appeal or grievance seeking review of this directive.

An additional concern arose after a student brought the copying to PC's attention, complaining that you did not provide receipts for the material charges. MCCCD Administrative Regulation 1.12. states as follows:

"1.12.2 Authorization

Prior to participating in the sale of products or services, Revenue and Expenditure categories must be included in a program's budget, and approved by the Governing Board during the annual budget adoption process, or as legally changed during a fiscal year.

1.12.3 Fees

Fees exchanged for products or services produced through an educational, training, or service activity shall be pre-approved by the Governing Board."

Phoenix College determined that your course materials charge was not included in the adopted budget or pre-approved by the Governing Board. Dr. Solley therefore issued a corrective action that directed you to issue refunds to the students for the unauthorized charge. You refused, and offered no explanation or justification of your decision to the hearing committee. The hearing committee found your failure to comply with the corrective action was in violation of Administrative Regulation 6.7.1 and Administrative Regulation 6.7.3.

Therefore, for purposes of RFP Section 3.13, this letter will serve as a statement of charges that you are in violation of Administrative Regulation 6.7.1 and Administrative Regulation 6.7.3. In accordance with these regulations, disciplinary action up to and including termination is warranted. I accept the hearing committee's recommendation that you should not be dismissed from employment. However, I believe suspension without pay for a substantial time is the appropriate sanction.

Sincerely,

Rufus Glasper, Ph.D. CPA
Chancellor

BEFORE THE GOVERNING BOARD OF THE
MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT

| | | |
|---|---|---|
| MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT, | ) ) ) | HEARING COMMITTEE |
| v. | ) ) | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION |
| DR. CLEOPATRIA MARTINEZ | ) ) | |

Pursuant to the October 16, 2013 Scheduling Order, having reviewed all of the parties' pleadings and exhibits and conducting a hearing on November 18, 2013, the Hearing Committee (by majority vote) hereby submits the following Findings of Fact, Conclusions of Law and Recommendation.

## FINDINGS OF FACT

1.      After having taught mathematics full-time for ten years at Denver Community College, Dr. Cleopatria Martinez moved to Arizona and started teaching mathematics full-time at Scottsdale Community College on January 1, 1985.

2.      Dr. Martinez voluntarily transferred to Phoenix College ("PC") in 1995 and has been teaching mathematics there full-time ever since.

3.      Dr. Martinez elected to voluntarily transfer to PC because there were very few minority students attending Scottsdale Community College, and she wanted to use her bilingual education skills in the mathematics classroom to better educate the large number of minority students attending PC.

4.      Dr. Martinez was elected by her colleagues to serve as the Chairperson of the Mathematics Department of PC from 2002 to 2005.

5.      In early 2010, PC discovered that Dr. Cleopatria Martinez may have exposed MCCCD to potential liability for copyright infringement.

6.      Dr. Martinez testified that, during her twenty-eight years of teaching mathematics in the MCCCD system, she and her colleagues in the Mathematics Departments of both Scottsdale Community College and PC routinely borrowed mathematics problems from other mathematicians to use in their student handouts for educational purposes on a not for profit basis.

7.      Dr. Martinez testified, without rebuttal, that this borrowing of mathematics problems is a longstanding, widespread custom throughout the District and academia at large.

8.      Instead of requiring her mathematics students to purchase textbooks, Dr. Martinez prepared her own course materials which she called her "Lecture Notes" and distributed them to

her students.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 77:17-78:15, 106:16-108:16, 121:25-140:13, 132:16-137:25).

9.     Dr. Martinez read the Copyright Act of 1976 and believed that it authorized her to use small portions of other scholars' work under the "Fair Use" doctrine because she was using it only for classroom teaching purposes on a not for profit basis and her use of the material did not undermine the potential market for the other scholar's work.

10.    Per the "Fair Use" doctrine of the Copyright Act, the "use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107.

11.    Dr. Martinez copied problems from copyright protected textbooks and inserted them into her course materials.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 106:16-108:16).

12.    Dr. Martinez, in her Basic Arithmetic (MAT082) course, copied problems directly from a copyrighted textbook entitled "Basic Mathematics" and inserted them into her "MAT 082 Basic Arithmetic Spring 2010" course materials which she distributed to students.  MCCCD Exhibit List # 20 (Full-Sized Excerpted Comparison).  She did not seek or obtain permission from the copyright holder.

13.    Dr. Martinez also copied problems directly from the Sullivan & Sullivan "Precalculus" textbook and inserted them into her "MAT182 Trigonometry Spring 2010" course materials.  MCCCD Exhibit List # 22 (Full-Sized Excerpted Comparison).  She did not seek or obtain permission from the copyright holder.

14.    Dr. Martinez did not require her students to purchase textbooks in her Spring MAT082 Course.  MCCCD Exhibit List # 18 (email from Dr. Martinez stating "I indicated in my syllabus that, instead of a published textbook, I was using lecture notes in my MAT082 class.")

15.    Dr. Martinez did not require her students to purchase textbooks in her Spring MAT182 Course.  *See* Dr. Martinez's hearing testimony (conceding that students were not required to purchase a textbook in her Spring 2010 MAT182 course).

16.    On or around January 12, 2010, MCCCD's Vice President of Academic Services, Ronnie Elliot, sent Dr. Martinez an email notifying her that there were alleged copyright related problems with the materials she had printed for the Fall 2009 and Spring 2010 semesters.  MCCCD Exhibit List # 23 (January 12, 2010 email).  The materials in question were packets of course materials for Dr. Martinez's MAT182 and MAT187 courses and contained mathematics problems and graphs that were taken from copyrighted textbooks.  MCCCD Exhibit List # 11 (Ronnie Elliot Declaration, ¶¶8-9); MCCCD Exhibit List # 16 (MAT182 course packet); MCCCD Exhibit List # 7 (Sean Garrison October 28, 2010 Memorandum).

17.    Dr. Martinez used three of the four packets of "lecture notes" in the Spring of 2010 in two pre-calculus classes. See District Exhibit 6, parts 1-3.

18.     The MCCCD administration, following Vice President Elliot's email, repeatedly explained its copyright concerns to Dr. Martinez and asked Dr. Martinez to remove any copyright protected mathematics problems from her materials.  See Kakar Hearing Testimony.

19.     On January 26, 2010, Vice President Elliot sent Dr. Martinez an email outlining MCCCD's concerns regarding Dr. Martinez's potential copyright infringement.  MCCCD Exhibit List #.24 (January 26, 2010 email).

20.     On January 28, 2010, MCCCD in-house-counsel Margaret McConnell discussed copyright compliance with Dr. Martinez telephonically.  MCCCD Exhibit List # 25 (January 28, 2010 email).

21.     Dr. Martinez did not benefit from the multiple MCCCD copyright information sessions noted above.

22.     PC's own expert witness, Sean Garrison, testified that under the "Fair Use" doctrine, someone could lawfully copy from a copyrighted textbook without either using or purchasing the textbook.

23.     On February 5, 2010, Vice President of Academic Affairs Casandra Kakar, Interim Vice President of Administrative Services Paul DeRose, and Dr. Martinez met to discuss Dr. Martinez's alleged misuse of copyrighted materials.  MCCCD Exhibit List # 26 (February 12, 2010 email).

24.     Dr. Martinez has not used any of the four sets of "lecture notes" since the Spring of 2010 when PC first raised its concerns regarding the notes.

25.     On April 15, 2010, PC Librarian Ann Roselle conducted a personalized one-on-one copyright training session with Dr. Martinez.  MCCCD Exhibit List # 28 (Copyright PowerPoint Presentation).  *See also,* Kakar Hearing Testimony.

26.     When Dr. Martinez met with the librarian, the librarian told Dr. Martinez that Dr. Martinez knew as much about copyright law as she did. See Martinez Hearing Testimony.

27.     Following the revocation of Dr. Martinez's copying privileges, Dr. Martinez was required to submit her copy requests to Mathematics Department Chairperson Mr. Sueyoshi so that Mr. Sueyoshi could review her materials for possible copyright violations prior to copying and distribution to students.  MCCCD Exhibit List # 8 (April 2, 2010 Directive).

28.     Dr. Martinez sought and obtained a form of written permission from the publisher of the textbook, Sullivan & Sullivan's "Precalculus," to copy materials from their book after PC accused her of violating copyright law.

29.     On or around April 19, 2010, Dr. Martinez attempted to bypass the copying restrictions by having an adjunct mathematics Professor, Johnny Santellan, make 24 sets of copies of her "Lecture Notes" for distribution to her mathematics students without obtaining prior approval from the Mathematics Department Chairperson.  MCCCD Exhibit List # 12 (Sueyoshi Decl., ¶9); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 223:11-224:21).

30.     Because Dr. Martinez did not feel she was able to obtain reliable guidance regarding copyright compliance from the District, she sought advice from a private intellectual property attorney regarding the issue, Mr. Frederic Bellamy.

31.     Mr. Bellamy reviewed the first two sets of Dr. Martinez's "lecture notes" and concluded that they did not violate copyright law because they fell under the "Fair Use" doctrine.

32.     Mr. Bellamy based his conclusion that Dr. Martinez did not violate copyright law on the opinion that the portion of material that Dr. Martinez copied from the Sullivan & Sullivan Precalculus textbook was very small, that she used the copied materials exclusively for educational purposes without any profit motive, that the content of the copied material consisted of mathematics problems that are arguably not subject to copyright in the first place, and that the small portion of the textbook that Dr. Martinez copied did not adversely impact the potential market for the textbook.

33.     At the hearing, another lawyer practicing in the area of intellectual property law, Sean Garrison, testified on behalf of PC. In contrast to Mr. Bellamy, Mr. Garrison testified at the hearing that the first three sets of Dr. Martinez's lecture notes violated copyright law.

34.     In contrast to his testimony at the hearing of November 18, 2013, in his written report Mr. Garrison concluded only that the first three sets of Dr. Martinez's lecture notes subjected the District "to a serious risk of a copyright infringement claim." See District Exhibit 6, p. 0002.

35.     MCCCD invited Dr. Martinez to a copyright workshop that was held on March 1, 2010 at PC. Dr. Martinez chose not to attend the workshop. MCCCD Exhibit List # 10 (Solley Decl., ¶11).

36.     PC President Anna Solley, on December 9, 2010, concluded that Dr. Martinez's alleged misconduct posed an unacceptable legal risk of a copyright infringement claim and imposed restrictions on Dr. Martinez's photocopying privileges. MCCCD Exhibit List # 10 (Solley Decl., ¶12).

37.     MCCCD sought a legal opinion from an outside copyright expert, attorney Sean Garrison. MCCCD Exhibit List # 10 (Solley Decl., ¶ 14); MCCCD Exhibit List # 7 (Sean Garrison October 28, 2010 Memo).

38.     According to Mr. Garrison, the third set of "lecture notes" appeared to have 13 mathematics problems copied from two other mathematics textbooks.

39.     Mr. Garrison testified that he was certain that Dr. Martinez has committed copyright infringement. See Garrison Hearing Testimony. In reaching this conclusion, Mr. Garrison reviewed thousands of pages of materials including nearly 300 pages of Dr. Martinez's lecture notes and three separate copyrighted mathematics textbooks. MCCCD Exhibit List # 6 (Sean Garrison April 19, 2013 Report); see also Garrison Hearing Testimony.

40.     In reliance upon Mr. Garrison's recommendations, PC President Anna Solley issued a December 9, 2010 directive that imposed further restrictions on Dr. Martinez's copying

privileges.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 10 (Solley Decl., ¶15).

41.     The December 9, 2010 Directive prohibited Dr. Martinez from utilizing any course materials of her own creation.  MCCCD Exhibit List # 9 (December 9, 2010 Directive). Instead, Dr. Martinez was required to only use course materials that are "approved by the mathematics department" or that are "available in the bookstore for sale to students and that are authored by persons other than [Dr. Martinez]."  MCCCD Exhibit List # 9 (December 9, 2010 Directive).

42.     The December 9, 2010 Directive further required Dr. Martinez to submit her photocopy requests to the Mathematics Department Chair for his approval.  MCCCD Exhibit List # 9 (December 9, 2010 Directive).

43.     Despite MCCCD's frequent discussions with Dr. Martinez regarding the importance of complying with copyright laws and the December 9, 2010 Directive, Dr. Martinez continued to attempt to ignore the directive.  See Kakar Hearing Testimony.

44.     At the beginning of the Fall 2012 semester (on or about August 21-23, 2012), Dr. Martinez informed her students that they were not required to purchase a course textbook and that she would provide them with her own course materials in lieu of a textbook.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21.

45.     In fall of 2012, Dr. Martinez sought to have her lecture notes photocopied off campus at a nearby Staples store.  This practice is inconsistent with the December 9, 2010 Directive.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

46.     Dr. Martinez did not submit her Fall 2012 materials to Mathematics Department Chairperson Mr. Sueyoshi for approval.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

47.     Dr. Martinez made copies of her course materials at an off-campus Staples store and distributed them to students for $11 per copy.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

48.     The $11 course material fee was paid directly to Dr. Martinez by students. MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

49.     PC accused Dr. Martinez of violating the District's "cash handling" rules by distributing these course materials to her students if the students reimbursed her for her out-of-pocket copying costs.

50.     PC subsequently claimed that Dr. Martinez violated the District's "cash handling" policies by seeking reimbursement for the copies.

51.     MCCCD's policies prohibit instructors from having "any financial interest in or receiv[ing] compensation from the sale of any unpublished instructional materials required or

suggested for a class that the instructor teaches." MCCCD Exhibit List # 41 (Residential Faculty Policies, 3.2.4).).

52.   Dr. Martinez failed to follow the protocol set forth in the December 9, 2010 Directive in copying her Fall 2012 course materials.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

53.   Dr. Martinez distributed course materials directly to students in her Fall 2012 MAT151 class.  MCCCD Exhibit List # 4-5 (Martinez Depo. pp. 232:19-233:21).

54.   The MCCCD Administration learned of Dr. Martinez's unauthorized distribution of course materials to students after one of Dr. Martinez's MAT151 students complained to Mathematics Department Chairperson Mr. Sueyoshi.  The student complained that Dr. Martinez refused to provide her with a receipt for the purchased course materials.  See Kakar Hearing Testimony.

55.   Upon learning that Dr. Martinez had distributed course materials to students allegedly in violation of MCCCD's cash handling policy, President Solley instructed Martinez to immediately issue refunds to her students via personal check.  MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.

56.   On or around October 18, 2012, President Solley and Dr. Kakar met with Dr. Martinez to explain the seriousness of Dr. Martinez's alleged cash handling violation.  MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.  In addition, President Solley and Dr. Kakar prepared a written counseling memo dated October 18 2010 for Dr. Martinez regarding her alleged violation of cash handling rules.  Dr. Martinez was provided with a copy of the October 18, 2010 counseling notice and President Solley proceeded to explain to Dr. Martinez the seriousness of the alleged cash handling violations and the requirement that Dr. Martinez issue reimbursements to her students.  MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.

57.   Several months later, on or around January 9, 2013, Dr. Kakar learned that most (if not all) students had not yet received refunds from the Dr. Martinez.  MCCCD Exhibit List # 39 (various emails regarding student refunds).  As a result, Dr. Kakar instructed Dr. Martinez to provide copies of refund checks by January 18, 2013.  MCCCD Exhibit List # 39 (various emails regarding student refunds).

58.   Dr. Martinez failed to produce a single refund check by the January 18, 2013 deadline. MCCCD Exhibit List # 39 (various emails regarding student refunds).

59.   Dr. Martinez did not think that she had violated any District rule in reference to the copies.  Therefore, she declined to follow the December 9, 2010 order because she believed she was not required to do so under any District rule.

60.   At the November 18, 2013 hearing, Dr. Martinez did not provide any explanation for her refusal to comply with the October 18, 2012 and January 9, 2013 directives to issue refunds to her students. See Martinez Hearing Testimony.

61.     At the hearing Dr. Martinez testified that she had made a "mistake" and, in retrospect, should have complied with President Solley's instructions.  See Martinez Hearing Testimony.

62.     On or around August 9, 2013, MCCCD Chancellor Rufus Glasper sent Dr. Martinez a letter informing her that MCCCD was proceeding with termination proceedings. Included with this letter was a statement of charges that summarized the particular violations Dr. Martinez had been charged with (hereinafter referred to as "Statement of Charges.") MCCCD Exhibit List # 1 (Statement of Charges).

## CONCLUSIONS

63.     PC failed to carry its burden of proof relating to violation of MCCCD's cash handling rules found in MCCCD Administrative Regulations 1.17, violation of Residential Policy Manual 3.2.4 (relating to financial interests in unpublished materials), violation of U.S. Copyright Law and fair use guidelines, and violation of MCCCD Administrative Regulations 3.2.4 and 3.2.5 related to copyright regulations.

64.     Notwithstanding their education, their experience, and their good faith, Mr. Bellamy and Mr. Garrison disagreed as to whether or not Dr. Martinez violated copyright law. Therefore, it is inconclusive as to whether Dr. Martinez intentionally and/or inadvertently violated federal copyright law.

65.     It is inconclusive as to whether or not Dr. Martinez violated the "cash handling" policies of MCCCD.

66.     Dr. Martinez willfully and intentionally failed to follow instructions that were communicated to her when she failed to issue refunds to students as directed by President Solley.

67.     Dr. Martinez conceded that she never complied with President Solley's clear directive to issue refunds to her students. Although Dr. Martinez now regrets her decision not to comply with President Solley's directive, she has never claimed that she did not understand the instructions or that the instructions were beyond the scope of management's authority. Viewed in light of these facts, Martinez's claim that she "made a mistake" is an admission of willful insubordination.

68.     By failing to comply with President Solley's directive to issue refunds to her students, Dr. Martinez violated MCCCD Administrative Regulation 6.7.1 which prohibits the "[w]illful and intentional violation of any...MCCCD administrative regulation that affects the employee's ability to perform his or her job."

69.     By failing to comply with President Solley's directive to issue refunds to students, Dr. Martinez violated MCCCD Administrative Regulation 6.7.3 which prohibits the "[w]illful and intentional failure to perform job duties that have first been communicated to an employee and are within the employee's scope of employment."

///

## RECOMMENDATION

70.    We hereby recommend that the Governing Board deny President Solley's termination request and allow Dr. Martinez to continue her MCCCD employment.

71.    Per MCCCD Administrative Regulation 6.7 indicating that violation of any Employment Standards, "constitutes grounds for disciplinary action, *up to* [emphasis added] and including termination," we hereby recommend that the Governing Board retain Dr. Martinez.

It is ordered so, at Mesa, Arizona, this 9th day of December, 2013.

_____
Dr. Keith Crudup
Chairperson
On Behalf of the Hearing Committee,
Dr. Nora Reyes and Dr. Carlos Caire.

406681                                -8-

### 3.10.2.1.

Not later than March 1st for all members in Probationary status. By October 1st of the fourth and fifth academic years, the Probationary Faculty member should be advised in writing, by the Department/Division Chair or appropriate Vice President, or Vice President's designee of any deficiencies which may, if uncorrected, result in non-renewal of contract, and the Probationary member shall have the remainder of the academic year to address said deficiencies.

### 3.10.2.2.

Fifth-year Probationary members will be notified in writing of any deficiencies arising after October 1st. The probationary period may be extended one additional semester for the affected Probationary member per Section 1.2. Failure of the Probationary member to correct said deficiencies in the additional semester will result in their non-renewal at the end of that semester.

### 3.10.3.

Within fourteen (14) days of the receipt of the Chancellor's note of intent to recommend nonrenewal, the member shall, upon request to the Chancellor, be orally advised of the reasons that contributed to the decision to recommend nonrenewal of employment. Such advisement shall be given by the appropriate College President within fourteen (14) days of receipt of the Faculty member's written request.

### 3.10.4.

Within fourteen (14) days of the College President's advisement of the reasons for nonrenewal, the Chancellor shall honor the Faculty member's written request to the Chancellor to confirm, in writing, the reasons given in advisement of nonrenewal. Such written confirmation shall be delivered to the member's place of residence via certified mail, registered mail, or personal service within fourteen (14) days of the Chancellor's receipt of the request.

### 3.10.5.

The process referenced here above shall be completed prior to any nonrenewal recommendation to the Governing Board, for action prior to April 30th.

## 3.11. Suspension of a Faculty Member

### 3.11.1.

Upon a written statement of charges formulated by the Chancellor, charging a Faculty member of the MCCCD, the Chancellor, or his/her designee, may immediately suspend the Faculty member and give notice of suspension. At the option of the Faculty member, the MCCCD Faculty Association President will be notified of this action.

### 3.11.2.

The notice of suspension shall be in writing and be served upon the Faculty member, personally or by U.S. (registered or certified) mail, addressed to the Faculty member at his/her place of residence as recorded in the MCCCD records.

### 3.11.3.

Any Faculty member who has been suspended pursuant to this Section will normally be paid his/her regular salary during the period of suspension. A suspension without pay will occur only upon advice of General Counsel. If payment is to be withheld, the Vice Chancellor of Human Resources will first consult with and advise the member and, at the option of the Faculty member, the Faculty Association President regarding the rationale for that action.

## 3.12. Administrative Leaves of Absence

### 3.12.1. Criminal Complaint

#### 3.12.1.1.

If a Faculty member is charged by criminal complaint, information, or indictment with any criminal offense, which would be cause for dismissal, the Chancellor or designee may immediately place the member on compulsory leave of absence for a period of time extending for not more than ten (10) days after the date of entry of judgment in the proceedings.

#### 3.12.1.2.

Pay during this period will be based on the same consideration as in Section 3.13.3.

### 3.12.2. Complaints—Other Than Criminal

#### 3.12.2.1.

The Vice Chancellor of Human Resources may, if it is appropriate, place a Faculty member on paid administrative leave of absence. At the option of the Faculty member, the MCCCD Faculty Association President will be advised.

#### 3.12.2.2.

Pay during this period will be based on the same consideration as in **Section 3.11.3.**

## 3.13. Faculty Member Dismissal—Probationary and Appointive

A Faculty member who is recommended, by the College President, through the Chancellor, to the Governing Board, for dismissal shall have access to the following due-process procedures.

### 3.13.1.

A written statement of charges, formulated by the College President, shall be forwarded to the Vice Chancellor of Human Resources. After review of the charges, the Vice Chancellor, in consultation with the MCCCD Legal Office, may recommend, to the Chancellor, that there exists prima facie cause for the dismissal of a Faculty member. The Chancellor shall inform the Governing Board in writing, with a copy of the recommendation being sent (U.S. certified or registered mail) to the Faculty member at his/her place of residence as recorded in the MCCCD records. The Vice Chancellor's recommendation will give notice to the Chancellor, Governing Board, and the Faculty member of the intention to formally recommend dismissal, which shall not be sooner than thirty (30) days from the date of the letter, nor later than the end of the current academic year.

# Exhibit D



Vice Chancellor
Human Resources

2411 W. 14th Street, Tempe, Arizona 85281-6942  • T  480.731.8103  • F  480.731.8120  • www.maricopa.edu

April 14, 2014

Dr. Cleopatria Martinez
7030 N. 21st Street
Phoenix, AZ  85020

Re:  Update to Notice of Suspension without Pay

Dear Dr. Martinez:

Your Notice of Suspension without Pay, dated February 10, 2014, has been updated.  The February 10th notice advised you that your suspension without pay would begin on March 1, 2014 and end on May 15, 2015.  The dates of your suspension without pay have been revised as follows:

Your suspension without pay from your position as Mathematics faculty at Phoenix College will begin on April 15, 2014 and end on May 15, 2015.  Your teaching responsibilities and pay will resume Fall semester 2015, should you choose to return.

Although your paid administrative leave will cease after this Friday, April 11, 2014, and your unpaid suspension will begin on April 12, 2014, your benefits will continue through April 30, 2014.  Zenith Administrators will send you a Cobra Notice within fourteen days of the end of your coverage.

Sincerely,

Rufus Glasper, Ph.D., CPA
Chancellor

Cc:  Dr. Anna Solley
     LaCoya Shelton-Jackson, VCHR
     Personnel File

EXHIBIT  7
WIT:  R. Glasper
DATE: 11-22-16
Angela F. Miller, RPR, CR

*Ten colleges and two skill centers dedicated to student success.*

Chandler-Gilbert  I  Estrella Mountain  I  GateWay  I  Glendale  I  Mesa  I  Paradise Valley  I  Phoenix
Rio Salado  I  Scottsdale  I  South Mountain  I  Maricopa Skill Center  I  SouthWest Skill Center

# EXHIBIT 36



### MARICOPA COMMUNITY COLLEGES
### OFFICE OF THE CHANCELLOR

## MEMORANDUM

**DATE:**      February 10, 2014

**TO:**      Dana Saar, President
MCCCD Governing Board

**FROM:**      Rufus Glasper

**SUBJECT:**   **Recommendation to adopt hearing committee's recommendation
regarding dismissal, Dr. Cleopatria Martinez**

On August 9, 2013, I notified Dr. Cleopatria Martinez, in writing that I intended to recommend to the MCCCD Governing Board that she be dismissed from her position as Mathematics Faculty at Phoenix College (copy attached). This recommendation was based on a statement of charges against Dr. Martinez prepared by Dr. Anna Solley, President of Phoenix College, and reviewed and forwarded to me by James N. Bowers, Interim Vice Chancellor for Human Resources (copy attached).

Pursuant to Section 3.15.3 of the RFP Policy Manual, Dr. Martinez invoked her right to a hearing on her dismissal. This hearing was held on November 18, 2013 pursuant to section 3.15.2 – 3.15.7 of the RFP Policy Manual.

I received the Hearing Committee's Summary of Evidence, Findings of Fact, Conclusions of Law and Recommendation on December 9, 2013. I was unable to schedule a meeting with the hearing committee because of the winter break, and the parties graciously extended the time for my decision to permit me this opportunity. On January 23, 2014, pursuant to section 3.15.8 of the RFP Policy Manual, I met with the Hearing Committee to clarify questions I had concerning their recommendations.

Now, as required by section 3.15.8 of the RFP Policy Manual, I am providing the Governing Board with my recommendation regarding dismissal along with the Summary of the Evidence and a copy of the Findings of Fact, Conclusions of Law and final recommendations of the Hearing Committee.



EXHIBIT 6
WIT: R. Glasper
DATE: 11-22-16
Angela F. Miller, RPR, CR

Page 2

Based on all of the information referred to above and attached hereto, I accept the written recommendation of the committee that Dr. Martinez NOT be dismissed. After consulting with the committee I have determined that a lesser sanction authorized by the RFP and within my sole discretion as Chancellor is appropriate and warranted.

Attachments

cc:   MCCCD Governing Board Members
      Mr. Jim Bowers
      Dr. Anna Solley
      Mr. Pavneet Uppal
      Mr. Steve Montoya



MARICOPA
COMMUNITY
COLLEGES®

| Rufus Glasper
Chancellor

2411 W. 14th Street, Tempe, Arizona 85281-6942 • T 480.731.8100 • F 480.731.8120 • r.glasper@domail.maricopa.edu

February 10, 2014

Dr. Cleopatria Martinez
7030 N. 21st Street
Phoenix, AZ  85020

Re: Notice of Suspension without Pay

Dear Dr. Martinez:

Based upon the attached written statement of charges, I have decided to suspend your employment under my sole authority as Chancellor pursuant to section 3.11 of the Residential Faculty Policies. The purpose of this letter to notify you that your suspension from your position as Mathematics faculty at Phoenix College will begin on March 1, 2014 and end on May 15, 2015. Your teaching responsibilities and pay will resume Fall semester, 2015 unless you choose to retire (see below).

Having sought the advice of the General Counsel as required by section 3.11.3 of the RFP, I am satisfied that your procedural rights concerning the grounds for suspension have been met. The basis for this action is the unanimous finding of an independent hearing committee that you willfully violated the district policies set forth in the statement of charges and that I have the authority to suspend your employment without pay.

Also under the terms of subsection 3.11.3, the interim Vice Chancellor for Human Resources will offer to consult with you (and the Faculty Association President, if you choose) concerning the rationale for this decision. If you accept his invitation, he will deliver this notice and attachment after the meeting. If you decline your opportunity to consult with him, he will have the decision delivered to you in accordance with the policy.

You may voluntarily retire from your position in lieu of this suspension without pay. If you elect to do so, you will remain on paid administrative leave and be paid through May 9, 2014.

Sincerely,

Rufus Glasper, Ph.D., CPA
Chancellor

Lee Combs
General Legal Counsel

cc:  Dr. Anna Solley
     Mr. Jim Bowers

*Ten colleges and two skill centers dedicated to student success.*

Chandler-Gilbert  |  Estrella Mountain  |  GateWay  |  Glendale  |  Mesa  |  Paradise Valley  |  Phoenix
Rio Salado  |  Scottsdale  |  South Mountain  |  Maricopa Skill Center  |  SouthWest Skill Center



MARICOPA
COMMUNITY
COLLEGES® | Rufus Glasper
Chancellor

2411 W. 14th Street, Tempe, Arizona 85281-6942 • T 480.731.8100 • F 480.731.8120 • r.glasper@domail.maricopa.edu

February 10, 2014

Dr. Cleopatria Martinez
7030 N. 21st Street
Phoenix, AZ 85020

Re: Statement of Charges

Based upon the findings of the hearing committee which are attached to this statement, and the record of
their proceedings, I have determined as follows:

In teaching your Phoenix College mathematics students, you did not use a textbook. Instead, you prepared
your own course materials you called your "lecture notes," copied them on Phoenix College equipment
and at College expense, and distributed them to your students without charge. In preparing your notes,
you copied problems from copyright protected textbooks and inserted them into your lecture notes
without attribution to, or permission of, the copyright holders.

In early 2010, Phoenix College discovered that you may have exposed MCCCD to liability for copyright
infringement, notified you of the concerns, and provided training and legal counsel. To protect the
College from the risk of liability, in April 2010 President Solley restricted your copying privileges,
allowing only those copy projects approved by your department chair. You attempted to bypass these
restrictions. The chair filed a complaint that was referred to an administrative evaluation team for
investigation. The team, including your own appointee, unanimously concluded that your lecture notes
violated copyright and that you had failed to follow President Solley's direction.

President Solley considered this history, and on December 10, 2010 imposed a stricter restriction in
accordance with the RFP. She directed you to use only course materials approved by the department, that
were available in the bookstore for sale to the students, and that were authored by persons other than
yourself. She also required that you provide proper attribution of authorship of the materials by others
and show evidence that you had purchased the materials or otherwise received permission to use them
from the author. She restricted your authority to copy to materials approved by your department chair
after two days' notice and written proof that you had permission of the author to copy the materials.

In concluding her directive, Dr. Solley stated, "This direction is intended to communicate job duties to
you within the meaning of Governing Board employment standard A4.3. In accordance with that section
of the All Employment Policy Manual, willful and intentional violation of these instructions will be
considered grounds for disciplinary action, up to and including dismissal."

Despite MCCCD's frequent discussions with you regarding the importance of complying with copyright
laws and the December 9, 2010 directive, you continued to attempt to ignore the
directive. At the beginning of the Fall 2012 Semester, you informed your students that they were not
required to purchase a course textbook and that you would provide them with your own course materials
in lieu of a textbook. In violation of President Solley's December, 2010 directive, you made copies at a
local Staples store of course materials that had not been approved by your department chair, and
distributed them to your students for $11 per copy, payable directly to you. This distribution violated Dr.
Solley's directive.

*Ten colleges and two skill centers dedicated to student success.*

Chandler-Gilbert I Estrella Mountain I GateWay I Glendale I Mesa I Paradise Valley I Phoenix
Rio Salado I Scottsdale I South Mountain I Maricopa Skill Center I SouthWest Skill Center

Page 2

You decided unilaterally that no district policy required you to comply with the job duties communicated to you in writing by Dr. Solley, so you violated them. However, her directive was issued under section 3.7.4 of the RFP. This section authorizes a president to take "any appropriate action" after receiving the results of the administrative review. In considering the appropriate action, Dr. Solley relied on the advice of expert counsel to assess the risk of liability represented by your behavior, on your documented history of evasion of her prior efforts to protect MCCCD, and the unanimous report of the administrative evaluation team. You did not file a timely appeal or grievance seeking review of this directive.

An additional concern arose after a student brought the copying to PC's attention, complaining that you did not provide receipts for the material charges. MCCCD Administrative Regulation 1.12. states as follows:

"1.12.2 Authorization

Prior to participating in the sale of products or services, Revenue and Expenditure categories must be included in a program's budget, and approved by the Governing Board during the annual budget adoption process, or as legally changed during a fiscal year.

1.12.3 Fees

Fees exchanged for products or services produced through an educational, training, or service activity shall be pre-approved by the Governing Board."

Phoenix College determined that your course materials charge was not included in the adopted budget or pre-approved by the Governing Board. Dr. Solley therefore issued a corrective action that directed you to issue refunds to the students for the unauthorized charge. You refused, and offered no explanation or justification of your decision to the hearing committee. The hearing committee found your failure to comply with the corrective action was in violation of Administrative Regulation 6.7.1 and Administrative Regulation 6.7.3.

Therefore, for purposes of RFP Section 3.13, this letter will serve as a statement of charges that you are in violation of Administrative Regulation 6.7.1 and Administrative Regulation 6.7.3. In accordance with these regulations, disciplinary action up to and including termination is warranted. I accept the hearing committee's recommendation that you should not be dismissed from employment. However, I believe suspension without pay for a substantial time is the appropriate sanction.

Sincerely,

Rufus Glasper, Ph.D. CPA
Chancellor

BEFORE THE GOVERNING BOARD OF THE
MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT

| | |
|---|---|
| MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT, | ) ) ) HEARING COMMITTEE |
| v. | ) ) FINDINGS OF FACT, CONCLUSIONS ) OF LAW, AND RECOMMENDATION |
| DR. CLEOPATRIA MARTINEZ | ) |

     Pursuant to the October 16, 2013 Scheduling Order, having reviewed all of the parties' pleadings and exhibits and conducting a hearing on November 18, 2013, the Hearing Committee (by majority vote) hereby submits the following Findings of Fact, Conclusions of Law and Recommendation.

## FINDINGS OF FACT

    1.    After having taught mathematics full-time for ten years at Denver Community College, Dr. Cleopatria Martinez moved to Arizona and started teaching mathematics full-time at Scottsdale Community College on January 1, 1985.

    2.    Dr. Martinez voluntarily transferred to Phoenix College ("PC") in 1995 and has been teaching mathematics there full-time ever since.

    3.    Dr. Martinez elected to voluntarily transfer to PC because there were very few minority students attending Scottsdale Community College, and she wanted to use her bilingual education skills in the mathematics classroom to better educate the large number of minority students attending PC.

    4.    Dr. Martinez was elected by her colleagues to serve as the Chairperson of the Mathematics Department of PC from 2002 to 2005.

    5.    In early 2010, PC discovered that Dr. Cleopatria Martinez may have exposed MCCCD to potential liability for copyright infringement.

    6.    Dr. Martinez testified that, during her twenty-eight years of teaching mathematics in the MCCCD system, she and her colleagues in the Mathematics Departments of both Scottsdale Community College and PC routinely borrowed mathematics problems from other mathematicians to use in their student handouts for educational purposes on a not for profit basis.

    7.    Dr. Martinez testified, without rebuttal, that this borrowing of mathematics problems is a longstanding, widespread custom throughout the District and academia at large.

    8.    Instead of requiring her mathematics students to purchase textbooks, Dr. Martinez prepared her own course materials which she called her "Lecture Notes" and distributed them to

her students.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 77:17-78:15, 106:16-108:16, 121:25-140:13, 132:16-137:25).

      9.    Dr. Martinez read the Copyright Act of 1976 and believed that it authorized her to use small portions of other scholars' work under the "Fair Use" doctrine because she was using it only for classroom teaching purposes on a not for profit basis and her use of the material did not undermine the potential market for the other scholar's work.

      10.    Per the "Fair Use" doctrine of the Copyright Act, the "use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107.

      11.    Dr. Martinez copied problems from copyright protected textbooks and inserted them into her course materials.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 106:16-108:16).

      12.    Dr. Martinez, in her Basic Arithmetic (MAT082) course, copied problems directly from a copyrighted textbook entitled "Basic Mathematics" and inserted them into her "MAT 082 Basic Arithmetic Spring 2010" course materials which she distributed to students.  MCCCD Exhibit List # 20 (Full-Sized Excerpted Comparison).  She did not seek or obtain permission from the copyright holder.

      13.    Dr. Martinez also copied problems directly from the Sullivan & Sullivan "Precalculus" textbook and inserted them into her "MAT182 Trigonometry Spring 2010" course materials.  MCCCD Exhibit List # 22 (Full-Sized Excerpted Comparison).  She did not seek or obtain permission from the copyright holder.

      14.    Dr. Martinez did not require her students to purchase textbooks in her Spring MAT082 Course.  MCCCD Exhibit List # 18 (email from Dr. Martinez stating "I indicated in my syllabus that, instead of a published textbook, I was using lecture notes in my MAT082 class.")

      15.    Dr. Martinez did not require her students to purchase textbooks in her Spring MAT182 Course.  *See* Dr. Martinez's hearing testimony (conceding that students were not required to purchase a textbook in her Spring 2010 MAT182 course).

      16.    On or around January 12, 2010, MCCCD's Vice President of Academic Services, Ronnie Elliot, sent Dr. Martinez an email notifying her that there were alleged copyright related problems with the materials she had printed for the Fall 2009 and Spring 2010 semesters. MCCCD Exhibit List # 23 (January 12, 2010 email).  The materials in question were packets of course materials for Dr. Martinez's MAT182 and MAT187 courses and contained mathematics problems and graphs that were taken from copyrighted textbooks.  MCCCD Exhibit List # 11 (Ronnie Elliot Declaration, ¶¶8-9); MCCCD Exhibit List # 16 (MAT182 course packet); MCCCD Exhibit List # 7 (Sean Garrison October 28, 2010 Memorandum).

      17.    Dr. Martinez used three of the four packets of "lecture notes" in the Spring of 2010 in two pre-calculus classes. See District Exhibit 6, parts 1-3.

18.     The MCCCD administration, following Vice President Elliot's email, repeatedly explained its copyright concerns to Dr. Martinez and asked Dr. Martinez to remove any copyright protected mathematics problems from her materials. See Kakar Hearing Testimony.

19.     On January 26, 2010, Vice President Elliot sent Dr. Martinez an email outlining MCCCD's concerns regarding Dr. Martinez's potential copyright infringement. MCCCD Exhibit List # 24 (January 26, 2010 email).

20.     On January 28, 2010, MCCCD in-house-counsel Margaret McConnell discussed copyright compliance with Dr. Martinez telephonically. MCCCD Exhibit List # 25 (January 28, 2010 email).

21.     Dr. Martinez did not benefit from the multiple MCCCD copyright information sessions noted above.

22.     PC's own expert witness, Sean Garrison, testified that under the "Fair Use" doctrine, someone could lawfully copy from a copyrighted textbook without either using or purchasing the textbook.

23.     On February 5, 2010, Vice President of Academic Affairs Casandra Kakar, Interim Vice President of Administrative Services Paul DeRose, and Dr. Martinez met to discuss Dr. Martinez's alleged misuse of copyrighted materials. MCCCD Exhibit List # 26 (February 12, 2010 email).

24.     Dr. Martinez has not used any of the four sets of "lecture notes" since the Spring of 2010 when PC first raised its concerns regarding the notes.

25.     On April 15, 2010, PC Librarian Ann Roselle conducted a personalized one-on-one copyright training session with Dr. Martinez. MCCCD Exhibit List # 28 (Copyright PowerPoint Presentation). See also, Kakar Hearing Testimony.

26.     When Dr. Martinez met with the librarian, the librarian told Dr. Martinez that Dr. Martinez knew as much about copyright law as she did. See Martinez Hearing Testimony.

27.     Following the revocation of Dr. Martinez's copying privileges, Dr. Martinez was required to submit her copy requests to Mathematics Department Chairperson Mr. Sueyoshi so that Mr. Sueyoshi could review her materials for possible copyright violations prior to copying and distribution to students. MCCCD Exhibit List # 8 (April 2, 2010 Directive).

28.     Dr. Martinez sought and obtained a form of written permission from the publisher of the textbook, Sullivan & Sullivan's "Precalculus," to copy materials from their book after PC accused her of violating copyright law.

29.     On or around April 19, 2010, Dr. Martinez attempted to bypass the copying restrictions by having an adjunct mathematics Professor, Johnny Santellan, make 24 sets of copies of her "Lecture Notes" for distribution to her mathematics students without obtaining prior approval from the Mathematics Department Chairperson. MCCCD Exhibit List # 12 (Sueyoshi Decl., ¶9); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 223:11-224:21).

405881                                -3-

30.     Because Dr. Martinez did not feel she was able to obtain reliable guidance regarding copyright compliance from the District, she sought advice from a private intellectual property attorney regarding the issue, Mr. Frederic Bellamy.

31.     Mr. Bellamy reviewed the first two sets of Dr. Martinez's "lecture notes" and concluded that they did not violate copyright law because they fell under the "Fair Use" doctrine.

32.     Mr. Bellamy based his conclusion that Dr. Martinez did not violate copyright law on the opinion that the portion of material that Dr. Martinez copied from the Sullivan & Sullivan Precalculus textbook was very small, that she used the copied materials exclusively for educational purposes without any profit motive, that the content of the copied material consisted of mathematics problems that are arguably not subject to copyright in the first place, and that the small portion of the textbook that Dr. Martinez copied did not adversely impact the potential market for the textbook.

33.     At the hearing, another lawyer practicing in the area of intellectual property law, Sean Garrison, testified on behalf of PC. In contrast to Mr. Bellamy, Mr. Garrison testified at the hearing that the first three sets of Dr. Martinez's lecture notes violated copyright law.

34.     In contrast to his testimony at the hearing of November 18, 2013, in his written report Mr. Garrison concluded only that the first three sets of Dr. Martinez's lecture notes subjected the District "to a serious risk of a copyright infringement claim." See District Exhibit 6, p. 0002.

35.     MCCCD invited Dr. Martinez to a copyright workshop that was held on March 1, 2010 at PC. Dr. Martinez chose not to attend the workshop. MCCCD Exhibit List # 10 (Solley Decl., ¶11).

36.     PC President Anna Solley, on December 9, 2010, concluded that Dr. Martinez's alleged misconduct posed an unacceptable legal risk of a copyright infringement claim and imposed restrictions on Dr. Martinez's photocopying privileges. MCCCD Exhibit List # 10 (Solley Decl., ¶12).

37.     MCCCD sought a legal opinion from an outside copyright expert, attorney Sean Garrison. MCCCD Exhibit List # 10 (Solley Decl., ¶ 14); MCCCD Exhibit List # 7 (Sean Garrison October 28, 2010 Memo).

38.     According to Mr. Garrison, the third set of "lecture notes" appeared to have 13 mathematics problems copied from two other mathematics textbooks.

39.     Mr. Garrison testified that he was certain that Dr. Martinez has committed copyright infringement. See Garrison Hearing Testimony. In reaching this conclusion, Mr. Garrison reviewed thousands of pages of materials including nearly 300 pages of Dr. Martinez's lecture notes and three separate copyrighted mathematics textbooks. MCCCD Exhibit List # 6 (Sean Garrison April 19, 2013 Report); see also Garrison Hearing Testimony.

40.     In reliance upon Mr. Garrison's recommendations, PC President Anna Solley issued a December 9, 2010 directive that imposed further restrictions on Dr. Martinez's copying

privileges. MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 10 (Solley Decl., ¶15).

41.    'The December 9, 2010 Directive prohibited Dr. Martinez from utilizing any course materials of her own creation. MCCCD Exhibit List # 9 (December 9, 2010 Directive). Instead, Dr. Martinez was required to only use course materials that are "approved by the mathematics department" or that are "available in the bookstore for sale to students and that are authored by persons other than [Dr. Martinez]." MCCCD Exhibit List # 9 (December 9, 2010 Directive).

42.    The December 9, 2010 Directive further required Dr. Martinez to submit her photocopy requests to the Mathematics Department Chair for his approval. MCCCD Exhibit List # 9 (December 9, 2010 Directive).

43.    Despite MCCCD's frequent discussions with Dr. Martinez regarding the importance of complying with copyright laws and the December 9, 2010 Directive, Dr. Martinez continued to attempt to ignore the directive. See Kakar Hearing Testimony.

44.    At the beginning of the Fall 2012 semester (on or about August 21-23, 2012), Dr. Martinez informed her students that they were not required to purchase a course textbook and that she would provide them with her own course materials in lieu of a textbook. MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

45.    In fall of 2012, Dr. Martinez sought to have her lecture notes photocopied off campus at a nearby Staples store. This practice is inconsistent with the December 9, 2010 Directive. MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

46.    Dr. Martinez did not submit her Fall 2012 materials to Mathematics Department Chairperson Mr. Sueyoshi for approval. MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

47.    Dr. Martinez made copies of her course materials at an off-campus Staples store and distributed them to students for $11 per copy. MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

48.    The $11 course material fee was paid directly to Dr. Martinez by students. MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

49.    PC accused Dr. Martinez of violating the District's "cash handling" rules by distributing these course materials to her students if the students reimbursed her for her out-of-pocket copying costs.

50.    PC subsequently claimed that Dr. Martinez violated the District's "cash handling" policies by seeking reimbursement for the copies.

51.    MCCCD's policies prohibit instructors from having "any financial interest in or receiv[ing] compensation from the sale of any unpublished instructional materials required or

suggested for a class that the instructor teaches." MCCCD Exhibit List # 41 (Residential Faculty Policies, 3.2.4).).

52.    Dr. Martinez failed to follow the protocol set forth in the December 9, 2010 Directive in copying her Fall 2012 course materials.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

53.    Dr. Martinez distributed course materials directly to students in her Fall 2012 MAT151 class. MCCCD Exhibit List # 4-5 (Martinez Depo. pp. 232:19-233:21).

54.    The MCCCD Administration learned of Dr. Martinez's unauthorized distribution of course materials to students after one of Dr. Martinez's MAT151 students complained to Mathematics Department Chairperson Mr. Sueyoshi. The student complained that Dr. Martinez refused to provide her with a receipt for the purchased course materials.  See Kakar Hearing Testimony.

55.    Upon learning that Dr. Martinez had distributed course materials to students allegedly in violation of MCCCD's cash handling policy, President Solley instructed Martinez to immediately issue refunds to her students via personal check. MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.

56.    On or around October 18, 2012, President Solley and Dr. Kakar met with Dr. Martinez to explain the seriousness of Dr. Martinez's alleged cash handling violation. MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.  In addition, President Solley and Dr. Kakar prepared a written counseling memo dated October 18 2010 for Dr. Martinez regarding her alleged violation of cash handling rules.  Dr. Martinez was provided with a copy of the October 18, 2010 counseling notice and President Solley proceeded to explain to Dr. Martinez the seriousness of the alleged cash handling violations and the requirement that Dr. Martinez issue reimbursements to her students.  MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.

57.    Several months later, on or around January 9, 2013, Dr. Kakar learned that most (if not all) students had not yet received refunds from the Dr. Martinez.  MCCCD Exhibit List # 39 (various emails regarding student refunds).  As a result, Dr. Kakar instructed Dr. Martinez to provide copies of refund checks by January 18, 2013. MCCCD Exhibit List # 39 (various emails regarding student refunds).

58.    Dr. Martinez failed to produce a single refund check by the January 18, 2013 deadline. MCCCD Exhibit List # 39 (various emails regarding student refunds).

59.    Dr. Martinez did not think that she had violated any District rule in reference to the copies.  Therefore, she declined to follow the December 9, 2010 order because she believed she was not required to do so under any District rule.

60.    At the November 18, 2013 hearing, Dr. Martinez did not provide any explanation for her refusal to comply with the October 18, 2012 and January 9, 2013 directives to issue refunds to her students. See Martinez Hearing Testimony.

61.   At the hearing Dr. Martinez testified that she had made a "mistake" and, in retrospect, should have complied with President Solley's instructions.  See Martinez Hearing Testimony.

62.   On or around August 9, 2013, MCCCD Chancellor Rufus Glasper sent Dr. Martinez a letter informing her that MCCCD was proceeding with termination proceedings. Included with this letter was a statement of charges that summarized the particular violations Dr. Martinez had been charged with (hereinafter referred to as "Statement of Charges.") MCCCD Exhibit List # 1 (Statement of Charges).

## CONCLUSIONS

63.   PC failed to carry its burden of proof relating to violation of MCCCD's cash handling rules found in MCCCD Administrative Regulations 1.17, violation of Residential Policy Manual 3.2.4 (relating to financial interests in unpublished materials), violation of U.S. Copyright Law and fair use guidelines, and violation of MCCCD Administrative Regulations 3.2.4 and 3.2.5 related to copyright regulations.

64.   Notwithstanding their education, their experience, and their good faith, Mr. Bellamy and Mr. Garrison disagreed as to whether or not Dr. Martinez violated copyright law. Therefore, it is inconclusive as to whether Dr. Martinez intentionally and/or inadvertently violated federal copyright law.

65.   It is inconclusive as to whether or not Dr. Martinez violated the "cash handling" policies of MCCCD.

66.   Dr. Martinez willfully and intentionally failed to follow instructions that were communicated to her when she failed to issue refunds to students as directed by President Solley.

67.   Dr. Martinez conceded that she never complied with President Solley's clear directive to issue refunds to her students.  Although Dr. Martinez now regrets her decision not to comply with President Solley's directive, she has never claimed that she did not understand the instructions or that the instructions were beyond the scope of management's authority.  Viewed in light of these facts, Martinez's claim that she "made a mistake" is an admission of willful insubordination.

68.   By failing to comply with President Solley's directive to issue refunds to her students, Dr. Martinez violated MCCCD Administrative Regulation 6.7.1 which prohibits the "[w]illful and intentional violation of any...MCCCD administrative regulation that affects the employee's ability to perform his or her job."

69.   By failing to comply with President Solley's directive to issue refunds to students, Dr. Martinez violated MCCCD Administrative Regulation 6.7.3 which prohibits the "[w]illful and intentional failure to perform job duties that have first been communicated to an employee and are within the employee's scope of employment."

///

## RECOMMENDATION

70.    We hereby recommend that the Governing Board deny President Solley's termination request and allow Dr. Martinez to continue her MCCCD employment.

71.    Per MCCCD Administrative Regulation 6.7 indicating that violation of any Employment Standards "constitutes grounds for disciplinary action, *up to* [emphasis added] and including termination," we hereby recommend that the Governing Board retain Dr. Martinez.


It is ordered so, at Mesa, Arizona, this 9th day of December, 2013.


Dr. Keith Crudup
Chairperson
On Behalf of the Hearing Committee,
Dr. Nora Reyes and Dr. Carlos Caire.

### 3.10.2.1.

Not later than March 1st for all members in Probationary status. By October 1st of the fourth and fifth academic years, the Probationary Faculty member should be advised in writing, by the Department/Division Chair or appropriate Vice President, or Vice President's designee of any deficiencies which may, if uncorrected, result in non-renewal of contract, and the Probationary member shall have the remainder of the academic year to address said deficiencies.

### 3.10.2.2.

Fifth-year Probationary members will be notified in writing of any deficiencies arising after October 1st. The probationary period may be extended one additional semester for the affected Probationary member per Section 1.2. Failure of the Probationary member to correct said deficiencies in the additional semester will result in their non-renewal at the end of that semester.

### 3.10.3.

Within fourteen (14) days of the receipt of the Chancellor's note of intent to recommend nonrenewal, the member shall, upon request to the Chancellor, be orally advised of the reasons that contributed to the decision to recommend nonrenewal of employment. Such advisement shall be given by the appropriate College President within fourteen (14) days of receipt of the Faculty member's written request.

### 3.10.4.

Within fourteen (14) days of the College President's advisement of the reasons for nonrenewal, the Chancellor shall honor the Faculty member's written request to the Chancellor to confirm, in writing, the reasons given in advisement of nonrenewal. Such written confirmation shall be delivered to the member's place of residence via certified mail, registered mail, or personal service within fourteen (14) days of the Chancellor's receipt of the request.

### 3.10.5.

The process referenced here above shall be completed prior to any nonrenewal recommendation to the Governing Board, for action prior to April 30th.

## 3.11. Suspension of a Faculty Member

### 3.11.1.

Upon a written statement of charges formulated by the Chancellor, charging a Faculty member of the MCCCD, the Chancellor, or his/her designee, may immediately suspend the Faculty member and give notice of suspension. At the option of the Faculty member, the MCCCD Faculty Association President will be notified of this action.

### 3.11.2.

The notice of suspension shall be in writing and be served upon the Faculty member, personally or by U.S. (registered or certified) mail, addressed to the Faculty member at his/her place of residence as recorded in the MCCCD records.

### 3.11.3.

Any Faculty member who has been suspended pursuant to this Section will normally be paid his/her regular salary during the period of suspension. A suspension without pay will occur only upon advice of General Counsel. If payment is to be withheld, the Vice Chancellor of Human Resources will first consult with and advise the member and, at the option of the Faculty member, the Faculty Association President regarding the rationale for that action.

## 3.12. Administrative Leaves of Absence

### 3.12.1. Criminal Complaint

#### 3.12.1.1.

If a Faculty member is charged by criminal complaint, information, or indictment with any criminal offense, which would be cause for dismissal, the Chancellor or designee may immediately place the member on compulsory leave of absence for a period of time extending for not more than ten (10) days after the date of entry of judgment in the proceedings.

#### 3.12.1.2.

Pay during this period will be based on the same consideration as in Section 3.13.3.

### 3.12.2. Complaints—Other Than Criminal

#### 3.12.2.1.

The Vice Chancellor of Human Resources may, if it is appropriate, place a Faculty member on paid administrative leave of absence. At the option of the Faculty member, the MCCCD Faculty Association President will be advised.

#### 3.12.2.2.

Pay during this period will be based on the same consideration as in **Section 3.11.3.**

## 3.13. Faculty Member Dismissal—Probationary and Appointive

A Faculty member who is recommended, by the College President, through the Chancellor, to the Governing Board, for dismissal shall have access to the following due-process procedures.

### 3.13.1.

A written statement of charges, formulated by the College President, shall be forwarded to the Vice Chancellor of Human Resources. After review of the charges, the Vice Chancellor, in consultation with the MCCCD Legal Office, may recommend, to the Chancellor, that there exists prima facie cause for the dismissal of a Faculty member. The Chancellor shall inform the Governing Board in writing, with a copy of the recommendation being sent (U.S. certified or registered mail) to the Faculty member at his/her place of residence as recorded in the MCCCD records. The Vice Chancellor's recommendation will give notice to the Chancellor, Governing Board, and the Faculty member of the intention to formally recommend dismissal, which shall not be sooner than thirty (30) days from the date of the letter, nor later than the end of the current academic year.

EXHIBIT 37

| | |
|---|---|
| **From:** | Lee Combs <lee.combs@domail.maricopa.edu> |
| **Sent:** | Monday, February 10, 2014 11:26 AM |
| **To:** | Steve Montoya |
| **Subject:** | Re: |

I will let his assistant know you want to meet and she will be in touch.

On Mon, Feb 10, 2014 at 11:22 AM, Steve Montoya <stephen@montoyalawgroup.com> wrote:
Lee,

Yes, we would like to meet with the Vice Chancellor to discuss any proposed sanction against Professor Martinez.

Thank you.

Stephen Montoya
Montoya, Jimenez & Pastor, P.A.
3200 North Central Ave., Ste. 2550
Phoenix, Arizona
602-256-6718 (phone)
602-256-6667 (fax)

On Feb 10, 2014, at 9:15 AM, "Lee Combs" <lee.combs@domail.maricopa.edu> wrote:

> The Chancellor's assistant, Linda Back, informs me that the decision to accept the recommendation of the hearing committee should be in everyone's inbox this morning.

> The Chancellor decided that suspension is appropriate based on the committee's finding of a willful policy violation. Your client has an opportunity under the procedure to meet with the VCHR to discuss the rationale for this decision before it is delivered, if she wishes. Please consult her and let me know.
> --


Lee Combs: General Counsel
2411 West 14th Street, Tempe AZ 85281
phone | 480-731-8878 · fax | 480-731-8890
email | lee.combs@domail.maricopa.edu

On Mon, Feb 10, 2014 at 8:59 AM, Steve Montoya <stephen@montoyalawgroup.com> wrote:
Lee

The Chancellor's decision is past due.

When can we expect it?

1

Stephen Montoya
Montoya, Jimenez & Pastor, P.A.
3200 North Central Ave., Ste. 2550
Phoenix, Arizona
602-256-6718 (phone)
602-256-6667 (fax)

On Feb 6, 2014, at 3:25 PM, "Lee Combs" <lee.combs@domail.maricopa.edu> wrote:

> I am informed the Chancellor has reached a decision on the hearing committee's recommendation that he intends to announce today or tomorrow. There may be additional communications to follow, and I will keep you informed as these come out.
>
>
> On Mon, Feb 3, 2014 at 11:58 AM, Steve Montoya <stephen@montoyalawgroup.com> wrote:
>> Lee,
>>
>> What is the status of Professor Martinez's case with the Chancellor?
>>
>> Please let me know.
>>
>> Thank you.
>>
>> Stephen Montoya
>> Montoya, Jimenez & Pastor, P.A.
>> 3200 North Central Ave., Ste. 2550
>> Phoenix, Arizona
>> 602-256-6718 (phone)
>> 602-256-6667 (fax)
>>
>>
>> --
>> Lee Combs: General Counsel
>> 2411 West 14th Street, Tempe AZ 85281
>> phone | 480-731-8878 · fax | 480-731-8890
>> email | lee.combs@domailmaricopa.edu

2

MCCCD/Martinez 01166



**Lee Combs:** General Counsel

2411 West 14th Street, Tempe AZ 85281
phone | 480-731-8878 • fax | 480-731-8890
email | lee.combs@domail.maricopa.edu

3

MCCCD/Martinez 01167

EXHIBIT 38

**Subject:**                                FW: Meeting: Cleopatra Martinez

**From:** Steve Montoya <stephen@montoyalawgroup.com>
**Date:** February 24, 2014, 3:58:08 PM MST
**To:** <darlene.newman@domail.maricopa.edu>
**Cc:** "Uppal, Pavneet" <puppal@laborlawyers.com>, <lee.combs@domail.maricopa.edu>, Diana Davidson
<diana.davidson@domail.maricopa.edu>
**Subject: Re: Meeting: Cleopatra Martinez**

Ms. Newman,

Unfortunately, Dr. Martinez has had a sudden medical issue that requires that she meet with her
physician tomorrow afternoon.

We consequently need to reschedule her appointment with the District presently scheduled for
tomorrow afternoon at 2:00 pm.

Stephen Montoya
Montoya, Jimenez & Pastor, P.A.
3200 North Central Ave., Ste. 2550
Phoenix, Arizona
602-256-6718 (phone)
602-256-6667 (fax)

On Feb 19, 2014, at 8:35 AM, "Darlene Newman" <darlene.newman@domail.maricopa.edu>
wrote:

> Thank you all for reserving time for this meeting. I am confirming this meeting
> for Tuesday, 2/25 @ 2:00 pm. If there are any changes, please advise us as soon
> as possible. As of right now, the meeting will be held in the District Office, 6th
> floor, Legal Conference Room. (2411 W. 14th Street, Tempe).
>
> Thanks!
>
> Darlene Newman
> 480-731-8119
>
>
> On Mon, Feb 17, 2014 at 5:17 PM, Uppal, Pavneet <puppal@laborlawyers.com>
> wrote:
>
> Ms. Newman,
>
>
> I represent the District in this matter and Mr. Montoya kindly forwarded your
> email below to my attention. I am available on:

1

MCCCD/Martinez 01168

- Wednesday, 2/19 @ 2:00 pm
- Tuesday, 2/25 @ 2:00 pm

Please let me know once you have scheduled a date for this meeting,


Best regards,



**Pavneet Uppal**
**Attorney at Law**
puppal@laborlawyers.com | O: (602) 281-3410
201 E. Washington Street | Suite 1450 | Phoenix, AZ 85004

All New Content: "One Day, Many Solutions: Employment Law Coast to Coast"
March, April & May 2014 Seminars coming to a city near you!
Visit **www.laborlawyers.com/2014seminars**

<image001.gif>


vCard | Bio | Website      Representing employers nationally in labor and employment matters


Atlanta | Baltimore | Boston | Charlotte | Chicago | Cleveland | Columbia | Columbus | Dallas | Denver | Fort Lauderdale | Gulfport
Houston | Irvine | Kansas City | Las Vegas | Los Angeles | Louisville | Memphis | New England | New Jersey | New Orleans
Orlando | Philadelphia | Phoenix | Portland | San Antonio | San Diego | San Francisco | Tampa | Washington, DC

*This message originates from the law firm of Fisher & Phillips LLP and may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient and have received this message in error, please notify us at postmaster@laborlawyers.com and please delete this message from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited.*



**From:** Steve Montoya [mailto:stephen@montoyalawgroup.com]
**Sent:** Thursday, February 13, 2014 11:03 AM
**To:** Uppal, Pavneet

MCCCD/Martinez 01169

**Cc:** lee.combs@domail.maricopa.edu
**Subject:** Fwd: Meeting: Cleopatra Martinez

I think you should have been included in this email Pavneet.

Stephen Montoya

Montoya, Jimenez & Pastor, P.A.

3200 North Central Ave., Ste. 2550

Phoenix, Arizona

602-256-6718 (phone)

602-256-6667 (fax)

Begin forwarded message:

> **From:** Darlene Newman
> <darlene.newman@domail.maricopa.edu>
> **Date:** February 13, 2014 at 10:20:02 AM MST
> **To:** stephen@montoyalawgroup.com
> **Cc:** James Bowers <james.bowers@domail.maricopa.edu>, Lee
> Combs <lee.combs@domail.maricopa.edu>, Diana Davidson
> <diana.davidson@domail.maricopa.edu>
> **Subject: Meeting: Cleopatra Martinez**
> **Reply-To:** darlene.newman@domail.maricopa.edu
>
> Good day Mr. Montoya:
>
>
> Per your email statement to Mr. Lee Combs, Legal Counsel at
> Maricopa Community Colleges, I have called to set up a meeting
> with you, Cleopatra Martinez, James "Jim" Bowers, Interim Vice
> Chancellor for Human Resources and Lee Combs.
>
>
> After two telephone calls, I thought I would follow-up with this message to
> schedule this meeting. Below are some suggested dates and times for this
> meeting. Please let me know what days and times are suitable for you and I
> will confirm this meeting.
>
>
> I look forward to hearing from you soon.

3

MCCCD/Martinez 01170

Thanks!

- Tuesday, 2/18 @ 2:00 pm
- Wednesday, 2/19 @ 2:00 pm
- Tuesday, 2/25 @ 2:00 pm
- Wednesday 2/26 at 2:00 pm

--

**Darlene Newman**: Administrative Assistant to the Vice Chancellor for Human Resou
*"Leaders instill in their people a hope for success and a belief in themselves. Positive people to accomplish their goals."*   ~Unknown

2411 West 14th Street, Tempe AZ 85281
phone | 480-731-8119/8753 • fax | 480-731-8120
email | darlene.newman@domail.maricopa.edu
website | www.maricopaedu/hr
**We are HR** ᵉ **ONE MARICOPA** ᵘ **Maricopa HR**

--

**Darlene Newman**: Administrative Assistant to the Vice Chancellor for Human Resources/HR Solutions
*"Leaders instill in their people a hope for success and a belief in themselves. Positive leaders empower people to accom goals."*   ~Unknown

2411 West 14th Street, Tempe AZ 85281
phone | 480-731-8119/8753 • fax | 480-731-8120
email | darlene.newman@domail.maricopa.edu
website | www.maricopa.edu/hr
**We are HR · ONE MARICOPA · Maricopa HR**

4

MCCCD/Martinez 01171

# EXHIBIT 39

**Subject:**                    FW: Meeting: Cleopatra Martinez

**From:** Uppal, Pavneet
**Sent:** Monday, March 3, 2014 1:45 PM
**To:** darlene.newman@domail.maricopa.edu; Steve Montoya <stephen@montoyalawgroup.com>
**Cc:** April Roll <april@montoyalawgroup.com>; Diana Davidson <diana.davidson@domail.maricopa.edu>; Lee Combs
<lee.combs@domail.maricopa.edu>
**Subject:** RE: Meeting: Cleopatra Martinez

Thank you Ms. Newman.

## Pavneet Uppal

**Attorney at Law**

puppal@laborlawyers.com | O: (602) 281-3410

201 E. Washington Street | Suite 1450 | Phoenix, AZ 85004

All New Content: "One Day, Many Solutions: Employment Law Coast to Coast"
March, April & May 2014 Seminars coming to a city near you!
Visit www.laborlawyers.com/2014seminars

FISHER & PHILLIPS LLP

vCard | Bio | Website     **Representing employers nationally in labor and employment matters**

Atlanta | Baltimore | Boston | Charlotte | Chicago | Cleveland | Columbia | Columbus | Dallas | Denver | Fort Lauderdale | Gulfport
Houston | Irvine | Kansas City | Las Vegas | Los Angeles | Louisville | Memphis | New England | New Jersey | New Orleans
Orlando | Philadelphia | Phoenix | Portland | San Antonio | San Diego | San Francisco | Tampa | Washington, DC

*This message originates from the law firm of Fisher & Phillips LLP and may contain legally privileged and confidential information intended
solely for the use of the addressee. If you are not the intended recipient and have received this message in error, please notify us at
postmaster@laborlawyers.com and please delete this message from your system. Any unauthorized reading, distribution, copying, or other
use of this message or its attachments is strictly prohibited.*

**From:** Darlene Newman [mailto:darlene.newman@domail.maricopa.edu]
**Sent:** Monday, March 03, 2014 12:49 PM
**To:** Steve Montoya
**Cc:** Uppal, Pavneet; April Roll; Diana Davidson; Lee Combs
**Subject:** Re: Meeting: Cleopatra Martinez

Mr. Montoya: We confirm this meeting and details are as follows:

- **Date:**      Friday, 3/7/2014
- **Time:**      2:00 - 3:00 pm
- **Location:**  Jim Bower's Office, Maricopa Community College District Office,
  - 2411 W. 14th Street, Tempe - 6th floor
  - 480-731-8119 (D.Newman)
- Check in with security

MCCD/Martinez 01172

On Sat, Mar 1, 2014 at 11:21 AM, Steve Montoya <stephen@montoyalawgroup.com> wrote:
We can do it Friday afternoon.

Stephen Montoya
Montoya, Jimenez & Pastor, P.A.
3200 North Central Ave., Ste. 2550
Phoenix, Arizona
602-256-6718 (phone)
602-256-6667 (fax)

On Feb 28, 2014, at 9:40 AM, "Darlene Newman" <darlene.newman@domail.maricopa.edu> wrote:

Mr. Bowers and Mr. Combs are available as shown below:

- Friday, March 7
  - 9 - 10 am
  - 2 - 3 pm
  - 3 - 4 pm

Please advise. Thanks!

Darlene Newman
480-731-8119

On Wed, Feb 26, 2014 at 1:52 PM, Steve Montoya <stephen@montoyalawgroup.com> wrote:

Ms. Newman,


Professor Martinez has a serious case of the flu.  The earliest that she can meet consistent with my schedule is next Friday.


Does that work for everyone else?


Stephen Montoya

Montoya, Jimenez & Pastor, P. A.

3200 North Central Avenue, Suite 2550

Phoenix, Arizona 85012

602-256-6718 (telephone)

MCCCD/Martinez 01173

602-256-6667 (fax)

stephen@montoyalawgroup.com

# From: Darlene Newman

[mailto:darlene.newman@domail.maricopa.edu]
**Sent:** Tuesday, February 25, 2014 8:25 AM
**To:** Steve Montoya
**Subject:** Re: Meeting: Cleopatra Martinez

Please give us some dates she will be available.

On Mon, Feb 24, 2014 at 3:58 PM, Steve Montoya <stephen@montoyalawgroup.com> wrote:

Ms. Newman,

Unfortunately, Dr. Martinez has had a sudden medical issue that requires that she meet with her physician tomorrow afternoon.

We consequently need to reschedule her appointment with the District presently scheduled for tomorrow afternoon at 2:00 pm.

Stephen Montoya

Montoya, Jimenez & Pastor, P.A.

3200 North Central Ave., Ste. 2550

Phoenix, Arizona

602-256-6718 (phone)

3

MCCCD/Martinez 01174

602-256-6667 (fax)

On Feb 19, 2014, at 8:35 AM, "Darlene Newman" <darlene.newman@domail.maricopa.edu>
wrote:

> Thank you all for reserving time for this meeting. I am confirming this meeting
> for Tuesday, 2/25 @ 2:00 pm. If there are any changes, please advise us as soon
> as possible. As of right now, the meeting will be held in the District Office, 6th
> floor, Legal Conference Room. (2411 W. 14th Street, Tempe).
>
>
> Thanks!
>
>
> Darlene Newman
>
> 480-731-8119
>
>
> On Mon, Feb 17, 2014 at 5:17 PM, Uppal, Pavneet <puppal@laborlawyerscom>
> wrote:
>
> Ms. Newman,
>
>
> I represent the District in this matter and Mr. Montoya kindly forwarded your
> email below to my attention. I am available on:
>
> - Wednesday, 2/19 @ 2:00 pm
> - Tuesday, 2/25 @ 2:00 pm
>
> Please let me know once you have scheduled a date for this meeting,
>
>
> Best regards,
>
>
>
>
> **Pavneet Uppal**
> **Attorney at Law**

4

MCCCD/Martinez 01175

puppal@laborlawyers.com | O: (602) 281-3410
201 E. Washington Street | Suite 1450 | Phoenix, AZ 85004

All New Content: "One Day, Many Solutions: Employment Law Coast to Coast"
March, April & May 2014 Seminars coming to a city near you!
Visit www.laborlawyers.com/2014seminars

<image001.gif>

vCard | Bio | Website          Representing employers nationally in labor and employment matters

Atlanta | Baltimore | Boston | Charlotte | Chicago | Cleveland | Columbia | Columbus | Dallas | Denver | Fort Lauderdale | Gulfport
Houston | Irvine | Kansas City | Las Vegas | Los Angeles | Louisville | Memphis | New England | New Jersey | New Orleans
Orlando | Philadelphia | Phoenix | Portland | San Antonio | San Diego | San Francisco | Tampa | Washington, DC

*This message originates from the law firm of Fisher & Phillips LLP and may contain legally privileged and confidential information intended
solely for the use of the addressee. If you are not the intended recipient and have received this message in error, please notify us at
postmaster@laborlawyers.com and please delete this message from your system. Any unauthorized reading, distribution, copying, or other
use of this message or its attachments is strictly prohibited.*

MCCCD/Martinez 01176

 Steve Montoya

[mailto:stephen@montoyalawgroup.com]
**Sent:** Thursday, February 13, 2014 11:03 AM
**To:** Uppal, Pavneet
**Cc:** lee.combs@domail.maricopa.edu
**Subject:** Fwd: Meeting: Cleopatra Martinez


I think you should have been included in this email Pavneet.

Stephen Montoya

Montoya, Jimenez & Pastor, P.A.

3200 North Central Ave., Ste. 2550

Phoenix, Arizona

602-256-6718 (phone)

602-256-6667 (fax)


Begin forwarded message:

> **From:** Darlene Newman
> <darlene.newman@domail.maricopa.edu>
> **Date:** February 13, 2014 at 10:20:02 AM MST
> **To:** stephen@montoyalawgroup.com
> **Cc:** James Bowers <james.bowers@domail.maricopa.edu>,  Lee
> Combs <lee.combs@domail.maricopa.edu>,  Diana Davidson
> <diana.davidson@domail.maricopa.edu>
> **Subject: Meeting: Cleopatra Martinez**
> **Reply-To:** darlene.newman@domailmaricopa.edu
>
> Good day Mr. Montoya:
>
>
> Per your email statement to Mr. Lee Combs, Legal Counsel at
> Maricopa Community Colleges, I have called to set up a meeting
> with you, Cleopatra Martinez, James "Jim" Bowers, Interim Vice Chancellor
> for Human Resources and Lee Combs.

6

MCCCD/Martinez 01177

After two telephone calls, I thought I would follow-up with this message to schedule this meeting. Below are some suggested dates and times for this meeting. Please let me know what days and times are suitable for you and I will confirm this meeting.

I look forward to hearing from you soon.

Thanks!

- Tuesday, 2/18 @ 2:00 pm
- Wednesday, 2/19 @ 2:00 pm
- Tuesday, 2/25 @ 2:00 pm
- Wednesday 2/26 at 2:00 pm

--

**Darlene Newman**: Administrative Assistant to the Vice Chancellor for Human Resource
*"Leaders instill in their people a hope for success and a belief in themselves. Positive lea accomplish their goals."    ~Unknown*

2411 West 14th Street, Tempe AZ 85281



phone |

| 480-731-8120
email | darlene.newman@domail.maricopa.edu
website | www.maricopaedu/hr
**We are HR ☼ ONE MARICOPA ☼ Maricopa HR**

7

MCCCD/Martinez 01178

**Darlene Newman:** Administrative Assistant to the Vice Chancellor for Human Resources/HR Solutions
*"Leaders instill in their people a hope for success and a belief in themselves. Positive leaders empower people to accomplish th*
*goals."   ~Unknown*

2411 West 14th Street, Tempe AZ 85281

phone |  ▸ fax | 480-731-

email | darlene.newman@domail.maricopa.edu
website | www.maricopa.edu/hr
**We are HR** ⊰ **ONE MARICOPA** ⊱ **Maricopa HR**

**Darlene Newman:** Administrative Assistant to the Vice Chancellor for Human Resources/HR Solutions
*"Leaders instill in their people a hope for success and a belief in themselves. Positive leaders empower people to accomplish their*
*goals."   ~Unknown*

2411 West 14th Street, Tempe AZ 85281

phone | 480-731-8119/8753   ▸ fax | 480-731-8120

email | darlene.newman@domail.maricopa.edu

8

MCCCD/Martinez 01179

website | www.maricopa.edu/hr
We are HR ⸱ ONE MARICOPA ⸱ Maricopa HR

**Darlene Newman**: Administrative Assistant to the Vice Chancellor for Human Resources/HR Solutions
*"Leaders instill in their people a hope for success and a belief in themselves. Positive leaders empower people to accomplish their goals."      ~Unknown*

2411 West 14th Street, Tempe AZ 85281
phone | 480-731-8119/8753 • fax | 480-731-8120
email | darlene.newman@domail.maricopa.edu
website | www.maricopa.edu/hr
**We are HR ⸱ ONE MARICOPA ⸱ Maricopa HR**

--

**Darlene Newman**: Administrative Assistant to the Vice Chancellor for Human Resources/HR Solutions
*"Leaders instill in their people a hope for success and a belief in themselves. Positive leaders empower people to accomplish their goals."      ~Unknown*

2411 West 14th Street, Tempe AZ 85281
phone | 480-731-8119/8753 • fax | 480-731-8120
email | darlene.newman@domail.maricopa.edu
website | www.maricopa.edu/hr
**We are HR ⸱ ONE MARICOPA ⸱ Maricopa HR**

MCCCD/Martinez 01180