# EXHIBIT 42

# EXPERT REPORT OF

# SEAN D. GARRISON

In the Matter of:

*Martinez v. Maricopa County Community College District and Phoenix College*

Case No. 2:12-cv-00702-DCG

APRIL 19, 2013

GARRISON 0001

I have been retained by Maricopa County Community College District (the "District") in the matter of *Martinez v. Maricopa County Community College District and Phoenix College*, Case No. 2:12-cv-00702-DCG, to provide an expert opinion and report based upon my analysis of 4 documents, which I understand to be course packets and/or lecture notes created by Dr. Cleopatria Martinez intended for distribution to students in her math classes at Phoenix College. I have been asked to opine as to whether the documents are the independent creation of Dr. Martinez and, if not, whether the ongoing use of such documents by Dr. Martinez creates any risk that the District could be subject to a claim of copyright infringement.

A summary of my opinions in this matter follows immediately below.

## SUMMARY OF OPINIONS

- The document entitled "MAT 182 Precalculus Trigonometery Section Lecture Notes Fall 2009" (Exhibit 1) is not the original creation of Dr. Martinez and, if the District had not taken steps to prevent the copying and use of these materials by Dr. Martinez, would subject the District to a serious risk of a copyright infringement claim

- The document entitled "MAT 182 Trigonometry Spring 2010" (Exhibit 2) is not the original creation of Dr. Martinez and, if the District had not taken steps to prevent the copying and use of these materials by Dr. Martinez, would subject the District to a serious risk of a copyright infringement claim

- The document entitled "MAT 082 Chapters for Basic Arithmetic Spring 2010" (Exhibit 3) is not the original creation of Dr. Martinez and, if the District had not taken steps to prevent the copying and use of these materials by Dr. Martinez, would subject the District to a serious risk of a copyright infringement claim

- There is just reason for concern that the document entitled "MAT 187 Precalculus Algebra Section Lecture Notes Fall 2010" (Exhibit 4) is not the original creation of Dr. Martinez and was copied, at least in part, from one or more other sources

- None of the Course Materials complies with the Classroom Guidelines articulated by the representatives of the Ad Hoc Committee of Educational Institutions and Organizations on Copyright Law Revision, and of the Authors League of America, Inc., and the Association of American Publishers, Inc., which were reproduced and incorporated in the House Report (H.R. Rep. No. 94-1476) concerning the 1976 revisions to the Copyright Act

- None of the Course Materials complies with the Permissions Documentation solicited by Dr. Martinez from Pearson Education, Inc. in the Fall of 2010

- If the District were forced to defend a copyright infringement claim with respect to any of the Course Materials, the defense costs alone would undoubtedly be in the hundreds of thousands of dollars if not more

- It was appropriate for the District to take proactive steps to prevent Dr. Martinez from using the Course Materials and subjecting the District to an undue risk of copyright infringement claims

## FACTUAL BACKGROUND

In 2009-2010, Dr. Cleopatria Martinez prepared a series of course packets and lecture notes (the "Course Materials") for distribution to and use by students in her mathematics courses at Phoenix College.

In October of 2010, I was contacted by the District and asked to analyze whether the Course Materials appear to have been independently created or copied from other sources. I subsequently met with Mr. Joe Sueyoshi (Math Department Chair at Phoenix College), Casandra Kakar (Vice President of Academic Affairs at Phoenix College), and Margaret McConnell, an in-house attorney for the District, at Phoenix College to discuss background of the matter. Thereafter, Nate Edwards, an associate at Lewis and Roca working under my direction, and I reviewed and analyzed the materials as requested. We prepared a memo to the District summarizing our analysis, concluding that at least three of the four Course Materials were not Dr. Martinez's independent creations, expressing concerns about the fourth, and recommending that the District not permit further distribution and use of the materials. A copy of that memo is attached as Exhibit 5.

## COPYRIGHT LAW BACKGROUND

A party may obtain copyright protection for "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). Only works of authorship that are <u>original</u> are protected by copyright law. *Id.* "Original, as the term is used in copyright, means only that the work was independently created...and that it possesses at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Tel. Service Co., Inc.*, 499 U.S. 340, 356 (1991).

The elements of a copyright-infringement claim are (1) ownership of the copyright by the plaintiff and (2) copying by the defendant. *See Feist,* 499 U.S. at 361.

Facts, including mathematic definitions, formulas and calculations are not protectable by copyright. *See Educational Testing Services v. Katzman*, 793 F.2d 533, 536-37 (3d Cir. 1986); *see also Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624 (7th Cir.2003) (holding copyright protection exists for exam questions). Although facts are not subject to copyright protection, a "compilation" of facts may be entitled to protection. *Katzman,* 793 F.2d at 536-37; 17 U.S.C. §103(a). But, that protection extends only to the original material added by the author of the compilation, not to facts contained within the compilation. In other words, a single mathematic equation or calculation is not entitled to copyright protection, but a compilation of equations and calculations may be.

Math word problems and math exam questions can be protected expression if they possess "some minimal degree of creativity." *See Feist Publications*, 499 U.S. at 356. Mathematic word problems are protectable where they do not represent the only means of expressing the equations/calculations on which they are based. *Educational Testing Service*, 793

GARRISON 0003

F.2d at 540. In other words, the mere fact that word problems refer to mathematic equations or facts - or require use of equations or facts to solve them - does not, by itself, deprive the problems of copyright protection. *See id.* (finding that there are numerous means to frame questions to test students knowledge of "square roots or dangling participles" and that questions testing this knowledge were protected under copyright law). Therefore, because word problems can reflect original expression in their word choice and explanations, they can be protected by copyright even if they test knowledge of established mathematic formulas.

<u>The Doctrine of Fair Use</u>

Not all copying of protected expression necessarily subjects the copier to liability for copyright infringement. Initially adopted and developed by the courts, the doctrine of fair use was codified by Congress in the 1976 Copyright Act. Specifically, section 107 (17 U.S.C. §107) provides:

> [T]he fair use of a copyrighted work, including such use by reproduction in copies ... for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include-
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work....

This language does not provide blanket immunity to teachers for "multiple copies for classroom use." *Princeton Univ. Press v. Mich. Doc. Servs., Inc.,* 99 F.3d 1381, 1385 (6th Cir.1996) (en banc), *cert. denied,* 520 U.S. 1156, 117 S.Ct. 1336, 137 L.Ed.2d 495 (1997). Instead, "whether a use referred to in the first sentence of Section 107 is a fair use in a particular case ... depend[s] upon the application of the determinative factors." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 578, n. 9, 114 S.Ct. 1164, 1170 n.9, 127 L.Ed.2d 500 (1994), quoting S.Rep. No. 94-473, p. 62. No single factor is determinative, although factor (4) has emerged generally to be considered the most important. *Nimmer on Copyright,* Vol. 4, § 13.05[A][4], p. 13-198.2 (2012 ed.).

In evaluating the various fair use factors, the following principles should be observed:

With regard to factor (1), the purpose and character of the use, the Supreme Court has stated that the central purpose of the investigation of this factor is to determine whether "the new work merely supersedes the objects" of the original work, or whether it adds something new or

GARRISON 0004

different in purpose or character; that is, is the new work "transformative"? *Campbell*, 510 U.S. at 579.

With regard to factor (2), the nature of the copyrighted work, the more creative the work, the greater protection it should receive against a finding of fair use; conversely, the more factual and informational a work, the broader the scope of finding fair use. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d. 522, 531 (9th Cir. 2007).

With regard to factor (3), the amount and substantiality of the portion used, the inquiry is both quantitative and qualitative. *Nimmer on Copyright*, Vol. 4, § 13.05[A][3], p. 13-198. Copyright infringement can occur even if the amount of material infringed upon is low if the copied material is the core of the protected material. *Harper & Row Publishing, Inc. v. Nation Entertainment*, 471 U.S. 539, 565 (1985) (300 words of a full length book manuscript was not a fair use).

With regard to factor (4), the effect of the use upon the potential market for or value of the copyrighted work, this inquiry is not limited merely to the single defendant's conduct, but instead considers whether the widespread and unrestricted conduct of the sort engaged in by the defendant would adversely impact the potential market or value of the copyright owner's work. *Nimmer on Copyright*, Vol. 4, § 13.05[A][3], pp. 13-198.3 - 13-198.4; *American Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 927 (2d Cir. 1994) (finding no fair use for researchers to copy and distribute internally article from the plaintiff's publication).

<u>Agreement on Guidelines for Classroom Copying in Not-For-Profit Educational Institutions With Respect to Books and Periodicals</u>

In connection with the revisions to the Copyright Act made in 1976, and the enactment of the new statute, an ad hoc committee consisting of representatives of the author-publisher and educational organization constituencies was formed to discuss the issues of fair use of copyrighted works in the classroom by not-for-profit educational institutions. The committee members agreed upon a set of guidelines that it believed should "state the minimum and not the maximum standards of educational fair use." In other words, whether copying that exceeds the stated guidelines should be considered a fair use would be left to the courts.

In a joint letter to House Committee Chairman Kastenmeier, dated March 19, 1976, the representatives of the Ad Hoc Committee of Educational Institutions and Organizations on Copyright Law Revision, and of the Authors League of America, Inc., and the Association of American Publishers, Inc., communicated its agreed upon guidelines, which were reproduced and incorporated in the House Report (H.R. Rep. No. 94-1476).[1] The letter and guidelines are set out immediately below:

---

[1] Excerpts from the House Report are reproduced in Copyright Office Circular 21, "Reproduction of Copyrighted Works by Educators and Librarians," which is attached to this Report as <u>Exhibit 6</u>. I will refer to these guidelines hereafter as the "Classroom Guidelines."

GARRISON 0005

The purpose of the following guidelines is to state the minimum and not the maximum standards of educational fair use under Section 107 of H.R. 2223. The parties agree that the conditions determining the extent of permissible copying for educational purposes may change in the future; that certain types of copying permitted under these guidelines may not be permissible in the future; and conversely that in the future other types of copying not permitted under these guidelines may be permissible under revised guidelines. Moreover, the following statement of guidelines is not intended to limit the types of copying permitted under the standards of fair use under judicial decision and which are stated in Section 107 of the Copyright Revision Bill. There may be instances in which copying which does not fall within the guidelines stated below may nonetheless be permitted under the criteria of fair use.

## Guidelines

### I. Single Copying for Teachers

A single copy may be made of any of the following by or for a teacher at his or her individual request for his or her scholarly research or use in teaching or preparation to teach a class:

    A. A chapter from a book

    B. An article from a periodical or newspaper

    C. A short story, short essay or short poem, whether or not from a collective work

    D. A chart, graph, diagram, drawing, cartoon or picture from a book, periodical, or newspaper

### II. Multiple Copies for Classroom Use

Multiple copies (not to exceed in any event more than one copy per pupil in a course) may be made by or for the teacher giving the course for classroom use or discussion; provided that:

    A. The copying meets the tests of brevity and spontaneity as defined below and,

    B. Meets the cumulative effect test as defined below and,

    C. Each copy includes a notice of copyright

## Definitions

### Brevity

i Poetry: (a) A complete poem if less than 250 words and if printed on not more than two pages or, (b) from a longer poem, an excerpt of not more than 250 words.

ii Prose: (a) Either a complete article, story or essay of less than 2,500 words, or
(b) an excerpt from any prose work of not more than 1,000 words or 10% of the work, whichever is less, but in any event a minimum of 500 words.

6

GARRISON 0006

[Each of the numerical limits stated in "i" and "ii" above may be expanded to permit the completion of an unfinished line of a poem or of an unfinished prose paragraph.]

iii Illustration: One chart, graph, diagram, drawing, cartoon or picture per book or per periodical issue.

iv "Special" works: Certain works in poetry, prose or in "poetic prose" which often combine language with illustrations and which are intended sometimes for children and at other times for a more general audience fall short of 2,500 words in their entirety. Paragraph "ii" above notwithstanding such "special works" may not be reproduced in their entirety; however, an excerpt comprising not more than two of the published pages of such special work and containing not more than ten percent of the words found in the text thereof, may be reproduced.

*Spontaneity*

i The copying is at the instance and inspiration of the individual teacher, and

ii The inspiration and decision to use the work and the moment of its use for maximum teaching effectiveness are so close in time that it would be unreasonable to expect a timely reply to a request for permission.

*Cumulative Effect*

i The copying of the material is for only one course in the school in which the copies are made.

ii Not more than one short poem, article, story, essay or two excerpts may be copied from the same author, nor more than three from the same collective work or periodical volume during one class term.

iii There shall not be more than nine instances of such multiple copying for one course during one class term.

[The limitations stated in "ii" and "iii" above shall not apply to current news periodicals and newspapers and current news sections of other periodicals.]

*III. Prohibitions as to I and II Above*

Notwithstanding any of the above, the following shall be prohibited:

A.  Copying shall not be used to create or to replace or substitute for anthologies, compilations or collective works. Such replacement or substitution may occur whether copies of various works or excerpts therefrom are accumulated or reproduced and used separately.

B.  There shall be no copying of or from works intended to be "consumable" in the course of study or of teaching. These include workbooks, exercises, standardized tests and test booklets and answer sheets and like consumable material.

7

GARRISON 0007

C. Copying shall not:

    a) substitute for the purchase of books, publishers' reprints or periodicals;

    b) be directed by higher authority;

    c) be repeated with respect to the same item by the same teacher from term to term.

D. No charge shall be made to the student beyond the actual cost of the photocopying.

Agreed March 19, 1976.
Ad Hoc Committee on Copyright Law Revision:
By Sheldon Elliott Steinbach.
Author-Publisher Group:
Authors League of America:
By Irwin Karp, Counsel.
Association of American Publishers, Inc.:
By Alexander C. Hoffman,
Chairman, Copyright Committee.

Although the foregoing guidelines are not controlling on the court, they have been referred to and relied upon by courts in fair use cases involving copying for educational institutions. *See Marcus v. Rowley*, 695 F.2d 1171, 1178 (9th Cir. 1983) (a teacher's retyping of substantial portion of another teacher's copyrighted work held not be a fair use even though intended for use in the classroom); *Mich. Doc. Servs., Inc.,* 99 F.3d at 1391; *Basic Books, Inc. v. Kinko's Graphics Corp.,* 758 F. Supp. 1522, 1535 (S.D.N.Y. 1991).

<u>The Rise of Printed Coursebooks and Related Copyright Infringement Cases</u>

Kinko's Copies Corp. was founded in 1970 at location near University of California at Santa Barbara. "By the mid-1970s Kinko's was providing custom publishing materials for colleges, an innovation extremely popular with college professors. The company had 80 stores, averaging 400 square feet in space and located primarily near colleges and universities, by the end of the decade." <u>Kinko's Inc. History,</u> <u>http://www.fundinguniverse.com/company-histories/kinko-s-inc-history/</u> (accessed April 18, 2013)[2]. As Kinko's and other print shops opened up around college campuses, they began copying and printing coursebooks for university professors.

As reported on The Copyright Site, <u>http://www.thecopyrightsite.org/scenarios/coursepacks.html</u>:

In 1982 several publishing companies brought a law suit against NYU, nine faculty members, and a photocopying establishment. The Association of American Publishers which coordinated the law suit on behalf of the publishing companies sought an injunction to keep the professors from copying course

---

[2] A printout of this article is attached as <u>Exhibit 7</u> to the Report.

8

anthologies. The publishers reached an out-of-court settlement with the defendants thus requiring the university to appropriate, promulgate, and invoke more stringent copyright rules.[3]

The news of this settlement led to other publishers seeking to enforce their rights and cases being filed in the courts. At issue in these cases was whether the creation and sale of course packets to students was a fair use for educational purposes. One of the first decisions involved Kinko's. *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1535 (S.D.N.Y. 1991). The court found that Kinko's copying and preparation of course packets for students was not a fair use under the copyright statute. Similar cases followed. *See Princeton Univ. Press v. Mich. Doc. Servs., Inc.,* 99 F.3d 1381, 1385 (6th Cir.1996) (en banc), *cert. denied,* 520 U.S. 1156, 117 S.Ct. 1336, 137 L.Ed.2d 495 (1997); *Blackwell Publ'g Inc. v. Excel Research Group LLC*, 661 F. Supp.2d 786 (E.D. Mich. 2009).

## THE FINANCIAL CONSEQUENCES OF A COPYRIGHT INFRINGEMENT CLAIM

### Copyright Infringement Remedies and Criminal Penalties

The Copyright Act, 17 U.S.C. § 101 et seq., sets forth the civil remedies that are available to a copyright owner whose work has been infringed. These remedies may include injunctive relief, damages and the recovery of attorney's fees. 17 U.S.C. §§ 502-505.

With respect to damages, a copyright owner is always entitled to the actual damages it has suffered as a result of the infringement, plus any additional profits of the infringer that are attributable to the infringement and not taken into account in computing the copyright owner's actual damages. 17 U.S.C. § 504(b). Here, the textbook publishers would have two potential avenues to pursue damages against the District if Dr. Martinez's Course Materials were ultimately judged to infringe. First, if it were determined that students who were given the Course Materials did not purchase the textbook(s) used as the source of infringing content, then the publisher(s) of the textbook would have a claim for lost profits on the sale of the textbook(s). Second, the publisher(s) might make an infringer's claim for all or a portion of the course tuition paid by the students to the District with respect to the particular math class.

As an alternative to pursuing actual damages, the owner of a registered copyright may instead pursue statutory damages for the infringement.[4] 17 U.S.C. § 504(c). Under this section, a copyright owner does not have to prove any actual damages from the infringement. Instead, the owner may ask the court to award statutory damages in an amount of $750 to $30,000 per work for non-willful infringement. If the infringement is determined to be willful, then the court may award up to $150,000 per work. The copyright owner may elect this remedy at any time before a final judgment is entered. *Id.* Here, there are at least 3 textbooks at issue. If, upon becoming aware of a potential infringement issue, the District had failed to take steps to prevent

---

[3] Copyright Scenarios, http://www.thecopyrightsite.org/scenarios/coursepacks.html, accessed April 18. 2013. A printout of this article is attached as Exhibit 8 to this Report.
[4] I searched the U.S. Copyright Office records and confirmed that each of the textbooks referred to in this report is the subject of a registered copyright. Accordingly both statutory damages and attorney's fees would be available to the publishers if they successfully proved copyright infringement at trial.

GARRISON 0009

copyright infringement, and a judge or jury were to determine that each of these textbooks were willfully infringed by Dr. Martinez, then the total statutory damages award could be as high as $450,000.

Finally, a prevailing copyright owner is entitled to an award of its costs and reasonable attorney's fees incurred in litigating the matter. 17 U.S.C. § 505. In deciding whether to award fees, the district court should consider the degree of success obtained; frivolousness; motivation; objective unreasonableness (both in the factual and legal arguments in the case); and the need in particular circumstances to advance considerations of compensation and deterrence. *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 535 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (listing factors to be considered for awarding attorney's fees in copyright actions). Any award of fees is within the trial court's discretion. *Id.* at 534.

As discussed in the section immediately following, the average cost of litigation a copyright case ranges from several hundred thousand to over a million dollars. *See also Unicom Systems, Inc. v. Farmers Group, Inc.,* 405 Fed. Appx. 152 (9ᵗʰ Cir. 2010) (affirming fee award of over $1.5 million); *Range Road Music, Inc. v. East Coast Foods, Inc.,* 668 F.3d 1148 (9ᵗʰ Cir. 2012) (affirming fee award of $162,728.22).

In addition, 17 U.S.C. § 506 provides that willful infringement of a copyright may in certain circumstances result in criminal penalties, including imprisonment and fines under 18 U.S.C. § 2319.

<u>Copyright Infringement Litigation Expense</u>

It is very expensive to defend copyright infringement claims. Just one case would likely cost the District hundreds of thousands, if not millions, of dollars to defend. The American Intellectual Property Law Association (AIPLA) publishes a bi-annual economic survey entitled, "Report of the Economic Survey," in which it reports on a variety of economic issues pertaining to the acquisition and enforcement of intellectual property rights. This Report includes information on the cost of intellectual property litigation. According to the most recent edition of the AIPLA Report, the average copyright case filed in Arizona, in which there is less than $1 million in damages at issue, would cost a party $344,000 to take through trial. When there is between $1 million and $25 million at stake, the average cost of a lawsuit rises to $1,064,000.[5]

Accordingly, even in cases where the District has a legitimate defense to the claim, the economic consequences of being sued are immense. As discussed above, if the District did not prevail, and a judgment was entered against it, the consequences would be even more severe. Not only would the District be forced to pay its own attorneys and whatever damages might be awarded to the plaintiff, but it could also be ordered to pay the plaintiff's attorney's fees.

In light of both the substantial monetary awards and fines that could be imposed in a copyright infringement case, as well as the sheer cost to defend an infringement action, the potential financial consequences to the District in a copyright infringement case are huge.

---

[5] AIPLA, *2011 Report of the Economic Survey*, pp. I-163 and I-164. Relevant excerpts from the AIPLA Report are attached as <u>Exhibit 9</u> to this Report.

10

Accordingly, it becomes important for the District to act proactively, whenever reasonably possible, to avoid such claims.

## RESULTS OF COURSE MATERIALS REVIEW

For purposes of this Report, I have reviewed the following entitled packets:

- MAT 182 Precalculus Trigonometery Section Lecture Notes Fall 2009 (Exhibit 1)
- MAT 182 Trigonometry Spring 2010 (Exhibit 2)
- MAT 082 Chapters for Basic Arithmetic Spring 2010 (Exhibit 3)
- MAT 187 Precalculus Algebra Section Lecture Notes Fall 2010 (Exhibit 4)

My review of the Course Materials indicates that at least significant portions of three of these Course Materials were copied directly from other sources, including *Basic Mathematics* by Charles P. McKeague (published by Cengage Education); *Prealgebra* by Alan R. Tussy and R. David Gustafson (published by Thomson Learning, Inc.); and *Precalculus* by Michael Sullivan and Michael Sullivan, III (published by Pearson Education, Inc.).

None of the Course Materials includes any attribution to these or any other source texts, which indicates that Dr. Martinez is portraying these works as her own independent creations. In the MAT 187 notes documents, Dr. Martinez does generically thank a list of individuals for their inspiration, ideas, comments and suggestions. However, none of these is the publisher of any textbooks.

### Documentation of Permission to Use Problems and Examples from Textbooks

I have reviewed several documents consisting of what I understand to be communications between Dr. Martinez and representatives Pearson Education, Inc. - the publisher of the Sullivan textbook - concerning her request to use content from the Sullivan textbook in her course materials and tests. Specifically, these documents are identified as Bates Numbers EEOC 000136 - EEOC 00143. These communications occurred between April and October of 2010 and will be referred to collectively in this report as the "Permissions Documentation":

- April 13, 2010 Fax (EEOC 000136-000137)
- May 13, 2010 Fax ( EEOC 000138-000139)
- August 23, 2010 email from Dr. Martinez to Estelle Simpson (EEOC 000140)
- October 8, 2010 email from Estelle Simpson to Dr. Martinez (EEOC 000141)
- Series of October 2010 emails between Dr. Martinez and Ms. Simpson (EEOC 000142-000143)

*(1) The April 13, 2010 Fax*

The April 13, 2010 fax provides permission from Pearson for Dr. Martinez to make up to 35 copies of selected Homework problems from Chapters 5-7 (pp. 371-563) of the work *Precalclus: Concepts Through Functions, A Right Triangle Approach* (2007 ed.) for the class MAT187 Precalculus beginning in the Fall of 2010 at Phoenix College. This permission is granted free of charge on the understanding that the textbook would be used and purchased by

11

GARRISON 0011

students in the class. The permission is also contingent upon Dr. Martinez using the following acknowledgment on the authorized copies:

> "Sullivan, PRECALCULUS: CONCEPTS THROUGH FUNCTIONS, A RIGHT TRIANGLE APPR, © 2007. Reprinted by permission of Pearson Education, Inc."

*(2) The May 13, 2010 Fax*

The May 13, 2010 fax provides permission from Pearson for Dr. Martinez to make up to 50 copies of  selected Homework problems from Chapters 6-9 of the *Precalclus: Concepts Through Functions, A Right Triangle Approach* (2011 ed.) for the class MAT187 Precalculus beginning in the Fall of 2010 at Phoenix College. This permission is granted free of charge on the understanding that the textbook would be used and purchased by students in the class. The permission is also contingent upon Dr. Martinez using the following acknowledgment on the authorized copies:

> "Sullivan, PRECALCULUS: CONCEPTS THROUGH FUNCTIONS, A RIGHT TRIANGLE APPR, © 2011. Reprinted by permission of Pearson Education, Inc."

*(3) The August 23, 2010 email*

The August 23, 2010 email correspondence addresses whether Dr. Martinez needs permission from Pearson to create and use in her lecture notes her own examples and problems that are "similar to the selected examples" contained in the Sullivan textbook. The Pearson representative advises that she does not need such permission.   This makes perfect sense because, as described in the e-mail, Dr. Martinez would be creating her own examples, i.e. an independent creation.

*(4)  The October 8, 2010 email*

The October 8, 2010 email correspondence addresses whether Dr. Martinez may incorporate actual examples from the Sullivan textbook in her class lecture notes distributed to the students. The Pearson representative advises that she may do so only if the textbook is being used for the class and purchased by the students in the class. This e-mail exchange can be viewed as a follow-on to the April 13 and May 13 faxes discussed above.

*(5) The series of additional October 2010 emails*

The series of emails from October 13 to October 19, 2010 concerns whether Dr. Martinez may use problems from two different textbooks - the Sullivan *Precalculus* textbook and the Briggs/Cochran *Calculus* textbook - in the tests she gives to her students. Again, the Pearson representative advises that she may do so only if the textbooks are being used for the class and purchased by the students in the class.

GARRISON 0012

These emails apply only to exams and tests and not to any course packets or lecture notes. Accordingly, they are not pertinent to my analysis here, except as evidence that the textbook publishers are diligent and specific with respect to the manner in which they authorize use of excerpts of textbooks for in class usage.

The Permissions Documentation is attached collectively as <u>Exhibit 10</u> to this Report.

## **Analysis of Course Materials**

Presented below are charts detailing discrepancies in the text of the Course Materials and instances where I discovered content of the Course Materials to be substantially similar or identical to the content in other textbook sources.

### Precalculus Trigonometery Section Fall 2009 (MAT 182)

Although the cover page states "Fall 2009," the heading on the internal pages shows Spring 2010, which suggests that these lecture notes were used in consecutive semesters. These lecture notes were intentionally and systematically copied from the Sullivan book *Precalculus, Concepts Through Functions,* Instructor's Edition. It is my understanding, however, that this textbook was not used in the Spring 2010 MAT182 class. Indeed, Dr. Martinez has acknowledged in writing that one of the reasons she created these kinds of materials for her students was because "many of my students cannot afford to buy a math textbook."[6]

| COURSE MATERIALS PAGE/QUESTION # | DISCREPANCY OR TEXT | SOURCE INFORMATION |
|---|---|---|
| Page 6 of 73 Section 1.2 | Problems in Section 1.2 copied directly from source text | *Precalculus*, Sullivan, p. 371-372 |
| Page 8 of 73 | Example for Area of a Sector is copied from source text | *Precalculus*, Sullivan, p. 369 (Example 7) |
| Page 10 of 73 Section 1.3 | Arc length problems are copied directly from source text | *Precalculus*, Sullivan, p. 372 |
| Page 14 of 73 Section 1.4 | Right Triangle homework problems are copied directly from source text | *Precalculus*, Sullivan, p. 383-384 |
| Page 16 of 73 | Example 6 copied from source text; no examples 1-5 appear in this section of the course materials | *Precalculus*, Sullivan, p. 382 |
| Page 17 of 73 Section 1.5 | Pythagorean Identity problems are copied from source text | *Precalculus*, Sullivan, p. 384 |
| Page 20 of 73 - Page 21 of 73 | Examples 1 -5 are identical to source text | *Precalculus*, Sullivan, p. 387-390 |
| Page 22 of 73 Section 1.6 | Problems (including introductory text) copied from source text; "Projectile Motion" section (including the image) is copied verbatim from source text | *Precalculus*, Sullivan, p. 393-394 |
| Page 23 of 73 | Examples 1 and 2 copied substantially from source text; includes some verbatim copying | *Precalculus*, Sullivan, p. 398-399 |
| Page 24 of 73 | Examples 3 and 4 copied substantially from source text; includes some verbatim copying | *Precalculus*, Sullivan, p. 400-402 |
| Page 25 of 73 | Examples 5-7 copied substantially from source text; includes some verbatim copying | *Precalculus*, Sullivan, p. 402-404 |

---

[6] A copy of Dr. Martinez's email is attached as <u>Exhibit 11</u>.

13

GARRISON 0013

| Course Materials Page/Question # | Discrepancy or Text | Source Information |
|---|---|---|
| Page 26 of 73 Section 1.7 | Problems are copied directly from source text | *Precalculus*, Sullivan, p. 406-407 |
| Page 29 of 73 Section 1.8 | Circle Trig homework problems copied directly from source text | *Precalculus*, Sullivan, p. 416 |
| Page 34 of 73 Section 1.9 | Graphs & Transformations problems copied directly from source text | *Precalculus*, Sullivan, p. 429-430 |
| Page 35 of 73 | Tables are copied from Table 9 and Figure 93 of source text | *Precalculus*, Sullivan, p. 433 |
| Page 37 of 73 Section 1.10 | Graphing the Tangent problems copied directly from source text | *Precalculus*, Sullivan, p. 437-438 |
| Page 44 of 73 Section 1.11 | Inverse Sine problems are copied directly from source text | *Precalculus*, Sullivan, p. 469-470 |
| Page 47 of 73 Section 1.12 | Values of Inverse Trig Functions Homework problems copied directly from source text | *Precalculus*, Sullivan, p. 476-477 |
| Page 51 of 73 Section 1.13 | Trigonmetric Identities Homework problems copied directly from source text | *Precalculus*, Sullivan, p. 483 |
| Page 57 of 73 - Page 58 of 73 Section 1.14 | Sum and Difference Formulas Homework problems copied directly from source text | *Precalculus*, Sullivan, p. 492-493 |
| Page 61 of 73 - Page 62 of 73 Section 1.15 | Double-angle problems copied directly from source text | *Precalculus*, Sullivan, p. 501-502 |
| Page 65 of 73 - Page 66 of 73 Section 1.16 | Solving Trig Equations problems copied directly from source text | *Precalculus*, Sullivan, p. 510-511 and 518-519 |
| Page 67 Section 1.17 | Applications Involving Right Triangle problems copied directly from source text | *Precalculus*, Sullivan, p. 531 |
| Page 71 of 73 - Page 72 of 73 Section 1.18 | Law of Sines homework problems copied directly from source text | *Precalculus*, Sullivan, p. 539-540 |
| Page 73 of 73 - Page 74 of 74 Section 1.19 | Law of Cosines homework problems copied directly from source text | *Precalculus*, Sullivan, p. 547 |

First, in light of the substantial copying evidence above, I conclude that these lecture notes are not the original creation of Dr. Martinez. At best, they constitute a derivative work that would likely require permission from the copyright owner of the original work (Pearson Education, Inc.)

For several reasons, none of the Permissions Documentation appears to be applicable to this document. First, the Permissions Documentation states that the permission requested and authorized is to begin in the Fall of 2010. These lecture notes state Fall of 2009 and Spring of 2010, which pre-dates the effective permission date. Second, the Permissions Documentation (EEOC 000136-000139) applies only to the MAT187 - Precalculus class, not MAT182. Third, these lecture notes do not contain the acknowledgment required by the Permissions Documentation. Finally, I understand from Mr.. Joseph Sueyoshi (Phoenix College Math Department Chair) that Dr. Martinez did not use the Sullivan *Precalculus* textbook in her Spring 2010 MAT182 class. I have not been provided with any other documentation indicating that Dr. Martinez received permission to copy from the Sullivan *Precalculus* textbook for her Fall 2009

14

or Spring 2010 MAT182 class. Accordingly, I conclude that if the District had not taken steps to prevent the copying and use of these materials by Dr. Martinez, her use and distribution of them would subject the District to a serious risk of a copyright infringement claim by Pearson Education, Inc.

With respect to the four statutory fair use factors, these lecture notes do not appear to be transformative in any significant way; they merely copy examples from the textbook. The notes have the potential to serve as a replacement for the textbook in the event that students were not required to purchase the textbook for the class. An arguably substantial portion, both quantitative and qualitative, of the textbook has been copied. All three of these factors weigh against a finding of fair use. The only factor that clearly falls in favor of fair use is the nature of the copyrighted work itself.

In addition, these excerpts do not meet the "Classroom Guidelines" for fair use in the House Report. First, the copying does not meet the brevity, spontaneity or cumulative effect limitations in the Classroom Guidelines. Second, the lecture notes do not contain any copyright notices as mandated in Section IIC of the Classroom Guidelines. To the extent the textbook was not used and purchased by students in the class, these lecture notes would not comply with Prohibition IIIC(a). To the extent these notes are intended to be re-used in subsequent semesters, they would not comply with Prohibition IIIC(c).

Because I have been provided no documentation indicating that this copying has been authorized by Pearson Education, Inc., I conclude that if the District had not taken steps to prevent the copying and use of these materials by Dr. Martinez, her use and distribution of them would subject the District to a serious risk of a copyright infringement claim by Pearson Education, Inc.

<u>MAT 182 Trigonometry Spring 2010</u>

This second set of materials reviewed consist of 50 pages with the heading MAT182 Trigonometry Spring 2010. The first 24 pages of this document are numbered "Page 1 of 24" to "Page 24 of 24"; the 25th page is numbered "Page 25 of 50," and that pagination header continues to the end of the document (Page 50 of 50).

These materials do not contain homework problems but appear to be handouts with examples to be used for taking class notes. I understand this document was obtained from a student in Dr. Martinez's Spring 2010 MAT 182 class. It includes what appear to be handwritten notes on various pages of the document. A review of these materials show that the incorporated examples were also copied from the Sullivan *Precalculus* textbook.

| COURSE MATERIALS PAGE/QUESTION # | DISCREPANCY OR TEXT | SOURCE INFORMATION |
|---|---|---|
| Page 1 of 24 | Trig Functions of General Angles taken from the source text | *Precalculus*, Sullivan, p. 398 (Examples 1 and 2) |
| Page 5 of 24 | Domain & Range Trig Functions | *Precalculus*, Sullivan, p. 413-414 (Example 2) |
| Page 6 of 24 | Using even and odd properties | *Precalculus*, Sullivan, p. 414-415 (Example 3) |

15

| COURSE MATERIALS PAGE/QUESTION # | DISCREPANCY OR TEXT | SOURCE INFORMATION |
|---|---|---|
| Page 9 of 24 | Examples for graphing sine and cosine identical to source text | *Precalculus*, Sullivan, p. 419 (Example 1) and 421 (Example 3) |
| Page 10 of 24 | y=2cos x text and graph tracks source text | *Precalculus*, Sullivan, p. 422-423 |
| Page 11 of 24 | Examples for amplitude identical to source text | *Precalculus*, Sullivan, p. 425 (Example 6) and p. 426 (Example 7) |
| Page 12 of 24 | Substantially copied from Table 9 and Figure 93 in source text | *Precalculus*, Sullivan, p. 433 |
| Page 13 of 24 | Bottom graphs (y = cot x) appears to be a direct copy from the text | *Precalculus*, Sullivan, p. 436 |
| Page 14 of 24 | Top graph (y= csc x) appears to be a direct copy from the text | *Precalculus*, Sullivan, p. 436 |
| Page 15 of 24 - Page 17 of 24 | Copies examples directly from textbook | *Precalculus*, Sullivan, p. 461-469 (Examples 1-9) |
| Page 21of 24 - Page 22 of 24 | Copies examples directly from textbook | *Precalculus*, Sullivan, p. 472-475 (Examples 1, 2, 4,6) |
| Page 25 of 50 - Page 26 of 50 | Copies Trig Identities examples from textbook and merely changes the order of appearance | *Precalculus*, Sullivan, p. 479 (Example 1) |
| Page 27 of 50 - Page 28 of 50 | Copies "More examples" directly from textbook; summarizes "Guidelines for Establishing Identities" from box in textbook | *Precalculus*, Sullivan, p. 479-482 (Examples 2-8) |
| Page 31 of 50 - Page 32 of 50 | Copies examples directly from textbook | *Precalculus*, Sullivan, p. 488-490 (Examples 4-8) |
| Page 39 of 50 - Page 40 of 50 | Copies problem examples directly from textbook | *Precalculus*, Sullivan, p. 507-508 (Examples 1-4) and 514 (Example 1) |
| Page 41 of 50 | Copies problem examples directly from textbook | *Precalculus*, Sullivan, p. 414-515 (Examples 2-4) |
| Page 42 of 50 | Copies problem examples directly from textbook | *Precalculus*, Sullivan, p. 528 (Examples 1 and 2) |
| Page 43 of 50 | Word problem is an identical copy to Example 3 in textbook | *Precalculus*, Sullivan, p. 529 (Example 3) |
| Page 44 of 50 | Law of Sines text and images are identical to textbook | *Precalculus*, Sullivan, p. 533 |
| Page 45 of 50 | "Solve the oblique triangle" text is virtually verbatim | *Precalculus*, Sullivan, p. 533 |
| Page 46 of 50 - Page 48 of 50 | Law of Sines problem examples copied directly from textbook | *Precalculus*, Sullivan, p. 534-537 (Examples 1-5) |
| Page 49 of 50 - Page 50 of 50 | Law of Cosines problem examples are copied directly from textbook | *Precalculus*, Sullivan, p. 545 (Examples 1 and 2) |

For the very same reasons as stated above with respect to the "Precalculus Trigonometery Section Fall 2009 (MAT 182)" lecture notes, the Permissions Documentation sought by Dr. Martinez do not appear to be applicable to these lecture notes.

With respect to the four statutory fair use factors, these lecture notes do not appear to be transformative in any significant way; they merely copy examples from the textbook. The notes have the potential to serve as a replacement for the textbook in the event that students were not required to purchase the textbook for the class. An arguably substantial portion, both quantitative and qualitative, of the textbook has been copied. All three of these factors weigh against a finding of fair use. The only factor that clearly falls in favor of fair use is the nature of the copyrighted work itself.

16

In addition, these excerpts do not meet the "Classroom Guidelines" for fair use in the House Report. First, the copying does not meet the brevity, spontaneity or cumulative effect limitations in the Classroom Guidelines. Second, the lecture notes do not contain any copyright notices as mandated in Section IIC of the Classroom Guidelines. To the extent the textbook is not used and purchased by students in the class, these lecture notes would not comply with Prohibition IIIC(a). To the extent these notes are intended to be re-used in subsequent classes, they would not comply with Prohibition IIIC(c).

Although basic formulas and/or symbols do not contain sufficient creativity to be copyrightable, the copying here is enough to create a significant risk that the compilation of the various formulae and examples used have been copied directly from the Sullivan textbook and are not the original work of Dr. Martinez. Because I have been provided no documentation indicating that this copying has been authorized by Pearson Education, Inc., I conclude that if the District had not taken steps to prevent the copying and use of these materials by Dr. Martinez, her use and distribution of them would subject the District to a serious risk of a copyright infringement claim by Pearson Education, Inc.

## Basic Arithmetic (MAT082)

| Course Materials Page/Question # | Discrepancy or Text | Source Information |
|---|---|---|
| Page 29 of 105; Page 30 of 105 | Discrepancy: For the median and mode examples, the term "Juanita's Card Shop" is used. But, for the mean example, "Sarah's Card Shop" is used. In light of the evidence of other substantial copying, this is suggestive of copying a series of problems related to "Sarah's Card Shop" and changing "Sarah" to "Juanita" in some of the problems | N/A |
| Page 49 of 105, Nos. 1-24 | Copies problems verbatim from textbook | *Basic Mathematics*[7] Charles P. McKeague p. 283 |
| Page 49 of 105, Nos. 27 and 28 | Problem No. 27, corresponds with Chapter 4.1, Problem No. 36 Identical image:  Identical text: <br>• "the diagram below, AC represents the length of the line segment that starts at A and ends at C" <br>• "we see that AC = 8" <br>• "a.  Find the ratio of BC to AC" <br>• "b.  What is the length AE?" <br>• "c.  Find the ratio of DE to AE." <br><br>Problem No. 28, corresponds with Chapter 4.1, Problem No. 33 These questions are nearly identical, the Course Materials replace "rent" with "house | *Basic Mathematics* Charles P. McKeague p. 285 |

---

[7] These references were found through Internet searches, and screenshots from pages of the textbook are attached hereto as Exhibit 12.

17

| COURSE MATERIALS PAGE/QUESTION # | DISCREPANCY OR TEXT | SOURCE INFORMATION |
|---|---|---|
| | payment", and change the dollar amount of the house payment/rent. The Course Materials use a different graph. The problems are approximately 80% identical, the problem in the Course Materials appears immediately after the problem above and both problems appear in the same section of the outside source. Thus, we conclude there is a strong likelihood this problem was copied. | |
| Page 50 of 105, Nos. 29-32 | Problem No. 29, corresponds with Chapter 4.2, Problem No.1<br>Identical text except Course Materials add "Draw a picture demonstrating this" after the identical text.<br>"A car travels 220 miles in 4 hours. What's the rate of the car in miles per hour?"<br><br>Problem No. 30, corresponds with Chapter 4.2, Problem No.2<br>Identical text except Course Materials add "Draw a picture demonstrating this" after the identical text.<br>"A train travels 360 miles in 5 hours. What's the rate of the train in miles per hour?"<br><br>Problem No. 31, corresponds with Chapter 4.2, Problem No. 5<br>Identical text except Course Materials add "Draw a picture demonstrating this" after the identical text.<br>"The flow of water from a water faucet can fill a 3-gallon container in 15 seconds. Give the ratio of gallons to seconds as a rate in gallons per second."<br><br>Problem No. 32, corresponds with Chapter 4.2, Problem No. 9<br>Identical text<br>"A car travels 95 miles on 5 gallons of gas. Give the ratio of miles to gallons as a rate in miles per gallon." | *Basic Mathematics*<br>Charles P. McKeague<br>p. 289 |
| Page 60 of 105, Nos. 5 and 6 | Problem No. 5, corresponds with Chapter 5, Problem No. 66<br>Identical text except for omission of "by a stake" in Course Materials<br>"A wire from the top of a 24-foot pole is fastened to the ground by a stake 10 feet from the bottom of the pole. How long is the wire?"<br><br>Problem No. 6, corresponds with Chapter 5, Problem No. 65<br>Identical text<br>"A ladder is leaning against the top of a 15-foot wall. If the bottom of the ladder is 20 feet from the wall, how long is the ladder?" | *Prealgebra*<br>Alan R. Tussy<br>R. David Gustafson<br>p. 420 |
| Page 74 of 105, Nos. 1, 11 and 14-16 | Problem No. 1, corresponds with Chapter 9, Figure 9-8<br>Identical text<br>"How many cubic feet of water are needed to fill a spherical water tank with a radius of 15 feet"<br><br>Problem No. 11, corresponds with Chapter 9, Problem No. 50<br>Identical text<br>"A classroom is 40 feet long, 30 feet wide, and 9 feet high. Find the number of cubic feet of air in the room."<br><br>Problem No. 14, corresponds with Chapter 9, Problem No. 52<br>Identical text except Course Materials replace "advertised in a J.C. Penny catalog" with "in New Mexico"<br>"The largest refrigerator advertised in a J.C. Penny catalog has a capacity of 25.2 cubic feet. How many cubic inches is this?"<br><br>Problem No. 15, corresponds with Chapter 9, Problem No. 55<br>Identical text<br>"The lifting power of a spherical balloon depends on its volume. How many cubic feet of gas will a balloon hold if it is 40 feet in diameter?"<br><br>Problem No. 16, corresponds with Chapter 9, Problem No. 56<br>Identical text<br>"A box of cereal measures 3 by 8 by 10 inches. The manufacturer plans to market a smaller | *Prealgebra*<br>Alan R. Tussy<br>R. David Gustafson<br>p. 615 (No. 1)<br>p. 620 (Nos. 11, 14-16) |

GARRISON 0018

| COURSE MATERIALS PAGE/QUESTION # | DISCREPANCY OR TEXT | SOURCE INFORMATION |
|---|---|---|
| | box that measures 2.5 by 7 by 8 inches.  By how much will the volume be reduced?" | |

For the very same reasons as stated above with respect to the "Precalculus Trigonometery Section Fall 2009 (MAT 182)" and "MAT182 Trigonometry Spring 2010" lecture notes, the Permissions Documentation sought by Dr. Martinez do not appear to be applicable to this set of course materials.

With respect to the four statutory fair use factors, these lecture notes do not appear to be transformative in any significant way; they merely copy examples from the textbook.  The notes have the potential to serve as a replacement for one or both textbooks in the event that students were not required to purchase both textbooks for the class.  An arguably substantial portion, both quantitative and qualitative, of the textbook has been copied.  All three of these factors weigh against a finding of fair use.  The only factor that clearly falls in favor of fair use is the nature of the copyrighted work itself.

In addition, these excerpts do not meet the "Classroom Guidelines" for fair use in the House Report.  First, the copying does not meet the brevity, spontaneity or cumulative effect limitations in the Classroom Guidelines.  Second, the lecture notes do not contain any copyright notices as mandated in Section IIC of the Classroom Guidelines.  To the extent the textbooks are not used and purchased by students in the class, these lecture notes would not comply with Prohibition IIIC(a).  To the extent these notes are intended to be re-used in subsequent classes, they would not comply with Prohibition IIIC(c).

In light of the substantial amount of verbatim copying contained in this set of materials, I conclude that this document is not the original work of Dr. Martinez.  Because I have been provided no documentation indicating that this copying was authorized by the publishers (Cengage Learning and Thomson Learning, Inc.), I likewise conclude that if the District had not taken steps to prevent the copying and use of these materials by Dr. Martinez, her use and distribution of them would subject the District to a serious risk of a copyright infringement claim by Cengage Learning and/or Thomson Learning, Inc.

<u>Precalculus Algebra Section Lecture Notes Fall 2010 (MAT 187)</u>

This document was provided in Adobe PDF format that appears to have been created from a Word document.  Although the cover pages indicates that these materials were created for use in the "Fall 2010" MAT187 course, the internal pages indicate "Spring 2010" in the header.  This suggests that the content may have been utilized prior to the Fall of 2010.  Due to the lack of any word problems in this work, and our limited access to potential source works, I have not determined whether this particular work is a work of independent creation by Dr. Martinez, whether she copied the problems from the Sullivan *Precalculus* textbook pursuant to the Permissions Documentation, or if she copied problems and equations from other works as is clearly the case in the other materials.  I do note some irregularities within this document that are suspicious and suggest that at least some of the content in these lecture notes were copied from another source:

19

GARRISON 0019

| COURSE MATERIALS PAGE/QUESTION # | DISCREPANCY OR TEXT | SOURCE INFORMATION |
|---|---|---|
| p. 21 | In Homework for Symmetry, the introductory text states "In problems 29-37...." but the problems immediately following the intro paragraph are numbered 1-5, which suggests that these problems were copied from another source and simply renumbered. | N/A |
| p. 22 | Graphs in problems 6-28 are not presented in a consistent appearance | N/A |

I cannot state definitively at this time whether this particular work was created independently, nor is there sufficient evidence in the work itself for me to form an opinion that it was copied from other sources without permission. I understand that Dr. Martinez contends that she independently re-wrote these lecture notes over the summer of 2010. However, in light of the discrepancy found on page 21 and the history of copying evident in the other Course Materials, there is still reason for the District to be concerned.

Moreover, to the extent Dr. Martinez copied any of this content from the Sullivan *Precalculus* textbook, these lecture notes do not comply with the Permissions Documentation. Specifically, this document does not contain the required acknowledgment:

"Sullivan, PRECALCULUS: CONCEPTS THROUGH FUNCTIONS, A RIGHT TRIANGLE APPR, © 2011. Reprinted by permission of Pearson Education, Inc."

It is unknown whether any content may have copied from Chapters not covered by the Permissions Documentation or how many copies of these lecture notes were made. In any event, if these lecture notes were indeed used and distributed in Dr. Martinez's MAT187 Fall 2010 class, and were copied from the Sullivan *Precalculus* textbook, her failure to include the required acknowledgment would subject the District to a potential copyright infringement claim by Pearson Education, Inc. based on these lecture notes.

Finally, to the extent Dr. Martinez copied any of this content from the Sullivan *Precalculus* textbook or other textbooks, these excerpts do not meet the "Classroom Guidelines" for fair use in the House Report. First, the copying does not meet the brevity, spontaneity or cumulative effect limitations in the Classroom Guidelines. Second, the lecture notes do not contain any copyright notices as mandated in Section IIC of the Classroom Guidelines. To the extent the textbook is not used and purchased by students in the class, these lecture notes would not comply with Prohibition IIIC(a). To the extent these notes are intended to be re-used in subsequent classes, they would not comply with Prohibition IIIC(c).

GARRISON 0020

## CONCLUSION

For all the foregoing reasons, it was necessary and appropriate that the District took proactive measures, including imposing restrictions on copying, to prevent one of its professors from subjecting the District to a claim of copyright infringement by one or more textbook publishers.

## STATEMENT OF COMPENSATION

With regard to my work in connection with the preparation of this Report and any testimony to be given in this case, I am charging the District $500 per hour, plus reimbursement of out of pocket expenses.

April 19, 2013

21

GARRISON 0021

## APPENDIX A

### Witness Qualifications

Mr. Garrison is a partner in the law firm of Lewis and Roca LLP and former chair of its Intellectual Property practice group.  Mr. Garrison has practiced in the area of intellectual property, including various copyright law matters, for 21 years.  He counsels clients in copyright authorship and fair use matters and has represented educational institutions, including school districts, colleges and universities in a variety of intellectual property matters.

Mr. Garrison is listed in the 2007-2013 editions of *The Best Lawyers in America*, by Woodward/White, Aiken, S.C in the category of Intellectual Property Law and in the 2012-2013 editions for Copyright Law, Patent Litigation, Trademark Law and Technology Law.  Mr. Garrison has been named *Best Lawyers* Lawyer of the Year in 2013 for Copyright Law in Phoenix.

Publications Authored in Last 10 Years:  None.

Deposition and Trial Testimony in Last 4 Years: None.

Attached hereto is Mr. Garrison's CV.

EXHIBIT 43

February 21, 2015

Governing Board President Tracy Livingston          Governing Board Member Doyle Burk
Governing Board Secretary Johanna Haver            Governing Board Member John Heep
Governing Board Member Alfredo Gutierrez           Governing Board Member Jean McGrath
Governing Board Member Danna F. Saar

Office of the Governing Board
Maricopa Community Colleges
2411 West 14th Street
Tempe, Arizona 85281-6941

**RE: Employee Grievances**

Dear President Livingston and Honorable Governing Board Members,

The purpose of this letter is to request MCCCD follow the grievance policy process and to
inquire as to why the grievance that I filed on May 3, 2010, pursuant to Section 6.1 of the
Residential Faculty Policies (RFP), against Mathematics Chair, Joe Sueyoshi, which I hand-
delivered was not given to the Governing Board. There is no dispute about this issue because a
member on the governing board told me the Board never received my grievance. In addition, I
was told by a secretary since thirty (30) days had passed without response from the Governing
Board, the decision of the Chancellor is final and I could not appeal further as it was untimely. I
believe that someone in their official and/or individual capacity intentionally prevented my
grievance from getting to the Governing Board for a final decision.

On August 13, 2014, I filed another timely formal grievance pursuant to Section 6.1 of the RFP. I
was told that I could not meet with my immediate supervisor to see if the grievance could be
resolved. In addition, I was told by Human Resources that I could not file a grievance until I
return to work after being suspended for fifteen (15) months without pay. I was told that I would
be allowed to return to work in August 2015. The grievance that I filed on August 13, 2014, has
not been processed. Therefore, what has occurred regarding the two grievances that I filed,
including how they were handled is in violation of the RFP.

The purpose of the RFP is to provide a clear, orderly, efficient, and expedient process through
which all employees of the college district may process bona fide complaints or grievances.
Employees using the grievance procedures outlined in Section 6.1 of the RFP shall be entitled
to do so without fear of retaliation, interference, coercion or discrimination.

I am requesting within ten (10) days of receipt of this letter a written response why my
grievances were not processed pursuant to Section 6.1 of the RFP.

Sincerely,

*Cleopatria Martinez*

Cleopatria Martinez, PhD                    7030 N. 21st St.,  Phoenix, Arizona  85020
                                            Email: 4cleopatria@gmail.com
cc:  NAACP President Don Harris, Esq.       Cell:    480-888-6375