Pavneet Singh Uppal, SBN 016805
Shayna H. Balch, SBN 024852
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
Telephone: (602) 281-3400
Fax: (602) 281-3401
puppal@fisherphillips.com
sbalch@fisherphillips.com

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Cleopatria Martinez,<br><br>               Plaintiff,<br><br>    v.<br><br>Maricopa County Community College District; et al.,<br><br>               Defendants. | No. CV 15-01759-PHX-NVW<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Oral Argument Requested) |

Pending before the Court are Defendants' Motion For Summary Judgment at Docs. 69 and 70 and Plaintiff's cross Motion For Summary Judgment at Doc. 71. For the reasons set forth herein and in Defendants' Motion For Summary Judgment, which is incorporated by reference, Defendants, not Plaintiff, are entitled to summary judgment as matter of law.

**I.     INTRODUCTION**

Plaintiff Cleopatria Martinez ("Plaintiff or Martinez") is a Residential Faculty Member employed as a math instructor by Maricopa County Community College District ("MCCCD") at Phoenix College. [DSOF ¶5. In 2010 Defendants learned that Plaintiff was exposing MCCCD to a substantial risk of copyright infringement. [DSOF ¶¶6-10]. In response to this threat, MCCCD imposed restriction on Plaintiff's ability to copy course materials in order to safeguard against potential copyright infringement claims. [DSOF ¶¶11-14]. Unhappy with these restrictions, Plaintiff refused to comply and repeatedly circumvented the restrictions. [DSOF ¶¶12-15]. Most notably, in the fall of 2012, Plaintiff made copies of course materials at an off-campus store and sold them directly to her

students.  [DSOF ¶15].  After being notified of Plaintiff's behavior by one of her students, MCCCD concluded that Plaintiff had intentionally violated MCCCD's cash handling policies set forth in MCCCD's Residential Faculty Policy Manual ("RFP Manual"). [DSOF ¶¶16-17].

Specifically, the cash handling policy prohibits unauthorized faculty members from receiving compensation for the sale of instructional materials to students.  [DSOF ¶16]. Accordingly, MCCCD instructed Plaintiff to immediately issue refunds to the students to whom she had sold her unauthorized instructional materials. [DSOF ¶17].  Despite repeated reminders, Plaintiff obstinately refused to issue the refunds.  [DSOF ¶17].  As a result, disciplinary proceedings were commenced against Plaintiff.  [DSOF ¶¶18-20].  After a full day evidentiary hearing at which Plaintiff was represented by counsel, the Hearing Committee ruled that Plaintiff had engaged in "willful insubordination" and "willfully and intentionally failed to follow instructions that were communicated" to her by the President of Phoenix College.  [DSOF ¶¶22-24].  These findings were reduced to writing in the Hearing Committee's binding Findings of Fact and Conclusions of Law.  [DSOF ¶¶22-24 (Exh. 34 to DSOF)].

Although MCCCD had sought to terminate the Plaintiff for her misconduct, the Hearing Committee declined to recommend termination in light of Plaintiff's nearly 30 years of service at MCCCD.  [DSOF ¶25].  The Hearing Committee instead informed MCCCD Chancellor Rufus Glasper that an unpaid suspension was appropriate and necessary to address Plaintiff's misconduct. [DSOF ¶25].  After conferring with the Hearing Committee regarding an appropriate disciplinary response, Chancellor Glasper suspended Plaintiff for 13 months without pay.[1]  [DSOF ¶26].

---

[1] Plaintiff repeatedly asserts in her Motion for Summary Judgment that she was suspended for 16 months. Doc. 71. In actuality, Plaintiff was only suspended for 13 months.  By brief explanation, the Statement of Charges issued by Chancellor Glasper was originally dated February 10, 2014, with an effective suspension date of March 1, 2014 through May 15, 2015 (effectively suspending her for one entire school year) [DSOF ¶27].  MCCCD originally scheduled a meeting between Plaintiff and Vice Chancellor of Human Resources Bowers to discuss the Statement of Charges on February 25, 2014 – four days before the effective date of the suspension. [DSOF ¶27].  The day before the meeting was scheduled to

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

FPDOCS 32807336.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

Following the completion of her suspension, Plaintiff returned to work at Phoenix College in the fall of 2015.  [DSOF ¶36].  It is important to note that to this day, roughly four-and-one-half years later, Plaintiff has remained insubordinate and refused to issue refunds to the affected students.  [DSOF ¶37].

Defendants MCCCD and former MCCCD Chancellor Glasper have moved for complete summary judgment.  Plaintiff has cross moved for *partial* summary judgment.  Although the Complaint includes claims for alleged liberty and property interest due process deprivations as well as a request for declaratory relief, Plaintiff has only moved for summary judgment on her property interest claim.  Specifically, Plaintiff contends that Defendants denied her procedural due process by infringing on her property interest in continued employment when she was suspended for 13 months without pay.[2]  But as set forth in greater detail below, Plaintiff's due process claim fails as a matter of law. Thus, the Court should deny Plaintiff's request for partial summary judgment and, instead, grant Defendants' motion for complete summary judgment.[3]

## II.   LEGAL ARGUMENT

### A.   Plaintiff Received All the Due Process She Was Entitled To.

Plaintiff contends that she "as a tenured professor" she was denied her property

---

take place, Plaintiff unilaterally canceled the meeting citing a "sudden medical issue." [DSOF ¶27].  She informed MCCCD that the earliest she could meet consistent with her attorney's schedule was Friday, March 7, 2014.  [DSOF ¶27].  MCCCD accommodated Plaintiff's request to move her meeting to March 7, 2014, and postponed Plaintiff's suspension by one and a half months to ensure that she received a meeting with the Vice Chancellor prior to the suspension taking effect.  [DSOF ¶27].   Plaintiff was issued an Update to Notice of Suspension Without Pay dated April 14, 2014 which stated that her revised dates of suspension were **April 15, 2014 to May 15, 2015** – a period of 13 months. [DSOF ¶27].

[2] Although Plaintiff has pled a so-called liberty interest due process claim and requested declaratory relief, she has neither briefed nor sought summary judgment on these issues. Defendants have at Docs. 69 and 70 sought complete summary judgment as to Plaintiff's property interest, liberty interest, and declaratory relief claims.

[3] Defendants do not dispute, for purposes of summary judgment only, that Plaintiff had a property interest in her continued employment with MCCCD and that she was entitled to procedural due process in connection with her suspension.  Nevertheless, Plaintiff's due process claims fail as a matter of law because Plaintiff received all the process she was entitled to.

FPDOCS 32807336.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

interest in continued employment without procedural due process. Doc. 14.[4]  Specifically, Plaintiff alleges that her "suspension without pay for fourteen and a half months amounts to a property deprivation sufficient to implicate procedural due process protections" and that her suspension was the functional equivalent of a termination.  Doc. 14, ¶49.  As such, Plaintiff appears to contend that she was entitled to the same type of procedural protections as faculty who are permanently separated from employment.  Amended Complaint, ¶¶49-50.  As discussed below, this claim fails as a matter of law.  As an initial matter, there is no dispute that Plaintiff was afforded complete due process with respect to her dismissal proceedings. Moreover, with respect to her suspension, she was afforded with all of the process she was due.

### 1.   Plaintiff Concedes That She Was Afforded Complete Due Process With Respect to Her Dismissal Proceedings.

Plaintiff concedes that "with respect to the notice of intent to *dismiss*, MCCCD provided Martinez adequate due process.  After Glasper made the recommendation of dismissal, Martinez exercised her right to a full adversarial hearing.  MCCCD then held the hearing before the Hearing Committee, a neutral and detached decisionmaker, which made binding findings of fact and conclusions of law." Doc. 71, p. 14:1-5 (emphasis in original). Accordingly, to the extent Plaintiff's Complaint can be read as alleging a due process violation arising from her termination proceedings, it must be dismissed based on Plaintiff's recent judicial admission.

### 2.   Plaintiff Received All of the Process She Was Entitled to When She Was Suspended.

Having recognized that MCCCD afforded her complete due process during her dismissal proceedings, Plaintiff now argues that she was somehow denied due process when she was suspended from MCCCD.  Making this claim, Plaintiff argues that because Plaintiff's suspension was for a period of 13 months, it was tantamount to a termination and

---

[4] Plaintiff further alleges in her Motion for Summary Judgment that she "is an appointive faculty member pursuant to RFP §§ 1.2. and 3.18.3.4." with a "property interest in her employment" and that she was denied that property interest without procedural due process. Doc. 71, pp. 10-11.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

Plaintiff was thus entitled to the more robust requirements contained under MCCCD's faculty member termination procedures.  However, Plaintiff was suspended, not terminated, and received all of the procedures she was due with respect to her suspension.  But even assuming, *arguendo*, that Plaintiff's suspension was tantamount to a termination, she still received all the process she was due.

> i.   Plaintiff Was Suspended, Not Terminated, And Received All The Procedures She Was Due.

Notwithstanding Plaintiff's arguments to the contrary, her suspension was properly processed as a suspension and she received appropriate due process protections.  Pursuant to MCCCD's RFP Manual, Residential Faulty Members who are suspended are entitled to the receipt of a written statement of charges formulated by the MCCCD Chancellor. RFP § 3.11.1. "If payment is to be withheld [from a suspended faculty member], the Vice Chancellor of Human Resources will first consult with and advise the member, and at the option of the Faculty member, the Faculty Association President regarding the rationale for that action."  [DSOF ¶¶3-4 (2013-2014 RFP Manual at Exh. 2)].  Here, there is no dispute that these procedures were followed.  On February 10, 2014, MCCCD General Counsel Lee Combs notified Plaintiff though her counsel that MCCCD Chancellor Glasper had "decided to accept the recommendation of the hearing committee" against termination, but "decided that suspension is appropriate based on the committee's finding of a willful policy violation."  [DSOF ¶26]. Because the suspension was without pay, General Counsel Combs further informed Plaintiff that she had "an opportunity under the procedure to meet with Vice Chancellor of Human Resources Bowers to discuss the rationale for this decision before it [was] delivered."  [DSOF ¶26].  Plaintiff accepted this invitation and met with Vice Chancellor Bowers on March 7, 2014.  [DSOF 26-28]. Accordingly, Plaintiff received all the procedures she was entitled to under the portion of MCCCD's RFP Manual pertaining to suspensions.

> ii.   Assuming, *Arguendo*, That Plaintiff's Suspension Was Tantamount to a Termination, She Still Received All The Process She Was Due.

FPDOCS 32807336.1

As Plaintiff acknowledges in her own opening brief, "minimum procedural requirements are a matter of federal law." Doc. 71, p. 12:6. Due process requires "that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, (1950)). The Supreme Court has described "'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Id.* (emphasis in original). "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* "Due process is flexible … and calls for such procedural protections as the particular situation demands." *Peacock v. Board of Regents of Univs. and State Coll. of Arizona*, 597 F.2d 163 (9th Cir. 1979) (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Courts have consistently interpreted these due process requirements as requiring pre-disciplinary notice of the charges against the employee and a post-disciplinary opportunity to be heard. Plaintiff received both of these protections.

    a)  *Plaintiff Received Pre-Disciplinary Notice of the Insubordination Charge Against Her on March 20, 2013.*

Before any person can be deprived of a property interest, they must first be notified in order to ensure that his/her later hearing is meaningful. *See Loudermill*, 470 U.S. at 542. MCCCD satisfied this requirement long ago when it provided Plaintiff with her March 20, 2013 Notice of Pre-Disciplinary Conference. [DSOF ¶18]. The Notice included the allegations against her and specifically asserted that Plaintiff had committed insubordination when she failed to issue reimbursement checks to students after being directed to do so by MCCCD. [DSOF ¶18]. This is the *very same allegation* that a hearing committee of Plaintiff's peers later found Martinez guilty of and which formed the basis for her 13-month-suspension. [DSOF ¶24]. The Notice further informed Plaintiff that a Pre-Disciplinary Conference had been scheduled for April 3, 2013, and that the highest ranking

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

6

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

individuals at Phoenix College, President Anna Solley and Vice President of Academic Affairs Casandra Kakar, would serve as Hearing Officers. [DSOF ¶18]. As stated in the Notice, the purpose of the meeting was to "ensure that the decision to be made concerning the complaints against you … is based on complete and accurate information, to inform you of the charges against you and the evidence in support of those charges, and provide you with an opportunity to respond." [DSOF ¶18]. Simply put, as of March 20, 2013, MCCCD had satisfied its obligation to put Plaintiff on notice of the charges against her.

On or around April 3, 2013, Plaintiff met with MCCCD administration to participate in the Pre-Disciplinary Conference with President Solley and Vice President Kakar. [DSOF ¶19]. Judy Castellanos and Sheri Klein from the MCCCD District Office HR Solutions Center were also present. [DSOF ¶19]. During the meeting, Plaintiff was informed of the charges against her and given an opportunity to respond. [DSOF ¶19]. Following the April 3, 2013 meeting, President Solley and Vice President Kakar pursued Plaintiff's termination of employment due to her unacceptable misconduct and Plaintiff was further provided with a written Statement of Charges dated August 9, 2013 regarding her proposed dismissal. [DSOF ¶20].

> b)   *Plaintiff Received Numerous Post-Disciplinary Opportunities to Be Heard.*

A plaintiff with a property interest in employment is further entitled to receive a due process hearing consisting of a meaningful opportunity to be heard. MCCCD satisfied this requirement with respect to Plaintiff's discipline by providing her with multiple meetings with key decision-makers within MCCCD administration and a full day long evidentiary hearing before a committee of her peers.

Following Plaintiff's Pre-Disciplinary Conference with President Solley and Vice President Kakar, Plaintiff had an in person meeting with Vice Chancellor of Human Resources Jim Bowers [DSOF ¶20]. During this meeting, Plaintiff received a Statement of Charges regarding her proposed dismissal of employment - *which included a charge of insubordination for failing to follow the December 9, 2010 Directive from President Anna*

7

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

1  *Solley*.  [DSOF ¶20].  Upon receipt of the Statement of Charges regarding her proposed

2  dismissal, Plaintiff requested an evidentiary hearing, which MCCCD granted. [DSOF ¶21].

3      On November 18, 2013, Plaintiff received a full day evidentiary hearing before a

4  Hearing Committee comprised of her peers.  [DSOF ¶22].  And as Plaintiff concedes in her

5  motion for summary judgment, the Hearing Committee was "a neutral and detached

6  decisionmaker, which made binding findings of fact and conclusions of law." Doc. 71, p.

7  14:4-5.  Plaintiff does not dispute that proper procedures were followed with respect to this

8  evidentiary hearing and concedes that she was provided with "adequate due process."  Doc.

9  71, p. 14:1-2.  The Hearing Committee ultimately found that Plaintiff engaged in "willful

10  insubordination" and that she "willfully and intentionally failed to follow instructions that

11  were communicated to her when she failed to issue refunds to students as directed by

12  President Solley."  The Hearing Committee reduced these findings in writing to its Findings

13  of Fact and Conclusions of Law. [DSOF ¶24].

14      Upon receipt of the Hearing Committee's Findings of Fact and Conclusions of Law,

15  Chancellor Glasper met with the Hearing Committee to inquire about the basis of their

16  conclusions.   [DSOF ¶25]. The Hearing Committee members explained to Chancellor

17  Glasper that because Plaintiff had been with the District for nearly 30 years, they were

18  reluctant to recommend her permanent separation from employment, but believed a

19  disciplinary action such as an unpaid suspension was appropriate. [DSOF ¶25].

20      In light of the Hearing Committee's recommendations, Chancellor Glasper prepared

21  a revised February 10, 2014 Statement of Charges proposing that Plaintiff be suspended

22  from employment for 13 months. [DSOF ¶26]. Chancellor Glasper notified Plaintiff, though

23  her counsel, that he had decided to suspend Plaintiff and forwarded her a copy of the

24  Statement of Charges. [Exh. A; DSOF ¶26]. Chancellor Glasper also offered Plaintiff the

25  opportunity to schedule a meeting with the Vice Chancellor of Human Resources to discuss

26  the rationale for the decision. [DSOF ¶26].  Plaintiff accepted the invitation and MCCCD

27  scheduled a meeting between Plaintiff and the Vice Chancellor of Human Resources

28  Bowers. [DSOF ¶26].

1   Having received notice of her suspension, Plaintiff had a due process meeting with

2   Vice Chancellor Bowers on March 7, 2014 to discuss the Statement of Charges and her

3   suspension. [DSOF ¶28]. During this meeting, Plaintiff was again represented by

4   experienced employment counsel and was afforded an opportunity to respond and voice her

5   concerns. [DSOF ¶28].

6   In summary, as of March 7, 2014, MCCCD had provided Plaintiff with all the

7   process she was entitled to with regards to her suspension.  MCCCD provided her with pre-

8   disciplinary notice of the insubordination charge on March 20, 2013 and subsequently

9   provided her with multiple opportunities to be heard including a full day evidentiary hearing

10   regarding the charge of willful insubordination which the Hearing Committee ultimately

11   found Plaintiff guilty of.  [DSOF ¶¶18-28].  Plaintiff further received a due process meeting

12   with the Vice Chancellor of Human Resources (at which she was represented by counsel)

13   prior to her suspension. [DSOF ¶28].

14                   c)   *Plaintiff Further Received Numerous Opportunities to*
                         *Be Heard in Front of the MCCCD Governing Board.*

15   Despite providing Plaintiff with more than adequate post-disciplinary opportunities

16   to be heard, Plaintiff further received numerous opportunities to be heard in front of the

17   MCCCCD Governing Board.  Specifically, Plaintiff's attorney submitted a nine page legal

18   brief to the MCCCD Governing Board outlining her arguments that "a fourteen-month

19   suspension is the economic equivalent of a dismissal." [DSOF ¶28].   Plaintiff also

20   submitted at least four letters to the Governing Board asserting the same argument. [DSOF

21   ¶30-33].  Plaintiff and her counsel each separately appeared before the Governing Board in

22   open session and argued that her suspension was improper and "the functional equivalent of

23   a termination from the district."  [DSOF ¶29].  And if that were not enough, Plaintiff also

24   had two other individuals separately appear on her behalf before the Governing Board to

25   advocate for the reversal of her suspension. [DSOF ¶29]. Simply put, in light of the multiple

26   opportunities that Plaintiff had to argue against her suspension, Plaintiff is now foreclosed

27   from claiming that her procedural due process rights were somehow denied.

28

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

9

### 3. Plaintiff's Argument That She Was Denied an Impartial Decision Maker Lacks Merit.

In tacit recognition of the fact that she was provided with more than sufficient notice and an opportunity to be heard with regard to her suspension, Martinez has now argued for the first time that she was denied an impartial decision maker. Doc. 71, pp. 12-14. As an initial matter, this theory/argument was never previously disclosed and cannot be raised for the first time after the close of discovery in a motion for summary judgment. But notwithstanding the lack of disclosure, the argument lacks merit. Simply put, Chancellor Glasper was not precluded from deciding that Plaintiff's misconduct warranted suspension by virtue of his prior involvement in her termination proceedings. And even assuming, *arguendo,* that Chancellor Glasper was an improper decisionmaker, there were numerous unbiased individuals who were involved with or oversaw the suspension process.

i. <u>Plaintiff's Theory That She Was Denied An Impartial Decisionmaker Was Never Disclosed and She Is Foreclosed From Asserting It For the First Time At Summary Judgment.</u>

As set forth in Plaintiff's Complaint, Amended Complaint, and related pleadings, Plaintiff's due process claims have always been based on the allegation that Plaintiff's due process rights were violated because a 13-month-suspension is "tantamount to termination." [DSOF ¶¶29-35]. Plaintiff's original and amended complaints and all pleadings in this matter (prior to her motion for summary judgment at Doc. 71) are devoid of any reference to a deprivation based on an impartial decisionmaker. Now that the deadline for amending the pleadings has expired and discovery has closed, Plaintiff is attempting introduce an entirely new legal theory for the first time at summary judgment. This type of litigation by ambush is simply not permitted. *Arranaga v. United States,* 103 Fed. Cl. 465, 469 (2012) (holding that "the very purpose of notice pleading is to prevent this sort of 'litigation by ambush,' whereby briefs are used opportunistically to add claims or defenses to pleadings."); *Ins. Co. of the West v. United States,* 100 Fed. Cl. 58, 64 (2011) (same). Plaintiff never placed MCCCD on notice of this legal theory. To the contrary, despite her affirmative disclosure obligations, Plaintiff secreted these claims and has asserted them for the first time at the summary judgment stage. (Doc. 71, pp. 12-14.) Plaintiff's failure to plead or even disclose

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

her new theory precludes her from raising it for the first time at summary judgment. *Trishan Air, Inc. v. Federal Ins. Co.,* 635 F.3d 422 (9th Cir. 2011) (claim raised for the first time in response to a motion for summary judgment was not properly before the district court); *see also Wasco Prods., Inc. v. Southwall Tech., Inc*., 435 F.3d 989, 992 (9th Cir. 2006) ("The necessary factual averments are required with respect to each material element of the underlying legal theory. Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.").

ii. <u>Chancellor Glasper Was Not Precluded From Recommending Plaintiff's Suspension By Virtue of His Prior Involvement In Plaintiff's Termination Proceedings.</u>

Plaintiff has advanced the speculative and unsupported allegation that Chancellor Glasper was somehow biased because his "role as the decisionmaker with respect to Martinez's suspension was…inconsistent with his previous role as partisan in the dismissal case against her." Doc. 71, p. 14:17-18. As an initial matter, Plaintiff has not provided a scintilla of evidentiary support in furtherance of this argument.[5]  It is well-established that such speculative and unsupported allegations cannot be relied upon at the summary judgment stage.  *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 922 (9th Cir. 2001).  Accordingly, this argument must be rejected by the Court.

Notwithstanding the foregoing, Plaintiff's bias argument is based upon a handful of cases that are distinguishable from the present action. Plaintiff primarily relies upon the Ninth Circuit's decision in *Walker v. City of Berkeley*, 951 F.2d 182 (1991).  In *Walker*, Plaintiff alleged that her due process rights were violated because she was denied an impartial decisionmaker at her post-termination hearing.  Specifically, the Plaintiff in

---

[5] Plaintiff has never claimed that Chancellor Glasper subjected her to any discrimination, retaliation, or inappropriate behavior prior to her recommended suspension.  Indeed, if Chancellor Glasper had harbored any ill will towards Plaintiff, then following the Hearing Committee's recommendation against termination, he would have acted within his rights under MCCCD's faculty termination procedures and made his "own recommendation [in favor of termination] and forward[ed] the recommendation along with the summary of evidence, a copy of the findings of fact, conclusions of law, and final recommendations of the Hearing Committee to the Governing Board." 2013-2014 RFP § 3.13.8 [DSOF ¶¶3-4 DSOF Exh. 2)].  Instead, Chancellor Glasper reduced the discipline from termination to suspension.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

*Walker* had sued her employer for alleged unlawful termination at the same time she was simultaneously pursuing internal administrative proceedings over the same issue. After the City's Personnel Board found that the plaintiff had been discharged without cause, the City staff attorney – *who served dual roles as **counsel** in the litigation matter* as well as ***decision maker** in the administrative proceeding* – recommended that the Personnel Board's decision be rejected and that Walker's termination be approved. Based on these unique facts, the Court ultimately held that it was improper for the same person to "serve as both administrative decisionmaker and as advocated in a federal court proceeding involving the same parties and the same underlying issue." *Walker*, 951 F.2d at 185. Stated differently, in finding a due process violation, the Court focused on the fact that an *attorney* who was actively representing the City in litigation also served as the administrative decisionmaker.[6] Here, Chancellor Glasper is not an attorney and is not acting as MCCCD's advocate in a federal court proceeding. So the concerns raised in *Walker* and *American General* are simply inapplicable to the present action.

Finally, Plaintiff's argument that Chancellor Glasper's initial recommendation to terminate Plaintiff rendered him "partisan" and ineligible to serve as decisionmaker in the subsequent suspension proceedings has been rejected by the Supreme Court. *See Withrow v. Larkin,* 421 U.S. 35 (1975). In *Withrow*, a physician sued members of the Wisconsin Medial Examining Board over the temporary suspension of his medical license following an administrative investigation and subsequent hearing that was conducted by *the very same board members*. The trial court ultimately concluded that the "state medical examining

---

[6] The same procedural defect was present in *American General Ins. Co. v. Federal Trade Com.* upon which Plaintiff attempts to rely. 589 F.2d 462, 463-65 (9th Cir. 1979). In *American General*, an attorney who had acted as counsel for the Federal Trade Commission ("FTC") in a case involving the acquisition of Fidelity and Deposit Company of Maryland by American General Insurance Company later transitioned his role to serving in a judicial capacity with the FTC. In this judicial role with the FTC, the attorney was responsible for authoring a decision on the very same case he had been responsible for earlier prosecuting, which the Ninth Circuit found to be improper. In reaching its decision that the attorney should have recused himself from the case, the Ninth Circuit recognized that "In addition to customary practice, it may be noted that in the case of a judge there is a statutory provision requiring disqualification in an case in which he 'has participated as counsel'" and applied this same rule to administrative proceedings. 589 F.2d at 463.

board (did) not qualify as (an independent) decisionmaker (and could not) properly rule with regards to the merits of the same charges it investigated." *Withrow*, 421 at 46. On appeal, the Supreme Court disagreed and succinctly stated that due process does not preclude a decisionmaker from hearing a matter simply because the decisionmaker expressed an earlier contrary opinion on a matter:

> No decision of this Court would require us to hold that it would be a violation of procedural due process for a judge to sit in a case after he had expressed an opinion as to whether certain types of conduct were prohibited by law. In fact, judges frequently try the same case more than once and decide identical issues each time, although these issues involve questions both of law and fact. Certainly, the Federal Trade Commission cannot possibly be under stronger constitutional compulsions in this respect than a court.

*Withrow* 421 U.S. at 48-49 (citing *FTC v. Cement Institute*, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948)).

The Withrow Court further explained that an administrative decisionmaker is not disqualified from deciding a matter that he or she was earlier reversed on:

> Certainly it is not the rule of judicial administration that, statutory requirements apart . . . a judge is disqualified from sitting in a retrial because he was reversed on earlier rulings. We find no warrant for imposing upon administrative agencies a stiffer rule, whereby examiners would be disentitled to sit because they ruled strongly against a party in the first hearing.

412 U.S. 49 (citing *NLRB v. Donnelly Garment Co*., 330 U.S. 219, 236—237, 67 S.Ct. 756, 765, 91 L.Ed. 854 (1947))

The facts in the instant case are similar to those in *Withrow*. On August 9, 2013, following an investigation into alleged misconduct by Plaintiff, Chancellor Glasper accepted Phoenix College President Anna Solley's recommendation that Plaintiff be terminated and initiated dismissal proceedings against Martinez. [DSOF ¶20 (DSOF Exh. 27)]. These proceedings ultimately resulted in a recommendation by the Hearing Committee that Plaintiff not be permanently separated from employment, but rather be suspended for a significant duration. [DSOF ¶¶24-26]. In light of the Hearing Committee's findings and recommendation, Chancellor Glasper revised his earlier recommendation and reduced the disciplinary action to unpaid suspension for 13 months. [DSOF ¶¶24-26]. As in *Withrow*, Chancellor Glasper's mere act of being involved in the earlier termination proceedings in no

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

way disqualified him from rendering his later decision as to Plaintiff's suspension from employment.

iii.     Numerous Impartial Decisionmakers Were Involved in and Oversaw the Suspension Proceedings.

Even assuming, *arguendo*, that Chancellor Glasper was somehow precluded from serving as decisionmaker in the suspension proceedings there were numerous other individuals who were involved in and oversaw her suspension proceedings.  These impartial decisionmakers included the Hearing Committee members, MCCCD's Vice Chancellor of Human Resources, and the MCCCD Governing Board.

First, Plaintiff received a full day evidentiary hearing before a Hearing Committee comprised of her peers.  [DSOF ¶22]. As Plaintiff concedes in her motion for summary judgment, the Hearing Committee was "a neutral and detached decisionmaker, which made binding findings of fact and conclusions of law." Doc. 71, p. 14:4-5.  Plaintiff does not dispute that proper procedures were followed with respect to this evidentiary hearing and that she was provided with "adequate due process." Doc. 71, p. 14:1-2.  The Hearing Committee ruled that Plaintiff engaged in "willful insubordination" and that she "willfully and intentionally failed to follow instructions that were communicated to her when she failed to issue refunds to students as directed by President Solley." [DSOF ¶24]. This same Hearing Committee also recommended to Chancellor Glasper that Plaintiff be suspended without pay as a disciplinary measure. [DSOF ¶25].

Second, following Chancellor Glasper's suspension recommendation, Plaintiff met with MCCCD's Vice Chancellor of Human Resources, Jim Bowers, whom Plaintiff does not contend harbored any ill will or bias against her.  During Plaintiff's due process meeting with Chancellor Bowers, Plaintiff was represented by counsel and afforded a full opportunity to respond to the charges against her.  [DSOF ¶28].

Finally, after her suspension, Plaintiff repeatedly advanced arguments to the MCCCD Governing Board regarding the purportedly improper nature of her suspension. [DSOF ¶¶29-35]. Plaintiff submitted a nine page legal brief through her counsel arguing that

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

14

her suspension was the functional equivalent of a termination and submitted at least four letters of her own asserting the same argument. [DSOF ¶29]. Plaintiff and her counsel also each separately appeared before the Governing Board in open session and argued that her suspension was improper. [DSOF ¶30].

Simply put, contrary to Plaintiff's lawyerly argument that "Glasper Unilaterally Suspended" her, Plaintiff's suspension was appropriately imposed after numerous decisionmakers were involved. A Hearing Committee comprised of Plaintiff's peers found her to be "willfully insubordinate" and recommended her suspension without pay. Plaintiff also met with the Vice Chancellor of Human Resources during which she was advised of the charges against her and provided a meaningful opportunity to respond. Finally, even after her suspension was imposed, Plaintiff had multiple communications with the MCCCD Governing Board where she asked the board members to intervene on her behalf.

### 4. Plaintiff's Argument That She Was Denied The Opportunity to Respond to New Allegations Similarly Fails.

Plaintiff further alleges in her Motion for Summary Judgment that she was denied the opportunity to respond to "new allegations" contained in her February 10, 2014 Statement of Charges "before a neutral factfinder/decisionmaker." Doc. 71, p. 15:1-11. This argument fails for several reasons.

First, Plaintiff was suspended for her undisputed willful insubordination.[7] Following a full day evidentiary hearing, a Hearing Committee comprised of Plaintiff's peers rendered findings of fact and conclusions of law which Plaintiff concedes are binding on her. [DSOF ¶¶22-24, Doc. 71, p. 2:1-3]. These binding findings state that Plaintiff

---

[7] To the extent Plaintiff is attempting to argue that MCCCD regulations 1.12 and 1.13 are not referenced in her prior August 9, 2013 Statement of Charges pertaining to her proposed dismissal from employment, the simple fact is that Plaintiff was not terminated. Following her full day evidentiary hearing and prior to her suspension, Plaintiff was notified that she was being suspended without pay for her willful insubordination. [DSOF ¶¶27-28 (DSOF Exh. 36)]. Plaintiff received a second Statement of Charges dated February 10, 2014 which clearly reference these regulations. She also received a meeting with MCCCD's Vice Chancellor of Human Resources in which she was represented by experienced employment counsel, was provided an opportunity to be heard, and was given an opportunity to respond and voice her concerns. [DSOF ¶¶26-28 (DSOF Exh. 36)].

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

engaged in "willful insubordination" and that she "willfully and intentionally failed to follow instructions that were communicated to her when she failed to issue refunds to students as directed by President Solley." [DSOF ¶24]. Although Plaintiff seeks to divert attention from these binding findings, the fact of the matter remains that Plaintiff's willful insubordination warranted disciplinary action. As conspicuously noted in Plaintiff's February 10, 2014 Statement of Charges, Chancellor Glasper specifically advised Plaintiff that she was being suspended for a "substantial amount of time" based on her willful insubordination - specifically her violation of Administrative regulations 6.7.1 and 6.7.3:

> Therefore, for purposes of RFP Section 3.13, <u>this letter will serve as a statement of charges that you are in violation of Administrative Regulation 6.7.1 and Administrative Regulation 6.7.3.</u> In accordance with these regulations, disciplinary action up to and including termination of employment is warranted. I accept the hearing committee's recommendation that you should not be dismissed from employment. However, <u>I believe suspension for a substantial amount of time is the appropriate sanction.</u>

[DSOF ¶27 (DSOF Exh. 36)] (emphasis added).

Second, Plaintiff misstates the legal standard for due process. As fully briefed in Defendant's Motion for Summary Judgment at Docs. 69 and 70 and in section II(A), *supra*, due process requires notice and a meaningful opportunity to be heard. Plaintiff received those protections by way of her original March 20, 2013 Statement of Charges, numerous subsequent meetings with MCCCD administration, a full day evidentiary hearing, and multiple appearances before the MCCCD Governing Board. [DSOF ¶¶18-35]. Due process does <u>not</u> require anything more. Indeed, it is unclear what Plaintiff even means by claiming entitlement to a "neutral factfinder/decisionmaker." Furthermore, as discussed in section II(A)(3), *supra*, Plaintiff was never denied an "impartial" decisionmaker.

Finally, even if one were to view Plaintiff's second February 10, 2014 Statement of Charges in a vacuum, there can be no dispute that Plaintiff received proper notice and a meaningful opportunity to be heard. On or around February 10, 2014, Chancellor Glasper notified Plaintiff, though her counsel, that he had decided to suspend Plaintiff, forwarded her a copy of the Statement of Charges, and offered Plaintiff the opportunity to meet with the Vice Chancellor of Human Resources to discuss the rationale for the decision. [DSOF ¶26].

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

Plaintiff accepted the invitation and met with Vice Chancellor of Human Resources Bowers on March 7, 2014 to discuss the February 10, 2014 Statement of Charges and her suspension. [DSOF ¶28]. During the meeting, Plaintiff was represented by employment counsel and was afforded an opportunity to respond and voice her concerns. [DSOF ¶28]. Accordingly, Plaintiff received all the process she was entitled to with regards to her February 10, 2014 Statement of Charges.

**B.    Plaintiff's Argument That "Defendants are Subject to Liability Pursuant to 42 U.S.C. § 1983" Is Duplicative of Plaintiff's Procedural Due Process Claim and Does Not Give Rise to A Separate Cause of Action.**

It is well-established that in order to state an actionable due process claim an employee must demonstrate that she possessed a constitutionally protected interest (either a liberty or property interest) and was deprived of that interest without due process of the law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999).   Once these interests are established, 42 U.S.C. § 1983 confers a private cause of action for an alleged violation of the federal Constitution and/or federal statutes.  *See Maine* v. *Thiboutot,* 448 U.S. 1 (1980) (recognizing that § 1983 actions may be brought against state actors to enforce rights created by federal statutes as well as by the federal Constitution).  Simply put, 42 U.S.C. § 1983 is merely an authorizing statute - it does <u>not</u> give rise to a distinct cause of action separate and apart from the alleged underlying federal violation.   Here, the only causes of action the Plaintiff pled in her Complaint are alleged violations of her procedural due process rights vis-à-vis 42 U.S.C. § 1983. Accordingly, Plaintiff's argument that "Defendants are Subject to Liability Pursuant to 42 U.S.C. § 1983" is duplicative of her procedural due process claim and it fails as a matter of law for the reasons set forth above.

**III.    CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Motion For Summary Judgment at Doc. 71 and grant Defendants' Motion For Summary Judgment at Docs. 69 and 70.

FPDOCS 32807336.1

RESPECTFULLY SUBMITTED this 17th day of March 2017.

FISHER & PHILLIPS LLP


By   s/  Shayna H. Balch
     Pavneet Singh Uppal
     Shayna H. Balch
     3200 N. Central Avenue, Suite 805
     Phoenix, Arizona 85012-2425
     Attorneys for Defendants

FPDOCS 32807336.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of March 2017 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Edmundo P. Robaina
Thomas T. Griffin
Ashley A. Marton
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Attorneys for Plaintiff

  s/  Michelle C. Colwell

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

19

FPDOCS 32807336.1