Edmundo P. Robaina (No. 018125)
Thomas T. Griffin (No. 022475)
Ashley A. Marton (No. 029442)
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
epr@robainalaw.com
ttg@robainalaw.com
aam@robainalaw.com

Attorneys for Plaintiff Cleopatria Martinez

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Cleopatria Martinez,<br><br>    Plaintiff,<br><br>vs.<br><br>Maricopa County Community College District, *et al.*,<br><br>    Defendants. | No. CV 15-01759 NVW<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Oral Argument Requested) |

Pursuant to Fed.R.Civ.P. 56, Plaintiff Cleopatria Martinez ("Martinez") hereby responds to Defendants' Motion for Summary Judgment. Plaintiff's response is supported by the following Memorandum of Points and Authorities

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. FACTUAL BACKGROUND RELEVANT TO DEFENDANTS' MOTION**[1]

 **A. Martinez's Employment and Right to Academic Freedom**

Martinez has been employed by Defendant Maricopa County Community College District ("MCCCD") as a mathematics professor since 1985, and has worked at MCCCD's Phoenix College campus since 1995. [Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment ("PSOF") [Doc. 70] ¶ 1]. As a member of MCCCD's residential faculty, Martinez's rights with respect to various employment

---

[1] Parts of the factual background in this matter are more fully set forth in Plaintiff's Motion for Summary Judgment.

matters are set forth in Residential Faculty Policies (the "RFP") that at relevant times were ratified by MCCCD's Governing Board and Defendant Dr. Rufus Glasper ("Glasper") [PSOF ¶¶ 9-11].

Among the provisions relevant to this matter, 2012-2013 RFP § 3.1, entitled "Instructional Rights/Academic Freedom," provides that:

> Faculty are entitled to instructional freedom in discussing their subject with students, and they should exercise their best effort to ensure topics are relevant to their subject. Faculty will determine curriculum and relevant subject matter for courses, recommend appropriate pedagogy, textbooks, and other materials relevant to teaching their subject.

[Plaintiff's Controverting Statement of Facts ("CSOF") ¶ 1]. 2012-2013 RFP § 3.9 further states that: "Nothing in this policy shall be construed to deny or diminish any individual rights that a member has under the law." [CSOF ¶ 2].

### B.     Martinez's Use, Under the Fair Use Doctrine, of Copyright-Protected Materials

The borrowing of mathematics problems is a longstanding, widespread custom throughout MCCCD and academia at large. [CSOF ¶ 4]. During times relevant to this matter, Martinez and her colleagues routinely borrowed mathematics problems from other mathematicians to use in their student handouts for educational purposes on a not for profit basis. [CSOF ¶ 3].

Instead of requiring her mathematics students to purchase textbooks, Martinez prepared her own course materials and distributed them to her students. [CSOF ¶ 5]. Martinez believed that the Copyright Act of 1976 authorized her to use small portions of other scholars' work under the "Fair Use" doctrine because she was using it only for classroom teaching purposes. [CSOF ¶ 6]. Indeed, the Hearing Committee ultimately found that pursuant to the "Fair Use" doctrine of the Copyright Act, the use of copyrighted work for purposes such as teaching (including multiple copies for classroom

1  use) is not an infringement of copyright. [CSOF ¶ 7].[2]

2  Despite the applicability of the Fair Use doctrine to Martinez's use of the textbook materials, on or around January 12, 2010, MCCCD's Vice President of Academic Services, Ronnie Elliot sent an email to Martinez notifying her that there were alleged copyright-related problems with the materials she had printed for the Fall 2009 and Spring 2010 semester. [CSOF ¶ 8]. Over the next several weeks, other members of MCCCD's administration also communicated to Martinez alleged copyright-related concerns. [CSOF ¶ 9].

Thereafter, Martinez did not use any of the "lecture notes" in question. [CSOF ¶ 10]. Martinez, further, obtained written permission from the publisher of Sullivan & Sullivan's "Precalculous," to copy materials from their book. [CSOF ¶ 11].

Nevertheless, on December 9, 2010, Phoenix College President Anna Solley, concluded that Martinez's alleged misconduct posed an unacceptable risk of a copyright infringement claim, among other things, and imposed restrictions on Martinez's photocopying privileges. [CSOF ¶ 12]. The December 9, 2010 Directive prohibited Martinez from utilizing any course materials of her own creation. [CSOF ¶ 13]. Instead, Martinez was required to only use course materials that are "approved by the mathematics department" or that are "available in the bookstore for sale to students and that are authored by persons other than [Martinez]." [CSOF ¶ 14]. Solley noted that violation of the directive would be considered grounds for disciplinary action, up to and including termination. *Id.*

At the beginning of the Fall 2012 semester, Martinez informed her students that they were not required to purchase a course textbook and that she would provide them with her own course materials in lieu of a textbook. [CSOF ¶ 15]. Martinez further did not submit her Fall 2012 materials to the Mathematics Department Chairperson for

---

[2] It is undisputed that the Hearing Committee's Findings of Facts, Conclusions of Law and Recommendations are binding on the parties pursuant to 2012-2013 RFP § 3.15.7. [PSOF ¶ 24].

- 3 -

1   approval. [CSOF ¶ 16].

### C. The Notice of Intent to Dismiss, and the Hearing Committee's Binding Finding that MCCCD Failed to Prove its Copyright Infringement Allegations

On August 9, 2013, Defendant Glasper, who at relevant times was MCCCD's Chancellor, issued Martinez a notice of intent to dismiss Martinez from her employment. [PSOF ¶ 3]. In the notice, Glasper wrote, in pertinent part, that Phoenix College President Anna Solley had forwarded a statement of charges to Interim Vice Chancellor for Human Resources James Bowers; that Bowers had reviewed allegations and recommended to Glasper that cause existed for Martinez' termination; that Glasper concurred with the recommendation; and that Martinez had the right to a hearing on the matter. [PSOF ¶¶ 5-6].

Along with the notice of intent to dismiss Martinez, Glasper sent Martinez a letter from Bowers to Glasper that included a "Statement of Charges" in which it was alleged that in relation to her use of materials from textbooks in her "lecture notes" (which she provided to her students at her copying cost), Martinez had violated U.S. copyright law and MCCCD's cash handling rules "as covered by MCCCD Administrative Regulation 1.17, and engaged in "[w]illful and intentional failure to perform job duties" in relation to, among other things, Martinez's failure to issue refunds to [her] students as directed by President Solley in violation of MCCCD Administrative Regulations 6.7.1 and 6.7.3. [PSOF ¶ 7].

Under Section 3.11.2. of the 2012-2013 RFP, Martinez has continuous rights to employment and can only be disciplined for just cause. [PSOF ¶¶ 9-18]. Pursuant to 2012-2013 RFP § 3.14.4., Martinez exercised her right to an evidentiary hearing on the proposed dismissal, which was held on November 18, 2013. [PSOF ¶ 29].

On December 9, 2013, in a decision captioned Maricopa County Community College District v. Dr. Cleopatria Martinez, the Hearing Committee made binding findings of fact and conclusions of law that Phoenix College had failed to carry its burden of proof regarding Martinez's alleged violation of MCCCD's cash handling rules found in

- 4 -

1   MCCCD Administrative Regulations 1.17., alleged violations of U.S. Copyright Law and
2   fair use guidelines, and alleged violations of MCCCD Administrative Regulations 3.2.4
3   and 3.2.5. related to copyright regulations. [PSOF ¶ 30].  The Committee further found,
4   however, that Martinez had willfully and intentionally failed to follow instructions that
5   were communicated to her when she failed to issue refunds to students as directed by
6   President Solley. [PSOF ¶ 31].   The Hearing Committee further recommended that the
7   Governing Board deny the termination request and allow Martinez to continue her
8   MCCCD employment. [PSOF ¶ 32].

### D. Glasper's Suspension of Martinez and Martinez's Futile Attempts to Seek Board Review

After the Hearing Committee made its recommendation, Glasper had the option, pursuant to 2012-2013 RFP § 3.15.8., to adopt the Hearing Committee's recommendation regarding dismissal or make his own recommendation to the Governing Board. [PSOF ¶¶ 24-25].  According to Glasper, this included the option to make a recommendation to the Governing Board to suspend Martinez. [PSOF ¶ 35].

On February 10, 2014, Glasper sent a letter to the Governing Board indicating that he had accepted the Hearing Committee's recommendation that Martinez not be dismissed. [PSOF ¶ 34].  He did not, however, recommend any other discipline. [PSOF ¶ 36].  Instead, the same day Glasper sent a letter to Martinez notifying her that he was suspending her under his "sole authority" pursuant to 2013-2014 RFP § 3.11. [PSOF ¶ 37].

As Defendants note in their motion, Martinez attempted in various ways to seek Board review of Glasper's action.  However, Martinez had no right under 2013-2014 RFP § 3.11. to have the suspension reviewed by the Governing Board [PSOF ¶ 22], and other than in "citizen's interim" (also known as "calls to the public"), during which the public is allowed to speak at public Board meetings for approximately five minutes or by letter (with the written contents of her presentation) in a three-minute presentation regarding her suspension, Martinez never had the opportunity to "argue" her position in front of the

Board. [CSOF ¶ 23] Moreover, it is undisputed that the Board never responded Martinez's concerns, and never made any determinations as to, or any pronouncements with regard to, Martinez's suspension. [CSOF ¶ 24]. As a result, Glasper's action went un-reviewed, Martinez did not work from April of 2014 until the Fall of 2015, and she was without pay or benefits for 16 months. [CSOF ¶ 25].[3]

### E. Continuing Restrictions on Martinez After the Suspension

On August 25, 2015, PC Interim President Chris Haines sent a letter to Martinez indicating, in pertinent part, that restrictions imposed by the December 9, 2010 directive were still in effect and that she intended to enforce them. [CSOF ¶ 17]. On October 12, 2015, Martinez sent an email to Haines requesting that she remove the restrictions. [CSOF ¶ 18]. Martinez noted that the basis for the directive (the alleged copyright violations) no longer exists, the directive obstructs Martinez's teaching capacity by not allowing her to write test questions of her own, not allowing her to use examples that she constructs in her daily lectures, and not allowing her to use anything that she develops. [CSOF ¶ 19].

Martinez further noted that "the departmental barriers resulting from the directive have placed unjustified stress on [her] spontaneous teaching." [*Id.*]. Martinez cited, as an example, the fact that she submitted a test to be approved because the problems that she used were based on material covered in class and addressed the needs of the students; that it was rejected because she did not copy problems directly from the textbook, and the rejection threw off her teaching schedule. [CSOF ¶ 20]. She further noted that the restrictions stifle her innovation; and place limits on her ability to teach based on the needs of the students and what the students need to learn. [CSOF ¶ 21]. The restrictions, however, were not lifted. [CSOF ¶ 22].

---

[3] The suspension officially ran from April 14, 2014 until May 15, 2015. However, Fall classes did not begin again until August of 2015, and until then, Martinez was not allowed to set foot on campus, and was without pay or benefits.

- 6 -

On November 4, 2015, Martinez filed suit against MCCCD and Glasper. In her amended complaint, Martinez alleges that the defendants interfered with Martinez's liberty interests in her professional reputation and deprived her of her property interest in continued employment, both in relation to her suspension. Martinez also seeks declaratory relief regarding MCCCD's continued imposition of the December 9, 2010 directive because it interferes with her First Amendment right to academic freedom. [Plaintiff's Amended Complaint ¶¶ 93-117].

## II. ARGUMENT

### A. Defendants Violated Martinez's Due Process Rights with Respect to Her Property Rights in Continued Employment

In their motion, with respect to Martinez's property interest claims, Defendants essentially argue that a long term suspension is not tantamount to a dismissal; and that because Martinez received a hearing on the proposed dismissal, Glasper subsequently suspended Martinez pursuant to MCCCD's policies, Martinez spoke with Vice-Chancellor Bowers before the suspension was finalized, and Martinez made several attempts to obtain Governing Board review, Martinez necessarily received all the process she was due. Defendants' arguments are incorrect for the following reasons.

First, whether or not Martinez's suspension was the functional equivalent to a termination, it is clear under the law that Martinez has a property interest in her employment and was entitled to full due process regarding the suspension. *See Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011); *Finkelstein v. Bergna*, 924 F.2d 1449, 1451 (9th Cir. 1991). Moreover, as more fully set forth in Plaintiff's Motion for Summary Judgment, due process is a matter of federal law and may not be diminished by the fact that a public employer may have specified its own procedures that it deems adequate for determining the preconditions to adverse official action. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 540-41 (1985); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982). Due process requires, among other things, an impartial decisionmaker with respect to discipline.

*Clements v. Airport Auth.,* 69 F.3d 321 (9th Cir. 1995). Where an official occupies two practically and seriously inconsistent positions, one partisan and the other judicial, there is no due process. *See Ward v. Village of Monroeville*, 409 U.S. 57 (1972); *Walker v. Berkeley*, 951 F.2d 182, 184 (9th Cir. 1991).

In this case, as noted more fully in Plaintiff's Motion for Summary Judgment, Glasper was a partisan in Martinez's termination case and therefore could not be the arbiter of her ultimate discipline. Moreover, the fact that, as Defendants note, Glasper offered Martinez the opportunity to meet with Vice Chancellor Bowers to discuss Glasper's rationale for the decision to suspend her, and that Martinez's lawyer sent a "legal brief" to Bowers and the Governing Board and other letters to the Governing Board regarding the suspension, does not render the suspension compliant with due process requirements. Notably, neither Bowers nor the Board had the authority under 2013-2014 RFP § 3.11 to overturn Glasper's decision. [PSOF ¶ 22]. And in any case, as noted in Section E, above, the Governing Board never reviewed the suspension. Glasper's suspension of Martinez, which was not reviewed by a neutral decisionmaker, therefore violated Martinez's due process rights.

Second, even if, as Defendants suggest, the dismissal hearing could have provided adequate due process for Glasper's suspension of Martinez, it would still not have been sufficient in this case. The reason is that Defendants made a material allegation in the February 10, 2014 notice of suspension that was not listed in the August 9, 2013 Statement of Charges and not adjudicated by the Hearing Committee, but which was used as a basis for the suspension. Specifically, in the February 10, 2014 Statement of Charges, Defendants claimed for the first time that Martinez's "course materials charge was not included in the adopted budget or preapproved by the Governing Board" in alleged violation of MCCCD Administrative Regulations 1.12.2. and 1.12.6. [PSOF ¶¶ 43-45]. The fact that Martinez was never given the opportunity to challenge this allegation before a neutral factfinder/decisionmaker renders the suspension, based in part on this allegation, in violation of her due process rights.

**B.   Martinez's Request for Declaratory Relief is Appropriate and Warranted**

In their motion, Defendants assert that the December 9, 2010 Directive, which requires Martinez to use only course materials approved by the department, that are available in the bookstore for sale to students, and that are authored by persons other than Martinez was put in place "in response to Plaintiff's practice of misusing copyright protected materials". [Defendants' Motion for Summary Judgment ("Defendants' Motion") at p. 17, lines 16-17; Defendants' Statement of Facts ("DSOF") ¶¶ 12-14]. Defendants further claim that declaratory relief is unavailable to Martinez because "there is no case or controversy before the Court regarding the copy restrictions that MCCCD imposed on Plaintiff", and that even if there were, "the Court should not intrude into the realm of personnel decisions which should be properly reserved for the employer." [Defendants' Motion at p. 17, lines 21-24 and p.18, lines 20-21].  Defendants' arguments are incorrect for the following reasons.

**1.   The Declaratory Judgment Act**

The Declaratory Judgment Act (the "DJA") states: "In a case of actual controversy within its jurisdiction…. any court of the United States… may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).  The DJA does not create new substantive rights, but merely expands the remedies available in federal courts, and it gives the courts discretion as to whether to exercise the conferred remedial power. *Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011).

To determine whether a declaratory judgment is appropriate, a two-part test is used. First, the court must inquire whether there is a case of actual controversy within its jurisdiction. *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). Second, the court must decide whether to exercise jurisdiction. *Id.* at 143-144.

"To determine whether an action presents a justiciable case or controversy, courts consider 'whether the facts alleged, under all the circumstances, show that there is a

1  substantial controversy, between parties having adverse legal interests, of sufficient
2  immediacy and reality to warrant the issuance of a declaratory judgment.'" *Shell Gulf of*
3  *Mex. Inc. v. Ctr. For Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) (citing
4  *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, (1941)). The Ninth Circuit has
5  held that the justiciability requirement is identical to Article III's constitutional or
6  controversy requirement. *Kearns*, 15 F.3d at 143.  Thus, the DJA allows individuals to
7  seek a declaration of the constitutionality of a disputed governmental action. *See Cal.*
8  *Medical Ass'n v. Fed. Election Comm'n,* 435 U.S. 182, 188 (1981); *Duke Power Co. v.*
9  *Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 71 n. 15 (1978); *Barrett v. Premo*, 101
10 F.Supp. 3d 980, 999 (D. Or. 2015).

11      With regard to whether this Court should exercise its discretion in this case,
12 declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in
13 clarifying and settling the legal relations in issue, and (2) when it will terminate and afford
14 relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."
15 *Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984) (quoting *McGraw-Edison Co. v.*
16 *Performed Line Prods. Co.,* 362 F.2d 339, 342 (9th Cir. 1966), *cert denied*, 385 U.S. 919
17 (1966).

### 2. MCCCD is Violating Martinez's First Amendment Right to Academic Freedom

20      MCCCD's prohibition of Martinez's use of her own materials is not an abstract or
21 hypothetical issue.  Defendants acknowledge the ongoing limitations placed on Martinez.
22 [DSOF ¶ 36].   Nor are nor the limitations placed on Martinez simply a matter of
23 personnel policies, as Defendants suggest. The limitations infringe upon Martinez's
24 academic freedom in violation of the First Amendment.

25       Academic freedom, though not a specifically enumerated constitutional right, has
26 long been viewed as a special concern of the First Amendment. *University of California*
27 *Board of Regents v.* Bakke, 438 U.S. 265, 312 (1978); *Keyishian v. Bd. of Regent*, 385
28 U.S. 589, 603 (1967).   The Supreme Court has, moreover, repeatedly stressed the

- 10 -

importance of protecting academic freedom under the First Amendment. *Demers v. Austin*, 746 F.3d 402, (9th Cir. 2012). Indeed, the Court has noted that: "Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us not merely to the teachers concerned." *Keyishian*, 385 U.S. at 603.

The precise contours of academic freedom have been difficult to define. *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1275 (7th Cir. 1982). However, in the Ninth Circuit, the concept applies to the rights of individual faculty members to perform their duties. *See Demers*, 746 F.3d at 411. *See also Hardy v. Jefferson Cmty. College*, 260 F.3d 671, 680 (6th Cir. 2001) ("…the argument that teachers have no First Amendment rights when teaching, or that the government can censor teacher speech without restriction, is totally unpersuasive"); *Allen*, 672 F.2d at 1275 (noting that one First Amendment scholar has written '(t)he heart of the system consists in the right of the individual faculty member to teach, carry on research, and publish without interference from the government, the community, the university administration, or his fellow faculty members.').

In retaliation context, the Ninth Circuit has determined that the *Pickering* balancing test applies to academic employee speech. *See Demers*, 746 F.3d at 422.[4] The *Pickering* test has two parts: First, the employee must show that his or her speech addresses "matters of public concern." *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). Second, the employee's interest in commenting upon matters of public concern must outweigh the interest of the State, as employer, in promoting the efficiency of the public services it performs through its employees. *Id.*

---

[4] This appears to be the closest analog to the situation in this case because, as noted in Section I.B., above, in the December 9, 2010 directive, then president Solley threatened Martinez with discipline, up to and including termination, if she defied the directive, and as noted in Section I.E., above, in August of 2015, interim President Haines wrote Martinez that the restrictions imposed by the December 9, 2010 directive were still in effect and she intended to enforce them. In effect, the threat of retaliation was clear and palpable.

"Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social or other concern to the community.'" *Johnson v. Multnomah Cnty.,* 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick v. Myers,* 461 U.S. 138, 146 (1983). The essential question is whether the speech addresses matters of public as opposed to personal interest. *Demers*, 746 F.3d at 415; *Destrochers v. City of San Bernadino*, 572 F.3d 703, 709 (9th Cir. 2009). The Ninth Circuit has adopted a liberal construction of what an issue of public concern is under the First Amendment. *Demers*, 746 F.3d at 415; *Roe v. City & Cnty. of S.F.,* 109 F.3d 578, 586 (9th Cir. 1997).

In striking the *Pickering* balance, courts give public employers wide discretion and control over the management of their personnel and internal affairs. *Nichols v. Dancer*, 657 F.3d 929, 933 (9th Cir. 2011). This, however, does not mean that employer discretion is without bounds. *Id. Pickering*, after all, is a balancing test that requires courts to weight efficiency concerns against an employee's legitimate interest in engaging on matters of public concern. *Id.* Thus, for instance, in *Hardy*, the Sixth Circuit held that a professor's right to use highly offensive racial and gender-related epithets during a classroom discussion on the power of words to marginalize and oppress outweighed the college's interest in regulating offensive speech. 260 F.3d at 682.

In this case, the prohibition on Martinez's academic freedom to choose her own course materials involves matters of public concern because it relates to her ability to innovate and to teach her students according to their needs. With respect to MCCCD's interest in preventing Martinez from using her own materials, as noted in section A, above, in 2012-2013 RFP § 3.1., MCCCD has recognized the importance of, and indeed agreed to, academic freedom with respect to instructional decisions in the Residential Faculty Policies. Additionally, pursuant to 2012-2013 RFP § 3.9., it has acknowledged that nothing in its policies should be construed to deny or diminish any individual rights that a member has under the law. Finally, pursuant to 2012-2013 RFP § 3.15.7., the Hearing Committee issued binding findings that the Fair Use Doctrine allows the use of copyrighted materials for teaching purposes; that MCCCD did not prove that Martinez

- 12 -

had violated copyright laws or cash handling policies; and that in any case, Martinez has not used any of the lecture notes that gave rise to the directive since 2010. MCCCD cannot, therefore, claim a strong interest in determining Martinez's course materials.

In sum, an actual controversy exists with regard to Martinez's claim of infringement of her First Amendment right to academic freedom; the *Pickering* balancing test tilts strongly in her favor; and this Court's exercise of discretion to rule on the matter would serve a useful purpose in clarifying and settling the legal relations in issue and afford relief from uncertainty and controversy regarding the matter. This Court should therefore deny MCCCD's motion for summary judgment on this issue.

**Martinez Concedes Her Liberty Interest Claims**

At this time, Martinez concedes the causes of action in her Amended Complaint alleging violation of her liberty interest.

### III. CONCLUSION

For the foregoing reasons, Plaintiff Cleopatria Martinez respectfully requests that the Court deny Defendants' Motion for Summary Judgment with respect to her property interest claims and request for declaratory relief. Martinez concedes the liberty interest causes of action.

**RESPECTFULLY SUBMITTED** this 17th day of April 2017.

ROBAINA & KRESIN PLLC

By /s/ Edmundo P. Robaina
Edmundo P. Robaina
Thomas T. Griffin
Ashley A. Marton

Attorneys for Plaintiff Cleopatria Martinez

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of April 2017, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

Pavneet Singh Uppal
Shayna H. Balch
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
puppal@laborlawyers.com
sbalch@laborlawyers.com

Attorneys for Defendants

By  /s/ Gaynell Carpenter