Edmundo P. Robaina (No. 018125)
Thomas T. Griffin (No. 022475)
Ashley A. Marton (No. 029442)
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016-3231
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
epr@robainalaw.com
ttg@robainalaw.com
aam@robainalaw.com

Attorneys for Plaintiff Cleopatria Martinez

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Cleopatria Martinez,<br><br>Plaintiff,<br><br>vs.<br><br>Maricopa County Community College District, et al.,<br><br>Defendants. | No. CV 15-01759-PHX-NVW<br><br>**PLAINTIFF'S CONTROVERTING STATEMENT OF FACTS IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Fed. R. Civ. P. 56 and LRCiv. 56.1(a), Plaintiff Cleopatria Martinez ("Martinez") submits the following Controverting Statement of Facts in support of her Response to Defendants' Motion for Summary Judgment ("CSOF"). Martinez's separate Statement of Materials Facts in Support of their Motion for Summary Judgment ("PSOF") [Doc. 72], is incorporated herein by reference. For purposes of the instant motion only, Martinez admits the facts stated in Paragraphs 2, 4, 5, 7, 8, 14, 18, 22, 23, 24, 27 and 36 of Defendant's Statement of Facts to Support its Motion for Summary Judgment ("DSOF") [Doc. 73] but denies that the facts stated therein are sufficient to grant summary judgment in this matter.  Plaintiffs' responses to the remaining paragraphs are stated below.

///

**<u>Response to Defendants' Statement of Facts</u>**

1.     Disputed: In response to Paragraph 1, Martinez admits that the Maricopa County Community College District ("MCCCD") 2012-2013 Residential Faculty Policies ("2012-2013 RFPs") were in effect and applied to residential faculty during the 2012-2013 school year, but disputes that the effective date was September 1, 2013. The effective date of the policies was July 1, 2012. [PSOF at ¶ 9; Excerpts of Dr. Rufus Glasper Deposition ("Glasper Depo.") at 7:18-8:15, attached hereto as Plaintiff's CSOF Exhibit 1].

3.     Disputed: In response to Paragraph 3, Martinez admits that the MCCCD 2013-2014 Residential Faculty Policies ("2013-2014 RFPs") were in effect and applied to residential faculty during the 2013-2014 school year, but disputes that the effective date was July 1, 2012. The effective date of the policies was September 1, 2013. [PSOF at ¶¶ 11, 12].

6.     Disputed. In response to Paragraph 6, Martinez disputes the legal conclusion that she had exposed MCCCD to substantial risk of liability for copyright infringement. "Opinion, suggested inferences, legal arguments and conclusions are not the proper subject matter of a Local Rule 56.1 statement. Including legal arguments in a 56.1 statement is wholly improper, redundant, unpersuasive and irksome; in short, it advances neither the interests of the parties nor of the court." *Breeser v. Menta Grp., Inc., NFP*, 934 F. Supp. 2d 1150, 1155 (D. Ariz. 2013) (citation omitted), *aff'd sub nom. Breeser v. Menta Grp., Inc.*, No. 13-16512, 2015 WL 6919145 (9th Cir. Nov. 10, 2015). Moreover, Defendants' statement is contrary to the evidence. After completion of the November 18, 2013 evidentiary hearing regarding Martinez's dismissal, the Hearing Committee found that:

> [Phoenix College] failed to carry its burden of proof relating to violation of MCCCD's cash handling rules found in MCCCD Administrative Regulations 1.17, violation of Residential Policy Manual 3.2.4 (relating to financial interests in unpublished materials), violation of U.S. Copyright Law and fair use guidelines, and violation of

1    MCCCD Administrative Regulations 3.2.4 and 3.2.5 related
2    to copyright regulations.

3    [PSOF at ¶ 30].

4        9.    Disputed. Paragraph 9 mischaracterizes the facts. The Hearing
5    Committee's Findings of Fact stated:

6    Dr. Martinez read the Copyright Act of 1976 and believed
7    that it authorized her to use small portions of other scholars'
     work under the "Fair Use" doctrine because she was using it
8    only for classroom teaching purposes on a not for profit
     basis and her use of the material did not undermine the
9    potential market for the other scholar's work.

10

11   Per the "Fair Use" doctrine of the Copyright Act, the "use of
     a copyrighted work… for purposes such as criticism,
12   comment, news reporting, teaching (including multiple
     copies for classroom use), scholarship, or research, is not an
13   infringement on copyright." 17 U.S. § 107.

14   [PSOF at ¶ 30-32].

15       10.    Disputed in part. Martinez admits that MCCCD Administrative Officials
16   explained their copyright related concerns to her, however, Martinez denies that she
17   continued to ignore federal copyright law. Indeed, the Hearing Committee found that:

18   Per the "Fair Use" doctrine of the Copyright Act, the "use of
19   a copyrighted work… for purposes such as criticism,
     comment, news reporting, teaching (including multiple
20   copies for classroom use), scholarship, or research, is not an
     infringement on copyright." 17 U.S. § 107. [PSOF at ¶ 32].
21

22       Moreover, Martinez discontinued use of the "lecture notes" in question
23   immediate after being notified of the possible violations by MCCCD's Vice President of
24   Academic Services, Ronnie Elliot, on or around January 12, 2010. [*See infra* CSOF at
25   ¶¶ 8, 10].

26       11.    Disputed in part: Martinez admits that Anna Solley issued the December
27   9, 2010 Directive but denies that there was unacceptable legal risk. The Hearing
28   Committee's binding Findings of Fact, Conclusions of Law, and Recommendations

found that Phoenix College, represented by Defendants' current legal counsel, failed to carry its burden of proof relating to violation of MCCCD's cash handling rules found in MCCCD Administrative Regulations 1.17, violation of Residential Policy Manual 3.2.4 (relating to financial interests in unpublished materials), violation of U.S. Copyright Law and fair use guidelines, and violation of MCCCD Administrative Regulations 3.2.4 and 3.2.5 related to copyright regulations. [PSOF Exhibit 4 at ¶ 63].

12.     Disputed: Paragraph 12 mischaracterizes the facts and is an improper legal conclusion not supported by the evidence. The Hearing Committee's binding Findings of Fact and Conclusions of Law, found that Phoenix College, represented by Defendants' current legal counsel, failed to carry its burden of proof relating to violation of MCCCD's cash handling rules found in MCCCD Administrative Regulations 1.17, violation of Residential Policy Manual 3.2.4 (relating to financial interests in unpublished materials), violation of U.S. Copyright Law and fair use guidelines, and violation of MCCCD Administrative Regulations 3.2.4 and 3.2.5 related to copyright regulations. [PSOF Exhibit 4 at ¶ 63]. Moreover, the Committee also found that "Dr. Martinez has not used any of the four sets of "lecture notes" since the Spring of 2010 when Phoenix College first raised its concerns regarding the notes." [*Id.* at ¶ 24]. Martinez also testified at the November 18, 2013 evidentiary hearing that the materials Defendants accused her of allegedly copyrighting were never used after Spring 2010. [DSOF Exhibit 23 (November 18, 2013 Hearing Transcript), at 197:2-13; 203:23 – 205:15]. Defendants' legal argument (that she continued to violate copyright laws after the photocopying restrictions were put in place) to the contrary is both mistaken and improper. *Breeser*, 934 F. Supp. 2d at 1155.

13.     Disputed: Paragraph 13 mischaracterizes the facts. The statement does specify a time frame for the alleged copyright violations that Mr. Sean Garrison reviewed. Attorney Sean Garrison only reviewed Martinez's course material in fall 2010. [DSOF Exhibit 23 (November 18, 2013 Hearing Transcript) at 95:3-13]. Moreover, at the November 18, 2013 Hearing, Martinez's private copyright expert

attorney Fredrick Bellamy testified that the "lecture notes" he reviewed did not violate copyright law because they fell under the "Fair Use" doctrine. [DSOF Exhibit 23 (November 18, 2013 Hearing Transcript) at 282:25 – 283:11; PSOF Exhibit 4 at ¶¶ 30-32].

15.    Disputed: Paragraph 15 mischaracterizes the facts and is an improper legal conclusion not supported by the evidence. The Hearing Committee's binding Findings of Fact and Conclusions of Law, found that Phoenix College, represented by Defendants' current legal counsel, failed to carry its burden of proof relating to violation of MCCCD's cash handling rules found in MCCCD Administrative Regulations 1.17., violation of Residential Policy Manual 3.2.4. (relating to financial interests in unpublished materials), violation of U.S. Copyright Law and fair use guidelines, and violation of MCCCD Administrative Regulations 3.2.4 and 3.2.5 related to copyright regulations. [PSOF Exhibit 4 at ¶ 63]. Moreover, Martinez never 'sold' any material to her students but instead made a set of the materials available to her students to copy at their own expense or offered to copy the materials at Staples if the students agreed to reimburse her for her out-of-pocket copying expenses. [Defendants' Exhibit 23 (November 18, 2013 Hearing Transcript) at 214:15–215:14].

16.    Disputed: Paragraph 16 mischaracterizes the facts and is opinion not supported by evidence. First, Martinez never 'sold' any material to her students but instead made a set of the materials available to her students to copy at their own expense or offered to copy the materials at Staples if the students agreed to reimburse her for her out-of-pocket copying expenses. [Defendants Exhibit 23 (November 18, 2013 Hearing Transcript) at 214:15–215:14]. Martinez did not make any money in reference to the materials. [*Id.* at 214:15–215:14]. Martinez repeatedly testified that she lost money. [*Id.* at 214:15–215:14]. Moreover, the 2012-2013 RFPs state, "Faculty will determine curriculum and relevant subject matter for course, recommend the appropriate pedagogy, textbooks and other material relevant to teaching their subject." (RFP 3.1.) [PSOF Exhibit 2 at -11-]. The spirit of 'academic freedom' for residential faculty goes

against the statements made Defendants.

17.   Disputed: Paragraph 17 is misleading. Martinez never 'sold' any material to her students but instead made a set of the materials available to her students to copy at their own expense or offered to copy the materials at Staples if the students agreed to reimburse her for her out-of-pocket copying expenses. [Defendants Exhibit 23 (November 18, 2013 Hearing Transcript) at 214:15–215:14].

19.   Disputed: Paragraph 19 mischaracterizes the facts. At the Pre-Disciplinary Conference, Martinez was not given an opportunity to respond to the charges against her but rather was asked to sign an agreement and felt threatened. [Defendants Exhibit 23 (November 18, 2013 Hearing Transcript) at 248:6–250:4].

21.   Disputed: Paragraph 21 mischaracterizes the facts. Under the 2012-2013 RFPs § 3.15., regarding faculty member dismissal, residential faculty have a <u>right</u> to have a Hearing Committee constituted to conduct a hearing regarding the allegations against the faculty member (3.15.4.); and the right to attend the hearing, present testimony, evidence or statements, oral or written, in his/her behalf and be represented by legal counsel (3.15.6). [PSOF at ¶ 23].

25.   Disputed: Paragraph 25 is based on inadmissible hearsay and lacks foundation. Evidence produced to support motions for summary judgment must be admissible and otherwise adhere to the Federal Rules of Evidence. See Fed.R.Civ.P. 56(e)(1). The Ninth Circuit requires that evidence offered in support of a motion for summary judgment be admissible both in form and in content. *Canada v. Blain's Helicopters, Inc*., 831 F.2d 920, 925 (9th Cir.1987); *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir.1976). Thus "evidence containing hearsay statements is admissible only if offered in opposition to the motion. "Because '[v]erdicts cannot rest on inadmissible evidence' and a grant of summary judgment is a determination on the merits of the case, it follows that the moving party's affidavits must be free from hearsay."" *Quanta Indem. Co. v. Amberwood Development Inc*, 2014 WL 1246144 (D. Ariz., March 26, 2014) *citing Burch v. Regents of the Univ. of Cal*., 433 F.Supp.2d

1110, 1121 (E.D.Cal.2006). Here, Dr. Glasper's affidavit, wherein he states that it was the Hearing Committee that suggested unpaid suspension in a meeting on January 24, 2014, is not supported by the evidence and is being suggested for the first time in support of Defendants' motion for summary judgment.

26.    Disputed: Paragraph 26 based on inadmissible hearsay and lacks foundation. Evidence produced to support motions for summary judgment must be admissible and otherwise adhere to the Federal Rules of Evidence. See Fed.R.Civ.P. 56(e)(1). The Ninth Circuit requires that evidence offered in support of a motion for summary judgment be admissible both in form and in content. *Canada v. Blain's Helicopters, Inc*., 831 F.2d 920, 925 (9th Cir.1987); *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir.1976).  Thus "evidence containing hearsay statements is admissible only if offered in opposition to the motion. 'Because '[v]erdicts cannot rest on inadmissible evidence' and a grant of summary judgment is a determination on the merits of the case, it follows that the moving party's affidavits must be free from hearsay.'" *Quanta Indem. Co. v. Amberwood Development Inc*, 2014 WL 1246144 (D. Ariz., March 26, 2014) *citing Burch v. Regents of the Univ. of Cal*., 433 F.Supp.2d 1110, 1121 (E.D.Cal.2006). Here, Dr. Glasper's affidavit, wherein he states that it was the Hearing Committee that suggested unpaid suspension in a meeting on January 24, 2014, is not supported by the evidence and is being suggested for the first time in support of Defendants' motion for summary judgment.

28.    Disputed: Paragraph 28 is misleading. While Martinez and her former counsel, Stephen Montoya, met with Vice Chancellor Bowers on March 7, 2014, it was not a meaningful discussion as Bowers had no authority to overturn the Chancellor's decision. [PSOF at ¶ 22].

29.    Disputed. Paragraph 29 is misleading in that it suggests that Martinez, through her former attorney, submitted a legal brief to the Governing Board or otherwise received a meaningful opportunity to present her case and for the Governing Board to decide on the imposition of a 16-month unpaid suspension. [*See infra* CSOF at

¶¶ 22-24].

30.    Disputed: Paragraph 30 is misleading in that it suggests that Martinez received a meaningful opportunity to present an argument to the Governing Board regarding her suspension. Martinez has never had the opportunity to "argue" her position in front of the Board, rather she has presented, in person (at the "Citizen's Interim") or by letter (with the written contents of her presentation) a three-minute presentation regarding her suspension. [Excerpts from Dr. Cleopatria Martinez Deposition ("Martinez Depo.") at 109:4-19, 112:23-114:14, attached hereto as Plaintiff's CSOF Exhibit 2]. While Martinez and Stephen Montoya (as an individual and not as Martinez's attorney) appeared for the March 25, 2014 Board Meeting, it was for the Citizen Interim and the Board could not discuss the issue or take legal action. [Deposition of Rule 30(b)(6) Teresa Toney ("Toney Depo.") at 10:3-6, 16:8-23, attached hereto as Plaintiff's CSOF Exhibit 3]. The Citizen's Interim is opportunity for the public to give a brief statement, limited to five minutes, on matters that may or may not be on the meeting's agenda [*Id.* at 11:14-17; 16:24-17:4, attached hereto as Plaintiff's CSOF Exhibit 3]. Martinez and Montoya's brief statements regarding her suspension were not on the Board's agenda and the Board meeting minutes demonstrate that the Governing Board did not seek or was not going to seek any further information regarding the suspension. [*Id.* at 8:13-15:8, attached hereto as Plaintiff's CSOF Exhibit 3].

31.    Disputed: Paragraph 31 is misleading in that it suggests that Martinez received a meaningful opportunity to present an argument to the Governing Board regarding her suspension.  Martinez had no right under 2013-2014 RFP § 3.11 to have the suspension reviewed by the Governing Board [PSOF ¶ 22], and other than in "Citizen's Interim" (also known as calls to the public), during which the public is allowed to speak at public Board meetings for approximately five minutes [Toney Depo. at 10:3-6, attached hereto as Plaintiff's CSOF Exhibit 3], Martinez never spoke to the Board about her situation.  Indeed, Martinez has never had the opportunity to

"argue" her position in front of the Board, rather she has presented, in person (at the "Citizen's Interim") or by letter (with the written contents of her presentation) a three-minute presentation regarding her suspension. [Martinez Depo. at 109:4-19, 112:23-114:14, attached hereto as Plaintiff's CSOF Exhibit 2]. Moreover, it is undisputed that the Board never responded Martinez's concerns, and never made any determinations as to, or any pronouncements with regard to, Martinez's suspension. [Excerpts from Judy Castellanos Deposition ("Castellanos Depo.") at 23:24–25:4, attached hereto as Plaintiff's CSOF Exhibit 4; Glasper Depo. at 51:25-53:9, attached hereto as Plaintiff's CSOF Exhibit 1].   As a result, Glasper's action went un-reviewed, Martinez did not work from April of 2014 until the Fall of 2015, and she was without pay or benefits for 16 months. [PSOF ¶ 46].

32.   Disputed: For the reasons set forth in Paragraph 31, *supra*.

33.   Disputed: For the reasons set forth in Paragraph 31, *supra*.

34.   Disputed: For the reasons set forth in Paragraph 31, *supra*.

35.   Disputed: For the reasons set forth in Paragraph 31, *supra*.

37.   Disputed in Part. While Martinez admits that she never refunded the $11 to the students, the fallacious basis for the requirement was that Plaintiff violated copyright law and MCCCD's cash handling policies. The Hearing Committee found that MCCCD failed to prove either allegation. [*See supra* ¶ 6].

**Plaintiff's Additional Statement of Material Facts**

1.   The 2012-2013 RFP § 3.1, titled "Instructional Rights/Academic Freedom," provides that:

> Faculty are entitled to instructional freedom in discussing their subject with students, and they should exercise their best effort to ensure topics are relevant to their subject. Faculty will determine curriculum and relevant subject matter for courses, recommend appropriate pedagogy, textbooks, and other materials relevant to teaching their subject.

[PSOF Exhibit 2 at pg. 50 of 117].

2.       The 2012-2013 RFP § 3.9 further states that: "Nothing in this policy shall be construed to deny or diminish any individual rights that a member has under the law." [*Id.*].

3.       During the times relevant to this matter, Martinez and her colleagues routinely borrowed mathematics problems from other mathematicians to use in their student handouts for educational purposes on a not for profit basis. [PSOF Exhibit 4, Hearing Committee Findings of Fact, Conclusions of Law, and Recommendations, MCCCD/Martinez03845 at ¶ 6].

4.       The borrowing of mathematics problems is a longstanding, widespread custom throughout MCCCD and academia at large. [*Id.* at ¶ 7].

5.       Instead of requiring her mathematics students to purchase textbooks, Martinez prepared her own course materials and distributed them to her students. [*Id.* at ¶ 8].

6.       Martinez believed that the Copyright Act of 1976 authorized her to use small portions of other scholars' work under the "Fair Use" doctrine because she was using it only for classroom teaching purposes. [*Id.* at ¶ 8; DSOF Exhibit 23 (November 18, 2013 Transcript) at 188:6-10].

7.       Indeed, the Hearing Committee ultimately found that pursuant to the "Fair Use" doctrine of the Copyright Act, the use of copyrighted work for purposes such as teaching (including multiple copies for classroom use) is not an infringement of copyright. [PSOF Exhibit 4, Hearing Committee Findings of Fact, Conclusions of Law, and Recommendations, MCCCD/Martinez03846 at ¶ 10].

8.       Despite the applicability of the Fair Use doctrine to Martinez's use of the textbook materials, on or around January 12, 2010, MCCCD's Vice President of Academic Services, Ronnie Elliot sent an email to Martinez notifying her that there were alleged copyright-related problems with the materials she had printed for the Fall 2009 and Spring 2010 semester. [*Id.* at ¶ 16].

9.       Over the next several weeks, other members of MCCCD's administration

also communicated to Martinez alleged copyright-related concerns. [*Id.* at ¶¶ 18-20 and 23-24].

10.    Thereafter, Martinez did not use any of the "lecture notes" in question. [*Id.* at ¶ 24; DSOF Exhibit 23 (November 18, 2013 Hearing Transcript) at 197:2-13; 203:23 – 205:15].

11.    Martinez, further, obtained written permission from the publisher of Sullivan & Sullivan's "Precalculous," to copy materials from their book. [PSOF Exhibit 4, Hearing Committee Findings of Fact, Conclusions of Law, and Recommendations, MCCCD/Martinez03846 at ¶ 28].

12.    On December 9, 2010, Phoenix College President Anna Solley, concluded that Martinez's alleged misconduct posed an unacceptable risk of a copyright infringement claim and imposed restrictions on Martinez's photocopying privileges. [*Id.* at ¶ 36].

13.    The December 9, 2010 Directive prohibited Martinez from utilizing any course materials of her own creation. [*Id.* at ¶ 41]. Solley noted that violation of the directive would be considered grounds for disciplinary action, up to and including termination. [DSOF Exhibit 20 (December 9, 2010 Directive) at p. 2].

14.    Instead, Martinez was required to only use course materials that are "approved by the mathematics department" or that are "available in the bookstore for sale to students and that are authored by persons other than [Martinez]." [*Id.*].

15.    At the beginning of the Fall 2012 semester, Martinez informed her students that they were not required to purchase a course textbook and that she would provide them with her own course materials in lieu of a textbook. [*Id.* at ¶ 44].

16.    Martinez further did not submit her Fall 2012 materials to the Mathematics Department Chairperson for approval.  [*Id.* at ¶ 46].

17.    On August 25, 2015, Phoenix College Interim President Chris Haines sent a letter to Martinez indicating, in pertinent part, that restrictions imposed by the December 9, 2010 directive were still in effect and that she intended to enforce them.

[Plaintiff's Amended Complaint ¶¶ 81-82 and Plaintiff's Amended Complaint Exhibit 11; Defendants' Amended Answer ¶¶ 81-82].

18. On October 12, 2015, after she resumed her teaching duties, Martinez sent an email to Interim Phoenix College President Chris Haines requesting that she remove the restrictions on her from the 2010 directive. [Plaintiff's Amended Complaint ¶ 87; Defendants' Amended Answer at ¶ 87; A clean copy Plaintiff's Amended Complaint Exhibit 12 (October 12, 2015 email to Haines) is attached hereto as Plaintiff's CSOF Exhibit 5].

19. Martinez noted that the basis for the directive (the alleged copyright violations) no longer exists, the directive obstructs Martinez's teaching capacity by not allowing her to write test questions of her own, not allowing her to use examples that she constructs in her daily lectures, and not allowing her to use anything that she develops. [Plaintiff's CSOF Exhibit 5].  Martinez further noted that "the departmental barriers resulting from the directive have placed unjustified stress on [her] spontaneous teaching." [*Id.*; Martinez Depo. at 132:21-136:2, attached hereto as Plaintiff's CSOF Exhibit 2]

20. Martinez cited, as an example, the fact that she submitted a test to be approved because the problems that she used were based on material covered in class and addressed the needs of the students; that it was rejected because she did not copy problems directly from the textbook, and the rejection threw off her teaching schedule. [*Id.*].

21. She further noted that the restrictions stifle her innovation; place limits on her ability to teach based on the needs of the students and what the students need to learn. [*Id.*].

22. The restrictions, however, were not lifted. [Martinez Depo. at 125:14-20, attached hereto as Plaintiff's CSOF Exhibit 2].

23. Martinez had no right under 2013-2014 RFP § 3.11 to have the suspension reviewed by the Governing Board [PSOF ¶ 22], and other than in "citizens' interims"

(also known as calls to the public), during which the public is allowed to speak at public Board meetings for approximately five minutes [Toney Depo. at 10:3-6, attached hereto as Plaintiff's CSOF Exhibit 3], Martinez never spoke to the Board about her situation. Indeed, Martinez has never had the opportunity to "argue" her position in front of the Board, rather she has presented, in person (at the "citizen's interim") or by letter (with the written contents of her presentation) a three-minute presentation regarding her suspension. [Martinez Depo. at 109:4-19, 112:23-114:14, attached hereto as Plaintiff's CSOF Exhibit 2].

24.   Moreover, it is undisputed that the Board never responded Martinez's concerns, and never made any determinations as to, or any pronouncements with regard to, Martinez's suspension. [Castellanos Depo. at 23:24–25:4, attached hereto as Plaintiff's CSOF Exhibit 4; Glasper Depo. at 51:25-53:9, attached hereto as Plaintiff's CSOF Exhibit 1].

25.   As a result, Glasper's action went un-reviewed, Martinez did not work from April of 2014 until the Fall of 2015, and she was without pay or benefits for 16 months. [PSOF ¶ 46].

DATED this 17th day of April 2017.

ROBAINA & KRESIN PLLC

By  /s/ Edmundo P. Robaina
Edmundo P. Robaina
Thomas T. Griffin
Ashley A. Marton
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of April 2017, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal to the following CM/ECF Registrants:

Pavneet Singh Uppal
Shayna H. Balch
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 805
Phoenix, Arizona 85012-2425

Attorneys for Defendants

By    /s/ Gaynell Carpenter