# EXHIBIT 2

# TO

# PLAINTIFF'S CONTROVERTING STATEMENT OF FACTS

# IN RESPONSE TO

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Cleopatria Martinez,            )
                                )
            Plaintiff,           )
                                )
    v.                           )   No. CV 15-01759-PHX-NVW
                                )
Maricopa County Community       )
College District; et al.,       )
                                )
            Defendants.          )
_____)

VIDEOTAPED DEPOSITION OF

CLEOPATRIA MARTINEZ, Ph.D.

VOLUME I (Pages 1 through 158)

Phoenix, Arizona
August 16, 2016
10:07 a.m.

Glennie Reporting Services, LLC
7330 North 16th Street
Suite A100
Phoenix, Arizona  85020-5275

602.266.6535
www.glennie-reporting.com

Prepared by:
Janet Hauck, RPR
Arizona CR No. 50522

2

I N D E X

| Witness | Page |
|---|---|
| CLEOPATRIA MARTINEZ, Ph.D. | |
|     Examination by Ms. Balch: | 5 |

INDEX TO EXHIBITS

| Description | | Page |
|---|---|---|
| Exhibit 1 | Residential Faculty Policies MartinezDST003735-826 | |
| Exhibit 2 | Verified Amended Complaint | 21 |
| Exhibit 3 | Notice MCCCD/Martinez02248-251 | |
| Exhibit 4 | Notice of Pre-Disciplinary Conference, with attachments MCCCD/Martinez02114-120 | 47 |
| Exhibit 5 | Preliminary Scheduling Order | 54 |
| Exhibit 6 | Cleopatria Martinez's Position Statement | 55 |
| Exhibit 7 | Cleopatria Martinez's Supplemental Position Statement | 56 |
| Exhibit 8 | Cleopatria Martinez's Citation of Supplemental Authority | 57 |
| Exhibit 9 | Letter to Members of the Governing Board, 3/12/14 | 83 |
| Exhibit 10 | Governing Board Meeting - 03/25/14 | 87 |
| Exhibit 11 | Governing Board Minutes - 03/25/14 | 91 |
| Exhibit 12 | Governing Board Meeting - 05/27/14 | 96 |
| Exhibit 13 | Governing Board Meeting - 10/28/14 | 102 |
| Exhibit 14 | Governing Board Minutes - 10/28/14 | 104 |

3

VIDEOTAPED DEPOSITION OF

CLEOPATRIA MARTINEZ, Ph.D., VOLUME I, was taken on

August 16, 2016, commencing at 10:07 a.m., at FISHER &

PHILLIPS LLP, 201 East Washington, Suite 1450, Phoenix,

Arizona, before JANET HAUCK, RPR, a Certified Reporter,

Certificate No. 50522, for the State of Arizona.


APPEARANCES:

For Plaintiff:

    ROBAINA & KRESIN, PLLC
    Ashley A. Marton, Esq.
    5343 North 16th Street, Suite 200
    Phoenix, Arizona  85016

For Defendants:

    FISHER & PHILLIPS LLP
    Shayna H. Balch, Esq.
    201 East Washington, Suite 1450
    Phoenix, Arizona  85004-2330

Also present:

    Holly Rye, Certified Legal Video Specialist

Cleopatria Martinez, Ph.D., Vol. I - videotaped - 08/16/2016

4

1          THE VIDEOGRAPHER:  Good morning.  My name is
2  Holly Rye, certified legal video specialist with K-Video
3  Productions.
4          Our court reporter is Janet Hauck
5  representing Glennie Reporting Services.  Their address is
6  7330 North 16th Street, Suite A100, Phoenix, Arizona,
7  85020.
8          We are at Fisher & Phillips located at 201
9  East Washington Street, Suite 1450, Phoenix, Arizona,
10 85004, to take the deposition of Cleopatria Martinez on
11 behalf of the plaintiff [sic] in the United States District
12 Court of Arizona.  Case is Martinez versus Maricopa County
13 Community College District, et al.  The case number is
14 CV-15-01759-PHX-NVW.  Today's date is August 16th, 2016.
15 The time is 10:07 a.m.
16         The attorneys will now introduce themselves,
17 plaintiff's first, please.
18         MS. MARTON:  Ashley Marton for the plaintiff,
19 Cleopatria Martinez, of Robaina & Kresin.
20         MS. BALCH:  Shayna Balch with Fisher &
21 Phillips for the defendants.
22         THE VIDEOGRAPHER:  Thank you.
23         And will the court reporter please swear in
24 the witness.
25         (Next page, please.)

1   Q.   Do you recognize this document?
2   A.   Yes.
3   Q.   Is it a letter dated February 21st, 2015, from
4   you to the governing board?
5   A.   Yes.
6   Q.   Did you author this document?
7   A.   Yes.
8   Q.   Are your statements contained in the document
9   correct?
10  A.   To the best of my ability, I think so.
11  Q.   What is the purpose of this February 21st, 2015
12  letter to the board?
13  A.   The purpose of this letter is to request MCCD
14  [sic] follow the grievance policy process and to inquire as
15  to why the grievance that I filed on May 3rd, 2010,
16  pursuant to Section 6.1 of the Residential Faculty Policies
17  against Mathematics Chair, Joe Sueyoshi, which I
18  hand-delivered, was not given to the governing board.
19  Q.   Is this February 21st, 2015 letter in relation
20  to your suspension?
21  A.   It has -- it references the grievances.  It
22  doesn't mention the -- I don't know.  I just know it's
23  referencing the grievances, employee -- regarding employee
24  grievances.
25  Q.   Do you see in the third paragraph up from the

1  bottom it mentions the suspension for 15 months without
2  pay?
3      A.   I see that mentioned.
4      Q.   So is this February 21st, 2015 letter to the
5  board regarding your suspension and the procedures
6  surrounding your suspension?
7           MS. MARTON:  Objection.
8           Go ahead and answer.
9           THE WITNESS:  The purpose of this letter is
10 to request MCCD -- I read that.  That's the purpose of the
11 letter.  Grievances, grievance policy process.
12     Q.   BY MS. BALCH:  All right.  So we have discussed
13 several letters.  There was a March 25th, 2014 letter that
14 you submitted to the governing board.  There was a
15 August 13th letter to the governing board, an October 28th
16 letter to the governing board, a January 27, 2015 letter to
17 the governing board and a February 21, 2015 letter to the
18 governing board.  That's a total of five letters that you
19 submitted to the governing board between March 25th, 2014,
20 and February 21st, 2015; is that correct?
21     A.   Yes.
22     Q.   Are there any other letters that you're aware of
23 that you submitted to the governing board?
24     A.   No.
25     Q.   And you attended the governing board meetings

1   for the purposes of the citizens interim on March 25th,
2   2014, and October 28th, 2014; is that correct?
3                  MS. MARTON:  Objection; asked and answered.
4   We've gone over all this.
5                  THE WITNESS:  So yeah.  That's what we've
6   been saying, yes.
7       Q.    BY MS. BALCH:  Are there any other governing
8   board meetings that you attended for purposes of speaking
9   to the board about your suspension?
10                 MS. MARTON:  Object to the form.
11                 Go ahead and answer.
12                 THE WITNESS:  What was the question?
13      Q.    BY MS. BALCH:  We've established that you went
14  to board meetings for the purpose of attending the citizens
15  interim.  What I'm asking you is:  Were there any other
16  board meetings that you attended -- whether it's for a
17  citizens interim, whether it's for some other purpose --
18  where you spoke with the board about your suspension?
19      A.    No.  That's the best of my recollection.
20      Q.    During your time doing citizens interim during
21  the governing board meetings were you ever cut off?
22      A.    I don't remember.
23      Q.    Were you able to say everything that you wanted
24  to say?
25      A.    No.

1    Q.    Were you able to argue that your suspension was
2    the equivalent of a termination?
3    A.    No.
4    Q.    You weren't able to argue that your suspension
5    was the equivalent of a termination?
6    A.    No.
7    Q.    Take a look at Exhibit 10 to your deposition.
8    A.    Where is it?
9    Q.    Exhibit 10.  It's somewhere in the stack there.
10   A.    I've got it right here.  Okay.
11   Q.    I just asked you if you had the opportunity to
12   argue that your suspension was the equivalent of a
13   termination when you appeared before the board in a
14   citizens interim.  You said that you did not have that
15   opportunity.  I want to give you an opportunity to confirm
16   that.  Did you have the opportunity to state to the board
17   that your suspension was the equivalent of a termination
18   when you appeared before the board on March 25th, 2014?
19   A.    Did I have the opportunity to present a
20   statement or to make an argument?  What are you asking?
21   Q.    Were you able to state to the governing board
22   that your suspension was the equivalent of a termination?
23   A.    That statement -- yeah, that statement was able
24   to come out in a three-minute presentation, but it was not
25   an argument by a long shot.

```
 1      Q.    Why are you taking issue with the word
 2   "argument"?
 3      A.    Because it's not a presentation.  It's a
 4   three-minute, one-sided statement.  So it's certainly not
 5   an argument.  It's not equivalent to anything but what it
 6   states.  It's a three-minute, one-sided statement.
 7      Q.    So you're taking issue with the word "argument"?
 8      A.    No.  I'm assuming -- I'm making an assumption --
 9   that you're asking if I had a fair opportunity to present
10   information, and that's not -- three minutes is not.
11      Q.    I didn't ask that question.  I asked you whether
12   or not you argued that your suspension was the equivalent
13   of a termination --
14      A.    Yeah, and I didn't argue.
15      Q.    -- and you stated that you did not.  So you're
16   stating that you take objection with the term "argued" and
17   that you stated that your suspension was the equivalent of
18   a termination, correct?
19             MS. MARTON:  Objection.  We're just repeating
20   testimony at this point.
21             MS. BALCH:  I just want to make sure I
22   understand your client's testimony correctly.
23             MS. MARTON:  I understand, but you are
24   repeating testimony over and over again.
25             MS. BALCH:  Counsel, if you have an objection
```

115

1  you can state it for the record.
2              MS. MARTON:  I understand.  She can answer.
3  I'm stating for the record that you're asking the same
4  question over and over again.
5              MS. BALCH:  Okay.  Well, you can state "form"
6  or "foundation," limited to that.
7              MS. MARTON:  Which I have.
8              Go ahead.
9              THE WITNESS:  Okay.  So you'll have to ask
10  again.
11      Q.    BY MS. BALCH:  That's fine.  I was asking you
12  whether or not you were able to argue to the board that
13  your suspension was the equivalent of a termination.  You
14  initially told me no.  But it appears that you're taking
15  issue with the word "argue."  I want to make sure I
16  understand your testimony correctly.  This is my only
17  opportunity to question you.  And you changed your
18  testimony that you stated to the governing board that your
19  suspension was the equivalent of a termination; is that
20  correct?
21      A.    Yes.  A statement was made to that effect, a
22  single statement.
23              MS. BALCH:  All right.  Let's take a quick
24  break.  I'm going to go grab a soda real quick, about a
25  five-minute break.

1    Q.    And what facts do you have -- strike that.
2          Is it your contention that it is improper
3    for MCCCD to continue to have the December 9th, 2010
4    directive in place?
5    A.    Yes.
6    Q.    What facts do you have in support of that
7    position?
8    A.    To answer that I'd have to talk to my counsel to
9    see which facts support the removal of this.
10   Q.    Again, you're the plaintiff.  You've brought
11   these claims against my client.  This is my opportunity to
12   question you.
13         You don't have any facts in support of your
14   allegation that it's improper to keep the December 9th,
15   2010 directive in place?
16         MS. MARTON:  Objection.  That's not what she
17   said.  She said she didn't know.
18         THE WITNESS:  What was the question?
19   Q.    BY MS. BALCH:  I'm asking you for any facts that
20   you have in support of your allegation that it's improper
21   for the District to keep the December 9th, 2010 directive
22   in place.
23         MS. MARTON:  Objection; asked and answered.
24         You can answer again if you want.
25         THE WITNESS:  That's something that I would

1    A.    Yes.
2    Q.    And this is an e-mail chain between you and
3  interim president Chris Haines, correct?
4    A.    Yes.
5    Q.    And the top e-mail entry is dated October 27,
6  2015, correct?
7    A.    Yes.
8    Q.    And it appears that you initiated this e-mail
9  chain on October 12th, 2015, at the bottom of the first
10 page; is that correct?
11   A.    Yes.
12   Q.    And you were writing to interim president
13 Chris Haines to remove the 2010 directive; is that right?
14   A.    Yes.
15   Q.    Why were you asking interim president Haines to
16 remove the directive?
17   A.    It was a presidential directive and she's the
18 president.
19   Q.    Let me ask it differently.  Why do you want the
20 2010 directive removed?
21   A.    I stated in the e-mail.
22   Q.    Well, I'm asking you, why did you want the 2010
23 directive removed?
24   A.    The basis for it no longer exists and the
25 directive obstructs my teaching capacity in many ways.

1    Q.    Where are you reading from?
2    A.    My letter, my original on October 12.
3    Q.    The first sentence here?
4    A.    Mm-hmm, yes.
5    Q.    What facts do you have in support of your
6  assertion that the directive obstructs your teaching
7  capacity in many ways?
8    A.    I listed those.
9    Q.    Are those all of the facts that you have in
10 support?
11   A.    No, those are some.
12   Q.    What other facts do you have in support of your
13 assertion that the directive obstructs your teaching
14 capacity?
15   A.    I would want to meet with my lawyer and make up
16 a list if that's what you want.  I gave examples here.
17   Q.    Again, you're the plaintiff in this lawsuit.
18   A.    Mm-hmm.
19   Q.    You are alleging that the December -- sorry --
20 that the 2010 directive should no longer be continued, and
21 this is my opportunity to question you about that
22 allegation.  And I've asked you for all facts that you have
23 in support of your assertion -- these are your words --
24 that the directive obstructs your teaching capacity in many
25 ways.  You've listed three.

1           Are there any other facts that you have in
2   support of your assertion that the 2010 directive obstructs
3   your teaching capacity in many ways?
4        A.    I am not allowed to write test questions of my
5   own.  I am not allowed to write anything of my own.  I am
6   not allowed to use different variables as a mathematician.
7   In my daily lectures I am not allowed to use examples that
8   I construct.  I'm not allowed to use anything of my own.  I
9   am not allowed to use anything I develop, and those are
10  pretty broad.  So that's very obstructional.
11       Q.    Are there any other facts other than the ones
12  that you've listed?
13       A.    I just named a few.  I just named some that are
14  broad.
15       Q.    In addition to those that you just listed and
16  that are on this e-mail, are there any other facts that you
17  have in support of your assertion that the 2010 directive
18  obstructs your teaching capacity in many ways?
19       A.    Other than I'm not allowed to use anything of my
20  own, I can't use any of my own knowledge or my own writing,
21  that's pretty extensive.
22       Q.    How does that obstruct your teaching capacity?
23       A.    Well, that's my job to teach.  I can't write
24  anything of my own.  That's very obstructional.  I cannot
25  write anything of my own to present to my students.  And I

1   have over 40 years of training in this, but my students are
2   not able to get any information that is my own.
3         Q.    Let's go back to the October 18th, 2012
4   corrective action.  And I believe we introduced that as an
5   exhibit, Exhibit 3 to your deposition.
6         A.    Exhibit 3 of the deposition?
7               MS. MARTON:  Looks like this.
8               THE WITNESS:  Oh, okay.
9         Q.    BY MS. BALCH:  So on October 18th, 2012, you
10  were told to issue refunds to students via personal check,
11  correct?
12        A.    Yes.
13        Q.    And you were specifically advised that failure
14  to do so would result in discipline up to and including
15  termination of employment, correct?
16        A.    Yes.
17        Q.    But as of March 20th, 2014, the date of the
18  notice of pre-disciplinary conference, you still had not
19  issued refunds to students; is that correct?
20        A.    As of when?
21        Q.    As of March 20th, 2014, the date of the notice
22  of pre-disciplinary conference, you still had not issued
23  refunds to students?
24        A.    That's right.
25        Q.    As of the November 18th, 2014 hearing you still

1   had not issued refunds to students; is that correct?
2       A.    What was that date again?
3       Q.    The November 18th, 2014 hearing.
4       A.    Yes.
5       Q.    And the Hearing Committee found that you did not
6   comply with the October 18th, 2012 and the January 9th,
7   2013 directives, correct?
8       A.    The January what?
9       Q.    9th, 2013 directives.
10      A.    What's the January 9th, 2013 directive?
11      Q.    Read from the Hearing Committee findings.
12  Paragraph 60 of the Hearing Committee findings states, "At
13  the November 18th hearing Dr. Martinez did not provide any
14  explanation for her refusal to comply with the
15  October 18th, 2012 and January 9, 2013 directives to issue
16  refunds to her students."
17      A.    Is that a question?  I didn't get the question.
18      Q.    I was asking if that was a finding found by the
19  Hearing Committee?
20      A.    That was a finding.
21      Q.    And the Hearing Committee found that you were
22  insubordinate, correct?
23      A.    Where is that?
24      Q.    Paragraph 66 states, "Dr. Martinez willfully and
25  intentionally failed to follow instructions that were