**EXHIBIT 3**

**TO**

**PLAINTIFF'S CONTROVERTING STATEMENT OF FACTS**

**IN RESPONSE TO**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| CLEOPATRIA MARTINEZ, | ) |
| | ) |
| Plaintiffs, | ) No. CV 15-01759 NVW |
| | ) |
| vs. | ) |
| | ) |
| MARICOPA COUNTY COMMUNITY COLLEGE | ) |
| DISTRICT, a political subdivision of | ) |
| the State, and RUFUS GLASPER and | ) |
| DEBRA GLASPER, husband and wife, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

DEPOSITION OF Rule 30(b)(6), TERESA TONEY

Phoenix, Arizona
November 10, 2016
10:04 a.m.

*Miller Certified Reporting, LLC*
*Post Office Box 513*
*Litchfield Park, Arizona 85340*
*(P)623-975-7472 (F)623-975-7462*
*www.MillerCertifiedReporting.com*

(Copy)

Angela Furniss Miller, RPR
Certified Reporter  (AZ 50125)

1                          I N D E X

2    WITNESS                                          PAGE

3    Rule 30(b)(6), TERESA TONEY

4            EXAMINATION BY MR. ROBAINA                 4

5            EXAMINATION BY MS. BALCH                  20

6            FURTHER EXAMINATION BY MR. ROBAINA        21

7

8                          * * *

9                       E X H I B I T S

10

11   NO.        DESCRIPTION                          PAGE

     No. 1    Maricopa County Community College        8
12            District Revised Governing Board
              Agenda, March 25, 2014
13
     No. 2    Maricopa County Community College       13
14            District Governing Board Minutes,
              March 25, 2014
15
     No. 3    Maricopa County Community College       17
16            District revised Governing Board
              Agenda, May 27, 2014
17
     No. 4    Maricopa County Community College       18
18            District Governing Board Minutes, May
              27, 2014
19
     No. 5    Maricopa County Community College       18
20            District Revised Governing Board
              Agenda, October 28, 2014
21
     No. 6    Maricopa County Community College       19
22            District Governing Board Minutes,
              October 28, 2014
23

24

25

```
 1               DEPOSITION OF Rule 30(b)(6), TERESA TONEY, a

 2     witness herein, was taken upon oral examination by the

 3     parties through their respective attorneys before ANGELA

 4     FURNISS MILLER, a Certified Reporter in and for the County

 5     of Maricopa, State of Arizona, taken on November 10, 2016,

 6     commencing at 10:04 a.m., at the law offices of ROBAINA &

 7     KRESIN, PLLC, 5343 North 16th Street, Suite 200, Phoenix,

 8     Arizona.

 9

10     COUNSEL APPEARING:

11               ROBAINA & KRESIN, PLLC
                 BY:  Mr. Edmundo P. Robaina, Esq.
12               BY:  Ms. Ashley A. Marton, Esq.
                 5343 North 16th Street, Suite 200
13               Phoenix, Arizona  85016
                 epr@robainalaw.com
14               aam@robainalaw.com
                 Attorneys for Plaintiff
15
                 FISHER & PHILLIPS, LLP
16               BY:  Ms. Shayna H. Balch, Esq.
                 201 East Washington Street, Suite 1450
17               Phoenix, Arizona  85004
                 sbalch@laborlawyers.com
18               Attorneys for Defendant

19

20

21

22

23

24

25
```

1                                                    Phoenix, Arizona
                                                     November 15, 2016
2                                                    10:04 a.m.

3                               TERESA TONEY,

4        called as a witness herein, having been first duly sworn,

5                   was examined and testified as follows:

6

7                               EXAMINATION

8        BY MR. ROBAINA:

9            Q.    Could you state your name, please?

10           A.    Teresa Toney.

11           Q.    Ms. Toney, have you ever had your deposition

12       taken before?

13           A.    Once.

14           Q.    Okay.  What was the circumstance?

15           A.    It was about 15 or so years ago when I was the

16       district EEO manager, and it was related to an employment

17       grievance.

18           Q.    Okay.  Let me just go through the deposition

19       protocol.  The court reporter is taking down everything

20       that we say.  So if you would, please make sure to answer

21       audibly.  If a question calls for a yes or no, please say

22       "yes" or "no," rather than "uh-huh" or "huh-uh," because

23       it won't translate well on the transcript.

24                 If you don't understand any question that I ask,

25       I'll be happy to repeat it or rephrase it.  If you need to

1    take a break at any time, just let me know.  The only

2    thing I'd like is to finish the line of questioning.

3              Sometimes Ms. Balch may make an objection.  She's

4    doing that for purposes of the record so that a judge can

5    decide later on whether or not to -- that it's a good

6    objection or not.  So, go ahead and answer the question

7    unless she specifically tells you not to.

8              Do you have any questions for me before we start?

9    A.    No.

10   Q.    Let me just get a quick background.  What is your

11   current occupation?

12   A.    I serve as the manager for the Office of Public

13   Stewardship for the Maricopa Community College District.

14   Q.    Okay.  What are your duties?

15   A.    There are several functions.  I serve as the

16   manager of governance, and in that capacity I work with

17   the Governing Board and the Chancellor on the adoption of

18   Board policies and the Chancellor's administrative

19   regulations, with the exception of employee group

20   policies, I'm not involved in that process.

21             I also serve as the District's ombudsman as well

22   as the custodian of record, and I'm also responsible for

23   the tuition waiver program.  So, many things that relate

24   to the stewardship as it involves the members of the

25   public and our internal community.

1       Q.    How long have you been with MCCD [sic]?

2       A.    Twenty-six years.

3       Q.    Okay.  Can you give me just a brief rundown of

4  your -- of your jobs?

5       A.    I initially was hired as an institutional

6  researcher.  All of my positions have been in the Office

7  of General Counsel.  And in the capacity of institutional

8  researcher, I was responsible for the air quality

9  compliance program at the time when Maricopa County had

10  adopted regulations related to reduction of pollution.

11       Q.    What year was this?

12       A.    That was in 1990.

13       Q.    Okay.

14       A.    And from there I began to work with the attorneys

15  on different cases doing research and was trained in the

16  area of EEO/affirmative action and served as the

17  District's equal employment officer.

18       Q.    When was this?

19       A.    That would have been from about 1995 to about

20  '97, '98.  Some positions I also served simultaneously.

21  At the same time, I was working on my master's in public

22  administration and received an MPA in public

23  administration with an emphasis in public policy.  And in

24  1996, our Governing Board adopted a governance structure

25  called Policy Governance, and that's where I began to work

1    with the Governing Board on the administration of policies

2    and regulations.

3            Then in 2008, we established the Office of Public

4    Stewardship and I became the ombudsman to serve both

5    internal and external communities on matters that were --

6    that citizens or the internal community had regarding

7    Maricopa, and I would serve as a liaison to help identify

8    what solutions individuals might have in resolving an

9    issue.

10        Q.    Have you been in that position ever since?

11        A.    I've -- I've served as the manager for the Office

12   of Public Stewardship since 2008; and the functions that I

13   described in terms of governance, custodian of records,

14   ombudsman, and tuition reimbursement program have all been

15   those that function from that point in time.

16        Q.    You mention you have an MBA?

17        A.    MPA.

18        Q.    Yeah, MPA.  What's your under grad?

19        A.    Marketing, business -- well, bachelor of science.

20   Both degrees are from ASU.

21        Q.    Okay.  You understand that you're here today as

22   the MCCCD's representative for a Rule 30(b)(6) deposition

23   regarding MCCCD's Governing Board process?

24        A.    For public meetings?

25        Q.    Yes, ma'am.

1          A.    Yes.

2          Q.    Okay.  And so you're familiar with the way that

3     MCCCD carries on its public meetings?

4          A.    Correct.

5          Q.    All right.  The meetings that MCCCD has with --

6     the Governing Board meetings, we're going to call them

7     Governing Board meetings, okay, those are to your

8     knowledge subject to Arizona's public meeting laws?

9          A.    All meetings are subject to the public meeting

10    law.  There are executive sessions that are not open to

11    the public, but all other meetings that the Governing

12    Board has are considered public meetings.

13         Q.    And to your knowledge -- I'm going to show you

14    what I'd like to have marked as Exhibit 1.

15              (Exhibit 1 was marked for identification.)

16

17    BY MR. ROBAINA:

18         Q.    Can you take a look at that and let me know when

19    you've had time?

20         A.    Yes.  I'm familiar with this structure, this

21    notice.

22         Q.    Okay.  What is this?

23         A.    This is -- well, it appears to be a Web --

24    someone has gone onto the Web page and copied a posting of

25    the Board protocol for addressing -- the protocol

1    addressing the Governing Board.  So, this is taken from

2    the Governing Board's Website and it would have been a

3    posting of the agenda for the March 25th, 2014, Governing

4    Board meeting.

5        Q.   Does MCCD typically post notices of agendas on --

6    on the Web?

7        A.   The MCCCD --

8             MS. BALCH:  Objection.  Form.  Go ahead.

9        Q.   BY MR. ROBAINA:  Go ahead.

10       A.   The MCCCD posts -- this meeting here that is

11   posted is a business meeting, and business meetings are

12   posted outside of the Governing Board office.

13       Q.   Okay.

14       A.   I mean, the -- the meeting office, as well as

15   online.

16       Q.   And this appears to be the notice from

17   March 25th, 2014, correct?

18       A.   Yes.

19       Q.   All right.  And can you just -- you've seen --

20   you're familiar with these, right?

21       A.   Yes.

22       Q.   Okay.  Can you just kind of take me through this

23   on -- you have to post notice of all the agenda items,

24   correct?

25       A.   The items that the Governing Board has identified

1    in advance as being items to be discussed are posted on

2    the agenda.

3        Q.   Okay.  Because if they're not posted on the

4    agenda, they can't discuss them and they can't take legal

5    action, correct?

6        A.   Correct.

7            MR. ROBAINA:  So, is it -- you know what, can you

8    give me one second.  I have two pairs of glasses, one to

9    see and one to read, and I need my reading glasses.

10            (Whereupon a brief recess was taken.)

11

12   BY MR. ROBAINA:

13       Q.   All right.  So, can you tell from this -- from

14   this document what was on the agenda for -- on March 25,

15   2014?

16       A.   It is a standard agenda that outlines, you know,

17   what would take place that evening and, you know, it

18   follows the order of business, meaning that there's a call

19   to order, there's a general section, there's an approval

20   of the order of the agenda; there's a consent agenda;

21   action items; consideration of non-consent action items;

22   monitoring reports; and community linkage; establishment

23   of meeting time and date.  All of those are standard

24   topics that follow the Board's normal agenda.

25       Q.   What were the items that the Board could discuss

1     and take legal action on for that night -- or, for that

2     day?

3         A.   The items that were posted on the agenda under

4     "action."  The Governing Board could also determine to

5     take action -- well, the distinction between consent

6     agenda and non-consent agenda --

7         Q.   Where are you looking?

8         A.   On page 2.

9         Q.   Oh.  There we go.

10        A.   Item 4 is action items, Item 5 are non-consent.

11        Q.   Okay.  You see the citizen's interim?

12        A.   Yes.

13        Q.   What is the citizen's interim?

14        A.   The citizen's interim is an opportunity for

15    members to come before the Board to talk about either

16    items that are on the agenda or items that are not on the

17    agenda.

18        Q.   If the items are not on the agenda, the Board

19    can't -- can't take legal action?

20        A.   Not at that meeting.

21             MS. BALCH:  Objection.  Form.

22        Q.   BY MR. ROBAINA:  Go ahead.

23        A.   The Board can determine if they -- if a citizen,

24    internal or external, comes before the Board during

25    consent agenda, the Board can decide to take an item under

1      consideration at a later meeting.

2          Q.   Okay.  And where would that be -- where would

3      that be noted if they decide to do that?

4              MS. BALCH:  Objection.  Form.

5              MR. ROBAINA:  What's the objection?

6              MS. BALCH:  Objection.  Form.  Calls for

7      speculation.

8          Q.   BY MR. ROBAINA:  Do you know where -- how the

9      Board would --

10             MS. BALCH:  And vague and ambiguous.

11         Q.   BY MR. ROBAINA:  How would the Board go about

12     noting that they were going to take an item and put it on

13     a -- under consideration at a later meeting?

14         A.   We have a citizen's guide that is also publicly

15     posted that describes how citizens can interact with the

16     Governing Board and there's language that is posted there;

17     and also if you look at the Governing Board's policy and

18     manner of governing, it's discretionary as to whether or

19     not the Board will or not.  So, it depends on what the

20     issue is.  The Board is not required to put items on an

21     additional agenda, but it is at its discretion if it

22     decides to do that.

23         Q.   But if the Board decides to do that, will it note

24     that it's deciding to do that somewhere?

25         A.   The Board President would -- who runs the meeting

1      and the order of the meeting could say this is a matter

2      that the Board would like additional information on and

3      would advise the Chancellor at that point in time to bring

4      additional information forward.

5           Q.   Okay.  So, let me show you what I'm going to have

6      marked as Exhibit 2.

7                (Exhibit 2 was marked for identification.)

8

9           Q.   BY MR. ROBAINA:  Take your time to take a look at

10     that.

11               Do you recognize this document?

12          A.   These are the corresponding meeting minutes to

13     the March 25th meeting.

14          Q.   And you're familiar with the meeting minutes?

15          A.   Yes.

16          Q.   Okay.  Is there a place in the meeting minutes

17     where it would be noted that the Board has decided to --

18     to take a further look at an item that is raised in the

19     citizen's interim?

20          A.   Are you talking specifically about the March 25th

21     minutes, or are you talking about any meeting of the Board

22     during citizen's interim would have done that?

23          Q.   Let's talk first in general.  Is it normally

24     noted in this -- what do you call this document again?

25     The -- the -- I'm sorry, the Governing Board minutes.

1           Would it normally be noted in the Governing Board

2    minutes?

3           A.    If in what you have presented before me --

4                 MS. BALCH:  Objection.  Form.  Go ahead.

5                 THE WITNESS:  Okay.  -- are the items that are

6    specific to the particular meeting.  The question that you

7    are presenting is a question that seems to speculate what

8    may happen at another meeting.

9           Q.    BY MR. ROBAINA:  I'm not asking you to speculate.

10   I'm asking if you know if there's a process that's in

11   place with regard to what happens if the Governing Board

12   wants to take a further look at something that somebody

13   has raised in the citizen's interim.  Is there a normal --

14          A.    It would be noted in the meeting minutes during

15   citizen's interim if that occurred.

16          Q.    All right.  Can we look at, then, on page 4 of 17

17   in Exhibit 2.  These are the items that were discussed in

18   the citizen's interim, correct, on March 25, 2014?

19          A.    Correct.

20          Q.    All right.  And the one that I'm interested in --

21   or, the two that I'm interested in are numbers 3 and 4

22   where it says Mr. Stephen Montoya, citizen, and Dr.

23   Cleopatria Martinez, citizen and employee.  Do you see

24   those?

25          A.    Yes, I do.

1      Q.   All right.  Can you tell me if there is anything

2    in this -- in these Governing Board minutes that indicate

3    that the Board sought or was going to seek any further

4    information on anything that was presented in these two

5    citizen's interim presentations?

6      A.   I do not see it.

7      Q.   Okay.  Typically it would be there if there was

8    going to be any other consideration, correct?

9      A.   If you see the first exhibit that you had

10   presented to me, on page 2, Consideration of Consent

11   Agenda Items -- not consent agenda may not.  Citizen's

12   interim, I'm sorry.  Under Item General E, citizen's

13   interim.  The Governing Board President addresses that

14   prior to citizen's interim, you know, what will take

15   place.  So, you know, the President typically makes a

16   statement about what would occur.  So, individuals know in

17   advance if -- you know, what that process would be because

18   it's noted during the meeting.

19     Q.   But if I'm understanding you correctly, then,

20   individuals understand what the process is going to be

21   then individuals speak, right?

22     A.   (No oral response.)

23     Q.   And if the Board is going to -- they can't --

24   they can't speak on these items in citizen's interim,

25   correct, at that meeting, right?

1          MS. BALCH:  Objection.  Form.

2     Q.   BY MR. ROBAINA:  Go ahead.

3     A.   Could you repeat the question?

4          MR. ROBAINA:  Can you read it back, please?

5          (Whereupon the record was read.)

6

7  BY MR. ROBAINA:

8     Q.   Let me ask a better question.  In the citizen's

9  interim a citizen raises an issue that's not on the Board

10  agenda, the Board cannot discuss or take action on that

11  issue that the citizen raises at that meeting, correct?

12          MS. BALCH:  Objection.  Form.  Answer if you can.

13          THE WITNESS:  Can I point back to the language

14  here that says:  "When necessary, issues will be taken

15          under advisement and placed on a subsequent

16          agenda."

17     Q.   BY MR. ROBAINA:  Okay.  So that's the answer?

18     A.   That's the answer.

19     Q.   And in the Governing Board minutes on March 25,

20  2014, just to be clear, you don't -- if they were going to

21  place it on any later agenda, that would be reflected in

22  the Governing Board minutes, correct?

23     A.   Yes.

24     Q.   All right.  How long are citizens -- is there a

25  time limit for citizens to speak in citizen's interims?

1      A.    About five minutes.

2      Q.    Is there a rule for that?

3      A.    It's outlined in the Governing Board's policy for

4    meetings.

5      Q.    I may have asked you this before, but if the

6    Governing Board discusses an item and takes legal action

7    on that item, that's going to be reflected in the

8    Governing Board minutes, right?

9      A.    Your --

10          MS. BALCH:  Objection.  Form.  Answer if you can.

11     Q.    BY MR. ROBAINA:  Go ahead.

12     A.    If an item has been placed on the agenda for

13   action, that would appear on the agenda that's been posted

14   for public notice.  So, if the Governing Board is going to

15   make a vote on an item, it would need to appear on the

16   agenda.

17     Q.    Let me show you what I'd like to have marked as

18   Exhibit 3.

19          (Exhibit 3 was marked for identification.)

20

21   BY MR. ROBAINA:

22     Q.    Can you identify what this is?

23     A.    This is another sample of Board meeting minutes

24   that have been retrieved from the Governing Board's online

25   Web page, and they are reflective of the agenda for the

1    May 27, 2014 agenda.

2        Q.   Okay.  Let me show you what I'd like to have

3    marked as Exhibit 4.

4            (Exhibit 4 was marked for identification.)

5

6    BY MR. ROBAINA:

7        Q.   Can you identify this document?

8        A.   This is a copy of the Governing Board meeting

9    minutes that have been retrieved from the Governing

10   Board's online Web page, and they are reflective of the

11   minutes from May 27th, 2014.

12       Q.   All right.  Can you take a look at page 7?

13           One of the persons that spoke during this

14   citizen's interim according to this Governing Board's

15   minutes is Dr. Charles Townsel.  Do you see that?

16       A.   Yes.

17       Q.   Is there anything in this document that indicates

18   that any of Dr. Townsel's statements were later set up for

19   a subsequent Board discussion?

20       A.   No.

21       Q.   Okay.  Let me show you what I'd like to have

22   marked as Exhibit 5.

23           (Exhibit 5 was marked for identification.)

24

25

1    BY MR. ROBAINA:

2         Q.    Can you identify that document?

3         A.    An online version of the Governing Board's agenda

4    for October 28th, 2014.

5         Q.    And let me show you Exhibit 6.

6              (Exhibit 6 was marked for identification.)

7

8    BY MR. ROBAINA:

9         Q.    Can you identify that document?

10        A.    Governing Board meeting minutes; October 28th,

11   2014.

12        Q.    And can you look at page 2?

13              And two of the people that spoke at the

14   citizen's interim according to this was Cleopatria

15   Martinez and Dr. Charles Townsel, correct?

16        A.    Correct.

17        Q.    Do you see anything in this document that

18   indicates that anything that they said was set for

19   consideration at a later meeting?

20        A.    Well, in the 30 seconds that I have had this, I

21   have not had a chance to review it fully.

22        Q.    Well, please, review it.

23        A.    Okay.

24              Repeat your question.

25        Q.    Do you see anything in that document, Exhibit 6,

1      that indicates that anything that was said by Dr. Martinez

2      or Dr. Townsel was set for consideration at a later

3      Governing Board meeting?

4          A.   No.

5            MR. ROBAINA:  Take a quick break.  I'll be right

6      back.

7            (Recess taken from 10:31 a.m. to 10:34 a.m.)

8

9            MR. ROBAINA:  All right.  That's all I have.

10           MS. BALCH:  I do have one quick follow-up

11     question.  It will take, like, less than two minutes.

12

13                    EXAMINATION

14    BY MS. BALCH:

15     Q.   Earlier Mr. Robaina asked you a question about

16    the time limitation for citizen's interim and you

17    indicated that it was a five-minute limitation.  Is that a

18    hard, fast rule?

19          MR. ROBAINA:  Object to form.

20     Q.   BY MS. BALCH:  Go ahead.

21     A.   Depending on the number of people who have come

22    forward and what's going on, the Governing Board President

23    can afford additional time for a citizen to speak.

24          MS. BALCH:  All right.

25

                              FURTHER EXAMINATION

BY MR. ROBAINA:

    Q.   I'll ask -- let me ask you a question, then, to
follow up.

        Can you take a look at -- and take your time,
obviously -- at Exhibits 2, 4, and 6.  Is there anything
in those documents that would indicate that additional
time was granted to any of the speakers?

    A.   Well, in the meeting minutes of October 28th,
2014, I see that Dr. Martinez's statement in its entirety
was included as an appendix to the meeting.  So, that
becoming part of the official meeting, you know, indicates
that that was an opportunity to submit additional
information.

        The Governing Board Assistant when taking the
notes doesn't chronicle the amount of time.  So, it could
have happened, it's just not reflective here.

    Q.   I asked you earlier if there was a policy -- I
asked you earlier how long citizens are allowed to speak
during citizen's interim and you said it was about five
minutes and I asked you if there was a rule for that and
you said it was outlined in the Board's policy for
meetings.

    A.   Mm-hm.

    Q.   What policy is that?

1      A.   Can I look?

2           MS. BALCH:  If you don't know it, we can

3      supplement and provide that to opposing counsel.  If you

4      don't know it, you can say you don't know it.

5           THE WITNESS:  Well, there is language that's

6      posted on the Governing Board's Web page that talks about

7      the agenda and citizen's interim is discussed there and

8      the meeting time.

9           But, again, the Board President who runs the

10     meeting, who does the rule of order, based upon what has

11     taken place, can afford a citizen additional time.

12           MR. ROBAINA:  Okay.  Thank you.

13                Read and sign?

14           MS. BALCH:  Yeah, we'll read and sign.

15           (The deposition concluded at 10:38 a.m.)

16

17

18

19

20

21

22

23

24

25

1                              ---oOo---

2

3          I, the undersigned, say that I have read the

4    foregoing transcript of testimony taken November 10, 2016,

5    and I declare, under penalty of perjury, that the

6    foregoing is a true and correct transcript of my testimony

7    contained therein.

8          EXECUTED this _____ day of

9    _____, 2016.

10

11

12

13    _____
      TERESA TONEY

14

15

16

17

18

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2        STATE OF ARIZONA    )
                             )  ss.
3        COUNTY OF MARICOPA  )

4                 BE IT KNOWN that the foregoing proceedings were
         taken before me, Angela Furniss Miller, Certified Reporter
5        No. 50127, that the witness before testifying was duly
         sworn by me to testify to the whole truth; that the
6        foregoing 23 pages are a full, true, and accurate record
         of the proceedings, all done to the best of my skill and
7        ability; that the proceedings were taken down by me in
         shorthand and thereafter reduced to print under my
8        direction.

9
                 [X] Review and signature was requested.
10               [ ] Review and signature was waived.
                 [ ] Review and signature not required.
11

12               I CERTIFY that I am in no way related to any of
         the parties hereto nor am I in any way interested in the
13       outcome thereof.

14               I FURTHER CERTIFY that I have complied with the
         requirements set forth in ACJA 7-206.  Dated at LITCHFIELD
15       PARK, Arizona, this 21st day of November, 2016.

16
                               _____
17                             Angela Furniss Miller, RPR, CR
                               CERTIFIED REPORTER (AZ50127)
18

19                             *      *      *

20
                 I CERTIFY that Miller Certified Reporting, LLC,
21       has complied with the requirements set forth in ACJA
         7-206.  Dated at LITCHFIELD PARK, Arizona, this 21st day
22       of November, 2016.

23
                               _____
24                             Miller Certified Reporting, LLC
                               Arizona RRF No. R1058
25