Pavneet Singh Uppal, SBN 016805
Shayna H. Balch, SBN 024852
FISHER & PHILLIPS LLP
3200 N. Central Ave., Suite 805
Phoenix, Arizona 85012-2425
Telephone: (602) 281-3400
Fax: (602) 281-3401
puppal@fisherphillips.com
sbalch@fisherphillips.com
Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Cleopatria Martinez,<br><br>                    Plaintiff,<br><br>         v.<br><br>Maricopa County Community College District; et al.,<br><br>                    Defendants. | No. CV 15-01759-NVW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>**[FED. R. CIV. P. 56]**<br><br>(Oral Argument Requested) |

Pending before the Court are Defendant Maricopa County Community College District ("MCCCD" or the "District") and Rufus and Debra Glasper's ("Glasper") (collectively referred to as "Defendants") Motion For Summary Judgment at Docs. 69 and 70 and Plaintiff Cleopatria Martinez's ("Plaintiff" or "Martinez") cross Motion For Summary Judgment at Doc. 71.  For the reasons set forth herein and in Defendants' Response to Plaintiff's Motion For Summary Judgment at Doc. 77, which is incorporated by reference, Defendants, not Plaintiff, are entitled to summary judgment as matter of law.

### I.     INTRODUCTION

Plaintiff's First Amended Complaint contains five causes of action for alleged due process deprivations: (1) 43 U.S.C. §1983 – Liberty Interest against Chancellor Glasper; (2) 43 U.S.C. §1983 – Property Interest against Chancellor Glasper; (3) 43 U.S.C. §1983 – Liberty Interest against the District; (4) 43 U.S.C. §1983 – Property Interest against the District; and (5) Declaratory Relief. Defendants are entitled to complete summary judgment on all of Plaintiff's claims.  Plaintiff has abandoned her first and third causes of action for liberty interest violations.  As to Plaintiff's property interest claims, she received all the due

process she was entitled to.  Finally, as to the request for declaratory relief, Plaintiff's request fails because there is no case or controversy, the request is barred by the doctrine of *res judicata*, and any alleged right to academic freedom is superseded by the District's competing interests in protecting itself against copyright infringement claims.

## II.   LEGAL ARGUMENT

### A.   Plaintiff Has Abandoned Her Liberty Interest Claims (Counts I and III).

In its opening motion, Defendants moved for summary judgment as to Plaintiff's liberty interest claims (Counts I and III).  Doc. 69 and 70.  Plaintiff has since withdrawn those claims, thereby entitling Defendants to summary judgment.  *See* Doc. 79, pp. 13:11-12 ("Martinez concedes the causes of action in her Amended Complaint alleging violation of her liberty interest.").

### B.   Plaintiff's Property Interest Due Process Claims (Counts II and IV) Fail as a Matter of Law.

#### 1.   Plaintiff Received All the Process She Was Due.

Plaintiff concedes that "with respect to the notice of intent to *dismiss*, MCCCD provided Martinez adequate due process."  Doc. 71, p. 14:1-5 (emphasis in original).  Accordingly, to the extent that the Complaint can be read as alleging a due process violation arising from her *termination* proceedings, it must be dismissed based on Plaintiff's judicial admission.

With respect to Plaintiff's *suspension*, she similarly received appropriate and adequate due process.  Due process requires "that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, (1950)).  Here, and as more fully briefed in Defendant's Response to Plaintiff's Motion for Summary Judgment at Doc. 77, pp. 4:21-9:28 (which is incorporated herein by reference), Plaintiff was provided more than sufficient pre-disciplinary notice and an opportunity to be heard with respect to her suspension for willful insubordination.

Specifically, proper pre-disciplinary notice was given to Plaintiff by way of a March 20, 2013 Notice of Pre-Disciplinary Conference.[1]  [DSOF ¶18].  Subsequently, Plaintiff

---

[1] The Notice included the allegations against Plaintiff and specifically asserted that Plaintiff

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

FPDOCS 32917481.1

received a meaningful opportunity to be heard when she had multiple meetings with key decision-makers within MCCCD administration and a full day long evidentiary hearing before a committee of her peers. [DSOF ¶¶18-23]  The Hearing Committee found that Plaintiff had engaged in "willful insubordination" and in light of this finding, Chancellor Glasper prepared a revised February 10, 2014 Statement of Charges proposing that Plaintiff be suspended from employment for 13 months.[2] [DSOF ¶26].

Following Plaintiff's receipt of the February 10, 2014 Statement of Charges, Plaintiff further received a due process meeting with Vice Chancellor Bowers on March 7, 2014 to discuss the Statement of Charges and her suspension. [DSOF ¶28]. During this meeting, Plaintiff was represented by experienced employment counsel and afforded a full opportunity to respond and voice her concerns. [DSOF ¶28].  Despite providing Plaintiff with more than adequate post-disciplinary opportunities to be heard, Plaintiff further received numerous opportunities to be heard in front of the MCCCD Governing Board.[3] [DSOF ¶¶30-35]  Simply put, in light of the multiple venues that Plaintiff had to argue against her suspension, Plaintiff is now foreclosed from claiming that her procedural due process rights were somehow denied.

### 2. Plaintiff's Argument That She Was Denied an Impartial Decision Maker Lacks Merit.

In tacit recognition of the fact that she was provided with more than sufficient notice

---

had committed insubordination when she failed to issue reimbursement checks to students after being directed to do so by MCCCD. [DSOF ¶18]. This is the *very same allegation* that a hearing committee of Plaintiff's peers later found Martinez guilty of and which formed the basis for her 13-month-suspension. [DSOF ¶24].

[2] Upon receipt of the Hearing Committee's Findings of Fact and Conclusions of Law, Chancellor Glasper met with the Hearing Committee to inquire about the basis of their conclusions. [DSOF ¶25]. The Hearing Committee members explained to Chancellor Glasper that because Plaintiff had been with the District for nearly 30 years, they were reluctant to recommend her permanent separation from employment, but believed a disciplinary action such as an unpaid suspension was appropriate. [DSOF ¶25].

[3] Specifically, Plaintiff's attorney submitted a nine page legal brief to the MCCCD Governing Board outlining her arguments that "a fourteen-month suspension is the economic equivalent of a dismissal." [DSOF ¶28].   Plaintiff also submitted at least four letters to the Governing Board asserting the same argument. [DSOF ¶30-33]. Plaintiff and her counsel each separately appeared before the Governing Board in open session and argued that her suspension was improper and "the functional equivalent of a termination from the district." [DSOF ¶29]. And if that were not enough, Plaintiff also had two other individuals separately appear on her behalf before the Governing Board to advocate for the reversal of her suspension. [DSOF ¶29].

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

FPDOCS 32917481.1

and an opportunity to be heard with regard to her suspension, Plaintiff now contends that she was denied an impartial decision maker. Doc. 71, pp. 12-14. However, this theory/argument was not previously disclosed and was raised for the very first time in Plaintiff's Motion for Summary Judgment at Doc. 71. It is well-established that legal theories cannot be raised for the first time after the close of discovery in a motion for summary judgment.[4] Thus, Plaintiff's new argument must be disregarded by the Court. But notwithstanding the lack of disclosure, Plaintiff's argument lacks merit.

First, Plaintiff has advanced the speculative and unsupported allegation that Chancellor Glasper was somehow biased because he "was a partisan in Martinez's termination case and therefore could not be the arbiter of her ultimate discipline." Doc. 79, p. 8:6-7.[5] However, as briefed in Defendant's response to Plaintiff's Motion for Summary Judgment at Doc. 77, pp. 10:12-11:7, this argument has been rejected by the United States Supreme Court. *See Withrow v. Larkin,* 421 U.S. 35 (1975). Due process does not preclude a decisionmaker from hearing a matter simply because the decisionmaker expressed an earlier contrary opinion on a matter:

> No decision of this Court would require us to hold that it would be a violation of procedural due process for a judge to sit in a case after he had expressed an opinion as to whether certain types of conduct were prohibited by law. In fact, judges frequently try the same case more than once and decide identical issues each time, although these issues involve questions both of law and fact. Certainly, the Federal Trade Commission cannot possibly be under stronger constitutional compulsions in this respect than a court.

*Withrow* 421 U.S. at 48-49 (citing *FTC v. Cement Institute*, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948)). Thus, Plaintiff's argument that Chancellor Glasper was somehow an impartial decisionmaker is entirely lacking in merit or reason.

Second, even assuming, *arguendo*, that Chancellor Glasper was somehow precluded from serving as decisionmaker in the suspension proceedings (which he was not), the fairness of the proceedings was confirmed by:

---

[4] *Trishan Air, Inc. v. Federal Ins. Co.*, 635 F.3d 422 (9th Cir. 2011) (claim raised for the first time in response to a motion for summary judgment was not properly before the district court); see also *Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("The necessary factual averments are required with respect to each material element of the underlying legal theory. Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.").
[5] Plaintiff similarly raised this argument in her Motion for Summary Judgment at Doc. 71, p. 14:17-18.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

FPDOCS 32917481.1

- a hearing before "a neutral and detached decisionmaker, which made binding findings of fact and conclusions of law." Doc. 71, p. 14:4-5. The Hearing Committee ruled that Plaintiff engaged in "willful insubordination" and that she "willfully and intentionally failed to follow instructions that were communicated to her when she failed to issue refunds to students as directed by President Solley." [DSOF ¶24]. This same Hearing Committee also recommended to Chancellor Glasper that Plaintiff be suspended without pay as a disciplinary measure. [DSOF ¶25];

- a meeting with MCCCD's Vice Chancellor of Human Resources, Jim Bowers, whom Plaintiff does not contend harbored any ill will or bias against her. During Plaintiff's due process meeting with Chancellor Bowers, Plaintiff was represented by counsel and afforded a full opportunity to respond to the charges against her. [DSOF ¶28]; and

- multiple communications with the MCCCD Governing Board where Plaintiff repeatedly advanced arguments to the MCCCD Governing Board regarding the purportedly improper nature of her suspension. [DSOF ¶¶29-35]. Plaintiff submitted a nine page legal brief through her counsel arguing that her suspension was the functional equivalent of a termination and submitted at least four letters of her own asserting the same argument. [DSOF ¶29]. Plaintiff and her counsel also each separately appeared before the Governing Board in open session and argued that her suspension was improper. [DSOF ¶30].

Simply put, contrary to Plaintiff's lawyerly argument that "Glasper Unilaterally Suspended" her, Plaintiff's suspension was appropriately imposed with the agreement participation of numerous different fact finders and decision makers.

### C. Plaintiff's Argument That She Was Denied The Opportunity to Respond to New Allegations Similarly Fails.

Plaintiff further alleges that there was "a material allegation in the February 10, 2014 notice of suspension that was not listed in the August 9, 2013 Statement of Charges and not adjudicated by the Hearing Committee" and "the fact that Martinez was never given the opportunity to challenge this allegation before a neutral factfinder/decisionmaker renders the suspension, based in part on this allegation, in violation of her due process rights." Doc. 79, p. 8:19-28.[6] However, as briefed in Defendants' response to Plaintiff's Motion for Summary Judgment at Doc. 77, pp. 15:13-17:6 (which is incorporated herein by reference), this argument fails for several reasons.

First, Plaintiff was suspended for her undisputed willful insubordination.[7] [DSOF ¶¶24-

---

[6] Plaintiff similarly raised this argument in her Motion for Summary Judgment at Doc. 71, p. 15:1-11.
[7] To the extent Plaintiff is attempting to argue that MCCCD regulations 1.12 and 1.13 are not referenced in her prior August 9, 2013 Statement of Charges pertaining to her proposed dismissal from employment, the simple fact is that Plaintiff was not terminated. Following her full day evidentiary hearing and prior to her suspension, Plaintiff was notified that she was being suspended without pay for her willful insubordination. [DSOF ¶¶27-28 (DSOF Exh. 36)]. Plaintiff received a second Statement of Charges dated February 10, 2014 which clearly reference these regulations. She also received a meeting with MCCCD's Vice Chancellor of Human Resources in which she was represented by experienced employment counsel, was provided an opportunity to be heard, and was given an opportunity to respond and voice her concerns. [DSOF ¶¶26-28 (DSOF Exh. 36)].

26] Following a full day evidentiary hearing, a Hearing Committee comprised of Plaintiff's peers rendered findings of fact and conclusions of law which Plaintiff concedes are binding on her. [DSOF ¶24] And although Plaintiff seeks to divert attention from these binding findings, the fact of the matter remains that Plaintiff's willful insubordination warranted disciplinary action.

Second, Plaintiff misstates the legal standard for due process. Due process requires notice and a meaningful opportunity to be heard. Plaintiff received those protections by way of her original March 20, 2013 Statement of Charges, numerous subsequent meetings with MCCCD administration, a full day evidentiary hearing, and multiple appearances before the MCCCD Governing Board. [DSOF ¶¶18-35]. Due process does not require anything more.

Finally, even if one were to view the second February 10, 2014 Statement of Charges in a vacuum, there can be no dispute that Plaintiff received proper notice and a meaningful opportunity to be heard. On or around February 10, 2014, Chancellor Glasper notified Plaintiff, through her counsel, that he had decided to suspend Plaintiff, forwarded her a copy of the Statement of Charges, and offered Plaintiff the opportunity to meet with the Vice Chancellor of Human Resources to discuss the rationale for the decision. [DSOF ¶26]. Plaintiff and her counsel accepted the invitation and met with Vice Chancellor of Human Resources Bowers on March 7, 2014 to discuss the February 10, 2014 Statement of Charges and her suspension. [DSOF ¶28]. Accordingly, Plaintiff received all the process she was entitled to with regards to her February 10, 2014 Statement of Charges.

### D. Plaintiff's Request for Declaratory Relief (Count V) is Not Actionable.

#### 1. Plaintiff's Request For Declaratory Relief Fails Because There is No Case or Controversy and the Request Has No Legal Basis.

As fully briefed in Defendants' opening motion at Docs. 69 and 70, there simply is no case or controversy before the Court regarding the copy restrictions that MCCCD imposed on Plaintiff.[8]

---

[8] The December 9, 2010 Directive is a routine personnel action which remains in place due to Plaintiff's continuing insubordination. [DSOF ¶¶14, 37] Although Plaintiff may object to the continuing restrictions presented by the Directive, the Supreme Court held long ago that "The Due Process Clause of the Fourteenth Amendment is not a guarantee against [allegedly] incorrect or ill-advised personnel decisions." *Bishop*, 426 U.S. at 350, 96 S.Ct. at 2079. To hold otherwise "would enable every discharged employee to assert a constitutional claim merely by alleging that his former supervisor made a mistake." *Id.*

6

Moreover, it is well-established that declaratory judgment is a *remedy* and not an independent cause of action. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937) (the Declaratory Judgment Act "is procedural only"); *Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 770 (D. Ariz. 2012) ("A declaratory judgment action is a remedy for an underlying cause of action; it is not a separate cause of action…."). As such, "Plaintiff must base her request for declaratory relief on a cognizable legal theory." *Snyder*, 913 F. Supp. 2d at 770.

Here, Plaintiff has failed to identify any such legal theory in her Complaint. Plaintiff's due process claims due not support any legally cognizable theory that would entitle her to declaratory relief in the form of an Order "prohibiting the District from continuing to impose the restrictions in the December 9, 2010 directive." Doc. 14, p. 23. Plaintiff's self-titled "Declaratory Relief" claim is similarly devoid of any legal theory that would entitle her to the relief she seeks. Notably, Plaintiff's "Declaratory Relief" claim does not cite to any legal authority that would entitle her to declaratory relief.

### 2. Plaintiff's Belatedly Raised Arguments Are Not Properly Before the Court.

Having failed to plead a legal basis for her request for declaratory relief, Plaintiff now argues, for the first time, that her declaratory relief claim is premised on the Declaratory Judgment Act and Plaintiff's purported First Amendment right to free speech and academic freedom. Doc. 79, pp. 9-13. It is well established that arguments cannot be raised for the first time in response to a motion for summary judgment. *See Trishan Air, Inc.*, 635 F.3d 422*; Wasco Prods., Inc.*, 435 F.3d at 992. Accordingly these arguments must be disregarded by the Court.

### 3. In The Event This Court is Inclined to Hear Plaintiff's Belatedly Raised Argument, it is Nevertheless Barred by the Doctrine of *Res Judicata*.

As briefed in Defendants' opening motion, Plaintiff's request for declaratory relief relates to a personnel action that was taken in response to Plaintiff's practice of misusing copyright protected materials. [DSOF ¶12-14]. Specifically, Plaintiff has asked for "declaratory relief prohibiting the District from continuing to impose the restrictions in the December 9, 2010 directive." Doc. 14, p. 23:8-9. Plaintiff premises this argument on the Hearing Committee's finding that "the District did not meet its burden to prove [copyright violations]." Plaintiff

7

therefore argues that because the findings are "binding on the District under [2013-2014] RFP 3.13.7," "[t]he District is estopped from continuing to impose the directive."

However, Plaintiff's argument is barred by *res judicata* because she <u>previously sued MCCCD in federal court seeking this exact same relief only to later dismiss her lawsuit with prejudice</u>. "Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011) (internal quotation marks omitted). Here, there can be no dispute that all three elements are present.

"Identity of claims exists when two suits arise from 'the same transactional nucleus of facts.' Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) (citations and some internal quotation marks omitted). Here, Plaintiff previously filed a lawsuit against MCCCD alleging violations of Title VII and 42 U.S.C. §1983 in which she also sought declaratory relief regarding the December 9, 2010 directive. **Exhibit A** (Martinez v. Maricopa County Community College District, et al., Case No. 2:12-cv-00702-DGC, Complaint at Doc. 1). In her prayer for relief, Plaintiff requested the following relief:

> **WHEREFORE**, Plaintiff respectfully request that the Court:
> …
> Order Defendant to cease and desist from denying Plaintiff the right to include in her teaching materials documents and things that are available for use under the "fair use" doctrine of copyright law and to stop unfairly criticizing and unduly monitoring her work activities.
> Doc. 1, p. 8:21-25.

Plaintiff is now seeking the *exact same relief* and has asked for "declaratory relief prohibiting the District from continuing to impose the restrictions in the December 9, 2010 directive." Doc. 14, p. 23:8-9. Moreover, this case and Plaintiff's previous lawsuit both arise from "the same transactional nucleus of facts," specifically, the December 9, 2010 directive which was imposed because Plaintiff subjected MCCCD to an unreasonable risk of copyright

FPDOCS 32917481.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

infringement.[9] **Exhibit A** (Complaint in Martinez v. Maricopa County Community College District, et al., Case No. 2:12-cv-00702-DGC); and **Exhibit B** (Defendant's Motion for Summary Judgment in Martinez v. Maricopa County Community College District, et al., Case No. 2:12-cv-00702-DGC); s*ee, e.g., Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (holding that two suits "relate[d] to the same set of facts" because they both concerned "the events leading to [the plaintiff's] termination").

As to the second element, Plaintiff filed a voluntary dismissal with prejudice on January 2, 2014, which qualifies as a final judgment on the merits for purposes of *res judicata*. *Schmeier v. McDonald's LLC*, 569 F.3d 1240 (10th Cir. 2009) ("A voluntary dismissal with prejudice operates as a final adjudication on the merits"). Finally, both the prior and current lawsuits involved the exact same parties.

Given the prior litigation of this very issue between the same parties, Plaintiff is precluded from seeking declaratory relief in the instant case.

### 4. Any Right To Academic Freedom That Plaintiff May Have Is Overridden By The District's Competing Interests In Protecting Itself Against Copyright Infringement Lawsuits.

"Public employees … do not enjoy an absolute right to free speech." *Nichols v. Dancer*, 657 F.3d 929, 932 (9th Cir. 2011). Rather, "[a public employer] has interests as an employer in regulating the speech of its employees." *Id*. at 932-933. In assessing the interests of the public employer, the Court "must engage in the *Pickering* balancing test, which requires [the court] to seek "a balance between the interests of [the employee], as a citizen, in commenting upon matters of public concern and the interest of the [District], as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 933.

---

[9] Defendant filed a motion for summary judgment in the prior lawsuit. One of the <u>central issues</u> was Plaintiff's use of course materials that presented a significant risk of copyright infringement and the District's December 9, 2010 directive which curtailed Plaintiff's copying privileges. **Exhibit B** (Defendants' Motion for Summary Judgment in Martinez v. Maricopa County Community College District, et al., Case No. 2:12-cv-00702-DGC, MSJ at Doc. 71 (emphasis added) ("<u>In reliance upon the expert, PC President Anna Solley issued a December 9, 2010 directive that imposed further restrictions on Plaintiff's copying privileges. [DSOF ¶ 33] Specifically, the December 9, 2010 Directive prohibits Plaintiff from utilizing any course materials of her own creation.</u>") Plaintiff never responded to Defendants' motion. Instead, Plaintiff dismissed her case <u>*with prejudice*</u>. Doc. 75.

FPDOCS 32917481.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

Here, other than claiming that she has a right to academic freedom in "using her own course materials," Plaintiff has not pled or proved any public concern related to her course materials.[10]  It is well-established that speculative and unsupported allegations cannot be relied upon at the summary judgment stage. *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 922 (9th Cir. 2001).  Accordingly, this argument must be rejected by the Court. Doc. 79, p. 12:21. Moreover, the manner in which Plaintiff distributed her course materials can be indicative of whether a public concern exists.  Where, as here, Plaintiff distributed her course materials to a limited audience of her students, the scale tips against a finding of public concern. [DSOF ¶¶6-15]. *See, e.g., Demers v. Austin,* 746 F.3d 402, 416 ("If an employee expresses a grievance to a limited audience, such circulation can suggest a lack of public concern.").

Furthermore, while Plaintiff characterizes the December 9, 2010 Directive as baseless and arbitrary, the undisputed facts show a long history by Plaintiff of: (i) copying math problems from copyrighted texts without proper attribution, (ii) evasion of copy restrictions that were imposed, (iii) willful failure to issue refunds to students, and (iv) continuing insubordination in refusing to issue refunds to students. [DSOF ¶¶5-17, 37]. In light of these facts, MCCCD had a legitimate interest in imposing and continuing the

---

[10] Plaintiff's characterization of the course materials as her "own" plays fast and loose with the facts.  Instead of requiring her math students to purchase copyrighted textbooks, Plaintiff prepared course materials that she called her "Lecture Notes" which were distributed to her students free of charge. [DSOF ¶7].  In preparing these course materials, Plaintiff *directly* copied math problems from copyright protected textbooks and inserted them into her course materials.  She did so without providing attribution to the textbook publishers and/or authors.  The fact that Plaintiff engaged in this behavior is not in dispute.  Plaintiff testified under oath that problems from the copyright protected materials were inserted into her course materials. [DSOF ¶9].  Plaintiff's sole excuse for engaging in this behavior is that she "didn't know" that her conduct violated federal copyright laws and/or that she didn't see anything wrong with what she was doing. [DSOF ¶9].  In response to Plaintiff's actions, MCCCD sought a legal opinion from an outside copyright expert, attorney Sean Garrison.  Mr. Garrison, who specializes in copyright law, advised MCCCD that "significant portions of [Plaintiff's] Course Materials have been copied from other [copyrighted] sources." [DSOF ¶13]. He further advised MCCCD to cease further distribution or use of Plaintiff's course materials because they presented a "significant risk of [copyright] infringement." [DSOF ¶13].  Although Plaintiff now contends that no copyright infringement occurred because Plaintiff "obtained written permission from the publisher of Sullivan & Sullivan's "Precalculous," to copy materials from their books," Plaintiff intentionally omits that such permission was obtained after-the-fact and the permission was not retroactive.  **Exhibit C.** Moreover, the permission was expressly contingent upon Plaintiff requiring her students to purchase the textbook. **Exhibit C.**  It is undisputed that Plaintiff did not require her students to purchase the textbook, so the permission was inapplicable. [DSCF ¶¶7, 15]

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

10

December 9, 2010 Directive in an effort to protect itself from a potential copyright infringement claims. As the Ninth Circuit plainly stated in *Nichols v. Dancer*:

> In striking the *Pickering* balance, we "must give [public] employers wide discretion and control over the management of their personnel and internal affairs," including "the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch." *Brewster,* 149 F.3d at 979 (internal citation and quotation marks omitted).

657 F.3d 929, 933 (9th Cir. 2011).

Here, Plaintiff argues that because "MCCCD did not prove that Martinez had violated copyright laws," MCCCD cannot claim a strong interest in prohibiting her use of copyright protected materials. However, this very argument has been rejected by the Ninth Circuit. "The employer need not establish that the employee's conduct *actually* disrupted the workplace— 'reasonable predictions of disruption' are sufficient." *Nichols,* 657 F.3d at 93 (citing *Brewster,* 149 F.3d at 979) (emphasis added). Here, MCCCD reasonably predicted that Plaintiff's actions in copying materials from copyright protected textbooks would subject the District to an unreasonable risk of a copyright infringement claims. Indeed, in response to Plaintiff's actions, MCCCD sought a legal opinion from an outside copyright expert. [DSOF ¶¶13-14]. The expert advised MCCCD to cease further distribution or use of Plaintiff's course materials because they presented a "significant risk of [copyright] infringement."[11] [DSOF ¶13]. Accordingly, because the District had a reasonable prediction of disruption due to Plaintiff's actions, MCCCD was entitled to impose reasonable restraints on Plaintiff *vis-a-vis* the December 9, 2010 Directive. *Nichols*, 657 F.3d at 934 (In cases where the "evidence establishes that the employer's interests are reasonably threatened, then we will tip the *Pickering* scales in its favor.")

### III.  CONCLUSION

For the above and foregoing reasons, Defendants respectfully submit that the Plaintiff's Amended Complaint should be dismissed in its entirety and that summary judgment should be entered in favor of Defendants on all claims.

---

[11] Although Plaintiff implies that the Hearing Committee found in her favor on the copyright issue, it did not. To the contrary, after hearing testimony from two competing copyright attorneys, the Hearing Committee found that the attorneys "disagreed as to whether or not Dr. Martinez violated copyright law" and that the evidence was, therefore, "inconclusive as to whether Dr. Martinez intentionally and/or inadvertently violated federal copyright law." [DSOF Exh. 24, ¶64].

11

RESPECTFULLY SUBMITTED this 23rd day of May 2017.

FISHER & PHILLIPS LLP


By  s/ Shayna H. Balch
   Pavneet Singh Uppal
   Shayna H. Balch
   3200 N. Central Ave., Suite 805
   Phoenix, Arizona 85012
   Attorneys for Defendants

**FISHER & PHILLIPS LLP**
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

FPDOCS 32917481.1

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of May 2017 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Edmundo P. Robaina
Thomas T. Griffin
Ashley A. Marton
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Attorneys for Plaintiff

  s/ Michelle C. Colwell

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
(602) 281-3400

FPDOCS 32917481.1