# EXHIBIT A

Trisha Kirtley, Esq. (013905)
**Kirtley Wells Law Office**
3800 North Central Avenue, Suite 615
Phoenix, AZ  85012
Telephone: 602-264-7424
tk@kwlolaw.com
Attorneys for Plaintiff Martinez

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Cleopatria Martinez,** | **Cause No.:** |
| **Plaintiff,** | |
| **v.** | **COMPLAINT** |
| **Maricopa County Community College District and Phoenix Community College** | |
| **Defendants.** | |

Plaintiff Cleopatria Martinez, for her complaint against Defendants, alleges as follows:

    1.    This Court has jurisdiction to hear this complaint and to adjudicate the claims stated herein under 28 U.S.C. §§ 451, 1331, 1337, and 1345 to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law.  The Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2207 relating to declaratory judgments.

    2.    The action is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. (Title VII) and §102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981A and 42 U.S.C §1983.

1  3.     Venue is proper in this Court because the practices complained of

2  occurred in the District of Arizona and the Defendants can be found in the District of

3  Arizona.

4  **PARTIES**

5  4.     Plaintiff Cleopatria Martinez, Ph.D ("Plaintiff" or "Professor

6  Martinez"), at all relevant times, was a resident of Phoenix, Arizona and a tenured

7  member of the faculty at Phoenix Community College ("Phoenix College").

8  5.     Defendant Maricopa County Community College District ("MCCCD")

9  is organized and operating under the laws of State of Arizona and directs and controls

10 the actions of Defendant Phoenix Community College ("Phoenix College") and its

11 employees and agents.

12 6.     Phoenix Community College is an educational institution under the

13 administration, direction and control of Defendant MCCCD.

14 7.     Defendant MCCCD employs greater than 500 employees.

15 8.     Defendant Phoenix College employs greater than 500 employees.

16 **GENERAL ALLEGATIONS**

17 9.     Defendants are covered employers as defined by Title VII of the Civil

18 Rights Act of 1964, as amended.

19 10.    Plaintiff was originally hired by Defendants in 1985 and was employed

20 as a tenured faculty member in the Math Department at Phoenix College.

21 11.    On June 28, 2010, Professor Martinez filed a charge of discrimination

22 with the United States Equal Employment Opportunity Commission ("EEOC")

23 alleging Defendants had discriminated against her because of her national origin

24 (Hispanic origin)  and that they had retaliated against her because she had opposed

25 practices made unlawful by Title VII of the Civil Rights Act of 1964.

26 12.    Specifically, Professor Martinez alleged that over the course of years,

27 she had voiced her concerns regarding the fact that no one from the Math Department

28

Kirtley Wells Law Office

3800 N. Central Avenue, Suite 615
Phoenix, Arizona 85012
(602) 264-7424

- 2 -

of Hispanic origin was selected to serve as a member of Phoenix College's Title V advisory committee. Specifically, in August/September 2009 she opined to her superiors that the College's Title V advisory committee was not using Title V grant funds to address and/or serve the needs of Hispanic students.

13.     In September 2009, almost immediately after Professor Martinez voiced her opinions and concerns, Defendants began a campaign of discrimination, harassment and retaliation against Professor Martinez that included increased scrutiny of Professor Martinez' work including but not limited to her supervision and management of work study students, unjust criticism and restrictions concerning the content of Professor Martinez' classroom presentations and reviewing the contents of her trash in an effort to find documents and things that would incriminate Professor Martinez of violations of Defendants' policies and/or the law.

14.     The discrimination, harassment and retaliation was severe and pervasive and has resulted in threats to Professor Martinez' job security and holding her to higher and/or different standards than those imposed of non-Hispanic members of the Math Department.

15.     Defendants have accused, criticized and reprimanded Professor Martinez regarding the content of her lecture notes alleging that she has violated copyright law(s) and consequently have imposed mandates that prohibit Professor Martinez from copying and distributing her lecture and classroom notes to her students.

16.     Defendants' increased scrutiny of Professor Martinez' work included physically monitoring her work and accusing Professor Martinez of directing  her work study students to grade assignments, giving work study students her HRMS password and not supervising her work study students.  Defendants removed the work study students from Professor Martinez' supervision.  The accusations were without merit and were a pretext to cover up Defendants discriminatory intent and conduct. Such actions were also retaliatory.

Kirtley Wells Law Office
3800 N. Central Avenue, Suite 615
Phoenix, Arizona 85012
(602) 264-7424

- 3 -

17.     Also as a guise for its discriminatory intent and conduct Defendants have also made false accusations against Professor Martinez regarding the use of her laptop computer, accused her of putting sensitive materials in the trash as opposed to shredding the documents and refusing to permit Professor Martinez to see the so-called sensitive materials consequently denying her the opportunity to be fully and adequately informed of the allegations against her and to be able to respond to the accusations accordingly.

18.     Amongst other things, Defendants have prohibited Professor Martinez from using their copy service without scrutiny and require that she have approval before any documents are copied for her class.

19.     Such restrictions are a guise and pretext to cover up and distract from their discriminatory intent and actions and also violate Professor Martinez' civil rights including her right of free speech, equal protection of the laws and academic freedom.

20.     On November 5, 2009, Professor Martinez filed an internal EEO complaint with Defendants' Human Resources department.

21.     Subsequent to the filing of the EEO complaint, Defendants accused Professor Martinez of violating copyright laws by including examples and excerpts from the Math textbook she used to teach her students and also accused Professor Martinez of plagiarism regarding inverse trig functions.

22.     In so doing, Defendants have ignored and denied Plaintiff the right to use documents and things under the "fair use" doctrine of copyright law.

23.     Defendants have unjustly accused Professor Martinez of violating copyright laws, insubordination and have prohibited Professor Martinez from using her own instructional materials to teach her students.

24.     Defendants' discrimination, harassment and retaliation also included convening an Administrative Evaluation in May 2010 of Professor Martinez which "could result" in her "termination."

25.     Professor Martinez received a Right to Sue Notice regarding her EEOC

Kirtley Wells Law Office

3800 N. Central Avenue, Suite 615
Phoenix, Arizona 85012
(602) 264-7424

- 4 -

charge of discrimination and this Complaint is timely filed.

26.     Professor Martinez has complied with all of the administrative requirements, which are a precondition to filing suit under Title VII of the Civil Rights Act of 1964, as amended.

## COUNT I
### (Title VII – National Origin Discrimination and Harassment)

27.     Plaintiff hereby repleads and incorporates all allegations set forth above.

28.     Defendants have intentionally discriminated against Professor Martinez on account of her national origin, in violation of Title VII of the Civil Rights Act of 1964, by denying her equal terms, conditions and privileges of employment.

29.     Professor Martinez suffered unlawful harassment because of her national origin.

30.     The harassment was offensive, severe, pervasive, and intolerable.

31.     Professor Martinez reported the discrimination and harassment to Defendants and therefore, Defendants were aware of and ignored the discrimination and harassment suffered by Professor Martinez in violation of their duties and responsibilities under Title VII and other relevant laws.

32.     Defendants failed and/or refused to take corrective action to protect Professor Martinez from unlawful discrimination and/or harassment.

33.     As a direct and proximate result of Defendants actions, Professor Martinez suffered and continues to suffer damages in amounts to be proven at trial, including embarrassment, pain and suffering, mental distress, ordeal, humiliation, emotional distress, lost opportunities for salary increases and teaching /lecturing opportunities, promotional and transfer opportunities and the ability to serve on MCCCD boards and committees.

## COUNT II
### (Title VII - Retaliation)

34.     Plaintiff hereby repleads and incorporates all allegations set forth above.

Kirtley Wells Law Office
3800 N. Central Avenue, Suite 615
Phoenix, Arizona 85012
(602) 264-7424

- 5 -

35.     Plaintiff opposed the unlawful discrimination when she advocated for equal treatment and opportunities for Hispanic employees.

36.     Plaintiff also opposed discrimination by filing a charge of discrimination with the EEOC.

37.     As a direct and proximate result of Defendants retaliation, Professor Martinez has suffered damages, including injury to her reputation, unwarranted scrutiny of her work, unjust criticism of her work, unjust restriction in her ability to teach and present work to her students and will continue to suffer damages in amounts to be proven at trial.

38.     Also as a direct and proximate result of Defendants' actions, Professor Martinez suffered and continues to suffer damages in amounts to be proven at trial, including embarrassment, pain and suffering, mental distress, ordeal, humiliation, emotional distress, lost opportunities for salary increases and teaching /lecturing opportunities, promotional and transfer opportunities and ability to serve on MCCCD boards and committees.

39.     Defendants conduct was in reckless disregard and/or callous indifference of Plaintiff's federally protected rights.

40.   Plaintiff is entitled to punitive damages for Defendants illegal conduct.

## COUNT III
### (Race Discrimination, Harassment & Retaliation, 42 U.S.C. §1983)

41.     Martinez incorporates by reference each as if fully set forth herein the allegations contained in the paragraphs above.

42.     Defendants have intentionally discriminated against Professor Martinez on the account of her race and national origin and retaliated against her in violation of 42 U.S.C. § 1983 by denying to her equal terms, privileges and conditions of her employment and the right to contract and because she opposed unlawful discrimination.  Defendants also retaliated against Professor Martinez by denying her equal terms, conditions and privileges of employment, including but not limited to,

Kirtley Wells Law Office

3800 N. Central Avenue, Suite 615
Phoenix, Arizona 85012
(602) 264-7424

unjustly scrutinizing, disciplining and criticizing Professor Martinez' work under the pretext that she engaged in misconduct including insubordination and violations of the copyright laws.

43.     By virtue of her employment and excellent performance with Defendants since 1985 it cannot be successfully disputed that there were no prior incidents of the so-called insubordination and other issues for which Professor Martinez is now subject to discipline and criticism.

44.     It is undisputed that Defendants were aware and timely notified of Professor Martinez' complaints of discrimination.

45.     In treating Professor Martinez less favorably than similarly situated individuals outside of her protected class and/or in retaliating against Professor Martinez and denying her equal privileges and opportunities in her employment Defendants have not only violated Title VII but have also violated 42 U.S.C. §1983, which reads in pertinent part:

> Every person who under the color of any statue, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding or redress.

46.     Acting under the color of law, Defendants harassed, discriminated and retaliated against Professor Martinez and denied her equal protection of the laws.

47.     Professor Martinez seeks prospective relief because Defendants have discriminated against her by denying her the right to be free from discrimination and by denying her equal protection under the law because of her race, national origin and in retaliation for her opposition of their illegal actions.

Kirtley Wells Law Office

3800 N. Central Avenue, Suite 615
Phoenix, Arizona 85012
(602) 264-7424

- 7 -

48.     Defendants' actions were done with malice or with reckless indifference of Professor Martinez's federally protected rights warranting punitive damages.

49.     As a direct and proximate result of Defendants' discrimination, harassment and retaliation, Professor Martinez has suffered damages and continues to suffer damages in amounts to be proven at the time of trial including but not limited to her ability to receive salary increases, promotional and transfer opportunities and the ability to serve on MCCCD boards and committees.

## DEMAND FOR JURY TRIAL

50.     Plaintiff hereby requests a jury trial.

## PRAYER FOR RELIEF

**WHERFORE**, Plaintiff respectfully request that the Court:

A.     Order Defendants to make whole Plaintiff by providing compensation for past and future pecuniary and non-pecuniary losses and compensatory damages resulting from the unlawful practices complained of above, including damages for emotional pain and suffering, anguish, emotional distress, humiliation, embarrassment, anxiety, fear/fright and ordeal, in amounts to be determined at trial.

B.     Order Defendants make Plaintiff whole by providing appropriate lost wages with prejudgment interest in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of Defendants' unlawful practices and to pay Plaintiff punitive damages.

C.     Order Defendant to cease and desist from denying Plaintiff the right to include in her teaching materials documents and things that are available for use under the "fair use" doctrine of copyright law and to stop unfairly criticizing and unduly monitoring her work activities.  .

D.     Order Defendants to take appropriate remedial disciplinary action against all employees who discriminated and/or retaliated against Professor Martinez.

Kirtley Wells Law Office

3800 N. Central Avenue, Suite 615
Phoenix, Arizona 85012
(602) 264-7424

E. Order Defendants to implement training and monitoring programs regarding discrimination and retaliation, by an entity external to Defendants.

F. Enter a declaratory judgment that Defendants have violated Plaintiff's right to be free from discrimination and retaliation.

G. Grant a permanent injunction enjoining Defendants from retaliating against individuals who oppose unlawful discrimination.

H. Order Defendants to institute and carry out policies, practices and programs which provide equal employment opportunities for qualified individuals, including those whose national origin is Venezuelan, which eradicate the effects of its past and present unlawful employment practices.

I. Award Plaintiff her reasonable attorney's fees and costs;

J. Award Plaintiff pre-judgment interest and post-judgment interest on any awards at the highest rate allowed by law; and

K. Such other and further relief as this Court deems just, appropriate and proper.

  DATED this 2nd day of April 2012.

KIRTLEY WELLS LAW OFFICE


By /s/ Trisha Kirtley
   Trisha Kirtley
   3800 N. Central Ave., Ste. 615
   Phoenix, AZ  85012
   Attorney for Plaintiff Martinez

Kirtley Wells Law Office
3800 N. Central Avenue, Suite 615
Phoenix, Arizona 85012
(602) 264-7424

# EXHIBIT B

Pavneet Singh Uppal, SBN 016805
Shayna H. Balch, SBN 024852
FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
Telephone:  (602) 281-3400
Fax:  (602) 281-3401
puppal@laborlawyers.com
sbalch@laborlawyers.com

Attorneys for Defendant Maricopa County
Community College District

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Cleopatria Martinez,<br><br>                         Plaintiff,<br><br>          v.<br><br>Maricopa County Community College<br>District,<br><br>                         Defendant. | No.  CV 12-00702-PHX-DGC<br><br>**DEFENDANT'S NOTICE OF<br>MOTION AND MOTION FOR<br>SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

Defendant Maricopa County Community College District ("Defendant" or "MCCCD") hereby moves for summary judgment in the above-captioned matter. MCCCD is entitled to summary judgment because Plaintiff Cleopatria Martinez ("Plaintiff" or "Martinez") cannot state actionable claims for national origin or race discrimination, hostile work environment, or retaliation.  This motion is supported by the attached Memorandum of Points and Authorities, MCCCD's Separate Statement of Facts filed concurrently herewith, all pleadings and papers on file, and such matters as may be introduced at the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiff is employed by MCCCD as a math instructor.  This case arises out of

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

1  Plaintiff's obstinate refusal to comply by MCCCD policies, applicable federal copyright

2  laws, Family Educational Rights & Privacy Act ("FERPA") requirements, and

3  regulations relating to the supervision of work study students.   Plaintiff's conduct

4  exposed MCCCD to a substantial risk of a copyright infringement claim and/or liability

5  for FERPA violations.   Accordingly, MCCCD was left with no choice but to put certain

6  preventative measures in place in order to mitigate the risk of legal liability.   Plaintiff

7  filed the instant lawsuit based upon her apparent disagreement with these measures.

8  Plaintiff's Complaint asserts that she was subjected to *national origin*

9  discrimination, harassment, and retaliation in violation of Title VII[1] and *race*

10  discrimination, harassment, and retaliation in violation of 42 U.S.C. § 1983. [DSOF ¶ 5]

11  All of the Plaintiff's claims fail as a matter of law.   Plaintiff's Title VII national origin

12  claims are not actionable because: (1) she failed to file her lawsuit within the statutory

13  90-day limitations period; (2) she cannot establish her *prima facie* case; (3) MCCCD

14  took prompt remedial action once it learned of Plaintiff's claims; and (4) MCCCD had

15  legitimate, nondiscriminatory and nonretaliatory reasons for its actions based on

16  Plaintiff's continuing refusal to comply with federal copyright and FERPA laws.

17  Likewise, the § 1983 race claims fails because: (1) there is no allegation of any

18  widespread MCCCD polices or practices giving rise to § 1983 claims; (2) Plaintiff

19  cannot establish that MCCCD intentionally subjected her to discrimination on the basis

20  of her race; and (3) MCCCD had legitimate, nondiscriminatory and nonretaliatory

21  reasons for its actions.   Accordingly, Plaintiff's claims should be dismissed with

22  prejudice and full summary judgment should be awarded to MCCCD.

23  **II.    STATEMENT OF ISSUES TO BE DECIDED**

24  1) Whether Plaintiff's Title VII claims are time barred?

25

26  [1]Notably, although Plaintiff testified under oath that she considered herself to be of

27  Mexican-American national origin, Plaintiff's Complaint asserts that she is Venezuelan.
   Dkt. 1 (Complaint, p. 9 ¶ H).   Plaintiff's Complaint is devoid of any reference to

28  Mexican or Mexican-American national origin. Dkt. 1.

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

2) Whether MCCCD discriminated against Plaintiff on the basis of her national origin and/or race?

3) Whether Plaintiff was subjected to a hostile work environment on the basis of her national origin and/or race?

4) Whether MCCCD retaliated against Plaintiff on the basis of her purported protected activities?

5) Whether punitive damages are recoverable?

## III.   FACTUAL BACKGROUND

### A.   Plaintiff Did Not Comply With Copyright Requirements.

In early 2010, Phoenix College (one of ten community colleges within MCCCD) discovered that Plaintiff had exposed MCCCD to a substantial risk of liability for copyright infringement.[2]   [DSOF ¶ 17].   Instead of requiring her math students to purchase copyrighted textbooks, Plaintiff prepared her own course materials which she distributed to her students free of charge.   [DSOF ¶ 8].   Plaintiff called these course materials her "Lecture Notes." [DSOF ¶ 8]  In preparing these course materials, Plaintiff *directly* copied math problems from copyright protected textbooks and inserted them into her course materials.   She did so without providing attribution to the textbook publishers and/or authors. [DSOF ¶ 9-10].   For example, in Plaintiff's Basic Arithmetic (MAT082) course, Plaintiff copied problems directly from a textbook entitled "Basic Mathematics" and inserted them into her  "MAT 082 Basic Arithmetic Spring 2010" course materials which she distributed to students.   [DSOF ¶ 11].   An excerpted comparison is set forth below:

--------

[2]Plaintiff began working at Phoenix College ("PC") in 1995.  [DSOF ¶ 6].  She is still employed by MCCCD and has always served as a math professor.  [DSOF ¶ 6]  From time to time, however, Plaintiff has served in a variety of additional roles.  For example, from 2002 through 2005, Plaintiff served as the Math Department Chair.  [DSOF ¶ 6] Plaintiff also served on various committees including PC's Title V Advisory Committee from 2002 through 2009 (for PC's 1998 grant) and again from 2009 through 2013 (for PC's 2008 grant).   Prior to working at PC, Plaintiff worked at Scottsdale Community College (another college within MCCCD). [DSOF ¶ 6].

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

3

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400



Basic Mathematics Textbook
By: Charles P. McKeague, p. 285

MAT082 Lecture Notes
Prepared by Plaintiff, p. 49

Basic Mathematics Textbook
By: Charles P. McKeague, p. 289

MAT082 Lecture Notes
Prepared by Plaintiff, p. 50

[DSOF ¶ 11] (full-sized versions are attached at DSOF ¶ 11, **Exh. 17**). Similarly, Plaintiff copied problems directly from the Sullivan & Sullivan "Precalculus" textbook and inserted them into her "MAT182 Trigonometry Spring 2010" course materials. [DSOF ¶ 12]. An excerpted comparison is set forth below:

Precalculus Textbook
By: Sullivan & Sullivan, p. 394

MAT 182 Lecture Notes
Prepared by Plaintiff, p. 22

Precalculus Textbook
By: Sullivan & Sullivan, p. 393

[DSOF ¶ 12] (full-sized versions are attached at DSOF ¶ 12, **Exh. 19**). The above are but a few examples of Plaintiff's misappropriation of copyright protected materials. Additional examples of Plaintiff's verbatim copying from copyright protected textbooks have been identified in MCCCD's Expert Report. [DSOF ¶ 14]. The fact that Plaintiff engaged in this behavior is not in dispute. At deposition, Plaintiff openly admitted to

instructing her federal work study students to copy problems directly from the Sullivan & Sullivan textbook and to insert them into her course materials.   [DSOF ¶ 15]. Plaintiff's sole excuse for engaging in this behavior is that she "didn't know" that her conduct violated federal copyright laws and/or that she didn't see anything wrong with what she was doing.   [DSOF ¶ 16].   Of course, any such feigned or even actual ignorance of the law is no defense. *Lambert v. People of the State of California*, 355 U.S. 225 (1957).

On or around January 12, 2010, MCCCD's Vice President of Academic Services, Ronnie Elliot, sent Plaintiff an email notifying her that PC had red flagged items that Plaintiff had printed for the Fall 2009 and Spring 2010 semesters.[3]   [DSOF ¶ 18]. Following Elliot's email, MCCCD administration *repeatedly* explained its copyright concerns to Plaintiff.   [DSOF ¶ 19].   Several communications are summarized below:

- January 26, 2010: Elliot sent Plaintiff an email outlining MCCCD's concerns regarding Plaintiff's potential copyright infringement.   [DSOF ¶ 19]
- January 28, 2010: MCCCD in-house-counsel Maggie McConnell discussed copyright issues with Plaintiff telephonically.   [DSOF ¶ 19]
- February 5, 2010: Vice President of Academic Affairs Casandara Kakar, Interim Vice President of Administrative Services Paul DeRose, and Plaintiff met to discuss copyright concerns.   [DSOF ¶ 19]

MCCCD also held a copyright workshop on March 1, 2010 at PC that Plaintiff chose not to attend.   [DSOF ¶ 20]   Unfortunately, despite repeated counseling attempts by MCCCD management, Plaintiff refused to comply with federal copyright laws. [DSOF ¶ 21].   As a result of Plaintiff's continuing misconduct and the unacceptable legal risk that her actions presented, MCCCD was left with no choice but to impose restrictions on Plaintiff's photocopying privileges.   [DSOF ¶ 21].   Normally, a professor at PC is allowed to request photocopies of materials to be used for instruction directly

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

---

[3]These materials were "red flagged" by IKON representatives who contacted Ronnie Elliot to notify her that Plaintiff had submitted a photocopy request for thousands of pages which contained material that appeared to have been taken from published textbooks.   [DSOF ¶ 17-18].

1  from PC's on-campus copy service, IKON.  [DSOF ¶ 22].  However, because of

2  Plaintiff's propensity for misusing copyrighted materials, her copying privileges were

3  revoked on April 2, 2010.  Following the revocation, Plaintiff was required to submit her

4  copy requests to Math Department Chairperson Joe Sueyoshi[4] so that he could review

5  her materials for possible copyright violations.  [DSOF ¶ 22].  This procedure was put

6  into effect because Plaintiff's practice of misusing copyright protected materials

7  presented a substantial risk of legal liability.  [DSOF ¶ 23].

8      PC was hopeful that the suspension of Plaintiff's copy privileges would serve to

9  highlight the seriousness of this matter for Plaintiff.  [DSOF ¶ 24].  Instead of complying

10  with the newly imposed copy restrictions, Plaintiff continued to disregard applicable

11  copyright laws and actually tried to circumvent the copy restrictions.  [DSOF ¶ 24].  For

12  example, on or around April 19, 2010, Plaintiff attempted to bypass the copy restrictions

13  by having an adjunct math professor, Johnny Santellan, make 24 sets of copies of her

14  "Lecture Notes" for distribution to her math students.  [DSOF ¶ 25].  At deposition,

15  Plaintiff admitted that she asked Santellan to make these copies without first obtaining

16  approval from the Math Department Chairperson.  [DSOF ¶ 25].  There were also

17  repeated instances where Plaintiff bypassed the approval process by printing multiple

18  copies of her "Lecture Notes" directly to the math department's laser printer.  [DSOF ¶

19  26].

20      As a result of Plaintiff's ongoing disregard of the rights of copyright holders and

21  her numerous attempts to bypass the copy restrictions, MCCCD sought a legal opinion

22  from an outside copyright expert, attorney Sean Garrison.  [DSOF ¶ 28].  This expert

23  advised MCCCD that "significant portions of [Plaintiff's] Course Materials have been

24  copied from other [copyrighted] sources" and advised MCCCD to cease further

25

26  [4]The Math Department Chair is an elected position.  [DSOF ¶ 27].  Each Math
27  Department Chair serves for a three year term.  [DSOF ¶ 27].  Sueyoshi's term
    commenced 2008 and is scheduled to run through 2014.  [DSOF ¶ 27].  Plaintiff
28  previously served as the Math Department Chair from 2002 through 2004.  [DSOF ¶ 6].

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

6

distribution or use of Plaintiff's course materials because they presented a "significant risk of [copyright] infringement." [DSOF ¶30]. In reliance upon the expert, PC President Anna Solley issued a December 9, 2010 directive[5] that imposed further restrictions on Plaintiff's copying privileges. [DSOF ¶ 33] Specifically, the December 9, 2010 Directive prohibits Plaintiff from utilizing any course materials of her own creation. [DSOF ¶ 34] Instead, Plaintiff is required to only use course materials that are "approved by the math department" or that are "available in the bookstore for sale to students and that are authored by persons other than [Plaintiff]." The Directive further requires Plaintiff to submit her photocopy requests to the Math Department Chair for his approval. [DSOF ¶ 34].

### B.   Plaintiff Did Not Comply With FERPA Requirements.

In addition to misusing copyright-protected materials, Plaintiff also apparently saw no need to comply with applicable FERPA regulations which govern educational institutions such as MCCCD. [DSOF ¶ 38]. One of the most basic requirements of FERPA is the obligation to preserve confidential student data (i.e., student names, addresses, dates of birth, social security numbers, and grades). *See* 20 U.S.C. 1232g, *et. seq.; see also* 34 C.F.R. Part 99. Plaintiff repeatedly breached her obligation to safeguard FERPA protected materials by providing her federal work study students with unmonitored access to her MCCCD office and her MCCCD issued computers which contained confidential student information. [DSOF ¶ 39] Plaintiff further violated FERPA by permitting her work study students to grade student papers.[6] [DSOF ¶ 40].

---

[5]It is important to note that MCCCD administration continued to have discussions with Plaintiff regarding her potential copyright violations through the issuance of the December 9, 2010 directive. [DSOF ¶ 35]. For example, MCCCD administration discussed copyright concerns with Plaintiff on April 8, 2010, August 20, 2010, August 26, 2010. [DSOF ¶ 35]. Moreover, on April 15, 2010, PC Librarian Ann Roselle conducted a personalized one-on-one copyright training session with Plaintiff. [DSOF ¶ 36].

[6]At deposition, Plaintiff conceded that MCCCD was required to "protect the privacy of the student in terms of not letting [confidential] information out freely." [DSOF ¶ 43].

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

In addition, Plaintiff also breached her duty of confidentiality under FERPA by allowing her laptop computer to be used by an unauthorized individual with the last name "Martinez" (presumably her child).  [DSOF ¶ 40].  In or around Fall of 2009, routine maintenance by MCCCD IT personnel showed that an illegal file sharing program called LimeWire had been installed on Plaintiff's laptop computer.  [DSOF ¶ 40]  The maintenance further showed that a high school level homework assignment authored by an individual with the last name "Martinez" was present on Plaintiff's MCCCD issued laptop.  [DSOF ¶ 42-44].  As a result of these audit findings, MCCCD's IT Department reasonably concluded that Plaintiff had improperly permitted an unauthorized user to access her MCCCD laptop computer.  [DSOF ¶ 45].

Plaintiff's failure to safeguard confidential information also extended to her coworkers.  In September 2009, PC janitor Verna Daubney found dozens of manila folders containing confidential faculty applicant information (including social security numbers and school transcripts) in Plaintiff's office garbage can.  [DSOF ¶ 46].  The disposal of these materials in this manner was a direct violation of MCCCD's policies and procedures.  [DSOF ¶ 47].  Daubney promptly brought this discovery to the attention of PC administration which had to notify the affected faculty members about the breach of confidentiality.  [DSOF ¶ 48]  The faculty members whose information was improperly disposed of were understandably upset, demanded that PC pay for 12 months of credit monitoring, and requested that Plaintiff be disciplined.  [DSOF ¶ 49].

Finally, Plaintiff failed to properly supervise her work study students.  Federal regulations also require that work study students be properly supervised.  [DSOF ¶ 50].  *See* 34 C.F.R. § 675.20.  MCCCD observed that Plaintiff had a practice of not managing federal work study students and allowing them to work in her office without monitoring or supervision.  [DSOF ¶ 50].  It is undisputed that Plaintiff's work study students often worked in her office, in the math zone tutoring area, and in the library.  [DSOF ¶ 51].

---

Plaintiff also testified that she understood that MCCCD could face consequences if the information was improperly disclosed.  [DSOF ¶ 43].

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

1  Numerous PC math department faculty members saw Plaintiff's work study students in

2  Plaintiff's office without any supervision (where they had access to confidential student

3  information and course examinations)—often times while Plaintiff was in class or even

4  on vacation. [DSOF ¶ 52]. Once this lack of supervision was brought to the attention of

5  PC, the work study students were removed from Plaintiff's supervision. [DSOF ¶ 52].

6  Later, work study students were removed from all faculty at PC. [DSOF ¶ 52].

7  **IV.   LEGAL ARGUMENT**

8      **A.   Plaintiff's Title VII Claims Are Time Barred.**

9         It is well established that a Plaintiff asserting a Title VII claim must file an action

10  within ninety days of receiving her notice of right to sue.  42 U.S.C. § 2000e-5(f)(1).

11  "This ninety-day time period is a statute of limitations." *Nelmida v. Shelly Eurocars,*

12  *Inc.,* 112 F.3d 380, 383 (9th Cir. 1997).  Here, although Plaintiff's notice of right to sue

13  is dated December 22, 2011, she did not file her lawsuit against MCCCD until April 1,

14  2012 (**101 days after the notice was issued**). [DSOF ¶ 5].  Plaintiff may contend that

15  her claims are timely because she did not actually *receive* the notice of right to sue until

16  January 3, 2012 (exactly 90 days before she filed her lawsuit).  However, the Ninth

17  Circuit has expressly held that the 90-day limitations period begins to run from "when

18  delivery of the right to sue notice *was [first] attempted at the address* of record with the

19  EEOC." *Nelmida,* 112 F.3d at 384; *see also Vargas v. Web Service Co.,* 36 F. Supp. 2d

20  1173, 1176 (D. Ariz. 1998).  Here, it is undisputed that the notice of right to sue was sent

21  to Plaintiff via certified mail on December 22, 2011 and that the United States Postal

22  service made delivery attempts on December 24, 2011 and December 31, 2011.  [DSOF

23  ¶ 3-4].[7]  Accordingly, Plaintiff was required to file the instant action no later than

24  March 23, 2012 (90 days from December 24, 2011).  The complaint, however, was not

25  filed until April 2, 2012. [DSOF ¶ 5].  Plaintiff's Title VII claims are, therefore, time-

26  barred.

27  

28  [7]The authenticity of the USPS tracking document is undisputed. [DSOF ¶ 4]

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

**B.     Even Assuming, *Arguendo*, That Plaintiff's Title VII Claims Are Not Time Barred, They Fail As A Matter Of Law.**

Plaintiff contends that she was subjected to national origin[8] discrimination, harassment, and retaliation in violation of Title VII.  [DSOF ¶ 5].  However, for the reasons set forth below, Plaintiff's claims are not actionable as a matter of law.

**1.     Plaintiff Cannot Establish A *Prima Facie* Case Of National Origin Discrimination.**

Plaintiff's national origin discrimination claim stems from her allegations that PC President Anna Solley, Vice President Casandra Kakar, and Math Department Chair Joe Sueyoshi discriminated against her when she: (1) was not selected for inclusion on the PC Title V Grant Advisory Committee[9]; (2) was subjected to "increased scrutiny" with respect to her "supervision and management of [federal] work study students"; (3) was accused of violating PC's Technology Resource Standards; (4) was accused of "putting sensitive materials in the trash as opposed to shredding the documents"; and (5) was subjected to copy restrictions.  [DSOF ¶ 54]  However, Plaintiff cannot state a *prima*

---

[8]Neither Plaintiff's Complaint nor her EEOC charge allege Title VII race discrimination. [DSOF ¶ 1 and 5]

[9]Title V provides federal grants to support educational institutions that serve predominately Hispanic and low income students.  [DSOF ¶ 74].  It is referred to as a "Hispanic Serving Institutions Grant" ("HSI Grant").  *Id*.  PC is eligible for Title V funding and has received two separate Title V grants.  *Id*.  The first grant was awarded in 1998 and ran through 2003.  *Id*.  The second grant was awarded in 2008 and will end in September 2013.  *Id*.  The use of Title V funds is governed by statutory requirements. [DSOF ¶ 75].  Once an institution is awarded a Title V grant, the institution must spend the funds in accordance with the grant proposal.  In this case, PC was required to use the funds for Science, Technology, Engineering, and Math ("STEM") subjects in addition to select English and Reading courses.  *Id*.  Since the grant is an Institutional Services (versus Student Services) grant, funds must be used to benefit HSI institutions as a whole.  *Id*. *Indeed, the U.S. Department of Education's website specifically states that* "The Title V Program is **NOT** a scholarship or fellowship program for individuals or for research. The program is designed to support **institutions of higher education** that are HSIs."  http://www2.ed.gov/programs/idueshsi/index.html.  *Id*. (emphasis in original). In response to obtaining Title V grants in 1998 and 2008, PC developed "Title V Grant Advisory Committees" to make recommendations as to the use of funds and to oversee the distribution process.  *Id*. [DSOF ¶ 26].

10

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 261-3400

1   *facie* case because she cannot establish that any of these purported acts constitute

2   adverse employment actions.   Nor can she prove that any of the purported acts were

3   attributable to her Mexican national origin.   Finally, MCCCD had legitimate

4   nondiscriminatory reasons for its actions.

5          In the context of a Title VII discrimination claim, "an adverse employment action

6   is one that materially affect[s] the compensation, terms, conditions, or privileges of

7   employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal

8   quotations omitted).   Here, it is undisputed that the above-referenced alleged acts never

9   resulted in a decrease in pay, change in hours, or change in job responsibilities. [DSOF

10  ¶ 55].   Rather, Plaintiff merely disliked the fact that she was subjected to copy

11  restrictions—which were imposed to reduce the risk of a copyright infringement claim.

12  Likewise, mere increased scrutiny and/or disciplinary measures that do not result in a

13  change in job terms do not constitute an actionable adverse employment action.   *See*

14  *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir. 2000) (finding that a negative

15  evaluation was not an adverse employment action where "[plaintiff] was not demoted,

16  was not stripped of work responsibilities, was not handed different or more burdensome

17  work responsibilities, was not fired or suspended, was not denied any raises, and was not

18  reduced in salary or in any other benefit"); *see also Byrd v. Donahoe*, No. C 11-4230 RS

19  (N.D. Cal. May 10, 2013) (citing *Ellerth v. Burlington Industries, Inc.*, 524 U.S. 742,

20  761 (1998)) (holding that an employer's restriction of an employee's use of a workplace

21  resource that "was at most a convenience, not a necessity ... [is not a] significant change

22  in employment status" cognizable under Title VII).   Accordingly, Plaintiff cannot

23  establish that she was subjected to any adverse employment actions.

24         In addition, there is no causal nexus between any of the alleged adverse acts and

25  Plaintiff's Mexican national origin.   Plaintiff's allegations of discrimination appear to be

26  based upon nothing more than her own subjective beliefs.   Such speculation and

27  conjecture is not sufficient to withstand summary judgment.   *Arpin v. Santa Clara Valley*

28  *Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001).   Indeed, MCCCD has also

1   reprimanded a Caucasian employee who misused copyrighted materials.  After Dmitri

2   Logvinenko (a Caucasian male of Russian descent) tried to use course materials that may

3   have contained copyright protected information and problems, Sueyoshi reprimanded

4   Logvinenko and instructed him to: (1) immediately remove the materials from his course

5   website; and (2) begin using Math Department approved course materials.  [DSOF ¶ 56]

6   The key difference, however, is that Logvinenko discontinued his unapproved use of

7   copyrighted works, immediately complied with Sueyoshi's directive, and began using

8   the approved textbook for his course.  [DSOF ¶57].  Moreover, it is important to note

9   that while there were at least two other Hispanic/Mexican-American faculty members in

10   the math department (Veronica Herrera and Maria Herrera-Bill), neither of these

11   individuals were subjected to any of the restrictions imposed on Plaintiff.  [DSOF ¶ 58].

12          Finally, while Plaintiff may not have liked the reprimands and copy restrictions,

13   MCCCD had legitimate, nondiscrimatory reasons for taking these actions.  Specifically,

14   MCCCD's desire to protect itself from litigation that might result from Plaintiff's

15   noncompliance with copyright and FERPA-related restrictions constituted a legitimate

16   nondiscriminatory reason for its actions.  [DSOF ¶ 38-53].  For example, Plaintiff's

17   misuse of copyrighted math problems subjected MCCCD to an unreasonable risk of a

18   copyright infringement claim.  [DSOF ¶ 17-37]  This risk was so great that MCCCD

19   retained the services of a copyright expert, Attorney Sean Garrison, who advised

20   MCCCD that: (1) significant portions of Plaintiff's "Lecture Notes" had been copied

21   verbatim from copyright protected textbooks; and (2) allowing Plaintiff to continue use

22   or distribution of her "Lecture Notes" would subject MCCCD to an unreasonable risk of

23   a copyright infringement claim.  [DSOF ¶ 38-41]; *see also* 17 U.S.C. § 101, *et. seq.*

24   Similarly, Plaintiff violated FERPA by permitting her federal work study students to

25   access confidential student data, allowing them to grade student papers, and permitting

26   an unauthorized user to access her MCCCD laptop (which contained confidential student

27   data).  [DSOF ¶ 38-53]; 20 U.S.C. 1232g, *et. seq.; see also* 34 C.F.R. Part 99.  Plaintiff's

28   failure to properly supervise her work study students also violated federal regulations

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

1    relating to the supervision of federal work study students. *See* 34 C.F.R. § 675.20.

2    Accordingly, Plaintiff's national origin discrimination claim fails as a matter of law.

3           **2.**    **Plaintiff Cannot Establish A *Prima Facie* Case of National**

4                      **Origin Harassment.**

5        Title VII is not a "general civility code." *Faragher v. City of Boca Raton*, 524

6    U.S. 775, 788 (1998). Here, Plaintiff's harassment claim is based on the very same

7    allegations as her national origin discrimination claim. As discussed above in Section

8    IV(B)(1), *supra*, even assuming the truthfulness of these allegations for purposes of

9    summary judgment, they do not demonstrate any discriminatory animus towards

10    Plaintiff *on the basis of her national origin*.

11        Plaintiff's national origin harassment claim further fails as a matter of law

12    because the alleged conduct was not sufficiently severe or pervasive to alter the terms

13    and conditions of her employment. Title VII "forbids only behavior so objectively

14    offensive as to alter the 'conditions' of the victim's employment." *See Oncale*, 523 U.S.

15    at 80-81. In fact, courts have repeatedly rejected hostile work environment claims that

16    involved conduct that was far more offensive than the allegations of harassment set forth

17    by Plaintiff. In *Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1991), the Ninth

18    Circuit upheld the dismissal of a plaintiff's hostile work environment claim despite

19    allegations that the employer had posted a racially offensive cartoon, made racially

20    offensive slurs, selectively enforced rules against Hispanics, provided unsafe vehicles to

21    Hispanics, and kept illegal personnel files on Hispanic employees. The court concluded

22    that the misconduct at issue was not so severe or pervasive so as to give rise to a racially

23    hostile work environment. *Id.* at 1031, 1036. Here, Plaintiff has not alleged that a single

24    comment or slur was directed at her or others based on their Mexican-American national

25    origin. Rather, Plaintiff's allegations are based on the legitimate restrictions that were

26    imposed due to her continued violation of applicable laws and regulations. The

27    restrictions that were imposed on Plaintiff were neither severe nor pervasive and

28    certainly did not create an abusive work environment.

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

1    Plaintiff's national origin harassment claim also fails because MCCCD took

2    prompt, effective remedial action after Plaintiff complained that the restriction imposed

3    by MCCCD were allegedly discriminatory and/or retaliatory. *Faragher v. City of Boca*

4    *Raton*, 524 U.S. 775, 807 (1998); *Star v. West*, 237 F.3d 1036 (9th Cir. 2000). Here,

5    MCCCD's remedial efforts included: (1) maintaining a policy against discrimination and

6    harassment; (2) promptly hiring an outside investigator who investigated Plaintiff's

7    complaints of alleged discrimination and retaliation; (3) conducting an investigation that

8    involved interviews of 12 employees; and (4) reminding all interviewed individuals of

9    MCCCD's anti-harassment, anti-discrimination, and anti-retaliation policies. [DSOF ¶

10   82-86]. After a thorough investigation, the outside investigator concluded that there was

11   no merit to Plaintiff's claims. These prompt remedial actions taken by MCCCD satisfy

12   the *Farragher/Ellerth* defenses and operate as a bar to Plaintiff's recovery against

13   MCCCD.

14       **3.    Plaintiff's Retaliation Claim Fails As A Matter of Law.**

15       To make out a *prima facie* case of retaliation, a plaintiff must show that "(1) she

16   engaged in a protected activity, (2) she suffered an adverse employment action, and (3)

17   there was a causal link between her activity and the employment decision." *Stegall*, 350

18   F.3d at 1065-66 (citation omitted). Here, Plaintiff cannot establish any of these elements

19   of her claim.

20           a)    Plaintiff's Complaints About The Title V Advisory
21                 Committee Did Not Constitute The Type Of Protected
                   Activity Covered By Title VII.
22

23       Title VII's opposition clause only prohibits adverse employment action taken

24   against an individual "because he has opposed any practice made an unlawful

25   employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a) (2000). Here, Plaintiff

26   contends that she engaged in protected activity when she complained that: (1) PC "was

27   not using Title V grant funds to address and/or serve the needs of Hispanic students"

28   [DSOF ¶ 77]; and (2) there were no Hispanics from the Math Department on PC's Title

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

1    V Advisory Committee [DSOF ¶ 79].  As an initial matter, Plaintiff's complaints about

2    the use of Title V grant funds concerned matters entirely outside the scope of Title VII's

3    provisions.  Title VII concerns discrimination in employment whereas Title V governs

4    the award of monetary grants to educational institutions.[10]  [DSOF ¶ 74-75].  Simply put,

5    Plaintiff's complaint about the use of Title V funds was not the type of complaint

6    protected by Title VII's anti-retaliation provision.  *See Learned v. City of Bellevue*, 860

7    F.2d 928, 932 (9th Cir. 1988) ("[T]he opposed conduct must fairly fall within the

8    protection of Title VII to sustain a claim of unlawful retaliation).  Moreover, it is well

9    established that Plaintiff's opposition must be based on a "*reasonable belief* that the

10    employer has engaged in an unlawful employment practice."  *Moyo v. Gomez*, 40 F.3d

11    982, 984 (9th Cir. 1994).

12        Here, Plaintiff's allegation regarding use of Title V funds and/or PC's failure to

13    appoint Hispanics from the Math Department to the Title V committee did not concern

14    any employment practice under Title VII.  Indeed, the Court need look no further than

15    Plaintiff's own sworn admission that she had no idea as to whether PC was using the

16    Title V funds in an illegal manner.  [DSOF ¶ 77]  With respect to the composition of the

17    Title V Advisory Committee, it is important to note that Plaintiff does not contend that

18    there was anything discriminatory about the Title V *selection process*.[11]    Rather,

19

20    [10]Plaintiff's complaints about the use of Title V funds arise from her mistaken belief that
     the Title V funding should be used exclusively to "address and/or serve the needs of
21    Hispanic students."  [DSOF ¶ 77].  However, it would have been a violation of Title V
     regulations to use grant funds in this manner.  [DSOF ¶ 77]  Rather, Title V grant funds
22    are designed to benefit the educational institution as a whole.  [DSOF ¶ 78]  For
     example, Title V funds can be used for things such as building and maintaining college
23    infrastructure, purchasing new equipment, or creating new academic programs.  [DSOF
     ¶ 78]  Failure to comply with grant guidelines can result in revocation of grant monies.
24    [DSOF ¶ 78].

25    [11]There was also nothing discriminatory about the Title V Advisory Committee
26    membership selection process.  It is undisputed that committee membership is comprised
     of department chairs from the four STEM subject areas and other individuals who are
27    appointed on an as needed basis.  [DSOF ¶ 79]  And because Sueyoshi, not Plaintiff, was
28    the Math Department Chair in 2009, he was placed on the committee.  [DSOF ¶ 79]

1   Plaintiff's complaint appears to be based on her subjective belief that the composition of

2   the Title V committee "[didn't] represent the needs of the Hispanic student." [DSOF ¶

3   77]. Clearly, a subjective belief of this type does not qualify as or concern an unlawful

4   employment practice and, thus, does not constitute protected activity.

b)   **Plaintiff Cannot Establish That Her Complaints Of Discrimination Were The "But-For" Cause of Any Purported Adverse Employment Action.**

7   Plaintiff complaints of discrimination were not the "but-for" cause of any

8   subsequent purported adverse employment actions. As the U.S. Supreme Court recently

9   clarified in *University of Tex. Southwestern Medical Center v. Nassar*, "Title VII

10  retaliation claims must be proved according to traditional principals of but-for causation

11  … [t]his requires proof that the unlawful retaliation would not have occurred in the

12  absence of the alleged wrongful action or actions or the employer." 570 U.S. (2013)

13  (pinpoint cite not yet available). Here, Plaintiff cannot establish this threshold

14  requirement.

15      As an initial matter, Plaintiff cannot establish that the December 1, 2009

16  reprimand had *anything* to do with her complaints of discrimination because, as set forth

17  in Section IV(B)(3)(a), *supra*, Plaintiff did not engage in any protected activity until

18  November 19, 2009 when she filed her internal EEO complaint. [DSOF ¶ 82]. The

19

20  Perhaps the best evidence of the lack of any discriminatory animus by MCCCD is the
    fact that *Plaintiff herself* had served on the Title V Advisory Committee from 2002
21  through 2004 in her role as Math Department Chair. [DSOF ¶ 80] It is also undisputed
    that at least one other Hispanic faculty member was serving on the Advisory Committee
22  at the time of Plaintiff's complaints. [DSOF ¶ 81]. As if that were not enough, after
    Plaintiff expressed interest in the Advisory Committee to Title V Director Seth
23  Goodman, Plaintiff was immediately placed on the committee (which resulted in both
24  Plaintiff and Sueyoshi representing the math department). [DSOF ¶ 81] Simply stated,
    Plaintiff's complaint was not that Hispanic or Mexican-American faculty members were
25  not permitted to serve on the Title V Advisory Committee. Rather, Plaintiff's complaint
    was that the 2009 Math Department committee representative was not Hispanic.
26  Apparently, Plaintiff believed that Hispanic faculty members should be preferentially
27  selected for the Advisory Committee to the detriment of members of other races or
28  nationalities.

16

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

1  issues addressed in the December 1, 2009 reprimand had already been investigated and

2  disciplinary recommendations had already been made well before Plaintiff filed her

3  November 19, 2009 internal EEO charge.[12]   [DSOF ¶ 38-53].   Accordingly, these

4  alleged disciplinary actions could not have possibly have been caused by Plaintiff's

5  November 19, 2009 internal EEO complaint.

6         Plaintiff also cannot establish that any increased scrutiny with regards to work

7  study students was retaliatory.  Indeed, the relevant decision maker who recommended

8  the removal of Plaintiff's work study students, Dean Wilbert Nelson, was not aware of

9  Plaintiff's Title V complaints or Plaintiff's November 19, 2009 EEO complaint at the

10  time he made his recommendations.  [DSOF ¶ 53].  *Dowe v. Total Action Against*

11  *Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot

12  take action because of a factor of which it is unaware, the employer's knowledge that the

13  plaintiff engaged in a protected activity is absolutely necessary to establish ... the prima

14  facie case.").

15         In actuality, the actions MCCCD took were the direct result of Plaintiff's refusal

16  to follow applicable federal laws and regulations, her failure to follow MCCCD policies

17  and procedures, her complete lack of accountability for her actions, and her unreasonable

18  exposure of MCCCD to legal liability from third parties.  [DSOF ¶ 8-53].

19              c)    MCCCD Had Legitimate Nonretaliatory Reasons For Its
                      Actions.
20

21         Finally, even assuming, *arguendo*, that Plaintiff can somehow establish her *prima*

22  *facie* case of retaliation, MCCCD had legitimate nonretaliatory reasons for its actions.

23  [12]For example, confidential documentation was discovered in Plaintiff's garbage can on

24  or around September, 24, 2009.  [DSOF ¶ 63].  In early Fall 2009, MCCCD's IT
     Department discovered that Plaintiff had improperly downloaded a file sharing program

25  called LimeWire and improperly allowed an unauthorized user to access her laptop.
     [DSOF ¶ 64].  The decision to reprimand Plaintiff for these infractions was made well

26  before Plaintiff filed her internal EEO charge.  [DSOF ¶ 65].  Moreover, issues

27  pertaining to Plaintiff's improper supervision of her federal work study students had
     previously been brought to Plaintiff's attention in an October 8, 2009 letter from Kakar.

28  [DSOF ¶ 66].

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

1   As discussed in Section IV(B)(1), *supra*, MCCCD's desire to protect itself from

2   litigation resulting from Plaintiff's suspected violations of federal laws and regulations

3   constituted a legitimate nondiscriminatory reason for its actions.   [DSOF ¶ 83].

4   Accordingly, Plaintiff's retaliation claim fails as a matter of law.

### C.   Plaintiff's § 1983 Claim Fails As A Matter of Law.

6       Plaintiff's Complaint contains a claim for § 1983 race discrimination, harassment,

7   and retaliation.   "Traditionally the requirements for relief under [§] 1983 have been

8   articulated as: (1) a violation of rights protected by the Constitution or created by federal

9   statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of

10  state law." *Crumpton v. Gates*, 947 F.2d 1418, 120 (9th Cir. 1991).   When an action

11  seeks damages from a municipal entity such as MCCCD[13], as opposed to a *person* acting

12  under color of state law, she must specifically "identify a [Maricopa] 'policy' or custom'

13  that caused the plaintiff's injury." *Bd. Cty Comm'r Bryan County Oklahoma v. Brown*,

14  520 U.S. 397, 403 (1997); *see, also, Monell v. Department of Social Services*, 436 U.S.

15  658, 691 (1978).[14]   Here, Plaintiff cannot establish a *prima facie* case of § 1983 race

16  discrimination, harassment or retaliation because: (1) she does not contend that any

17  widespread MCCCD polices or practices give rise to her § 1983 claims; (2) she cannot

18  establish that MCCCD intentionally subjected her to discrimination on the basis of her

19  race; and (3) MCCCD had legitimate, nondiscriminatory and nonretaliatory reasons for

20  its actions.

---

23  [13]*See, e.g., Thornquest v. King*, 626 F.Supp. 486 (M.D. Fla. 1985) (holding that a community college is a municipality for purposes of § 1983 claims).

24  [14]It is well established that "a municipality may not be held liable under § 1983 solely

25  because it employs a tortfeasor." *Bd. Cty Comm'r Bryan County Oklahoma v. Brown*,

26  520 U.S. 397, 403 (1997).   Rather, a Plaintiff must go beyond the respondent superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit, because municipal liability

27  must rest on the actions of the municipality and not the actions of the employees of the

28  municipality. *Id.* at 403.

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

### 1. Plaintiff Does Not Even Allege That An MCCCD "Policy" Or "Custom" Gives Rise To Her Claims.

Plaintiff's § 1983 claim against MCCCD fails as a matter of law because she has not identified any widespread policies or practices that give rise to her § 1983 claims. A municipal policy or, for purposes of § 1983, custom means acts or omissions that are so pervasive and settled as to have the force of law. *Bryan County*, 520 U.S. at 404. Here, Plaintiff has not even alleged, must less established, that any widespread policies or practices lead to discrimination, harassment, and retaliation claims. To the contrary, at deposition Plaintiff conceded that there is no widespread practice of discrimination or harassment against Hispanics and/or Mexican-Americans at MCCCD. [DSOF ¶ 68]. As a result, MCCCD is entitled to judgment as a matter of law with regard to Plaintiff's claims under 42 U.S.C. § 1983.

### 2. Plaintiff Cannot Establish That MCCCD Intentionally Subjected Her To Discrimination On The Basis Of Her Race.

In order to prevail on her § 1983 race discrimination claim, Plaintiff must prove that MCCCD acted with "deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bryan*, 520 at 411. In other words, in order to establish her § 1983 claim, Plaintiff must show that MCCCD discriminated against her on the basis of her race *and* that MCCCD intended to do so. *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990) ("intent to discriminate must be shown under equal protection while Title VII requires no such showing.") Here, for the reasons set forth in Section IV(B), *supra*, Plaintiff cannot establish that MCCCD subjected her to discrimination, harassment or retaliation—let alone that MCCCD intentionally did so.[15] Nevertheless, even assuming, *arguendo*, that Plaintiff can

---

[15] Plaintiff considers the terms Hispanic and Mexican-American to be synonymous with one another. [DSOF ¶ 70] Because Plaintiff's Title VII national origin claims and § 1983 race claims are based upon identical allegations, the same analysis set forth in Section IV(B), *supra*, applies to Plaintiff's § 1983 race discrimination, harassment, and retaliation claims.

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

1     somehow establish *prima facie* § 1983 claims, the claims fail as a matter of law because

2     MCCCD had a legitimate, nondiscriminatory, and nonretaliatory reason for its actions.

3     *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, n. 1 (1993) (the same Title VII

4     "McDonnell Douglas framework is fully applicable to racial-discrimination-in-

5     employment claims under 42 U.S.C. §1983."). As discussed in Section IV(B)(1), *supra*,

6     MCCCD's need to protect itself from litigation that might have ensued from Plaintiff's

7     noncompliance with copyright laws and FERPA regulation constituted a legitimate

8     nondiscriminatory reason. [DSOF ¶ 8-53]. Accordingly, Plaintiff's § 1983 claims fail

9     as a matter of law.

10         **D.**     **The Same Protected Class Inference Rebuts Plaintiff's Claims Of**
11             **Discriminatory Animus.**

12     Plaintiff appears to attribute the vast majority of the purportedly discriminatory

13     and harassing conduct in this case to PC President, Anna Solley. [DSOF ¶ 71] Most

14     notably, Plaintiff contends that the copying restrictions Solley imposed on her were

15     somehow discriminatory on the basis of Plaintiff's Mexican-American national origin

16     and/or Hispanic race. [DSOF ¶ 71]. Not only is this implausible given Plaintiff's

17     misuse of copyrighted works, it also makes no sense given the fact that the decision

18     maker, Solley, is of the same national origin (Mexican American) and race (Hispanic) as

19     the Plaintiff.[16] [DSOF ¶ 72] Accordingly, the same protected class inference negates

20     Plaintiff's assertions of discrimination and harassment. *See Oncale v. Sundowner*

21     *Offshore Serv.*, 523 U.S. 75, 78 (1998) (recognizing the inference).

22         **E.**     **Punitive Damages Are Not Recoverable.**

23     As a matter of law, punitive damages are not recoverable against a municipal

24     entity under either § 1983 or Title VII. *See City of Newport v. Fact Concerts, Inc.*, 453

25     U.S. 247, 271 (1981) (municipalities are "immune from punitive damages under 42

26     U.S.C. § 1983"); 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive

27

28     [16]Solley is and has been a long time member of Hispanic organizations, was born in
    Nogales, Mexico, and speaks fluent Spanish. [DSOF ¶ 73].

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

1   damages under this section against a respondent (other than a government, government

2   agency or political subdivision)"); *see, also, Berger v. Iron Workers Reinforced Rodmen,*

3   *Local 201*, 170 F.3d 170 F.3d 1111, p. 1139, fn. 17 (noting that the same punitive

4   damages standards apply under Title VII, § 1981, and § 1983).  In *City of Newport*, the

5   Supreme Court explained that "punitive damages imposed on a municipality are in effect

6   a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in

7   taxes or a reduction of public services for the citizens footing the bill." 453 U.S. at 267.

8   Here, MCCCD is a taxpayer supported entity that relies heavily on funding and

9   appropriations from the Arizona legislature.    [DSOF ¶ 6].    Accordingly, punitive

10  damages are not recoverable against MCCCD.

11      Even assuming, *arguendo,* that MCCCD is not immune from punitive damages,

12  punitive damages may only be awarded "if the complaining party demonstrates that the

13  respondent engaged in a discriminatory practice with malice or reckless indifference to

14  the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1).[17]

15  To award punitive damages, the plaintiff's conduct must constitute more than just

16  intentional discrimination.   Otherwise, every claim of disparate treatment, if proven,

17  would result in an award of punitive damages.   Instead of merely proving intentional

18  discrimination, claimants must prove that the alleged discriminator affirmatively knew

19  that he or she was acting in violation of federal law.  *See, e.g., Kolstad v. Am. Dental*

20  *Ass'n*, 527 U.S. 526, 535-36 (1999); *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299,

21  1304 (9th Cir. 1998) (holding that "[p]unitive damages may not be awarded … where a

22  defendant's discriminatory conduct is merely negligent in respect to the existence of a

23  federally protected right.").   "Where there is no evidence that gives rise to an inference

---

24  [17]The same punitive damages standard applies to § 1983 claims. *Ngo v. Reno Hilton*

25  *Resort Corp.*, 140 F.3d 1299, 1301-04 (9th Cir. 1998) (holding that a punitive damages
    award under Title VII requires, as does § 1983, that the acts giving rise to liability are

26  willful and egregious, or display reckless indifference to the plaintiff's federal rights);
    *see also Mahach-Watkins v. Depee*, 593 F.3d 1054, 1060 (9th Cir. 2010) (a jury may

27  award punitive damages on a § 1983 claim if it finds that the state actor's conduct was

28  "malicious, oppressive or in reckless disregard" of plaintiff's rights).

1    of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual

2    malice, the trial court need not, and indeed should not, submit the issue of punitive

3    damages to the jury." *Kolstad,* 527 U.S. at 539.

4        Here, Plaintiff's allegations come nowhere close to supporting a finding of

5    unlawful discrimination, harassment, or retaliation—let alone an award of punitive

6    damages.  [DSOF ¶ 8-53].

7    **V.    CONCLUSION**

8        For the above and foregoing reasons, Defendant respectfully submits that

9    Plaintiff's Complaint should be dismissed in its entirety and that summary judgment

10   should be entered in favor of MCCCD on all claims.

11       RESPECTFULLY SUBMITTED this 11th day of October 2013.

12                              FISHER & PHILLIPS LLP

13

14                              By  s/  Shayna H. Balch

15                                   Pavneet Singh Uppal
                                     Shayna H. Balch
16                                   201 E. Washington Street, Suite 1450
                                     Phoenix, Arizona 85004-2330
17                                   Attorneys for Defendant

18

19

20

21

22

23

24

25

26

27

28

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona  85004-2330
(602) 281-3400

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on the 11th day of October 2013 I electronically transmitted

3    the attached document to the Clerk's Office using the CM/ECF System for filing and a

4    that a copy was served, via email and U.S. Mail, postage prepaid, on the following:

5

6    Cleopatria Martinez
     7030 North 21st Street
7    Phoenix, Arizona 85020
     4cleopatria@gmail.com
8    *Pro Per*

9

10

11     s/  Romina Gallina

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

# EXHIBIT C

CENGAGE
Learning

 NELSON    EDUCATION

**Global Rights and Permissions Administration**

20 Davis Drive, Belmont, California 94002 USA
Phone: 800-730-2214 or 650-413-7456 Fax: 800-730-2215 or 650-595-4603
Email: permissionrequest@cengage.com

## Submit all requests online at www.cengage.com/permissions.

Response # **262761**

09/19/2011

Cleopatria Martinez
7030 N. 21st Street
Phoenix, Az 85020

Thank you for your interest in the following Cengage Learning/Nelson Education, or one of their respective subsidiaries, divisions or affiliates (collectively, "Cengage/Nelson") material.

Title:            College Algebra with Applications for Business and Life Sciences 1E
Author(s):     LARSON/HODGKINS          ISBN:    9780547052694 (0547052693)
Publisher:     Brooks/Cole                      Year:    2009
Specific material: various problems from the textbook used in lecture to demostrate concepts
Total pages:    1

For use by:
Name:                               Martinez
School/University/Company:    Phoenix College
Course title/number:            Calculus 1
Term of use:                       Life of Adoption 2011

Intended use:
To make copies for student use of material from the text or non-sold ancillaries that accompany the adopted textbook, i.e. instructor's manuals, transparency masters, electronic study guides, computer disks, non-sold videos, etc. as long as the main text is adopted for the class.

Permission is granted to make copies of your lecture notes which may contain examples from our textbook mentioned above for distribution to students. Permission is granted based on the adoption of the textbook.

The non-exclusive permission granted in this letter extends only to material that is original to the aforementioned text. As the requestor, you will need to check all on-page credit references (as well as any other credit / acknowledgement section(s) in the front and/or back of the book) to identify all materials reprinted therein by permission of another source. Please give special consideration to all photos, figures, quotations, and any other material with a credit line attached. You are responsible for obtaining separate permission from the copyright holder for use of all such material. For your convenience, we may also identify here below some material for which you will need to obtain separate permission.

This credit line must appear on the first page of text selection and with each individual figure or photo:

From LARSON/HODGKINS. *College Algebra with Applications for Business and Life Sciences*, 1E. © 2009 Brooks/Cole, a part of Cengage Learning, Inc. Reproduced by permission. www.cengage.com/permissions

Sincerely,

Karen Lee
Granting Manager

MCCCD/Martinez01247

09/16/04  15:41  FAX +1 617 351 3801      PERMISSIONS DEPT                               ☑01

# Houghton Mifflin Company

222 Berkeley Street, Boston, Massachusetts 02116-3764          College Division
(617) 351-5000  Cable HOUGHTON                                TELEX 4430255
                                                              FAX (617) 351-3

                                                  September 10, 2004
E6305                                             04VID034
Cleopatria Martinez
Mathematics Department
Phoenix College
1202 W Thomas Road
Phoenix, AZ 85013

RE:  Larson, et al.: ELEMENTARY & INTERMEDIATE ALGEBRA, Fourth Edition, ©2005

Dear Requestor,

Thank you for your request for permission to make copies of the videocassette(s) that accompany the above-mentioned title.  Permission is hereby granted to do so at no charge, under the following conditions:

1.   The accompanying textbook must be used by all students having access to the videocassettes.

2.   Videocassettes may not be sold to students.

3.   There will be no deletions, additions, or changes in the material.  Videocassettes must be copied as a whole and may not be copied a selection or chapter at a time.

4.   The permission granted herein is non-exclusive and non-transferable to other persons or institutions.

5.   Not more than ** copy(ies) may be made.  Further distribution is expressly prohibited.

6.   The material covered by this agreement will not be combined in any other way with material from other copyrighted sources.

7.   All credits as they appear in the master videocassette(s) or on the label(s) must be duplicated.

                                                  Sincerely,

                                                  Sheila Harris
                                                  College Permissions Department

** Duplicated videos may be checked out by students who have purchased the textbook.

CONTROL JOE SUEYOSHI 00001

MCCCD/Martinez02582

09/16/04  15:41  FAX +1 617 351 3801        PERMISSIONS DEPT                    ☒04

# Houghton Mifflin Company

222 Berkeley Street, Boston, Massachusetts 02116-3764
(617) 351-5000  Cable HOUGHTON

College Division
TELEX 4430255
FAX (617) 351-3

September 16, 2004
04VID037

26305
Cleopatria Martinez
Mathematics Department
Phoenix College
1202 West Thomas Road
Phoenix, AZ 85013

RE:  Larson, et. al.: CALCULUS: EARLY TRANSCENDENTAL, Third Edition,  ©2003

Dear Requester:

Thank you for your request for permission to make copies of the videocassette(s) that accompany the above-mentioned title.  Permission is hereby granted to do so at no charge, under the following conditions:

1.   The accompanying textbook must be used by all students having access to the videocassettes.

2.   Videocassettes may not be sold to students.

3.   There will be no deletions, additions, or changes in the material.  Videocassettes must be copied as a whole and may not be copied a selection or chapter at a time.

4.   The permission granted herein is non-exclusive and non-transferable to other persons or institutions.

5.   Not more than * copy(ies) may be made.  Further distribution is expressly prohibited.

6.   The material covered by this agreement will not be combined in any other way with material from other copyrighted sources.

7.   All credits as they appear in the master videocassette(s) or on the label(s) must be duplicated.

Sincerely,

Sheila Harris
College Permissions Department

* Duplicated videos may be checked out by students who have purchased the textbook.

# Houghton Mifflin Company

222 Berkeley Street, Boston, Massachusetts 02116-3764
(617) 351-5000 · Cable HOUGHTON

College Division
TELEX 4430255
FAX (617) 351-3

September 16, 2004
04VID036

E8305
Cleopatria Martinez
Mathematics Department
Phoenix College
1202 West Thomas Road
Phoenix, AZ 85013

RE:  Larson et al.: TRIGONOMETRY: A GRAPHING APPROACH, Fourth Edition, ©2005

Dear Requester:

Thank you for your request for permission to make copies of the videocassette(s) that accompany the above-mentioned title.  Permission is hereby granted to do so at no charge, under the following conditions:

1.   The accompanying textbook must be used by all students having access to the videocassettes.

2.   Videocassettes may not be sold to students.

3.   There will be no deletions, additions, or changes in the material.  Videocassettes must be copied as a whole and may not be copied a selection or chapter at a time.

4.   The permission granted herein is non-exclusive and non-transferable to other persons or institutions.

5.   Not more than * copy(ies) may be made.  Further distribution is expressly prohibited.

6.   The material covered by this agreement will not be combined in any other way with material from other copyrighted sources.

7.   All credits as they appear in the master videocassette(s) or on the label(s) must be duplicated.

Sincerely,

Sheila Harris
College Permissions Department

* Duplicated videos may be checked out by students who have purchased the textbook.

CONTROL JOE SUEYOSHI 00003

MCCCD/Martinez02584

09/16/04  15:41  FAX +1 617 351 3801          PERMISSIONS DEPT                                    ☑04

# Houghton Mifflin Company

**222 Berkeley Street**, Boston, Massachusetts 02116-3764
(617) 351-5000  Cable HOUGHTON

College Division
TELEX 4430255
FAX  (617)  351-3

E6305
Cleopatria Martinez
Mathematics Department
Phoenix College
1202 West Thomas Road
Phoenix, AZ 85013

September 16, 2004
04VID037

RE:  Larson, et. al.: CALCULUS: EARLY TRANSCENDENTAL, Third Edition, © 2003

Dear Requester:

Thank you for your request for permission to make copies of the videocassette(s) that accompany the above-mentioned title.  Permission is hereby granted to do so at no charge, under the following conditions:

1.    The accompanying textbook must be used by all students having access to the videocassettes.

2.    Videocassettes may not be sold to students.

3.    There will be no deletions, additions, or changes in the material.  Videocassettes must be copied as a whole and may not be copied a selection or chapter at a time.

4.    The permission granted herein is non-exclusive and non-transferable to other persons or institutions.

5.    Not more than * copy(ies) may be made.  Further distribution is expressly prohibited.

6.    The material covered by this agreement will not be combined in any other way with material from other copyrighted sources.

7.    All credits as they appear in the master videocassette(s) or on the label(s) must be duplicated.

Sincerely,

Sheila Harris
College Permissions Department

* Duplicated videos may be checked out by students who have purchased the textbook.

CONTROL JOE SUEYOSHI 00004

MCCCD/Martinez02585

09/16/04  15:41  FAX +1 617 351 3801     PERMISSIONS DEPT                    ☑03

# Houghton Mifflin Company

222 Berkeley Street, Boston, Massachusetts 02116-3764
(617) 351-5000  Cable HOUGHTON

College Division
TELEX 4430255
FAX  (617)  351-3

September 16, 2004
04VID036

E6305
Cleopatria Martinez
Mathematics Department
Phoenix College
1202 West Thomas Road
Phoenix, AZ 850

RE:  Larson et al.: TRIGONOMETRY: A GRAPHING APPROACH, Fourth Edition, ©2005

Dear Requester:

Thank you for your request for permission to make copies of the videocassette(s) that accompany the above-mentioned title.  Permission is hereby granted to do so at no charge, under the following conditions:

1.   The accompanying textbook must be used by all students having access to the videocassettes.

2.   Videocassettes may not be sold to students.

3.   There will be no deletions, additions, or changes in the material.  Videocassettes must be copied as a whole and may not be copied a selection or chapter at a time.

4.   The permission granted herein is non-exclusive and non-transferable to other persons or institutions.

5.   Not more than * copy(ies) may be made.  Further distribution is expressly prohibited.

6.   The material covered by this agreement will not be combined in any other way with material from other copyrighted sources.

7.   All credits as they appear in the master videocassette(s) or on the label(s) must be duplicated.

Sincerely,

Shelia Harris
College Permissions Department

* Duplicated videos may be checked out by students who have purchased the textbook.

CONTROL JOE SUEYOSHI 00005

MCCCD/Martinez02586

09/16/04   15:41  FAX +1 617 351 3801        PERMISSIONS DEPT                                    ☒03

# Houghton Mifflin Company

222 Berkeley Street, Boston, Massachusetts 02116-3764          College Division
(617) 351-5000  Cable HOUGHTON                                TELEX 4430255
                                                              FAX (617) 351-3

                                                      September 16, 2004
                                                      04VID036

E6305
Cleopatria Martinez
Mathematics Department
Phoenix College
1202 West Thomas Road
Phoenix, AZ 850    0

RE:  Larson et al.: TRIGONOMETRY: A GRAPHING APPROACH, Fourth Edition, ©2005

Dear Requester:

Thank you for your request for permission to make copies of the videocassette(s) that accompany the above-
mentioned title.  Permission is hereby granted to do so at no charge, under the following conditions:

1.    The accompanying textbook must be used by all students having access to the videocassettes.

2.    Videocassettes may not be sold to students.

3.    There will be no deletions, additions, or changes in the material.  Videocassettes must be copied as a
      whole and may not be copied a selection or chapter at a time.

4.    The permission granted herein is non-exclusive and non-transferable to other persons or institutions.

5.    Not more than * copy(ies) may be made.  Further distribution is expressly prohibited.

6.    The material covered by this agreement will not be combined in any other way with material from other
      copyrighted sources.

7.    All credits as they appear in the master videocassette(s) or on the label(s) must be duplicated.

                                                      Sincerely,

                                                      Sheila Harris
                                                      College Permissions Department

* Duplicated videos may be checked out by students who have purchased the textbook.

                                                      CONTROL JOE SUEYOSHI 00006

                                                      MCCCD/Martinez02587

# Attachment C

# Publisher Permission

*1)  The administration was concerned with the use of **selected homework problems**
with Dr. Martinez's lecture notes.*
*The publisher gave permission to make 35 copies of selected homework problems.
When the Phoenix College Math Department changed editions, I requested and
received permission to make 50 copies of the selected homework problems in the
new edition.*

*2)  The administration was concerned that **replacing the textbook examples with
my own examples** was a copyright violation.*
*The publisher stated (8-23-10) that Dr. Martinez did not need publisher's
permission to replace textbook examples with her own examples.*

*3)  The administration was concerned with copyright regarding the **use of
textbook examples in my lecture notes**.*
*The publisher said in an email dated 10-8-10 that I could use examples from the
text in my lecture notes "for as long as you are adopting the text and it is being
purchased by the students."*

*4)  The administration was concerned with Dr. Martinez's **use of textbook
problems in her exams**.*
*The publisher states that Dr. Martinez was free to use the questions from the
textbook in any way that best suits her teaching needs (10-19-10).*

*5)  The administration was concerned that I had not acknowledged an author for a
**table of calculus integrals which I created** from calculus formulas.*
*The publisher said, "When you ... adapt the material in a table of your own
creation, ...we do not require you to request permission." (11-22-10 and 12-3-10)*

EEOC000135

## _(1) Permission to copy selected Homework Problems_

### Your Reference:  Permission Request

Div:  OR: Code: 9780131874763

Req No:  38634: Cust No:  15205

Date: APR 13 10        Via Fax: 602-285-
7668

Cleopatria Martinez

Phoenix College

1202 W. Thomas Rd.

Phoenix, AZ  85013

is hereby granted permission to use the material indicated in the following acknowledgement.  This acknowledgement must be carried on the copyright or acknowledgements page of your book or as a footnote on the page on which the material appears:

Sullivan, PRECALCULUS: CONCEPTS THROUGH FUNCTIONS, A RIGHT TRIANGLE APPR, © 2007. Reprinted by permission of Pearson Education, Inc.

Please note:  If the material is to be stapled or bound, the credit line must appear on the first page on which our material appears.  If not stapled or bound, the credit line must appear on each page of our material.

This material may only be used in the following manner:

To make up to 35 copies of selected Homework problems from each section of Chapters 5, 6 and 7, pp. 371-563 for Professor Martinez and students for the course MAT187 – PRECALCULUS beginning Fall 2010 at Phoenix College.  Permission is granted free of fee on the understanding that the above textbook has been adopted for the course and purchased by the students.

This permission is non-exclusive and applies solely to the following language(s) and territory:

Language(s):   English      Territory:  Phoenix College

EEOC000136

IMPORTANT NOTICE:

Pearson Education, Inc. reserves the right to take any appropriate action if you have used our intellectual property in violation of any of the requirements set forth in this permissions letter.  Such action may include, but is not limited to, the right to demand that you cease and desist in your use of Pearson Education's material and remove it from the marketplace.

This permission does not allow the reproduction of any material copyrighted in or credited to the name of any person or entity other than the publisher named above.  The publisher named above disclaims all liability in connection with your use of such material without proper consent.

*E. Costa*

*Estelle Costa*

*Permissions Administrator*

*Pearson Education, Inc*

*501 Boylston Street*

*Boston, MA 02116*

*Tel:   617-671-3445*

*Fax:   617-671-3447*

*Email:*

*Please visit the following website to access our Disability Request Form if you are requesting an alternative format for the print impaired:*

## *(1) New Edition:  Permission to copy selected Homework Problems*

### Your Reference:  Permission Request

Div:  OR: ISBN: 9780321645081

Req No: 39028: Cust No:  15205

Date: MAY 13 10          Via Fax:  602-285-7668

Cleopatria Martinez

Phoenix College

1202 W. Thomas Rd.

Phoenix, AZ  85013

is hereby granted permission to use the material indicated in the following acknowledgement.  This acknowledgement must be carried on the copyright or acknowledgements page of your book or as a footnote on the page on which the material appears:

Sullivan, PRECALCULUS: CONCEPTS THROUGH FUNCTIONS, A RIGHT TRIANGLE APPR, © 2011 Pearson Education, Inc. Reprinted by permission of Pearson Education, Inc.

Please note:  If the material is to be stapled or bound, the credit line must appear on the first page on which our material appears.  If not stapled or bound, the credit line must appear on each page of our material.

This material may only be used in the following manner:

To make up to 50 copies of selected Homework Problems from each section of Chapters 6, 7, 8 and 9 for Professor Martinez and students for the course MAT187 - PRECALCULUS beginning Fall 2010 at Phoenix College.  Permission is granted free of fee on the understanding that the above textbook has been adopted for the course and purchased by the students.

EEOC000138

This permission is non-exclusive and applies solely to the following language(s) and territory:

Language(s):    English        Territory:  Phoenix College

IMPORTANT NOTICE:

Pearson Education, Inc. reserves the right to take any appropriate action if you have used our intellectual property in violation of any of the requirements set forth in this permissions letter.  Such action may include, but is not limited to, the right to demand that you cease and desist in your use of Pearson Education's material and remove it from the marketplace.

This permission does not allow the reproduction of any material copyrighted in or credited to the name of any person or entity other than the publisher named above.  The publisher named above disclaims all liability in connection with your use of such material without proper consent.

*E. Costa*



Please visit the following website to access our Disability Request Form if you are requesting an alternative format for the print impaired:

### (2)  Permission not needed to
### replace the textbook examples with my own examples

Subject:  RE: Substitution of my problems
From:    Estelle.Simpson@Pearson.com
Date:    **8/23/2010** 5:13 AM
To:      cleopatria.martinez@pcmail.maricopa.edu

Cleopatria,
Yes you are correct and may proceed with your request as stated below.
Kind Regards
Estelle

-----Original Message-----
From: cleopatria.martinez
[mailto:cleopatria.martinez@pcmail.maricopa.edu]
Sent: Saturday, August 21, 2010 1:43 AM
To: Simpson, Estelle
Subject: Substitution of my problems

Estelle,          8-20-10
On 8-17-10 I summarized my understanding of our phone conversation. That
is, that I did not need the publisher's permission to use (in my lecture
notes which I may distribute to students for their use in my precalculus
class at PC) my own problems which are similar to the selected examples
in the adopted textbook by Sullivan. I haven't heard back from you.
Would you kindly confirm whether I need permission to do the above?
Thank you,
Cleopatria

From:    cleopatria.martinez@pcmail.maricopa.edu
Date:    **8/17/2010** 1:20 PM
To:      Estelle.Costa@Pearson.com

> As per our telephone conversation last week, I wish to confirm
Agreement that I could substitute in my lecture notes my own problems which
are similar to the selected examples in the adopted textbook by Sullivan,
PRECALCULUS: CONCEPTS THROUGH FUNCTIONS, A RIGHT TRIANGLE APPR, copyright
2011 Pearson Education, Inc. Reprinted by permission of Pearson Education,
Inc. It is my understanding I do not need the publisher?s permission in
Regards to using the problems I have created for my lecture notes which I may
Distribute to students for their use in my MAT187 Precalculus math class at
Phoenix College.
Thank you,
Cleopatria
>

EEOC000140

### **3)  *I may use textbook examples in my lecture notes***

Subject:      RE: Borrowing Text Examples for Lecture Notes
From:         Estelle Simpson
Date:         10/8/2010 8:05 AM          FWD: J Abdo  2:04 PM
To:           Cleopatria Martinez

Yes for as long as you are adopting the text and it is being purchased by the students
Best
*E. Simpson*

**Estelle Simpson**
**Permissions Specialist**
**Pearson Education, Inc.**
501 Boylston Street, Suite 900
Boston, MA 02116
✉ estelle.simpson@pearson.com
☎ 617-671-3445
🖷 617-671-3447


**From:** cleopatria.martinez [mailto:cleopatria.martinez@pcmail.maricopa.edu]
**Sent:** Friday, October 08, 2010 11:02 AM    8:01 AM
**To:** Simpson, Estelle
**Subject:** Borrowing Text Examples for Lecture Notes

 Hi Estelle,    10-8-10

I hope all is going well for you.

I am using the Sullivan, PRECALCULUS: CONCEPTS THROUGH FUNCTIONS, A RIGHT
TRIANGLE APPR, © 2011 Pearson Education, Inc. Reprinted by permission of Pearson
Education, Inc.  Students are required to purchase this textbook and I  use it to teach the
class.

I teach using lecture notes I make summarizing the main points needed to understand a
concept.  May I every so often use examples from the text in my lecture notes?  Is it ok if I
distribute these lecture notes which may contain examples from the required textbook to
my students?.

Thanking you in advance for a speedy response.

Cleopatria

EEOC000141

## 4)  I may use textbook problems in my exams

| | |
|---|---|
| Subject: | RE: Use of textbook questions on tests |
| From: | Estelle.Simpson@Pearson.com |
| Date: | 10/19/2010 1:13 PM |
| To: | Cleopatria Martinez |

Cleopatria,
As long as the books you mention,  Briggs & Sullivan, have actually been adopted for your course/s AND have been purchased by the students, you are free to use the questions form the text's in any many that best suits your teaching needs.
I hope this helps.

| | |
|---|---|
| Subject: | RE: Use of textbook questions on tests |
| From: | Cleopatria Martinez |
| Date: | 10/19/2010 1:06 PM |
| To: | Estelle.Simpson@Pearson.com |

Estelle,    10-19-10
I must apologize for the clarification that I needed from you as a publisher.  My immediate supervisor and the college administration have questioned this practice of using problems from the Precalculus textbook in tests.
You indicated use of text questions for tests was fine for the Briggs/Cochran text but it was not specifically stated that the same was true for Sullivan's Precalculus text.  I am sorry for taking up so much of your time but it is important that I make this specific inquiry.
Thank you for your reply.

| | |
|---|---|
| Subject: | RE: Use of textbook questions on tests |
| From: | Estelle.Simpson@Pearson.com |
| Date: | 10/19/2010 5:22 AM |
| To: | Cleopatria Martinez |

I thought I'd already done that Cleopatria

| | |
|---|---|
| Subject: | RE: Use of textbook questions on tests |
| From: | Cleopatria Martinez |
| Date: | 10/19/2010 12:41 PM |
| To: | Estelle.Simpson@Pearson.com |

Hi Estelle,  10-19-10
Would you verify that the same is true regarding my use of questions from the Sullivan text (also adopted and purchased by students) in tests for the class?
Thanks

| | |
|---|---|
| Subject: | RE: Use of textbook questions on tests |
| From: | Estelle.Simpson@Pearson.com |
| Date: | 10/19/2010 5:22 AM |
| To: | Cleopatria Martinez |

Cleopatria,
You are fine to use your choice of questions from the Briggs/Cochran text as long as the text has been adopted and purchased by the students,
Best  *E. Simpson*

EEOC000142

Subject:      Use of textbook questions on tests
From:        Cleopatria Martinez
Date:         10/18/2010 3:17 PM
To:           Estelle.Simpson@Pearson.com
Bcc          Cleopatria Martinez

Hi Estelle,   10-18-10
I haven't heard from you regarding my use of textbook questions on my exams.  I have also
adopted the Calculus textbook by Briggs/Cochran.  I am preparing a Calculus test.  Please send
me your response ASAP.  I want to be certain that my use of questions from the textbook on tests
does not require permission, and I do not need to credit the author when I use these questions on
a test since the book is adopted and students are required to purchase it.
Thanks,
Cleopatria

Subject:      Use of textbook questions on tests
From:        Cleopatria Martinez
Date:         10/13/2010 9:53 AM
To:           Estelle.Simpson@Pearson.com
Bcc          Cleopatria Martinez

Hi Estelle,        10-13-10
I hope you are having a great day.

I adopted the Sullivan textbook, PRECALCULUS: CONCEPTS THROUGH FUNCTIONS, A
RIGHT TRIANGLE APPR, © 2011 Pearson Education, Inc. Reprinted by permission of
Pearson Education, Inc.  Students are required to purchase this textbook.

I often use questions out of the textbook when I write up my tests.  Do I need permission to do
this, and do I need to credit the author when I use a question from the textbook in a test given to
the students?

Thanking you in advance for your response,
Cleopatria

## 5) *Permission not required to use my table of calculus formulas*

Submit all requests online at                                    Response # **243662**
11/22/2010

Cleopatria Martinez
7030 N. 21st Street
Phoenix, Az 85020

Thank you for your interest in the following Cengage Learning/Nelson Education, or one of their respective subsidiaries, divisions or
affiliates (collectively, "Cengage/Nelson") material.

Title: CALCULUS:ETF EXAM 4E 4E
Author(s): LARSON ISBN: 9780618730698 (0618730699)
Publisher: Brooks/Cole Year: 2007
Specific material: pages 364;
Total pages: 1

For use by:
Name: Martinez
School/University/Company: Phoenix College
Course title/number: Calculus 1
Term of use: Fall Term 2010

Intended use:
When you paraphrase the material in your own words, adapt the material in a table of your own creation, or use the material in a substantially altered form, we do not require you to request permission. Please use a source line stating you have based your usage onthe author, title, edition, copyright year, publisher, and ISBN shown above.

The non-exclusive permission granted in this letter extends only to material that is original to the aforementioned text. As the requestor, you will need to check all on-page credit references (as well as any other credit / acknowledgement section(s) in the front and/or back of the book) to identify all materials reprinted therein by permission of another source. Please give special consideration to all photos, figures, quotations, and any other material with a credit line attached. You are responsible for obtaining separate permission from the copyright holder for use of all such material. For your convenience, we may also identify here below some material for which you will need to obtain separate permission.

This credit line must appear on the first page of text selection and with each individual figure or photo:
From LARSON, *CALCULUS:ETF EXAM 4E*, 4E. © 2007 Brooks/Cole, a part of Cengage Learning, Inc. Reproduced by permission. www.cengage.com/permissions

Sincerely,
Karen Lee
Senior Grant Coordinator

Subject:     RE:  Integration Formulas – copies 243662 , CALCULUS:ETF EXAM 4E
From:        Jane Park
Date:        12-3-2010  12:08 PM
To:          Jane Park, Casandra Kakar, Cleopatria Martinez
Cc:          Joe Sueyoshi

Hello all,

Cleopatria has contacted Cengage with further questions about the content of her permission letter. For clarity, I've attached her most recent grant letter, for request 243662.

This grant letter is responding to a request to use material from one of our books, CALCULUS:ETF EXAM 4E by Larson. It states that if material was paraphrased from one of our books, and we have determined that it was paraphrased a sufficient amount, that formal permission is not needed for its use. For this particular request, we determined that the material did not need formal permission, but because we received a request to adapt material from our figure, we responded with our standard letter. We ask that there is a source credit line as to where the material originated. If this letter remains in effect, it does require that a source line be used.

After speaking with Cleopatria yesterday, it seems that she did not reference any particular book at all to create her figure, creating her figure from mathematical formulas, and only came to Cengage because a similar figure appears in our book CALCULUS:ETF EXAM 4E. In fact, she says that similar figures appear in books published by other publishers such as Pearson, as well. This does not come as a surprise since the figures are dealing with common mathematical formulas and the arrangement is a simple chart format. Cengage can only respond to use of figures that appear in its own books, not to the use of the formulas themselves or to figures as they appear in the books of other publishers.

Material that is paraphrased may fall under fair use laws, but Cengage cannot advise you on particular cases or in general about this issue. We can direct you to www.copyright.gov, where there are discussions on fair use of material.

Our department cannot change our response letter as that is out of our reach, but again our letter was created in response to a request to modify a specific figure in our text. We hope that this explanation of our policies helps in further decisions about whether you should come to us to ask for permission if you want to use the same figure in the future. The modifications we are able to make to the request are to modify it for use of the figure exactly as it appears in our book, or we may also cancel it if you choose.

Thank you,

Jane Park

Permissions Granting Associate
Cengage Learning Global Production and Manufacturing
20 Davis Drive, Belmont CA 94002 USA
jane.park@cengage.com; www.cengage.com/permissions
Phone: 650.413.7787 or 800.730.2214 Fax: 800.730.2215