Pavneet Singh Uppal, SBN 016805
Shayna H. Balch, SBN 024852
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
Telephone: (602) 281-3400
Fax: (602) 281-3401
puppal@fisherphillips.com
sbalch@fisherphillips.com

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Cleopatria Martinez,<br><br>            Plaintiff,<br><br>      v.<br><br>Maricopa County Community College District; et al.,<br><br>            Defendants. | No. CV-15-01759-PHX-NVW<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS** |

Defendants Maricopa County Community College District ("MCCCD") and Rufus and Debra Glasper (collectively "Defendants"), by and through counsel undersigned, hereby submits this Notice of Motion and Motion for Attorneys' Fees and Costs in compliance with Rule 54.2 of the Local Rules of Civil Procedure.

After more than two years of litigation, Defendants prevailed on their Motion for Summary Judgment and the Court dismissed all of Plaintiff's claims with prejudice – including Plaintiff's four causes of action alleging violations of due process and Plaintiff's fifth cause of action requesting declaratory relief. Indeed, the Court went so far as to comment that "[i]t may seem strange and even bizarre that the District's rich and elaborate procedures for dismissal and suspension would nevertheless fall short of federal constitutional minimums of fairness" and that "Martinez has raised no colorable

federal claim of deprivation of property without due process of law." (Doc. 91, p. 3).

Accordingly, for the reasons set forth more fully below in Defendants' Memorandum of Points and Authorities, Defendants respectfully request that the Court award Defendants' reasonable attorneys' fees and costs in the amount of $110,000.00 pursuant to 42 U.S.C. § 1988, Rule 54(d)(2) of the Federal Rules of Civil Procedure, and Rule 54.2 of the Rules of Practice for the United States District Court for the District of Arizona. The requested fee award of $110,000.00 represents a more than 50% reduction from the actual fees and costs which Defendants were forced to incur to defend themselves against the Plaintiff's meritless claims.

Defendants' motion is supported by the following memorandum of points and authorities, the affidavit of undersigned defense counsel (**Exhibit A**), Defendants' Statement of Consultation (**Exhibit B**), its Task-Based Itemized Statement of Attorneys' Fees and Non-Taxable Costs, and by the entire record in this matter.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   INTRODUCTION

Defendants recognize that there are strong public policy considerations that, in a normal case, weigh against awarding attorneys' fees and costs against a plaintiff in an employment case. Thus, Defendants have rarely, if ever, sought a fee award after prevailing in an employment matter. This, however, is far from a normal matter. This is not a case in which a plaintiff incorrectly, albeit reasonably, alleged due process violations. To the contrary, and as set forth in greater detail below, Plaintiff Cleopatria Martinez vexatiously sued and maintained two separate federal lawsuits against Defendants over the past five years without any justification despite her ongoing and undisputed insubordination. Absent an appropriate sanction by the Court, Plaintiff is likely to continue filing vexatious lawsuits in response to any legitimate measures MCCCD takes to enforce its lawful policies. Accordingly, the Court should award MCCCD's its requested attorneys' fees and non-taxable costs in the amount of $110,000.00 ("Requested Amount") incurred as a result of defending Plaintiff's claims.

## II. PROCEDURAL & FACTUAL BACKGROUND

This lawsuit is the *second* meritless lawsuit Plaintiff Cleopatria Martinez ("Martinez") has filed against Maricopa County Community College District ("MCCCD") in federal district court. In the first lawsuit, 2:12-cv-00702-DGC, Plaintiff alleged national origin discrimination, harassment, and retaliation under Title VII in addition to race discrimination, harassment, and retaliation under 42 U.S.C. § 1983. Plaintiff's allegations against MCCCD in this first lawsuit were utterly without basis in fact or the law. Indeed, one of Plaintiff's main allegations in support of her race and national origin discrimination claims against MCCCD was that the then President of MCCCD's Phoenix College, Anna Solley (Hispanic/Mexican) had subjected Plaintiff to discrimination and harassment based on Plaintiff's own Hispanic race and Mexican national origin. *See* MCCCD's Motion for Summary Judgment at **Exhibit C.** Despite the baseless nature of Plaintiff's claims against MCCCD, Plaintiff forced MCCCD to incur substantial expenses in defending itself for nearly two years in federal court. MCCCD repeatedly requested that Plaintiff dismiss her claims but she obstinately refused to do so. Only after discovery had come to a close and MCCCD had incurred the legal fees associated with filing a motion for summary judgment, did Plaintiff ultimately abandon her claims by seeking a stipulation from MCCCD regarding her voluntary dismissal of her claims, with each side to incur their own fees. The dismissal was not part of a settlement reached between the parties.

In the instant lawsuit, Plaintiff once again filed a baseless lawsuit against MCCCD. The complaint alleged five separate counts against Defendants, including four separate Due Process claims and one claim for declaratory judgment. The Court found that Plaintiff effectively abandoned two of the Due Process Claims, and also found the other two Due Process Claims "bizarre," "elusive," and "no[t] colorable," and the final claim irrelevant (Doc. 91 at 3, 14, 17, 18).

FPDOCS 33452330.1

## III. LEGAL ARGUMENT

### A. Defendant Is Eligible For An Award Of Attorneys' Fees.

In any action or proceeding to enforce a provision of 42 U.S.C. § 1983, a court, in its discretion, may allow the prevailing party reasonable attorneys' fee. 42 U.S.C. § 1988 (a Court may allow the prevailing party a reasonable attorneys' fee in an action to enforce a provision of 42 U.S.C. § 1983). A prevailing defendant may recover fees where the court finds that the plaintiff's claims are "frivolous, unreasonable, or groundless." *Christianburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978); *see also Galen v. County of Los Angeles,* 477 F.3d 652, 666 (9th Cir.2007) (applying *Christianburg* standard to § 1983 claims). A prevailing defendant may also recover attorneys' fees plaintiff continued to litigate after its claims clearly became unreasonable, frivolous, or groundless. *Id.* at 421. In determining that Congress permitted employers to recover fees in civil rights cases, the Supreme Court recognized that public policy supports the awarding of attorneys' fees in appropriate cases:

> [an] allowance of awards to defendants would serve 'to deter the bringing of lawsuits without foundation,' 'to discourage frivolous suits,' and 'to diminish the likelihood of unjustified suits being brought.' If anything can be gleaned from these fragments of legislative history, it is that while Congress wanted to clear the way for suits to be brought under the Act, it also wanted to protect defendants from burdensome litigation having no legal or factual basis.

*Christianburg* at 420.

A prevailing defendant need not show the plaintiff's claim was brought in bad faith, but only that a reasonable person would have recognized the claim as meritless. *Id*. at 422. However, "if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him [or her] with the attorney's fees incurred by the defense." *Id*. 5. In determining the propriety of a bad faith fee award, "the inquiry will focus primarily on the conduct and motive of a party, rather than

on the validity of the case. *Rothenberg v. Sec. Mgmt. Co.*, 736 F.2d 1470, 1472 (11th Cir. 1984). Relevant to the instant case, this Court recently found:

> In some cases bad faith may be shown from direct evidence of intent . . . [b]ut in most cases, bad faith must be proved circumstantially. There are indications of both in this case. [Plaintiff]'s prolonged display of contempt, contumaciousness, and attacks on her supervisor, unrelated to any protected activity, strongly suggest a personal motive. Weak or non-existent foundation for litigation suggests there may very well have been other true motives for the litigation.

*Watson* at 1003.

Here, there is no dispute that Defendants are the prevailing party in this litigation. On November 1, 2017, the Court issued an order in response to parties' cross-motions for summary judgment. (Doc. 91). The Order granted summary judgment to Defendants' on all five of Plaintiff's claims, and denied Plaintiff's cross-motion. *Id*. Final judgment was entered in Defendants' favor on the same date. (Doc. 92). Consequently, Defendants are eligible for an award of attorneys' fees.

### B. Defendant Is Entitled To An Award Of Attorneys' Fees and Non-Taxable Costs

#### 1. *Plaintiff's Current Lawsuit Is Part and Parcel of Her Vexatious Litigation Tactics.*

There are ample undisputed facts in the record of this case, as well as the one prior, documenting prolonged displays of contempt by Plaintiff towards her employer. Specifically, the Court found that "the facts of [Plaintiff's] insubordination are undisputed" and "[Plaintiff's] insubordination continues to this day." (Doc. 91 at 14). Additionally, "[Plaintiff] never claimed that she did not understand the instructions or that the instructions were beyond the scope of [Defendants'] authority." (Doc. 91 at 17). Moreover, the Court resolved Plaintiff's claims by finding that "[Plaintiff] was fully and richly accorded fair, adequate, impartial procedure in the District's decision to suspend her for her undisputed insubordination and refusal to follow directions." (Doc. 91 at 18).

However justified Plaintiff may feel in her contempt, that contempt cannot continue to manifest itself into baseless legal claims which MCCCD must defend at substantial expense.

In the prior case, 2:12-cv-00702-DGC, Plaintiff pursued baseless legal claims against MCCCD in response to its legitimate and nondiscriminatory attempt to enforce its reasonable and well-settled policies. Plaintiff litigated those claims for nearly two years against MCCCD, including through discovery and MCCCD's filing of a motion for summary judgment. However, there Plaintiff stopped short of permitting the Court to find as it did here, instead offering to dismiss her claims with prejudice solely in exchange for MCCCD's agreement to not seek attorneys' fees or costs against her. There, as in the instant case, Plaintiff vexatiously pursued claims against MCCCD without having any cognizable legal basis for doing so. And as a result, MCCCD was required to incur substantial expense for defending against Plaintiff's claims.

Plaintiff did not stop short of MCCCD's motion for summary judgment this time, and instead decided to double-down by filing her own cross-motion for summary judgment. Plaintiff's cross-motion in this case served no useful purpose. It not only wasted limited judicial resources, but it also required MCCCD to unnecessarily incur additional legal fees in responding to Plaintiff's motion for summary judgment and 355 page Separate Statement of Facts and exhibits.

### 2. *Plaintiff Filed The Instant Lawsuit in Bad Faith After She Had Received More Than Sufficient Due Process Protection From Defendants.*

As the Court succinctly stated in its Order granting complete summary judgment in Defendants' favor, Plaintiff's due process claims were "elusive," "bizarre," and Plaintiff "[did] not even present a colorable argument of violation of due process of law." (Doc. 91 at 3, 18). Simply put, Plaintiff's instant lawsuit was brought in utter bad faith and without any basis in law or fact.

6

Accordingly, in assessing Defendants' request for attorneys' fees, the Court should first assess Plaintiff's claims from the perspective of what she knew at the outset of her lawsuit. *See EEOC v. Bruno's Restaurant*, 13 F.3d 285, 290 (9th Cir. 1993). *See also Watson v. County of Yavapai*, 240 F. Supp. 3d 996, 1002-03 (D. Ariz. 2017) (awarding attorneys' fees to defendant who alleged lack of ADA reasonable accommodation by her employer despite being present for and acknowledging the employer's engagement in the interactive process and granting of accommodations prior to filing her lawsuit). However, "[a] defendant can recover if the plaintiff violates this standard *at any point during the litigation*, not just at its inception." *Galen*, 477 F.3d at 666 (emphasis added).

Here, Plaintiff was aware of and personally involved with nearly all of the material facts prior to filing her claims. Plaintiff materially participated in all of the elaborate processes afforded her by Defendants prior to her suspension. As noted in Defendants' summary judgment briefing, Plaintiff was provided with pre-disciplinary notice of the insubordination charge against her on March 20, 2013. (Doc. 77, p. 6). She next had a pre-disciplinary conference with the highest ranking individuals at Phoenix College, President Anna Solley and Vice President, Cassandra Kakar on April 3, 2013. (Doc. 77, pp. 6-7). Plaintiff further had an in person meeting with Vice Chancellor of Human Resources, Jim Bowers where she received a Statement of Charges against her – which included a charge of insubordination. (Doc. 77, p. 7). And on November 18, 2013, she received a full-day evidentiary hearing before a Hearing Committee comprised of her peers. (Doc. 77, p. 8). Finally, despite all of these elaborate procedures afforded to Plaintiff, she further received numerous opportunities to be heard in front of the MCCCD Governing Board.[1] (Doc. 77, p. 9).

---

[1] Specifically, Plaintiff's attorney submitted a nine page legal brief to the MCCCD Governing Board outlining her arguments that "a fourteen-month suspension is the economic equivalent of a dismissal." (Doc. 77, p. 9) Plaintiff also submitted at least four letters to the Governing Board asserting the same argument. *Id.* Plaintiff and her counsel each separately appeared before the Governing Board in open session and

7

But despite all of the comprehensive procedures provided to her, Plaintiff alleged in her Complaint (and continued to maintain throughout litigation) that she was denied the very due process that she was afforded. Consequently, the Court concluded that Plaintiff's Due Process claim is "elusive" and "bizarre," and further concluded that "[i]t may seem strange and even bizarre that the District's rich and elaborate procedures for dismissal and suspension would nevertheless fall short of federal constitutional minimums of fairness." (Doc. 91 at 3). Further, Plaintiff "d[id] not identify any additional procedure she could be due under federal procedural law." (Doc. 91 at 14). In other words, Plaintiff's belief that Defendants denied her due process "[was] objectively unreasonable in light of her own knowledge of essentially all the primary facts necessary to support such allegations." *Watson* at 1002. "That is enough to satisfy the *Christiansburg* standard." *Id*. Accordingly, Defendants are entitled to an award of attorneys' fees in their favor.

### 3. *Plaintiff Pursued Two Separate Claims Alleging A Deprivation Of A Liberty Interest But Never Identified A Cognizable Liberty Interest and Ultimately Abandoned Her Liberty Interest Claims After Two Years of Discovery and Litigation Fees.*

As the Court further noted in its Order granting complete summary judgment in Defendants' favor, Plaintiff wholly abandoned her two liberty interest claims when faced with Defendants' summary judgment motion by stating that she "concedes the causes of action in her Amended Complaint alleging violation of her liberty interest." (Doc. 91 at 3; Doc. 79 at 13). In other words, despite have no legal or factual basis for asserting her liberty interest claims against Defendants, Plaintiff inexplicably forced MCCCD to

---

argued that her suspension was improper and "the functional equivalent of a termination from the district." And if that were not enough, Plaintiff also had two other individuals separately appear on her behalf before the Governing Board to advocate for the reversal of her suspension. *Id.*

conduct discovery and defend against these claims for more than two years only to later abandon those claims by way of *a single sentence* in response to Defendants' motion for summary judgment. (Doc. 91 at 3)  Given Plaintiff's eleventh hour abandonment of her liberty interest claims, Defendants were still left with the full expense of defending them. And even assuming, *arguendo*, that Plaintiff was somehow not aware of the baseless nature of her liberty interest claims *at the time she filed her complaint*, Plaintiff was certainly obligated to dismiss these claims once she became aware of their frivolous nature.  Plaintiff did not, and Defendants should not, be forced to bear the burden of legal fees incurred as a result of defending against these claims.

### 4. Plaintiff Improperly Attempted To Assert An Additional Groundless Claim That Was Never Previously Disclosed For the First Time In Response to Defendants' Motion for Summary Judgment.

The Court further found that Plaintiff's attempt to raise an additional claim at summary judgment was improper, and even so, that the claim completely lacked merit. (Doc 91 at 3-4, 15-16).  Specifically, Plaintiff contended for the first time at summary judgment that Defendant Glasper unconstitutionally occupied both a partisan and a judicial role in Plaintiff's disciplinary case. Although the Court found that Plaintiff's "[f]ailure to plead bars [the claim]," the Court still found that "[Plaintiff]'s challenge of bias . . . factually groundless[] and legally erroneous." (Doc. 91 at 15-16). Defendants incurred substantial expense in responding to this claim asserted by Plaintiff at the summary judgment stage and should be reimbursed accordingly.

### 5. Plaintiff's Claim For Declaratory Judgment Was Baseless and As The Court Noted During Oral Argument, It Would Have Been An Abuse of Discretion to Award It.

Plaintiff further sought declaratory judgment on an issue which is irrelevant to her due process claims. The Court correctly held that it "need not decide whether [Plaintiff] actually violated copyright law" and that "[w]hat matters is the [Defendants] had a good-faith basis for adopting a prophylactic order." (Doc. 91 at 17). The Court further ruled

during oral argument that it would have been an abuse of direction to award declaratory relief. Although the Court dismissed this claim, Defendants incurred substantial expense needlessly defending it.

### C. The Amount Of Attorneys' Fees Requested By MCCCD Is Reasonable.

Local Rule of Civil Procedure 54.2(c)(3) sets forth a variety of factors that the Court should take into consideration when deciding the reasonableness of an attorneys' fees request. The factors that have the largest bearing on this case are "the time and labor required of counsel" and the reasonableness of the rates charged by defense counsel.

Here, defense counsel was required to expend a significant amount of time defending against Plaintiff's meritless claims. Examples of the time and effort required of counsel include, but are not limited to: multiple communications with Plaintiff's counsel in an attempt to persuade Plaintiff to dismiss the lawsuit, extensive document review, responding to Plaintiff's voluminous written discovery requests, participation in more than five days of deposition testimony – including Plaintiff's own two-day deposition, preparation of Defendant's motion for summary judgment, responding to Plaintiff's cross-motion for summary judgment, and preparation for and participation in court hearings.[2]

Despite the significant amount of time that defense counsel was forced to expend in the defense of this case, MCCCD is not seeking recovery of all of its attorneys' fees and non-taxable costs against Plaintiff. Rather, MCCCD seeks an award of attorneys' fees and non-taxable costs in the total amount of $110,000.00 (the "Requested Amount"). *The Requested Amount is less than one half of the amount of fees MCCCD incurred and actually paid to its defense lawyers in this action*. The Requested Amount

---

[2] To the extent that Plaintiff contends that MCCCD's request for attorneys' fees is somehow unreasonable, fairness dictates that Plaintiff must disclose with supporting documentation the amount of fees that she expended in this litigation as well as the billing rates of his counsel.

10

represents a voluntary reduction of fees sought and does not represent a credit for the elimination of unnecessary, duplicative or excessive time.  Nor does it represent the deletion of certain categories of billing entries.  Rather, the voluntary reduction and the Requested Amount reflects MCCCD's awareness and recognition of the fact that the Court must balance the amount of fees which it should be awarded to a prevailing defendant against the chilling effect on the vindication of employee rights.  To make this calculation and balancing of factors easier for the Court MCCCD is, on its own initiative, seeking less than half of the fees MCCCD incurred and actually paid.  Although it would be entirely reasonable for MCCCD to seek recovery of all of its attorneys' fees and non-taxable costs against Plaintiff, the fact that MCCCD has voluntarily reduced the amount of fees it seeks by more than 50% speaks strongly to the reasonableness of the fee request.

Moreover, the hourly rates charged by MCCCD's counsel are completely reasonable and consistent with the prevailing rates in the local market.  Here, Defense counsel is seeking recovery of its attorneys' fees at a rate of $345/hour for partner Pavneet Singh Uppal, $325/hour for partner Shayna H. Balch, and $100/hour for paralegal Denise Karpa.  These rates are reasonable and generally in accordance with the rates charges by other lawyers in the community with similar experience and education.  By way of example, just two years ago Plaintiff's own prior counsel, Tod Schleier (who drafted and filed the Complaint in this case), filed a fee application in an unrelated employment case seeking recovery of attorneys' fees incurred from 2010 through 2012 at an hourly rate of $475/hour for himself, $400/hour for his brother, Bradley Schleier, and $150/hour for his paralegal.  **Exhibit A** (Affidavit of Shayna H. Balch, Exhibit 1)**.**  Accordingly, the much lower hourly rates charged by Defense counsel are clearly reasonable – especially when inflation and intervening rate increases over the past five years are taken into consideration.

In addition, the Arizona Court of Appeals opined on the issue of reasonableness of attorneys' fees more than 30 years ago in *Schweiger v. China Doll Restaurant, Inc.*,

11

138 Ariz. 183, 187-88, 673 P.2d 927, 931-32 (1983). In *Schweiger*, the Arizona Court of Appeals held that "in corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances." However, even if the community standard were relevant, in a case decided more than 30 years ago the court held that an hourly rate of $250/hour for partners and $75/hour for paralegals was reasonable in the Phoenix market. *Marvin Johnson, P.C. v. Shoen*, 888 F. Supp. 1009, 1020-21 (D. Ariz. 1995). In the intervening more than three decades, the inflation rate and intervening increase in billing rates clearly justifies the rates charged by Defense counsel in this matter.

### D. Defendants Should Be Awarded Their Fees Incurred In Preparing This Motion.

Defendants should also be awarded their reasonable attorneys' fees incurred in preparing this motion. Defendants also incurred fees and expenses by bringing this motion. Defendants' entitlement to these fees and costs are a matter of sound judicial discretion supported by relevant case law. *See Camacho v. Bridgeport Fin. Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) ("In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable."); *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659–60 (9th Cir. 1985) (fee awards under § 1988 to include fees generated by the motion). *Commc'ns Workers of Am. v. Ill. Bell Telephone Co.*, 553 F. Supp. 144, 147 (N.D. Ill. 1982) ("Denying attorneys' fees for the time spent obtaining them might decrease the value of a fee award by making attorneys engage in uncompensated litigation to obtain their fee.") Accordingly, MCCCD respectfully requests the Court to compensate MCCCD for 12 hours of time spent in preparing this motion at a rate of $325 per hour ($3,900.00).

## IV. CONCLUSION

For the above and foregoing reasons, Defendants respectfully request an award of attorneys' fees and non-taxable costs against Plaintiff in the total amount of

$110,000.00. Defendants also seek an additional $3,900.00 for attorneys' fees in preparation of this motion.

RESPECTFULLY SUBMITTED this 15th day of November 2017.

FISHER & PHILLIPS LLP


By␣s/␣Shayna H. Balch
    Pavneet Singh Uppal
    Shayna H. Balch
    Alanna R. Brook
    3200 N. Central Avenue, Suite 805
    Phoenix, Arizona 85012-2407
    Attorneys for Defendants

13

FPDOCS 33452330.1

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Edmundo P. Robaina
Thomas T. Griffin
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Attorneys for Plaintiff


  s/  Michelle C. Colwell

FPDOCS 33452330.1