Pavneet Singh Uppal, SBN 016805
Shayna H. Balch, SBN 024852
FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
Telephone: (602) 281-3400
Fax: (602) 281-3401
puppal@laborlawyers.com
sbalch@laborlawyers.com

Attorneys for Defendant Maricopa County
Community College District

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Cleopatria Martinez,<br><br>               Plaintiff,<br><br>    v.<br><br>Maricopa County Community College District,<br><br>               Defendant. | No. CV 12-00702-PHX-DGC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

Defendant Maricopa County Community College District ("Defendant" or "MCCCD") hereby moves for summary judgment in the above-captioned matter. MCCCD is entitled to summary judgment because Plaintiff Cleopatria Martinez ("Plaintiff" or "Martinez") cannot state actionable claims for national origin or race discrimination, hostile work environment, or retaliation. This motion is supported by the attached Memorandum of Points and Authorities, MCCCD's Separate Statement of Facts filed concurrently herewith, all pleadings and papers on file, and such matters as may be introduced at the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff is employed by MCCCD as a math instructor. This case arises out of

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

Plaintiff's obstinate refusal to comply by MCCCD policies, applicable federal copyright laws, Family Educational Rights & Privacy Act ("FERPA") requirements, and regulations relating to the supervision of work study students. Plaintiff's conduct exposed MCCCD to a substantial risk of a copyright infringement claim and/or liability for FERPA violations. Accordingly, MCCCD was left with no choice but to put certain preventative measures in place in order to mitigate the risk of legal liability. Plaintiff filed the instant lawsuit based upon her apparent disagreement with these measures.

Plaintiff's Complaint asserts that she was subjected to *national origin* discrimination, harassment, and retaliation in violation of Title VII[1] and *race* discrimination, harassment, and retaliation in violation of 42 U.S.C. § 1983. [DSOF ¶ 5] All of the Plaintiff's claims fail as a matter of law. Plaintiff's Title VII national origin claims are not actionable because: (1) she failed to file her lawsuit within the statutory 90-day limitations period; (2) she cannot establish her *prima facie* case; (3) MCCCD took prompt remedial action once it learned of Plaintiff's claims; and (4) MCCCD had legitimate, nondiscriminatory and nonretaliatory reasons for its actions based on Plaintiff's continuing refusal to comply with federal copyright and FERPA laws. Likewise, the § 1983 race claims fails because: (1) there is no allegation of any widespread MCCCD polices or practices giving rise to § 1983 claims; (2) Plaintiff cannot establish that MCCCD intentionally subjected her to discrimination on the basis of her race; and (3) MCCCD had legitimate, nondiscriminatory and nonretaliatory reasons for its actions. Accordingly, Plaintiff's claims should be dismissed with prejudice and full summary judgment should be awarded to MCCCD.

## II. STATEMENT OF ISSUES TO BE DECIDED

1) Whether Plaintiff's Title VII claims are time barred?

---

[1]Notably, although Plaintiff testified under oath that she considered herself to be of Mexican-American national origin, Plaintiff's Complaint asserts that she is Venezuelan. Dkt. 1 (Complaint, p. 9 ¶ H). Plaintiff's Complaint is devoid of any reference to Mexican or Mexican-American national origin. Dkt. 1.

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

2) Whether MCCCD discriminated against Plaintiff on the basis of her national origin and/or race?

3) Whether Plaintiff was subjected to a hostile work environment on the basis of her national origin and/or race?

4) Whether MCCCD retaliated against Plaintiff on the basis of her purported protected activities?

5) Whether punitive damages are recoverable?

## III.   FACTUAL BACKGROUND

### A.   Plaintiff Did Not Comply With Copyright Requirements.

In early 2010, Phoenix College (one of ten community colleges within MCCCD) discovered that Plaintiff had exposed MCCCD to a substantial risk of liability for copyright infringement.[2]   [DSOF ¶ 17].   Instead of requiring her math students to purchase copyrighted textbooks, Plaintiff prepared her own course materials which she distributed to her students free of charge.   [DSOF ¶ 8].   Plaintiff called these course materials her "Lecture Notes."  [DSOF ¶ 8]  In preparing these course materials, Plaintiff _directly_ copied math problems from copyright protected textbooks and inserted them into her course materials.   She did so without providing attribution to the textbook publishers and/or authors.  [DSOF ¶ 9-10].   For example, in Plaintiff's Basic Arithmetic (MAT082) course, Plaintiff copied problems directly from a textbook entitled "Basic Mathematics" and inserted them into her  "MAT 082 Basic Arithmetic Spring 2010" course materials which she distributed to students.   [DSOF ¶ 11].   An excerpted comparison is set forth below:

---

[2]Plaintiff began working at Phoenix College ("PC") in 1995.  [DSOF ¶ 6].  She is still employed by MCCCD and has always served as a math professor.  [DSOF ¶ 6]  From time to time, however, Plaintiff has served in a variety of additional roles.  For example, from 2002 through 2005, Plaintiff served as the Math Department Chair.  [DSOF ¶ 6]  Plaintiff also served on various committees including PC's Title V Advisory Committee from 2002 through 2009 (for PC's 1998 grant) and again from 2009 through 2013 (for PC's 2008 grant).  Prior to working at PC, Plaintiff worked at Scottsdale Community College (another college within MCCCD). [DSOF ¶ 6].

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400



Basic Mathematics Textbook    MAT082 Lecture Notes    Basic Mathematics Textbook    MAT082 Lecture Notes
By: Charles P. McKeague, p. 285    Prepared by Plaintiff, p. 49    By: Charles P. McKeague, p. 289    Prepared by Plaintiff, p. 50

[DSOF ¶ 11] (full-sized versions are attached at DSOF ¶ 11, **Exh. 17**).   Similarly, Plaintiff copied problems directly from the Sullivan & Sullivan "Precalculus" textbook and inserted them into her "MAT182 Trigonometry Spring 2010" course materials. [DSOF ¶ 12].  An excerpted comparison is set forth below:



Precalculus Textbook    MAT 182 Lecture Notes    Precalculus Textbook
By: Sullivan & Sullivan, p. 394    Prepared by Plaintiff, p. 22    By: Sullivan & Sullivan, p. 393

[DSOF ¶ 12] (full-sized versions are attached at DSOF ¶ 12, **Exh. 19**).  The above are but a few examples of Plaintiff's misappropriation of copyright protected materials. Additional examples of Plaintiff's verbatim copying from copyright protected textbooks have been identified in MCCCD's Expert Report.  [DSOF ¶ 14].  The fact that Plaintiff engaged in this behavior is not in dispute.  At deposition, Plaintiff openly admitted to

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

4

instructing her federal work study students to copy problems directly from the Sullivan & Sullivan textbook and to insert them into her course materials.  [DSOF ¶ 15]. Plaintiff's sole excuse for engaging in this behavior is that she "didn't know" that her conduct violated federal copyright laws and/or that she didn't see anything wrong with what she was doing.  [DSOF ¶ 16].  Of course, any such feigned or even actual ignorance of the law is no defense.  *Lambert v. People of the State of California*, 355 U.S. 225 (1957).

On or around January 12, 2010, MCCCD's Vice President of Academic Services, Ronnie Elliot, sent Plaintiff an email notifying her that PC had red flagged items that Plaintiff had printed for the Fall 2009 and Spring 2010 semesters.[3]  [DSOF ¶ 18]. Following Elliot's email, MCCCD administration *repeatedly* explained its copyright concerns to Plaintiff.  [DSOF ¶ 19].  Several communications are summarized below:

- <u>January 26, 2010:</u> Elliot sent Plaintiff an email outlining MCCCD's concerns regarding Plaintiff's potential copyright infringement.  [DSOF ¶ 19]
- <u>January 28, 2010:</u> MCCCD in-house-counsel Maggie McConnell discussed copyright issues with Plaintiff telephonically.  [DSOF ¶ 19]
- <u>February 5, 2010:</u> Vice President of Academic Affairs Casandara Kakar, Interim Vice President of Administrative Services Paul DeRose, and Plaintiff met to discuss copyright concerns.  [DSOF ¶ 19]

MCCCD also held a copyright workshop on March 1, 2010 at PC that Plaintiff chose not to attend.  [DSOF ¶ 20]  Unfortunately, despite repeated counseling attempts by MCCCD management, Plaintiff refused to comply with federal copyright laws. [DSOF ¶ 21].  As a result of Plaintiff's continuing misconduct and the unacceptable legal risk that her actions presented, MCCCD was left with no choice but to impose restrictions on Plaintiff's photocopying privileges.  [DSOF ¶ 21].  Normally, a professor at PC is allowed to request photocopies of materials to be used for instruction directly

[3]These materials were "red flagged" by IKON representatives who contacted Ronnie Elliot to notify her that Plaintiff had submitted a photocopy request for thousands of pages which contained material that appeared to have been taken from published textbooks.  [DSOF ¶ 17-18].

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

from PC's on-campus copy service, IKON.  [DSOF ¶ 22].  However, because of Plaintiff's propensity for misusing copyrighted materials, her copying privileges were revoked on April 2, 2010.  Following the revocation, Plaintiff was required to submit her copy requests to Math Department Chairperson Joe Sueyoshi[4] so that he could review her materials for possible copyright violations.  [DSOF ¶ 22].  This procedure was put into effect because Plaintiff's practice of misusing copyright protected materials presented a substantial risk of legal liability.  [DSOF ¶ 23].

PC was hopeful that the suspension of Plaintiff's copy privileges would serve to highlight the seriousness of this matter for Plaintiff.  [DSOF ¶ 24].  Instead of complying with the newly imposed copy restrictions, Plaintiff continued to disregard applicable copyright laws and actually tried to circumvent the copy restrictions.  [DSOF ¶ 24].  For example, on or around April 19, 2010, Plaintiff attempted to bypass the copy restrictions by having an adjunct math professor, Johnny Santellan, make 24 sets of copies of her "Lecture Notes" for distribution to her math students.  [DSOF ¶ 25].  At deposition, Plaintiff admitted that she asked Santellan to make these copies without first obtaining approval from the Math Department Chairperson.  [DSOF ¶ 25].  There were also repeated instances where Plaintiff bypassed the approval process by printing multiple copies of her "Lecture Notes" directly to the math department's laser printer.  [DSOF ¶ 26].

As a result of Plaintiff's ongoing disregard of the rights of copyright holders and her numerous attempts to bypass the copy restrictions, MCCCD sought a legal opinion from an outside copyright expert, attorney Sean Garrison.  [DSOF ¶ 28].  This expert advised MCCCD that "significant portions of [Plaintiff's] Course Materials have been copied from other [copyrighted] sources" and advised MCCCD to cease further

---

[4]The Math Department Chair is an elected position.  [DSOF ¶ 27].  Each Math Department Chair serves for a three year term.  [DSOF ¶ 27].  Sueyoshi's term commenced 2008 and is scheduled to run through 2014.  [DSOF ¶ 27].  Plaintiff previously served as the Math Department Chair from 2002 through 2004.  [DSOF ¶ 6].

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

6

distribution or use of Plaintiff's course materials because they presented a "significant risk of [copyright] infringement." [DSOF ¶30]. In reliance upon the expert, PC President Anna Solley issued a December 9, 2010 directive[5] that imposed further restrictions on Plaintiff's copying privileges. [DSOF ¶ 33] Specifically, the December 9, 2010 Directive prohibits Plaintiff from utilizing any course materials of her own creation. [DSOF ¶ 34] Instead, Plaintiff is required to only use course materials that are "approved by the math department" or that are "available in the bookstore for sale to students and that are authored by persons other than [Plaintiff]." The Directive further requires Plaintiff to submit her photocopy requests to the Math Department Chair for his approval. [DSOF ¶ 34].

## B. Plaintiff Did Not Comply With FERPA Requirements.

In addition to misusing copyright-protected materials, Plaintiff also apparently saw no need to comply with applicable FERPA regulations which govern educational institutions such as MCCCD. [DSOF ¶ 38]. One of the most basic requirements of FERPA is the obligation to preserve confidential student data (i.e., student names, addresses, dates of birth, social security numbers, and grades). *See* 20 U.S.C. 1232g*, et. seq.; see also* 34 C.F.R. Part 99. Plaintiff repeatedly breached her obligation to safeguard FERPA protected materials by providing her federal work study students with unmonitored access to her MCCCD office and her MCCCD issued computers which contained confidential student information. [DSOF ¶ 39] Plaintiff further violated FERPA by permitting her work study students to grade student papers.[6] [DSOF ¶ 40].

---

[5]It is important to note that MCCCD administration continued to have discussions with Plaintiff regarding her potential copyright violations through the issuance of the December 9, 2010 directive. [DSOF ¶ 35]. For example, MCCCD administration discussed copyright concerns with Plaintiff on April 8, 2010, August 20, 2010, August 26, 2010. [DSOF ¶ 35]. Moreover, on April 15, 2010, PC Librarian Ann Roselle conducted a personalized one-on-one copyright training session with Plaintiff. [DSOF ¶ 36].

[6]At deposition, Plaintiff conceded that MCCCD was required to "protect the privacy of the student in terms of not letting [confidential] information out freely." [DSOF ¶ 43].

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

In addition, Plaintiff also breached her duty of confidentiality under FERPA by allowing her laptop computer to be used by an unauthorized individual with the last name "Martinez" (presumably her child).  [DSOF ¶ 40].  In or around Fall of 2009, routine maintenance by MCCCD IT personnel showed that an illegal file sharing program called LimeWire had been installed on Plaintiff's laptop computer.  [DSOF ¶ 40]  The maintenance further showed that a high school level homework assignment authored by an individual with the last name "Martinez" was present on Plaintiff's MCCCD issued laptop.  [DSOF ¶ 42-44].  As a result of these audit findings, MCCCD's IT Department reasonably concluded that Plaintiff had improperly permitted an unauthorized user to access her MCCCD laptop computer.  [DSOF ¶ 45].

Plaintiff's failure to safeguard confidential information also extended to her coworkers.  In September 2009, PC janitor Verna Daubney found dozens of manila folders containing confidential faculty applicant information (including social security numbers and school transcripts) in Plaintiff's office garbage can.  [DSOF ¶ 46].  The disposal of these materials in this manner was a direct violation of MCCCD's policies and procedures.  [DSOF ¶ 47].  Daubney promptly brought this discovery to the attention of PC administration which had to notify the affected faculty members about the breach of confidentiality.  [DSOF ¶ 48]  The faculty members whose information was improperly disposed of were understandably upset, demanded that PC pay for 12 months of credit monitoring, and requested that Plaintiff be disciplined.  [DSOF ¶ 49].

Finally, Plaintiff failed to properly supervise her work study students.  Federal regulations also require that work study students be properly supervised.  [DSOF ¶ 50].  *See* 34 C.F.R. § 675.20.  MCCCD observed that Plaintiff had a practice of not managing federal work study students and allowing them to work in her office without monitoring or supervision.  [DSOF ¶ 50].  It is undisputed that Plaintiff's work study students often worked in her office, in the math zone tutoring area, and in the library.  [DSOF ¶ 51].

Plaintiff also testified that she understood that MCCCD could face consequences if the information was improperly disclosed.  [DSOF ¶ 43].

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

8

Numerous PC math department faculty members saw Plaintiff's work study students in Plaintiff's office without any supervision (where they had access to confidential student information and course examinations)—often times while Plaintiff was in class or even on vacation. [DSOF ¶ 52]. Once this lack of supervision was brought to the attention of PC, the work study students were removed from Plaintiff's supervision. [DSOF ¶ 52]. Later, work study students were removed from all faculty at PC. [DSOF ¶ 52].

## IV.   LEGAL ARGUMENT

### A.   Plaintiff's Title VII Claims Are Time Barred.

It is well established that a Plaintiff asserting a Title VII claim must file an action within ninety days of receiving her notice of right to sue. 42 U.S.C. § 2000e-5(f)(1). "This ninety-day time period is a statute of limitations." *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 383 (9th Cir. 1997). Here, although Plaintiff's notice of right to sue is dated December 22, 2011, she did not file her lawsuit against MCCCD until April 1, 2012 (**101 days after the notice was issued**). [DSOF ¶ 5]. Plaintiff may contend that her claims are timely because she did not actually *receive* the notice of right to sue until January 3, 2012 (exactly 90 days before she filed her lawsuit). However, the Ninth Circuit has expressly held that the 90-day limitations period begins to run from "when delivery of the right to sue notice *was [first] attempted at the address* of record with the EEOC." *Nelmida*, 112 F.3d at 384; *see also Vargas v. Web Service Co.*, 36 F. Supp. 2d 1173, 1176 (D. Ariz. 1998). Here, it is undisputed that the notice of right to sue was sent to Plaintiff via certified mail on December 22, 2011 and that the United States Postal service made delivery attempts on December 24, 2011 and December 31, 2011. [DSOF ¶ 3-4].[7] Accordingly, Plaintiff was required to file the instant action no later than March 23, 2012 (90 days from December 24, 2011). The complaint, however, was not filed until April 2, 2012. [DSOF ¶ 5]. Plaintiff's Title VII claims are, therefore, time-barred.

---

[7]The authenticity of the USPS tracking document is undisputed. [DSOF ¶ 4]

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

**B.** **Even Assuming, *Arguendo*, That Plaintiff's Title VII Claims Are Not Time Barred, They Fail As A Matter Of Law.**

Plaintiff contends that she was subjected to national origin[8] discrimination, harassment, and retaliation in violation of Title VII. [DSOF ¶ 5]. However, for the reasons set forth below, Plaintiff's claims are not actionable as a matter of law.

**1.** **Plaintiff Cannot Establish A *Prima Facie* Case Of National Origin Discrimination.**

Plaintiff's national origin discrimination claim stems from her allegations that PC President Anna Solley, Vice President Casandra Kakar, and Math Department Chair Joe Sueyoshi discriminated against her when she: (1) was not selected for inclusion on the PC Title V Grant Advisory Committee[9]; (2) was subjected to "increased scrutiny" with respect to her "supervision and management of [federal] work study students"; (3) was accused of violating PC's Technology Resource Standards; (4) was accused of "putting sensitive materials in the trash as opposed to shredding the documents"; and (5) was subjected to copy restrictions. [DSOF ¶ 54] However, Plaintiff cannot state a *prima*

---

[8]Neither Plaintiff's Complaint nor her EEOC charge allege Title VII race discrimination. [DSOF ¶ 1 and 5]

[9]Title V provides federal grants to support educational institutions that serve predominately Hispanic and low income students. [DSOF ¶ 74]. It is referred to as a "Hispanic Serving Institutions Grant" ("HSI Grant"). *Id.* PC is eligible for Title V funding and has received two separate Title V grants. *Id.* The first grant was awarded in 1998 and ran through 2003. *Id.* The second grant was awarded in 2008 and will end in September 2013. *Id.* The use of Title V funds is governed by statutory requirements. [DSOF ¶ 75]. Once an institution is awarded a Title V grant, the institution must spend the funds in accordance with the grant proposal. In this case, PC was required to use the funds for Science, Technology, Engineering, and Math ("STEM") subjects in addition to select English and Reading courses. *Id.* Since the grant is an Institutional Services (versus Student Services) grant, funds must be used to benefit HSI institutions as a whole. *Id. Indeed, the U.S. Department of Education's website specifically states that* "The Title V Program is **NOT** a scholarship or fellowship program for individuals or for research. The program is designed to support **institutions of higher education** that are HSIs." http://www2.ed.gov/programs/idueshsi/index.html. *Id.* (emphasis in original). In response to obtaining Title V grants in 1998 and 2008, PC developed "Title V Grant Advisory Committees" to make recommendations as to the use of funds and to oversee the distribution process. *Id.* [DSOF ¶ 26].

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

*facie* case because she cannot establish that any of these purported acts constitute adverse employment actions. Nor can she prove that any of the purported acts were attributable to her Mexican national origin. Finally, MCCCD had legitimate nondiscriminatory reasons for its actions.

In the context of a Title VII discrimination claim, "an adverse employment action is one that materially affect[s] the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotations omitted). Here, it is undisputed that the above-referenced alleged acts never resulted in a decrease in pay, change in hours, or change in job responsibilities. [DSOF ¶ 55]. Rather, Plaintiff merely disliked the fact that she was subjected to copy restrictions—which were imposed to reduce the risk of a copyright infringement claim. Likewise, mere increased scrutiny and/or disciplinary measures that do not result in a change in job terms do not constitute an actionable adverse employment action. *See Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir. 2000) (finding that a negative evaluation was not an adverse employment action where "[plaintiff] was not demoted, was not stripped of work responsibilities, was not handed different or more burdensome work responsibilities, was not fired or suspended, was not denied any raises, and was not reduced in salary or in any other benefit"); *see also Byrd v. Donahoe*, No. C 11-4230 RS (N.D. Cal. May 10, 2013) (*citing Ellerth v. Burlington Industries, Inc.*, 524 U.S. 742, 761 (1998)) (holding that an employer's restriction of an employee's use of a workplace resource that "was at most a convenience, not a necessity ... [is not a] significant change in employment status" cognizable under Title VII). Accordingly, Plaintiff cannot establish that she was subjected to any adverse employment actions.

In addition, there is no causal nexus between any of the alleged adverse acts and Plaintiff's Mexican national origin. Plaintiff's allegations of discrimination appear to be based upon nothing more than her own subjective beliefs. Such speculation and conjecture is not sufficient to withstand summary judgment. *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 922 (9th Cir. 2001). Indeed, MCCCD has also

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

11

reprimanded a Caucasian employee who misused copyrighted materials. After Dmitri Logvinenko (a Caucasian male of Russian descent) tried to use course materials that may have contained copyright protected information and problems, Sueyoshi reprimanded Logvinenko and instructed him to: (1) immediately remove the materials from his course website; and (2) begin using Math Department approved course materials. [DSOF ¶ 56] The key difference, however, is that Logvinenko discontinued his unapproved use of copyrighted works, immediately complied with Sueyoshi's directive, and began using the approved textbook for his course. [DSOF ¶57]. Moreover, it is important to note that while there were at least two other Hispanic/Mexican-American faculty members in the math department (Veronica Herrera and Maria Herrera-Bill), neither of these individuals were subjected to any of the restrictions imposed on Plaintiff. [DSOF ¶ 58].

Finally, while Plaintiff may not have liked the reprimands and copy restrictions, MCCCD had legitimate, nondiscrimatory reasons for taking these actions. Specifically, MCCCD's desire to protect itself from litigation that might result from Plaintiff's noncompliance with copyright and FERPA-related restrictions constituted a legitimate nondiscrimatory reason for its actions. [DSOF ¶ 38-53]. For example, Plaintiff's misuse of copyrighted math problems subjected MCCCD to an unreasonable risk of a copyright infringement claim. [DSOF ¶ 17-37] This risk was so great that MCCCD retained the services of a copyright expert, Attorney Sean Garrison, who advised MCCCD that: (1) significant portions of Plaintiff's "Lecture Notes" had been copied verbatim from copyright protected textbooks; and (2) allowing Plaintiff to continue use or distribution of her "Lecture Notes" would subject MCCCD to an unreasonable risk of a copyright infringement claim. [DSOF ¶ 38-41]; *see also* 17 U.S.C. § 101, *et. seq.* Similarly, Plaintiff violated FERPA by permitting her federal work study students to access confidential student data, allowing them to grade student papers, and permitting an unauthorized user to access her MCCCD laptop (which contained confidential student data). [DSOF ¶ 38-53]; 20 U.S.C. 1232g, *et. seq.; see also* 34 C.F.R. Part 99. Plaintiff's failure to properly supervise her work study students also violated federal regulations

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

12

relating to the supervision of federal work study students.  *See* 34 C.F.R. § 675.20.

Accordingly, Plaintiff's national origin discrimination claim fails as a matter of law.

### 2.    Plaintiff Cannot Establish A *Prima Facie* Case of National Origin Harassment.

Title VII is not a "general civility code."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Here, Plaintiff's harassment claim is based on the very same allegations as her national origin discrimination claim.  As discussed above in Section IV(B)(1), *supra*, even assuming the truthfulness of these allegations for purposes of summary judgment, they do not demonstrate any discriminatory animus towards Plaintiff *on the basis of her national origin*.

Plaintiff's national origin harassment claim further fails as a matter of law because the alleged conduct was not sufficiently severe or pervasive to alter the terms and conditions of her employment.  Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment."  *See Oncale,* 523 U.S. at 80-81.  In fact, courts have repeatedly rejected hostile work environment claims that involved conduct that was far more offensive than the allegations of harassment set forth by Plaintiff.   In *Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1991), the Ninth Circuit upheld the dismissal of a plaintiff's hostile work environment claim despite allegations that the employer had posted a racially offensive cartoon, made racially offensive slurs, selectively enforced rules against Hispanics, provided unsafe vehicles to Hispanics, and kept illegal personnel files on Hispanic employees.  The court concluded that the misconduct at issue was not so severe or pervasive so as to give rise to a racially hostile work environment.  *Id*. at 1031, 1036.  Here, Plaintiff has not alleged that a single comment or slur was directed at her or others based on their Mexican-American national origin.  Rather, Plaintiff's allegations are based on the legitimate restrictions that were imposed due to her continued violation of applicable laws and regulations.  The restrictions that were imposed on Plaintiff were neither severe nor pervasive and certainly did not create an abusive work environment.

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

13

Plaintiff's national origin harassment claim also fails because MCCCD took prompt, effective remedial action after Plaintiff complained that the restriction imposed by MCCCD were allegedly discriminatory and/or retaliatory. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Star v. West*, 237 F.3d 1036 (9th Cir. 2000). Here, MCCCD's remedial efforts included: (1) maintaining a policy against discrimination and harassment; (2) promptly hiring an outside investigator who investigated Plaintiff's complaints of alleged discrimination and retaliation; (3) conducting an investigation that involved interviews of 12 employees; and (4) reminding all interviewed individuals of MCCCD's anti-harassment, anti-discrimination, and anti-retaliation policies. [DSOF ¶ 82-86]. After a thorough investigation, the outside investigator concluded that there was no merit to Plaintiff's claims. These prompt remedial actions taken by MCCCD satisfy the *Farragher/Ellerth* defenses and operate as a bar to Plaintiff's recovery against MCCCD.

### 3. Plaintiff's Retaliation Claim Fails As A Matter of Law.

To make out a *prima facie* case of retaliation, a plaintiff must show that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision." *Stegall,* 350 F.3d at 1065-66 (citation omitted). Here, Plaintiff cannot establish any of these elements of her claim.

### a) Plaintiff's Complaints About The Title V Advisory Committee Did Not Constitute The Type Of Protected Activity Covered By Title VII.

Title VII's opposition clause only prohibits adverse employment action taken against an individual "because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a) (2000). Here, Plaintiff contends that she engaged in protected activity when she complained that: (1) PC "was not using Title V grant funds to address and/or serve the needs of Hispanic students" [DSOF ¶ 77]; and (2) there were no Hispanics from the Math Department on PC's Title

14

V Advisory Committee [DSOF ¶ 79]. As an initial matter, Plaintiff's complaints about the use of Title V grant funds concerned matters entirely outside the scope of Title VII's provisions. Title VII concerns discrimination in employment whereas Title V governs the award of monetary grants to educational institutions.[10] [DSOF ¶ 74-75]. Simply put, Plaintiff's complaint about the use of Title V funds was not the type of complaint protected by Title VII's anti-retaliation provision. *See Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988) ("[T]he opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation). Moreover, it is well established that Plaintiff's opposition must be based on a "*reasonable belief* that the employer has engaged in an unlawful employment practice." *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994).

Here, Plaintiff's allegation regarding use of Title V funds and/or PC's failure to appoint Hispanics from the Math Department to the Title V committee did not concern any employment practice under Title VII. Indeed, the Court need look no further than Plaintiff's own sworn admission that she had no idea as to whether PC was using the Title V funds in an illegal manner. [DSOF ¶ 77] With respect to the composition of the Title V Advisory Committee, it is important to note that Plaintiff does not contend that there was anything discriminatory about the Title V *selection process*.[11] Rather,

---

[10]Plaintiff's complaints about the use of Title V funds arise from her mistaken belief that the Title V funding should be used exclusively to "address and/or serve the needs of Hispanic students." [DSOF ¶ 77]. However, it would have been a violation of Title V regulations to use grant funds in this manner. [DSOF ¶ 77] Rather, Title V grant funds are designed to benefit the educational institution as a whole. [DSOF ¶ 78] For example, Title V funds can be used for things such as building and maintaining college infrastructure, purchasing new equipment, or creating new academic programs. [DSOF ¶ 78] Failure to comply with grant guidelines can result in revocation of grant monies. [DSOF ¶ 78].

[11]There was also nothing discriminatory about the Title V Advisory Committee membership selection process. It is undisputed that committee membership is comprised of department chairs from the four STEM subject areas and other individuals who are appointed on an as needed basis. [DSOF ¶ 79] And because Sueyoshi, not Plaintiff, was the Math Department Chair in 2009, he was placed on the committee. [DSOF ¶ 79]

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

Plaintiff's complaint appears to be based on her subjective belief that the composition of the Title V committee "[didn't] represent the needs of the Hispanic student." [DSOF ¶ 77]. Clearly, a subjective belief of this type does not qualify as or concern an unlawful employment practice and, thus, does not constitute protected activity.

> b)   Plaintiff Cannot Establish That Her Complaints Of Discrimination Were The "But-For" Cause of Any Purported Adverse Employment Action.

Plaintiff complaints of discrimination were not the "but-for" cause of any subsequent purported adverse employment actions. As the U.S. Supreme Court recently clarified in *University of Tex. Southwestern Medical Center v. Nassar*, "Title VII retaliation claims must be proved according to traditional principals of but-for causation … [t]his requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions or the employer." 570 U.S. (2013) (pinpoint cite not yet available). Here, Plaintiff cannot establish this threshold requirement.

As an initial matter, Plaintiff cannot establish that the December 1, 2009 reprimand had *anything* to do with her complaints of discrimination because, as set forth in Section IV(B)(3)(a), *supra*, Plaintiff did not engage in any protected activity until November 19, 2009 when she filed her internal EEO complaint. [DSOF ¶ 82]. The

---

Perhaps the best evidence of the lack of any discriminatory animus by MCCCD is the fact that *Plaintiff herself* had served on the Title V Advisory Committee from 2002 through 2004 in her role as Math Department Chair. [DSOF ¶ 80] It is also undisputed that at least one other Hispanic faculty member was serving on the Advisory Committee at the time of Plaintiff's complaints. [DSOF ¶ 81]. As if that were not enough, after Plaintiff expressed interest in the Advisory Committee to Title V Director Seth Goodman, Plaintiff was immediately placed on the committee (which resulted in both Plaintiff and Sueyoshi representing the math department). [DSOF ¶ 81] Simply stated, Plaintiff's complaint was not that Hispanic or Mexican-American faculty members were not permitted to serve on the Title V Advisory Committee. Rather, Plaintiff's complaint was that the 2009 Math Department committee representative was not Hispanic. Apparently, Plaintiff believed that Hispanic faculty members should be preferentially selected for the Advisory Committee to the detriment of members of other races or nationalities.

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

issues addressed in the December 1, 2009 reprimand had already been investigated and disciplinary recommendations had already been made well before Plaintiff filed her November 19, 2009 internal EEO charge.[12]   [DSOF ¶ 38-53].   Accordingly, these alleged disciplinary actions could not have possibly have been caused by Plaintiff's November 19, 2009 internal EEO complaint.

Plaintiff also cannot establish that any increased scrutiny with regards to work study students was retaliatory.   Indeed, the relevant decision maker who recommended the removal of Plaintiff's work study students, Dean Wilbert Nelson, was not aware of Plaintiff's Title V complaints or Plaintiff's November 19, 2009 EEO complaint at the time he made his recommendations.   [DSOF ¶ 53].   *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish ... the prima facie case.").

In actuality, the actions MCCCD took were the direct result of Plaintiff's refusal to follow applicable federal laws and regulations, her failure to follow MCCCD policies and procedures, her complete lack of accountability for her actions, and her unreasonable exposure of MCCCD to legal liability from third parties.   [DSOF ¶ 8-53].

c)      MCCCD Had Legitimate Nonretaliatory Reasons For Its Actions.

Finally, even assuming, *arguendo*, that Plaintiff can somehow establish her *prima facie* case of retaliation, MCCCD had legitimate nonretaliatory reasons for its actions.

---

[12]For example, confidential documentation was discovered in Plaintiff's garbage can on or around September, 24, 2009.   [DSOF ¶ 63].   In early Fall 2009, MCCCD's IT Department discovered that Plaintiff had improperly downloaded a file sharing program called LimeWire and improperly allowed an unauthorized user to access her laptop. [DSOF ¶ 64].   The decision to reprimand Plaintiff for these infractions was made well before Plaintiff filed her internal EEO charge.   [DSOF ¶ 65].   Moreover, issues pertaining to Plaintiff's improper supervision of her federal work study students had previously been brought to Plaintiff's attention in an October 8, 2009 letter from Kakar. [DSOF ¶ 66].

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

As discussed in Section IV(B)(1), *supra*, MCCCD's desire to protect itself from litigation resulting from Plaintiff's suspected violations of federal laws and regulations constituted a legitimate nondiscriminatory reason for its actions. [DSOF ¶ 83]. Accordingly, Plaintiff's retaliation claim fails as a matter of law.

### C.   Plaintiff's § 1983 Claim Fails As A Matter of Law.

Plaintiff's Complaint contains a claim for § 1983 race discrimination, harassment, and retaliation. "Traditionally the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 120 (9th Cir. 1991). When an action seeks damages from a municipal entity such as MCCCD[13], as opposed to a *person* acting under color of state law, she must specifically "identify a [Maricopa] 'policy' or custom' that caused the plaintiff's injury." *Bd. Cty Comm'r Bryan County Oklahoma v. Brown*, 520 U.S. 397, 403 (1997); *see, also, Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).[14] Here, Plaintiff cannot establish a *prima facie* case of § 1983 race discrimination, harassment or retaliation because: (1) she does not contend that any widespread MCCCD polices or practices give rise to her § 1983 claims; (2) she cannot establish that MCCCD intentionally subjected her to discrimination on the basis of her race; and (3) MCCCD had legitimate, nondiscriminatory and nonretaliatory reasons for its actions.

---

[13]*See, e.g., Thornquest v. King*, 626 F.Supp. 486 (M.D. Fla. 1985) (holding that a community college is a municipality for purposes of § 1983 claims).

[14]It is well established that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. Cty Comm'r Bryan County Oklahoma v. Brown*, 520 U.S. 397, 403 (1997). Rather, a Plaintiff must go beyond the respondent superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit, because municipal liability must rest on the actions of the municipality and not the actions of the employees of the municipality. *Id.* at 403.

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

### 1. Plaintiff Does Not Even Allege That An MCCCD "Policy" Or "Custom" Gives Rise To Her Claims.

Plaintiff's § 1983 claim against MCCCD fails as a matter of law because she has not identified any widespread policies or practices that give rise to her § 1983 claims. A municipal policy or, for purposes of § 1983, custom means acts or omissions that are so pervasive and settled as to have the force of law. *Bryan County*, 520 U.S. at 404. Here, Plaintiff has not even alleged, must less established, that any widespread policies or practices lead to discrimination, harassment, and retaliation claims. To the contrary, at deposition Plaintiff conceded that there is no widespread practice of discrimination or harassment against Hispanics and/or Mexican-Americans at MCCCD. [DSOF ¶ 68]. As a result, MCCCD is entitled to judgment as a matter of law with regard to Plaintiff's claims under 42 U.S.C. § 1983.

### 2. Plaintiff Cannot Establish That MCCCD Intentionally Subjected Her To Discrimination On The Basis Of Her Race.

In order to prevail on her § 1983 race discrimination claim, Plaintiff must prove that MCCCD acted with "deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bryan*, 520 at 411. In other words, in order to establish her § 1983 claim, Plaintiff must show that MCCCD discriminated against her on the basis of her race *and* that MCCCD intended to do so. *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990) ("intent to discriminate must be shown under equal protection while Title VII requires no such showing.") Here, for the reasons set forth in Section IV(B), *supra*, Plaintiff cannot establish that MCCCD subjected her to discrimination, harassment or retaliation—let alone that MCCCD intentionally did so.[15] Nevertheless, even assuming, *arguendo*, that Plaintiff can

---

[15]Plaintiff considers the terms Hispanic and Mexican-American to be synonymous with one another. [DSOF ¶ 70] Because Plaintiff's Title VII national origin claims and § 1983 race claims are based upon identical allegations, the same analysis set forth in Section IV(B), *supra*, applies to Plaintiff's § 1983 race discrimination, harassment, and retaliation claims.

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

somehow establish *prima facie* § 1983 claims, the claims fail as a matter of law because MCCCD had a legitimate, nondiscriminatory, and nonretaliatory reason for its actions. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, n. 1 (1993) (the same Title VII "McDonnell Douglas framework is fully applicable to racial-discrimination-in-employment claims under 42 U.S.C. §1983."). As discussed in Section IV(B)(1), *supra*, MCCCD's need to protect itself from litigation that might have ensued from Plaintiff's noncompliance with copyright laws and FERPA regulation constituted a legitimate nondiscriminatory reason. [DSOF ¶ 8-53]. Accordingly, Plaintiff's § 1983 claims fail as a matter of law.

### D. The Same Protected Class Inference Rebuts Plaintiff's Claims Of Discriminatory Animus.

Plaintiff appears to attribute the vast majority of the purportedly discriminatory and harassing conduct in this case to PC President, Anna Solley. [DSOF ¶ 71] Most notably, Plaintiff contends that the copying restrictions Solley imposed on her were somehow discriminatory on the basis of Plaintiff's Mexican-American national origin and/or Hispanic race. [DSOF ¶ 71]. Not only is this implausible given Plaintiff's misuse of copyrighted works, it also makes no sense given the fact that the decision maker, Solley, is of the same national origin (Mexican American) and race (Hispanic) as the Plaintiff.[16] [DSOF ¶ 72] Accordingly, the same protected class inference negates Plaintiff's assertions of discrimination and harassment. *See Oncale v. Sundowner Offshore Serv.*, 523 U.S. 75, 78 (1998) (recognizing the inference).

### E. Punitive Damages Are Not Recoverable.

As a matter of law, punitive damages are not recoverable against a municipal entity under either § 1983 or Title VII. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (municipalities are "immune from punitive damages under 42 U.S.C. § 1983"); 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive

---

[16]Solley is and has been a long time member of Hispanic organizations, was born in Nogales, Mexico, and speaks fluent Spanish. [DSOF ¶ 73].

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

damages under this section against a respondent (other than a government, government agency or political subdivision)"); *see, also*, *Berger v. Iron Workers Reinforced Rodmen, Local 201*, 170 F.3d 170 F.3d 1111, p. 1139, fn. 17 (noting that the same punitive damages standards apply under Title VII, § 1981, and § 1983). In *City of Newport,* the Supreme Court explained that "punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill." 453 U.S. at 267. Here, MCCCD is a taxpayer supported entity that relies heavily on funding and appropriations from the Arizona legislature.   [DSOF ¶ 6].   Accordingly, punitive damages are not recoverable against MCCCD.

Even assuming, *arguendo,* that MCCCD is not immune from punitive damages, punitive damages may only be awarded "if the complaining party demonstrates that the respondent engaged in a discriminatory practice with malice or reckless indifference to the federally protected rights of an aggrieved individual."   42 U.S.C. § 1981a(b)(1).[17] To award punitive damages, the plaintiff's conduct must constitute more than just intentional discrimination.   Otherwise, every claim of disparate treatment, if proven, would result in an award of punitive damages.   Instead merely proving intentional discrimination, claimants must prove that the alleged discriminator affirmatively knew that he or she was acting in violation of federal law.   *See, e.g., Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535-36 (1999); *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299, 1304 (9th Cir. 1998) (holding that "[p]unitive damages may not be awarded … where a defendant's discriminatory conduct is merely negligent in respect to the existence of a federally protected right.").   "Where there is no evidence that gives rise to an inference

---

[17]The same punitive damages standard applies to § 1983 claims.   *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299, 1301-04 (9th Cir. 1998) (holding that a punitive damages award under Title VII requires, as does § 1983, that the acts giving rise to liability are willful and egregious, or display reckless indifference to the plaintiff's federal rights); *see also Mahach-Watkins v. Depee*, 593 F.3d 1054, 1060 (9th Cir. 2010) (a jury may award punitive damages on a § 1983 claim if it finds that the state actor's conduct was "malicious, oppressive or in reckless disregard" of plaintiff's rights).

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

1    of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual

2    malice, the trial court need not, and indeed should not, submit the issue of punitive

3    damages to the jury." *Kolstad,* 527 U.S. at 539.

4        Here, Plaintiff's allegations come nowhere close to supporting a finding of

5    unlawful discrimination, harassment, or retaliation—let alone an award of punitive

6    damages.  [DSOF ¶ 8-53].

7    **V.    CONCLUSION**

8        For the above and foregoing reasons, Defendant respectfully submits that

9    Plaintiff's Complaint should be dismissed in its entirety and that summary judgment

10   should be entered in favor of MCCCD on all claims.

11       RESPECTFULLY SUBMITTED this 11th day of October 2013.

12                                    FISHER & PHILLIPS LLP

13

14                                    By  s/  Shayna H. Balch

15                                        Pavneet Singh Uppal
                                         Shayna H. Balch
16                                       201 E. Washington Street, Suite 1450
                                         Phoenix, Arizona 85004-2330
17                                       Attorneys for Defendant

18

19

20

21

22

23

24

25

26

27

28

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

FISHER & PHILLIPS LLP
201 E. Washington Street, Suite 1450
Phoenix, Arizona 85004-2330
(602) 281-3400

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of October 2013 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and a that a copy was served, via email and U.S. Mail, postage prepaid, on the following:

Cleopatria Martinez
7030 North 21st Street
Phoenix, Arizona 85020
4cleopatria@gmail.com
*Pro Per*

  s/  Romina Gallina