Edmundo P. Robaina (No. 018125)
Thomas T. Griffin (No. 022475)
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
epr@robainalaw.com
ttg@robainalaw.com

Attorneys for Plaintiff Cleopatria Martinez

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Cleopatria Martinez, | No. CV 15-01759 NVW |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE TO DEFENDANTS' NOTICE AND MOTION FOR ATTORNEYS' FEES AND COSTS** |
| Maricopa County Community College District, *et al.*, | |
| Defendants. | |

Plaintiff Cleopatria Martinez ("Martinez"), by and through the undersigned counsel, hereby responds to Defendants' Notice and Motion for Attorneys' Fees and Costs.  Because she is not a vexatious plaintiff and her claims are not unreasonable, frivolous or meritless, Martinez respectfully requests that this Court deny Defendants' Motion.

I.    **The Standard for Attorneys' Fees**

A district court may award attorneys' fees pursuant to 42 U.S.C. § 1988 to a prevailing civil rights defendant if the plaintiff's action was unreasonable, frivolous, meritless or vexatious.  *Galen v. County of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007).  An action becomes frivolous when the result appears obvious or the arguments are wholly without merit.  *Id.* (*citing Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).  The fact that a plaintiff loses on summary judgment does not render a case per se frivolous, unreasonable, or without foundation.  *Id.* at 667.  Moreover, a case is less likely to be considered frivolous when there is very little case law directly on

1  point.  *See Karem v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003); *see also*

2  *Taylor AG Indus. v. Pure Gro*, 54 F.3d 555, 563 (9th Cir. 1995) (even though the law

3  had been clearly established not only by the Supreme Court but by seven other courts of

4  appeal, because the Ninth Circuit had not spoken on the issue, the appellant's argument

5  could not be characterized as "wholly without merit.").

6  **II.   Martinez is Not A "Vexatious" Plaintiff and She Did Not Bring Her Claims**
**in Bad Faith**

7

8         In its Motion for Attorneys' Fees and Costs, Defendants argue that Martinez is a

9  vexatious plaintiff and that without an award of attorneys' fees, she is likely to continue

10  filing vexatious lawsuits against MCCCD. (Doc. 95 at 2 of 14).   Defendants are

11  incorrect for the following reasons:

12         Martinez is a Hispanic single woman with a Ph.D. in mathematics, who has over

13  40 years of teaching experience and has worked as a mathematics professor for

14  MCCCD since 1985.  (Declaration of Cleopatria Martinez ("Martinez Dec." ¶¶ 1-2,

15  attached hereto as Exhibit 1).  Prior to April 2, 2012, Martinez had never been involved

16  in any type of litigation other than divorce proceedings in the late 1980s.  (*Id.* at ¶ 3).

17         In November of 2009, Martinez submitted an internal "Discrimination Complaint

18  Form" to MCCCD's Human Resources Department in relation to, among other things,

19  her concern that Phoenix College had failed to appoint any person of Hispanic origin

20  from the Math Department to serve as a member of the College's Title V advisory

21  committee.  (*Id.* at ¶ 4).  Prior to her internal complaint, Martinez had never received

22  any disciplinary actions.  (*Id.* at ¶ 5).

23         In January of 2010, MCCCD accused Martinez of potentially violating copyright

24  laws because she used mathematics problems from copyrighted textbooks, a widespread

25  practice at MCCCD and in academia at large.  (*Id.* ¶ 6; and Doc. 72-5, 2-3 of 9, at ¶¶ 6,

26  7 and 16).   MCCCD also restricted Martinez's copying privileges, issued her a

27  disciplinary action, issued her a poor evaluation, and began hyperscrutinizing her work.

28  (Martinez Dec. ¶ 7).  Martinez, for instance, was not allowed to provide her own

- 2 -

teaching notes to students, even though the contents of those notes did not come from a copyrighted source, and she was not allowed to use math words or symbols that were not found in the textbook. *Id.* At one point, Martinez was reprimanded for putting a "+" sign at the front of the infinity symbol because the author had not done so; and she was told that she could not use the words "highest" and "lowest" to describe estrema because the author had not done so, even though other authors and instructors used those words. *Id.*

On June 28, 2010, Martinez filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging national origin discrimination and retaliation. (*Id. ¶* 8; and June 28, 2010 Charge of Discrimination, attached hereto as Exhibit 2). On August 19, 2011, the EEOC found "reasonable cause" to believe that MCCCD had retaliated against Martinez by accusing Martinez of violating copyright laws, restricting and suspending her copying privileges, issuing her disciplinary action, and issuing her a poor evaluation. (*Id.* ¶ 9; and EEOC Reasonable Cause finding, attached hereto as Exhibit 3).

On April 2, 2012, Martinez filed a lawsuit against MCCCD alleging Title VII claims for national origin discrimination and retaliation, and a claim for race discrimination, harassment and retaliation under 42 U.S.C. § 1983. (Martinez Dec. ¶ 10, attached hereto as Exhibit 1; and Complaint dated April 2, 2012, attached hereto as Exhibit 4 at ¶¶ 27-49).

On or about August 9, 2013, MCCCD's Chancellor notified Martinez of his intent to recommend termination of her employment in relation to alleged copyright violations, alleged violations of MCCCD's cash handling policies, and alleged insubordination related to the cash handling allegation. (Martinez Dec. ¶ 11, attached hereto as Exhibit 1; and Doc. 72-3 at 95 of 125). Martinez hired a highly experienced employment attorney named Stephen Montoya to represent her in the hearing regarding her proposed dismissal. (Martinez Dec. ¶ 12, attached hereto as Exhibit 1).

On October 16, 2013, MCCCD filed a motion for summary judgment in the Discrimination Lawsuit (Civil Docket for Case #:2:12-cv-00702-DGC, attached hereto as Exhibit 5).  On November 12, 2013, Martinez filed a motion for extension of time to respond to Defendants' Motion for Summary Judgment, which was granted on November 18, 2013, and extended the time to file her response to January 3, 2014.  (*Id.*)

Also on November 18, 2013, a hearing on Martinez's proposed dismissal was held before the Hearing Committee.  (Martinez Dec. ¶ 14; and Doc. 72-5 at 2 of 9).  On December 9, 2013, the Hearing Committee issued binding findings of fact and conclusions of law, in which it found that MCCCD had not shown that Martinez had violated copyright law or MCCCD's cash handling policies, but that Martinez had been insubordinate in relation to her failure to issue refunds to students who had reimbursed her for the copying costs of her course materials, which MCCCD had alleged violated MCCCD's cash handling policies. (Doc. 72-5 at 7-8 of 9 and ¶¶ 55 and 63-69).  The Committee further recommended that Martinez not be dismissed.  (*Id.* at 9 of 9).

Thereafter, Montoya recommended to Martinez that she end the Title VII litigation against MCCCD. (Martinez Dec. ¶ 16, attached hereto as Exhibit 1).  Martinez, hoping to end her problems with MCCCD, followed Montoya's advice, and January 3, 2014, the parties agreed to dismiss the litigation with prejudice, each party to bear its own attorneys' fees and costs.  (*Id.* at ¶ 17).  However, on or about February 10, 2014, the Chancellor notified Martinez that pursuant to his sole authority under RFP 3.13,[1] he was suspending Martinez without pay from March 1, 2014[2] to May 15, 2015, and that her teaching responsibilities and pay would resume in the Fall of 2015 unless she chose to retire.  (*Id*. at ¶ 18; Doc. 72-3 at 113 of 125).

Martinez immediately filed for unemployment, which MCCCD fought. (Martinez Dec. ¶ 19)  Martinez ultimately prevailed after a hearing. *Id.*

---

[1] The letter actually refers to RFP 3.11.3, but throughout this document Martinez adopts the Court's reference to 2013-14 RFP Section "3.13" regarding suspensions.

[2] The suspension actually began in April of 2014.

1       In the meantime, in the absence of a mechanism to appeal or address the
2   suspension, Montoya and Martinez attempted in various ways to seek some form of
3   review of Glasper's action from the Governing Board. (Martinez Dec. ¶ 20, attached
4   hereto as Exhibit 1).  Montoya, for instance, wrote a letter to the Governing Board in
5   which he argued that Defendants' actions violated Martinez's due process rights
6   because, among other things, the Chancellor's new Statement of Charges contained
7   allegations that were expressly considered and rejected by the Hearing Committee; the
8   new Statement of Charges set forth allegations, Administrative Regulations 1.12.2 and
9   1.12.3, that were not set forth in the original Statement of Charges and were never
10  considered by the Hearing Committee; the Chancellor failed to allow Martinez any
11  opportunity to present evidence refuting the new Statement of Charges before a neutral
12  finder of fact; and a fourteen-month suspension is the economic equivalent of dismissal,
13  and the Chancellor should not be allowed to *de facto* terminate employees without first
14  obtaining approval by the Governing Board.  (*Id.* at ¶ 21, and Attachment 1 thereto).
15  Montoya and Martinez also attempted to bring the matter to the Governing Board's
16  attention during the "citizens' interim" (or "call to the public") portion of a Governing
17  Board meeting,[3] and Martinez wrote letters to the Board, but she does not know if the
18  Governing Board ever saw them.  (*Id.* at ¶ 22).  The Governing Board never responded
19  in any way.  (*Id.* at ¶ 23).

20      Martinez was extremely distraught by the turn of events, which effectively left
21  her without a substantial source of income, or benefits, from April 2014 to August of
22  2015, when classes started again. (*Id.* at 24).   She hired attorney Kevin Koelbel to
23  review the matter.  (*Id.* at ¶ 25).  Koelbel associated Tod Schleier, one of the preeminent
24  employment attorneys in Arizona, to review the matter and ultimately to act as the lead
25  attorney in this case. (*Id.*)

26

27  _____
[3] Pursuant to Arizona law, the Board may not deliberate on issues not listed in its notice
28  and agenda. A.R.S. § 38-431.02(H).

1    Schleier and Koelbel filed suit on Martinez's behalf on September 2, 2015 (Doc.

2    1), and filed a Verified Amended Complaint on November 4, 2015, in which they

3    alleged that MCCCD and Glasper had violated Martinez's due process rights, and

4    requested declaratory relief regarding ongoing issues with MCCCD.   (Doc. 14).   For

5    reasons unrelated to any concerns about the merits of the case, Martinez parted ways

6    with Koelbel and Schleier in or about March of 2016. (Martinez Dec. ¶ 27, attached

7    hereto as Exhibit 1).

8    Martinez hired the undersigned counsel to review the matter in or about April of

9    2016. (*Id.* at ¶ 28; Declaration of Edmundo Robaina ("Robaina Dec.") ¶¶ 8 and 13,

10   attached hereto as Exhibit 6).   Based upon a thorough review of the facts related to the

11   attempted dismissal and the suspension, and relevant caselaw, the undersigned counsel,

12   also a long-time employment attorney, like the other attorneys who had previously

13   reviewed this case, believed that Martinez has a meritorious case, and agreed to pursue

14   the matter on her behalf.   (Robaina Dec. ¶¶ 13-27, attached hereto as Exhibit 6).

15   In sum, Martinez is not a vexatious plaintiff.   She filed her first case against

16   MCCCD because, bolstered by the EEOC reasonable cause finding, she reasonably

17   believed she was victim of discrimination and retaliation.   She ended the litigation based

18   upon the advice of her lawyer after having received a recommendation from the Hearing

19   Committee that she be retained.   She has pursued her current case against MCCCD, not

20   because of any desire to engage in another litigation with MCCCD, but because

21   subsequent to her agreeing to dismiss the initial litigation, Defendants took a course of

22   action that both she and the attorneys who have represented her believed was unjust,

23   damaging, and meritorious under the law.

24   **III.   Martinez' Claims in This Case Were Not Unreasonable, Frivolous or**

25   **Meritless**

26   In this case, this Court found that Martinez does not have a valid due process

27   claim for a number of reasons.   This Court, for instance, noted that Martinez did not

28   claim, nor could she show, a violation of state law, and that: "The District fully

complied with the District's procedures." (Doc. 91 at page 3, line 14 to page 4, line 10 and p. 8, lines 19-20). With respect specifically to the suspension policy, Residential Faculty Policy, 3.13, this Court noted that: "The District did everything the Policy required." (*Id.*, at page 9, line 26, to page 10, line 5). This Court further noted that pursuant to MCCCD's policy, if the Chancellor had invoked Policy 3.13 from the start, going to the Governing Board would not have been required. (*Id.*, at page 12, lines 21-24). While these are true statements, Martinez respectfully submits she could still reasonably believe the she had valid due process claims for several reasons:

> **A.     Pursuant to *Loudermill,* a Reasonable Plaintiff Could Believe That Even If Defendants Followed MCCCD's Procedures, That Did Not Render Their Actions Appropriate for Due Process Purposes Under Federal Law**

In *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532 (1985), the Supreme Court considered, and rejected, the argument that a property right is defined by, and conditioned on, the legislature's choice of procedures for its deprivation. *Id.* at 539-41. The Court noted that in *Vitek v. Jones*, 445 U.S. 480, 491 (1980), it had previously "pointed out that 'minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse action.'" The Court further noted that in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982), it had reversed the lower court's holding that because the entitlement arose from a state statute, the legislature had the prerogative to define the procedures to be followed to protect that entitlement. *Id.* at 541. Finally, the Court noted that: "The right to due process 'is conferred not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'" *Id.* (citing *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974)).

///

- 7 -

1    In this case, the only process RFP § 3.13 provides is the opportunity to meet and

2    discuss an impending suspension with the Vice Chancellor, who defendants admit has

3    no authority to change the Chancellor's decision.[4]   The policy therefore has an

4    insufficient procedural safeguard for due process purposes.  *See Ass'n for L.A. Deputy*

5    *Sheriffs v. County of L.A.*, 648 F.3d 986, 992 (9th Cir. 2011) ("The fact that Plaintiffs in

6    the instant case were given an opportunity to respond makes little difference when their

7    response could have had no effect on their suspension.  Therefore…due process requires

8    that Plaintiffs receive post-suspension hearings in addition to the limited procedures

9    they received before their suspensions.")  Thus, a reasonable plaintiff could believe, and

10   Martinez did believe, that the policy, on its face, violates due process.

11
12       **B.    A Reasonable Plaintiff Could Believe That MCCCD's Procedures, As Used in This Case, Violated Her Due Process Rights**

13   The question of whether an administrator who seeks to impose discipline against

14   in an employee in one disciplinary process can then be considered an impartial

15   decisionmaker in a related disciplinary process with the same employee and regarding

16   the same set of facts, has not been determined by the Ninth Circuit.  But a reasonable

17   plaintiff could believe that this kind of situation would violate her due process rights.

18   First, it is clear that an employee with due process rights is entitled to a <u>neutral</u>

19   <u>and detached</u> decisionmaker.  *Clements v. Airport Auth.*, 69 F.3d 321, 333 (9th Cir.

20   1995).  In this case, Martinez could reasonably believe that Glasper was not neutral

21   because he recommended her termination to the Governing Board.

22   Second, a reasonable plaintiff could believe that other Ninth Circuit caselaw,

23   although not directly on point, suggests that Martinez's case had merit.  In *Walker v.*

24   *Berkeley*, 951 F.2d 182, 185 (9th Cir. 1991); and in *American General Insurance Co. v.*

25   *Federal Trade Commission*, 589 F.2d 462 (9th Cir. 1979), the Ninth Circuit found

26   violations of due process in situations in which an attorney functioned as counsel for

27
28   [4] *See* Doc. 72-4 at 14 and 15 of 31.

1    one party in a federal court proceeding and later served as a decisionmaker in an

2    administrative proceeding involving the same parties and the same underlying issue.

3           A reasonable plaintiff could believe that the rule of impartiality is similarly

4    applicable to other agents of an employer.  In *Grolier v. Federal Trade Commission*,

5    615 F.2d 1215 (9th Cir. 1980), the Ninth Circuit had occasion to interpret the meaning

6    of Administrative Procedures Act § 554 (d), which states:

7           An employee or agent engaged in the performance of investigative or
8           prosecuting functions for an agency in a case many not, in that or a
             factually related case, participate or advise in the decision, recommended
9           decision, or agency review pursuant to section 557 of this title…

10

11   *Id.* at 1218.  The Ninth Circuit concluded that "in forbidding adjudication by persons

12   'engaged in the performance of investigative or prosecuting functions,' Congress

13   intended to preclude from decisionmaking in a particular case not only individuals with

14   the title of 'investigator' or 'prosecutor,' but all persons who had, in that or a factually

15   related case, been involved with *ex parte* information, or who had developed, by prior

16   involvement in the case, a 'will to win.'"  *Id.* at 1220.  *See also Horne v. Polk*, 242

17   Ariz. 226, 230-31 (Ariz. 2017) ("[O]nce an official determines that a legal violation has

18   occurred, that official can be expected to develop a will to win at subsequent levels of

19   adjudication."); and *Levine v. City of Alameda*, 525 F.3d 903, 906 (9th Cir. 2008)

20   (upholding a district court order requiring that a post-termination hearing be held before

21   a neutral third-party, and not persons working for the City with which the appellant had

22   engaged in extensive litigation).

23          In this case, a reasonable plaintiff could believe that an administrator, like other

24   agents of an employer, could develop a will to win.  Martinez could further reasonably

25   believe that in light of Glasper's apparent belief that Martinez violated copyright law

26   and MCCCD's cash handling policies; his recommendation of Martinez's dismissal,

27   which led to her disciplinary hearing; the fact that he had the opportunity to take the

28   matter before the Governing Board to determine the propriety of a suspension but did

1    not do so; and the fact that he invoked a rule that he had never used before to suspend
2    Martinez without pay for 14 months, that Glasper had developed a will to win, or was
3    otherwise not a neutral decisionmaker for due process purposes.

4         **C.    A Reasonable Plaintiff Could Believe That the Facts Pled in The
5              Complaint in This Case Sufficiently Supported the Argument That
              Glasper Was Not a Neutral Arbiter for Due Process Purposes**
6

7         This Court found that Martinez's summary judgment argument that Glasper was
8    not an Impartial Decision maker for due process purposes was not properly before the
9    Court.  This Court noted that: "Beyond recounting Glasper's actions, Martinez's Reply
10   Brief can only point to the blanket assertion in the Complaint that she had the right to
11   due process free of bias."  (Order, Doc. 91, 15 of 18).

12        Martinez respectfully submits that she could nonetheless reasonably believe that
13   the issue was properly before the Court because: "Rule 8(a)(2) of the Federal Rules of
14   Civil Procedure generally requires only a plausible 'short and plain' statement of the
15   plaintiff's claim, not an exposition of his legal argument.'"  *Skinner v. Switzer*, 562 U.S.
16   521, 530 (2011).  A complaint need not pin a plaintiff's claim for relief to a precise
17   legal theory.  *Id*; *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1038-39
18   (9th Cir. 2016) (citing *Skinner* in deciding that where a plaintiff did not specifically
19   mention the violation of a statutory provision in his complaint, but raised it in his
20   opposition to a summary judgment motion, the court would nevertheless considered his
21   argument because it was not so much a new claim as a more precise and accurate
22   framing of the plaintiff's original allegation).  *See also Alto v. Black*, 738 F.3d 1111,
23   1117 (9th Cir. 2013) (a plaintiff is not required to state the statutory or constitutional
24   basis for his claim, only the facts underlying it); and *McCalden v. Cal. Library Ass'n*,
25   995 F.2d 1214, 1223 (9th Cir. 1990), *cert. denied,* 504 U.S. 957 (1992) (same).

26        In this case, a reasonable plaintiff could, and Martinez did, believe that the
27   detailed description of the underlying facts in the Verified Amended Complaint and the
28   allegations that Defendants violated Martinez's due process rights provided adequate

1   notice to the Defendants regarding the basis of Martinez's claim that Glasper was not a

2   neutral arbiter of her case as required for due process.

3        **D.     A Reasonable Plaintiff Could Believe That the February 10, 2014**

4        **Statement of Charges Included a New Allegation based on**
         **Administrative Regulation 1.12**

5

6        This Court rejected Martinez's argument that Defendants raised a new allegation

7   in the February 10, 2014 statement of charges.  This Court's Order noted that Martinez

8   had previously encountered Administrative Regulation 1.12 in an October 18, 2012

9   corrective action notice to Martinez.  (Doc. 91 at p. 14, line 1-5, *citing* Doc. 73-2, Ex.

10  21 at 245 of 266).

11       This is true, however, the version of Administrative Regulation 1.12 the Court

12  points to later became Administrative Regulation 1.17. (See Doc. 72-1, at 22 of 24.)

13  Administrative Regulation 1.17 was the basis for MCCCD's claim that Martinez had

14  improperly transacted with students, which the Hearing Committee later determined to

15  be unfounded. (See Doc. 72-3, at 97of 125 and Doc. 72-5, at 8 of 9, ¶ 63).

16       The version of Administrative Regulations 1.12.2 and 1.12.3, which were cited in

17  the February 10, 2013 Statement of Charges had never been raised before in any

18  document, nor had the statement that "Phoenix College determined that your course

19  materials charge was not included in the adopted budget or pre-approved by the

20  Governing Board."  A reasonable plaintiff could also assume that this was done because

21  the hearing committee rejected as unproven the allegation that Martinez had violated the

22  cash handling policies in Administrative Regulation 1.17.

23       The Court determined that, in any case, the violation Glasper was actually

24  referring to was of Administrative Regulation 6.7.1 and 6.7.3.  (Doc. 91 at 13-14 of 18).

25  A reasonable plaintiff however, could believe that because 6.7.1 and 6.7.3 are general

26  Administrative Regulations, e.g., Administrative Regulation 6.7.1 refers to: "Willful

27  and intentional violation of any…MCCCD administrative regulation that affects the

28  employee's ability to perform his or her job", and because the specific Administrative

1  Regulations referred in the Statement of Charges were 1.12.2 and 1.12.6, that the
2  specific Administrative Regulations alleged to have been violated were 1.12.2 and
3  1.12.6.

4         A reasonable plaintiff could also believe that Defendants' actions would violate
5  her due process rights because as the Supreme Court wrote in *Loundermill*, "a tenured
6  public employee is entitled to oral or written notice of the charges against him, an
7  explanation of the employer's evidence, and an opportunity to present his side of the
8  story. *Loudermill*, 470 U.S. at 546.

9  **IV.    The Liberty Interest Claim**

10        Defendants argue that because Martinez conceded her liberty interest claims,
11  those claims were frivolous.  But a plaintiff may pursue alternative legal theories in a
12  case, and ultimately determine that some are not worth pursuing.  In this case, Martinez
13  ultimately determined that the liberty interest claims were less important than the
14  property interest claims, and that they were no longer worth pursuing.  She therefore
15  conceded them.  That does not mean that a reasonable plaintiff could not have believed
16  them to have been valid.

17  **V.    The Reimbursement Issue**

18        Defendants' assertion that Martinez's due process claim is unjustified because
19  she *still* has not complied with the President Solley's 2012 directive is a red herring.
20  This issue has nothing to do with whether Defendants violated Martinez's due process
21  rights, nor was it ever raised as an affirmative defense in this case.  Moreover, Martinez
22  never had the opportunity to argue the severity of the penalty attached to this violation.

23  **VI.   A Reasonable Plaintiff Could Believe That It Was Appropriate to Seek a**
24  **Declaratory Judgment on The Continued Restrictions on Martinez's**

25        This Court exercised its discretion not to adjudicate Martinez's Request for
26  Declaratory Judgment.  Under the circumstances of this case, however, a reasonable
27  plaintiff could believe that it was reasonable, and not frivolous, to seek declaratory
28  relief.  Without reasserting all of the facts and arguments here, the Hearing Committee

made binding findings that Martinez had not used the lecture notes that gave rise to the directive she sought to have relief from since 2010. Martinez further had a right to academic freedom both from the RFP and under federal law. Her request, properly denied in this Court's prerogative, was neither baseless nor frivolous.

**VII.   Conclusion**

For all of the foregoing reasons, Plaintiff Cleopatria Martinez respectfully requests that the Court deny Defendants' Motion for Attorneys' Fees and Costs.

**RESPECTFULLY SUBMITTED** this 15th day of December 2017.

ROBAINA & KRESIN PLLC


By /s/ Edmundo P. Robaina
    Edmundo P. Robaina
    Thomas T. Griffin
    Attorneys for Plaintiff Cleopatria Martinez


**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 15th day of December 2017, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

Pavneet Singh Uppal
Shayna H. Balch
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
puppal@laborlawyers.com
sbalch@laborlawyers.com

Attorneys for Defendants

By_____ /s/ Gaynell Carpenter

- 13 -