# EXHIBIT 1

1  Edmundo P. Robaina (No. 018125)
2  Thomas T. Griffin (No. 022475)
   ROBAINA & KRESIN PLLC
3  5343 North 16th Street, Suite 200
   Phoenix, Arizona 85016
4  Telephone: (602) 682-6450
   Facsimile: (602) 682-6455
5  epr@robainalaw.com
   ttg@robainalaw.com

6  Attorneys for Plaintiff Cleopatria Martinez

7              UNITED STATES DISTRICT COURT

8                   DISTRICT OF ARIZONA

9  Cleopatria Martinez,
                                        No. CV 15-01759 NVW
10              Plaintiff,
11  vs.
                                        **DECLARATION OF CLEOPATRIA**
12  Maricopa County Community College    **MARTINEZ**
    District, *et al.*,
13              Defendants.

14

15        Cleopatria Martinez, states and declares as follows:

16        1.     I am a Hispanic single woman with over 40 years of teaching experience.

17        2.     I have a Ph.D in mathematics, and I have worked as a mathematics

18  professor for MCCCD since 1985.

19        3.     Prior to April 2, 2012, I had never been involved in any type of litigation

20  other than divorce proceedings in the late 1980s.

21        4.     In November of 2009, I submitted an internal "Discrimination Complaint

22  Form" to MCCCD's Human Resources Department in relation to, among other things,

23  my concern that Phoenix College had failed to appoint any person of Hispanic origin

24  from the Math Department to serve as a member of the College's Title V advisory

25  committee.

26        5.     Prior to my internal complaint, I had never received any disciplinary

27  actions.

28        6.     In January of 2010, MCCCD accused me of potentially violating

copyright laws because I used mathematics problems from copyrighted textbooks, a widespread practice at MCCCD and in academia at large.

7.     MCCCD also restricted my copying privileges, issued me a disciplinary action, issued me a poor evaluation, and hyperscrutinized my work, including my supervision of work study students and the content of my classroom presentations. I was not allowed to provide my own teaching notes to students, even though the contents of those notes did not come from any copyrighted source, nor was I allowed to use them myself to guide my lectures.  I was not even allowed to use math words or symbols that were not found in the textbook. For example, I was reprimanded for putting a "+" sign at the front of the infinity symbol because the author had not done so.  I was also told I could not use the words "highest" and "lowest" to describe extrema because the author had not done so, even though other authors and instructors used these words.

8.     On June 28, 2010, I filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging national origin discrimination and retaliation.

9.     On August 19, 2011, the EEOC found "reasonable cause" to believe that MCCCD had retaliated against me by accusing me of violating copyright laws, restricting and suspending my copying privileges, issuing me disciplinary action, and issuing me a poor evaluation.

10.     On April 2, 2012, I filed a lawsuit against MCCCD alleging Title VII claims for national origin discrimination and retaliation, and a claim for race discrimination, harassment and retaliation under 42 U.S.C. § 1983.

11.     On or about August 9, 2013, MCCCD's Chancellor notified me of his intent to recommend termination of my employment in relation to alleged copyright violations, alleged violations of MCCCD's cash handling policies, and alleged insubordination related to the cash handling allegation.

12.     I hired a highly experienced employment attorney named Stephen Montoya to represent me in the hearing regarding my proposed dismissal.

13.     On October 16, 2013, MCCCD filed a motion for summary judgment in the Discrimination Lawsuit.

14.     On November 18, 2013, a hearing on my proposed dismissal was held before a Hearing Committee.

15.     On December 9, 2013, the Hearing Committee issued binding findings of fact and conclusions of law, in which it found that MCCCD had not shown that I had violated copyright law or MCCCD's cash handling policies, but I had been insubordinate in relation to my failure to issue refunds to students who had reimbursed me for the copying costs of "course materials," which consisted of an unpublished textbook written by my colleague that was the classroom textbook, and which MCCCD had alleged violated its cash handling policies. The Committee further recommended that I not be dismissed.

16.     Thereafter, Mr. Montoya recommended to me that I end the Title VII litigation against MCCCD.

17.     Because I hoped to end my problems with MCCCD, I followed Mr. Montoya's advice, and January 3, 2014, the parties agreed to dismiss the litigation with prejudice, each party to bear its own attorneys' fees and costs.

18.     However, on or about February 10, 2014, the Chancellor notified me that pursuant to his sole authority under RFP 3.13,[1] he was suspending me without pay from March 1, 2014[2] to May 15, 2015, and that my teaching responsibilities and pay would resume in the Fall of 2015 unless I chose to retire.

19.     I immediately filed for unemployment, which MCCCD fought, but I ultimately won after a hearing.

---

[1] The letter actually refers to RFP 3.11.3, but the Court's reference to 2013-14 RFP Section "3.13" regarding suspensions is adopted.

[2] The suspension actually began in April of 2014.  I was told that I was not allowed to go on campus or contact anyone related to my work until August of 2015, when I returned.

20.     In the meantime, in the absence of any mechanism to appeal or address the suspension, Mr. Montoya and I attempted in various ways to seek some form of review of Glasper's action from the Governing Board.

21.     Mr. Montoya, for instance, wrote a letter to the Governing Board in which he argued that Defendants' actions violated my due process rights because, among other things, the Chancellor's new Statement of Charges contained allegations that were expressly considered and rejected by the Hearing Committee; the new Statement of Charges set forth allegations, Administrative Regulations 1.12.2 and 1.12.3, that were not set forth in the original Statement of Charges and were never considered by the Hearing Committee; the Chancellor failed to allow me any opportunity to present evidence refuting the new Statement of Charges before a neutral finder of fact; and a fourteen-month suspension is the economic equivalent of dismissal, and the Chancellor should not be allowed to de facto terminate employees without first obtaining approval by the Governing Board.  See Attachment 1 attached hereto.

22.     In desperation, Mr. Montoya and I also attempted to bring the matter to the Governing Board's attention with a 3-5 minute maximum presentation during the "citizens' interim" (or "call to the public") portion of a Governing Board meeting, and I wrote letters to the Board, but I do not know if they were seen by the Governing Board.

23.     The Governing Board never responded in any way.

24.     I was extremely distraught by the turn of events, which effectively left me without a substantial source of income, or benefits, from April 2014 to August of 2015, when classes started.

25.     I hired attorney Kevin Koelbel to review the matter. Mr. Koelbel associated Tod Schleier, one of the preeminent employment attorneys in Arizona, to review the matter and ultimately to act as the lead attorney in this case.

26.     Mr. Schleier and Mr. Koelbel filed suit on my behalf on September 2, 2015, and filed a Verified Amended Complaint on November 4, 2015, in which they alleged that MCCCD and Glasper had violated my due process rights, and requested

1    declaratory relief regarding ongoing issues with MCCCD.

2        27.    For reasons unrelated to any concerns about the merits of the case, I

3    parted ways with Mr. Koelbel and Mr. Schleier in or about March of 2016.

4        28.    I hired Edmundo Robaina of Robaina & Kresin PLLC to review the

5    matter in or about April of 2016, and he agreed to take over my case shortly thereafter.

6        29.    I filed my first case against MCCCD because I believed I was victim of

7    discrimination and retaliation and the federal government (EEOC) found that there was

8    reasonable cause to believe that MCCCD had retaliated against me in violation of Title

9    VII.

10       30.    I ended that litigation based upon the advice of Mr. Montoya after having

11   received a recommendation from the Hearing Committee that I be retained.

12       31.    I decided to pursue my current case against MCCCD, not because of any

13   desire to engage in another litigation with MCCCD, but because subsequent to my

14   agreeing to dismiss the initial litigation, Defendants took a course of action that I

15   believed was unjust and damaging to me.

16       I declare under penalty of perjury that the foregoing is true and correct to the best

17   of my knowledge and belief.

18       EXECUTED on this 15th day of December 2017.

19

20

21                                         *Cleopatria Martinez*

22                                         Cleopatria Martinez

23

24

25

26

27

28

# ATTACHMENT 1

Stephen Montoya
Attorney at Law

Montoya, Jimenez & Pastor, P.A.
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012-2490
Tele: 602-256-6718; Fax: 602-256-6667
stephen@montoyalawgroup.com

---

March 12, 2014

**SENT VIA EMAIL ONLY**

Doyle Burke, President
Office of the Governing Board
Maricopa Community Colleges
2411 West 14th Street
Tempe, Arizona 85281
doyle.burke@domail.maricopa.edu

Alfredo Gutierrez, Member
Office of the Governing Board
Maricopa Community Colleges
2411 West 14th Street
Tempe, Arizona 85281
alfredo.gutierrez@domail.maricopa.edu

Randolph S. Elias Lumm, Member
Office of the Governing Board
Maricopa Community Colleges
2411 West 14th Street
Tempe, Arizona 85281
randolph.lumm@domail.maricopa.edu

Debra Pearson, Member
Office of the Governing Board
Maricopa Community Colleges
2411 West 14th Street
Tempe, Arizona 85281
debra.pearson@domail.maricopa.edu

Dana G. Saar, Member
Office of the Governing Board
Maricopa Community Colleges
2411 West 14th Street
Tempe, Arizona 85281
dana.saar@domail.maricopa.edu

MCCCD/Martinez 00436

March 12, 2014
page 2

Re:   Petition to the Governing Board by Professor Cleopatria
      Martinez

Dear Honorable Members of the Governing Board:

This letter is to alert the Governing Board of a grave injustice perpetrated against a faculty member by the Chancellor of the Maricopa County Community College District in violation of the express provisions of the District's Residential Faculty Policies ("RFP"). This injustice is of special concern to the Board because the Chancellor's unilateral actions have usurped the Board's authority to terminate and otherwise discipline its employees under the RFP.

Specifically, Cleopatria Martinez has been employed by the District as a Professor of mathematics since January 1, 1985. See attached Exhibit A, ¶ 1. In almost thirty-years of dedicated service to the District, Professor Martinez has no prior record of discipline.

On August 9, 2013, the Chancellor of the District, Dr. Rufus Glasper, served a "Statement of Charges" on Professor Martinez alleging that she violated the District's "cash handling" rules and violated United States copyright laws. See attached Exhibit B. The Chancellor recommended that Professor Martinez be dismissed from employment at the District based upon the misconduct alleged in the Statement of Charges, although Professor Martinez has been employed by the District for almost thirty-years and has no record of previous discipline. Id.

Professor Martinez exercised her right to appeal from the Chancellor's recommended dismissal pursuant to RFP 3.15.3. See Exhibit C. On November 18, 2013, a Hearing Committee conducted an evidentiary hearing and considered both testimonial and documentary evidence regarding the District's Statement of Charges against Professor Martinez. After considering all of the evidence, the Hearing Committee unanimously rendered the following conclusion:

> PC failed to carry its burden of proof relating to violation of MCCCD's cash handling rules found in MCCCD Administrative Regulations 1.17, violation of Residential Policy Manual 3.2.4 (relating to financial interests in unpublished materials), violation of U.S. Copyright Law and

MCCCD/Martinez 00437

March 12, 2014
page 3

> fair use guidelines, and violation of MCCCD
> Administrative Regulations 3.2.4 and 3.2.5 related
> to copyright regulations.

<u>See</u> Exhibit A, ¶ 63.

Notwithstanding the Hearing Committee's unanimous conclusion that the District had failed to satisfy its burden of proof, the Chancellor unilaterally suspended Professor Martinez on March 7, 2014 <u>without</u> pay for fourteen (14) months from March 1, 2014 to May 15, 2015, based upon an entirely <u>new</u> Statement of Charges <u>back</u>-dated to February 10, 2014 that contains facts specifically <u>rejected</u> by the Hearing Committee. <u>See</u> attached Exhibit D.

The Chancellor's rejection of the Hearing Committee's factual findings and unilateral imposition of a fourteen-month, unpaid suspension on Professor Martinez violates the District's Residential Faculty Policies <u>and</u> flatly usurps the Board's ultimate authority to discipline its employees.

Specifically, RFP 3.13 provides that:

> **3.13.    Faculty    Member    Dismissal—
> Probationary and Appointive**
>
> A Faculty member who is recommended, by the College President, through the Chancellor, to the Governing Board, for dismissal shall have access to the following due process procedures.
>
> **3.13.1.**
>
> A written statement of charges, formulated by the College President, shall be forwarded to the Vice Chancellor of Human Resources. After review of the charges, the Vice Chancellor, in consultation with the MCCCD Legal Office, may recommend, to the Chancellor, that there exists prima facie cause for the dismissal of a Faculty member. The Chancellor shall inform the Governing Board in writing, with a copy of the recommendation being sent (U.S. certified or registered mail) to the Faculty member at his/her place of residence as

MCCCD/Martinez 00438

March 12, 2014
page 4

recorded in the MCCCD records. The Vice Chancellor's recommendation will give notice to the Chancellor, Governing Board, and the Faculty member of the intention to formally recommend dismissal, which shall not be sooner than thirty (30) days from the date of the letter, nor later than the end of the current academic year.

### 3.13.2.

A written statement of charges shall be provided to the Chancellor, Governing Board, and the Faculty member as an attachment to the notification outlined in the preceding paragraph. The statement of charges shall state, if applicable, the statutes, policies, rules, or written objectives of the College that the Faculty member is alleged to have violated. The statement of charges shall be of such specificity that the Faculty member will be able to prepare a defense based on the statement.

### 3.13.3.

The Faculty member shall have the right to a hearing by filing a written request with the Vice-Chancellor within five (5) business days after being served with a notice of intent to dismiss. The filing of a timely request shall suspend the dismissal procedure, pending the completion of the hearing.

### 3.13.4.

Upon request, a Hearing Committee shall be constituted within five (5) business days and shall be composed of three (3) Faculty members: one (1) appointed by the Chancellor, one (1) selected by the President of the Faculty Association, and one (1) selected by the member. All three (3) shall be Appointive Faculty. The committee member selected by the Chancellor and the

MCCCD/Martinez 00439

March 12, 2014
page 5

President of the Faculty Association will be from colleges other than the college where the Faculty member recommended for dismissal is assigned. The committee shall be considered constituted when the hearing committee and the Faculty member have been informed by the Faculty Association President of the committee's formation.

### 3.13.5.

The Hearing Committee shall select a Chair. Unless the parties stipulate to extend the time beyond that which is set forth below, the Chair shall conduct a meeting with the attorney representing the MCCCD and the Faculty member and/or his/her attorney/representative no later than twenty (20) business days after the formation of the committee for the purpose of exchanging exhibits, witness lists, and summaries of witness testimony. The Chair may choose to deny admission of an exhibit(s) or witness testimony for failure to comply with this Section.

### 3.13.6.

Unless the parties otherwise agree, the Hearing Committee shall conduct the hearing no later than ten (10) business days after the exchange of information detailed in **Section 3.13.5.** Prior to the hearing, the Faculty member must declare, in writing, whether he/she wishes the hearing to be public or in executive session. The member may attend the hearing; present any testimony, evidence, or statements, oral or written, in his/her behalf; and be represented by legal counsel or other representative. It is expressly understood the act of testifying will not be subject to reprisal by the MCCCD.

MCCCD/Martinez 00440

March 12, 2014
page 6

### 3.13.7.

Within five (5) business days after completion of the hearing, the Hearing Committee shall provide the Chancellor, and the Faculty member with a summary of the evidence that was presented during the hearing. In addition, the Hearing Committee shall render binding written findings of fact and conclusions of law and forward these along with its recommendation regarding dismissal to the Chancellor. The above deadline may be extended up to fifteen (15) business days after completion of the hearing, if the Hearing Committee requests briefs and/or recommended findings of fact and conclusions of law from the parties.

### 3.13.8.

After receiving the Hearing Committee's summary of evidence, findings of fact, conclusions of law, and final recommendation in regard to dismissal, the Chancellor, may meet with the Hearing Committee to clarify any questions he/she may have. The Chancellor shall have ten (10) business days in which to review the recommendation regarding dismissal. The Chancellor may adopt the Hearing Committee's recommendation regarding dismissal or make his/her own recommendation and forward the recommendation along with the summary of the evidence, a copy of the findings of fact, conclusions of law, and final recommendations of the Hearing Committee to the Governing Board.

### 3.13.9.

The Governing Board will meet with the Faculty member and/or his/her representative and a representative of the administration to hear arguments regarding the Chancellor's and the Hearing Committee's recommendation regarding

MCCCD/Martinez 00441

March 12, 2014
page 7

dismissal. This meeting will be an executive session unless the Faculty member chooses to have this meeting in public. The parties shall have no less than one-half hour to present their respective cases. The length of the meeting shall not exceed one (1) hour.

**3.13.10.**

The Governing Board, at a public meeting, shall render a final decision for retention or dismissal of the Faculty member. A copy of the final decision shall be sent (U.S. certified or registered mail) to the Faculty member at his/her place of residence as recorded in MCCCD records. It is expressly understood that the Governing Board decision does not diminish the Faculty member's right to seek other legal remedies under local, state and federal law.

As explained below, the Chancellor's unilateral suspension of Professor Martinez violates her rights under the RFP and her right to due process under Arizona and federal law.

First, the Chancellor's new Statement of Charges of February 10, 2014 contains allegations regarding Professor Martinez's alleged violation of federal copyright law that were expressly considered and rejected by the Hearing Committee. Specifically, although the Hearing Committee specifically concluded that the District failed to meet its burden of proof regarding its allegation that Professor Martinez violated federal copyright laws, see Exhibit A, ¶ 63, the Chancellor's Statement of Charges specifically faults Professor Martinez for violating federal copyright laws. See Exhibit D, p. 2.

Similarly, the Chancellor's new Statement of Charges also contains violations that were not set forth in the original Statement of Charges of August 9, 2013 and that were never even considered by the Hearing Committee. For example, the Chancellor's new Statement of Charges of February 10, 2014 claims for the first time that Professor Martinez violated MCCCD Administrative Regulations 1.12.2 and 1.12.3. See Exhibit D, p. 3. Neither of these regulations were even mentioned in the original Statement of Charges.

MCCCD/Martinez 00442

March 12, 2014
page 8

In addition to violating the RFP, the Chancellor's new Statement of Charges violates Professor Martinez's due process rights under state and federal law. Specifically, although Professor Martinez's suspension was predicated upon a new Statement of Charges, she was never even given the opportunity to respond to the Statement of Charges in writing <u>before</u> she was suspended. Moreover, the Chancellor also failed to allow Professor Martinez any opportunity to present evidence refuting the new Statement of Charges before a neutral finder-of-fact. Accordingly, the Chancellor's suspension failed to provide Professor Martinez with any due process at all, although it has severely damaged her reputation and deprived her of over a year's salary. The Chancellor's violation of Professor Martinez's due process rights has exposed the District to substantial liability to Professor Martinez under state and federal law.

Furthermore, although under the RFP, the Chancellor's Recommendation regarding the Hearing Committee's Findings and Conclusions are subject to the Board's ultimate review and approval, <u>see</u> RFP 3.13.8-3.13.10 above, the Chancellor did <u>not</u> submit the suspension for the Board's consideration or approval <u>after</u> the Board meets with Professor Martinez under RFP 3.13.9.

The Chancellor attempted to justify his unilateral, fourteen-month, unpaid suspension of Professor Martinez by claiming that he is <u>not</u> required to submit "suspensions" to Board for approval. However, because the original Statement of Charges against Professor Martinez clearly involved "dismissal," <u>not</u> "suspension" both the Hearing Committee's Recommendation and the Chancellor's Recommendation are expressly subject to ultimate Board approval under RFP 3.13.8-3.13.10.

Moreover, the Chancellor cannot be allowed to suspend a faculty member for fourteen-months <u>without</u> pay without the ultimate approval of the Board. As the Board is aware, a fourteen-month suspension is the economic equivalent of dismissal. The Chancellor should <u>not</u> be allowed to <u>de facto</u> terminate the District's employees in the form of lengthy suspensions without <u>first</u> obtaining approval by the Governing Board. A contrary conclusion would render the protections set forth in RFP 3.13 nugatory.

Based upon the foregoing—in accordance with RFP 3.13.9— Professor Martinez hereby petitions the Governing Board to meet with her "to hear arguments regarding the Chancellor's and the Hearing

March 12, 2014
page 9

Committee's recommendation regarding dismissal," and conclude that Professor Martinez has already been punished enough for any underlying disciplinary infraction and close this matter without either terminating or suspending her.

Sincerely,

Stephen Montoya

cc:     Pavneet Uppal (via email only)
        puppal@laborlawyers.com

        Lee Combs (via email only)
        lee.combs@domail.maricopa.edu

        James Bowers (via email only)
        james.bowers@domail.maricopa.edu

        Tina Emmons (via email and first class mail)
        Assistant to the Governing Board
        tina.emmons@domail.maricopa.edu

# EXHIBIT A

MCCCD/Martinez 00445

BEFORE THE GOVERNING BOARD OF THE
MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT

| | | |
|---|---|---|
| MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT, | ) ) ) | HEARING COMMITTEE |
| v. | ) ) | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION |
| DR. CLEOPATRIA MARTINEZ | ) ) | |

Pursuant to the October 16, 2013 Scheduling Order, having reviewed all of the parties' pleadings and exhibits and conducting a hearing on November 18, 2013, the Hearing Committee (by majority vote) hereby submits the following Findings of Fact, Conclusions of Law and Recommendation.

## FINDINGS OF FACT

1.  After having taught mathematics full-time for ten years at Denver Community College, Dr. Cleopatria Martinez moved to Arizona and started teaching mathematics full-time at Scottsdale Community College on January 1, 1985.

2.  Dr. Martinez voluntarily transferred to Phoenix College ("PC") in 1995 and has been teaching mathematics there full-time ever since.

3.  Dr. Martinez elected to voluntarily transfer to PC because there were very few minority students attending Scottsdale Community College, and she wanted to use her bilingual education skills in the mathematics classroom to better educate the large number of minority students attending PC.

4.  Dr. Martinez was elected by her colleagues to serve as the Chairperson of the Mathematics Department of PC from 2002 to 2005.

5.  In early 2010, PC discovered that Dr. Cleopatria Martinez may have exposed MCCCD to potential liability for copyright infringement.

6.  Dr. Martinez testified that, during her twenty-eight years of teaching mathematics in the MCCCD system, she and her colleagues in the Mathematics Departments of both Scottsdale Community College and PC routinely borrowed mathematics problems from other mathematicians to use in their student handouts for educational purposes on a not for profit basis.

7.  Dr. Martinez testified, without rebuttal, that this borrowing of mathematics problems is a longstanding, widespread custom throughout the District and academia at large.

8.  Instead of requiring her mathematics students to purchase textbooks, Dr. Martinez prepared her own course materials which she called her "Lecture Notes" and distributed them to

MCCCD/Martinez 00446

her students.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 77:17-78:15, 106:16-108:16, 121:25-140:13, 132:16-137:25).

9.     Dr. Martinez read the Copyright Act of 1976 and believed that it authorized her to use small portions of other scholars' work under the "Fair Use" doctrine because she was using it only for classroom teaching purposes on a not for profit basis and her use of the material did not undermine the potential market for the other scholar's work.

10.     Per the "Fair Use" doctrine of the Copyright Act, the "use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107.

11.     Dr. Martinez copied problems from copyright protected textbooks and inserted them into her course materials.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 106:16-108:16).

12.     Dr. Martinez, in her Basic Arithmetic (MAT082) course, copied problems directly from a copyrighted textbook entitled "Basic Mathematics" and inserted them into her "MAT 082 Basic Arithmetic Spring 2010" course materials which she distributed to students.  MCCCD Exhibit List # 20 (Full-Sized Excerpted Comparison).  She did not seek or obtain permission from the copyright holder.

13.     Dr. Martinez also copied problems directly from the Sullivan & Sullivan "Precalculus" textbook and inserted them into her "MAT182 Trigonometry Spring 2010" course materials.  MCCCD Exhibit List # 22 (Full-Sized Excerpted Comparison).  She did not seek or obtain permission from the copyright holder.

14.     Dr. Martinez did not require her students to purchase textbooks in her Spring MAT082 Course.  MCCCD Exhibit List # 18 (email from Dr. Martinez stating "I indicated in my syllabus that, instead of a published textbook, I was using lecture notes in my MAT082 class.")

15.     Dr. Martinez did not require her students to purchase textbooks in her Spring MAT182 Course.  *See* Dr. Martinez's hearing testimony (conceding that students were not required to purchase a textbook in her Spring 2010 MAT182 course).

16.     On or around January 12, 2010, MCCCD's Vice President of Academic Services, Ronnie Elliot, sent Dr. Martinez an email notifying her that there were alleged copyright related problems with the materials she had printed for the Fall 2009 and Spring 2010 semesters. MCCCD Exhibit List # 23 (January 12, 2010 email).  The materials in question were packets of course materials for Dr. Martinez's MAT182 and MAT187 courses and contained mathematics problems and graphs that were taken from copyrighted textbooks.  MCCCD Exhibit List # 11 (Ronnie Elliot Declaration, ¶¶8-9); MCCCD Exhibit List # 16 (MAT182 course packet); MCCCD Exhibit List # 7 (Sean Garrison October 28, 2010 Memorandum).

17.     Dr. Martinez used three of the four packets of "lecture notes" in the Spring of 2010 in two pre-calculus classes.  See District Exhibit 6, parts 1-3.

406681                                              -2-

MCCCD/Martinez 00447

18.    The MCCCD administration, following Vice President Elliot's email, repeatedly explained its copyright concerns to Dr. Martinez and asked Dr. Martinez to remove any copyright protected mathematics problems from her materials. See Kakar Hearing Testimony.

19.    On January 26, 2010, Vice President Elliot sent Dr. Martinez an email outlining MCCCD's concerns regarding Dr. Martinez's potential copyright infringement.    MCCCD Exhibit List # 24 (January 26, 2010 email).

20.    On January 28, 2010, MCCCD in-house-counsel Margaret McConnell discussed copyright compliance with Dr. Martinez telephonically. MCCCD Exhibit List # 25 (January 28, 2010 email).

21.    Dr. Martinez did not benefit from the multiple MCCCD copyright information sessions noted above.

22.    PC's own expert witness, Sean Garrison, testified that under the "Fair Use" doctrine, someone could lawfully copy from a copyrighted textbook without either using or purchasing the textbook.

23.    On February 5, 2010, Vice President of Academic Affairs Casandra Kakar, Interim Vice President of Administrative Services Paul DeRose, and Dr. Martinez met to discuss Dr. Martinez's alleged misuse of copyrighted materials.    MCCCD Exhibit List # 26 (February 12, 2010 email).

24.    Dr. Martinez has not used any of the four sets of "lecture notes" since the Spring of 2010 when PC first raised its concerns regarding the notes.

25.    On April 15, 2010, PC Librarian Ann Roselle conducted a personalized one-on-one copyright training session with Dr. Martinez.    MCCCD Exhibit List # 28 (Copyright PowerPoint Presentation). See also, Kakar Hearing Testimony.

26.    When Dr. Martinez met with the librarian, the librarian told Dr. Martinez that Dr. Martinez knew as much about copyright law as she did. See Martinez Hearing Testimony.

27.    Following the revocation of Dr. Martinez's copying privileges, Dr. Martinez was required to submit her copy requests to Mathematics Department Chairperson Mr. Sueyoshi so that Mr. Sueyoshi could review her materials for possible copyright violations prior to copying and distribution to students. MCCCD Exhibit List # 8 (April 2, 2010 Directive).

28.    Dr. Martinez sought and obtained a form of written permission from the publisher of the textbook, Sullivan & Sullivan's "Precalculus," to copy materials from their book after PC accused her of violating copyright law.

29.    On or around April 19, 2010, Dr. Martinez attempted to bypass the copying restrictions by having an adjunct mathematics Professor, Johnny Santellan, make 24 sets of copies of her "Lecture Notes" for distribution to her mathematics students without obtaining prior approval from the Mathematics Department Chairperson.    MCCCD Exhibit List # 12 (Sueyoshi Decl., ¶9); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 223:11-224:21).

MCCCD/Martinez 00448

30.   Because Dr. Martinez did not feel she was able to obtain reliable guidance regarding copyright compliance from the District, she sought advice from a private intellectual property attorney regarding the issue, Mr. Frederic Bellamy.

31.   Mr. Bellamy reviewed the first two sets of Dr. Martinez's "lecture notes" and concluded that they did not violate copyright law because they fell under the "Fair Use" doctrine.

32.   Mr. Bellamy based his conclusion that Dr. Martinez did not violate copyright law on the opinion that the portion of material that Dr. Martinez copied from the Sullivan & Sullivan Precalculus textbook was very small, that she used the copied materials exclusively for educational purposes without any profit motive, that the content of the copied material consisted of mathematics problems that are arguably not subject to copyright in the first place, and that the small portion of the textbook that Dr. Martinez copied did not adversely impact the potential market for the textbook.

33.   At the hearing, another lawyer practicing in the area of intellectual property law, Sean Garrison, testified on behalf of PC. In contrast to Mr. Bellamy, Mr. Garrison testified at the hearing that the first three sets of Dr. Martinez's lecture notes violated copyright law.

34.   In contrast to his testimony at the hearing of November 18, 2013, in his written report Mr. Garrison concluded only that the first three sets of Dr. Martinez's lecture notes subjected the District "to a serious risk of a copyright infringement claim." See District Exhibit 6, p. 0002.

35.   MCCCD invited Dr. Martinez to a copyright workshop that was held on March 1, 2010 at PC. Dr. Martinez chose not to attend the workshop. MCCCD Exhibit List # 10 (Solley Decl., ¶11).

36.   PC President Anna Solley, on December 9, 2010, concluded that Dr. Martinez's alleged misconduct posed an unacceptable legal risk of a copyright infringement claim and imposed restrictions on Dr. Martinez's photocopying privileges. MCCCD Exhibit List # 10 (Solley Decl., ¶12).

37.   MCCCD sought a legal opinion from an outside copyright expert, attorney Sean Garrison. MCCCD Exhibit List # 10 (Solley Decl., ¶ 14); MCCCD Exhibit List # 7 (Sean Garrison October 28, 2010 Memo).

38.   According to Mr. Garrison, the third set of "lecture notes" appeared to have 13 mathematics problems copied from two other mathematics textbooks.

39.   Mr. Garrison testified that he was certain that Dr. Martinez has committed copyright infringement. See Garrison Hearing Testimony. In reaching this conclusion, Mr. Garrison reviewed thousands of pages of materials including nearly 300 pages of Dr. Martinez's lecture notes and three separate copyrighted mathematics textbooks. MCCCD Exhibit List # 6 (Sean Garrison April 19, 2013 Report); see also Garrison Hearing Testimony.

40.   In reliance upon Mr. Garrison's recommendations, PC President Anna Solley issued a December 9, 2010 directive that imposed further restrictions on Dr. Martinez's copying

MCCCD/Martinez 00449

privileges.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 10 (Solley Decl., ¶15).

41.     The December 9, 2010 Directive prohibited Dr. Martinez from utilizing any course materials of her own creation.  MCCCD Exhibit List # 9 (December 9, 2010 Directive).  Instead, Dr. Martinez was required to only use course materials that are "approved by the mathematics department" or that are "available in the bookstore for sale to students and that are authored by persons other than [Dr. Martinez]."  MCCCD Exhibit List # 9 (December 9, 2010 Directive).

42.     The December 9, 2010 Directive further required Dr. Martinez to submit her photocopy requests to the Mathematics Department Chair for his approval.  MCCCD Exhibit List # 9 (December 9, 2010 Directive).

43.     Despite MCCCD's frequent discussions with Dr. Martinez regarding the importance of complying with copyright laws and the December 9, 2010 Directive, Dr. Martinez continued to attempt to ignore the directive.  See Kakar Hearing Testimony.

44.     At the beginning of the Fall 2012 semester (on or about August 21-23, 2012), Dr. Martinez informed her students that they were not required to purchase a course textbook and that she would provide them with her own course materials in lieu of a textbook.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

45.     In fall of 2012, Dr. Martinez sought to have her lecture notes photocopied off campus at a nearby Staples store.  This practice is inconsistent with the December 9, 2010 Directive.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

46.     Dr. Martinez did not submit her Fall 2012 materials to Mathematics Department Chairperson Mr. Sueyoshi for approval.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

47.     Dr. Martinez made copies of her course materials at an off-campus Staples store and distributed them to students for $11 per copy.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

48.     The $11 course material fee was paid directly to Dr. Martinez by students.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

49.     PC accused Dr. Martinez of violating the District's "cash handling" rules by distributing these course materials to her students if the students reimbursed her for her out-of-pocket copying costs.

50.     PC subsequently claimed that Dr. Martinez violated the District's "cash handling" policies by seeking reimbursement for the copies.

51.     MCCCD's policies prohibit instructors from having "any financial interest in or receiv[ing] compensation from the sale of any unpublished instructional materials required or

suggested for a class that the instructor teaches." MCCCD Exhibit List # 41 (Residential Faculty Policies, 3.2.4.).).

52.     Dr. Martinez failed to follow the protocol set forth in the December 9, 2010 Directive in copying her Fall 2012 course materials.   MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

53.     Dr. Martinez distributed course materials directly to students in her Fall 2012 MAT151 class. MCCCD Exhibit List # 4-5 (Martinez Depo. pp. 232:19-233:21).

54.     The MCCCD Administration learned of Dr. Martinez's unauthorized distribution of course materials to students after one of Dr. Martinez's MAT151 students complained to Mathematics Department Chairperson Mr. Sueyoshi.  The student complained that Dr. Martinez refused to provide her with a receipt for the purchased course materials.  See Kakar Hearing Testimony.

55.     Upon learning that Dr. Martinez had distributed course materials to students allegedly in violation of MCCCD's cash handling policy, President Solley instructed Martinez to immediately issue refunds to her students via personal check.  MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.

56.     On or around October 18, 2012, President Solley and Dr. Kakar met with Dr. Martinez to explain the seriousness of Dr. Martinez's alleged cash handling violation. MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.  In addition, President Solley and Dr. Kakar prepared a written counseling memo dated October 18 2010 for Dr. Martinez regarding her alleged violation of cash handling rules.  Dr. Martinez was provided with a copy of the October 18, 2010 counseling notice and President Solley proceeded to explain to Dr. Martinez the seriousness of the alleged cash handling violations and the requirement that Dr. Martinez issue reimbursements to her students.  MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.

57.     Several months later, on or around January 9, 2013, Dr. Kakar learned that most (if not all) students had not yet received refunds from the Dr. Martinez.  MCCCD Exhibit List # 39 (various emails regarding student refunds).  As a result, Dr. Kakar instructed Dr. Martinez to provide copies of refund checks by January 18, 2013.  MCCCD Exhibit List # 39 (various emails regarding student refunds).

58.     Dr. Martinez failed to produce a single refund check by the January 18, 2013 deadline. MCCCD Exhibit List # 39 (various emails regarding student refunds).

59.     Dr. Martinez did not think that she had violated any District rule in reference to the copies.  Therefore, she declined to follow the December 9, 2010 order because she believed she was not required to do so under any District rule.

60.     At the November 18, 2013 hearing, Dr. Martinez did not provide any explanation for her refusal to comply with the October 18, 2012 and January 9, 2013 directives to issue refunds to her students.  See Martinez Hearing Testimony.

MCCCD/Martinez 00451

61.    At the hearing Dr. Martinez testified that she had made a "mistake" and, in retrospect, should have complied with President Solley's instructions.  See Martinez Hearing Testimony.

62.    On or around August 9, 2013, MCCCD Chancellor Rufus Glasper sent Dr. Martinez a letter informing her that MCCCD was proceeding with termination proceedings. Included with this letter was a statement of charges that summarized the particular violations Dr. Martinez had been charged with (hereinafter referred to as "Statement of Charges.") MCCCD Exhibit List # 1 (Statement of Charges).

## CONCLUSIONS

63.    PC failed to carry its burden of proof relating to violation of MCCCD's cash handling rules found in MCCCD Administrative Regulations 1.17, violation of Residential Policy Manual 3.2.4 (relating to financial interests in unpublished materials), violation of U.S. Copyright Law and fair use guidelines, and violation of MCCCD Administrative Regulations 3.2.4 and 3.2.5 related to copyright regulations.

64.    Notwithstanding their education, their experience, and their good faith, Mr. Bellamy and Mr. Garrison disagreed as to whether or not Dr. Martinez violated copyright law. Therefore, it is inconclusive as to whether Dr. Martinez intentionally and/or inadvertently violated federal copyright law.

65.    It is inconclusive as to whether or not Dr. Martinez violated the "cash handling" policies of MCCCD.

66.    Dr. Martinez willfully and intentionally failed to follow instructions that were communicated to her when she failed to issue refunds to students as directed by President Solley.

67.    Dr. Martinez conceded that she never complied with President Solley's clear directive to issue refunds to her students.  Although Dr. Martinez now regrets her decision not to comply with President Solley's directive, she has never claimed that she did not understand the instructions or that the instructions were beyond the scope of management's authority.  Viewed in light of these facts, Martinez's claim that she "made a mistake" is an admission of willful insubordination.

68.    By failing to comply with President Solley's directive to issue refunds to her students, Dr. Martinez violated MCCCD Administrative Regulation 6.7.1 which prohibits the "[w]illful and intentional violation of any...MCCCD administrative regulation that affects the employee's ability to perform his or her job."

69.    By failing to comply with President Solley's directive to issue refunds to students, Dr. Martinez violated MCCCD Administrative Regulation 6.7.3 which prohibits the "[w]illful and intentional failure to perform job duties that have first been communicated to an employee and are within the employee's scope of employment."

///

MCCCD/Martinez 00452

## RECOMMENDATION

70.     We hereby recommend that the Governing Board deny President Solley's termination request and allow Dr. Martinez to continue her MCCCD employment.

71.     Per MCCCD Administrative Regulation 6.7 indicating that violation of any Employment Standards "constitutes grounds for disciplinary action, *up to* [emphasis added] and including termination," we hereby recommend that the Governing Board retain Dr. Martinez.

It is ordered so, at Mesa, Arizona, this 9th day of December, 2013.

Dr. Keith Crudup
Chairperson
On Behalf of the Hearing Committee,
Dr. Nora Reyes and Dr. Carlos Caire

MCCCD/Martinez 00453

# EXHIBIT B

MCCCD/Martinez 00454



**MARICOPA
COMMUNITY
COLLEGES®** | Rufus Glasper
Chancellor

2411 W. 14th Street, Tempe, Arizona 85281-6942 • T 480.731.8100 • F 480.731.8120 • r.glasper@domail.maricopa.edu

August 9, 2013

Cleopatria Martinez
7030 N. 21st Street
Phoenix, AZ  85020

**Re:  Intent to dismiss you from your employment**

Dear Dr. Martinez:

Dr. Anna Solley, President of Phoenix College (PC) has forwarded a statement of charges to James Bowers, Interim Vice Chancellor for Human Resources.  Mr. Bowers has reviewed the charges, in consultation with the MCCCD Legal Office, and recommended to me that there exists prima facie cause for your dismissal from your position as Mathematics Faculty at Phoenix College (see attached).  I concur with his recommendation.  The recommended effective date of your involuntary termination is September 24, 2013.

Maricopa County Community College District Administrative Regulation 6.7 states that violation of any of its Employment Standards "constitutes grounds for disciplinary action, up to and including termination of any Maricopa County Community College District (MCCCD) employee as outlined by the respective policy manuals".

Pursuant to Section 3.15.3 of the RFP Policy Manual, you may invoke your right to a hearing by filing a written request with Interim Vice Chancellor James Bowers within five (5) business days after being served with this notice of intent to dismiss you from your employment.

Sincerely,

Rufus Glasper, Ph.D., CPA
Chancellor


Cc:    MCCCD Governing Board
       Dr. Anna Solley
       Mr. Jim Bowers

*Ten colleges and two skill centers dedicated to student success.*

Chandler-Gilbert I Estrella Mountain I GateWay I Glendale I Mesa I Paradise Valley I Phoenix
Rio Salado I Scottsdale I South Mountain I Maricopa Skill Center I SouthWest Skill Center

MCCCD/Martinez 00455



MARICOPA
COMMUNITY
COLLEGES®   |   Vice Chancellor
Human Resources

2411 W. 14th Street, Tempe, Arizona 85281-6942 • T 480.731.8103 • F 480.731.8120 • www.maricopa.edu

August 9, 2013

Cleopatria Martinez
7030 N. 21st Street
Phoenix, AZ  85020

RE:  Employment Status

Dear Dr. Martinez:

You are being placed on paid administrative leave from August 12 through
September 24, 2013, pending the approval of your termination. During
administrative leave, you will remain an employee of Maricopa County
Community College District (MCCCD) and must continue to observe all policies
regarding employee conduct.

For the duration of paid administrative leave, you should not report to work nor
do you need to make contact with your supervisor. Upon approval of your
termination by the Maricopa County Community Colleges Governing Board, you
will be notified regarding the termination of your employment status with
MCCCD.

Sincerely,

James Bowers, J.D.
Interim Vice Chancellor for Human Resources

cc:    Dr. Anna Solley
        Employee Personnel File

*Ten colleges and two skill centers dedicated to student success.*

Chandler-Gilbert | Estrella Mountain | GateWay | Glendale | Mesa | Paradise Valley | Phoenix
Rio Salado | Scottsdale | South Mountain | Maricopa Skill Center | SouthWest Skill Center

MCCCD/Martinez 00456



MARICOPA
COMMUNITY
COLLEGES®   |   Vice Chancellor
                       Human Resources

---

2411 W. 14th Street, Tempe, Arizona 85281-6942 • T 480.731.8103 • F 480.731.8120 • www.maricopa.edu

August 9, 2013

Dear Dr. Glasper:

The following statement of charges against Dr. Cleopatria Martinez was forwarded to me by Dr. Anna Solley, President, Phoenix College. Pursuant to 3.15.1 of the Residential Faculty Policy (RFP), I have reviewed the charges, in consultation with the MCCCD Legal Office, and recommend to you that there exists prima facie cause for the dismissal of Dr. Cleopatria Martinez.

Sincerely,

James Bowers, J.D.
Interim Vice Chancellor for Human Resources

### Statement of Charges

- Violation of Administrative Regulation 6.7.1 - "Willful and intentional violation of any state or federal law, applicable ordinance, MCCCD Governing Board policy, or MCCCD administrative regulation that affects the employee's ability to perform his or her job", specifically:

  o Violation of MCCCD's cash handling rules as covered by MCCCD Administrative Regulations 1.17

- Violation of Residential Faculty Policy Manual 3.2.4 - "A Faculty member shall not have any financial interest in or receive compensation from the sale of any unpublished instructional materials required or suggested for a class that the Faculty member teaches."

- Violation of U.S. Copyright Law and fair use guidelines, and MCCCD Administrative Regulations 3.2.4 and 3.2.5 regarding copyright regulations:

  3.2.4 Employees are prohibited from copying materials not specifically allowed by the (1) copyright Law, (2) fair use guidelines, (3) Licenses or contractual agreements, or (4) other permission.

  3.2.5 The Governing Board disapproves of unauthorized duplication in any form. Employees who willfully disregard this Board policy and/or the aforementioned copyright guidelines do so at their own risk and assume all liability for their actions.

---

*Ten colleges and two skill centers dedicated to student success.*

Chandler-Gilbert | Estrella Mountain | GateWay | Glendale | Mesa | Paradise Valley | Phoenix
Rio Salado | Scottsdale | South Mountain | Maricopa Skill Center | SouthWest Skill Center

MCCCD/Martinez 00457

- Violation of Administrative Regulation 6.7.3 - "Willful and intentional failure to perform job duties that have first been communicated to an employee and are within the employee's scope of employment", specifically, repeated failure to follow instructions regarding printing/copying of unauthorized materials, failure to use only approved course materials, unauthorized copying and sale of course materials, failure to reimburse students for the materials you wrongfully charged them for, and failure to meet the deadline to provide copies of any reimbursement checks to students.

Brief Timeline:

- January 2010 - College Vice Presidents Ronnie Elliott, Paul DeRose and Cassandra Kakar; along with Maggie McConnell, Assistant General Counsel, reviewed the requirements of AR 3.2 with you at length.
- April 2, 2010 – Anna Solley, Phoenix College President, notified you that your copying privileges at the Phoenix College IKON Copy Center were suspended.
- Spring 2010 – An Administrative Evaluation was initiated based on Mr. Joe Sueyoshi's complaint. By agreement, the Evaluation Team did not undertake its task until the fall semester. The findings and recommendations were submitted to Dr. Solley on November 17, 2010. The overall findings included:
  - Copyright and plagiarism: Dr. Martinez was notified in writing and in meetings of MCCCD's and Phoenix College's concerns regarding her course materials violating copyright, fair use, and plagiarism laws.
  - Insubordination: Dr. Martinez failed to follow Dr. Solley's and MCCCD's Legal Counsel's directives - specifically, she repeatedly requested copies, copied and printed unauthorized materials.
- December 9, 2010 – Dr. Solley administered an Initial Corrective Action to you for insubordination and failure to follow instructions regarding printing or copying of unauthorized materials.
- August 21-23, 2012 - You told your MAT 091 and MAT 151 students not to buy the approved text that you listed on the syllabus. Instead, you made copies of a colleague's materials and sold them to your students for $11 each.
- October 18, 2012 – A Second Corrective Action for insubordination and unauthorized copying and sale of course materials was administered to you by Dr. Solley. Included in the corrective action was the following directive: "Because you imposed charges on your students without authority to do so, you have the responsibility to reimburse the students from your own funds. You are hereby directed to do so by personal check, beginning immediately and continuing until all students who paid you are reimbursed."
- January 11, 2013 – Upon discovering that the students who bought your unauthorized course materials had yet to be reimbursed, Casandra Kakar directed you, via email, to provide her, by January 18, 2013, with front and back copies of all cashed personal reimbursement checks to your students.
- January 18, 2013 - You failed to provide Dr. Kakar with copies of any reimbursement checks and neglected to contact her regarding the money you still owe the students.
- February 21, 2013 – A student turned in the MAT091 materials which you left in room B210. Timothy Bryan, Mathematics Faculty, has previously told you that you do not have permission to use his materials again.

MCCCD/Martinez 00458

# EXHIBIT C

MCCCD/Martinez 00459

Stephen Montoya
Attorney at Law

Montoya, Jimenez & Pastor, P.A.
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012-2490
Tele: 602-256-6718; Fax: 602-256-6667
stephen@montoyalawgroup.com

August 16, 2013

SENT VIA EMAIL (JAMES.BOWERS@DOMAIL.MARICOPA.EDU),
FAX (480-731-8120), AND FIRST CLASS MAIL

James Bowers, J.D.
Interim Vice Chancellor for Human Resources
Maricopa Community Colleges
2411 West 14th Street
Tempe, Arizona 85281-6942

        Re:    Cleopatria Martinez; Request for Hearing

Dear Mr. Bowers:

        Pursuant to Section 3.15.3 of the Maricopa Community College RFP
Manual, Dr. Cleopatria Martinez hereby invokes her right to a hearing regarding
her proposed dismissal from the Maricopa County Community College District.

        We ask that the proposed termination of Dr. Martinez be rejected because
it is based upon a misunderstanding of the underlying facts and applicable law, in
addition to improperly ignoring Dr. Martinez's twenty-eight years of exemplary
service to the District.

        I will be serving as Dr. Martinez's legal counsel in connection with the
proposed dismissal.

        Thank you very much.

                        Sincerely

                        Stephen Montoya

MCCCD/Martinez 00460

**April Roll**

---

**From:** April Roll
**Sent:** Friday, August 16, 2013 1:55 PM
**To:** 'james.bowers@domail.maricopa.edu'
**Cc:** Steve Montoya
**Subject:** Cleopatria Martinez
**Attachments:** martinez--letter bowers 01.pdf

Mr. Bowers:

Please see attached letter of today regarding Ms. Martinez. The original will follow by first class mail.

Thank you.

April Roll
Legal Assistant to Stephen Montoya
**Montoya, Jimenez & Pastor, P.A.**
3200 North Central Avenue, Ste. 2550
Phoenix, Arizona 85012
Tele: 602-256-6718 Fax: 602-256-6667

This electronic mail transmission contains information from Montoya, Jimenez & Pastor, P.A. that may be confidential and/or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be advised that any disclosure, copying, distribution or use of this email, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a federal crime.

P. 1

＊ ＊ ＊ Transmiss ⌐ Result Report(MemoryTX) ( Aug.   2013  1:38PM) ＊ ＊ ＊
1)
2)

Date/Time: Aug. 16. 2013  1:37PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 4360 | Memory TX APRIL ROLL | 4807318120 | P.  2 | OK | |

-----------------------------------------------------------------

Reason for error
E. 1) Hang up or line fail          E. 2) Busy
E. 3) No answer                     E. 4) No facsimile connection

Stephen Montoya
Attorney at Law

Montoya, Jimenez & Pastor, P.A.
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012-2509
Tel: 602-256-6718 Fax: 602-256-6667
stephen@montoyalawgroup.com

## FAX TRANSMISSION

### PERSONAL & CONFIDENTIAL

To:        James Bowers, J.D.
           Interim Vice Chancellor for Human Resources

Fax No:    (480) 731-8120

From:      Stephen Montoya

Date:      August 16, 2013

Number of pages:   2 (including cover page)

This communication is privileged and confidential under federal and state law and is intended to be reviewed only by the recipient specified above.  If you receive this communication in error, please immediately notify us at (602) 256-6718 and return it to the above address by first class mail.  Thank you for your cooperation.

MCCCD/Martinez 00462

# EXHIBIT D

MCCCD/Martinez 00463



MARICOPA COMMUNITY COLLEGES®

Rufus Glasper
Chancellor

2411 W. 14th Street, Tempe, Arizona 85281-6942 • T 480.731.8100 • F 480.731.8120 • r.glasper@domail.maricopa.edu

February 10, 2014

Dr. Cleopatria Martinez
7030 N. 21st Street
Phoenix, AZ 85020

Re: Notice of Suspension without Pay

Dear Dr. Martinez:

Based upon the attached written statement of charges, I have decided to suspend your employment under my sole authority as Chancellor pursuant to section 3.11 of the Residential Faculty Policies. The purpose of this letter to notify you that your suspension from your position as Mathematics faculty at Phoenix College will begin on March 1, 2014 and end on May 15, 2015.  Your teaching responsibilities and pay will resume Fall semester, 2015 unless you choose to retire (see below).

Having sought the advice of the General Counsel as required by section 3.11.3 of the RFP, I am satisfied that your procedural rights concerning the grounds for suspension have been met. The basis for this action is the unanimous finding of an independent hearing committee that you willfully violated the district policies set forth in the statement of charges and that I have the authority to suspend your employment without pay.

Also under the terms of subsection 3.11.3, the interim Vice Chancellor for Human Resources will offer to consult with you (and the Faculty Association President, if you choose) concerning the rationale for this decision. If you accept his invitation, he will deliver this notice and attachment after the meeting. If you decline your opportunity to consult with him, he will have the decision delivered to you in accordance with the policy.

You may voluntarily retire from your position in lieu of this suspension without pay.  If you elect to do so, you will remain on paid administrative leave and be paid through May 9, 2014.

Sincerely,

Rufus Glasper, Ph.D., CPA
Chancellor

Lee Combs
General Legal Counsel

cc:  Dr. Anna Solley
     Mr. Jim Bowers

*Ten colleges and two skill centers dedicated to student success.*

Chandler-Gilbert | Estrella Mountain | GateWay | Glendale | Mesa | Paradise Valley | Phoenix
Rio Salado | Scottsdale | South Mountain | Maricopa Skill Center | SouthWest Skill Center

MCCCD/Martinez 00464



MARICOPA
COMMUNITY
COLLEGES®  |  Rufus Glasper
            Chancellor

2411 W. 14th Street, Tempe, Arizona 85281-6942  •  T 480.731.8100  •  F 480.731.8120  •  r.glasper@domail.maricopa.edu

February 10, 2014

Dr. Cleopatria Martinez
7030 N. 21st Street
Phoenix, AZ 85020

Re: Statement of Charges

Based upon the findings of the hearing committee which are attached to this statement, and the record of
their proceedings, I have determined as follows:

In teaching your Phoenix College mathematics students, you did not use a textbook. Instead, you prepared
your own course materials you called your "lecture notes," copied them on Phoenix College equipment
and at College expense, and distributed them to your students without charge. In preparing your notes,
you copied problems from copyright protected textbooks and inserted them into your lecture notes
without attribution to, or permission of, the copyright holders.

In early 2010, Phoenix College discovered that you may have exposed MCCCD to liability for copyright
infringement, notified you of the concerns, and provided training and legal counsel. To protect the
College from the risk of liability, in April 2010 President Solley restricted your copying privileges,
allowing only those copy projects approved by your department chair. You attempted to bypass these
restrictions. The chair filed a complaint that was referred to an administrative evaluation team for
investigation. The team, including your own appointee, unanimously concluded that your lecture notes
violated copyright and that you had failed to follow President Solley's direction.

President Solley considered this history, and on December 10, 2010 imposed a stricter restriction in
accordance with the RFP. She directed you to use only course materials approved by the department, that
were available in the bookstore for sale to the students, and that were authored by persons other than
yourself.  She also required that you provide proper attribution of authorship of the materials by others
and show evidence that you had purchased the materials or otherwise received permission to use them
from the author. She restricted your authority to copy to materials approved by your department chair
after two days' notice and written proof that you had permission of the author to copy the materials.

In concluding her directive, Dr. Solley stated, "This direction is intended to communicate job duties to
you within the meaning of Governing Board employment standard A4.3. In accordance with that section
of the All Employment Policy Manual, willful and intentional violation of these instructions will be
considered grounds for disciplinary action, up to and including dismissal."

Despite MCCCD's frequent discussions with you regarding the importance of complying with copyright
laws and the December 9, 2010 directive, you continued to attempt to ignore the
directive. At the beginning of the Fall 2012 Semester, you informed your students that they were not
required to purchase a course textbook and that you would provide them with your own course materials
in lieu of a textbook. In violation of President Solley's December, 2010 directive, you made copies at a
local Staples store of course materials that had not been approved by your department chair, and
distributed them to your students for $11 per copy, payable directly to you. This distribution violated Dr.
Solley's directive.

Page 2

You decided unilaterally that no district policy required you to comply with the job duties communicated to you in writing by Dr. Solley, so you violated them. However, her directive was issued under section 3.7.4 of the RFP. This section authorizes a president to take "any appropriate action" after receiving the results of the administrative review. In considering the appropriate action, Dr. Solley relied on the advice of expert counsel to assess the risk of liability represented by your behavior, on your documented history of evasion of her prior efforts to protect MCCCD, and the unanimous report of the administrative evaluation team. You did not file a timely appeal or grievance seeking review of this directive.

An additional concern arose after a student brought the copying to PC's attention, complaining that you did not provide receipts for the material charges. MCCCD Administrative Regulation 1.12. states as follows:

"1.12.2 Authorization

Prior to participating in the sale of products or services, Revenue and Expenditure categories must be included in a program's budget, and approved by the Governing Board during the annual budget adoption process, or as legally changed during a fiscal year.

1.12.3 Fees

Fees exchanged for products or services produced through an educational, training, or service activity shall be pre-approved by the Governing Board."

Phoenix College determined that your course materials charge was not included in the adopted budget or pre-approved by the Governing Board. Dr. Solley therefore issued a corrective action that directed you to issue refunds to the students for the unauthorized charge. You refused, and offered no explanation or justification of your decision to the hearing committee. The hearing committee found your failure to comply with the corrective action was in violation of Administrative Regulation 6.7.1 and Administrative Regulation 6.7.3.

Therefore, for purposes of RFP Section 3.13, this letter will serve as a statement of charges that you are in violation of Administrative Regulation 6.7.1 and Administrative Regulation 6.7.3. In accordance with these regulations, disciplinary action up to and including termination is warranted. I accept the hearing committee's recommendation that you should not be dismissed from employment. However, I believe suspension without pay for a substantial time is the appropriate sanction.

Sincerely,

Rufus Glasper, Ph.D. CPA
Chancellor

BEFORE THE GOVERNING BOARD OF THE
MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT

| MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT, | ) ) | HEARING COMMITTEE |
|---|---|---|
| v. | ) ) ) | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION |
| DR. CLEOPATRIA MARTINEZ | ) | |

Pursuant to the October 16, 2013 Scheduling Order, having reviewed all of the parties' pleadings and exhibits and conducting a hearing on November 18, 2013, the Hearing Committee (by majority vote) hereby submits the following Findings of Fact, Conclusions of Law and Recommendation.

## FINDINGS OF FACT

1.     After having taught mathematics full-time for ten years at Denver Community College, Dr. Cleopatria Martinez moved to Arizona and started teaching mathematics full-time at Scottsdale Community College on January 1, 1985.

2.     Dr. Martinez voluntarily transferred to Phoenix College ("PC") in 1995 and has been teaching mathematics there full-time ever since.

3.     Dr. Martinez elected to voluntarily transfer to PC because there were very few minority students attending Scottsdale Community College, and she wanted to use her bilingual education skills in the mathematics classroom to better educate the large number of minority students attending PC.

4.     Dr. Martinez was elected by her colleagues to serve as the Chairperson of the Mathematics Department of PC from 2002 to 2005.

5.     In early 2010, PC discovered that Dr. Cleopatria Martinez may have exposed MCCCD to potential liability for copyright infringement.

6.     Dr. Martinez testified that, during her twenty-eight years of teaching mathematics in the MCCCD system, she and her colleagues in the Mathematics Departments of both Scottsdale Community College and PC routinely borrowed mathematics problems from other mathematicians to use in their student handouts for educational purposes on a not for profit basis.

7.     Dr. Martinez testified, without rebuttal, that this borrowing of mathematics problems is a longstanding, widespread custom throughout the District and academia at large.

8.     Instead of requiring her mathematics students to purchase textbooks, Dr. Martinez prepared her own course materials which she called her "Lecture Notes" and distributed them to

MCCCD/Martinez 00467

her students. . MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 77:17-78:15, 106:16-108:16, 121:25-140:13, 132:16-137:25).

9.   Dr. Martinez read the Copyright Act of 1976 and believed that it authorized her to use small portions of other scholars' work under the "Fair Use" doctrine because she was using it only for classroom teaching purposes on a not for profit basis and her use of the material did not undermine the potential market for the other scholar's work.

10.   Per the "Fair Use" doctrine of the Copyright Act, the "use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107.

11.   Dr. Martinez copied problems from copyright protected textbooks and inserted them into her course materials.  MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 106:16-108:16).

12.   Dr. Martinez, in her Basic Arithmetic (MAT082) course, copied problems directly from a copyrighted textbook entitled "Basic Mathematics" and inserted them into her "MAT 082 Basic Arithmetic Spring 2010" course materials which she distributed to students.  MCCCD Exhibit List # 20 (Full-Sized Excerpted Comparison).  She did not seek or obtain permission from the copyright holder.

13.   Dr. Martinez also copied problems directly from the Sullivan & Sullivan "Precalculus" textbook and inserted them into her "MAT182 Trigonometry Spring 2010" course materials.  MCCCD Exhibit List # 22 (Full-Sized Excerpted Comparison).  She did not seek or obtain permission from the copyright holder.

14.   Dr. Martinez did not require her students to purchase textbooks in her Spring MAT082 Course.  MCCCD Exhibit List # 18 (email from Dr. Martinez stating "I indicated in my syllabus that, instead of a published textbook, I was using lecture notes in my MAT082 class.")

15.   Dr. Martinez did not require her students to purchase textbooks in her Spring MAT182 Course.  *See* Dr. Martinez's hearing testimony (conceding that students were not required to purchase a textbook in her Spring 2010 MAT182 course).

16.   On or around January 12, 2010, MCCCD's Vice President of Academic Services, Ronnie Elliot, sent Dr. Martinez an email notifying her that there were alleged copyright related problems with the materials she had printed for the Fall 2009 and Spring 2010 semesters.  MCCCD Exhibit List # 23 (January 12, 2010 email).  The materials in question were packets of course materials for Dr. Martinez's MAT182 and MAT187 courses and contained mathematics problems and graphs that were taken from copyrighted textbooks.  MCCCD Exhibit List # 11 (Ronnie Elliot Declaration, ¶¶8-9); MCCCD Exhibit List # 16 (MAT182 course packet); MCCCD Exhibit List # 7 (Sean Garrison October 28, 2010 Memorandum).

17.   Dr. Martinez used three of the four packets of "lecture notes" in the Spring of 2010 in two pre-calculus classes. See District Exhibit 6, parts 1-3.

MCCCD/Martinez 00468

18.   The MCCCD administration, following Vice President Elliot's email, repeatedly explained its copyright concerns to Dr. Martinez and asked Dr. Martinez to remove any copyright protected mathematics problems from her materials. See Kakar Hearing Testimony.

19.   On January 26, 2010, Vice President Elliot sent Dr. Martinez an email outlining MCCCD's concerns regarding Dr. Martinez's potential copyright infringement. MCCCD Exhibit List # 24 (January 26, 2010 email).

20.   On January 28, 2010, MCCCD in-house-counsel Margaret McConnell discussed copyright compliance with Dr. Martinez telephonically. MCCCD Exhibit List # 25 (January 28, 2010 email).

21.   Dr. Martinez did not benefit from the multiple MCCCD copyright information sessions noted above.

22.   PC's own expert witness, Sean Garrison, testified that under the "Fair Use" doctrine, someone could lawfully copy from a copyrighted textbook without either using or purchasing the textbook.

23.   On February 5, 2010, Vice President of Academic Affairs Casandra Kakar, Interim Vice President of Administrative Services Paul DeRose, and Dr. Martinez met to discuss Dr. Martinez's alleged misuse of copyrighted materials. MCCCD Exhibit List # 26 (February 12, 2010 email).

24.   Dr. Martinez has not used any of the four sets of "lecture notes" since the Spring of 2010 when PC first raised its concerns regarding the notes.

25.   On April 15, 2010, PC Librarian Ann Roselle conducted a personalized one-on-one copyright training session with Dr. Martinez. MCCCD Exhibit List # 28 (Copyright PowerPoint Presentation). *See also*, Kakar Hearing Testimony.

26.   When Dr. Martinez met with the librarian, the librarian told Dr. Martinez that Dr. Martinez knew as much about copyright law as she did. See Martinez Hearing Testimony.

27.   Following the revocation of Dr. Martinez's copying privileges, Dr. Martinez was required to submit her copy requests to Mathematics Department Chairperson Mr. Sueyoshi so that Mr. Sueyoshi could review her materials for possible copyright violations prior to copying and distribution to students. MCCCD Exhibit List # 8 (April 2, 2010 Directive).

28.   Dr. Martinez sought and obtained a form of written permission from the publisher of the textbook, Sullivan & Sullivan's "Precalculus," to copy materials from their book after PC accused her of violating copyright law.

29.   On or around April 19, 2010, Dr. Martinez attempted to bypass the copying restrictions by having an adjunct mathematics Professor, Johnny Santellan, make 24 sets of copies of her "Lecture Notes" for distribution to her mathematics students without obtaining prior approval from the Mathematics Department Chairperson. MCCCD Exhibit List # 12 (Sueyoshi Decl., ¶9); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 223:11-224:21).

MCCCD/Martinez 00469

30.    Because Dr. Martinez did not feel she was able to obtain reliable guidance regarding copyright compliance from the District, she sought advice from a private intellectual property attorney regarding the issue, Mr. Frederic Bellamy.

31.    Mr. Bellamy reviewed the first two sets of Dr. Martinez's "lecture notes" and concluded that they did not violate copyright law because they fell under the "Fair Use" doctrine.

32.    Mr. Bellamy based his conclusion that Dr. Martinez did not violate copyright law on the opinion that the portion of material that Dr. Martinez copied from the Sullivan & Sullivan Precalculus textbook was very small, that she used the copied materials exclusively for educational purposes without any profit motive, that the content of the copied material consisted of mathematics problems that are arguably not subject to copyright in the first place, and that the small portion of the textbook that Dr. Martinez copied did not adversely impact the potential market for the textbook.

33.    At the hearing, another lawyer practicing in the area of intellectual property law, Sean Garrison, testified on behalf of PC. In contrast to Mr. Bellamy, Mr. Garrison testified at the hearing that the first three sets of Dr. Martinez's lecture notes violated copyright law.

34.    In contrast to his testimony at the hearing of November 18, 2013, in his written report Mr. Garrison concluded only that the first three sets of Dr. Martinez's lecture notes subjected the District "to a serious risk of a copyright infringement claim." See District Exhibit 6, p. 0002.

35.    MCCCD invited Dr. Martinez to a copyright workshop that was held on March 1, 2010 at PC. Dr. Martinez chose not to attend the workshop. MCCCD Exhibit List # 10 (Solley Decl., ¶11).

36.    PC President Anna Solley, on December 9, 2010, concluded that Dr. Martinez's alleged misconduct posed an unacceptable legal risk of a copyright infringement claim and imposed restrictions on Dr. Martinez's photocopying privileges. MCCCD Exhibit List # 10 (Solley Decl., ¶12).

37.    MCCCD sought a legal opinion from an outside copyright expert, attorney Sean Garrison. MCCCD Exhibit List # 10 (Solley Decl., ¶ 14); MCCCD Exhibit List # 7 (Sean Garrison October 28, 2010 Memo).

38.    According to Mr. Garrison, the third set of "lecture notes" appeared to have 13 mathematics problems copied from two other mathematics textbooks.

39.    Mr. Garrison testified that he was certain that Dr. Martinez has committed copyright infringement. See Garrison Hearing Testimony. In reaching this conclusion, Mr. Garrison reviewed thousands of pages of materials including nearly 300 pages of Dr. Martinez's lecture notes and three separate copyrighted mathematics textbooks. MCCCD Exhibit List # 6 (Sean Garrison April 19, 2013 Report); see also Garrison Hearing Testimony.

40.    In reliance upon Mr. Garrison's recommendations, PC President Anna Solley issued a December 9, 2010 directive that imposed further restrictions on Dr. Martinez's copying

MCCCD/Martinez 00470

privileges. MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 10 (Solley Decl., ¶15).

41.   The December 9, 2010 Directive prohibited Dr. Martinez from utilizing any course materials of her own creation. MCCCD Exhibit List # 9 (December 9, 2010 Directive). Instead, Dr. Martinez was required to only use course materials that are "approved by the mathematics department" or that are "available in the bookstore for sale to students and that are authored by persons other than [Dr. Martinez]." MCCCD Exhibit List # 9 (December 9, 2010 Directive).

42.   The December 9, 2010 Directive further required Dr. Martinez to submit her photocopy requests to the Mathematics Department Chair for his approval. MCCCD Exhibit List # 9 (December 9, 2010 Directive).

43.   Despite MCCCD's frequent discussions with Dr. Martinez regarding the importance of complying with copyright laws and the December 9, 2010 Directive, Dr. Martinez continued to attempt to ignore the directive. See Kakar Hearing Testimony.

44.   At the beginning of the Fall 2012 semester (on or about August 21-23, 2012), Dr. Martinez informed her students that they were not required to purchase a course textbook and that she would provide them with her own course materials in lieu of a textbook. MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

45.   In fall of 2012, Dr. Martinez sought to have her lecture notes photocopied off campus at a nearby Staples store. This practice is inconsistent with the December 9, 2010 Directive. MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

46.   Dr. Martinez did not submit her Fall 2012 materials to Mathematics Department Chairperson Mr. Sueyoshi for approval. MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

47.   Dr. Martinez made copies of her course materials at an off-campus Staples store and distributed them to students for $11 per copy. MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

48.   The $11 course material fee was paid directly to Dr. Martinez by students. MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

49.   PC accused Dr. Martinez of violating the District's "cash handling" rules by distributing these course materials to her students if the students reimbursed her for her out-of-pocket copying costs.

50.   PC subsequently claimed that Dr. Martinez violated the District's "cash handling" policies by seeking reimbursement for the copies.

51.   MCCCD's policies prohibit instructors from having "any financial interest in or receiv[ing] compensation from the sale of any unpublished instructional materials required or

MCCCD/Martinez 00471

suggested for a class that the instructor teaches." MCCCD Exhibit List # 41 (Residential Faculty Policies, 3.2.4).).

52.  Dr. Martinez failed to follow the protocol set forth in the December 9, 2010 Directive in copying her Fall 2012 course materials.  MCCCD Exhibit List # 9 (December 9, 2010 Directive); MCCCD Exhibit List # 4-5 (Martinez Depo., pp. 232:19-233:21).

53.  Dr. Martinez distributed course materials directly to students in her Fall 2012 MAT151 class.  MCCCD Exhibit List # 4-5 (Martinez Depo. pp. 232:19-233:21).

54.  The MCCCD Administration learned of Dr. Martinez's unauthorized distribution of course materials to students after one of Dr. Martinez's MAT151 students complained to Mathematics Department Chairperson Mr. Sueyoshi.  The student complained that Dr. Martinez refused to provide her with a receipt for the purchased course materials.  See Kakar Hearing Testimony.

55.  Upon learning that Dr. Martinez had distributed course materials to students allegedly in violation of MCCCD's cash handling policy, President Solley instructed Martinez to immediately issue refunds to her students via personal check.  MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.

56.  On or around October 18, 2012, President Solley and Dr. Kakar met with Dr. Martinez to explain the seriousness of Dr. Martinez's alleged cash handling violation.  MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.  In addition, President Solley and Dr. Kakar prepared a written counseling memo dated October 18 2010 for Dr. Martinez regarding her alleged violation of cash handling rules.  Dr. Martinez was provided with a copy of the October 18, 2010 counseling notice and President Solley proceeded to explain to Dr. Martinez the seriousness of the alleged cash handling violations and the requirement that Dr. Martinez issue reimbursements to her students.  MCCCD Exhibit List # 3 (October 18, 2012 Counseling Notice); see also Kakar Hearing Testimony.

57.  Several months later, on or around January 9, 2013, Dr. Kakar learned that most (if not all) students had not yet received refunds from the Dr. Martinez.  MCCCD Exhibit List # 39 (various emails regarding student refunds).  As a result, Dr. Kakar instructed Dr. Martinez to provide copies of refund checks by January 18, 2013.  MCCCD Exhibit List # 39 (various emails regarding student refunds).

58.  Dr. Martinez failed to produce a single refund check by the January 18, 2013 deadline. MCCCD Exhibit List # 39 (various emails regarding student refunds).

59.  Dr. Martinez did not think that she had violated any District rule in reference to the copies.  Therefore, she declined to follow the December 9, 2010 order because she believed she was not required to do so under any District rule.

60.  At the November 18, 2013 hearing, Dr. Martinez did not provide any explanation for her refusal to comply with the October 18, 2012 and January 9, 2013 directives to issue refunds to her students.  See Martinez Hearing Testimony.

MCCCD/Martinez 00472

61.    At the hearing Dr. Martinez testified that she had made a "mistake" and, in retrospect, should have complied with President Solley's instructions.  See Martinez Hearing Testimony.

62.    On or around August 9, 2013, MCCCD Chancellor Rufus Glasper sent Dr. Martinez a letter informing her that MCCCD was proceeding with termination proceedings. Included with this letter was a statement of charges that summarized the particular violations Dr. Martinez had been charged with (hereinafter referred to as "Statement of Charges.") MCCCD Exhibit List # 1 (Statement of Charges).

## CONCLUSIONS

63.    PC failed to carry its burden of proof relating to violation of MCCCD's cash handling rules found in MCCCD Administrative Regulations 1.17, violation of Residential Policy Manual 3.2.4 (relating to financial interests in unpublished materials), violation of U.S. Copyright Law and fair use guidelines, and violation of MCCCD Administrative Regulations 3.2.4 and 3.2.5 related to copyright regulations.

64.    Notwithstanding their education, their experience, and their good faith, Mr. Bellamy and Mr. Garrison disagreed as to whether or not Dr. Martinez violated copyright law. Therefore, it is inconclusive as to whether Dr. Martinez intentionally and/or inadvertently violated federal copyright law.

65.    It is inconclusive as to whether or not Dr. Martinez violated the "cash handling" policies of MCCCD.

66.    Dr. Martinez willfully and intentionally failed to follow instructions that were communicated to her when she failed to issue refunds to students as directed by President Solley.

67.    Dr. Martinez conceded that she never complied with President Solley's clear directive to issue refunds to her students.  Although Dr. Martinez now regrets her decision not to comply with President Solley's directive, she has never claimed that she did not understand the instructions or that the instructions were beyond the scope of management's authority.  Viewed in light of these facts, Martinez's claim that she "made a mistake" is an admission of willful insubordination.

68.    By failing to comply with President Solley's directive to issue refunds to her students, Dr. Martinez violated MCCCD Administrative Regulation 6.7.1 which prohibits the "[w]illful and intentional violation of any...MCCCD administrative regulation that affects the employee's ability to perform his or her job."

69.    By failing to comply with President Solley's directive to issue refunds to students, Dr. Martinez violated MCCCD Administrative Regulation 6.7.3 which prohibits the "[w]illful and intentional failure to perform job duties that have first been communicated to an employee and are within the employee's scope of employment."

///

MCCCD/Martinez 00473

## RECOMMENDATION

70.   We hereby recommend that the Governing Board deny President Solley's termination request and allow Dr. Martinez to continue her MCCCD employment.

71.   Per MCCCD Administrative Regulation 6.7 indicating that violation of any Employment Standards "constitutes grounds for disciplinary action, *up to* [emphasis added] and including termination," we hereby recommend that the Governing Board retain Dr. Martinez.

It is ordered so, at Mesa, Arizona, this 9th day of December, 2013.

Dr. Keith Crudup
Chairperson
On Behalf of the Hearing Committee,
Dr. Nora Reyes and Dr. Carlos Caire.

406681                                    -8-

MCCCD/Martinez 00474

**3.10.2.1.**

Not later than March 1st for all members in Probationary status. By October 1st of the fourth and fifth academic years, the Probationary Faculty member should be advised in writing, by the Department/Division Chair or appropriate Vice President, or Vice President's designee of any deficiencies which may, if uncorrected, result in non-renewal of contract, and the Probationary member shall have the remainder of the academic year to address said deficiencies.

**3.10.2.2.**

Fifth-year Probationary members will be notified in writing of any deficiencies arising after October 1st. The probationary period may be extended one additional semester for the affected Probationary member per Section 1.2. Failure of the Probationary member to correct said deficiencies in the additional semester will result in their non-renewal at the end of that semester.

**3.10.3.**

Within fourteen (14) days of the receipt of the Chancellor's note of intent to recommend nonrenewal, the member shall, upon request to the Chancellor, be orally advised of the reasons that contributed to the decision to recommend nonrenewal of employment. Such advisement shall be given by the appropriate College President within fourteen (14) days of receipt of the Faculty member's written request.

**3.10.4.**

Within fourteen (14) days of the College President's advisement of the reasons for nonrenewal, the Chancellor shall honor the Faculty member's written request to the Chancellor to confirm, in writing, the reasons given in advisement of nonrenewal. Such written confirmation shall be delivered to the member's place of residence via certified mail, registered mail, or personal service within fourteen (14) days of the Chancellor's receipt of the request.

**3.10.5.**

The process referenced here above shall be completed prior to any nonrenewal recommendation to the Governing Board, for action prior to April 30th.

**3.11. Suspension of a Faculty Member**

**3.11.1.**

Upon a written statement of charges formulated by the Chancellor, charging a Faculty member of the MCCCD, the Chancellor, or his/her designee, may immediately suspend the Faculty member and give notice of suspension. At the option of the Faculty member, the MCCCD Faculty Association President will be notified of this action.

**3.11.2.**

The notice of suspension shall be in writing and be served upon the Faculty member, personally or by U.S. (registered or certified) mail, addressed to the Faculty member at his/her place of residence as recorded in the MCCCD records.

MCCCD/Martinez 00475

### 3.11.3.

Any Faculty member who has been suspended pursuant to this Section will normally be paid his/her regular salary during the period of suspension. A suspension without pay will occur only upon advice of General Counsel. If payment is to be withheld, the Vice Chancellor of Human Resources will first consult with and advise the member and, at the option of the Faculty member, the Faculty Association President regarding the rationale for that action.

## 3.12. Administrative Leaves of Absence

### 3.12.1. Criminal Complaint

#### 3.12.1.1.

If a Faculty member is charged by criminal complaint, information, or indictment with any criminal offense, which would be cause for dismissal, the Chancellor or designee may immediately place the member on compulsory leave of absence for a period of time extending for not more than ten (10) days after the date of entry of judgment in the proceedings.

#### 3.12.1.2.

Pay during this period will be based on the same consideration as in Section 3.13.3.

### 3.12.2. Complaints—Other Than Criminal

#### 3.12.2.1.

The Vice Chancellor of Human Resources may, if it is appropriate, place a Faculty member on paid administrative leave of absence. At the option of the Faculty member, the MCCCD Faculty Association President will be advised.

#### 3.12.2.2.

Pay during this period will be based on the same consideration as in **Section 3.11.3.**

## 3.13. Faculty Member Dismissal—Probationary and Appointive

A Faculty member who is recommended, by the College President, through the Chancellor, to the Governing Board, for dismissal shall have access to the following due-process procedures.

### 3.13.1.

A written statement of charges, formulated by the College President, shall be forwarded to the Vice Chancellor of Human Resources. After review of the charges, the Vice Chancellor, in consultation with the MCCCD Legal Office, may recommend, to the Chancellor, that there exists prima facie cause for the dismissal of a Faculty member. The Chancellor shall inform the Governing Board in writing, with a copy of the recommendation being sent (U.S. certified or registered mail) to the Faculty member at his/her place of residence as recorded in the MCCCD records. The Vice Chancellor's recommendation will give notice to the Chancellor, Governing Board, and the Faculty member of the intention to formally recommend dismissal, which shall not be sooner than thirty (30) days from the date of the letter, nor later than the end of the current academic year.

MCCCD/Martinez 00476

# EXHIBIT 2

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 540-2010-02919 |

**Arizona Attorney General's Office, Civil Rights Division** — and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Cleopatria Martinez** | **(602) 678-0151** | **04-21-1948** |

| Street Address | City, State and ZIP Code |
|---|---|
| **7030 N. 21st St., Phoenix, AZ 85020** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others.  (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **PHOENIX COLLEGE** | **Unknown** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **1202 W. Thomas Rd,  Phoenix, AZ 85020** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| | **05-01-2010** |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have been working for Phoenix College since 1985 as a tenured faculty member of the Math Department. In or around August and September 2009, I voiced my concerns with management regarding the fact that no one of Hispanic origin was selected to serve from the Math Department as a member of the College's Title V advisory committee. I brought up concerns that the committee was not addressing or serving the needs of Hispanic students after receiving grant monies. I have always been an outspoken advocate for under-represented students.

On or around September 2009, management began to hyper scrutinize my work, including but not limited to the supervision of my work study students, their access of computers and passwords, the content of my classroom presentations, and even the contents of my trash can. I filed an internal EEO complaint with Human Resources on 11/9/2009. I have been subjected to discipline as a result of this hyperscrutinization when others (non-Hispanic) have engaged in similar activities with out repercussions. I was notified on or around May 2010, that I will be subjected to an "administrative evaluation" in the fall semester that could result in my termination.

I believe I have been discriminated against and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| **Jun 28, 2010**    *Cleopatria Martinez* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

# EXHIBIT 3

8-19-11



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Phoenix District Office**

3300 N. Central Avenue, Suite 690
Phoenix, AZ 85012-2504
(602) 640-5000
TTY (602) 640-5072
FAX (602) 640-5071

Charge No. 540-2010-02919

Ms. Cleopatria Martinez                          Charging Party
7030 N 21st St.
Phoenix, AZ 85020

Maricopa Community Colleges                       Respondent
Office of General Counsel
Lee R Combs
2411 W. 14th St.
Tempe, AZ 85281

## DETERMINATION

I issue the following determination on the merits of this charge.

Respondent is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, (Title VII). Timeliness and all other requirements for coverage have been met.

Charging Party alleged that Respondent discriminated and retaliated against her in violation of Title VII by not selecting anyone of Hispanic national origin to serve on Respondent's Title V advisory committee, and by subjecting her to over scrutiny of her work including; but not limited to, her supervision of work study students, the content of her classroom presentations, and the contents of her trash can. Charging Party alleged that she filed an internal EEO complaint, and later she was notified by Respondent that she would be subjected to an administrative evaluation.

I have considered all the evidence obtained during the investigation and find that there is reasonable cause to believe that Respondent retaliated against Charging Party in violation of Title VII in that Respondent accused Charging Party of violating copyright laws, restricted and suspended Charging Party's copying privileges, issued Charging Party disciplinary action, and issued Charging Party a poor evaluation threatening termination. The Commission makes no finding regarding any other allegation made in the charge.

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, I invite the parties to join with the Commission in reaching a just resolution of this matter. Disclosure of information obtained by the Commission during the conciliation process will be made only in accordance with the confidentiality provisions of Title VII and Commission Regulations.

If the Respondent wishes to accept this invitation to participate in conciliation efforts, it may do so at this time by proposing terms for a conciliation agreement. Those terms should be provided to the Commission representative, **Deborah Cantwell**, at (602) 640-5068 within 14 days of the

date of this determination. The remedies for violations of the statutes we enforce are designed to make the identified victims whole, and to provide corrective and preventative relief. These remedies may include, as appropriate, an agreement by the Respondent not to engage in unlawful employment practices, placement of identified victims in positions they would have held but for discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation(s) and the resolution of the charge.

Should the Respondent have further questions regarding the conciliation process or the conciliation terms it would like to propose, we encourage it to contact the assigned Commission representative. Should there be no response from the Respondent within 14 days, we may conclude that further conciliation efforts in this matter would be futile or non-productive.

On behalf of the Commission:

AUG 1 9 2011
_____
Date

_Rayford O. Irvin_
Rayford O. Irvin
District Director

# EXHIBIT 4

Trisha Kirtley, Esq. (013905)
**Kirtley Wells Law Office**
3800 North Central Avenue, Suite 615
Phoenix, AZ 85012
Telephone: 602-264-7424
tk@kwlolaw.com
Attorneys for Plaintiff Martinez

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Cleopatria Martinez,** | **Cause No.:** |
| **Plaintiff,** | |
| **v.** | **COMPLAINT** |
| **Maricopa County Community College District and Phoenix Community College** | |
| **Defendants.** | |

Plaintiff Cleopatria Martinez, for her complaint against Defendants, alleges as follows:

1.     This Court has jurisdiction to hear this complaint and to adjudicate the claims stated herein under 28 U.S.C. §§ 451, 1331, 1337, and 1345 to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law.  The Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2207 relating to declaratory judgments.

2.     The action is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. (Title VII) and §102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981A and 42 U.S.C §1983.

Kirtley Wells Law Office
3800 N. Central Avenue, Suite 615
Phoenix, Arizona 85012
(602) 264-7424

3.      Venue is proper in this Court because the practices complained of occurred in the District of Arizona and the Defendants can be found in the District of Arizona.

**PARTIES**

4.      Plaintiff Cleopatria Martinez, Ph.D ("Plaintiff" or "Professor Martinez"), at all relevant times, was a resident of Phoenix, Arizona and a tenured member of the faculty at Phoenix Community College ("Phoenix College").

5.      Defendant Maricopa County Community College District ("MCCCD") is organized and operating under the laws of State of Arizona and directs and controls the actions of Defendant Phoenix Community College ("Phoenix College") and its employees and agents.

6.      Phoenix Community College is an educational institution under the administration, direction and control of Defendant MCCCD.

7.      Defendant MCCCD employs greater than 500 employees.

8.      Defendant Phoenix College employs greater than 500 employees.

**GENERAL ALLEGATIONS**

9.      Defendants are covered employers as defined by Title VII of the Civil Rights Act of 1964, as amended.

10.     Plaintiff was originally hired by Defendants in 1985 and was employed as a tenured faculty member in the Math Department at Phoenix College.

11.     On June 28, 2010, Professor Martinez filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging Defendants had discriminated against her because of her national origin (Hispanic origin)  and that they had retaliated against her because she had opposed practices made unlawful by Title VII of the Civil Rights Act of 1964.

12.     Specifically, Professor Martinez alleged that over the course of years, she had voiced her concerns regarding the fact that no one from the Math Department

of Hispanic origin was selected to serve as a member of Phoenix College's Title V advisory committee. Specifically, in August/September 2009 she opined to her superiors that the College's Title V advisory committee was not using Title V grant funds to address and/or serve the needs of Hispanic students.

13.     In September 2009, almost immediately after Professor Martinez voiced her opinions and concerns, Defendants began a campaign of discrimination, harassment and retaliation against Professor Martinez that included increased scrutiny of Professor Martinez' work including but not limited to her supervision and management of work study students, unjust criticism and restrictions concerning the content of Professor Martinez' classroom presentations and reviewing the contents of her trash in an effort to find documents and things that would incriminate Professor Martinez of violations of Defendants' policies and/or the law.

14.     The discrimination, harassment and retaliation was severe and pervasive and has resulted in threats to Professor Martinez' job security and holding her to higher and/or different standards than those imposed of non-Hispanic members of the Math Department.

15.     Defendants have accused, criticized and reprimanded Professor Martinez regarding the content of her lecture notes alleging that she has violated copyright law(s) and consequently have imposed mandates that prohibit Professor Martinez from copying and distributing her lecture and classroom notes to her students.

16.     Defendants' increased scrutiny of Professor Martinez' work included physically monitoring her work and accusing Professor Martinez of directing  her work study students to grade assignments, giving work study students her HRMS password and not supervising her work study students.  Defendants removed the work study students from Professor Martinez' supervision.  The accusations were without merit and were a pretext to cover up Defendants discriminatory intent and conduct. Such actions were also retaliatory.

17.     Also as a guise for its discriminatory intent and conduct Defendants have also made false accusations against Professor Martinez regarding the use of her laptop computer, accused her of putting sensitive materials in the trash as opposed to shredding the documents and refusing to permit Professor Martinez to see the so-called sensitive materials consequently denying her the opportunity to be fully and adequately informed of the allegations against her and to be able to respond to the accusations accordingly.

18.     Amongst other things, Defendants have prohibited Professor Martinez from using their copy service without scrutiny and require that she have approval before any documents are copied for her class.

19.     Such restrictions are a guise and pretext to cover up and distract from their discriminatory intent and actions and also violate Professor Martinez' civil rights including her right of free speech, equal protection of the laws and academic freedom.

20.      On November 5, 2009, Professor Martinez filed an internal EEO complaint with Defendants' Human Resources department.

21.     Subsequent to the filing of the EEO complaint, Defendants accused Professor Martinez of violating copyright laws by including examples and excerpts from the Math textbook she used to teach her students and also accused Professor Martinez of plagiarism regarding inverse trig functions.

22.     In so doing, Defendants have ignored and denied Plaintiff the right to use documents and things under the "fair use" doctrine of copyright law.

23.     Defendants have unjustly accused Professor Martinez of violating copyright laws, insubordination and have prohibited Professor Martinez from using her own instructional materials to teach her students.

24.     Defendants' discrimination, harassment and retaliation also included convening an Administrative Evaluation in May 2010 of Professor Martinez which "could result" in her "termination."

25.     Professor Martinez received a Right to Sue Notice regarding her EEOC

charge of discrimination and this Complaint is timely filed.

26. Professor Martinez has complied with all of the administrative requirements, which are a precondition to filing suit under Title VII of the Civil Rights Act of 1964, as amended.

### COUNT I
### (Title VII – National Origin Discrimination and Harassment)

27. Plaintiff hereby repleads and incorporates all allegations set forth above.

28. Defendants have intentionally discriminated against Professor Martinez on account of her national origin, in violation of Title VII of the Civil Rights Act of 1964, by denying her equal terms, conditions and privileges of employment.

29. Professor Martinez suffered unlawful harassment because of her national origin.

30. The harassment was offensive, severe, pervasive, and intolerable.

31. Professor Martinez reported the discrimination and harassment to Defendants and therefore, Defendants were aware of and ignored the discrimination and harassment suffered by Professor Martinez in violation of their duties and responsibilities under Title VII and other relevant laws.

32. Defendants failed and/or refused to take corrective action to protect Professor Martinez from unlawful discrimination and/or harassment.

33. As a direct and proximate result of Defendants actions, Professor Martinez suffered and continues to suffer damages in amounts to be proven at trial, including embarrassment, pain and suffering, mental distress, ordeal, humiliation, emotional distress, lost opportunities for salary increases and teaching /lecturing opportunities, promotional and transfer opportunities and the ability to serve on MCCCD boards and committees.

### COUNT II
### (Title VII - Retaliation)

34. Plaintiff hereby repleads and incorporates all allegations set forth above.

Kirtley Wells Law Office
3800 N. Central Avenue, Suite 615
Phoenix, Arizona 85012
(602) 264-7424

Kirtley Wells Law Office
3800 N. Central Avenue, Suite 615
Phoenix, Arizona 85012
(602) 264-7424

35.     Plaintiff opposed the unlawful discrimination when she advocated for equal treatment and opportunities for Hispanic employees.

36.     Plaintiff also opposed discrimination by filing a charge of discrimination with the EEOC.

37.     As a direct and proximate result of Defendants retaliation, Professor Martinez has suffered damages, including injury to her reputation, unwarranted scrutiny of her work, unjust criticism of her work, unjust restriction in her ability to teach and present work to her students and will continue to suffer damages in amounts to be proven at trial.

38.     Also as a direct and proximate result of Defendants' actions, Professor Martinez suffered and continues to suffer damages in amounts to be proven at trial, including embarrassment, pain and suffering, mental distress, ordeal, humiliation, emotional distress, lost opportunities for salary increases and teaching /lecturing opportunities, promotional and transfer opportunities and ability to serve on MCCCD boards and committees.

39.     Defendants conduct was in reckless disregard and/or callous indifference of Plaintiff's federally protected rights.

40.     Plaintiff is entitled to punitive damages for Defendants illegal conduct.

## COUNT III
### (Race Discrimination, Harassment & Retaliation, 42 U.S.C. §1983)

41.     Martinez incorporates by reference each as if fully set forth herein the allegations contained in the paragraphs above.

42.     Defendants have intentionally discriminated against Professor Martinez on the account of her race and national origin and retaliated against her in violation of 42 U.S.C. § 1983 by denying to her equal terms, privileges and conditions of her employment and the right to contract and because she opposed unlawful discrimination.  Defendants also retaliated against Professor Martinez by denying her equal terms, conditions and privileges of employment, including but not limited to,

Kirtley Wells Law Office
3800 N. Central Avenue, Suite 615
Phoenix, Arizona 85012
(602) 264-7424

unjustly scrutinizing, disciplining and criticizing Professor Martinez' work under the pretext that she engaged in misconduct including insubordination and violations of the copyright laws.

43.     By virtue of her employment and excellent performance with Defendants since 1985 it cannot be successfully disputed that there were no prior incidents of the so-called insubordination and other issues for which Professor Martinez is now subject to discipline and criticism.

44.     It is undisputed that Defendants were aware and timely notified of Professor Martinez' complaints of discrimination.

45.     In treating Professor Martinez less favorably than similarly situated individuals outside of her protected class and/or in retaliating against Professor Martinez and denying her equal privileges and opportunities in her employment Defendants have not only violated Title VII but have also violated 42 U.S.C. §1983, which reads in pertinent part:

> Every person who under the color of any statue, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding or redress.

46.     Acting under the color of law, Defendants harassed, discriminated and retaliated against Professor Martinez and denied her equal protection of the laws.

47.     Professor Martinez seeks prospective relief because Defendants have discriminated against her by denying her the right to be free from discrimination and by denying her equal protection under the law because of her race, national origin and in retaliation for her opposition of their illegal actions.

Kirtley Wells Law Office
3800 N. Central Avenue, Suite 615
Phoenix, Arizona 85012
(602) 264-7424

48.     Defendants' actions were done with malice or with reckless indifference of Professor Martinez's federally protected rights warranting punitive damages.

49.     As a direct and proximate result of Defendants' discrimination, harassment and retaliation, Professor Martinez has suffered damages and continues to suffer damages in amounts to be proven at the time of trial including but not limited to her ability to receive salary increases, promotional and transfer opportunities and the ability to serve on MCCCD boards and committees.

## DEMAND FOR JURY TRIAL

50.     Plaintiff hereby requests a jury trial.

## PRAYER FOR RELIEF

**WHERFORE**, Plaintiff respectfully request that the Court:

A.     Order Defendants to make whole Plaintiff by providing compensation for past and future pecuniary and non-pecuniary losses and compensatory damages resulting from the unlawful practices complained of above, including damages for emotional pain and suffering, anguish, emotional distress, humiliation, embarrassment, anxiety, fear/fright and ordeal, in amounts to be determined at trial.

B.     Order Defendants make Plaintiff whole by providing appropriate lost wages with prejudgment interest in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of Defendants' unlawful practices and to pay Plaintiff punitive damages.

C.     Order Defendant to cease and desist from denying Plaintiff the right to include in her teaching materials documents and things that are available for use under the "fair use" doctrine of copyright law and to stop unfairly criticizing and unduly monitoring her work activities. .

D.     Order Defendants to take appropriate remedial disciplinary action against all employees who discriminated and/or retaliated against Professor Martinez.

E.      Order Defendants to implement training and monitoring programs regarding discrimination and retaliation, by an entity external to Defendants.

F.      Enter a declaratory judgment that Defendants have violated Plaintiff's right to be free from discrimination and retaliation.

G.      Grant a permanent injunction enjoining Defendants from retaliating against individuals who oppose unlawful discrimination.

H.      Order Defendants to institute and carry out policies, practices and programs which provide equal employment opportunities for qualified individuals, including those whose national origin is Venezuelan, which eradicate the effects of its past and present unlawful employment practices.

I.      Award Plaintiff her reasonable attorney's fees and costs;

J.      Award Plaintiff pre-judgment interest and post-judgment interest on any awards at the highest rate allowed by law; and

K.      Such other and further relief as this Court deems just, appropriate and proper.

DATED this 2nd day of April 2012.

KIRTLEY WELLS LAW OFFICE

By   /s/ Trisha Kirtley
     Trisha Kirtley
     3800 N. Central Ave., Ste. 615
     Phoenix, AZ  85012
     Attorney for Plaintiff Martinez

Kirtley Wells Law Office
3800 N. Central Avenue, Suite 615
Phoenix, Arizona 85012
(602) 264-7424

# EXHIBIT 5

CLOSED,STD

# U.S. District Court
## DISTRICT OF ARIZONA (Phoenix Division)
## CIVIL DOCKET FOR CASE #: 2:12-cv-00702-DGC

| | |
|---|---|
| Martinez v. Maricopa County Community College District et al | Date Filed: 04/02/2012 |
| | Date Terminated: 01/03/2014 |
| Assigned to: Judge David G Campbell | Jury Demand: Both |
| Cause: 42:2000e Job Discrimination (Employment) | Nature of Suit: 442 Civil Rights: Jobs |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Cleopatria Martinez**                    represented by    **Patricia Kirtley Wells**
                                                             Kirtley Wells Law Office
                                                             4742 N 24th St., Ste. 300
                                                             Phoenix, AZ 85016
                                                             602-264-7424
                                                             Fax: 866-743-4332
                                                             Email: tk@kwlolaw.com
                                                             *TERMINATED: 12/20/2012*
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Peter Kristofer Strojnik**
                                                             Strojnik Firm LLC
                                                             2415 E Camelback Rd., Ste. 700
                                                             Phoenix, AZ 85016
                                                             602-510-9409
                                                             Fax: 602-773-0370
                                                             Email: pstrojnik@strojniklaw.com
                                                             *TERMINATED: 08/27/2013*
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Stephen G Montoya**
                                                             Montoya Lucero & Pastor PA
                                                             3200 N Central Ave., Ste. 2550
                                                             Phoenix, AZ 85012
                                                             602-256-6718
                                                             Fax: 602-256-6667
                                                             Email: stephen@montoyalawgroup.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Maricopa County Community**      represented by    **Pavneet Singh Uppal**
**College District**                                         Fisher & Phillips LLP - Phoenix
                                                            3200 N Central Ave., Ste. 805
Phoenix, AZ 85012-2425
602-281-3400
Email: puppal@fisherphillips.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shayna Helene Balch**
Fisher & Phillips LLP - Phoenix
3200 N Central Ave., Ste. 805
Phoenix, AZ 85012-2425
602-281-3400
Email: sbalch@fisherphillips.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Phoenix Community College**      represented by    **Pavneet Singh Uppal**
*TERMINATED: 09/18/2012*                               (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shayna Helene Balch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/02/2012 | 1 | COMPLAINT. Filing fee received: $350.00, receipt number PHX 0970-6595323, filed by Cleopatria Martinez (submitted by Patricia Wells). (Attachments: # 1 Civil Cover Sheet)(REK) (Entered: 04/03/2012) |
| 04/02/2012 | 2 | SUMMONS Submitted by Cleopatria Martinez (submitted by Patricia Wells). (Attachments: # 1 Summons)(REK) (Entered: 04/03/2012) |
| 04/02/2012 | 3 | Filing fee paid, receipt number PHX 0970-6595323. This case has been assigned to the Honorable David G. Campbell. All future pleadings or documents should bear the correct case number: CV 12-00702-PHX-DGC. Notice of Availability of Magistrate Judge to Exercise Jurisdiction form attached. (REK) (Entered: 04/03/2012) |
| 04/03/2012 | 4 | Summons Issued as to Maricopa County Community College District, Phoenix Community College. (Attachments: # 1 Summons)(REK). *** IMPORTANT: When printing the summons, select "Document and stamps" or "Document and comments" for the seal to appear on the document. (Entered: 04/03/2012) |

| 06/07/2012 | 5 | NOTICE re Service Re: Waiver of Service by Cleopatria Martinez . (Wells, Patricia) (Entered: 06/07/2012) |
|---|---|---|
| 07/24/2012 | 6 | WAIVER OF SERVICE Returned Executed by Maricopa County Community College District. Maricopa County Community College District waiver sent on 7/9/2012. (Uppal, Pavneet) (Entered: 07/24/2012) |
| 09/10/2012 | 7 | STIPULATION FOR EXTENSION OF TIME TO ANSWER COMPLAINT re 1 Complaint *(First Request)* by Maricopa County Community College District, Phoenix Community College. (Attachments: # 1 Text of Proposed Order) (Uppal, Pavneet) (Entered: 09/10/2012) |
| 09/13/2012 | 8 | ORDER pursuant to 7 Stipulation For Extension of Time To Answer Complaint : All Defendants. Signed by Judge David G Campbell on 9/13/2012. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (NVO) (Entered: 09/13/2012) |
| 09/13/2012 | 9 | First MOTION to Dismiss Party Phoenix Community College by Maricopa County Community College District, Phoenix Community College. (Uppal, Pavneet) (Entered: 09/13/2012) |
| 09/14/2012 | 10 | ANSWER to 1 Complaint by Maricopa County Community College District. (Uppal, Pavneet) (Entered: 09/14/2012) |
| 09/18/2012 | 11 | ORDER that the stipulation (Doc. 9 ) is granted. Defendant Phoenix Community College is dismissed without prejudice as a Defendant in this action. All parties to bear their own costs and attorneys' fees. Signed by Judge David G Campbell on 9/18/2012.(KMG) (Entered: 09/18/2012) |
| 09/21/2012 | 12 | ORDER. Rule 16 Case Management Conference set for 10/24/2012 at 04:30 PM in Courtroom 603, 401 West Washington Street, Phoenix, AZ 85003 before Judge David G Campbell. Signed by Judge David G Campbell on 9/21/2012. (NVO) (Entered: 09/21/2012) |
| 10/19/2012 | 13 | REPORT of Rule 26(f) Planning Meeting by Cleopatria Martinez. (Wells, Patricia) (Entered: 10/19/2012) |
| 10/24/2012 | 14 | Minute Entry. Proceedings held before Judge David G Campbell: Scheduling Conference held on 10/24/2012. Discussion held. Deadlines discussed. Parties to file certification with the Court that they have discussed the expedited trial option with their clients. Certification to be filed within a week. Court will enter a scheduling order. APPEARANCES: Telephonic appearance by Patricia Kirtley Wells for Plaintiff. Pavneet Uppal and Ben Gottlieb for Defendant. (Court Reporter Patricia Lyons.) This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (TCA) (Entered: 10/25/2012) |
| 10/26/2012 | 15 | NOTICE re Defendant's Certification Regarding Expedited Trial Alternative by Maricopa County Community College District re 14 Scheduling Conference, Common Prompts (Text Only),,,, . (Uppal, Pavneet) (Entered: 10/26/2012) |
| 10/31/2012 | 16 | |

|  |  | CASE MANAGEMENT ORDER: Discovery due by 6/7/2013. Dispositive motions due by 7/5/2013.. Signed by Judge David G Campbell on 10/31/2012. (See order for additional deadlines)(TCA) (Entered: 10/31/2012) |
|---|---|---|
| 11/02/2012 | 17 | NOTICE re Plaintiff's Certification Regarding Expedited Trial Alternative by Cleopatria Martinez . (Wells, Patricia) (Entered: 11/02/2012) |
| 11/15/2012 | 18 | NOTICE re Notice of Service of Defendant's Initial Rule 26(a)(1) Disclosure Statement by Maricopa County Community College District . (Balch, Shayna) (Entered: 11/15/2012) |
| 11/20/2012 | 19 | NOTICE re Service of Plaintiff's Initial Disclosure Statement by Cleopatria Martinez . (Wells, Patricia) (Entered: 11/20/2012) |
| 11/21/2012 | 20 | MOTION for Extension of Time To Amend Complaint by Cleopatria Martinez. (Attachments: # 1 Text of Proposed Order)(Wells, Patricia) (Entered: 11/21/2012) |
| 11/29/2012 | 21 | ORDER granting 20 Motion for Extension of Time Deadline. The parties are advised that the Court will not grant further extensions to this deadline. Signed by Judge David G Campbell on 11/29/2012.(NVO) (Entered: 11/29/2012) |
| 11/29/2012 | 22 | STIPULATION *to Withdraw as Counsel* by Cleopatria Martinez. (Wells, Patricia) (Entered: 11/29/2012) |
| 11/29/2012 | 23 | Additional Attachments to Main Document re 22 Stipulation *Proposed Order* by Plaintiff Cleopatria Martinez. (Wells, Patricia) (Entered: 11/29/2012) |
| 12/11/2012 | 24 | ORDER re 22 Stipulation filed by Cleopatria Martinez. In-Court Hearing set for 12/20/2012 at 03:00 PM in Courtroom 603, 401 West Washington Street, Phoenix, AZ 85003 before Judge David G Campbell. Counsel for Plaintiff and Defendant shall appear personally at the hearing. Plaintiff, Cleopatria Martinez, is directed to personally appear at the hearing. Signed by Judge David G Campbell on 12/11/2012. (NVO) (Entered: 12/11/2012) |
| 12/17/2012 | 25 | IT IS ORDERED the motion hearing for presently set for 12/20/2012 at 3:00 PM, is RESET. THIS IS A TIME CHANGE ONLY! Motion Hearing re motion for withdrawl of counsel is set for 12/20/2012 at 10:30 AM in Courtroom 603, 401 West Washington Street, Phoenix, AZ 85003 before Judge David G Campbell. Counsel for all parties shall personally appear at the hearing. Plaintiff Martinez shall personally appear at the hearing. Ordered by Judge David G Campbell. (NVO)(This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry.) (Entered: 12/17/2012) |
| 12/20/2012 | 26 | Minute Entry for proceedings held before Judge David G Campbell: Hearing re:Stipulation to withdraw counsel Patricia Wells for plaintiff held on 12/20/2012. Court advises plaintiff of pending deadlines per the case management order. Plaintiff will proceed pro se unless she can locate new counsel. ORDERED granting 22 Stipulation to withdrawn counsel Patricia Wells<br><br>APPEARANCES: Patricia Wells for Plaintiff. Plaintiff Cleopatria Martinez; Shayna Balch for Defendant (Court Reporter Patricia Lyons.) Hearing held |

| | | 10:43 AM to 10:50 AM. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (TCA) (Entered: 12/20/2012) |
|---|---|---|
| 01/14/2013 | 27 | NOTICE re Notice of Service of Discovery Papers by Maricopa County Community College District . (Uppal, Pavneet) (Entered: 01/14/2013) |
| 02/19/2013 | 28 | ORDER A telephonic discovery conference has been set in this matter for February 20, 2013 at 3:00 p.m. Counsel for Defendants shall initiate a conference call to include pro se Plaintiff and the Court. Signed by Judge David G Campbell on 2/19/2013. (KMG) (Entered: 02/19/2013) |
| 02/20/2013 | 29 | Minute Entry for proceedings held before Judge David G Campbell: Telephone Discovery Conference held on 2/20/2013. Plaintiff to provide answers to written discovery by 2/28/2013. Court will not require that plaintiff provide list of providers or medical releases. Defendant expert disclosure deadline extended to 4/19/13; plaintiff rebuttal expert disclosures extended to 5/17/13. Remaining deadlines affirmed. |
| | | APPEARANCES: Telephonic appearance by Cleopatria Martinez Pro Se Plaintiff. Telephonic appearance by Shayna Balch for Defendant (Court Reporter Patricia Lyons.) Hearing held 3:02 PM to 3:23 PM. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (TCA) (Entered: 02/21/2013) |
| 02/21/2013 | 30 | TRANSCRIPT REQUEST by Maricopa County Community College District for proceedings held on 02/20/2013 before Judge David G. Campbell.. (Balch, Shayna) (Entered: 02/21/2013) |
| 02/28/2013 | 31 | NOTICE of Service of Discovery Responses by Cleopatria Martinez. (KMG) (Entered: 02/28/2013) |
| 03/06/2013 | 32 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Telephonic Conference Proceedings held on 2/20/2013, before Judge David G. Campbell. Court Reporter Patricia Lyons. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 3/27/2013. Redacted Transcript Deadline set for 4/8/2013. Release of Transcript Restriction set for 6/4/2013. (VAR) (Entered: 03/06/2013) |
| 03/15/2013 | 33 | NOTICE of Appearance by Peter Kristofer Strojnik on behalf of Cleopatria Martinez. (Strojnik, Peter) (Entered: 03/15/2013) |
| 04/10/2013 | 34 | MOTION Joint Motion to Extend Certain Deadlines in Scheduling Order by Cleopatria Martinez. (Attachments: # 1 Text of Proposed Order)(Strojnik, Peter) (Entered: 04/10/2013) |
| 04/17/2013 | 35 | ORDER granting 34 Motion for extension of case management dates. Discovery deadline extended to 7/26/2013; dispositive motions deadline extended to 8/30/2013. The parties are advised that the Court will not grant further extensions in this matter. Signed by Judge David G Campbell on 4/17/2013. (NVO) (Entered: 04/17/2013) |
| | | |

| 04/19/2013 | 36 | NOTICE re Service of Expert Witness Disclosure Statement by Maricopa County Community College District . (Balch, Shayna) (Entered: 04/19/2013) |
| 04/25/2013 | 37 | NOTICE re Service of Defendant's First Supplemental Disclosure Statement by Maricopa County Community College District . (Balch, Shayna) (Entered: 04/25/2013) |
| 05/22/2013 | 38 | NOTICE re Notice of Service of Maricopa County Community College District's Second Supplemental Disclosure Statement by Maricopa County Community College District . (Balch, Shayna) (Entered: 05/22/2013) |
| 06/04/2013 | 39 | NOTICE of Deposition of Cleopatria Martinez, filed by Maricopa County Community College District. (Balch, Shayna) (Entered: 06/04/2013) |
| 06/23/2013 | 40 | NOTICE of Deposition of Joe Sueyoshi, filed by Cleopatria Martinez. (Strojnik, Peter) (Entered: 06/23/2013) |
| 06/23/2013 | 41 | NOTICE of Deposition of Amalia Villegas, filed by Cleopatria Martinez. (Strojnik, Peter) (Entered: 06/23/2013) |
| 06/23/2013 | 42 | NOTICE of Deposition of Tim Bryan, filed by Cleopatria Martinez. (Strojnik, Peter) (Entered: 06/23/2013) |
| 06/23/2013 | 43 | NOTICE of Deposition of Anna Solley, filed by Cleopatria Martinez. (Strojnik, Peter) (Entered: 06/23/2013) |
| 07/11/2013 | 44 | ORDER. IT IS ORDERED that Plaintiff may take the depositions of Joe Sueyoshi, Amalia Villegas, and Tim Bryan as noticed previously. Plaintiff may take the deposition of Anna Solley on or before August 8, 2013. All other deadlines contained in the Courts Case Management Order and its amendment (Docs. 16, 35) remain in effect. Signed by Judge David G Campbell on 7/11/2013. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (DGC, nvo) (Entered: 07/11/2013) |
| 07/15/2013 | 45 | NOTICE of Deposition of Cleopatria Martinez, filed by Maricopa County Community College District. (Balch, Shayna) (Entered: 07/15/2013) |
| 07/16/2013 | 46 | NOTICE of Deposition of Cleopatria Martinez, filed by Maricopa County Community College District. (Balch, Shayna) (Entered: 07/16/2013) |
| 07/16/2013 | 47 | NOTICE of Deposition of Anna Solley, filed by Cleopatria Martinez. (Strojnik, Peter) (Entered: 07/16/2013) |
| 07/16/2013 | 48 | *MOTION for Court Order re *That Plaintiff's Alleged Violations of Defendant's Rules and Policies Is Not Relevant to This Action* by Cleopatria Martinez. (Attachments: # 1 Exhibit 1, # 2 Text of Proposed Order)(Strojnik, Peter) *Modified to correct event on 7/17/2013 (KMG). (Entered: 07/16/2013) |
| 07/17/2013 | 49 | NOTICE re Service of Plaintiff's First Supplemental Disclosure Statement by Cleopatria Martinez . (Strojnik, Peter) (Entered: 07/17/2013) |
| 07/18/2013 | 50 | * NOTICE re Service of Defendant's Third Supplemental Disclosure Statement by Maricopa County Community College District . (Balch, Shayna) * Caption indicates Third Supplemental Disclosure Statement but text states Fourth |

| | | |
|---|---|---|
| | | Supplemental Disclosure Statement; attorney noticed on 7/19/2013 (LAD). (Entered: 07/18/2013) |
| 07/18/2013 | 51 | NOTICE re Service of Defendant's Fourth Supplemental Disclosure Statement by Maricopa County Community College District . (Balch, Shayna) (Entered: 07/18/2013) |
| 07/18/2013 | 52 | ORDER. Telephonic Discovery Conference set for 7/19/2013 at 10:30 AM in Courtroom 603, 401 West Washington Street, Phoenix, AZ 85003 before Judge David G Campbell. Counsel for Plaintiff shall initiate the call to include counsel for Defendants and the Court. Signed by Judge David G Campbell on 7/18/2013. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (DGC, nvo) (Entered: 07/18/2013) |
| 07/18/2013 | 53 | ORDER denying 48 Stipulation submitted by Plaintiff. The purported "stipulation" submitted by Plaintiff's counsel is rejected because it is not signed by defense counsel and therefore is not a stipulation. Signed by Judge David G Campbell on 7-18-13. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (DGC) (Entered: 07/18/2013) |
| 07/18/2013 | 54 | MOTION For Order That Plaintiff's Alleged Violations of Defendant's Rules and Policies is Not Relevant to This Action by Cleopatria Martinez. (Attachments: # 1 Exhibit 1, # 2 Text of Proposed Order)(Strojnik, Peter) (Entered: 07/18/2013) |
| 07/18/2013 | 55 | NOTICE re Service of Discovery Papers by Maricopa County Community College District . (Balch, Shayna) (Entered: 07/18/2013) |
| 07/19/2013 | 56 | MINUTE ENTRY for proceedings held before Judge David G Campbell: Telephone Discovery Conference held on 7/19/2013. Plaintiff produced 750 documents on Wednesday, 7/17/2013 to defendant. Defendant objects late disclosure and use of the documents at depositions today and next week. Court finds based on the information today the documents were not disclosed or identified as required by Rule 26(a). Plaintiff will not be permitted to question a witness about any of the documents disclosed in the last week. Plaintiff may use any documents that were disclosed by defendant. Plaintiff is permitted to use the disclosed documents at the deposition on 8/8/2013, if plaintiff provides notice by close of business on 7/22/2013 to defendant of the documents plaintiff intends to use.<br><br>APPEARANCES: Telephonic appearance by Peter Strojnik for Plaintiff in attendance with counsel. Telephonic appearance by Shayna Balch for Defendant (Court Reporter Patricia Lyons.) Hearing held 10:40 AM to 11:09 AM. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (TCA) (Entered: 07/19/2013) |
| 07/24/2013 | 57 | NOTICE re Service of Plaintiff's Second Supplemental Disclosure Statement by Cleopatria Martinez . (Strojnik, Peter) (Entered: 07/24/2013) |
| 07/25/2013 | 58 | ORDER denying 54 motion for determination of relevancy. Plaintiff cites no authority, and the Court knows of none, for the proposition that objections to written discovery constitute an admission for purposes of litigation. The Court |

| | | |
|---|---|---|
| | | does not intend by this order to endorse boiler-plate objections, but they do not constitute a basis for admissions. Signed by Judge David G Campbell on 7-25-13. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (DGC) (Entered: 07/25/2013) |
| 07/25/2013 | 59 | MINUTE ENTRY for proceedings held before Judge David G Campbell: Telephone Discovery Conference held on 7/25/2013. Plaintiff to provide the Court by email a copy of the interrogatories with defense responses today. Court will review to decide if the numbers limit was exceeded and whether the objections and responses were sufficient or insufficient. Order to follow. Court will not extend the discovery deadline. Plaintiff to provide defendant supplemental responses by 8/2/2013. <br><br> APPEARANCES: Telephonic appearance by Peter Strojnik for Plaintiff. Telephonic appearance by Shayna Balch for Defendant (Court Reporter Patricia Lyons.) Hearing held 3:35 PM to 4:10 PM. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (TCA) (Entered: 07/25/2013) |
| 07/25/2013 | 60 | ORDER. This order will reflect decisions made after today's conference call with the parties and after reviewing Plaintiff's written discovery (Doc. 54-1). By the Court's count, Plaintiff asked about 33 interrogatories and "discrete subparts." Because Defendant elected to respond to 50, the Court will not eliminate interrogatories as exceeding the numerical limit. The Court requires Defendant to provide the following information. Inter. 5: For the bulleted violations on pages 7-8 of Doc. 54-1, Defendant shall provide the dates of these violations, a summary of the facts related to these violations, and the identities of persons who witnessed these violations. Inter. 9: Defendant shall provide the information called in 9(b). Inter. 11: Defendant shall identify and describe documented violations between June 2005 and June 2009. Inter. 14: Defendant shall provide the information called for by 14(c). Inter. 20: Defendant shall respond to this interrogatory. Inter. 21: Defendant shall respond to this interrogatory. Inter. 23: Defendant shall respond to 23(a) and (b) (but not the final paragraph of 23) with respect to paragraphs 13 and 17 of its answer. Defendant shall provide this additional information to Plaintiff by August 9, 2013. Signed by Judge David G Campbell on 7-25-13. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (DGC) (Entered: 07/25/2013) |
| 08/02/2013 | 61 | NOTICE re Plaintiff's Timely Compliance by Cleopatria Martinez re 59 Telephone Conference, Common Prompts (Text Only),,,,,,, . (Strojnik, Peter) (Entered: 08/02/2013) |
| 08/08/2013 | 62 | Second MOTION to Withdraw as Attorney by Cleopatria Martinez. (Attachments: # 1 Text of Proposed Order)(Strojnik, Peter) (Entered: 08/08/2013) |
| 08/09/2013 | 63 | RESPONSE in Opposition re 62 Second MOTION to Withdraw as Attorney filed by Cleopatria Martinez. (KMG) (Entered: 08/09/2013) |
| 08/13/2013 | 64 | ORDER re 62 Second MOTION to Withdraw as Attorney filed by Cleopatria Martinez. In-Court Hearing set for 8/27/2013 at 04:30 PM in Courtroom 603, |

| | | 401 West Washington Street, Phoenix, AZ 85003 before Judge David G Campbell. Plaintiff is required to attend this hearing in person. Counsel for Plaintiff and Defendants are required to attend this hearing in person. Counsel for Plaintiff shall provide Plaintiff with notice of this hearing and the instruction that she must attend the hearing in person on or before 8/16/2013. Signed by Judge David G Campbell on 8/13/2013. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (DGC, nvo) (Entered: 08/13/2013) |
|---|---|---|
| 08/26/2013 | 65 | IT IS ORDERED the motion hearing for 62 Motion to Withdraw as Attorney filed by Cleopatria Martinez presently set for 8/27/2013 at 4:30 PM, is RESET. THIS IS A TIME CHANGE ONLY! Motion Hearing set for 8/27/2013 at 11:00 AM in Courtroom 603, 401 West Washington Street, Phoenix, AZ 85003 before Judge David G Campbell. Plaintiff is required to attend this hearing in person. Counsel for Plaintiff and Defendants are required to attend this hearing in person. Counsel for Plaintiff shall provide Plaintiff with notice of this hearing and the instruction that she must attend the hearing in person by the close of business on 8/26/2013. (DGC, nvo)(This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry.) (Entered: 08/26/2013) |
| 08/27/2013 | 66 | MINUTE ENTRY for proceedings held before Judge David G Campbell: Motion Hearing held on 8/27/2013. Discussion held. ORDERED granting 62 Motion to Withdraw Attorney. Attorney Peter Kristofer Strojnik withdrawn as counsel of record for plaintiff. Plaintiff will have 30 days to locate new counsel or proceed representing herself. All discovery deadlines have passed. Court will extend the dispositive motion deadline to afford plaintiff an opportunity to locate new counsel. Dispositive motions due by 10/11/2013. Clerk's Office to add plaintiff as pro se to the docket so that she may receive any orders or notices that are filed in this case. Mr. Strojnik to provide plaintiff a copy of this minute entry.

APPEARANCES: Peter Strojnik for Plaintiff Cleopatria Martinez - Present. Shayna Balch for Defendant (Court Reporter Patricia Lyons.) Hearing held 11:05 AM to 11:11 AM. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (TCA) (Entered: 08/27/2013) |
| 10/11/2013 | 67 | MOTION for Leave to File Excess Pages by Maricopa County Community College District. (Attachments: # 1 Text of Proposed Order Proposed Order) (Balch, Shayna) (Entered: 10/11/2013) |
| 10/11/2013 | 68 | STATEMENT of Facts in Support of Motion for Summary Judgment by Defendant Maricopa County Community College District. (Attachments: # 1 Exhibit 1-6, # 2 Exhibit 7-9, # 3 Exhibit 10a, # 4 Exhibit 10b, # 5 Exhibit 10c, # 6 Exhibit 10d, # 7 Exhibit 11-12, # 8 Exhibit 13-20, # 9 Exhibit 21-30, # 10 Exhibit 31-40, # 11 Exhibit 41-48)(Balch, Shayna) (Entered: 10/11/2013) |
| 10/11/2013 | 69 | (Filed at doc.#71) LODGED Proposed Defendant's Notice of Motion and Motion for Summary Judgment re: 67 MOTION for Leave to File Excess Pages . Document to be filed by Clerk if Motion or Stipulation for Leave to File or Amend is granted. Filed by Maricopa County Community College District. (Balch, Shayna) Modified on 10/16/2013 (KMG). (Entered: 10/11/2013) |

| 10/16/2013 | 70 | ORDER that Defendant may exceed the presumptive seventeen (17) page limit provided by Local Rule of Civil Procedure, Rule 7.2(e) by five (5) pages with regard to its Motion for Summary Judgment. The Clerk is directed to accept for filing the document lodged as Doc. 69 on the Court's docket. Signed by Judge David G Campbell on 10/16/2013.(KMG) (Entered: 10/16/2013) |
| 10/16/2013 | 71 | NOTICE/MOTION for Summary Judgment by Maricopa County Community College District. (KMG) (Entered: 10/16/2013) |
| 11/12/2013 | 72 | MOTION for Extension of Time to File Response to Defendant's Motion for Summary Judgment by Cleopatria Martinez. (LSP) (Entered: 11/13/2013) |
| 11/18/2013 | 73 | ORDER Plaintiff's motion for extension of time (Doc. 72 ) is granted. Plaintiff shall file her response to Defendant's motion for summary judgment on or before January 3, 2014. Plaintiff is advised that the Court will not grant further extensions to this deadline. Plaintiff has stated in her motion for extension of time that she has now retained counsel in this case. Plaintiff's new counsel shall file a notice of appearance with the Clerk of Court on or before November 27, 2013. Signed by Judge David G Campbell on 11/18/2013.(KMG) (Entered: 11/18/2013) |
| 11/21/2013 | 74 | NOTICE of Appearance by Stephen G Montoya on behalf of Cleopatria Martinez. (Montoya, Stephen) (Entered: 11/21/2013) |
| 01/02/2014 | 75 | STIPULATION of Dismissal *with Prejudice* by Cleopatria Martinez. (Attachments: # 1 Text of Proposed Order)(Montoya, Stephen) (Entered: 01/02/2014) |
| 01/03/2014 | 76 | ORDER that the stipulation (Doc. 75 ) is granted. The above entitled action is dismissed with prejudice. Each party to bear its own attorneys' fees and costs. Signed by Judge David G Campbell on 1/3/2014. (KMG) (Entered: 01/03/2014) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/15/2017 15:28:57 | | |
| **PACER Login:** | rp0431:2626184:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:12-cv-00702-DGC |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

# EXHIBIT 6

1   Edmundo P. Robaina (No. 018125)
    Thomas T. Griffin (No. 022475)
2   ROBAINA & KRESIN PLLC
    5343 North 16th Street, Suite 200
3   Phoenix, Arizona 85016
    Telephone: (602) 682-6450
4   Facsimile: (602) 682-6455
    epr@robainalaw.com
5   ttg@robainalaw.com

6   Attorneys for Plaintiff Cleopatria Martinez

7           UNITED STATES DISTRICT COURT

8             DISTRICT OF ARIZONA

9   Cleopatria Martinez,

10          Plaintiff,

11   vs.

12   Maricopa County Community College
    District, *et al.*,

13          Defendants.

14

No. CV 15-01759 NVW

**DECLARATION OF EDMUNDO ROBAINA**

15       Edmundo Robaina states and declares as follows:

16       1.     I am an attorney licensed in the State of Arizona, and I make this

17 declaration in support of Plaintiff Cleopatria Martinez's Response to Defendants'

18 Motion for Attorneys' Fees and Costs.

19       2.     As background, I have been practicing law since 1997, and during the

20 majority of that time I have practiced almost exclusively employment law.

21       3.     For many years, I have represented police associations with members all

22 over the state, as well as numerous teachers, college professors, firefighters and other

23 public employees.

24       4.     I have handled dozens, if not into the hundreds, of administrative hearings

25 in jurisdictions throughout Arizona, and have fully litigated many cases in state and

26 federal courts.

27       5.     Over the years, I have received some peer recognition.  I am rated as AV

28 Preeminent by Martindale-Hubbell, and have been named in "Arizona's Finest

1  Lawyers," "Best Lawyers in America," and "Southwest Super Lawyers." I was recently
2  informed that our firm has been named by U.S. News and World Report as one of the
3  "Best Law Firms in Arizona" for 2018.

4       6.    I have spoken, and sat on several panels, regarding employment law and
5  litigation issues for organizations such as the State Bar of Arizona, the Federal Bar
6  Association, and the Society for Human Resources Management.

7       7.    I have been a board member of the Arizona Employment Lawyers
8  Association (2013-2015), and recently agreed to serve on the board of the Maricopa
9  County Bar Association Employment Law Section.

10       8.    I met with Dr. Martinez for the first time in approximately April of 2016.

11       9.    It is not my typical practice to take over cases that other attorneys have
12  filed, but it depends on the circumstances.

13       10.    In this case, one of the attorneys that represented Dr. Martinez was Tod
14  Schleier, who I believe to be one of the preeminent employment lawyers in Arizona. I
15  have used Mr. Schleier as a mediator several times, served with him on a State Bar CLE
16  panel, reviewed transcripts of one of his administrative hearings, and read his book. I
17  believe his reputation is well deserved.

18       11.    Prior to Mr. Schleier's representation, Dr. Martinez was represented by
19  Steven Montoya, who I know only by reputation to be a very smart, tenacious and
20  experienced lawyer.

21       12.    Based on my discussions with Dr. Martinez, I was satisfied that Dr.
22  Martinez's parting of ways with her previous attorneys had nothing to do with the
23  merits of her case.

24       13.    Prior to agreeing to represent Dr. Martinez, however, I reviewed several
25  documents, including the Residential Faculty Policies; the Hearing Committee Findings;
26  Mr. Montoya's letter to the Governing Board dated March 12, 2014, and the attached
27  documents; the Amended Complaint that that Mr. Schleier and Kevin Koelbel filed and
28  the attached documents; and Defendants' Answer.

14.     Although I have counseled with or represented hundreds, if not into the thousands, of public employees, I have never seen a case similar to Dr. Martinez's case.

15.     I have never seen a case in which an employer started with one process designed to allow neutral arbiters to decide the matter, but that ended with one of the parties using a completely separate provision to determine the outcome.

16.     I have also never seen a case, and could find no published cases, in which an employee was suspended without pay for such a long period of time.

17.     Over my career, I have read dozens of public employee personnel policies.

18.     Section 3.13[1] is unlike any disciplinary provision I have seen for someone who has a property right in their employment, and it contradicts another provision in the RFP Section 6.3.2 (Doc. 72-3 at 58 of 125), which provides that employees may not be suspended without "just cause."

19.     The just cause provision, as well as the appointment provisions, indicated to me that MCCCD could only suspend Dr. Martinez with full due process, and I believed, based on *Cleveland Board of Educ. v. Loundermill*, 470 U.S. 532 (1985), and other cases, that RFP 3.13, on its face, did not satisfy the requirements of due process. I also suspected that because under 3.13, suspensions were "normally" with pay; that the "without pay" provision, which required consultation with the District's General Counsel, was likely meant for emergency situations.

20.     In evaluating the case, I considered how the events unfolded: the fact that the hearing committee made binding findings that MCCCD had not proven what I believed were the main allegations – the alleged copyright violations and the alleged cash handling violations, and that the Committee had recommended that Dr. Martinez be retained; the fact that Dr. Glasper, who had recommended termination, could have, *but did not*, go to the Governing Board with his recommendation for a suspension. Had he done so, the Board would have held a hearing on the matter, in order Dr. Glasper to

---

[1] I adopt herein the Court's use of 2013-2014 Section 3.13 as the suspension policy.

1   persuade them to suspend Dr. Martinez for the draconian period of 14 months, rather

2   than a more usual period of weeks or a month.  But, instead, Dr. Glasper used 3.13.

3       21.    I also looked at the rather confusing Statement of Charges dated February

4   10, 2014.  Like Mr. Montoya and Mr. Schleier, I believed the Statement of Charges

5   noted violations of policies that were not set forth in the original Statement of Charges,

6   and to which Dr. Martinez had the right to respond and be heard by a neutral

7   decisionmaker.

8       22.    I also thought about the length of the suspension, which occurred after the

9   hearing committee recommended against termination; Dr. Glasper's not so subtle

10  suggestion in the suspension letter that Dr. Martinez could retire; the fact that Dr.

11  Martinez was not provided benefits during the term of the suspension, but had to take

12  COBRA benefits; and fact that she was granted unemployment benefits, so that at least

13  one tribunal saw the action as a termination.

14      23.    I agreed with Mr. Montoya and Messrs. Koelbel and Schleier that because

15  of the length of time and the financial impact to Dr. Martinez, the action was more in

16  the nature of a termination than a suspension, despite the fact that Dr. Martinez could,

17  and did, return in the Fall of 2015.  But I could find no analogous cases.

18      24.    During the course of the case, I took Dr. Glasper's deposition, and

19  confirmed, among other things, that he could have recommended to the Governing

20  Board that it suspend Dr. Martinez; and that in his 11 years as Chancellor, he had never

21  previously used Section 3.13 to suspend any employee without pay.

22      25.    I also took the deposition of a human resources representative who also

23  acted as a Rule 30(b)(6) witness, but was singularly unknowledgeable about the RFP

24  policies; and I took the deposition of a witness who confirmed the inaction of the

25  Governing Board in response to Mr. Montoya and Dr. Martinez's requests for review.

26      26.    My associate and I also spent a good deal of time researching due process

27  caselaw.  While we could not find cases directly on point, we found several Supreme

28  Court and Ninth Circuit cases which we believed indicated that Dr. Glasper's actions

- 4 -

1  violated Dr. Martinez's due process rights.   We also found cases from other

2  jurisdictions that we believed supported our position.

3      27.   If at any time during this case, I had concluded that Dr. Martinez's

4  intention in filing this lawsuit was to harass MCCCD, or that her position in the case

5  was unreasonable, frivolous or meritless, I would have sought to end the case, or I

6  would have ended my representation.  I never came to those conclusions.

7      I declare, under penalty of perjury, the foregoing is true to the best of my

8  knowledge.

9      EXECUTED on this 15th day of December 2017.

10

11

12                                          Edmundo Robaina

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28