1          **UNITED STATES DISTRICT COURT**

2            **FOR THE DISTRICT OF ARIZONA**

3              _____

4

**Cleopatria Martinez,**              )

5                                )   No. **CV 15-1759-PHX-NVW**

          Plaintiff,              )

6                                )

          vs.                    )   Phoenix, Arizona

7                                )   October 30, 2017

**Maricopa County Community**         )   10:36 a.m.

8  **College District, et al.,**      )

                                 )

9            Defendants.          )

_____ )

10

11

      **BEFORE:   THE HONORABLE NEIL V. WAKE, JUDGE**

12

          **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

13              (*Motion Hearing*)

14  **APPEARANCES:**

For the Plaintiff:

15        ROBAINA & KRESIN PLLC

        By:  **Edmundo P. Robaina, Esq.**

16        5343 North 16th Street, Suite 200

        Phoenix, Arizona 85016

17

For the Defendant:

18        FISHER & PHILLIPS LLP - Phoenix

        By:  **Pavneet Singh Uppal, Esq.**

19        By:  **Shayna H. Balch, Esq.**

        3200 North Central Avenue, Suite 805

20        Phoenix, Arizona 85012

21  Official Court Reporter:

Laurie A. Adams, RMR, CRR

22  Sandra Day O'Connor U.S. Courthouse, Suite 312

401 West Washington Street, Spc 43

23  Phoenix, Arizona 85003-2151

(602) 322-7256

24

Proceedings Reported by Stenographic Court Reporter

25  Transcript Prepared by Computer-Aided Transcription

```
1                    P R O C E E D I N G S

2            THE COURTROOM DEPUTY:  This is Case Number CV

3    15-1759, Martinez v. Maricopa County Community College

4    District, et al., before the Court for oral argument.  Would

5    the parties please announce for the record.                    10:36AM

6            MR. ROBAINA:  Good morning, Your Honor.  Edmundo

7    Robaina on behalf of Cleopatria Martinez.

8            MR. UPPAL:  Your Honor, good morning.  Pavneet Singh

9    Uppal of Fisher & Phillips for the defendants.  With me is my

10   colleague, Shannon Balch.                                       10:37AM

11           THE COURT:  All right.  Good morning, counsel.  I will

12   hear whatever you want to talk about but first I have some

13   questions.

14           Mr. Robaina, have you pleaded a claim under state law?

15           MR. ROBAINA:  No, sir.                                  10:37AM

16           THE COURT:  So you have only pleaded the federal due

17   process claim, correct?

18           MR. ROBAINA:  Correct.

19           THE COURT:  I'm not suggesting this, but I want to

20   make it clear, are you arguing that it's a violation of federal  10:38AM

21   due process of law to fail to follow state procedural law?  I

22   don't think you are, but if you are, tell me.

23           MR. ROBAINA:  No, sir.  I'm --

24           THE COURT:  All right.  Now, the federal due process

25   inquiry goes to the adequacy and fairness of the procedure in   10:38AM
```

1   light of the particular issue in inquiry, and it's a flexible

2   set of standards.  And I, again, I think I know the answer to

3   this, but with respect to your claim of deprivation of property

4   in violation of federal due process of law, let me take it a

5   step at a time.  With respect to the dismissal proceedings,                10:39AM

6   what procedure or process was missing that is necessary for a

7   minimally adequate federal due process of law?

8           MR. ROBAINA:  In the dismissal proceeding, nothing.

9           THE COURT:  Okay.  Now, with respect to the suspension

10  proceeding, what procedure or procedures was missing that is                10:39AM

11  necessary to federally minimally adequate due process of law?

12          MR. ROBAINA:  There's -- I can answer that in three

13  ways.

14          THE COURT:  Why don't you come up to the podium.

15          MR. ROBAINA:  Your Honor, the provision in the                      10:39AM

16  residential faculty policies basically allows the chancellor --

17          THE COURT:  Do me a favor.  Give me a checklist, then

18  you can go back and explain it.  What procedures were missing

19  that federal due process of law requires as a constitutional

20  minimum for the context of this inquiry?                                    10:40AM

21          MR. ROBAINA:  The procedure itself has no appeal

22  right.  It also requires federal due process.

23          THE COURT:  What's the first one?  No appeal right,

24  what, to the Board?

25          MR. ROBAINA:  No appeal right to the Board.                         10:40AM

1          THE COURT:  What else?

2          MR. ROBAINA:  It also, federal due process requires a

3    fair and neutral arbiter.

4          THE COURT:  What else?

5          MR. ROBAINA:  If the process that was done in this          10:40AM

6    case were allowed, that means that the disciplinary procedure

7    for terminations would be rendered meaningless because in this

8    case, the chancellor, the hearing committee made a binding

9    finding of fact and law on this case and recommended to the

10   Board that the -- Dr. Martinez not be terminated.          10:41AM

11         THE COURT:  And the chancellor accepted the finding

12   and accepted the recommendation?

13         MR. ROBAINA:  Correct, and could have requested to the

14   board that a suspension be given to Dr. Martinez.

15         THE COURT:  In that proceeding?          10:41AM

16         MR. ROBAINA:  In that proceeding.

17         THE COURT:  Actually, if you look at the actual text

18   of -- I'm going to -- it's the faculty policy but I'm used to

19   calling it rules and regulations, 3.15 says that if the

20   chancellor had taken it further, the Board would, quote, hear          10:41AM

21   arguments regarding the chancellor's and the hearing

22   committee's recommendation regarding dismissal.

23         MR. ROBAINA:  Understood.

24         THE COURT:  And then it says the Board, quote, shall

25   render a final decision regarding retention or dismissal.          10:42AM

1    That's what it says.

2         MR. ROBAINA:  Yes, sir.

3         THE COURT:  Where does it say that if the chancellor

4    wishes to pursue a lesser discipline he has to proceed -- make

5    a recommended -- make that recommendation and has to do it                    10:42AM

6    within the dismissal proceeding?  Where does it say that?

7    Because I find it nowhere in any text.

8         MR. ROBAINA:  It doesn't say it.  In deposition I

9    asked Chancellor Glasper, could you have, in that proceeding,

10   requested that the Board suspend Dr. Martinez instead of                      10:42AM

11   terminate her?  And he said that yes, he could have.

12        THE COURT:  So what?  How is that a violation of

13   federal due process of law?

14        MR. ROBAINA:  That is not a violation of federal due

15   process of law.  But what I'm saying is he could have requested  10:42AM

16   it but instead he did not.

17        THE COURT:  So what?

18        MR. ROBAINA:  He used a procedure.

19        THE COURT:  How does federal due process of law

20   require him to pursue a review and dismissal proceeding that                  10:43AM

21   the text of the regulation does not require, actually

22   doesn't -- I mean, it doesn't say he could do it but he could

23   ask for anything.  Why does federal due processes of law

24   require him to do what the regulation itself does not require

25   him to do?  And if federal due process did require him to do                  10:43AM

1  it, how would that violate due process of law?  That's just a

2  violation of state law.

3         MR. ROBAINA:  Judge, let me explain.

4         THE COURT:  Go right ahead.

5         MR. ROBAINA:  If I may.  The state law gives you a          10:43AM

6  property interest --

7         THE COURT:  I know that.  We're beyond that.

8         MR. ROBAINA:  Okay.  But the state law is not the

9  final say on whether or not it violates federal due process.

10 Federal due process requires a fair and impartial hearing.      10:43AM

11        THE COURT:  Right now I'm talking about your third

12 point, so let's not slip around.  All right?

13        MR. ROBAINA:  Okay.

14        THE COURT:  Your third point was even though the

15 regulations do not require him to make any recommendation for    10:44AM

16 approval of the Board for lesser discipline, somehow that I

17 have not been able to figure out, it violates federal due

18 process of law for him not to do what state law does not

19 require him to do.

20        MR. ROBAINA:  No.  It doesn't violate federal due         10:44AM

21 process for him not to request the suspension, but it violates

22 federal due process for him to suspend her.

23        THE COURT:  That's like saying I prefer to win my

24 lawsuit.  I need more explanation than that.

25        MR. ROBAINA:  Because he is a party to the case and        10:44AM

1    the disciplinary --

2         THE COURT:  Three different things.  I'm talking about

3    three different things.  Let's not slip around between the

4    three.  The third thing I'm talking about now is your assertion

5    that because somehow because he said he could have asked the        10:44AM

6    Board for approval of lesser discipline the federal

7    constitution steps in and requires him to do that even though

8    the text of the state procedure does not require it.  Explain

9    that to me, and don't slip around to neutral arbitrators and no

10   appeal to the Board.  That's from the suspension proceeding.       10:45AM

11        MR. ROBAINA:  Well, I let me be clear.  The fact that

12   he does not request the Board to suspend her is not a violation

13   of due process in itself.

14        THE COURT:  Okay.  Thank you.  I think we have

15   narrowed our discussion down because in your brief, you did       10:45AM

16   acknowledge that when we're discussing liberty and property in

17   the termination proceeding, there was no deprivation of liberty

18   in violation of due process law.  Now you are acknowledging

19   there was no deprivation of property either in violation of

20   federal due process law for that third reason.  You have your      10:45AM

21   first two reasons, but for that third reason the chancellor did

22   not seek or make a recommendation to seek approval of the

23   Board.

24        So I think I'm going to hold you to that concession.

25   Let's go back to your other two arguments.  One is there's no      10:46AM

1    appeal to the Board and neutral arbitrator.  Tell me about your

2    argument about -- with respect to the suspension, it is clear

3    in the state procedure there is no right to appeal to the

4    board.  There was -- more concretely, there is no need for

5    board approval for that discipline or any discipline short of          10:46AM

6    termination.  It doesn't require it.

7            How is that a denial of federal due process of law

8    when you had a decision making process, an inquiry where the

9    chancellor adopted the full and rich procedures of the

10   termination commission and adopted their finding of fact that          10:46AM

11   she was insubordinate?  How is it that one has a federal due

12   process right to have the board necessarily approve that

13   suspension?  Now, I understand that even though the board

14   didn't have to look at that, didn't have to approve it, she

15   could ask the board to step in.  That's different.  I want to          10:47AM

16   know how there is a federal due process right to have the board

17   ratify her suspension decision.

18           MR. ROBAINA:  Because the rules themselves, the

19   faculty rules, provide that all discipline, including

20   suspensions, terminations, have to have just cause.                    10:47AM

21           THE COURT:  That's different.

22           MR. ROBAINA:  No, sir.

23           THE COURT:  If you want to talk about just cause,

24   there is nothing in your briefing about lack of just cause.

25   That's a substantive issue, and your client acknowledged she           10:47AM

1   regretted having not complied with the order so there's no

2   briefing here about lack of just cause.  Your argument is

3   solely that there was not constitutionally minimally adequate

4   procedure.

5          MR. ROBAINA:  If I may, because of the just cause                10:48AM

6   requirement, she has a property interest.

7          THE COURT:  I have already told you we're past that.

8   You don't have to talk about that.

9          MR. ROBAINA:  The property interest in her employment

10  means that she has to have adequate due process of law.  Due        10:48AM

11  process requires, for the suspension as well as the

12  termination, a pre-disciplinary hearing.

13         THE COURT:  That was done.  All this was done.

14         MR. ROBAINA:  It was done but it also requires that

15  she go to a neutral arbiter of the decision.                        10:48AM

16         THE COURT:  No.  No.  Don't slip around.  We're

17  talking about your due process argument that she has a federal

18  right to approval by the Board.  That's different from your

19  argument about neutral decision makers.  So don't slip around

20  between issues.  I'm talking about your claim of a federal          10:49AM

21  constitutional right to have the Board review and approve her

22  suspension.  I'm trying to understand what that is, and I

23  haven't heard anything yet.  You did slip in to say, well, they

24  have to have cause.  But there's no challenge in this, in your

25  briefs, to the cause for -- actually it's just a challenge to       10:49AM

 1  the adequacy of the process.  I have read the briefs.  There's

 2  nothing in there and in any of this.  It's completely obvious

 3  that there was cause for discipline because she was

 4  insubordinate as found by the finding decision of the hearing

 5  committee in the prior proceeding.                                  10:49AM

 6        So tell me how cause is even an issue here when you

 7  didn't plead it and you didn't brief it.

 8        MR. ROBAINA:  All I meant to suggest with that, Your

 9  Honor, was that because of the cause she has a property

10  interest.                                                           10:49AM

11        THE COURT:  I told you three times we're past that.  I

12  understand that.  Move on.  We're talking now about the

13  procedure.

14        MR. ROBAINA:  The final determiner must be someone who

15  is independent.                                                     10:50AM

16        THE COURT:  I'm not going there.  You keep slipping

17  around.  Are we in agreement now that there is, in fact, upon

18  further reflection, no federal constitutional due process right

19  to have the suspension reviewed and approved by the Board?  Is

20  that past us now?  Are you acknowledging that, too?                 10:50AM

21        MR. ROBAINA:  There is a -- if it's not the Board then

22  I don't know who else in that situation could be the neutral

23  arbiter.

24        THE COURT:  I'm not talking about neutral arbiter.  I

25  will come to that third.  Don't slip around.  Your brief, and I    10:50AM

1    thought you were saying, that because she didn't get -- because

2    the state procedure did not require board approval for the

3    discipline somehow it violates due process of law for that to

4    be done at the chancellor level.

5           MR. ROBAINA:  Because the state procedure does not          10:51AM

6    require any review that violates due process of law.

7           THE COURT:  Well, let's focus on that.  A decision was

8    made, first of all, here, the chancellor was drawing upon the

9    prior proceedings that were richly adequate and fair with

10   respect to termination in which they found that she was guilty   10:51AM

11   of insubordination and the commissioner -- the chancellor

12   accepted that.  He gave her the further notice.  She had her

13   chance to talk with her.  She had a chance to talk with other

14   people.  She had her chance to be heard by them.  I think

15   didn't she go and talk to the general counsel, too?             10:51AM

16          MR. ROBAINA:  To the vice chancellor.

17          THE COURT:  Vice-chancellor.  They all heard her

18   argument.  And it appears to me there's nothing in this brief

19   that suggests her argument was I didn't do that.  I was not

20   insubordinate.  Her argument was don't give me this discipline.  10:52AM

21   It's a discretionary matter.  Give me less or don't give me

22   anything.  That's different from saying I wasn't insubordinate.

23   It's the difference in me saying the light was green when I

24   entered the intersection as opposed to saying the light was red

25   when I entered the intersection.  Nowhere in your briefs does    10:52AM

1    she dispute she was insubordinate.  If there is, I will give

2    you a minute to look at the briefs and point it out to me where

3    it is.

4             So they had procedure.  The adopted procedure, the

5    suspension or the termination commission was imminently fair          10:52AM

6    and adequate.  By the way, due process does not require that

7    decisions be right.  They have to be fair and adequate.  They

8    don't have to be right.  And so she talked to people.  She had

9    the chance to talk further.  The chancellor decided, okay, I

10   have heard you.  Other people have heard you.  You haven't          10:52AM

11   changed my mind.  Why is that not minimally adequate federal

12   due process of law without review higher up?

13            MR. ROBAINA:  Because the other people that she spoke

14   with could not change the chancellor's decision.

15            THE COURT:  But there is utterly contrary -- there's       10:53AM

16   no basis whatever in federal due process law.  You understand

17   in the early days of the Republic in the 19th Century, federal

18   courts, in criminal cases, when they imposed sentence,

19   including death, there was no right to appeal.  That passed

20   muster.                                                            10:53AM

21            So I'm challenging you to tell me where is it, if the

22   process is fair and adequate, you have to have a higher appeal.

23   I'm not aware of any such principle in federal constitutional

24   law and I challenge you to give me any case that says that.

25            MR. ROBAINA:  That you have to have a higher appeal?       10:54AM

1       THE COURT:  Yes.  Take a minute if you want to look at

2 your brief.  It's nowhere in your briefs.  It's nowhere in

3 federal constitutional law, either.

4       MR. ROBAINA:  What I can say is the federal

5 constitutional law requires the part that they gave her, the   10:54AM

6 meetings with Dr. Solley, the meetings, the pre-disciplinary

7 meetings, that's the first half of due process requirements.

8 The second half of due process requirement requires a hearing,

9 a full evidentiary hearing with a neutral arbiter.

10       THE COURT:  No, it doesn't.  Well, first it doesn't   10:54AM

11 require -- you know, if you want extreme end of the spectrum

12 the Supreme Court has held that we have frequent issues about

13 prisoner's discipline.  And all the due process requires when a

14 prisoner is disciplined is for the prison official to listen to

15 him, hear him say he didn't do it.  That's all that's required.   10:55AM

16 The measure of procedure is flexible and depends on what's

17 there, and the notion that you have to have a full hearing --

18 by the way, in this case, the chancellor went by the full

19 evidentiary hearing that found that she was insubordinate and

20 you have already told me there was nothing constitutionally   10:55AM

21 inadequate about that procedure or that binding finding.  So I

22 challenge you to tell me how it is that she is entitled to a

23 second hearing when the first hearing was fully adequate and

24 went against her as to that finding.

25       And frankly, even disciplinary matters don't -- you   10:55AM

1   know, educational institutions and government bodies, they

2   often do have these full blown procedures for employee

3   discipline.  They are not constitutionally required.  Private

4   employers don't have to do that.  Now, actually, it's a bad

5   analogy because private employers usually are not subject to          10:56AM

6   due process.  But the question is what procedure is needed and

7   I challenge you to give me any authority that says that a full

8   blown evidentiary hearing as opposed to talking it through,

9   hearing, taking a look at what there was is constitutionally

10  required much less as required twice.  Tell me.                       10:56AM

11          MR. ROBAINA:  I believe the *Loudermill* case says that

12  in a termination hearing of an employee you have to have both

13  pre-disciplinary, minimal pre-disciplinary hearings as well as

14  a full blown post-disciplinary hearing.

15          THE COURT:  I may not be remembering that case but           10:57AM

16  what I do remember from your briefs is that in the usual or the

17  common situation where there's immediate discipline, it's

18  enough to give notice up front and post-disciplinary procedure

19  at the back end to see if you want to change your mind.  That's

20  what I remember but I don't remember anything else.                   10:57AM

21          MR. ROBAINA:  The *Walker* case, Your Honor, also says

22  that a pre-disciplinary hearing need not be a full adversarial

23  hearing, and the failure to provide an impartial decision-maker

24  at the pre-disciplinary stage need not create liability so long

25  as the employee is provided a full hearing and --                    10:57AM

1      THE COURT:  See, now you are slipping around again.

2  You keep slipping around to impartial decision maker.  We're

3  going to talk about that later.  Right now I'm trying to figure

4  out why due process requires, even with a neutral decision

5  maker, how does due process require a full evidentiary hearing      10:58AM

6  for employee discipline as opposed to informal procedures, talk

7  to the employee, look into what happened, talking to the other

8  faculty member, looking at the records of what happened, the

9  employee's own acknowledgement she had not refunded the money

10  that she had been ordered to do.  Why does due process require      10:58AM

11  more than that?

12      MR. ROBAINA:  It does, Your Honor, absolutely.

13      THE COURT:  Give me a case.

14      MR. ROBAINA:  *Loudermill*, *Walker*, *Clements* case, which

15  is also cited in my brief, *Clements versus Airport Authority*,      10:58AM

16  69 F.3d 321.

17      THE COURT:  If they are in your brief I have looked at

18  them and you don't need to give me the cites again.

19      All right.  Now, she had that here.  She had a full

20  blown evidentiary hearing with witnesses, findings of fact by a      10:58AM

21  neutral panel that found that she had been insubordinate, that

22  was, under that procedure, deemed to be binding.  But even if

23  it's not deemed to be binding, the chancellor drew upon it.

24  How is it that she's entitled to a second full blown

25  evidentiary hearing to overturn the first one under federal due      10:59AM

1    process of law?  That you give me no example of.

2          MR. ROBAINA:  It's not that she's entitled to a full

3    evidentiary hearing.  What she's entitled to -- I don't want to

4    antagonize you.  It kind of bleeds into --

5          THE COURT:  It's okay.  I get animated.  You can get          10:59AM

6    animated, too.

7          MR. ROBAINA:  They bleed into each other.  What she's

8    entitled to is a neutral arbiter.

9          THE COURT:  We'll talk about that in a minute.  You

10   don't get to slip around from one thought to another.          10:59AM

11         MR. ROBAINA:  She's not entitled necessarily to a

12   second hearing.  It's not necessary because there were binding

13   findings of fact and conclusions of law in the first hearing.

14   And as you have said earlier, it's a -- the due process is not

15   a sort of a stagnant thing.  You can look at it.  So I'm not          11:00AM

16   suggesting she needs a second hearing.

17         THE COURT:  I hold you to that concession.

18         MR. ROBAINA:  Okay.

19         THE COURT:  That's passed us.  You have acknowledged

20   that.  That's no longer an issue.  The third issue is there was          11:00AM

21   a biased decision maker.

22         MR. ROBAINA:  My third issue is that she's entitled to

23   a neutral decision maker.  She had a neutral decision maker

24   with respect to the findings of facts and conclusions of law.

25   But a neutral decision maker did not make the final decision          11:00AM

1  with regard to the discipline.

2      THE COURT:  Well, the discretionary aspect of what

3  discipline to impose for the finding of misconduct.

4      MR. ROBAINA:  But that, Your Honor, also requires a

5  neutral decision maker.  It's not that because they found that     11:00AM

6  she did one of the three or four things that they allege that

7  now they get to impose whatever discipline they want.

8      THE COURT:  Before we get into the merits of that,

9  let's go to the threshold, the background issue there.  You did

10  not plead that in your complaint, and it's no issue here.  It     11:01AM

11  was raised for the first time in the Motion for Summary

12  Judgment and, therefore, it's not properly before the Court.  I

13  read your reply brief which you quoted the passages in your

14  claim you said raises -- they didn't come close to raising that

15  issue.                                                            11:01AM

16      MR. ROBAINA:  Okay.

17      THE COURT:  So that is therefore not presented, it's

18  forfeited, and it's not a basis to overturn your case.

19      MR. ROBAINA:  Okay.  Then let's move to the second

20  reason.  In the notice of suspension letter, they raised a new   11:01AM

21  issue.

22      THE COURT:  Actually, hold on a minute.  I did want to

23  explore further your argument that there was not a neutral

24  decision maker.  It is, as you acknowledge, and I hold you to,

25  that is forfeited because it's not pleaded and therefore it's    11:02AM

1    not properly before the Court.  However, let's address whether

2    there was any bias.  Obviously, part of the problem is there is

3    no actual evidence of bias by this decision maker, nor was

4    there an opportunity for the other side to present evidence of

5    lack of bias because you didn't plead it.  It wasn't part of          11:02AM

6    the lawsuit.  But when you look at what's in your brief, I

7    don't see anything there other than saying, well, if you are

8    involved in a disciplinary proceeding once it's subject to

9    review by another independent group, as is very common in civil

10   service matters, you can't make the final decision because you        11:02AM

11   are automatically biased.  That seems to be your argument.

12            MR. ROBAINA:  That is not my argument, Your Honor.

13   It's not as if you are automatically biased if you are in the

14   same agency.  That's the *Withrow* case.  The Courts said it's

15   not automatic, but you look at the cases and you look at the          11:03AM

16   cases since *Withrow* and you see numerous cases, including a

17   case this year from the Arizona Supreme Court, that basically

18   says if you are involved in a decision to --

19            THE COURT:  Which case is that?

20            MR. ROBAINA:  It's *Horne v* --                              11:03AM

21            THE COURT:  I know that case.  Has nothing to do with

22   this.

23            MR. ROBAINA:  Well, if you are involved in the

24   decision to discipline.

25            THE COURT:  Right.                                           11:03AM

1          MR. ROBAINA:  You can't be the arbiter of your own

2     case.

3          THE COURT:  That necessarily means that any supervisor

4     involved with employee direction or discipline is disqualified

5     from making the final decision if, in fact, there is a                11:03AM

6     procedure where other people, another body has authority to

7     make findings of fact and those Findings of Facts are accepted.

8     It's hard for me to see how this means anything except that.

9     There is automatic bias because you started the discipline

10    process.  The employee invoked her right to have a neutral look     11:04AM

11    at it and then now can't come back to her.  Somebody else has

12    to make the decision.  Again, give me a case that holds that.

13    I have looked at the cases cited in your briefs and none of

14    them are factually on point.

15         MR. ROBAINA:  Your Honor, what the cases hold is that         11:04AM

16    if you develop a will to win, that's one way, that's the type

17    of bias that the Courts don't want.

18         THE COURT:  There's no such evidence here.

19         MR. ROBAINA:  It's implied.

20         THE COURT:  It's implied because it's automatic               11:04AM

21    because she started the process.

22         MR. ROBAINA:  If you are involved in the investigation

23    and the prosecution of a case and you are also the adjudicator

24    of the case, that's also unfair and a problem.  There are

25    numerous cases that say that.                                      11:04AM

1      THE COURT:  So what you are saying then is that when

2  you have issues of underlying, let's call it tenure, the

3  federal due process prevents the person who initiated the

4  process or the discipline from making the final decision even

5  when that decision is identical to the decision of the                11:05AM

6  reviewing body that there was misconduct.

7      MR. ROBAINA:  That's not -- but that's only one-half

8  of the equation, Your Honor.  If they decided that there was

9  this much misconduct and then the other question is, what's the

10  reasonable punishment for it.  And that's a decision that a       11:05AM

11  neutral arbiter has to make.

12      THE COURT:  By the way, the record here is clear, the

13  chancellor talked with the hearing committee, and they told

14  them that dismissal was too hard but suspension without pay

15  would be okay.  It is uncontroverted in the record.                11:05AM

16      MR. ROBAINA:  That is incorrect, Your Honor.  It is

17  controverted in the record.  That's hearsay.

18      THE COURT:  It's not controverted and it's not hearsay

19  because that's the present state of mind of those people

20  communicating to the commission what their state of mind was.    11:06AM

21  You could have looked into that.  You could have taken

22  depositions.  You could have gone in and said, did they say

23  that?  You didn't do any of that.

24      So what we have here is the chancellor's statement of

25  his information about current state of mind, and that's not     11:06AM

hearsay.  In any event, you had the chance to controvert that

and you did not.  Even apart from -- it's really not necessary

for the hearing committee to also say and we think this other

lesser discipline would be appropriate although they did.  But

it's not necessary.  The question is --                          11:06AM

        MR. ROBAINA:  Your Honor, even the chancellor doesn't

claim that the hearing committee said that it would be a

14-month suspension.

        THE COURT:  Actually, I read what's there and it is

uncontroverted that they said an unpaid suspension would be     11:07AM

appropriate.  Now, again, they don't have to have said that but

they did.

        Go ahead.  Now, actually, with respect to the neutral

arbiter, I guess your argument is the person who initiates

discipline can never be the one who finishes them.  I looked at 11:07AM

all your cases.  I will take another look.

        MR. ROBAINA:  I didn't say the person who initiates

can never be -- that's your words, Your Honor.  I didn't say

the person who initiates can never be an arbiter.  What I said

was that the person who is involved in basically in prosecuting 11:07AM

a case and in initiating a case, and is a party to the case,

cannot be the same person that decides the matter.

        THE COURT:  All right.  Now, I think we covered the

three -- you listed your three federal due process

deficiencies.  We have resolved that they are all either       11:08AM

1    withdrawn or with respect to the neutral arbitrator issue it

2    was not pleaded, therefore, it's foregone.  You started to say

3    something else, a different issue.  So I want to hear whatever

4    you have to say.

5           MR. ROBAINA:  The other reason that's completely                 11:08AM

6    inappropriate and unfair is because under the state

7    proceedings, under state law, the review that you get is what

8    they call substantial evidence review, which means that if

9    there's any evidence to support the factual findings of the

10   arbiter, basically, then the courts in the state proceedings              11:08AM

11   will --

12          THE COURT:  I don't recall that in your briefs, but it

13   doesn't surprise me that that's consistent with my general

14   understanding of American Standards of Judicial Review of

15   Agency Action, a subject on which I wrote the book.                      11:08AM

16          MR. ROBAINA:  Which makes it very important that the

17   person that makes the decision does not have a potential bias.

18          THE COURT:  No substantial evidence means that there's

19   any evidence that any reasonable trier of fact could believe

20   the reviewing -- well, it's often courts, the reviewing court           11:09AM

21   is bound by that decision.

22          MR. ROBAINA:  Correct.

23          THE COURT:  I'm not sure that would apply to this kind

24   of discipline by the Board.  Well, actually, it would.

25          MR. ROBAINA:  It would.                                          11:09AM

1        THE COURT:  Because it says the finding is binding.

2   If it didn't have any evidence it could not be binding.  So I

3   think you are right about that.

4        MR. ROBAINA:  What that means, though, for due process

5   purposes is it really requires you to have a fair arbiter in                11:09AM

6   this thing.  It can't be a party.

7        THE COURT:  We have already covered that.

8        MR. ROBAINA:  That's so clear in the law.

9        THE COURT:  You started to mention something.  I

10  interrupted you.  So was there another issue that you are                   11:09AM

11  arguing as a basis to win your lawsuit other than these three?

12       MR. ROBAINA:  I want to go back to something, Your

13  Honor, because I don't mean to imply that I agree with your

14  premise that there's nothing in the complaint that she raised

15  these issues.  I didn't file the complaint.  I read the                     11:10AM

16  complaint.

17       THE COURT:  The amended complaint is the operative --

18       MR. ROBAINA:  Amended complaint.

19       THE COURT:  I have read every line you quoted in your

20  statement of facts for that, and nothing in there makes a claim            11:10AM

21  of unfair decision maker.  It's just not there.  Read me --

22  take a minute.  We have all the time you need.  Go through your

23  papers and read me the sentence or sentences in your complaint

24  that raises that issue.

25       MR. ROBAINA:  "Notwithstanding the hearing committee's                 11:11AM

```
 1    unanimous conclusion that the district failed to satisfy its
 2    burden of proof and that Dr. Martinez should be allowed to
 3    continue her employment, Chancellor Glasper unilaterally
 4    discontinued her employment by suspending Dr. Martinez's
 5    employment on March 7, 2014, without pay for 14 and-a-half      11:11AM
 6    months from March 1, 2014 to May 2015.  Chancellor Glasper's
 7    rejection of the hearing committee's factual finding" --
 8             THE COURT:  Don't read so fast.
 9             MR. ROBAINA:  I'm sorry.
10             THE COURT:  I'm looking for the document.             11:11AM
11             MR. ROBAINA:  Page 7.
12             THE COURT:  What document number?
13             MR. ROBAINA:  Page 7 of Document 88.  I'm sorry.  I
14    didn't mean to read so fast.
15             THE COURT:  Part of the problem here is you all filed 11:11AM
16    cross -- simultaneous cross motions for summary judgment, which
17    is a gigantic waste of resources.  But it also gets confusing.
18    So Document 88.
19             MR. ROBAINA:  At Page 7.
20             THE COURT:  It's your brief.  I'm looking for language 11:12AM
21    in your amended complaint.  I know in your brief you wanted to
22    have this issue decided.
23             MR. ROBAINA:  It cites language from the amended
24    complaint.
25             THE COURT:  Okay.  Well, actually, I did -- hold on a  11:12AM
```

1    minute.  Okay.  That's where I read it.  It's on Page 7 of your

2    brief.  That's right.

3           So read me the language there that raises this issue

4    of biased decision maker.

5           MR. ROBAINA:  Chancellor Glasper's -- Paragraph 30,          11:13AM

6    "Chancellor's Glasper's rejection of the hearing committee's

7    factual findings and unilateral imposition of a 14-month unpaid

8    suspension on Dr. Martinez violates the district's residential

9    faculty policies and flatly usurps the Board's ultimate

10   authority to discipline its employees."                            11:13AM

11          THE COURT:  Well, that's just a recitation of

12   procedure and an assertion of state law that says state law

13   requires the Board to prove that.  In our earlier discussion,

14   you have acknowledged that's not correct and you are not making

15   that argument anymore.                                             11:13AM

16          MR. ROBAINA:  Number 41, "Chancellor Glasper failed to

17   allow Dr. Martinez any opportunity to present evidence refuting

18   the new statement of charges before a neutral finder of fact."

19          THE COURT:  Well, perhaps.

20          MR. ROBAINA:  Page -- I'm sorry -- Paragraph 74 which       11:14AM

21   is on Page 8.

22          THE COURT:  Oh.  Wait a minute.  I want to be clear.

23   It is undisputed that the evidence was presented before a

24   neutral finder of fact in the suspension proceedings, right?

25          MR. ROBAINA:  But it also requires, Your Honor, due         11:14AM

process also requires not only that the evidence be presented

before a neutral finder of fact but that a neutral arbiter

decide the case, decide what the punishment is going to be.

That's not up to the person that's bringing the allegations

against an employee.  That's not the way due process works.          11:14AM

THE COURT:  I read 41 as a challenge, patently

factually incorrect challenge to the fairness of the --

MR. ROBAINA:  Number 41 is factually incorrect?

THE COURT:  Of the fairness and the neutrality of the

dismissal committee's findings.  But now your argument is based      11:15AM

on the findings of sanctionable discipline, the discretion as

to what discipline to impose is adequately raised here because

here you are saying she wanted --

MR. ROBAINA:  There's another piece of this.  Oh, I

know what I was going to mention to you earlier that you             11:15AM

reminded me of.

In the statement of charges for the suspension,

there's a new allegation.

THE COURT:  That's right.  Put that on hold for a

minute.  I want to finish this discussion.                          11:15AM

MR. ROBAINA:  Okay.

THE COURT:  In Paragraph 41 you purport to challenge

the lack of, quote, "any opportunity to present evidence

refuting the new statement of charges," close quote, which is a

direct replay of the evidence and neutrality of the first           11:16AM

| | |
|---|---|
| 1 | hearing committee.  So if you are saying here, well, due |
| 2 | process requires that the chancellor have a redo of the same |
| 3 | procedure we earlier agreed, and you conceded -- it's not a |
| 4 | real concession because it's obvious -- that the prior fair and |
| 5 | neutral decision making about disciplinable conduct was fair |
| 6 | and neutral.  And all you are saying here is she wanted to |
| 7 | present, quote, evidence refuting the statement of charge.  The |
| 8 | statement of the charges is -- we'll get that here next.  This |
| 9 | is the same stuff that was found binding the finding by the |
| 10 | hearing committee. |

1   hearing committee.  So if you are saying here, well, due

2   process requires that the chancellor have a redo of the same

3   procedure we earlier agreed, and you conceded -- it's not a

4   real concession because it's obvious -- that the prior fair and

5   neutral decision making about disciplinable conduct was fair          11:16AM

6   and neutral.  And all you are saying here is she wanted to

7   present, quote, evidence refuting the statement of charge.  The

8   statement of the charges is -- we'll get that here next.  This

9   is the same stuff that was found binding the finding by the

10  hearing committee.                                                     11:16AM

11          MR. ROBAINA:  The statement of charges is also

12  discussing the new statement of charges I just mentioned to you

13  that has a new allegation.

14          THE COURT:  Well, we can go to that.  But before we

15  do, if this is what you are pointing to, this is an assertion        11:17AM

16  at most of the pleading that she had the right to present her

17  evidence all over again after having presented it to a fair and

18  neutral decision maker who found disciplinable misconduct.  So

19  now the issue of the new charges, go ahead with that.

20          MR. ROBAINA:  Let's -- can I finish this --                  11:17AM

21          THE COURT:  Go ahead.

22          MR. ROBAINA:  -- quickly?  Remember, the pleadings,

23  this is not a requirement that she give her exposition on due

24  process in the pleadings.  72, "Chancellor Glasper's decision

25  to suspend Dr. Martinez without pay for 14 and-a-half months         11:17AM

UNITED STATES DISTRICT COURT

1   violated the constitution of due process rights."  And 74, "The

2   pertinent constitutional standards are longstanding, were

3   clearly established at the time of the suspension and included

4   a right to due process free of bias."

5        THE COURT:  The closest you get to saying something      11:17AM

6   about neutral decision makers is Paragraph 41, but even that is

7   just challenging adequacy of fact finding what's already been

8   found by a fair and neutral decision.

9        MR. ROBAINA:  What about a right of due process free

10  of bias?                                                      11:18AM

11       THE COURT:  Isn't that what --

12       MR. ROBAINA:  In paragraph 74.

13       THE COURT:  That gets closer, too.  Still with respect

14  to what you have to plead --

15       MR. ROBAINA:  Your Honor, the pleadings --              11:18AM

16       THE COURT:  You can't just throw out a bunch of stuff

17  with isolated references without identifying more specifically

18  what you are alleging.

19       MR. ROBAINA:  Your Honor, the pleading itself, the

20  amended complaint goes throughout the facts.  These are just -- 11:18AM

21  the issue was raised that she doesn't raise the issue of unfair

22  bias, so I tried to point out the paragraphs that lead to that

23  issue.  But if you look at the amended complaint, yes, it does.

24       THE COURT:  Under the pleading, it's not enough just

25  to plead a bare conclusion, any bare conclusion, including a    11:19AM

bare conclusion well, there was bias here.  You have to plead

some minimal facts that makes that plausible to think that all

you have here is this is the person who initiated the

discipline.

MR. ROBAINA:  Judge, it doesn't seem necessary to put

the entire complaint into the reply to their motion.

THE COURT:  Well, I'm not talking about your reply.

I'm talking about your complaint.

MR. ROBAINA:  In the complaint itself, it discusses

what happened.  And you cannot -- and the bottom line is,

Judge, for due process, you can't have the same person decide

to terminate someone and then make the decision -- I'm sorry --

to discipline someone and then make the decision as to whether

or not that discipline was fair.  That doesn't work for due

process under longstanding law.  It's not -- I didn't --

THE COURT:  You know, another way to say this is this

sprawling complaint does not satisfy *Iqbal* and *Twombly*.  It's

not just enough to throw a bunch of stuff out with conclusions

without facts that would suggest actual bias other than what I

think or thought you were arguing that it is inherently biased

in violation of due process.  So, you know, the federal

pleading standards require more than that.

I labored through your complaint.  That's why I came

out asking you these questions.  Because there's a lot of

discussion in your complaint and in your briefs about state

1    procedures.  But you acknowledged to me you are not pleading

2    any claim under state law, so that's behind us.

3         MR. ROBAINA:  Judge, the pleading under state law, she

4    did not file an appeal of the decision to suspend her.  She

5    didn't do that.  She filed a due process violation saying that        11:21AM

6    the way they went about this and their process itself violates

7    due process.

8         THE COURT:  Well, you know, again, you told me you

9    were not pleading any violations of state law so I thought that

10   was behind us.  But -- and hold your other thought because I        11:21AM

11   don't want to cut anything off.  If we get -- if we think that,

12   well, you know, if you draw a whole lot of inferences of things

13   that weren't pleaded or weren't argued that you have

14   acknowledged are not part of this lawsuit, and if you are

15   really saying, well, the state procedure does require action by        11:21AM

16   the Board to finalize any suspension of a year or however you

17   want to describe it, whatever your dividing line is, that's a

18   proposition of state law.  That's not a proposition of federal

19   law.  Right?  And it's plainly wrong because the state

20   procedures in 3.13 lay out a procedure for suspension.  3.15        11:22AM

21   lays out a procedure for termination.  And if you can't really

22   terminate without complying with 3.15 you made a dead letter

23   3.14 which is not frankly --

24        MR. ROBAINA:  I think I now understand where you are

25   going, Judge, and if I may comment on that.  The fact that the        11:22AM

state procedure lays out a process doesn't mean that that's the

end all be all with regard to the process.  It has to comport

with federal due process requirements.

THE COURT:  Yes, but what happened here unquestionably

did comport with the state procedure.  The 3.15 procedure was

exhausted right through the point where the chancellor accepted

it, and the 3.13 process was richly exhausted as well.  So when

you argue that, well, you really can't suspend someone for a

year because that's termination, that isn't defiance of the

plain language of 3.13 and 3.15.

MR. ROBAINA:  That's the argument that -- I mean, it's

in the complaint.  But --

THE COURT:  You don't plead it as a cause of action

and you told me at the beginning here you are not pleading

anything as a state law cause of action.

MR. ROBAINA:  I guess I don't -- I'm not trying to be

contradictory about this.  What I'm saying is not that they

violated their own policy.  What I'm saying is that their

policy violates the due process.

THE COURT:  Okay.  But we already exhausted the three

ways that might do that, and I think you have withdrawn a lot

of it.

MR. ROBAINA:  Well --

THE COURT:  First let's go back to, does the state

procedure require board approval for suspension of a year?

1      MR. ROBAINA:  I will say the state procedure doesn't

2 although the chancellor testified in deposition --

3      THE COURT:  Okay.  So the state procedure doesn't

4 require it.

5      MR. ROBAINA:  Correct.                                11:24AM

6      THE COURT:  So if we draw overly generous inferences

7 about what you might have pleaded, there was no violation of

8 state procedure here.  Right?

9      MR. ROBAINA:  Correct.

10      THE COURT:  So how can federal due -- and I don't      11:24AM

11 assume you are not arguing --

12      MR. ROBAINA:  Well, if I may, can I --

13      THE COURT:  How is the federal -- well --

14      MR. ROBAINA:  Let me correct that, Judge.  The

15 procedure requires -- and hear me out for a second.  The     11:24AM

16 procedure requires that in order to suspend someone you have to

17 have just cause.  That requires that -- that means that they

18 have a property interest.  When you have a property interest

19 now federal procedure --

20      THE COURT:  I told you five times you have a property   11:24AM

21 interest.  We don't need to talk about that anymore.  There's

22 nothing here challenging the due cause for the discipline.

23 It's not in your brief.  It's not in your complaint.  And your

24 briefing also does not dispute the underlying facts about her

25 refusal to follow an instruction to refund the monies to the  11:25AM

1    students.  There's a lot of briefing about, well, they didn't

2    prove that she violated the copyright law.  She did violate the

3    instruction to refund the money.

4              MR. ROBAINA:  That doesn't mean they can suspend her

5    for 14 months.                                                    11:25AM

6              THE COURT:  Why not?

7              MR. ROBAINA:  Because --

8              THE COURT:  It's a violation of 3. --  now I can't

9    remember.

10             MR. ROBAINA:  Judge, they can't decide that is what     11:25AM

11   I'm saying to you.  Chancellor Glasper cannot make the decision

12   there.

13             THE COURT:  Stop.  You are asserting that there was a

14   lack of just cause.  That's what I'm talking about.  And I

15   think I'm concluding there clearly was just cause and you        11:25AM

16   didn't even dispute the facts of the just cause.  It's not in

17   your briefs.  It's only procedural challenges in your briefs.

18   So when you tell me today, well, there's an underlying issue

19   here that they didn't really adequately prove or wasn't true

20   that there was just cause for termination, that is not in your   11:26AM

21   briefs.  And when you say it here now it's too late.  In any

22   event, it's plainly untrue.  Disobeying a direct order from

23   administration to refund money to the students is

24   insubordination as the hearing committee found.  And, by the

25   way, has she refunded that money even as of today?              11:26AM

1      MR. ROBAINA:  Judge, I don't believe so.  But I think

2  that that's not relevant.

3      THE COURT:  The record shows that she had not refunded

4  the money as far as the proceedings went here, but it doesn't

5  speak to what happened after the proceedings here.                11:26AM

6      MR. ROBAINA:  I mean, I think -- can I come back to

7  something?

8      THE COURT:  You certainly may.  Let me wrap up that

9  thought.  The insubordination, the refusal to follow orders

10  apparently persists today, and -- it persists today.  Anyway,    11:27AM

11  go ahead.

12      MR. ROBAINA:  Judge, this is not a case to

13  determine -- today is not a case to determine whether or not

14  the imposition of the 14 months was necessarily just or unjust.

15  What it is is the decision as to whether or not the person that  11:27AM

16  accuses her can make that determination.  That's what I'm

17  saying.

18      THE COURT:  I'm trying to take your stuff one at a

19  time and you keep slipping around from what I'm asking you to

20  something else.  I have taken almost an hour of your time.  I    11:27AM

21  need to give Mr. -- who is going to argue for the other side?

22      MR. ROBAINA:  Can we just hit the one last item?

23      THE COURT:  Go ahead.

24      MR. ROBAINA:  The fact is, Your Honor, that even if

25  you make that determination, there's another issue here.  The    11:27AM

1    issue is that in the notice of suspension there's a new

2    allegation which she never got any opportunity in front of any

3    arbiter, not even Dr. Glasper to argue.  It's a new allegation.

4         THE COURT:  Let me help you out with that.  Part of

5    this issue is some of these things are too elliptical.  The          11:28AM

6    direct recommendation of finding of misconduct was the

7    insubordination of refusing to follow the orders to refund

8    money to students.  And whether or not it was right, it was

9    insubordination.

10        This reference to the -- I don't remember the section          11:28AM

11   numbers now -- to the budgeting process is simply the predicate

12   for that.  It's the same issue, same misconduct tracing it back

13   to the underlying predicate.  It's not a different charge.

14        MR. ROBAINA:  May I show you why it's a different

15   charge?                                                              11:28AM

16        THE COURT:  Go ahead.

17        MR. ROBAINA:  The new allegation is that she violated

18   administrative Rule 1.12 and 1.12.6.  And the factual

19   allegation is that Phoenix College determined that your course

20   materials charge was not included in the adopted budget or          11:29AM

21   pre-approved by the governing board.  That's not --

22        THE COURT:  I don't have that here.  What was 1.6

23   again?  1.12.

24        MR. ROBAINA:  1.12.2, authorization, and 1.12.6, fees.

25   And the actual allegation, this is in statement of fact --          11:29AM

1    plaintiff's statement of fact 43.  The actual allegation is

2    that Phoenix College determined that your course materials

3    charge was not included in the adopted budget or pre-approved

4    by the governing board.  That's not an allegation in the

5    state --                                                     11:29AM

6           THE COURT:  1.12.6.

7           MR. ROBAINA:  1.12.2 and 1.12.6, and under that it

8    gives the factual basis.

9           THE COURT:  But read that regulation to me again.

10          MR. ROBAINA:  "1.12.2:  Authorization.  Prior to     11:30AM

11   participating in the sale of products or services, revenue and

12   expenditure categories must be included in a programs budget

13   and approved by the governing board during the annual budget

14   adoption process or as legally changed the first year."

15          "1.12.6:  Fees," it says, "Fees exchanged for products 11:30AM

16   or services produced through an educational training or service

17   activity shall be pre-approved by the governing board."  And

18   then it says, "Phoenix College determined that your course

19   materials charge was not included in the adopted budget or

20   pre-approved by the governing board."                        11:30AM

21          THE COURT:  Yes.  That looks like simply getting down

22   to the foundation of the specific finding of misconduct which

23   was with respect to the charges to the students which she was

24   ordered to refund.

25          MR. ROBAINA:  Judge, even if you said this was part of 11:31AM

1    the cash handling procedure, then what he's doing here is

2    over -- going back to what the Board said she didn't violate.

3            THE COURT:  No.  That was the premise for the order,

4    the prophylactic order to give the money back, which didn't

5    require a finding that she had violated it before she was          11:31AM

6    insubordinate.

7            MR. ROBAINA:  Judge, this is part --

8            THE COURT:  I have labored through this.  And part of

9    the challenge, and I will hear what you have to say, some of

10   this is a bit too elliptical but when digging through it it      11:31AM

11   appears that -- that's just taking the insubordination down to

12   the broader grounds of policy that supports it.  But anyway, go

13   ahead.  Is there anything else?

14           MR. ROBAINA:  No, sir.  That's a new allegation that

15   she did not get any opportunity to refute.                       11:31AM

16           THE COURT:  I think of it as the same allegation.

17   Anyway, go ahead, Mr. Uppal.

18           MR. UPPAL:  Thank you, Your Honor.  I want to keep

19   this brief.

20           Plaintiff has five causes of action.  Well, actually    11:32AM

21   let's pare it down to three causes of action:  A liberty

22   interest, a property interest, and a claim for declaratory

23   relief.

24           THE COURT:  Well, the declaratory relief we didn't

25   talk about because that's a declaratory relief that says it's    11:32AM

1   okay for her to do what copying she wants because it does not

2   violate copyright law right.

3           MR. UPPAL:  That's how I understand the plaintiff's

4   argument.

5           THE COURT:  Yeah.  And there's plainly no --                11:32AM

6   declaratory relief is discretionary, and it would be an abuse

7   of discretion to do that because, first of all, it's not

8   apparent she's doing that anymore or intends to do it anymore

9   just there's no allegation of that.  And in any event, it's

10  more than sufficient for the district to say we don't have to    11:33AM

11  win your lawsuits.  You don't get to get us into a copyright

12  case and then make us win it.  It's enough for us to be

13  cautious.  And so there's nothing ripe.  There's not even a

14  case or controversy.  And it would be abuse of discretion to do

15  it, and the allegation of underlying copyright infringement      11:33AM

16  does not arise here because of the district's right to manage

17  its employees so they don't get to bring them into a debatable

18  lawsuit.  So this is nothing to worry about declaratory

19  judgment on the copyright.

20          MR. UPPAL:  Absolutely, Your Honor.  So that takes         11:33AM

21  care of the declaratory relief claim as Your Honor just

22  summarized.  The liberty interest claims have been waived in

23  the briefing.  So what we're down to is the property interest

24  claims.  And the plaintiff's real quarrel here is not with a

25  lack of process.  Because as you can see in the briefing as       11:34AM

well as the verbal presentation of opposing counsel, they have
not identified any deficient process.  This is a case about, as
Your Honor said, constitutional minimums.  And the
constitutional minimums have been more than satisfied.  The
constitutional minimums here, Your Honor, are dictated by
*Loudermill* which requires nothing more than notice and an
opportunity to be heard as well as by *Pickering*.  And I think
that the Supreme Court's admonition to trial courts in
*Pickering* is directly relevant to this case.  In *Pickering*, the
Court said that we, quote, "must give employers wide discretion
and control over the management of their personnel and internal
affairs, including the prerogative to remove employees whose
conduct hinders efficient operation and to do so with
dispatch," unquote.

     That's really what we're talking about.  The plaintiff
does not like the result.  The plaintiff had a full day due
process hearing at which she was represented by counsel, Steve
Montoya.  She gave pre- and post-briefing.

     THE COURT:  No one accuses Mr. Montoya of being less
than zealous.

     MR. UPPAL:  Absolutely, Your Honor.  But in addition
to an adversarial proceeding where she cross-examined -- her
counsel cross-examined numerous witnesses, experts were even
presented at this hearing.  There is nothing lacking.  In fact,
what happened here so far exceeds the constitutional minimum

1    that really, it is not worthy of discussion.  And I don't say

2    that lightly.  I think it's borne out by the fact that

3    plaintiff's counsel cannot identify what the deficiency is with

4    respect to what the constitutional bare minimum requires.

5            I would like to correct one aspect of the record,                    11:36AM

6    however.  It is not merely that plaintiff was found to be

7    willfully insubordinate in refusing to issue refunds.  She, to

8    this day, remains insubordinate.  I would direct Your Honor to

9    defendants' statement of facts, Paragraph 37, during the

10   deposition in this case, plaintiff was questioned as to whether        11:36AM

11   she had made the refunds.  And bear in mind when she returned

12   after her suspension she was reminded to make the refunds, and

13   she did not do so.  She still doesn't do so.  But yet here she

14   is arguing that somehow due process was not satisfied.

15           So, Your Honor, I really don't have much to add to            11:36AM

16   your questioning of opposing counsel but to say that there is

17   no violation of a due process property interest in the

18   plaintiff's employment whatsoever.  There were binding findings

19   of fact here.  And the binding findings of fact by the hearing

20   committee basically reduced to down two issues:  One, the              11:37AM

21   hearing committee recommended against suspension given that the

22   plaintiff was a 30-year tenured employee of the district.

23   That's the part that the plaintiff likes, the recommendation

24   against termination.  However, the part that she wants the

25   Court to overlook is the equally binding finding that she was          11:37AM

willfully insubordinate.  And the language of the finding of

facts by the committee was rather brutal.  What they said was,

quote, that the plaintiff was willfully -- the plaintiff

willfully and intentionally failed to follow instructions that

were communicated to her when she failed to issue refunds to

students as directed by President Solley.

Everything flows from that finding of willful

insubordination.  Your Honor's absolutely correct that the

issue of a neutral decision maker has been waived and forfeited

and was never properly pled and does not satisfy the *Iqbal/*

*Twombly* standards.  But bearing down to a more fundamental

level, the plaintiff was stuck with that finding she was

willfully insubordinate.  That finding of fact is binding on

the chancellor to --

THE COURT:  Whether or not it was binding under the

regs themselves is a result of unquestionably richly adequate

procedures.

MR. UPPAL:  Absolutely.  So what happened to the

plaintiff is she was suspended for 14 months.  She was not

permanently separated from employment.  There was absolute just

cause for her 14-month suspension given not only the fact that

she -- there was a finding of willful insubordination but,

again, one could even argue that that 14-month suspension --

THE COURT:  I thought it was 13 months from April to

May.

1          MR. UPPAL:  That's right.  It's 14 if you count

2     partial months, probably 13 months.

3          THE COURT:  April 15 to May 15, wasn't it?

4          MR. UPPAL:  Yes, Your Honor.

5          THE COURT:  So that's 13 months.                    11:39AM

6          MR. UPPAL:  Absolutely, Your Honor.  Perhaps that's a

7     misstatement on my part, but my point here is with the benefit

8     of hindsight that suspension probably was inadequate.  Because

9     it was not enough to convey the point to the plaintiff that she

10    should actually make the refunds.  She's here in the audience   11:39AM

11    today.  She remains insubordinate.  So there really can be

12    no -- there is no issue to present to the jury about inadequacy

13    of due process.  All the procedures were followed.  She

14    received far more than the constitutional minimum.  She remains

15    insubordinate and this case, therefore, should result, I submit  11:39AM

16    to the Court, in summary judgment for MCCD and Chancellor

17    Glasper.

18          I have nothing else, Your Honor, unless Your Honor has

19    questions.

20          THE COURT:  You know, something just occurred to me.      11:40AM

21    Provided that there's fair opportunity to dispute whether or

22    not she even now has not refunded the monies, either she admits

23    it or she disputes it, some adequate procedure to resolve that,

24    would the chancellor be able to suspend her again for another

25    year?                                                          11:40AM

1          MR. UPPAL:  Absolutely, Your Honor.

2          THE COURT:  If they wanted to terminate her, of course

3     they would have to go back to the 3.15 ultimately culminating

4     in more decision making.

5          MR. UPPAL:  That's right.  That's absolutely correct.        11:40AM

6     If anything, this particular plaintiff has been treated with

7     extreme leniency by her employer.  Thank you, Your Honor.

8          THE COURT:  Any reply.

9          MR. ROBAINA:  Your Honor, *Pickering* is a First

10     Amendment case.                                                 11:41AM

11          THE COURT:  What was the date on *Pickering*.

12          MR. ROBAINA:  It was, I believe, 19 -- I can't

13     remember.  It was a First Amendment case.  It has nothing to do

14     with this type of allegation with respect to due process.

15          THE COURT:  Is that the school case from 1968?            11:41AM

16          MR. ROBAINA:  I believe so, *Pickering* re: something in

17     the newspapers and then was terminated.

18          THE COURT:  That case was the subject of my first year

19     law school moot court case of 46 years ago.  So I'm an expert

20     on that.                                                        11:41AM

21          MR. ROBAINA:  It's hard to, I guess, without restating

22     everything that we have already discussed, fundamentally, Your

23     Honor, whether or not you believe that she should be

24     disciplined because she didn't pay the $11 back to the students

25     for the copies that she made for them, that's really not the    11:42AM

1    issue in this case.  The issue in this case is whether the

2    person that brought the case against her can ultimately be the

3    arbiter of what the punishment is against her.  And, you know,

4    it's a -- I think the real issue is whether or not this case

5    falls within the *Withrow* case or whether it falls outside the          11:42AM

6    *Withrow* case, the Supreme Court case.  And I think there's a

7    lot of case law that indicates, look, you have situations like,

8    for instance, within the National Labor Relations Board where

9    the same agency investigates, prosecutes, and makes judicial

10   determinations but it's not the same person within those                 11:43AM

11   agencies.  And there's a lot of case law that talks about the

12   difference between that and the person that's making

13   allegations against someone and involved in that now becoming

14   the arbiter of whether or not -- what the punishment for

15   something like that is.                                                   11:43AM

16           THE COURT:  Is there any dispute that she was

17   insubordinate at the time of these proceedings?

18           MR. ROBAINA:  No.  It's binding.

19           THE COURT:  And is there any dispute that even at the

20   end of the proceedings she remained insubordinate?                       11:43AM

21           MR. ROBAINA:  Your Honor, I'm going to answer your

22   question because you are asking me.  I don't think that there's

23   any dispute regarding that.  I just don't think it's relevant.

24           THE COURT:  In her deposition which is after all this

25   was done, even then she remained insubordinate, right?                   11:43AM

1          MR. ROBAINA:  But you are putting the cart before the

2     horse here.  If in this case if we did a jury trial and you did

3     everything that happens in a jury trial and then for some

4     reason you decided to retire and I was made federal judge and

5     decided this case, not that I ever would, could be, but that's          11:44AM

6     the same thing.

7          THE COURT:  Ordinary personnel matters are not held to

8     the standard of judicial process.

9          MR. ROBAINA:  But, Your Honor, due process has --

10    there is -- it is much more developed than what I believe you          11:44AM

11    are giving it credit for.  They can't just have a

12    pre-disciplinary hearing with these people that are involved in

13    the --

14         THE COURT:  Isn't it the case that she had the

15    opportunity and she took advantage of it to have every          11:44AM

16    pre-hearing and during hearing communication she wanted to

17    anybody including asking the Board the intervene repeatedly,

18    which they never elected to do?

19         MR. ROBAINA:  Yes.  With regard to the first part

20    that's the beginnings of due process.          11:45AM

21         THE COURT:  And she had the process with the

22    administration to say anything she wanted to anybody, right?

23         MR. ROBAINA:  And that's the first half of due

24    process.  In the first half of due process you don't have to

25    have a neutral arbiter.  It can be somebody who is not neutral.          11:45AM

1    Many times we see it because we represent law enforcement.  So

2    in the beginning, they give you the allegations against the

3    police officer, for instance, and you then you go meet with the

4    sheriff or police chief or whoever.  The sheriff or the police

5    chief then decides whether or not they want to go forward with          11:45AM

6    any allegations, and then when that's done and they do go

7    forward with it you get a full-blown evidentiary hearing for

8    somebody that's neutral.

9          THE COURT:  How is it even rational to say that the

10   chancellor was biased when he accepted the findings of the              11:45AM

11   hearing committee, not to suspend -- not to terminate her.

12   That's just irrational.  If you -- that's evidence of his lack

13   of bias.

14         MR. ROBAINA:  Let me give you an example.  And it's in

15   the evidence.  In the notice of suspension he says, twice, in          11:46AM

16   the notice of suspension, he says, I'm going to suspend you for

17   14 months or you can retire.

18         THE COURT:  In which event, she would not be suspended

19   until the end of the year.  She would continue to draw a salary

20   until then.                                                             11:46AM

21         MR. ROBAINA:  What do you mean?

22         THE COURT:  That was a concession.

23         MR. ROBAINA:  I don't understand.

24         THE COURT:  The notice that says or she can retire

25   says if she made that election then she would remain on paid           11:46AM

status to the end of May or middle of May or whatever as
opposed to having -- going on unpaid status on April 15th.
That's what that said.  We'll leave you on, if you are going to
retire anyway, we'll leave you on paid status until April 15
instead of putting you on unpaid status.

MR. ROBAINA:  The other piece of that was when they
put her on suspension they gave her COBRA rights.

THE COURT:  So what?

MR. ROBAINA:  It's not -- this is not -- you are
taking it -- you are giving it too much credit for --

THE COURT:  Well, you made the point that they offered
to keep her on for an extra month if she chose to retire.  I
don't know what you get out of that but I'm trying to correct
you as to what they actually did.

MR. ROBAINA:  All I'm saying is, Judge, when you
are -- the -- I believe that you are suggesting that they did
that as a favor to her.  It's not a favor to her, whereas --

THE COURT:  I don't see what you are making out of
that.  What are you making out of that?

MR. ROBAINA:  I'm just saying they gave her a
suspension -- by the way, just so you know, we're talking about
all kinds of things that are -- that, you know, the fact that
it was a -- it started in April and ended in May, she's on a
nine-month salary which could be a 12-month salary.  The real
ramification of that is she doesn't get paid from April until

1    fall of 2015 and she gets no benefits from April to the fall of

2    2015.

3            THE COURT:  You know, my understanding about teachers

4    is they can choose to be paid on a nine-month basis or 12-month

5    basis.                                                           11:48AM

6            MR. ROBAINA:  Right.  Sort of getting off --

7            THE COURT:  But it's the same amount of pay for nine

8    months work, right?

9            MR. ROBAINA:  Correct.

10            THE COURT:  So I don't see where that's going.           11:48AM

11            MR. ROBAINA:  I'm just saying this is not an -- I'm

12    losing track of my -- it's getting long.

13            But this is a due process case and they have to have

14    fair due process.  You have to have a fair and impartial

15    decision maker at not just the fact-finding stage but also the   11:48AM

16    decision making stage.  That's what's lacking here, Judge.  And

17    it's clear the due process has been very, very developed.  It's

18    not just the fact that she got to -- that she took it upon

19    herself to try to get the Board to do something.  That doesn't

20    mean that somehow they gave her due process.                     11:49AM

21            THE COURT:  They don't owe her any process.  The

22    process was owed at the administration and chancellor level and

23    she got all that.  The Board didn't have to intervene.  She had

24    the opportunity to ask them to intervene.  She argued twice and

25    wrote letters.  That has nothing to do with due process because  11:49AM

```
1    they don't owe her anything constitutionally or under state
2    law.
3              MR. ROBAINA:  Constitutionally, they owe her the right
4    to a neutral arbiter.  The fact that they wouldn't give her
5    somebody.                                                          11:49AM
6              THE COURT:  Whenever we deal with an issue you slip to
7    something else.
8              Anyway, I think I'd like to go to a retirement lunch
9    for a lawyer over at the prosecutor -- at the U.S. Attorney's
10   Office and we have had an hour and 45 minutes.  Been going a       11:49AM
11   long time, hour and 15 minutes.
12             So very well.  The motions are taken under advisement.
13   One thing I learned from this is I'm going to put in my case
14   management order that simultaneous cross motions are not
15   allowed.  If both sides want to file motions, they should         11:50AM
16   confer as to who will go first and everybody gets two briefs.
17   And if they can't agree I would have the plaintiff go first.
18             Motions are taken under advisement.  And we'll be in
19   recess.
20             (Proceeding concluded at 11:50 a.m.)                     11:50AM
21
22
23
24
25
```

1

2

3

4                    C E R T I F I C A T E

5

6        I, LAURIE A. ADAMS, do hereby certify that I am duly

7    appointed and qualified to act as Official Court Reporter for

8    the United States District Court for the District of Arizona.

9        I FURTHER CERTIFY that the foregoing pages constitute

10   a full, true, and accurate transcript of all of that portion of

11   the proceedings contained herein, had in the above-entitled

12   cause on the date specified therein, and that said transcript

13   was prepared under my direction and control.

14        DATED at Phoenix, Arizona, this 9th day of January,

15   2018.

16

17                              s/Laurie A. Adams

18                              _____
                                Laurie A. Adams, RMR, CRR

19

20

21

22

23

24

25