Pavneet Singh Uppal, SBN 016805
Shayna H. Balch, SBN 024852
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2425
Telephone: (602) 281-3400
Fax: (602) 281-3401
puppal@fisherphillips.com
sbalch@fisherphillips.com

Attorneys for Defendant

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Cleopatria Martinez, | No. CV-15-01759-PHX-NVW |
| Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | |
| Maricopa County Community College District; et al., | |
| Defendants. | **(Oral Argument Requested)** |

Defendants Maricopa County Community College District ("MCCCD") and Rufus and Debra Glasper (collectively "Defendants"), by and through counsel undersigned, hereby submit this Reply in support of their Notice and Motion for Attorneys' Fees and Costs in compliance with Rule 54.2 of the Local Rules of Civil Procedure.

## I.   INTRODUCTION

After being forced to defend themselves through more than two years of protracted litigation, Defendants prevailed on their Motion for Summary Judgment and the Court dismissed all of Plaintiff's claims with prejudice. The Court even went so far as to opine that Plaintiff's claims were "elusive," "strange and bizarre" and that Plaintiff had not "raised… a colorable federal claim of depravation of property without due process of law." Doc. 91, p. 3.

Put simply, this is not the typical case where a Plaintiff, in good faith, filed and pursued a lawsuit against a Defendant but ultimately lost. Rather, this is a case where Plaintiff, a vexatious litigant, who has pursued frivolous litigation against MCCCD in the past, filed a lawsuit against Defendants in the face of binding U.S. Supreme Court case law that barred her causes of action. This Court should not tolerate this type of behavior by Plaintiff.

Accordingly, and for the reasons set forth more fully below, Defendants respectfully request that the Court award them their requested attorneys' fees and costs totaling $113,900.00 (totaling a more than 50% reduction from the actual fees and costs Defendants were forced to incur against Plaintiff's meritless claims).

## II.   LEGAL ARGUMENT

### A.   The Reasonableness of Defendants' Requested Fees is Undisputed.

In Defendants' opening motion, and as required by Fed. R. Civ. P. 54(d) and LRCiv. 54.2, Defendants fully briefed the "Reasonableness of the Requested Award." (Doc. 95, pp. 10-12). Despite Defendants' briefing on this issue, Plaintiff literally has nothing to say and does not dispute the reasonableness of Defendants' requested fees totaling $113,900.00. Indeed, Plaintiff cannot dispute the reasonableness of the requested fees because the fees sought by Defendants are in the range of fees recently sought by Plaintiff's own former counsel, Tod Schleier, as the prevailing Plaintiff in another employment case. *See* Doc. 95-1. Accordingly, the reasonableness of Defendants' requested fees are undisputed and the entirety of the requested amount should be awarded to Defendants.

### B.   Plaintiff Had No Reasonable Basis For Bringing And Pursuing Her Causes Of Action Against Defendants.

In her response, Plaintiff's sole basis for objecting to Defendants' fee application is her purported "reasonable basis" for believing that her claims had merit. But this argument is belied by binding case law. As an initial matter, the standard that applies in determining whether a claim was "frivolous, unreasonable, or without foundation" is an

objective one.  *Christianburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978); *Watson v. County of Yavapai*, 240 F. Supp. 3d 996, 999-1000 (D. Ariz. 2017).  And it is well-established that plaintiffs are presumed to have a basic understanding of the applicable legal standards and binding case law affecting their claims. *See Elwood v. Morin*, 195 Fed. Appx. 586, 588 (9th Cir. 2006) (award of fees for frivolousness was appropriate where the plaintiff failed to allege facts regarding the required elements of her claims). Accordingly, Courts have routinely granted fee awards against Plaintiffs in cases similar to the instant one where the plaintiff lacked any objective basis for pursuing and maintaining claims against a defendant employer.[1]  Indeed, courts often award fees against *pro se* plaintiffs where the claims asserted against a defendant-employer are objectively baseless.  *See, e.g., Lioasheng Zhang v. Honeywell Int'l, Inc*., CV-06-1181-PHX-MHM, 2010 WL 1996594 (D. Ariz. May 19, 2010), aff'd sub nom. *Liaosheng Zhang v. Honeywell Int'l, Inc*., 442 Fed. Appx. 288 (9th Cir. 2011) (awarding fees to defendant-employer describing plaintiff as "not a typical litigant who incorrectly, albeit reasonably, alleges discrimination or retaliation").

Here, Plaintiff is not a *pro se* plaintiff.  Rather, at all material times relevant to this case she was represented by experienced employment counsel.  In addition to the expectation that Plaintiff have a basic understanding of the applicable legal authority on

---

[1] *See Watson v. County of Yavapai*, 240 F. Supp. 3d 996, 1003 (D. Ariz. 2017) (awarding fees to defendant-employer finding that plaintiff's "assertions lacked any objective basis from their beginning as a summary accusation far into her insubordination, discipline, corrections for workplace disruption, contumacious written attacks on her supervisor, and refusal of directions"); *Russell v. Mountain Park Health Ctr. Properties, LLC*, CV 07-00875-PHX-NVW, 2012 WL 369576, at *3 (D. Ariz. Feb. 6, 2012) (awarding fees to defendant-employer where "Plaintiffs were repeatedly unable to explain the basis for these claims and provide authority to support their position, even though they were given multiple opportunities over the course of the litigation to do so, and ultimately withdrew the § 1981 claim against [a defendant] and dismissed her as a defendant on the first day of trial"); *Ganucheau v. E-Sys. Mgmt*., LLC, CV 11-01470-PHX-NVW, 2012 WL 2798723, at *2 (D. Ariz. July 9, 2012) (awarding fees to defendant-employer where plaintiff's allegations "objectively fall far short of what case law requires to make out a claim for hostile work environment sexual harassment").

FPDOCS 33674762.1

which her claims rest, Plaintiff's attorneys' knowledge of the law is further imputed to her for the purposes of determining whether Plaintiff could recognize the objective merit (or lack of merit) of a claim. *See Miller v. Los Angeles County Board of Ed.*, 827 F.2d 617, 619-20 (9th Cir. 1987).

As set forth in greater detail below, each of the causes of action Plaintiff asserted in the current lawsuit were barred by well-established binding case law authority – including 40-year-old precedent from the U.S. Supreme Court. Accordingly, as a matter of law, Plaintiff knew or should have known at the time she filed the instant lawsuit that her claims against Defendants were "frivolous, unreasonable, or groundless." *Christianburg*, 434 U.S. at 422.[2]

### 1. Plaintiff's Due Process Claim Premised on an Alleged Deprivation of a Liberty Interest Was Barred By Binding U.S. Supreme Court and Ninth Circuit Precedent.

Two of the five counts asserted by Plaintiff in her Verified Amended Complaint allege that Defendants deprived Plaintiff of a liberty interest by way of suspending her employment. Specifically, Plaintiff alleged that she had actionable liberty interests in continuing employment with MCCCD and her reputation in the community entitling her to due process. Doc. 14, p. 18. However, as addressed more fully in Defendants' motion

---

[2] Notwithstanding the foregoing, and even assuming *arguendo* that Plaintiff somehow had an objectively reasonable belief that her claims had merit at the time her lawsuit was filed (she did not), she had a duty to dismiss her claims upon failing to discover evidence supporting her claims by the close of discovery. *See Christiansburg,* 434 U.S. at 421 ("a prevailing defendant is entitled to fees only if plaintiff's lawsuit 'was unreasonable, frivolous, or vexatious' or 'plaintiff continued to litigate after it clearly became so.'") However, despite over a year of protracted litigation, Plaintiff failed to dismiss any of her claims and forced Defendants to incur the legal expenses associated with defending her frivolous claims and ultimately filing their own summary judgment motion. If that were not enough, Plaintiff further forced Defendants to needlessly incur tremendous legal expenses in responding to Plaintiff's own separate motion for summary judgment, which this Court summarily denied as without merit. Indeed, during oral argument, this Court went so far as to comment that the filing of two separate motions for summary judgment in this case was "a gigantic waste of resources." (Doc. 111, p. 24.)

4

for summary judgement (Doc. 70 pp. 9-12), these very allegations were baseless and barred by binding U.S. Supreme Court and Ninth Circuit case law.

First, the U.S. Supreme Court has repeatedly held that an employee does not have a liberty interest due process right to continuing employment with the same employer. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707 (1972) (due process was not implicated because the State had not barred the employee "from all other public employment in state universities."); *see, also, Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 896 (1961). The Ninth Circuit echoed these same holdings in *Llamas v. Butte Comm. Coll. Dist.*, when it succinctly stated "We have consistently held that people do not have liberty interests in a specific employer. For example, a federal employee 'does not possess a liberty interest in her civil service career.'" 238 F.3d 1123, 1128 (9th Cir. 2001), *quoting Clemente v. U.S.*, 766 F.2d 1358, 1365 (9th Cir. 1985).

Second, it is well-established that in the employment context, a reputation based liberty interest is only applicable if the charge implicates the employee's reputation for honesty or morality. *Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093, 1100 (9th Cir. 1981). "[W]hen the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name." *Id*. at 1100. A suspension or termination, alone, does not affect a liberty interest. And, while "[c]harges that carry the stigma of moral turpitude" such as dishonesty or immorality "may implicate a liberty interest, … charges of incompetence or inability to get along with others do not." *Wheaton v. Webb-Petett*, 931 F.2d 613, 617. Here, Plaintiff was suspended because she "willfully and intentionally failed to follow instructions that were communicated to her" by Phoenix College President Anna Solley. (Doc. 73, DSOF ¶ 24). An allegation of willful insubordination does not implicate honesty or morality. Rather, insubordination is a form of failure to perform job duties which is insufficient to give rise to a protectable liberty interest.

Faced with the above undeniable precedent, Plaintiff abandoned her liberty interest claim. Now, faced with Defendants' motion for attorneys' fees Plaintiff is arguing that her abandonment of her liberty interest claim at the summary judgment stage "does not mean that a reasonable plaintiff could not have believed [those counts] to have been valid." (Doc. 107 at 12). Yet Plaintiff cited no authority in support of this contention, nor did Plaintiff attempt to explain how a reasonable plaintiff could reach the conclusion that her liberty interest claim had merit in light of binding U.S. Supreme Court case law to the contrary.

### 2. Plaintiff's Due Process Claim Premised on An Alleged Deprivation of a Property Interest Was Similarly Barred By Binding U.S. Supreme Court Precedent.

Plaintiff's Verified Amended Complaint also asserted two causes of action alleging due process violations based on an alleged deprivation of Plaintiff's property right to employment when she was suspended without pay following a full day administrative hearing in which Plaintiff's peers delivered a finding that she had engaged in willful insubordination. As the U.S. Supreme Court held over 40 years ago, a Plaintiff's right to due process affords her merely "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Plaintiff claims she was denied due process, yet describes a process substantially sufficient to defeat her own claims in her Verified Amended Complaint (Doc. 14). In considering these largely undisputed facts at summary judgment, the Court found that "[i]t may seem strange and even bizarre that the District's rich and elaborate procedures for dismissal and suspension would nevertheless fall short of federal constitutional minimums of fairness." (Doc. 91 at 3). The Court also found that Plaintiff "does not identify any additional procedure she could be due under federal procedural law." (Doc. 91 at 14). The process provided to Plaintiff was known by Plaintiff at the outset of litigation. This is not a case where a plaintiff began with a plausible theory only to have her claim dismissed after discovery turned up insufficient evidence. *See Watson*, 240 F. Supp. 3d at 1003.

Plaintiff cites cases in support of her contention that she had a reasonable basis to pursue due process claims against Defendants, yet even a cursory read of those cases reveals that they have no bearing on the instant dispute. *In Ass'n for Los Angeles Deputy Sheriffs v. County of Los Angeles*, the Ninth Circuit held that a policy was unconstitutional providing for the *automatic* suspension of *any* police officer charged with a felony. 648 F.3d 986, 992 (9th Cir. 2011) ("that the pre-suspension process provided by Defendants consisted of nothing more than a determination that felony charges had been filed, without any inquiry into the veracity of the allegations underlying those charges.") Here, the Verified Amended Complaint contains undisputed facts wherein Plaintiff received countless opportunities to dispute the veracity of charges against her well prior to Defendants taking any action affecting her rights – including a full day administrative hearing before a three person hearing committee comprised of her peers. Moreover, there is little dispute about the veracity of the charges here. Indeed, in *Clements v. Airport Auth. of Washoe County*, the Court described the deficient pretermination hearing as follows:

> [P]ublic hearings to which the Board points apparently gave notice only that certain positions would be eliminated and that others would be created, and did not specify which particular individuals would be terminated. Moreover, the discussions at the hearings appear to have suggested that the layoff provisions in the manual would be followed. In view of [Plaintiff]'s seniority in the properties department, it appears that the hearings did not provide her with notice that she was in danger of being laid off. Nor, it would appear, did they provide her with an opportunity to respond and to make arguments as to why she had the right to fill one of the newly created positions rather than being terminated. Thus, the procedure followed here appears not to have fulfilled the purpose of the requisite pretermination hearing

69 F.3d 321, 332 (9th Cir. 1995). Here, Plaintiff failed to identify how the ample process she was provided deprived her of notice or an opportunity to respond to the charges against her. Plaintiff similarly never alleged bias on the part of Hearing Committee who ultimately made the insubordination finding against her. Quite to the contrary, during the administrative hearing when Plaintiff was asked about her insubordination, Plaintiff

conceded that she had "made a mistake" and offered no explanation for her insubordination towards MCCCD management. As a result of her undisputed insubordination, the Hearing Committee ultimately rendered a finding that Martinez's conduct in refusing to issue refunds to students was an act of "willful insubordination."

### 3. Plaintiff's Request for Declaratory Relief Was Baseless.

Plaintiff also asserted a claim for declaratory relief seeking relief from a December 9, 2010 employment directive issued by MCCCD designed to protect the college from the risk of a possible copyright infringement lawsuit. But as Defendants fully briefed in their reply in support of their motion for summary judgment at Doc. 87, p. 6-11, a request for declaratory relief seeking reprieve from this employment decision was improper and not properly before the Court. Although Plaintiff may object to the continuing restrictions presented by the Directive, the Supreme Court held long ago that "The Due Process Clause of the Fourteenth Amendment is not a guarantee against [allegedly] incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350 (1976). To hold otherwise "would enable every discharged employee to assert a constitutional claim merely by alleging that his former supervisor made a mistake." *Id.*

Throughout the course of litigating this case, Plaintiff failed to cite to a single authority that would entitle her to declaratory relief. Indeed, in its Order granting summary judgment to Defendants, this Court succinctly held that it "need not decide whether [Plaintiff] actually violated copyright law" and that "[w]hat matters is the [Defendants] had a good-faith basis for adopting a prophylactic order." Doc. 91, p. 17. The Court further held that it would have been an abuse of discretion to award declaratory relief. Accordingly, it was objectively unreasonable for Plaintiff to believe a request for declaratory relief was reasonable on these facts.

### C. Plaintiff Is A Vexatious Litigant Who Has Played Fast and Loose With the Facts of Her First Lawsuit.

As discussed in Defendants' opening motion, this is not Plaintiff's first baseless case against MCCCD. In a prior case she filed against MCCCD, Case No. 2:12-cv-00702-

DGC, Plaintiff pursued meritless claims against MCCCD in response to its legitimate and nondiscriminatory attempt to enforce its reasonable and well-settled policies. Plaintiff litigated those claims for nearly two years against MCCCD, including through discovery and summary judgment. However, when faced with MCCCD's motion for summary judgment containing overwhelming authority evidencing the baseless nature of her claims, she offered to dismiss her claims with prejudice solely in exchange for MCCCD's agreement to not seek attorneys' fees or costs against her in that proceeding.

Contrary to Plaintiff's now after-the-fact attempt to characterize her prior voluntary dismissal as an effort to "end her problems with MCCCD", this argument is belied by legal authority and analysis set forth in Defendants' prior motion for summary judgment (attached to Defendants' opening motion Doc. 95-3). The simple fact of the matter is that when Plaintiff was faced with Defendants' motion for summary judgment in the prior legal proceeding (and the legal arguments contained therein), she came to realization that she would not be successful on her claims and could face an award of attorneys' fees against her.

By way of example, one of Plaintiff's claims in her prior lawsuit was Title VII retaliation. It is well-established that in order to make out a prima facie case of retaliation under Title VII, a plaintiff must show that "(1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between her activity and the employment decision." *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2003). However, in her first lawsuit, Plaintiff alleged that she engaged in "protected activity" that was totally unrelated to conduct protected under Title VII. Specifically, Plaintiff alleged that her complaints about use of federally provided Title V grant funds gave rise to her Title VII retaliation claim. But Plaintiff's complaints about the use of Title V grant funds, as a matter of law, were not the type of complaint protected by Title VII's anti-retaliation provision. *See Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1998) ("[T]he opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation.").

As but another example of the baseless nature of Plaintiff's prior claims against MCCCD, she previously claimed that the then President of Phoenix College, Anna Solley, committed numerous acts of discriminatory and harassing behavior towards Plaintiff based on her national origin (Mexican American) and race (Hispanic) – including the imposition of copying restrictions on Plaintiff.  Not only was any such alleged discriminatory animus implausible given Plaintiffs misuse of copyright protected works.  The allegations also made no sense because the decision-maker, Anna Solley, was of the exact same national origin (Mexican American) and race (Hispanic) as the Plaintiff.  Accordingly, the same protected class inference negated Plaintiff's assertions of discrimination or harassment.  *See Oncale v. Sundowner Offshore Serv.*, 523 U.S. 75, 78 (1998) (recognizing the inference).

Put simply, Plaintiff is a vexatious litigant and there are ample undisputed facts in the record of this case, as well as the one prior, documenting prolonged displays of misconduct and insubordination by Plaintiff towards her employer.  Indeed, this Court found that "the facts of [Plaintiff's] insubordination are undisputed" and "[Plaintiff's] insubordination continues to this day."  Doc. 91, p. 14.  However wronged Plaintiff may feel, those wronged feelings cannot continue to manifest themselves into baseless legal claims which MCCCD must defend itself against at a substantial expense.  *See Watson*, 240 F. Supp. 3d at 1003 ("Personal grudges are no license to drag law-abiding employers to court, however therapeutic it might be.") Accordingly, the Court should exercise its discretion to award fees here, as it has done in similar prior cases, to discourage vexatious litigants from bringing lawsuits against employers that are frivolous, unreasonable or groundless.

### III. CONCLUSION

For the above and foregoing reasons, Defendants respectfully request an award of attorneys' fees and non-taxable costs against Plaintiff in the total amount of $110,000.00.  Defendants also seek an additional $3,900.00 for attorneys' fees in preparation of its briefing of its motion for attorneys' fees against Plaintiff.

FPDOCS 33674762.1

1   RESPECTFULLY SUBMITTED this 19th day of January 2018.

2                                   FISHER & PHILLIPS LLP

3

4
                                    By  s/ Shayna H. Balch
5                                       Pavneet Singh Uppal
                                        Shayna H. Balch
6                                       Alanna R. Brook
7                                       3200 N. Central Avenue, Suite 805
                                        Phoenix, Arizona 85012-2407
8                                       Attorneys for Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FPDOCS 33674762.1

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Edmundo P. Robaina
Thomas T. Griffin
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Attorneys for Plaintiff


 s/ Michelle C. Colwell