WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cleopatria Martinez,<br><br>        Plaintiff,<br><br>    v.<br><br>Maricopa County Community College District, a political subdivision of the state, and Rufus Glasper and Debra Glasper, husband and wife,<br><br>        Defendants. | No. CV-15-01759-PHX-NVW<br><br>**ORDER** |

Plaintiff Cleopatria Martinez ("Martinez") brought this action against her employer Maricopa County Community College District ("District") and its Chancellor Rufus Glasper ("Glasper"). On November 1, 2017, this Court granted summary judgment in favor of Defendants. (Doc. 91.) Now before the Court are Defendants' Motion for Attorneys' Fees (Doc. 95), the Response, and the Reply.

**I. BACKGROUND**

Martinez is a math instructor at Phoenix College. She would copy math problems from copyrighted texts and compile them in her own course materials packets. District officials worried the fair use doctrine did not cover Martinez's copying and, given the District's possible exposure to copyright liability, ordered her to stop reproducing copyrighted materials. Martinez was required to obtain the approval of the department

chair before printing her course materials, but she went behind the chair's back and continued to copy without approval.

The District reacted by imposing more severe restrictions, requiring Martinez to use only math department materials or books sold in the bookstore. Rather than complying, Martinez chose to copy materials off campus at a local Staples store. She required students to use these materials and offered them to students at cost or let them copy the materials on their own. When Martinez's behavior was discovered, Phoenix College's President ordered her to reimburse the students with whom she had transacted. She did not.

The District decided to terminate Martinez's employment. Martinez was accused of violating copyright law, breaking District cash-handling rules by transacting directly with students, and acting insubordinately. Martinez had a day-long hearing before a three-faculty-member Hearing Committee. After considering all the evidence, the Committee concluded as follows: (1) conflicting experts made it unclear whether Martinez had violated copyright law; (2) it was also unclear whether Martinez violated the cash-handling policy; and (3) Martinez intentionally failed to comply with the clear order to issue refunds and was therefore willfully insubordinate. The Committee recommended Martinez not be terminated in light of her long service.

Chancellor Glasper accepted that recommendation. (Had he not, he would have had to make a contrary recommendation to the Governing Board to proceed further with termination.) Relying on the Hearing Committee's findings that Martinez was willfully insubordinate, he then suspended Martinez for thirteen months. The Governing Board is not required to review or approve suspensions, but Martinez did appear before it multiple times to argue the suspension should be overturned.

Martinez filed this lawsuit on September 2, 2015. Her exact claims have continuously proven elusive. In her Amended Complaint, Martinez alleged that her thirteen-month suspension was a de facto termination. (Doc. 14 at ¶ 16.) She brought a due process claim under 42 U.S.C. § 1983. But she also appeared to claim that the

District failed to follow its own state law rules by "firing" her under the suspension process rather than the termination process.

The Court rejected all claims. Martinez was entitled to the federal minima of due process even for a suspension, and she received all the process she was due. The elaborate termination procedure resulted in a binding conclusion by the Hearing Committee that Martinez was willfully insubordinate. Glasper was entitled to accept the Committee's recommendation that Martinez not be fired and also to rely on its finding of insubordination in suspending her. To the extent Martinez challenged the state law procedures, the challenge was meritless. At oral argument on the summary judgment motions, Martinez disclaimed any cause of action based on state law. Regardless, the District and Glasper fully complied with those policies in her case. A thirteen-month suspension is not a termination, especially when the supposedly terminated employee returns to work when the suspension ends. Martinez's claim that Glasper was biased was not properly before the Court and was factually unsupported. Finally, Martinez sought declaratory relief preventing the District from continuing to impose restrictions on Martinez's copying.[1] Such a declaration would have required evaluating whether Martinez violated copyright law, an issue divorced from the rest of the claims in Martinez's lawsuit. It would have been an abuse of discretion and a violation of Article III to have granted the requested declaratory judgment.

Defendants now move for attorneys' fees and costs. They request $113,900.00, which they say is less than half the amount actually incurred in litigating this matter. (Doc. 113 at 2.) This litigation was frivolous and in some respects vexatious, harassing, and in bad faith. This misuse of the courts should be neutralized by shifting the expense from the victim back to the vexatious litigant. Defendants' Motion will be granted and the fees awarded in the reasonable amount of $113,900.00.

---

[1] Martinez returned to work when her suspension expired. The internal tension in her Complaint is obvious: Martinez argued both that she was effectively terminated and that her employer was interfering with her ongoing workplace duties.

## II. LEGAL STANDARD

Civil rights laws must strike a balance between chilling legitimate actions on the one hand and indulging unfounded accusations on the other. *Blue v. Dep't of Army*, 914 F.2d 525, 535 (4th Cir. 1990). Consequently, it is much more difficult for prevailing defendants to recover fees in civil rights cases than for prevailing plaintiffs. *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1654 (2016) (Thomas, J., concurring) (noting the asymmetry). Defendants may recover attorneys' fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

Thus, there are three bases for assessing fees against a plaintiff in a § 1983 action: frivolity, unreasonableness, or lack of foundation. "Without foundation" is nebulous and begets the very post hoc fallacy the Court warned against. *See id.* at 421-22 ("[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."). But "frivolous" and "unreasonable" are both terms of art in the law. "Frivolous" means "[l]acking a legal basis or legal merit; not serious; not reasonably purposeful." Black's Law Dictionary 692 (8th ed. 1999). "Unreasonable" means "[n]ot guided by reason; irrational or capricious." *Id.* at 1574. "Courts should therefore ask whether the action was irrational, capricious, not guided by reason, not serious, or not reasonably purposeful." *Watson v. Cty. of Yavapai*, 240 F. Supp. 3d 996, 1000 (D. Ariz. 2017). Of course, "if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Christianburg*, 434 U.S. at 422 (emphasis in original).

Defendants seek fees under 42 U.S.C. § 1988(b). Section 1988(b) provides that in § 1983 actions "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." Given the fee-shifting concerns unique to the civil rights

- 4 -

context, the Supreme Court has articulated this but-for test: "Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim." *Fox v. Vice*, 563 U.S. 826, 836 (2011).

## III. ANALYSIS

### A. Martinez's action was so unintelligible, contradictory, frivolous, and vexatious as to warrant an award of attorneys' fees.

#### 1. Martinez's claim for declaratory relief was both frivolous on the merits and vexatious as plainly barred by *res judicata*.

Martinez's claim for declaratory relief was frivolous in its own right. An employer is entitled to rely on its attorney's advice and avoid the risk of a copyright lawsuit over its employee's prohibited copying. The District frequently attempted to work with Martinez and clearly explained its rationale for the copying restrictions it imposed. Martinez tried to force Defendants to litigate a copyright suit as a tangential part of her due process action. That attempt was clearly frivolous on its own, for these reasons and those explained in the Court's Summary Judgment Order.

But there is another dimension to Martinez's claim for declaratory relief: vexatious repetitive failed litigation. Martinez previously sued the District in 2012 for racial discrimination. *See Martinez v. Maricopa Cty. Comm. Coll. Dist., et al.*, No. 2:12-cv-00702-DGC. She persisted in that litigation for almost two years—all the way until the District filed its motion for summary judgment. Instead of responding to that motion, she voluntarily dismissed the case and all claims with prejudice, barring future relitigation of any of those claims. As part of the 2012 lawsuit, she sought declaratory judgment that her copying in violation of District instructions did not violate copyright law. *Id.*, Doc. 1 at 8, ¶ C. As noted, she dismissed that claim and all others in the 2012 lawsuit with prejudice. Yet this second lawsuit pleads the very same claim for declaratory judgment against the District that her copying did not infringe on the copyrights of others. (Doc. 14 at 23, ¶ E) That claim was barred by *res judicata*.[2]

---

[2] Because Defendants did not develop a timely *res judicata* argument, the Court did not decide this case on the merits of that defense. (Doc. 91 at 17 n.3.) But the *res judicata* bar is apparent from a plain reading of the record in that case.

- 5 -

Bringing a second lawsuit on the same claim after losing the first is the paradigmatic example of vexatious litigation. It conclusively shows animus and bad faith. It had no discernible purpose other than to harass the District. Relitigating the previously adjudicated claim was vexatious—doubly so considering the claim was frivolous even if it had not been barred by *res judicata*.

### 2. Martinez received gold-plated process, and her primary claims were objectively frivolous.

There was also never any merit to Martinez's primary case, the entirety of which was objectively frivolous. A brief review of the thoroughness of the process Martinez received demonstrates the lack of merit.

Following a "Pre-Disciplinary Conference," the President and Vice President of Phoenix College decided to terminate Martinez's employment. The President wrote a formal Statement of Charges and sent it to the Vice Chancellor of Human Resources. The Vice Chancellor then consulted with the legal department to ensure a legally sufficient case existed for dismissal. Afterward, the Vice Chancellor formally recommended dismissal. Chancellor Glasper then sent the Vice Chancellor's recommendation to the Governing Board, with a copy to Martinez. Martinez met with District officials throughout this process.

Martinez had a state law right to a formal termination hearing—a right she exercised. The day-long hearing was held before a three-faculty-member Hearing Committee. Martinez was able to select one of the faculty members. The Chancellor selected another, and the Faculty Association President selected the third. Martinez was represented by experienced counsel. The hearing involved a scheduling order, pre- and post-hearing briefing, witnesses and exhibits, citation to supplemental authority, and more. Martinez admitted at the hearing that she regretted not complying with the clear instructions of her superiors and never contended that the instructions were beyond the scope of their authority. After the hearing, the Committee concluded that Martinez had been insubordinate but recommended not terminating her employment.

The termination policies allow the Chancellor to consult with the Committee and ask questions about its findings or conclusions. He may then either adopt the recommendation regarding dismissal or reject it and make his own to the Governing Board. As noted, Glasper accepted all of the findings that resulted from the robust termination process. Based on the Committee's binding, undisputed conclusion that Martinez was insubordinate, Glasper suspended Martinez under a separate section of the District policies dealing with suspension. Those policies allow the Chancellor to suspend a faculty member without pay if he first consults with the General Counsel, which Glasper did. Throughout her suspension, Martinez submitted briefing and letters and made appearances, both in person and via counsel and others, asking the Governing Board to overturn the suspension.

Martinez says all of this was not enough for federal constitutional minima of fair procedure. She argues that it was a denial of federal due process of law for Glasper to suspend her for thirteen months. Her suspension was, according to Martinez, de facto termination. She did not develop this novel proposition. Instead, she contended, *ipse dixit*, that Glasper should have gone to the Governing Board to confirm it was acceptable to suspend Martinez for a year, despite her disavowal of any state law challenge to how she was suspended.

Martinez was not terminated. "A one-year suspension is still a suspension." (Doc. 91 at 4.) Neither District procedure nor federal due process required the Governing Board to approve or act on a suspension of any length. Martinez is not entitled to a separate, better process to prove the truth of what she admitted and expressed regret for and what a neutral tribunal found. The argument is risible. Due process is about avoiding risk of error. *Mathews v. Eldridge*, 424 U.S. 319, 344 (1976) ("[P]rocedural due process rules are shaped by the risk of error inherent in the truthfinding process . . . ."). There was concededly no error in factfinding here. In fact, Martinez's insubordination continues to this day, as she refuses to issue the refunds. Her case was objectively frivolous.

### 3. Martinez's shifting theories demonstrate that she had no legal basis for this action.

Plaintiffs are of course allowed to plead alternative and even inconsistent claims. Fed. R. Civ. P. 8(d). But parties are not allowed to disavow claims and then argue from them. Even though Martinez presented her case as a § 1983 due process action, her claims oscillated between asserting a violation of District procedure and disavowal of asserting a violation of District procedure. The contention that suspension is termination was a disavowed state law claim and frivolous both as a state law claim and as a federal due process claim.

Martinez even introduced a new theory in responding to this Motion. She now says that "a reasonable plaintiff could believe, and Martinez did believe, that the [suspension] policy, *on its face*, violates due process." (Doc. 107 at 8 (emphasis added).) But Martinez did not bring a facial challenge to the suspension policy. And the fact that the Court concluded Martinez received sufficient process under the District's suspension policy means the policy would not be susceptible to a facial challenge. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)) (explaining that a plaintiff mounting a facial challenge must demonstrate "that the law is unconstitutional in all of its applications").

### 4. Whether Glasper included "new charges" in the suspension notice is irrelevant.

In his letter to Martinez, Glasper articulated the primary basis for the suspension: "The basis for this action is the unanimous finding of an independent hearing committee that you willfully violated the district policies set forth in the [termination] statement of charges and that I have the authority to suspend your employment without pay." (Doc. 73-7 at 32 of 44.) Glasper could not have been clearer that the basis for Martinez's suspension was violating "Administrative Regulation 6.7.1 and Administrative Regulation 6.7.3." (*Id.* at 34.) Those are the exact regulations the Hearing Committee concluded Martinez violated. (*Id.* at 20.)

Glasper was justified in suspending Martinez based on the binding, undisputed, and admitted determination that she was willfully insubordinate. Even if new charges had been included in the suspension notice, a contention the Court rejected in its Summary Judgment Order, those charges would be surplusage. Martinez received abundant process and was found to be willfully insubordinate.

### 5. Martinez's belated claim of bias is legally erroneous and unsupported.

Martinez's claim that Glasper was biased was not properly alleged, as it first arose on summary judgment. (Doc. 91 at 15-16.) Martinez now reargues that "a reasonable plaintiff could believe that an administrator, like other agents of an employer, could develop a will to win." (Doc. 107 at 9 (quoting *Grolier, Inc. v. F.T.C.*, 615 F.2d 1215, 1220 (9th Cir. 1980)).) This argument amounts to a frivolous categorical assertion: a personnel manager who initiates disciplinary proceedings for reasons ultimately found to be true by independent fact-finders is barred by due process of law from administering discipline. That is nonsense. *See Withrow v. Larkin*, 421 U.S. 35, 55 (1975) (rejecting argument that it is unconstitutional for an agency to punish the target of an investigation it initiated). Martinez admits the Hearing Committee was "a neutral and detached decisionmaker." (Doc. 71 at 14.) She offered no actual evidence of Glasper's bias to meet the "difficult burden of persuasion" she bears. *Withrow*, 421 U.S. at 47. This argument was as baseless as all the rest.

### B. The reduced fees Defendants request are all awardable under *Fox* and reasonable given the circumstances of this case.

Under *Fox*, Defendants are entitled only to the portion of fees they would not have paid "but for the frivolous claim." 563 U.S. at 836. For the reasons above, all of Martinez's claims were frivolous, and the Court is thus disposed to award all of the fees Defendants request. Some of the action was unquestionably vexatious, harassing, and in bad faith.

Nevertheless, the Court must independently evaluate the reasonableness of the requested fees. Local Rule 54.2(c)(3) sets forth the factors the Court considers in

evaluating the reasonableness of the requested attorneys' fees award. These include, but are not limited to, (A) the "time and labor required of counsel," (B) the "novelty and difficulty of the questions presented," (C) the "skill requisite to perform the legal service properly," (D) the "preclusion of other employment by counsel because of the acceptance of the action," (E) the "customary fee charged in matters of the type involved," (F) whether the fee is fixed or contingent, (G) any "time limitations imposed by the client or the circumstances," (H) the "amount of money, or the value of the rights, involved, and the results obtained," (I) the "experience, reputation and ability of counsel," (J) the case's "undesirability," (K) the "nature and length of the professional relationship between the attorney and the client," (L) awards "in similar actions," and (M) any "other matters deemed appropriate under the circumstances."

Martinez does not challenge the reasonableness of the fees Defendants request. Defendants seek less than half the fees incurred in litigating this matter. This was protracted and expensive litigation, with elusive, shifting, frivolous, and vexatious claims. Defendants' counsel's hourly rates and claimed fees are reasonable. (Doc. 95 at 11.) Weighing all of the relevant factors, the Court finds that the requested award of $113,900.00 is reasonable.

IT IS THEREFORE ORDERED that Defendants' Motion for Attorneys' Fees (Doc. 95) is granted in the amount of $113,900.00.

IT IS FURTHER ORDERED directing the Clerk to enter judgment in favor of Defendants Maricopa County Community College District and Rufus and Debra Glasper against Plaintiff Cleopatria Martinez in the amount of $113,900.00 for attorneys' fees, with interest at the federal rate of 2.24% per annum from the date of judgment until paid.

Dated this 8th day of May, 2018.

_____
Neil V. Wake
Senior United States District Judge